# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-774-JJF |
| | ) | |
| PAR PHARMACEUTICAL, INC. | ) | |
| Defendant. | ) | |

**PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OPENING
BRIEF IN SUPPORT OF ITS MOTION FOR DISQUALIFICATION
OF FROMMER LAWRENCE & HAUG LLP**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

March 14, 2007

**Table of Contents**

NATURE AND STAGE OF THE PROCEEDINGS                                           1

SUMMARY OF THE ARGUMENT                                                       1

STATEMENT OF FACTS                                                            2

A.    FLH's Attorney-Client Relationship With Reliant                        2

B.    FLH's Representation Of Reliant With Respect To Rythmol® And The '588
      Patent                                                                 3

C.    FLH Currently Represents Par In This Patent Infringement Action         5

ARGUMENT                                                                     7

I.    LEGAL STANDARDS                                                        7

II.   FLH SHOULD BE DISQUALIFIED BECAUSE IT REPRESENTED RELIANT
      IN A MATTER SUBSTANTIALLY RELATED TO THIS PATENT
      INFRINGEMENT ACTION                                                    9

      A.    Reliant Is A Former Client Of FLH Whose Interests Are Materially
            Adverse To Par                                                   9

      B.    FLH's Representation Of Reliant In The Acquisition Of Rythmol® Is
            Substantially Related To FLH's Current Representation Of Par      11

III.  FLH SHOULD BE DISQUALIFIED AS PAR'S COUNSEL                            13

CONCLUSION                                                                   17

## Table of Authorities

Page

**Cases**

*Amgen, Inc. v. Elanex Pharms., Inc.,*
    160 F.R.D. 134 (W.D. Wash. 1994)                    8, 14

*Analytica, Inc. v. NPD Research, Inc.,*
    708 F.2d 1263 (7th Cir. 1983)                         14

*Buckley v. Airsheild Corp.,*
    908 F. Supp. 299 (D. Md. 1995)                   8, 9, 10-11

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,*
    809 F. Supp. 1383 (N.D. Cal. 1992)                    14

*Gen. Elec. Co. v. Valeron Corp.,*
    608 F.2d 265 (6th Cir. 1979)                          8

*In re Corn Derivatives Antitrust Litig.,*
    748 F.2d 157 (3d Cir. 1984)                       7, 13, 16

*Jack Eckerd Corp. v. Dart Group Corp.,*
    621 F. Supp. 725 (D. Del. 1985)                     7-8, 11

*Monon Corp. v. Wabash Nat'l Corp.,*
    764 F. Supp. 1320 (N.D. Ind. 1991)                   8, 15

*Plant Genetic Sys., N.V. v. Ciba Seeds,*
    933 F. Supp. 514 (M.D. N.C. 1996)                     14

*Richardson v. Hamilton Int'l Corp.,*
    469 F.2d 1382 (3d Cir. 1972)                         8, 11

*Stratagene v. Invitrogen Corp.,*
    225 F. Supp. 2d 608 (D. Md. 2002)                  8, 10, 14

*Sun Studs, Inc. v. Applied Theory Assocs., Inc.,*
    772 F.2d 1557 (Fed. Cir. 1985)                        15

*U.S. v. Gordon,*
    334 F. Supp. 2d 581 (D. Del. 2004)                   8, 11

**Statutes**

35 U.S.C. § 271(e)                                           9

## Table of Authorities, cont'd

**Page**

**Rules**

ABA Model Rules of Professional Conduct  Rule 1.9                                      7

ABA Model Rules of Professional Conduct  Rule 1.10                                     7

## NATURE AND STAGE OF THE PROCEEDINGS

Reliant Pharmaceuticals, Inc. ("Reliant") brought this action against Par Pharmaceutical, Inc. ("Par") for infringement of U.S. Patent No. 5,681,588 ("the '588 patent"). D.I. 1, D.I. 8.  Par has asserted affirmative defenses and counterclaims including non-infringement, invalidity and unenforceability of the '588 patent.  D.I. 11.

Reliant has moved to disqualify the law firm of Frommer Lawrence & Haug LLP ("FLH") from representing Par in this action.  This is Reliant's opening brief in support of that motion.

## SUMMARY OF THE ARGUMENT

FLH is ethically barred from representing Par in this action because FLH formerly represented Reliant in a substantially related matter -- Reliant's acquisition of the same drug and the same patent at issue here.  Specifically, FLH represented Reliant in connection with Reliant's purchase from Abbott Laboratories of the Rythmol® drug portfolio, including Rythmol® SR and U.S. Patent No. 5,681,588 ("the '588 patent").   In the course of that representation, Reliant provided FLH with confidential documents and attorney-client privileged information.  FLH, in turn, provided Reliant with confidential legal advice, including advice concerning the scope, validity, enforceability and potential infringement of the '588 patent.  In reliance on FLH's legal counsel, Reliant acquired the Rythmol® drug portfolio, including Rythmol® SR and the '588 patent.

FLH now undertakes to invalidate and render unenforceable that very same patent on Par's behalf so that Par may commercialize a generic version of Reliant's proprietary drug Rythmol® SR.  Thus, FLH's representation of Par is materially adverse to its former client Reliant in a matter that is substantially related to its previous representation of Reliant.

Permitting FLH to continue its representation of Par would severely prejudice Reliant in this action.  Given the substantial relationship between Reliant's acquisition of the '588 patent and Par's claims of invalidity, unenforceability and non-infringement of the very same patent, there is considerable risk that Reliant's confidential information, disclosed to FLH in the course of its prior attorney-client relationship, will be used to Reliant's detriment.  In contrast, Par will suffer no prejudice as a result of FLH's disqualification at this early stage of the litigation.  Indeed, within ten days of filing this suit and learning that FLH intended to represent Par, Reliant reminded FLH of its ethical duties and requested that FLH withdraw from representing Par.  FLH refused, and continues to refuse, to honor the request of its former client Reliant.

FLH's continued representation of Par will violate FLH's ethical and professional duties to Reliant.  In contrast, FLH's disqualification will protect Reliant's confidential information from being used to its detriment and will safeguard the integrity of the proceedings before this Court.  Accordingly, Reliant respectfully requests that the Court disqualify FLH from representing Par in this patent infringement suit.

## STATEMENT OF FACTS

### A.    FLH's Attorney-Client Relationship With Reliant

In February 2002, Reliant retained FLH, including Edgar Haug, Esq. and Andrew Berdon, Esq., to represent it and to serve as outside counsel on intellectual property matters, including those relating to the U.S. regulatory filing, patent certification, counseling and potential litigation concerning Reliant's fenofibrate drug product. Lerner Decl. at ¶ 3-5.[1]

---

[1]    "Lerner Decl." refers to the Declaration Of Michael Lerner In Support Of Reliant's Motion For Disqualification of Frommer Lawrence & Haug LLP.

Over the course of a three-year representation, FLH acted as Reliant's general patent counsel, and Reliant referred the vast majority of its patent-related matters to FLH. Lerner Decl. at ¶ 6. Reliant entrusted FLH with sensitive legal and business issues, and relied on FLH's legal advice, confidences and expertise. For example, in addition to matters concerning the drug fenofibrate, FLH represented Reliant in connection with regulatory, counseling and potential litigation matters regarding at least three other drugs, as well as with respect to intellectual property diligence matters. Lerner Decl. at ¶ 6. These matters were important for Reliant's patent portfolio and continued growth as a company. Lerner Decl. at ¶ 6.

Although Mr. Berdon was Reliant's primary contact, Reliant and FLH understood that, should any litigation ensue, Mr. Haug would act as Reliant's lead trial counsel. Lerner Decl. at ¶ 5. Moreover, throughout the three-year representation, many FLH partners, associates, technical advisors and support staff worked on Reliant matters. For example, current FLH partners Daniel Brown, Thomas Kowalski, Arthur Hoag, Jeffrey Hovden and Charles Raubicheck provided legal advice and assistance on Reliant matters. Lerner Decl. at ¶ 7.

**B.    FLH's Representation Of Reliant With Respect To Rythmol® And The '588 Patent**

In or about June 2003, FLH began its representation of Reliant in connection with Reliant's potential purchase from Abbott Laboratories of the drugs Rythmol® and Rythmol® SR (collectively referred to herein as "Rythmol®") and the related patent portfolio, including the '588 patent-in-suit. Starting in June 2003 and through the execution of the agreement with Abbott on October 28, 2003, FLH provided legal advice concerning Reliant's acquisition of the drug franchise and related patents.[2] *See* Lerner Decl. at ¶¶ 9-16.

---

[2]    FLH provided legal advice concerning Rythmol® and the '588 patent primarily through oral communications and e-mails. Lerner Decl. at ¶ 9. Given the confidential and privileged nature of the advice, and its direct relationship to the issues in this litigation, the written communications have not been attached as supporting exhibits to this motion. However, at the Court's request, Reliant will provide supporting documents for *in*

3

In furtherance of FLH's legal services regarding the Rythmol® purchase, Reliant provided confidential information to FLH. For example, Reliant forwarded the confidential draft Rythmol® Asset Purchase Agreement to FLH. Lerner Decl. at ¶ 10. Reliant also provided FLH with a copy of a confidential Abbott Descriptive Memorandum that Reliant received pursuant to a confidentiality agreement with Abbott. Lerner Decl. at ¶ 11. The Descriptive Memorandum contained confidential information concerning, for example, the scientific and clinical drug properties, patent protection, expected FDA exclusivities, potential for a generic competitor to formulate bioequivalent drugs, the projected market for the Rythmol® drugs, and the structure of the Asset Purchase Agreement. Lerner Decl. at ¶ 11. In addition to the confidential information forwarded to FLH, Reliant engaged in confidential attorney-client communications with FLH concerning the nature and scope of the agreement with Abbott, the patent assignment to be granted to Reliant, the regulatory status of the Rythmol® drugs, and the potential infringement, validity, enforceability, and FDA Orange Book listing of the patents, including the patent-in-suit. Lerner Decl. at ¶¶ 10-15.

FLH conducted an analysis of the regulatory and patent issues regarding Reliant's potential Rythmol® purchase. For example, FLH investigated the expiration dates of the patents at issue in the agreement and conducted searches regarding Rythmol® regulatory filings and patent certifications. Lerner Decl. at ¶ 15. FLH also advised Reliant concerning the importance of listing the '588 patent in the FDA Orange Book, and the effect of that listing on potential patent litigation. Lerner Decl. at ¶ 15.

FLH also investigated the prior art concerning the Rythmol® patents, and conducted an independent prior art search. Lerner Decl. at ¶ 13. FLH provided advice

---

*camera* inspection by the Court and for review solely by FLH, Reliant's former counsel -- which already has access to that information -- on an "attorneys' eyes only" and non-waiver basis.

4

concerning the prior art and its relation to the validity and enforceability of the '588 patent. Lerner Decl. at ¶ 14.  For example, FLH provided advice concerning Pich *et al.*, U.S. Patent No. 4,797,287 (the "Pich '287 patent"), and whether that patent had any impact on, or relation to, the Rythmol® SR formulation or the '588 patent.  Lerner Decl. at ¶ 14.

FLH provided legal advice to Reliant concerning the Rythmol® purchase, including the '588 patent at issue here.  That advice concerned, for example, whether or not the patents in the Rythmol® portfolio were valid and enforceable, the availability of potential design-around, the scope of patent protection, the existence and meaning of regulatory exclusivities, potential litigation, and the provisions of the Asset Purchase Agreement and patent assignment agreement.  Lerner Decl. at ¶¶ 9-15.

Reliant purchased Rythmol®, including the '588 patent, based on the pre-purchase patent investigation conducted by FLH, including Messrs. Berdon, Hoag and Brown.  Lerner Decl. at ¶ 16.   In doing so, Reliant relied on the confidential legal advice provided by FLH regarding the scope, validity, enforceability and potential infringement of the patents, as well as advice regarding the nature of the patent rights granted to Reliant pursuant to the Asset Purchase Agreement with Abbott. Lerner Decl. at ¶ 16.

## C.    FLH Currently Represents Par In This Patent Infringement Action

On November 8, 2006 and January 11, 2007, Reliant received notices of Paragraph IV Certification concerning the '588 patent from Par. Ex. 1, Ex. 2.[3]  These notices set forth Par's intent to engage in the commercial manufacture of generic versions of Rythmol® SR prior to the expiration of the '588 patent.  Ex. 1, Ex. 2.  These notices also set forth Par's contentions that its proposed generic products do not infringe the '588 patent and that the '588

---

[3]   "Ex. __" refers to the exhibits attached to the Declaration Of Christine Willgoos In Support Of Reliant's Motion For Disqualification of Frommer Lawrence & Haug LLP.

patent is invalid and unenforceable due to inequitable conduct.  Ex. 1, Ex. 2.  Notably, the notices alleged that the '588 patent was invalid and unenforceable in view of the Pich '287 patent that FLH had previously evaluated for Reliant.  Ex. 1 at 18-20 of attachment, Ex. 2 at 21-23 of attachment.

On December 19, 2006, Reliant brought this patent infringement suit against Par, alleging infringement of the '588 patent and seeking injunctive relief to preclude Par from engaging in the commercial manufacture, use or sale of Par's proposed generic products.  *See* D.I. 1.  Shortly thereafter, Reliant learned that Edgar Haug, Esq. of FLH intended to represent Par in this action.  *See, e.g.,* Ex. 3.  On December 29, 2006, Reliant, through its counsel, requested that FLH withdraw as Par's trial counsel due to FLH's substantially related representation of Reliant with respect to the purchase of the drug and the patent in suit.  Ex. 4.  FLH refused.  Ex. 5.  Reliant repeated its request for withdrawal on January 25, 2007.  Ex. 6.

On February 8, 2007, FLH attorneys Edgar H. Haug, Esq., and James K. Stronski, Esq. submitted motions to appear *pro hac vice* on behalf of Par.  *See* D.I. 10.  On February 9, 2007, Par filed its Answer and Counterclaims, including allegations that the '588 patent is invalid and unenforceable due to inequitable conduct.  D.I.11.  On February 12, 2007, Reliant again requested that FLH withdraw as Par's counsel.  Ex. 7.  FLH again refused, and continues its representation of Par despite its ethical obligations to its former client Reliant.  Ex. 8.

6

## ARGUMENT

### I.    LEGAL STANDARDS

Third Circuit law is clear -- a lawyer may not take a representation against a former client where the two matters are substantially related and the former client's interests are materially adverse in the current representation. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3d Cir. 1984). The Court follows the ABA Model Rules of Professional Conduct ("Model Rules"). *See id.* at 160-61; L.R. 83.6(d)(2). Model Rule 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Ex. 13 (Model Rule 1.9(a)). This rule applies not only to a single attorney, but is imputed to all members of the law firm with which that attorney is associated. Ex. 14 (Model Rule 1.10).

The threshold for determining whether a current matter is substantially related to a former representation for the purposes of Model Rule 1.9 is low. "Matters are 'substantially related' for purposes of the Rule if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ex. 13 (Model Rule 1.9 cmt). Indeed, "knowledge of specific facts gained in a prior representation that are relevant to the matter in question will ordinarily preclude such a representation." Ex. 13 (Model Rule 1.9 cmt). Thus, this Court considers two matters to be substantially related if "it can reasonably be said that in the course of the former representation, [the] attorney might have acquired information related to the subject matter of [his] subsequent representation." *Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 730 (D. Del. 1985)

7

(citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972)). Moreover, once an attorney-client relationship is established, the attorney's access to confidential information is presumed. *U.S. v. Gordon*, 334 F. Supp. 2d 581, 593 (D. Del. 2004).

In the context of patent infringement cases, assisting a patentee in analyzing or acquiring a patent is a substantially related matter to an action concerning infringement of that patent. For example, an attorney involved in prosecuting a patent may not represent a party adverse to a former client in a suit involving that same patent, a related patent, or even patents relating to the same subject matter. *See, e.g., Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 612-13 (D. Md. 2002) (disqualifying firm from representing alleged infringer because an associate was involved in prosecution of a continuation application of the patent-in-suit during her previous employment at another firm); *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991) (disqualifying attorney from representing alleged infringer where attorney was involved in the prosecution of the patent-in-suit, even though the representation ended before the prosecution was complete); *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979) (disqualifying attorney from representing alleged infringer because attorney prosecuted patents in related subject areas for plaintiffs). Similarly, a lawyer or firm may not represent a defendant in an action where the firm or attorney formerly represented the patentee in a related proceeding. *See, e.g., Buckley v. Airsheild Corp.*, 908 F. Supp. 299 (D. Md. 1995) (disqualifying attorney from representing defendant in breach of contract and patent infringement suit where attorney represented patentee in patent infringement and licensing matters); *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994) (holding that a law firm could not represent an alleged infringer because the firm formerly represented patentee in appeal of patent dispute against another party).

8

## II.   FLH SHOULD BE DISQUALIFIED BECAUSE IT REPRESENTED RELIANT IN A MATTER SUBSTANTIALLY RELATED TO THIS PATENT INFRINGEMENT ACTION

### A.   Reliant Is A Former Client Of FLH Whose Interests Are Materially Adverse To Par

There is no dispute that Reliant's interests are materially adverse to Par's interest in this patent infringement suit. Par seeks to make a generic copy of Reliant's proprietary and patented Rythmol® SR drug. Pursuant to 35 U.S.C. § 271(e), Reliant has accused Par of infringing the '588 patent. Par, in turn, has filed defenses and counterclaims alleging that Par does not infringe the patent, and that the patent is invalid and unenforceable due to inequitable conduct. *See Buckley*, 908 F. Supp. at 304 (assuming that, in a patent infringement action, the patentee's and defendant's interests are materially adverse).

There is also no dispute that Reliant is a former client of FLH. Ex. 5. Indeed, although FLH purports to dispute that it represented Reliant "in connection with intellectual property matters in Reliant's 2003 acquisition of Rythmol® and U.S. Patent No. 5,681,588," FLH admits that it "gathered certain publicly available information for Reliant and engaged in a *de minimis* review of certain already-drafted claim language" with respect to Reliant's Rythmol® acquisition. Ex. 5. Thus, FLH does not deny that it represented Reliant with respect to acquisition of the branded product and patent at issue here. Instead, FLH seeks to downplay the scope of its representation in an effort to demonstrate that its successive representations of two different, adverse clients concerning the infringement, validity and enforceability of the very same patent are somehow not substantially related to one another. *See* Ex. 5, Ex. 8. This argument fails logically and is incorrect as a matter of law.[4]

---

[4]   Indeed, not only is FLH's conduct in taking on successive representations of two different adverse clients in substantially related matters unethical; it may also be grounds for a subsequent claim of malpractice. *See, e.g.,* Ex. 11 (Elaine Chow, *Fulwider Pays $8M To Settle Misconduct Claims*, IP Law 360, January 3, 2007).

First, FLH did much more than "gather[] certain publicly available information for Reliant" with respect to Reliant's Rythmol® purchase. As set forth above, FLH conducted an independent investigation of the regulatory and patent issues regarding Reliant's potential Rythmol® purchase, involving, for example, conducting searches regarding prior art, regulatory filings and patent certifications. *See* Lerner Decl. at ¶¶ 9-15. In addition, FLH reviewed confidential information provided to Reliant by Abbott. Lerner Decl. at ¶¶ 14-15. FLH provided legal advice to Reliant based on these activities. Reliant decided to acquire Rythmol® SR and the '588 patent based on that advice. Lerner Decl. at ¶ 16.

Second, FLH's review was not "*de minimis*" at all. That analysis was made by current FLH partner Arthur Hoag, Esq. after review of the confidential draft Asset Purchase Agreement subsequently entered into by Reliant and Abbott. Lerner Decl. at ¶ 10. As a result of that review, Mr. Hoag and Mr. Berdon advised Reliant concerning the nature and scope of the patent rights granted to Reliant, including rights regarding the '588 patent-in-suit. Lerner Decl. at ¶ 10. FLH also reviewed the patent assignment agreement, including the patent assignment of the '588 patent, and provided advice to Reliant concerning the provisions of that agreement. Lerner Decl. at ¶ 10.

Indeed, FLH's activities concerning Reliant's acquisition of Rythmol® went well beyond what is required to preclude FLH's representation of Par in this matter. For example, in *Stratagene*, the Court held that an associate attorney's performance of "administrative tasks," such as summarizing pending claims in a patent application, was sufficient to establish an attorney-client relationship with the patentee and to disqualify the attorney's new law firm from the subsequent representation of the alleged infringer. *See Stratagene*, 225 F. Supp. 2d at 611-12. Similarly, in *Buckley*, the Court disqualified an attorney from a subsequent representation of

the alleged infringer despite the attorney's claims that his role was limited to updating legal research and preparing memoranda of law. *Buckley,* 908 F. Supp. at 301.

Accordingly, FLH should be disqualified because it represented Reliant in connection with Reliant's purchase of the Rythmol® portfolio from Abbott Laboratories, including the drug and the patent at issue here.

### B.    FLH's Representation Of Reliant In The Acquisition Of Rythmol® Is Substantially Related To FLH's Current Representation Of Par

During the course of FLH's representation of Reliant in connection with Reliant's Rythmol® acquisition, FLH received confidential information from Reliant and provided Reliant with confidential legal advice concerning the Rythmol® SR drug and the '588 patent.[5]

As set forth more fully in the accompanying Declaration of Michael Lerner, Reliant requested and received legal services and advice from FLH concerning the drug and the patent in suit.  For example, Reliant forwarded to FLH confidential information concerning the scientific and clinical properties of the Rythmol® drugs, patent protection, regulatory status, and the projected drug market.  Lerner Decl. at ¶¶ 10-11.  Reliant also forwarded a confidential draft Asset Purchase Agreement.[6]  Lerner Decl. at ¶ 10.  FLH reviewed this confidential information and engaged in confidential attorney-client communications with Reliant regarding, for example, the scope and nature of the Asset Purchase Agreement, the scope of protection afforded by the

---

[5]    Under Third Circuit law, however, the Court need not find that confidential information was actually exchanged in order to find that FLH's former representation of Reliant is substantially related to its current representation of Par.  Indeed, once an attorney-client relationship is established, the attorney's access to confidential information is presumed.  *U.S. v. Gordon,* 334 F. Supp. 2d 581, 593 (D. Del. 2004).  Moreover, it is sufficient for purposes of disqualification that "it can reasonably be said that in the course of the former representation, the attorney might have acquired information related to the subject matter of his subsequent representation." *Jack Eckerd Corp. v. Dart Group Corp.,* 621 F. Supp. 725, 730 (D. Del. 1985) (citing *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385 (3d Cir. 1972)).  Moreover, given FLH's admission that it performed at least some substantive work for Reliant, it can reasonably be assumed that confidences were exchanged.

[6]    Notably, although FLH denies receiving any confidential information from Reliant, it admits that it "engaged in a *de minimis* review of certain already-drafted contract language" -- i.e., contract language of the ***confidential*** draft Asset Purchase Agreement FLH received from Reliant. *See* Ex. 5.

11

patents (including the '588 patent) and regulatory exclusivities. Lerner Decl. at ¶ 10. FLH also conducted additional research regarding the patents, including, for example, conducting prior art searches, reviewing the file histories, and investigating patent expiration dates and FDA Orange Book listings. *See* Lerner Decl. at ¶¶ 9-15.

After considering Reliant's and Abbott's confidential information and conducting additional investigation, FLH provided Reliant with confidential legal advice concerning the drug and the patent at issue here. *See* Lerner Decl. at ¶¶ 9-15. This advice included, for example, whether or not the patents, including the '588 patent, were valid and enforceable, the potential for a generic company to design around the patent, the scope of patent protection and FDA exclusivities, potential litigation issues, and the nature and scope of specific provisions of the Asset Purchase Agreement with Abbott. *See* Lerner Decl. at ¶¶ 9-15.

Indeed, FLH provided Reliant with substantive legal advice that directly bears on several of the issues in this litigation. For example, FLH advised Reliant concerning the importance of listing the '588 patent in the FDA Orange Book, and the effect that such a listing would have on potential litigation. Lerner Decl. at ¶ 15. Moreover, FLH has advised both Par and Reliant concerning the critical issues of validity and enforceability of the '588 patent. For example, FLH advised Reliant concerning the prior art Pich '287 patent, and whether or not the Pich '287 patent was important with respect to the Rythmol® SR product and patents. Lerner Decl. at ¶ 14. FLH, on Par's behalf, now attempts to use the Pich '287 patent to render the '588 patent invalid and enforceable. *See* Ex. 1 at 18-20 of attachment, Ex. 2 at 21-23 of attachment, D.I. 11 at Answer ¶¶ 14-18.

Thus, the legal advice FLH provided to Reliant is substantially related to FLH's current representation of Par. As Par's counsel, FLH is now attempting to invalidate or render

unenforceable Reliant's '588 patent -- a patent Reliant acquired based, in large part, on FLH's advice concerning whether it was valid and enforceable.  FLH, as Par's counsel, is arguing that Par does not infringe the '588 patent -- the very same patent that FLH advised Reliant about with respect to the potential for design around.  Moreover, FLH is arguing on Par's behalf that the '588 patent is unenforceable due to inequitable conduct by Abbott's predecessor Knoll AG.  *See* Ex. 1 at 18-20 of attachment, Ex. 2 at 21-23 of attachment, D.I. 11 at Answer ¶¶ 14-18.  Yet, FLH obtained confidential Abbott information provided to it by Reliant in the course of FLH's former representation of Reliant concerning the '588 patent.  Lerner Decl. at ¶ 10.

The substantial relationship between FLH's former representation of Reliant and FLH's current representation of Par is clear.  Accordingly, FLH should not be permitted to continue to represent Par in this materially adverse, substantially related matter concerning the same patent and the same drug that Reliant acquired based on FLH's legal advice.

## III.    FLH SHOULD BE DISQUALIFIED AS PAR'S COUNSEL

The Third Circuit has set forth three primary purposes of the rule against representation of interests adverse to a former client:  (1) to prevent even the potential that a former client's confidences and secrets may be used against him, (2) to maintain public confidence in the integrity of the bar, and (3) to protect a client's right to the loyalty of its attorney in the matter for which the attorney is retained.  *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).  Disqualification of FLH is necessary to safeguard each of these policies.

Given the substantial relationship between FLH's former representation of Reliant and current representation of Par, there is considerable risk that Reliant's confidential and attorney-client privileged information may be used to its detriment.  For example, FLH has specific knowledge of the contract and assignment under which Reliant obtained the rights to the

13

drug and the patent at issue. Lerner Decl. at ¶ 10. FLH also has knowledge of Reliant's understanding regarding the potential of a generic manufacturer (in this case, Par) to design a bioequivalent drug that would not infringe the patent. Lerner Decl. at ¶ 13. FLH has confidential information concerning Reliant's understanding of whether and why the '588 patent is valid and enforceable. Lerner Decl. at ¶ 13. Thus, there is a high probability that FLH will use Reliant's confidential information, either intentionally or inadvertently, in its attempt to render Reliant's '588 patent invalid, unenforceable and not infringed.

This risk is particularly great here because at least two current FLH partners, Messrs. Brown and Hoag, were directly privy to the confidential attorney-client communications with Reliant and provided Reliant with legal advice concerning its acquisition of Rythmol® SR and the '588 patent.[7] Lerner Decl. at ¶ 10. Indeed, it appears that Messrs. Hoag and Brown, in addition to possessing confidential knowledge regarding Reliant's acquisition of the drug and patent in suit, are also directly involved in FLH's representation of Par in this litigation. Although neither has yet appeared before the Court, Par's counsel has copied both Messrs. Brown and Hoag on e-mail communications concerning this litigation. Ex. 9, Ex. 10.

A second "guiding principle in considering a motion to disqualify is safeguarding the integrity of court proceedings." *Stratagene*, 225 F. Supp. 2d at 610 (citing *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D. N.C. 1996)). Even the appearance of

---

[7]    FLH tries to avoid its ethical obligations to Reliant by claiming that "all firm knowledge regarding communications with [Reliant] departed" the firm with Mr. Berdon. Even if this were correct – which it is not – it does not relieve FLH's ethical obligation to its former client Reliant. *See* Ex. 14 (Model Rule 1.10). It is well-settled law that attorneys who work in the same firm are presumed to share confidences and that such confidences are imputed to all members of the firm. *See Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992) (holding that even though an attorney who had represented the former client was no longer with the firm, the firm was precluded from representing the plaintiff in a patent infringement action against the former client because of a conclusive presumption that the attorney had shared client confidences during his time at the firm); *Amgen*, 160 F.R.D. at 141, citing *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1267-68 (7th Cir. 1983) ( "[A] screen may be used when a lawyer changes jobs and the new firm represents an adversary of a client of the former firm, but …the *same firm* cannot switch sides on a substantially related matter, no matter what screen it sets up).

impropriety is enough to disqualify counsel that have switched sides.  *See Monon*, 764 F. Supp. at 1323 (holding that the "simple circumstance" of an attorney obtaining a patent for one party and now represents another in arguing that the invention lacks the conditions of patentability gives "an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public-or for that matter the bench and bar. . .") (internal citation omitted).  Indeed, the Federal Circuit has stated that:  "[W]e do not believe any court would hold that it is within the bounds of propriety to permit a law firm to assist a client in obtaining a patent which was equitably owned by another and then lead the attack against the patent's validity once it is transferred to its rightful owner."  *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1567 (Fed. Cir. 1985).

FLH's disqualification would also protect Reliant's right to the loyalty of its attorneys in matters for which they were retained.  Reliant had a three-year attorney-client relationship during which it entrusted FLH with its highly sensitive business and legal confidences.  Reliant trusted FLH's legal advice and expertise with respect to, *inter alia,* whether or not the '588 patent was valid and enforceable, the ability of a generic competitor to design bioequivalent drugs around the '588 patent, and the nature and scope of the patent rights granted to Reliant pursuant to the agreement with Abbott.  Lerner Decl. at ¶ 16.  Reliant relied on this advice when it purchased the drug and the patent at issue in this lawsuit.  Lerner Decl. at ¶ 16. FLH has refused to honor its ethical obligations to its former client Reliant, and has declined to withdraw as Par's counsel in this substantially related matter.  Ex. 5, Ex. 8.  The only way for the Court to protect Reliant's right to FLH's loyalty is to disqualify FLH from representing Par in this litigation.

15

Moreover, even when weighed against Par's right to counsel of its choice, the facts favor disqualification of FLH. This litigation has barely begun -- no discovery has taken place yet. Indeed, despite Par's Offer of Confidential Access given (and accepted by Reliant) in November, and despite Par's second promise in December, Par has not yet even provided Reliant with a copy of the ANDA that forms the basis of this suit. *See* Ex. 1, Ex. 12. The potential prejudice to Par, therefore, is minimal. *In re Corn Derivatives*, 748 F.2d 157, 162 (holding that, although disqualification would increase costs for the current client, it would be unfair for counsel to use information against the former client regarding the strengths and weaknesses of the case gained from the prior representation).

In contrast, FLH's disqualification would protect Reliant's confidential information from being used to its detriment, ensure that FLH remains loyal to its former representation, and safeguard the integrity of the proceedings before this Court.

## CONCLUSION

For all of the foregoing reasons, Reliant requests that the Court disqualify FLH from representing Par in connection with this litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

March 14, 2007
763502.1

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor

I further certify that I caused to be served copies of the foregoing document on March 14, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                           *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                              *and HAND DELIVERY*
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street
17th Floor
Wilmington, DE  19801

Edgar H. Haug, Esquire                               *VIA ELECTRONIC MAIL*
Frommer Lawrence & Haug LLP                       *and FEDERAL EXPRESS*
745 Fifth Avenue
New York, NY  10151

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (I.D. No. 1014)