IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RELIANT PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAR PHARMACEUTICAL, INC., <br><br> Defendant. | Civil Action No. 06-774-JJF |

## DECLARATION OF MICHAEL LERNER IN SUPPORT OF RELIANT'S MOTION FOR DISQUALIFICATION OF FROMMER LAWRENCE & HAUG

I, Michael Lerner, make this declaration in support of Plaintiff Reliant Pharmaceuticals, Inc.'s Motion For Disqualification Of Frommer Lawrence & Haug LLP.

1. I am the former Vice President, Legal Affairs, of Reliant Pharmaceuticals, Inc. ("Reliant"). I left Reliant in August 2006.

2. From September 2000 until August 2006, I was responsible for the legal affairs of Reliant. My responsibilities while at Reliant included retaining outside counsel and coordinating their activities with respect to Reliant's various intellectual property matters.

### Reliant's Relationship With FLH

3. In late 2001 or early 2002, I contacted Andrew Berdon, Esq. of Frommer Lawrence & Haug LLP ("FLH") regarding possible representation of Reliant with respect to potential intellectual property litigation concerning Reliant's fenofibrate drug product which was then under development.

4.      On February 15, 2002, I met with Edgar Haug, Esq., Mr. Berdon, and other FLH attorneys at their offices in New York City. At that initial meeting, the attorneys from FLH, including Mr. Haug, presented their credentials and described FLH's extensive experience in Hatch-Waxman litigation, patent prosecution, antitrust law and other related areas, as well as the pre-filing and regulatory counseling services offered by FLH with respect to New Drug Applications ("NDAs") and Abbreviated New Drug Applications ("ANDAs") filed pursuant to §505 of the Food, Drug and Cosmetic Act.

5.      Shortly after the February 15, 2002 meeting, based in large part on Mr. Haug's litigation experience and expertise, I retained FLH to represent Reliant and to serve as outside counsel relating to the U.S. regulatory strategy, related patent certification, counseling and potential litigation concerning Reliant's fenofibrate drug product. I understood that Reliant's primary contact at FLH would be Mr. Berdon, and that Mr. Haug would be involved in the work performed and act as lead trial counsel in the event of any ensuing litigation.

6.      During Mr. Berdon's tenure at FLH, Reliant and FLH established a strong attorney-client relationship which expanded to the point where I considered FLH to be Reliant's primary outside intellectual property counsel. During this time, FLH represented Reliant with respect to at least three other drugs, as well as intellectual property diligence matters. These matters concerned very sensitive legal and business issues, and were important for Reliant's patent portfolio and continued growth as a company. Reliant relied on FLH's advice, confidences and legal expertise.

7.      Throughout FLH's representation of Reliant, many FLH partners, associates, technical advisors and support staff worked on Reliant matters. Although Mr. Berdon

2

was Reliant's primary contact, other FLH partners, including Daniel Brown, Thomas Kowalski, Arthur Hoag, Jeffrey Hovden, and Charles Raubicheck, provided legal advice and assistance on Reliant matters. It is my understanding that, except for Mr. Berdon, all of them are still partners at FLH today.

8. Reliant ended its relationship with FLH in early 2004, when Mr. Berdon left FLH to join another law firm.

### FLH's Representation OF Reliant With Respect To Rythmol® And The '588 Patent

9. In or about June 2003, I contacted Mr. Berdon and retained FLH as IP counsel in connection with Reliant's potential purchase from Abbott Laboratories of the drugs Rythmol® and Rythmol® SR (collectively referred to herein as "Rythmol®") and the related patent portfolio, including the patent-in-suit in this case, U.S. Patent No. 5,681,588 ("the '588 patent"). Starting in June 2003 and through the execution of the agreement with Abbott on October 28, 2003, FLH provided legal advice concerning Reliant's acquisition of Rythmol® and related patents. Such advice concerned, for example, whether or not the patents were valid and enforceable, the availability of a potential design-around, potential litigation, the scope of patent protection, and the provisions of the Asset Purchase Agreement relating to intellectual property and certain other issues. This legal advice given to Reliant by FLH was primarily in the form of oral communications and e-mail. It is my understanding that because these communications are privileged, Reliant has not attached them as exhibits to this declaration. I also understand that, should the Court wish to review them, Reliant will submit documents for *in camera* inspection and review by FLH attorneys.

10. One specific area of legal advice provided by FLH to Reliant concerned the provisions of the Asset Purchase Agreement between Reliant and Abbott. On July 17, 2003, I forwarded the confidential draft Rythmol® Asset Purchase Agreement to FLH for its review and comments. The Asset Purchase Agreement was reviewed by at least Mr. Berdon and Mr. Hoag. They provided Reliant with specific advice concerning several provisions of the agreement, including for example, those relating to the nature and scope of the patent rights being given to Reliant, warranty provisions provided for in the agreement, and manufacturing rights granted to Reliant. In addition, FLH provided legal advice concerning the assignment of the Rythmol® patents, including the '588 patent, from Abbott to Reliant.

11. In addition to the draft Asset Purchase Agreement, Reliant also disclosed to FLH other confidential information concerning its purchase of Rythmol®. For example, on June 27, 2003, I forwarded a confidential Abbott Descriptive Memorandum to FLH. Reliant received this Descriptive Memorandum pursuant to a Confidential Access Agreement entered into with Abbott. The memo contained confidential information concerning, for example, the scientific and clinical drug properties, patent protection, expected FDA exclusivities, potential for a generic competitor to formulate bioequivalent drugs, the projected market for the drug, and the structure of the Asset Purchase Agreement.

12. Reliant also asked FLH to provide advice concerning its diligence investigation and issues relating to the patent protection that covered Rythmol®. Specifically, I requested and received legal advice concerning the validity, scope, enforceability and potential infringement of the patents included in the agreement, including the '588 patent in suit.

13. For example, Reliant specifically requested and received legal advice concerning infringement issues such as the potential ability to design around the patents. It is my understanding that Mr. Brown conducted this analysis under Mr. Berdon's supervision. Reliant also requested and received FLH's opinion regarding the scope and coverage of protection afforded by the '588 patent and other patents in Abbott's Rythmol® portfolio. In addition, FLH provided Reliant with an oral opinion regarding whether or not the Rythmol® patents, including the '588 patent, were valid and enforceable.

14. FLH also conducted a prior art search, reviewed prior art references, and provided advice concerning whether or not those references impacted the validity or enforceability of the '588 patent and the claimed formulation. For example, FLH reviewed and provided legal advice concerning Pich *et al.*, U.S. Patent No. 4,797,287 ("the Pich '287 patent"), including its claim limitations as compared to the Rythmol® SR formulation claimed in the '588 patent. I understand that, in this litigation, Par asserts that the Pich '287 patent anticipates the '588 patent. I also understand that the Pich '287 patent forms the basis for Par's claim of inequitable conduct. Thus, FLH is apparently providing Par with legal advice concerning very same subject matter that FLH reviewed and advised Reliant about prior to Reliant's acquisition of the '588 patent-in-suit.

15. FLH also provided Reliant with advice concerning regulatory issues regarding Rythmol® and the related patents, including the '588 patent. For example, FLH researched the patent expiration dates, availability of FDA exclusivities, and FDA patent listings for Rythmol®. FLH provided Reliant with additional legal advice regarding the legal and business implications of these FDA exclusivities. FLH also provided Reliant with legal advice concerning the significance of listing the Rythmol® patents, including the '588 patent-in-suit, in

the FDA's Orange Book, and how such listings would impact potential litigation concerning the patents.

16. Reliant purchased Rythmol®, the '588 patent, and other patents based in part on the pre-purchase patent diligence investigation conducted by FLH, including Messrs. Berdon, Hoag and Brown. In doing so, Reliant relied on the confidential legal advice provided by FLH regarding the scope, validity, infringement and enforceability of the patents, as well as the relevance of the prior art, including the Pich '287 patent. Reliant also relied on FLH's advice regarding the nature of the patent rights granted to Reliant pursuant to the Asset Purchase Agreement with Abbott.

I declare under penalty of perjury that the foregoing is true and correct.

March 9th, 2007
County of Essex, New Jersey

Michael Lerner

**ANDREA M. AMOROSI**
A Notary Public of New Jersey
My Commission Expires 03/11/2012

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor

I further certify that I caused to be served copies of the foregoing document on May 2, 2007 upon the following in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>Karen L. Pascale, Esquire<br>Young, Conaway, Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street<br>17th Floor<br>Wilmington, DE 19801 | *VIA ELECTRONIC MAIL*<br>*and HAND DELIVERY* |
| Edgar H. Haug, Esquire<br>Frommer Lawrence & Haug LLP<br>745 Fifth Avenue<br>New York, NY 10151 | *VIA ELECTRONIC MAIL*<br>*and FEDERAL EXPRESS* |

/s/ *Maryellen Noreika*
Maryellen Noreika (I.D. No. 3208)