UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
                                            :

RELIANT PHARMACEUTICALS, INC.    :

     Plaintiff,                       :

                                            :    **Civil Action No. 06-774-JJF**

             v.                      :

                                            :

PAR PHARMACEUTICAL, INC.,      :

     Defendants.                 :

                                            :
------------------------------------------------------------x

### DECLARATION OF PROFESSOR BRUCE A. GREEN IN SUPPORT OF PAR PHARMACEUTICAL, INC.'S OPPOSITION TO RELIANT PHARMACEUTICALS, INC.'S MOTION TO DISQUALIFY FROMMER LAWRENCE & HAUG LLP

I, Bruce A. Green, declare:

       1.      I am the Stein Professor at Fordham University School of Law, and currently serve as a Visiting Professor at New York University School of Law. I have been retained on behalf of the law firm of Frommer Lawrence & Haug LLP ("FLH"), which serves as counsel for defendant Par Pharmaceutical, Inc. ("Par"), to render an objective expert opinion in response to the motion of plaintiff Reliant Pharmaceuticals, Inc. ("Reliant") to disqualify the law firm from representing Par in this action. For the reasons discussed below, my conclusion is that under the applicable rules and decisions, FLH should not be disqualified.

### QUALIFICATIONS

       2.      A copy of my professional vita is attached. Since 1987, I have been a member of the full-time faculty of Fordham University School of Law, where I direct the Louis Stein Center for Law and Ethics. I am currently on leave, serving as a visiting professor at NYU School of

Law.  I previously served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals

for the Second Circuit, as a law clerk to Justice Thurgood Marshall of the U.S. Supreme Court,

and as an Assistant United States Attorney for the Southern District of New York.

      3.     I have regularly taught courses in the area of legal ethics at Fordham and

elsewhere since 1987, I speak frequently at CLE programs on the subject of legal ethics, and I

have authored a variety of scholarly articles and other writings in the area of legal ethics,

including on the subject of conflicts of interest in litigation.  *See, e.g.*, Bruce A. Green, Conflicts

of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71 (1996).

      4.     I have engaged in various other professional work relating to legal ethics.

Nationally, I serve as a member of the Multistate Professional Responsibility Examination

drafting committee, and I co-chair the ABA Criminal Justice Section's Committee on Ethics,

Gideon and Professionalism.  I have previously served as chair of the ABA Litigation Section's

Committee on Ethics and Professionalism, as a member of the ABA Litigation Section's Task

Force on Settlement Ethics, as reporter to the ABA Commission on Multijurisdictional Practice,

and as chair of the Section on Professional Responsibility of the Association of American Law

Schools.

      5.     On the state and local level, I currently serve as a member and past chair of the

New York State Bar Association's Committee on Professional Ethics and as a member of the

New York State Bar Association's Committee on Standards of Attorney Conduct.  I previously

served as a member of the Departmental Disciplinary Committee of the New York State

Supreme Court, Appellate Division, First Department, and as a member of the Committee on

Professional and Judicial Ethics of the Association of the Bar of the City of New York.

However, I render opinions in my individual capacity and do not speak on behalf of any of these or other entities.

## RELEVANT FACTS

6.      For purposes of rendering an opinion, I have reviewed Reliant's opening brief in support of its disqualification motion and accompanying submissions in support of the motion. Additionally, I have reviewed the declarations of Ali Berkin, Daniel Brown, Edgar H. Haug, Arthur Hoag, Jeffrey A. Hovden, Omar Jabri, Thomas J. Kowalski, Charles J. Raubicheck, James K. Stronski and John G. Taylor to be submitted in opposition to Reliant's motion.

7.      The relevant facts are evidently in dispute.  For purposes of rendering an opinion, I have been asked to assume the truth of FLH's submissions in opposition to the disqualification motion.  The relevant facts submitted on behalf of FLH and Par are, in summary, as follows:

A.      The instant lawsuit involves Par's intention to sell a generic version of Reliant's drug Rythmol prior to the expiration of Reliant's '588 patent.  Reliant seeks to enjoin Par from commercially manufacturing, using, offering to sell, selling or importing its proposed generic drug.

B.      FLH has represented Par since 1998, including in the regulatory phase of its efforts to market the generic drug in issue in this lawsuit, in developing defenses to a potential lawsuit, and now, in defense of the litigation.

C.      Reliant is a former client of FLH who was introduced to the firm by Andrew Berdon, a former non-equity partner, in early 2002.  Mr. Berdon was Reliant's principal contact at FLH on all matters.  When Mr. Berdon left FLH in February 2004, he took Reliant and its client files with him.

3

D.    FLH provided various legal services to Reliant that were unrelated to issues in the instant lawsuit.  Additionally, the firm provided some assistance relating to Reliant's transaction with Abbott GmbH & Co. KG ("Abbott") by which Reliant acquired, among other things, the drugs Rythmol and Rythmol SR and various patents including the '588 patent that is in issue in this litigation.  The principal legal work relating to the acquisition was evidently performed by lawyers other than those at FLH, whose billing records reflect that it spent less than 12 hours of lawyer time on the matter.  Specifically, FLH's billing records reflect that, months after Reliant began its negotiations with Abbott and shortly before the transaction was closed, (i) Mr. Berdon billed ½ hour of time on September 29, 2003 for reviewing "Rythmol information" and communicating with two non-FLH individuals; (ii) Mr. Berdon billed 8 1/4 hours from October 20-23, 2003, for reviewing and revising parts of the asset purchase agreement and assignment, reviewing Abbott and other patents, and investigating an unspecified FDA patent listing issue; and (iii) Arthur Hoag, then an FLH associate, billed 2.5 hours during that same period for reviewing the asset purchase agreement and discussing it with Mr. Berdon.  Additionally, a non-lawyer scientific advisor at the firm, Ali Berkin, billed fewer than 8 hours for conducting a search of publicly available data bases for patents assigned to three entities that referenced the active ingredient in Rythmol and preparing a three-paragraph summary memorandum describing Rythmol and attaching a table listing the patents found in his search.

E.    None of the law firm's work in connection with the acquisition agreement involved an analysis, study, opinion or other legal work regarding the scope, validity, infringement or enforcement of the '588 patent; none of the lawyers or non-lawyers remaining at FLH since Mr. Berdon's departure in 2004 received any confidences relating to these issues; and

as far as the firm's records reflect, Mr. Berdon himself never received any confidences relating to these issues.

F.    In an abundance of caution, the remaining personnel at FLH who had any involvement in the Abbott matter have been screened from the current representation. The lawyers representing Par in this lawsuit had nothing to do with that earlier representation and have no knowledge of any information that may have been provided by Reliant in the course of that representation.

## DISCUSSION

8.    Reliant submits that FLH must be disqualified to prevent its lawyers' use of confidences learned when Reliant was the law firm's client. In general, "[r]esolving the question of whether to disqualify counsel cannot be accomplished through mechanical means, but requires a careful balancing of the goals and objectives of professional conduct. 'The chosen mode of analysis is to carefully sift "all the facts and circumstances".' . . . The Third Circuit has long refused to adopt a per se rule in questions of disqualification." *Nemours Foundation v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 423 (D. Del. 1986) (Farnan, J.).

9.    Although a lawyer must protect a former client's confidences, *see* Del. Rules of Professional Conduct ("Delaware Rules"), Rules 1.6 & 1.9(c), there is no general prohibition against representing a current client in litigation against a former client. However, Reliant relies on Rule 1.9(a) of the Delaware Rules and on related decisions which establish that, to protect the former client's confidences, a lawyer must be disqualified from representing a party in litigation against the former client when there is a "substantial relationship" between the litigation and the former representation. Specifically, Rule 1.9(a) provides: "A lawyer who has formerly

represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

10.    As a general rule, under Rule 1.10(a), if any lawyer in a firm is prohibited by Rule 1.9(a) from undertaking a representation against a former client, no other lawyer in the firm may undertake the representation. The rule is different, however, when a lawyer who might otherwise have been disqualified because of a former representation has left the law firm. Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm, the firm is not
> prohibited from thereafter representing a person with interests materially adverse
> to those of a client represented by the formerly associated lawyer and not currently
> represented by the firm, unless:
> (1) the matter is the same or substantially related to that in which the formerly
> associated lawyer represented the client; and
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and
> 1.9(c) that is material to the matter.

In other words, once the lawyer who was responsible for the former client's matter has left the law firm, the firm may represent a new client against the former client even in a substantially related matter, if the remaining lawyers possess no relevant confidences.

11.    My opinion is that FLH should not be disqualified for the following two reasons. First, Reliant has not established that the firm performed legal services for it that are substantially related to the current lawsuit. On the contrary, FLH has established that its minimal services in connection with the Abbott transaction were *not* substantially related to this lawsuit, because the services did not involve the scope, validity, infringement or enforcement of the '588 patent. Second, even if one were to accept Reliant's representation that it imparted relevant confidences

in the course of the former representation, the firm should not be disqualified, because those

confidences were not imparted to or shared with any of the lawyers who are now at the firm;

Andrew Berdon, to whom the confidences presumably would have been imparted, left the firm in

2004, taking his Reliant client files with him.

*The "substantial relationship" test - general principles*

12.    Courts in this District have long recognized that the moving party has the burden

of establishing that there is a "substantial relationship" between a current and former

representation, and that, given the current client's interest in counsel of choice and the

proliferation of disqualification motions for tactical purposes, such a claim should be carefully

scrutinized:

> The appropriate standard in ruling on a motion to disqualify counsel based
> upon prior representation of a present adversary is the "substantial relationship"
> test. . . . Disqualification is appropriate when the subject matter of the new
> litigation is substantially related to the subject matter of the past representation. . .
> . The underlying purpose for the rule is to ensure that a client's confidential
> communications to his lawyer are not used against that client when his lawyer
> later represents a party adverse to the former client. . . .
>
> Despite this strong policy rationale, the rule prohibiting representation of a
> new client against a former client is not a per se rule. Instead, a court should
> undertake a "painstaking analysis of the facts" and evaluate applicable precedent
> before disqualifying counsel. . . .  Only if the moving party proves the requisite
> substantial relationship should a lawyer be disqualified. A movant for
> disqualification must have evidence to buttress his claim of conflict because a
> litigant should, as much as possible, be able to use the counsel of his choice. . . ..
> Also, because disqualification motions have increasingly been used as one
> weapon in the litigation arsenal, courts now approach such motions with "cautious
> scrutiny." . . .

*Satellite Financial Planning Corp. v. First National Bank of Wilmington*, 652 F. Supp. 1281,

1282-83 (D. Del. 1987)(Wright, J.)(citations omitted).

13.    Because the purpose of the "substantial relationship" test is to prevent the

lawyer's use of client confidences against the former client, the fundamental question is whether

the lawyer learned any confidential information in the earlier representation that would be

valuable in the new one. *Nemours Foundation*, *supra*, 632 F. Supp. at 424 ("Disqualification of

counsel is required 'where it appears that the subject matter of a pending suit in which the

attorney represents an interest adverse to a prior employer is such that during the course of the

former representation the attorney "might have acquired substantially related material."'")

(citation omitted).  The "substantial relationship" test serves as a proxy for that inquiry:

> In proving that prior representation is substantially related to present
> litigation, the moving party is not required to divulge the confidences actually
> communicated. . . . The Court instead should undertake "a realistic appraisal of
> the possibility that confidences had been disclosed in the one matter which will be
> harmful to the client in the other." . . .
>
> The Court must answer three questions to determine whether movants
> have satisfied the substantial relationship test:
> 1. What is the nature and scope of the prior representation at issue?
> 2. What is the nature of the present lawsuit against the former client?
> 3. In the course of the prior representation, might the client have disclosed to his
> attorney confidence which could be relevant to the present action? In particular,
> could any such confidences be detrimental to the former client in the current
> litigation? . . . The burden of proving that there is a substantial relationship falls
> upon the moving party. . . .

*Satellite Financial Planning Corp.*, *supra*, 652 F. Supp. at 1283 (citations omitted); *accord*

*Integrated Health Services of Cliff Manor, Inc. v. THCI, Co. LLC*, 327 B.R. 200, 206-09 (D. Del.

2005) (Sleet, J.) (applying three-part inquiry); Richard E. Flamm, Lawyer Disqualification § 9.5

(2003) at p. 179 (observing that in the Third Circuit, "the fact that two representations involve

similar or related facts is not sufficient, in and of itself, to warrant a finding of a substantial

relationship," but that "[t]wo matters will be deemed to be substantially related if – and only if –

it can reasonably be said that the allegedly tainted lawyer might have acquired confidential information in one matter which is relevant to, or could be used to the detriment of a former client in, a subsequent action") (footnotes omitted).

14.    The initial question under *Satellite Financial Planning Corp.* is the nature and scope of the firm's prior representation of the former client who seeks its disqualification.  It is important to focus on the scope of the legal services the firm actually provided, not on the scope of the client's general legal needs, which may largely have been addressed by other law firms or by its own in-house counsel.  For example, in *Satellite Financial Planning Corp.*, a litigation arising out of a credit agreement, a borrower, who was a third party defendant, moved to disqualify the defendant-bank's law firm on the ground that the firm had previously provided legal assistance to the borrower when it was incorporated.  In connection with the motion, the Court looked at precisely what work the firm had previously provided, ascertaining that the incorporation was "a routine one" in which the firm performed no advisory role and needed no information beyond "what is now in the incorporation documents," and thus, the scope of the representation was a "discrete one" in which the firm had performed "ministerial tasks."  652 F. Supp. at 1283-84

15.    The second question under *Satellite Financial Planning Corp.* is the nature of the present lawsuit. It is important to focus specifically on issues the litigation does and does not raise.  For example, in *Satellite Financial Planning Corp.*, in which the former representation had involved incorporating the borrower, the Court observed that although the current lawsuit was complex, there was no allegation of "a failure to fulfill the corporate purpose" drafted by the borrower's former counsel.  652 F. Supp. at 1284.

16.     The ultimate question under *Satellite Financial Planning Corp.* is whether, given the relationship between the current litigation and the prior representation, it is likely that the law firm would previously have learned confidential information that could now be used to the former client's detriment:

> The third prong of the substantial relationship inquiry links the prior and present representations by determining whether facts relevant to the present litigation might have been disclosed in the prior representation. In determining whether a fact might have been disclosed, the Court should consider whether a client and lawyer ought to have discussed the relevant facts or whether it would not have been unusual for the lawyer and client to have discussed the relevant facts. . . .
>
> . . .
>
> When resolving this third question, "the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit."

652 F. Supp. at 1284 (citations omitted). In that case, the Court found that, "given the discrete nature of" the legal services provided to the borrower in the context of its incorporation, "it would have been unusual for any confidential communications relevant to the instant lawsuit to have been communicated to" the lawyer. *Id.* at 1284. The Court noted that even where the prior representation had been more significant, courts had denied disqualification motions, looking beyond the mere facial similarity of the present and former representations and focusing, as did the Court, "'on the precise nature of the relationship between'" those representations. *Id.* at 1285 (citation omitted). *Accord Integrated Health Services of Cliff Manor, Inc.*, *supra*, 327 B.R. at 209 (in connection with its former law firm's preparation of regulatory filings, it would have been unusual for the plaintiff to discuss matters relevant to the current litigation concerning the company's structure and financing; "for the court to find that relevant confidential information

10

'might' have been communicated in the present case, it would be forced to hypothesize a conceivable but unlikely situation").

*There is not a "substantial relationship" between the former and current representations*

17.     As discussed below, there is not a "substantial relationship" between the current patent infringement litigation regarding the '588 patent in which FLH defends Par, on one hand, and the law firm's previous representation of Reliant regarding discrete aspects of the Abbott acquisition, on the other.  FLH represented Reliant in various matters prior to February 2004, when Andrew Berdon left the firm, taking Reliant as a client and the Reliant client files.  Reliant does not dispute that the overwhelming majority of FLH's legal work for Reliant had no conceivable relevance to the current lawsuit.  The arguable exception on which Reliant principally focuses is FLH's provision of discrete assistance – representing fewer than 8 hours of lawyer time and fewer than 9 hours of non-lawyer time – at the tail end of Reliant's negotiations to purchase the Rythmol drug portfolio, including the patent in issue in this infringement action, from Abbott.  It is important to focus on precisely what FLH was asked to do in the context of the acquisition and, in particular, on the exceedingly limited scope of FLH's services.  Based on FLH's records, the firm provided no analysis or advice regarding the value, validity, enforceability or potential infringement of the patents being acquired.  Evidently, Reliant relied on the services of other counsel in connection with the acquisition; if Reliant received legal advice about the value, validity, enforceability or potential infringement of the patents, that advice was provided by Reliant's other counsel.  Mr. Berdon spent a half hour in late September, 2003 reviewing information and talking to two non-FLH individuals, then he and an associate spent fewer than 11 hours combined in late October, primarily devoted to reviewing, revising and

11

discussing the draft asset purchase agreement and patent assignment. A non-lawyer advisor conducted and summarized a search of publicly-available resources to identify patents owned by three entities that referenced the active ingredient in Rythmol. The current patent litigation does not implicate the work actually performed by FLH, as might be the case if the lawsuit involved a dispute between Abbott and Reliant regarding the meaning or effectiveness of the transaction documents. Given these circumstances, the question is whether, in performing minimal work in connection with the Abbott acquisition, FLH would be expected to have learned confidences that could now be used against Reliant. Although *Satellite Financial Planning Corp.* cautions that the Court, in considering this question, should not allow its imagination to run wild, even the most imaginative comparison of the former and current representations belies the argument that Reliant may have imparted confidences relevant to the current patent litigation.

18. In sum, FLH provided discrete legal services near the conclusion of an acquisition in which patents were acquired, but these did not include analyzing or advising on the validity, enforceability or potential infringement of the patents. As in *Satellite Financial Planning Corp.*, whatever confidences or other information or documents (such as the draft agreement and assignment) were likely to have been imparted for the benefit of the limited services provided to the former client would have no utility in the later litigation. In this case, given the limited scope of FLH's discrete services in the acquisition, there is no basis to infer that Reliant imparted confidential information to FLH regarding patents acquired as part of that transaction that might now be useful in the current litigation. Nor is there reason to believe that any confidences that Reliant did impart to enable FLH to provide its limited services would be relevant to the current patent litigation. This being so, there is not a "substantial relationship" between the former and

current representations, and the disqualification motion should be denied. *See, e.g.*, *Agilent Technologies, Inc. v. Micromuse, Inc.*, 2004 U.S. Dist. LEXIS 20723, *34 (S.D.N.Y. 2004) (denying disqualification in part because law firm's former representation regarding "corporate governance issues, employment matters, original equipment manufacturer ('OEM') agreements, patent and trademark filings, and financing instruments" was not substantially related to current patent infringement action); *Ebix.Com, Inc. v. McCracken*, 312 F. Supp.2d 82, 93-94 (D. Mass 2004) (in company's lawsuit alleging illegal misappropriation of confidential information and customers, lawyers who previously represented the company in the limited role as local counsel in a corporate merger were not disqualified from representing the defendants because, although the non-compete agreements in issue in the litigation were part of the documentation in the merger, the law firm did not draft or offer opinions on them); *O'Neill v. Globespan, Inc.*, 2001 U.S. Dist. LEXIS 23113, *19-23 (C.D. Ca. 2001) (in injunctive action involving former employee's alleged violation of non-compete agreement and misappropriation of trade secrets, lawyer who previously represented the movant-company in an acquisition was not disqualified from representing the company's former employee and his new employer, because even if efforts to avoid disclosure of trade secrets was an issue in the acquisition, the law firm had not been involved in drafting or analyzing the non-compete agreement in issue in the litigation); *Unisys Corp. v. Amperif*, 1992 U.S. Dist LEXIS 12577, *11 (E.D. Pa. 1992) (law firm's prior "legal advice on discrete labor issues, such as employee discharge, employee discrimination matters, and employee maternity rights" was distinct from and unrelated to current patent infringement action involving a cache memory device).

 *Even assuming that FLH, through Andrew Berdon, provided "substantially related"*

13

*legal services, it should not be disqualified because its current lawyers received no relevant*
*confidences*

19.    Reliant maintains that, contrary to FLH's billing records and its lawyers'
representations, the firm in fact provided legal advice regarding the validity of the '588 patent
and Reliant provided confidences that would be significant in the current lawsuit to enable the
firm to provide that advice.  Significantly, Reliant's assertions to this effect are conclusory and
not supported either by documentation or by submissions from Andrew Berdon, to whom Reliant
would have imparted any such confidences.  Given Reliant's burden of proof on the
disqualification motion, it clearly has not established that there is a substantial relationship
between this lawsuit and FLH's former work or that relevant confidences were imparted that
must be protected.  But even if it were otherwise, as discussed below, FLH should not be
disqualified, because no substantially related services were performed by the lawyers who are
still at the firm and no relevant confidences were imparted to them.  If any lawyer at the firm
received relevant confidences, it presumably was Mr. Berdon, who left the firm and took the
Reliant files with him before the firm began representing Par in the current lawsuit and the prior
related regulatory proceedings.

20.    As quoted above in paragraph 10, Rule 1.10(b) provides that if the lawyer who
formerly represented the opposing party has left the firm, the firm may undertake a representation
adverse to the former client unless "(1) the matter is the same or substantially related to that in
which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the
firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter."  The rule is
based on a provision of the ABA Model Rules of Professional Conduct that, in turn, was derived

from prior decisions in the disqualification setting. *E.g.*, *Cosette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186 (7th Cir. 1979). The rule calls for a "pragmatic approach . . . to the question of vicarious disqualification," in place of one of "rigid formalism"; it "balances the expectations of confidentiality of a former client against the importance of allowing a client the representation of his choice . . .." *Nemours Foundation*, *supra*, 632 F. Supp. at 425. In particular, the rule rejects any presumption that, when a lawyer who worked on a matter for a former client has left the firm, lawyers remaining at the firm possess relevant confidences. *See Unisys Corp.*, *supra*, 1992 U.S. Dist LEXIS 12577 at *11 (where lawyer who performed work for former client has left the firm, former client moving for disqualification "must demonstrate that" it imparted confidential information relevant to the current lawsuit to a lawyer who is currently with the firm). On the contrary, if those lawyers remaining at the firm deny having received relevant privileged information, a court should presume their representations to be true. *See Carbo Ceramics, Inc. v. Norton-Alcoa Proppants*, 155 F.R.D. 158, 163-64 (N.D. Tex. 1994) (accepting representations that confidences were never imparted by lawyer prior to leaving the firm, and observing, "a person who makes statements under oath or penalty of perjury is presumed to tell the truth" and "[s]urely no less should be presumed with regard to such statements given by attorneys who in addition have taken an oath to uphold the law as officers of the court"). Further, the presumption that the lawyers remaining in the firm have truthfully averred that they received no relevant confidences cannot be overcome by conclusory and undocumented allegations that relevant confidences were shared with the departed lawyer or that the departed lawyer may have shared such information with lawyers remaining at the firm. *See*

15

*Unisys Corp.*, *supra*, 1992 U.S. Dist LEXIS 12577, *11-12 & n.9 (noting significance of failure of company's general counsel and of departed lawyer, who still represented the company, to say precisely "what information was imparted and to whom"); *see also Novo Terapeutisk Laboratorium A/S*, *supra*, 607 F.2d at 197 (noting the significance of the failure of departed lawyer, who continued to represent the firm's former client, to state what confidences he shared with others); *Bowman v. Bank of Delaware*, 1988 U.S. Dist. LEXIS 4628, * 7-8 (D. Del. 1988) (Wright, J.) ("[T]he court must . . . be cautious when deciding motions to disqualify when the facts are not clear.  A litigant should, absent a genuine conflict of interest, be able to choose his counsel . . .  Motions to disqualify are subject to abuse because they can greatly delay an action and cause great expense and inconvenience to a client whose counsel has been disqualified.  The integrity of the legal system could be damaged if attorneys could be disqualified on the basis of a single, disputed, undocumented telephone call.").

21.    In this case, no remaining lawyer at FLH performed any substantial work in connection with the Abbott acquisition, and none performed any work whatsoever that might be conceivably be characterized as "substantially related" to this patent infringement action.  On the contrary, the only lawyer other than Mr. Berdon who performed any legal services whatsoever was an associate who billed 2 ½ hours reviewing the asset purchase agreement and talking with Mr. Berdon about it.  This work would not have involved disclosures of client confidences relating to this lawsuit.  Nor, for that matter, would the public-record searches performed by the firm's non-lawyer scientific advisor – totaling fewer than 8 hours – have required the disclosure of any relevant confidences.  Therefore, even if one were to accept Reliant's representations that Mr. Berdon, the departed lawyer, may personally have learned confidences relevant to the present

16

lawsuit while working on the Abbott transaction, one cannot presume that he shared those confidences with the remaining lawyers, especially given their limited role. *See, e.g., Richard v. Southern Pacific Transp. Co.*, 735 F. Supp. 206, 208-09 (E.D. La. 1990) (denying disqualification where only lawyer remaining at firm who worked on prior matter had only an insubstantial role). In any event, their affidavits establish that they do not possess any relevant confidences, and Reliant has not submitted any concrete evidence to cast doubt on those submissions.

## CONCLUSION

22.    FLH's disqualification is not warranted under the applicable rules, case law and professional understandings. Its brief, discrete work in connection with the Abbott acquisition was not "substantially related" to this patent infringement action. Based on FLH's submissions, there is no reason to fear that the firm ever acquired relevant confidential information from Reliant that could now be used against its former client and for Par's benefit. But even if that were not so, the submissions establish that none of the current FLH lawyers possess any relevant confidences. Disqualifying the firm would deprive Par of its long-time counsel who is familiar with the facts of this case, having represented it in related regulatory proceedings and prepared its defense, but would serve no salutary purpose.

lawsuit while working on the Abbott transaction, one cannot presume that he shared those confidences with the remaining lawyers, especially given their limited role. *See, e.g.*, *Richard v. Southern Pacific Transp. Co.*, 735 F. Supp. 206, 208-09 (E.D. La. 1990) (denying disqualification where only lawyer remaining at firm who worked on prior matter had only an insubstantial role). In any event, their affidavits establish that they do not possess any relevant confidences, and Reliant has not submitted any concrete evidence to cast doubt on those submissions.

## CONCLUSION

22.     FLH's disqualification is not warranted under the applicable rules, case law and professional understandings. Its brief, discrete work in connection with the Abbott acquisition was not "substantially related" to this patent infringement action. Based on FLH's submissions, there is no reason to fear that the firm ever acquired relevant confidential information from Reliant that could now be used against its former client and for Par's benefit. But even if that were not so, the submissions establish that none of the current FLH lawyers possess any relevant confidences. Disqualifying the firm would deprive Par of its long-time counsel who is familiar with the facts of this case, having represented it in related regulatory proceedings and prepared its defense, but would serve no salutary purpose.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on May 8, 2007

Bruce A. Green

17

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 9, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jack B. Blumenfeld [jbbefiling@mnat.com]
Maryellen Noreika [menefiling@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

I further certify that on May 9, 2007, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

### By E-Mail and Hand Delivery

Jack B. Blumenfeld [jblumenfeld@mnat.com]
Maryellen Noreika [mnoreika@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

### By E-Mail and FedEx

John Desmarais [jdesmarais@kirkland.com]
Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
Christine Willgoos [cwillgoos@kirkland.com]
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ Karen L. Pascale

_____

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,
Par Pharmaceutical, Inc.*

2

**BRUCE A. GREEN**
**Louis Stein Professor of Law**
**Fordham University School of Law**
**140 West 62nd Street**
**New York, NY 10023**
**(212) 636-6851; (212) 636-6899 (FAX)**
**bgreen@law.fordham.edu**

## Bar Admissions

New York State (since 1982)
U.S. District Courts for the Southern and Eastern Districts of New York
U.S. Court of Appeals for the Second Circuit
U.S. Supreme Court

## Education

**Columbia University School of Law**: J.D. 1981
    Honors: James Kent Scholar; Harlan Fiske Stone Scholar
    Associate Editor, *Columbia Law Review*

**Princeton University**: A.B. 1978, *summa cum laude*

## Current Legal Employment

**Fordham University School of Law**:
    Louis Stein Professor of Law, since 1997
    Professor, 1996-97; Associate Professor, 1987-96
    Director, Louis Stein Center for Law and Ethics, since 1997
    Director, Stein Center for Ethics and Public Interest Law, 1992-97
    Responsible for teaching courses in the areas of legal ethics, criminal law and criminal
procedure, and for overseeing the Stein Scholars Program

**New York University School of Law**: Visiting Professor: January-May 2007

## Prior Full-time Legal Employment

**Office of the United States Attorney for the Southern District of New York**:
    October 1983 to August 1987, Assistant United States Attorney
    Deputy Chief Appellate Attorney, 1986-87; Chief Appellate Attorney, 1987

**U.S. Supreme Court**:  Law clerk to Justice Thurgood Marshall, 1982-83

**U.S. Court of Appeals for the Second Circuit**: Law clerk to Judge James L. Oakes, 1981-82

### Other Legal Positions

**Departmental Disciplinary Committee, Appellate Division, First Department**: Member, 1997-2002

**New York City Conflicts of Interest Board**: Member, Nov. 1995 to March 2005

**Handschu Authority**: Civilian member, July 1994 to Nov. 1995

**Office of Investigations Officer (U.S. v. I.B.T.)**: Special Counsel (part-time), 1991

**Office of Independent Counsel Lawrence Walsh**, Associate Counsel (part-time), 1988-91

**New York State Commission on Government Integrity**: Consultant and special investigator, 1988-90

**Columbia University School of Law**: Adjunct Professor (part-time), 1990

**Office of the United States Attorney for the Southern District of New York**: Special Assistant United States Attorney (part-time), September 1987 to June 1988

**Fordham University School of Law**: Adjunct Assoc. Professor (part-time), 1985-87

### Professional Service

**American Bar Association**:
    Commission on the American Jury Project: member, 2006 to present
    Commission on Multijurisdictional Practice: reporter, 2000-02
    Coordinating Group on Bioethics and the Law: member, 1997-2003
    Section of Criminal Law:
        Ethics, Gideon and Professionalism Committee: co-chair, 2006 to present
    Section of Litigation:
        Council member, 2004 to present
        Committee on Law Faculty Involvement: co-chair, 1998-2001, 2003-04
        Civil Justice Institute: member, 2001-03
        Task Force on Ethical Guidelines for Settlement Negotiations: member, 2000-02
        Ethics 2000 Task Force: member, 1999-2000
        Committee on Ethics and Professionalism: co-chair, 1995-98
        Task Force on the Independent Counsel Act: reporter, 1997-99
        Rep. to Sec./Div. Committee on Professionalism and Ethics, 1996-2003
        Committee on Amicus Curiae Briefs: chair, 1991-95
    Special Committee on Death Penalty Representation: member, 2006 to present
    Standing Committee on Professionalism: reporter, 2000-01

**American Bar Association (continued)**:
Steering Committee for the Symposium on the Multijurisdictional Practice of Law: reporter, 1999-2000
Task Force on the Attorney-Client Privilege: reporter, 2004 to present
Task Force on Law Schools and the Profession: consultant, 1991-92

**Association of American Law Schools:** Chair, Section of Professional Responsibility, 1999

**Association of the Bar of the City of New York**:
Delegate to NYS Bar Association, 2003 to present
Committee on Professional and Judicial Ethics: member, 1994-97, 2003-06
Nominating Committee: member, 2005
Ethics 2000 Committee: member, 1999-2001
Jt. Committee on the Legal Referral Service: chair, 1993-96; member, 1996-2000
Committee on International Access to Justice: member,1999-2000
Committee on Disaster Plan: member, 1996-97
Marden Lecture Committee: member, 1991-94
Criminal Law Committee: member, 1991-94
Task Force on Lawyer Training: member, 1992-94
Corrections Committee: member, 1988-91

**Criminal Law Bulletin**: Contributing editor, 1988-98

**Evan B. Donaldson Adoption Institute**: Ethics Advisory Committee: member, 1998-2001

**Federal Bar Council**:
Second Circuit Courts Committee: member, 1994-97; chair, Subcommittee on Criminal Law and Ethics
*Federal Bar Council News*: member of the Editorial Board, 1995 to present
Inn of Court: master, 2000-02

**Fund for the City of New York:** Member of Advisory Committee for the New York Housing Court Online Preparation System (COPE), 1999

**National Conference of Bar Examiners:** Member of MPRE Drafting Committee, 2001 to present

**New York County Lawyers' Association**:
Director, May 2004 to present
Member of Justice Center advisory board, 2003 to present

**New York State Bar Association:**
      House of Delegates member, 2003 to present
      Committee on Professional Ethics: Chair, 1998-2001; member, 1991 to present
      Committee on Standards of Attorney Conduct (formerly Special Committee to Review
the Code of Professional Responsibility): member, 1997 to present
      Task Force on Attorney Client Privilege, 2006 to present
      Task Force on "Pay to Play" Concerns, member, 1998-2000

**New York State Task Force on Attorney Professionalism and Conduct:** Member, 1996-98

<u>**Awards**</u>

Powell Pierpont Award, given by the N.Y.C. Conflicts of Interest Board "for outstanding service to the New York City Conflicts of Interest Board," May 23, 2006

New York State Bar Association Criminal Justice Section Award for "outstanding contribution in the field of criminal law education," Jan. 23, 2003

Sanford D. Levy Award, given by New York State Bar Association Committee on Professional and Judicial Ethics, 1990

## PUBLICATIONS

### Articles in Law Journals

Permissive Rules of Professional Conduct, 91 Minn. L. Rev. 265 (2006) (with Fred C. Zacharias)

Taking Cues: Inferring Legality from Others' Conduct, 75 Fordham L. Rev. 1429 (2006)

The Religious Lawyering Critique, 21 J. of Law & Religion 283 (2006)

Representing Children in Families – Foreword, 6 Nevada L. Rev. 571 (2006) (with Annette R. Appell)

"Anything Rather Than a Deliberate and Well-Considered Opinion"–Henry Lord Brougham, Written by Himself, 19 Georgetown J. Legal Ethics 1221 (2006) (with Fred C. Zacharias)

Reconceptualizing Advocacy Ethics, 74 George Washington L. Rev. 1 (2005) (with Fred C. Zacharias)

Foreword, Professional Challenges in Large Firm Practices, 33 Fordham Urb. L.J. 7 (2005)

Prosecutorial Neutrality, 2004 Wisconsin L. Rev. 837  (with Fred C. Zacharias)

Foreword, Colloquium, Deborah Rhode's *Access to Justice*, 73 Fordham L. Rev. 841 (2004)

Federal Court Authority to Regulate Lawyers: A Practice in Search of a Theory, 56 Vand. L. Rev. 1303 (2003) (with Fred C. Zacharias)

Prosecutorial Ethics as Usual, 2003 Illinois L. Rev. 1573

Criminal Neglect: Indigent Defense from an Ethics Perspective, 52 Emory Law Review 1169 (2003)

Regulating Federal Prosecutors' Ethics, 55 Vand. L. Rev. 381 (2002) (with Fred C. Zacharias)

Bar Association Ethics Committees: Are They Broken?, 30 Hofstra L. Rev. 731 (2002)

May Judges Attend Privately Funded Educational Programs?  Should Judicial Education Be Privatized?: Questions of Judicial Ethics and Policy, 29 Fordham Urb. L.J. 941 (2002)

John D. Feerick: The Dean of Ethics and Public Service, 70 Fordham L. Rev. 2165 (2002)

Judicial Rationalizations for Rationing Justice: How Sixth Amendment Doctrine Undermines Reform, 70 Fordham L. Rev. 1729 (2002)

Thoughts About Corporate Lawyers After Reading *The Cigarette Papers*: Has the "Wise Counselor" Given Way to the "Hired Gun"?, 51 DePaul L. Rev. 407 (2001)

Reflections on the Ethics of Legal Academics: Law Schools as MDPs; or, Should Law Professors Practice What They Teach?, 42 S. Tex. L. Rev. 301 (2001)

Public Declarations of Professionalism, 52 S. Car. L. Rev. 729 (2001)

The Disciplinary Restrictions on Multidisciplinary Practice: Their Derivation, Their Development, and Some Implications for the Core Values Debate, 84 Minn. L. Rev. 1115 (2000)

The Uniqueness of Federal Prosecutors, 88 Georgetown L.J. 207 (2000) (with Fred C. Zacharias)

Must Government Lawyers "Seek Justice" in Civil Litigation?, 9 Widener J. Pub. L. 235 (2000)

There But for Fortune: Real-Life vs. Fictional "Case Studies" in Legal Ethics, 64 Fordham L. Rev. 977 (2000)

Rationing Lawyers: Ethical and Professional Issues in the Delivery of Legal Services to Low-Income Clients, 67 Fordham L. Rev. 1713 (1999)

Why Should Prosecutors "Seek Justice"?, 26 Fordham Urb. L.J. 609 (1999)

The Criminal Regulation of Lawyers, 67 Fordham L. Rev. 327 (1998)

Lawyers as Nonlawyers in Child-Custody and Visitation Cases: Questions From a "Legal Ethics" Perspective, 73 Ind. L.J. 665 (1998)

Lawyer Discipline: Conscientious Noncompliance, Conscious Avoidance, and Prosecutorial Discretion, 66 Fordham L. Rev. 1307 (1998)

Less is More: Teaching Legal Ethics in Context, 39 Wm. & Mary L. Rev. 357 (1998)

Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey--Or Revived Everywhere Else?, 28 Seton Hall L. Rev. 315 (1997)

The Role of Personal Values in Professional Decisionmaking, 11 Geo. J. of Legal Ethics 19 (1997)

Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71 (1996)

Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?, 64 George Washington L. Rev. 460 (1996)

Foreword: Children and the Ethical Practice of Law, in Ethical Issues in the Legal Representation of Children, 64 Fordham L. Rev. 1281 (1996) (with Bernardine Dohrn)

Contextualizing Professional Responsibility: A New Curriculum for a New Age, 58 Law & Contemp. Probs. 193 (1995) (with Mary Daly & Russell Pearce)

Policing Federal Prosecutors: Do Too Many Regulators Produce Too Little Enforcement?, 8 St. Thomas L. Rev. 69 (1995)

Of Laws and Men: An Essay on Justice Marshall's View of Criminal Procedure, 26 Ariz. St. L.J. 369 (1994) (with Daniel Richman)

Foreword, Ethical Issues in Representing Older Clients, 62 Fordham L. Rev. 961 (1994) (with Nancy Coleman)

Foreword, Urban Environmental Equity, 21 Fordham Urb. L.J. 425 (1994)

Lethal Fiction: The Meaning of "Counsel" in the Sixth Amendment, 78 Iowa L. Rev. 433 (1993) [reprinted in 6 Crim. Prac. L. Rev. 183 (1994)]

"The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful, 25 Loyola of Los Angeles L. Rev. 699 (1992)

"Power, Not Reason": Justice Marshall's Valedictory and the Fourth Amendment in the Supreme Court's 1990-91 Term, 70 N.C.L. Rev. 373 (1992)

After the Fall: The Criminal Law Enforcement Response to the S&L Crisis, 59 Fordham L. Rev. S155 (1991)

Zealous Representation Bound: The Intersection of the Ethical Codes and the Criminal Law, 69 N.C.L. Rev. 687 (1991) [reprinted in 4 Crim. Prac. L. Rev. 323 (1992)]

"Hare and Hounds": The Fugitive Defendant's Constitutional Right to Be Pursued, 56 Brooklyn L. Rev. 439 (1990) [reprinted in 4 Crim. Prac. L. Rev. 67 (1992)]

The Good-Faith Exception to the Fruit of the Poisonous Tree Doctrine, 26 Crim. L. Bull. 509 (1990)

Doe v. Federal Grievance Committee: On the Interpretation of Ethical Rules,  55 Brooklyn L.Rev. 485 (1989)

"Through a Glass, Darkly": How the Court Views Motions to Disqualify Criminal Defense Lawyers, 89 Colum. L. Rev. 1201 (1989) [reprinted in 2 Crim. Prac. L. Rev. 551 (1990)]

Her Brother's Keeper: The Prosecutor's Responsibility When Criminal Defense Counsel Has a Conflict of Interest, 16 Am. J. Crim. L. 323 (1989)

"Package" Plea Bargaining and the Prosecutor's Duty of Good Faith, 25 Crim. L. Bull. 507 (1989)

Limits on a Prosecutor's Communications With Prospective Defense Witnesses, 25 Crim. L. Bull. 139 (1989)

A Prosecutor's Communications With Represented Defendants: What Are the Limits?, 24 Crim. L. Bull. 283 (1988)

The Ethical Prosecutor and the Adversary System, 24 Crim. L. Bull. 126 (1988)

Note, Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance, 81 Colum. L. Rev. 366 (1981)

Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L. Rev. 1053 (1980)

## **Articles in Legal Periodicals**

Articles in *Federal Bar Council News*: "Privileges in the Corporate Context," vol. 12, no. 1, p. 4 (2005); "Ethics Reform in New York," vol. 11, no. 2, p. 11 (2004); "MJP for Litigators," vol. 10, no. 4, p. 14 (2003); "Privately-Funded Seminars for Judges," vol. 9, no. 5, p. 1 (2002); "Multijurisdictional Issues," vol. 7, no. 4, p. 11 (2000); "Moral Ambiguity/Ambiguous Morals: Morgan Stanley and the $10,000 Payment," vol. 6, no. 4, p. 1 (1999); "When Prosecutors Accuse Criminal Defense Lawyers of Wrongdoing," vol. 5, no. 5, p. 1 (1998); "Prosecuting Lawyers," vol. 5, no. 4, p. 11 (1998); "A View From The 'Ethics' Front," vol. 5, no. 3, p. 7 (1998); "Professional Detachment," vol. 4, no. 4, p. 8 (1997); "The Philosophy of Our Ethical Rules," vol. 4, no. 3, p. 23 (1997); "The President vs. Mrs. Jones," vol. 4, no. 1, p. 11 (1997); "Should Judges Promote Professionalism?," vol. 3, no. 4, p. 4 (1996); "Bad Arguments," vol. 3, no. 1, p. 7 (1996); "The Sins of the Lawyer (and the Procedural Consequences)," vol. 2, no. 4, p. 9 (1995); "Attorney Discipline in the Second Circuit," vol. 2, no. 2, p. 11 (1995)

"Deceitful Silence," 33 Litigation 24 (Winter 2007)

"Feeling a Chill," ABA Journal, Dec. 2005, pp. 61-65 (with David C. Clifton)

"Prosecuting Means More Than Locking Up Bad Guys," 32 Litigation 12 (Fall 2005)

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," ABA Section of Litigation, Committee on Corporate Counsel Newsletter, vol. 19, no. 1, p. 1 (Fall 2004) [reprinted in ABA Section of Litigation, Professional Liability Litigation [Newsletter], vol. 3, no. 1, p. 1 (Winter 2005)]

Client Confidences: Should Lawyers Be Allowed to Reveal Them to Prevent Death or Serious Bodily Harm?: Yes, New York Lawyer, Oct. 2001, p. 20

Adventures in the Mortgage Trade: A Case Study in Legal Ethics, 27 N.Y. Real Property Law Journal 49 (Spring, 1999) (with Joshua Stein) [also published in Commercial Real Estate Financing: What Borrowers and Lenders Need to Know 1999 vol. 2, p. 749 (PLI 1999)]

Lying Clients: An Age-Old Problem, 26 Litigation 19 (Fall 1999)

When Conflicts of Interest Arise Unexpectedly, Litigation Ethics (Spring/Summer 1998), p. 11

The "No-Contact" Rule in New York State--Some Less Contentious Questions, N.Y. Professional Responsibility Report (Aug. 1998), p.1

The Ten Most Common Ethical Violations, 24 Litigation 48 (Summer 1998) [reprinted in Trial (March 1999), p. 70]

Teaching Legal Ethics in Context, 70 N.Y.S.B.J. 6 (May/June 1998) (with Mary Daly)

Ethical Issues in Representing Children, 7 The Professional Lawyer 9 (1996)

Federal Prosecutors' Ethics: Who Should Draw the Lines?, 7 The Professional Lawyer 1 (1995)

Ethical Issues in Representing Older Clients, 5 The Professional Lawyer 18 (1994)

Crime and Punishment After the S&L Crisis, 46 Consumer Finance L.Q. Rep. 195 (1992)

Conflicts of Interest in Corporate Criminal Cases, 1 Corp. Crim. & Const'l L. Rptr. 98 (1990)

"Judge Kennedy Might Not Meet Expectations of Administration," Nat'l L.J., Dec. 21, 1987, p. 20

## Other Legal Writings

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," in ABA Section of Litigation, 2004 Annual Conference.

Report of the Commission on Multijurisdictional Practice (Aug. 2002)

"Representing Corporations Under Fire: Ethical Considerations – A Hypothetical," and "Representing Corporations Under Fire: Ethical Considerations," in MCLE Marathon 2002 521, 527 (PLI 2002)

Interim Report of the Commission on Multijurisdictional Practice (Nov. 2001)

"A Guide to Professionalism Commissions" report of the ABA Standing Committee on Professionalism (2001)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 2001 413 (PLI 2001) (with Mary Lu Bilek)

Editor, *Litigation Ethics: Course Materials for Continuing Legal Education* (ABA Section of Litigation 2000) (with John Q. Barrett)

"Assisting Clients with Multi-State and Interstate Legal Problems: The Need to Bring the Professional Regulation of Lawyers into the 21st Century" (report summarizing the proceedings of the Symposium on the Multijurisdictional Practice of Law) (June 2000)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 1999 311 (PLI 1999)

"The Duty to Report Ethical Misconduct," in ABA Section of Family Law, *1998 Annual Meeting* 17 (July 31-Aug. 3, 1998)

"The Ethics of Marketing Legal Services," in *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 1996) (with Russell Pearce), and *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 2d ed. 2005) (with Russell Pearce)

"Local Rules Limiting Attorney Speech in Criminal Proceedings" (Federal Bar Council, June 1996) (principal author)

"Establishing Ethical Standards for Federal Prosecutors and Defense Attorneys," 49 The Record of the Assn. of the Bar of the City of New York 21 (1994) (principal author)

*Tax Fraud and Money Laundering* (The John Marshall Publ. Co., 1993) (with Robert H. Hishon & Richard A. Westin)

Editor, *Government Ethics for the 1990's: The Collected Reports of the New York State Commission on Government Integrity* (Fordham Univ. Press, 1991)

Reporter to *Evidence in America: The Federal Rules in the United States* (1989-91 supp., Fed. R. Evid. 801, 802, and 804)

"Ex Parte Contacts With Employees of a Corporate Party in Civil Litigation," <u>in</u> ABA Section of Litigation, *Best Evidence Seminar* 41 (Apr. 19, 1991)

"Use of an Attorney's Statements Against His or Her Client," <u>in</u> ABA Section of Litigation, *Best Evidence Seminar* 35 (Mar. 9-10, 1990)

11

**Participation in Professional and Academic Programs**  (since January 2000)

Trainer, "Ethical Issues in Legal Services Practice," Legal Services of New York, March 7, 2007

Speaker, "Inquiring, Prying, Snooping and Spying -- The Use and Misuse of Private Investigators," American Academy of matrimonial lawyers, New York Chapter, May 4, 2007, NY, NY

Panelist, "Technology and Ethical Issues," Technology in the Practice & Workplace Committee Midwinter Meeting, ABA Section of Labor & Employment Law, NYU School of Law, April 27, 2007

Co-presenter, "The Private Bar and the Public Interest: Structuring Deliberation within Professional Associations," 13th Annual Clifford Symposium on Tort Law and Social Policy ("Distortions in the Attorney/Client Relationship: Threats to Sound Advice?"), DePaul Univ. College of Law, April 19, 2007

Panelist, "When the Ends Justify the Means: Use of Dissembling in Investigations in Aid of Civil and Criminal Litigation," NYCLA Inn of Court, March 22, 2007

Speaker, "Prosecutorial Ethics," Goldstock Criminal Law Lunch Seminar, N.Y.U. School of Law, March 8, 2007

Panelist, "Ethics and Mediation – Where There's Smoke, There's Fire!," Goliath vs. Goliath - Organizing the Construction Case for Mediation, ABA Section of Dispute Resolution, Feb. 23, 2007

Moderator, The Executive Branch's Legal Response to the Post 9-11 World: Unconstitutional Overreach or Necessary Precaution?, Fordham Law School, Feb. 22, 2007

Panelist, "The Prosecution and Defense of American White Collars - An Ethical Quagmire," Federal Bar Council Inn of Court, Jan. 25, 2006

Moderator, "Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?," AALS 2007 Annual Meeting, Washington, D.C., Jan. 4, 2007

Co-panelist, Ethics in Criminal Practice, "2006 Legislative Program, Part I," Office of the NYS Attorney General, Dec. 7, 2006

Panelist, "Ethics and Professionalism," N.Y. State Bar Ass'n, Dec. 7, 2006

Speaker and moderator, "Ethics for Government Lawyers," Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, Dec. 5, 2006

Co-panelist, "Ethical Issues Raised by Internal & Governmental Investigations," Mealey's Corporate Liability & Compliance Conference," Miami, Fla., Nov. 14, 2006

Panelist, "The Seventh Annual 'Ethics for Corporate Counsel' Program: Corporations in Crisis," N.Y. State Bar Ass'n, Oct. 13, 2006

Panelist, "NYCLA Retreat: Ethics," N.Y. County Lawyers' Association, Oct. 9, 2006

Response, "When Conscience Clashes with State Law & Policy: Distinctions between the Roles of Lawyers and Judges," Inst. on Religion, Law and Lawyer's Work, Fordham Law School, Sept. 22, 2006

Panelist, "Ethical Considerations for Corporate Investigations: Update 2006," Association of the Bar of the City of New York, Sept. 12, 2006

Panelist, "Assault on the Attorney-Client Privilege: What Every Lawyer Needs to Know," Fall 2006 National Legal Malpractice Conference, ABA Standing Committee on Lawyers' Professional Liability, Chicago, IL, Sept. 8, 2006

Panelist, "Avoiding Inadvertent Production of Privileged Documents," ABA TeleConference and Audio Webcast, August 8, 2006

Speaker, "Choice of Ethics Rules in Arbitration," Transatlantic Perspectives on ADR, St. John's Univ. School of Law & Chartered Institute of Arbitrators, London, England, July 27, 2006

Panelist, "Privileges in Regulatory & Criminal Investigations: Legal & Ethical Issues," Association of the Bar of the City of New York, June 27, 2006

Panelist, "Common Conflicts of Interest in Transactional Law Settings," ABA TeleConference and Audio Webcast, June 27, 2006

Panelist, "Emerging Issues: Money and Government," Twelfth Citywide Seminar on Ethics in New York City Government, N.Y.C. Conflicts of Interest Board/New York Law School, May 23, 2006

Panelist, "Preparing or Coaching the Witness: Where is the Ethical Line?," New York County Lawyers' Association, May 16, 2006

Keynote speaker, "The Conversation Between Law and Medicine," Student Physician Awareness Day, New York Medical College, Mt. Kisco, NY, April 27, 2006

Panelist, "Common Conflicts of Interest in Transactional Law Settings," Spring 2006 National Legal Malpractice Conference, NY, NY, April 6, 2006

Trainer, "Ethical Issues in Legal Services Practice," Legal Services for New York City, March 30, 2006

Co-speaker, "Ethics and Public Interest Law: Discussion of Current Issues (2006)," N.Y. Lawyers for the Public Interest, March 30, 2006

Panelist, "Ethical Considerations of an In-House Lawyer," Annual Seminar of the Securities Industry Association Compliance and Legal Division, Hollywood, Florida, March 20, 2006

Moderator, "Ethical Issues in Private Funds Practice," 7th Annual International Conference on Private Investment Funds, International Bar Ass'n & ABA Section of Business Law, London, England, Feb. 27, 2006

Panelist, "Ethics in Commercial Mortgage Practice," Commercial Real Estate Financing 2006, PLI, Feb. 17, 2006

Panelist, "Government Requests for Corporate Waivers of the Attorney-Client Privilege," NYSBA Annual Meeting, Jan. 25, 2006

Facilitator, "Conference on Representing Children in Families: Children's Advocacy and Justice Ten Years After Fordham," William S. Boyd School of Law, Las Vegas, NV, Jan. 12-14, 2006

Commentator, "Professional Responsibility and the Religious Traditions," AALS Annual Meeting, Washington, D.C., Jan. 4, 2006

Panelist, "Checking the Pulse of the Attorney-Client Privilege," ABA Connection teleconference, Dec. 21, 2005

Moderator, "Litigation Ethics: Problems of Conflicts, Confidentiality and Candor," Federal Bar Council 2005 Fall Bench & Bar Retreat, Nov. 6, 2005

Panelist, "Le secret Professionnel des Avocats en France et aux USA" [Attorney-Client Privilege in France and the U.S.], La Barreau de Lille & New York County Lawyers' Association, Lille, France, Oct. 28, 2005

14

Panelist, "Le Plaider coupable" [The Guilty Plea], La Barreau de Lille & New York County Lawyers' Association, Lille, France, Oct. 27, 2005

Panelist, "Corporate Crimes: Investigating and Prosecuting the Entity and its Employee," New York Council of Defense Lawyers Retreat, Oct. 15, 2005

Panelist, "Zealous Advocacy: Ethics for the Criminal Defense Attorney," Fordham Univ. School of Law, Oct. 11, 2005

Panelist, "Ethical Considerations for Corporate Investigations," Association of the Bar of the City of New York, September 14, 2005

Moderator, "The Attorney-Client Privilege from Cradle to Grave: An Examination of the Role, Implications, and Viability of the Attorney-Client Privilege," ABA Annual Meeting, Chicago, IL, Aug. 7, 2005

Moderator, "Ethical Issues in Pro Bono," Association of the Bar of the City of New York, June 28, 2005

Panelist, "Ethical Dilemmas for Financial Services Attorneys," SIA Compliance & Legal Division, June 21, 2005

Panelist, "Civility & Zealous Advocacy – Building Blocks to Success: The American College of Trial Lawyers Codes of Pre-Trial & Trial Conduct," Association of the Bar of the City of New York, June 20, 2005

Presenter, Symposium: "Should There Be an Effort to Develop Uniform Statewide Attorney Disciplinary Rules?", NYCLA, May 13, 2005

Panelist, "The Efficacy of Unbundling Legal Services," Partners in Justice: A Colloquium on Developing Collaborations Among Courts, Law School Clinical Programs and the Practicing Bar, New York State Judicial Institute, May 9, 2005

Panelist, "You're Fired! Conflicts of Interest and Disqualification of Counsel," Federal Bar Council, April 26, 2005

Speaker, "Ethical Issues in Legal Services Practice," Legal Services of New York, March 15, 2005

Panelist, "Rising to the Challenge: How Should a Civil Practitioner Deal with Liars, Cheaters, Suicide Threateners, and Other Difficult Clients?," Fordham Univ. School of Law, March 14, 2005

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2005, PLI, Feb. 18, 2005

Speaker, "United States Regulation of Multijurisdictional Practice," Conference on Liabilities of Lawyers in Crossborder Transactions and Disputes, Center for International Legal Studies, Kitzbuhel, Austria, Jan. 25, 2005

Panelist, "New Developments in Ethical Considerations for the Business Attorney," in MCLE Marathon 2004, PLI, Dec. 16, 2004

Panelist, "Waivers That Work - Managing Conflicts Effectively," NYLJ & Stein Center, Dec. 6, 2004

Moderator, "Practical Problems in Litigation Ethics," Trial Evidence in the Courts: Problems and Solutions, ALI-ABA, Dec. 2, 2004

Panelist, "'Acceptable Lies?' - The Ethics of Negotiation, and Legal Duties of Disclosure," NYLJ & Stein Center, Dec. 1, 2004

Moderator, "Ethical and Professional Issues in Litigation," Marilyn Stein Bellet Conference on Law and Ethics, Hilton Head, SC, Nov. 13, 2004

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2004," Association of the Bar of the City of New York, Sept. 14, 2004

Moderator, "Tattletales or Crimestoppers: Disclosure Ethics Under Model Rules 1.6 and 1.13," ABA Annual Meeting, Atlanta, GA, Aug. 7, 2004

Panelist, "Representing Clients with Diminished Capacity," NYSBA Legal Assistance Partnership Conference, Albany, NY, June 15, 2004

Panelist, "Avoiding Potholes: Discovery and Ethics on the Highway to Trial," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 6, 2004

Panelist, "Confronting Possible Client Fraud: Is 'Don't Ask, Don't Tell' an Ethically Acceptable Approach?," Brooklyn Bar Ass'n, Apr. 14, 2004

Panelist, "Ethical Issues in Pro Bono," Association of the Bar of the City of New York, Feb. 25, 2004

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2004, PLI, Feb. 24, 2004

Panelist, "Should New York Adopt the Model Rules of Professional Conduct?," NYSBA 2004 Annual Meeting, Jan. 28, 2004

Panelist, "Ethical Challenges in Employment Law," ABCNY, Jan. 16, 2004

Moderator, "Ethics in Action: The Role of Intergenerational Differences in Setting a Lawyer's Moral Compass," Northeast NALP, Jan. 15, 2004

Panelist, "The Attorney-Client Privilege and the Potential Abuse of Public and Private Power," AALS Annual Meeting, Atlanta, Ga., Jan. 5, 2004

Panelist, "Conflict of Interest Issues in Corporate Representation," PLI, Dec. 19, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, Dec. 18, 2003

Panelist, "Should Criminal Defense Lawyers Be Constrained by the Truth?: The Limits of Zealous Advocacy," Fordham Univ. School of Law, Nov. 25, 2003

Speaker, "Government Attorney Conduct from the Ethics Committees' Perspective," 2003 Ethics for Government Attorneys, Office of the NYS Attorney General, Nov. 14, 2003

Panelist, "Ethical Dilemmas Faced During the Defense of a Criminal Case," co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Nov. 13, 2003

Panelist, "Ethics for Corporate Counsel," N.Y.S. Bar Ass'n Corporate Counsel Section, Oct. 27, 2003

Panelist, "Thorny Ethical Issues in Litigation," Federal Bar Council 2003 Fall Bench & Bar Retreat, CT, Oct. 18, 2003

Panelist, "Legal Ethics vs. Personal Morality: How to Resolve the Unresolvable," co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Sept. 29, 2003

Commentator, conference on "Judging Judges' Ethics," Hofstra University School of Law, Sept. 14-15, 2003

Panelist, "Ethical Considerations for Corporate Investigation: Updates 2003," ABCNY, September 11, 2003

Panelist, panel on Ethics for program on "Real Estate Titles and Transfers, N.Y. State Bar Ass'n, June 19, 2003

17

Moderator, "Conflicts of Interest in Criminal Practice," ABA National Conference on Professional Responsibility, Chicago, IL, May 29, 2003

Co-panelist, "Ethical Considerations of Asset Protection," Estate Planners Day, Estate Planning Council of NYC, May 9, 2003

Panelist, "Plenary Session: Coming Soon to a State Rules Committee Near You: How Will Ethics 2000 Affect Lawyer Liability?," ABA National Legal Malpractice Conference, New Orleans, Apr. 24, 2003

Moderator, "Ethics for Litigators," Assoc. of the Bar of the City of New York, Apr. 14, 2003

Moderator, "Top Ten Reasons Why You Should Read the 2002 Model Rules of Professional Conduct," ABA Section of Litigation Annual Meeting, Houston, TX, April 12, 2003

Panelist, "Collaborations Between Lawyers and Social Workers: Avoiding Ethical Minefields," Fordham Univ. School of Law, April 7, 2003

Moderator, "Effect of Present Wartime Legislation on Practicing Attorneys: A Discussion of Future Implications," conference on American Democracy in Times of War, Benjamin N. Cardozo School of Law, March 24, 2003

Speaker, "Criminal Neglect: Non-diligent Criminal Defenders, Under-funded Public Defense Systems, and the Disciplinary Non-response," What Do Clients Want? Emory Conference on Ethics and Professionalism, Emory Univ. School of Law, March 14, 2003

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice, March 6, 2003

Panelist, "The Ethics of Helping Clients Who Cannot Help Themselves," Fordham Univ. School of Law, March 3, 2003

Speaker, "Criminal Neglect: Non-Diligent Criminal Defenders, Under-funded Public Defender Systems, and the Disciplinary Non-response," Association for Practical and Professional Ethics annual meeting, Charlotte, N.C., Feb. 28, 2003

Panelist, "Benchmarks of Ethics Center Excellence: Funding Strength," Ethics Center Colloquium: Strategic Planning for Ethics Centers, Association for Practical and Professional Ethics, Charlotte, N.C., Feb. 27, 2003

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2003, PLI, Feb. 25, 2003

Moderator, panel on "Integrity in the Practice of Law," Conference on Integrity in the Law, Fordham Univ. School of Law, Feb. 7, 2003

Co-presenter, Asset Protection – Ethical Considerations, UJA Federation of NY, Feb. 4, 2003

Trainer, "Disciplinary Procedures and Overview of Issues Relevant to MELS' Practice," Legal Services for New York City, Feb. 3, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, December 19, 2002

Panelist, "Ethical Issues in Representing a Corporation Under Investigation," Fordham Univ. School of Law, November 19, 2002

Luncheon speaker, "Ethical Issues for Government Lawyers in Dealing with Witnesses," Professional Responsibility Officers' Conference, U.S. Department of Justice, Washington, D.C., November 13, 2002

Panelist, "Talking to the Media: Practical & Ethical Considerations Lawyers Need to Know about the Big, Bad World of TV & Radio," Association of the Bar of the City of New York, November 12, 2002

Moderator, "Moral Philosophy and the Practice of Justice," Federal Bar Council, Kerhonkson, NY, October 26, 2002

Panelist, "Representing the Corporation in Crisis," New York State Bar Association, Business Law Section Fall Meeting, St. Thomas, October 11, 2002

Panelist, "Seminars for Judges: Should Judges Attend Seminars Funded by Private Organizations, and if so, How Should Such Programs Be Funded?,"Association of the Bar of the City of New York, October 9, 2002

Speaker, ABA National Legal Malpractice Conference, Chicago, IL, Sept. 13, 2002

Panelist, "Keeping to the Straight and Narrow: Ethical Issues for Civil Litigators," N.Y. State Bar Ass'n, June 7, 2002

Panelist, "Teaching Professional Responsibility: 'Woodshedding' or Coaching the Witness and Impeaching the Honest Witness," plenary session of AALS Conference on Evidence, Alexandria, Va., June 1, 2002

Moderator, "Law Practice at the Crossroads: How Far Should We Go in Changing Rules Governing Cross-Border Practice and Bar Admission?," N.J. State Bar Ass'n annual meeting, May 22, 2002

Panelist, "The New York Lawyer Practicing Delaware Law" (program on "The Delaware-New York Nexus 2002"), N.Y. County Lawyers' Ass'n, May 3, 2002

Speaker, "Prosecutorial Ethics as Usual," conference on ABA Model Rules of Professional Conduct, University of Illinois School of Law, April 5, 2002

Moderator, "Ethical Issues for the Lawyer in Dealing with Mentally Ill Clients," Association of the Bar of the City of New York, March 23, 2002

Moderator, "Legal Issues Arising from Acts of Terrorism and Anti-Terrorist Efforts," U.S. Judicial Conference for the District of New Jersey, March 20, 2002

Co-panelist, "Ethical Issues in Transactional Practice," Fordham Law School, March 6, 2002

Trainer, "Selected Topics in Legal Ethics," Legal Services for New York City, March 5, 2002

Speaker, "Ethical Considerations," program on "Commercial Real Estate Finance," PLI, February 26, 2002

Panelist, "Legal Ethics in the Practice of Criminal Law," Association of the Bar of the City of New York, February 21, 2002

Panelist, "Ethics Issues in Multijurisdictional Practice," ABA Connection, February 20, 2002 and February 21, 2002 (teleconference)

Panelist, "Dialogue Regarding the Issue: Justice Monitors Attorney/Client Communications," Joint program of APRL and ABA Center for Professional Responsibility, ABA Midyear Meeting, Philadelphia, Jan. 31, 2002

Panelist, "Preparing and Presenting Experts: Practical and Ethical Issues," N.Y.S. Bar Ass'n annual meeting, Antitrust Law Section, Jan. 24, 2002

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice at NYU School of Law, Dec. 11, 2001

Panelist, New Developments in Ethical Considerations for the Business Lawyer, MCLE Marathon 2001, PLI, Dec. 7, 2001

Speaker, "Ethics and Professionalism," program titled "Update 2001," N.Y.S. Bar Ass'n, Nov. 2, 2001

Panelist, "Ethics and Discovery," Federal Bar Council, Oct. 14, 2001

Co-presenter, "Ethics for Transactional Lawyers," Fordham Law School, Oct. 10, 2001

Speaker, 2001 Legal Ethics Conference: "Legal Ethics: What Needs Fixing?," Hofstra University School of Law, Sept. 10, 2001

Panelist, "Ethics and Criminal Procedure," Israeli Ministry of Justice (in conjunction with the Stein Center), Jerusalem, Israel, July 5, 2001

Panelist, ethics issues in real estate practice, "Real Estate Titles and Transfers," N.Y.S. Bar Ass'n, June 14, 2001

Co-chair and speaker, "Ethics and Professionalism," N.Y.S. Bar Ass'n, June 13, 2001

Panelist, "Ethical Issues in Welfare Advocacy," The Legal Aid Society, June 11, 2001Panelist, "Ethics in Government," State of New York Office of the Attorney General, June 9, 2001

Panelist, "What Every New Attorney Must Know About Ethics, Part II," PLI, May 29, 2001

Panelist, "Training the Advocate," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 10, 2001

Presenter, ethics issues in commercial real estate finance, program on "Commercial Real Estate Finance," PLI, May 4, 2001

Panelist, program on Ethics in Litigation, New York County Lawyers' Assn., April 30, 2001

Presenter, Clifford Symposium on Tort Law and Social Policy ("Smoke Signals: The Changing Landscape of the Practice, Financing and Ethics of Civil Litigation in the Wake of the Tobacco Wars"), April 5-6, 2001, DePaul College of Law

Moderator, Ethical Issues in Settlement Negotiations, Walter F. George School of Law, Mercer University, March 9-10, 2001

Presenter, CLE program on ethics in criminal defense representation, Brooklyn Defender Services, Jan. 30, 2001

Panelist, Symposium on Unlawful Practice of Law: Toward a Definition of the "Practice of Law," NYSBA annual meeting, Jan. 25, 2001

Panelist, CLE program on legal ethics, PLI, Nov. 21, 2000

Panelist, CLE program on ethics in transactional representation, Fordham Univ. School of Law, Nov. 8, 2000

Panelist, CLE program on ethics in criminal advocacy, Fordham Univ. School of Law, Nov. 1, 2000

Panelist, CLE program on ethics in real estate transactions, Chicago Title, Oct. 30, 2000

Panelist, CLE program on witness preparation, Federal Bar Council, Oct. 25, 2000

Panelist, symposium on professionalism sponsored by S. Carolina Univ. School of Law, Savannah, Ga., Oct. 21, 2000

Panelist, CLE program on ethical issues for legal services lawyers, LSNY, Oct. 11, 2000

Presenter, symposium on ethics issues for law professors, S. Tex. College of Law, Oct. 6, 2000

Presenter, faculty workshop, ethics issues for law professors, Fordham Univ. School of Law, Sept. 28, 2000

Panelist, "Ethical Considerations in Asset Protection – Views from the Bench and Bar," ABA annual meeting, July 10, 2000

Panelist, "Lawyer vs. Client: Avoiding Ethical Pitfalls When the Attorney-Client Relationship Becomes Rocky," ABA annual meeting, July 9, 2000

Panelist, program on corporate internal investigations and cooperation, titled "I'm from the Government and I'm Here to Help You," ACCA, June 27, 2000

Panelist, program titled "Ethical Considerations for Criminal Practitioners," NYCLA, June 27, 2000

Speaker, "The Blurring Line Between Law & Business – Maintaining Ethical Standards," NYLJ General Counsel Conference, June 16, 2000

Panelist, panel on Ethics and the Newsgathering Process, for PLI program on "Newsgathering & Libel Litigation 2000," June 15, 2000

Member of planning committee, Partnerships Across Borders: A Global Forum on Access to Justice, ABCNY, Apr. 6-8, 2000.

Speaker, Symposium on "Prosecutorial Misconduct: Discretion, Remedies, and Ethics," Georgetown Law School, Mar. 30, 2000

Speaker, CLE program on legal ethics, Appellate Division, First Department, Mar. 27, 2000

Speaker, Symposium on "Legal Ethics for Government Lawyers: Straight Talk for Tough Times," Widener Univ. School of Law (Harrisburg), March 23, 2000

Organizer and participant, Symposium on the Multijurisdictional Practice of Law, Mar. 10-11, 2000

Speaker, CLE program on current topics in legal ethics, Fordham Law School, March 7, 2000

Panelist, "The Ethics, Tactics and the Law of Witness Preparation," Federal Bar Council annual winter meeting, Feb. 29, 2000

Panelist, "Lawyers Under Investigation: Are Prosecutors and Defense Lawyers Simply 'Doing Their Jobs'?", Federal Bar Counsel annual winter meeting, Feb. 28, 2000

Speaker, "The Future of the Legal Profession: A Symposium on Multidisciplinary Practice," Minnesota Law School, Feb. 26, 2000

Moderator, workshop program for deans and bar leaders, ABA Mid-Year Meeting, Feb. 11, 2000

Organizer and speaker, CLE program on ethics in litigation, Fordham Law School, Feb. 8, 2000

Invited guest, meeting of the Subcommittee on Attorney Conduct Rules, Committee on Rules of Practice and Procedure, Judicial Conference of the United States, Feb. 4, 2000

Organizer and introducer, program on "Ethics in Criminal Advocacy," AALS Annual Conference, Jan. 6, 2000