# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-774-JJF |
| | ) | |
| v. | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| PAR PHARMACEUTICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR DISQUALIFICATION OF FROMMER LAWRENCE & HAUG LLP

Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

Original Filing Date: May 25, 2007
Redacted Filing Date: May 30, 2007

i.

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................... 1

ARGUMENT ...................................................................... 2

    I.    FLH CANNOT RE-WRITE HISTORY TO AVOID ITS ETHICAL
        OBLIGATIONS TO ITS FORMER CLIENT RELIANT ................ 2

        A.    Reliant Was A Client Of FLH ................................. 2

        B.    FLH's Own Sworn Declarations Demonstrate That It
             Represented Reliant With Respect To Rythmol® And The
             '588 Patent ..................................................... 4

    II.    FLH IS ETHICALLY BARRED FROM REPRESENTING PAR IN THIS
        SUBSTANTIALLY RELATED MATTER ............................ 10

        A.    FLH's Former Representation Of Reliant Is Substantially Related
             To Its Current Representation Of Par ........................... 10

        B.    The Purported "Information Wall" Is Not Sufficient To Protect
             Reliant's Confidential And Privileged Information ............... 15

        C.    There Is Considerable Risk That FLH Will Use -- Or Already
             Has Used --Reliant's Attorney-Client Confidences To Its Detriment ... 18

CONCLUSION .................................................................... 19

ii.

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen, Inc. v. Elanex Pharms., Inc.,*
    160 F.R.D. 134 (W.D. Wash. 1994) ............ 16, 17

*Buckley v. Airshield Corp.,*
    908 F. Supp. 299 (D. Md. 1995) ............ 12, 14

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,*
    809 F. Supp. 1383 (N.D. Cal. 1992) ............ 17

*EZ Paintr Corp. v. Padco, Inc.,*
    746 F.2d 1459 (Fed. Cir. 1984) ............ 18

*Gen. Elec. Co. v. Valeron Corp.,*
    608 F.2d 265 (6th Cir. 1979) ............ 15

*Goldberg v. Warner/Chappell Music, Inc.,*
    125 Cal. App. 4th 752, 23 Cal.Rptr.3d (Cal.Ct. App. 2005) ............ 10

*In re Corn Derivatives Antitrust Litig.,*
    748 F.2d 157 (3d Cir. 1984) ............ 19

*INA Underwriters Ins. Co. v. Nalibotsky,*
    594 F. Supp. 1199 (E.D. Pa. 1984) ............ 10

*Jack Eckerd Corp. v. Dart Group Corp.,*
    621 F. Supp. 725 (D. Del. 1985) ............ 16

*Monon Corp. v. Wabash Nat'l Corp.,*
    764 F. Supp. 1320 (N.D. Ind. 1991) ............ 15, 19

*Richardson v. Hamilton Int'l Corp.,*
    469 F.2d 1382 (3d Cir. 1972) ............ 16

*St. Barnabas Hospital v. New York City Health and Hospitals Corp.,*
    7 A.D.3d 83 (N.Y.A.D. 1 Dept. 2004) ............ 10

*Stratagene v. Invitrogen Corp.,*
    225 F. Supp. 2d 608 (D. Md. 2002) ............ 14

*Sun Studs, Inc. v. Applied Theory Assocs., Inc.,*
    772 F.2d 1557 (Fed. Cir. 1985) ............ 19

1.

## INTRODUCTION

Frommer Lawrence & Haug LLP ("FLH"), Par's litigation counsel in this action, represented Reliant from June 2003 through October 2003 in connection with Reliant's acquisition of the product, Rythmol® SR, and the patent, U.S. Patent No. 5,681,588 ("the '588 patent"), involved in this lawsuit. In the course of its former representation, FLH provided Reliant with legal advice concerning the validity, enforceability and potential infringement of the '588 patent, the potential for a generic competitor (such as Par) to design a bioequivalent Rythmol® product around the '588 patent, the regulatory listing of the patent and its impact on potential litigation, and the terms of the patent assignment and asset purchase agreement under which Reliant acquired the Rythmol® portfolio. FLH's confidential legal advice included an analysis of the relevance of certain prior art patents, including U.S. Patent No. 4,797,287 ("the Pich '287 patent"), which Par and FLH now argue renders the '588 patent invalid and unenforceable. Accordingly, FLH's current representation of Par is materially adverse and substantially related to its previous representation of Reliant.

FLH still has institutional knowledge concerning the confidential legal advice provided to Reliant concerning the Rythmol® SR product and the '588 patent. Current FLH partners Dan Brown and Arthur Hoag, as well as scientific advisor Ali Berkin, were directly involved in or privy to Reliant's confidential attorney-client communications concerning Rythmol® and the '588 patent. Par's lead trial counsel, Edgar Haug, admittedly has had access to at least four confidential documents containing work product for Reliant that currently remain in FLH's files. Although FLH has purported to erect an "information wall" screening Messrs. Brown, Hoag and Berkin from FLH's current representation of Par.

REDACTED                                    REDACTED

Moreover, as demonstrated by Mr. Haug's declaration, that "wall" has not

2.

prevented Par's litigation counsel from reviewing FLH's work product that was created on Reliant's behalf in the course of its former attorney-client relationship.

Thus, there is a real and substantial danger that FLH will use, if it has not already used, Reliant's confidential and attorney-client privileged information, gained in the course of its former representation, to Reliant's detriment. Accordingly, Reliant requests that the Court disqualify FLH from representing Par in this litigation.

<u>ARGUMENT</u>

I.    FLH CANNOT RE-WRITE HISTORY TO AVOID ITS ETHICAL
      <u>OBLIGATIONS TO ITS FORMER CLIENT RELIANT</u>

A.    <u>Reliant Was A Client Of FLH</u>

In an effort to avoid its ethical duty to its former client Reliant, FLH argues that Reliant was not an "institutional client" of FLH. Haug Decl. at ¶ 5.[1] This assertion is belied by the record and by FLH's own actions. Throughout its opposition brief and supporting declarations, Par and FLH attempt to narrowly characterize Reliant's attorney-client relationship as limited to Mr. Berdon, casting Reliant as a client of Mr. Berdon, and not an institutional client of the firm. This characterization is incorrect.

FLH has acknowledged that it represented Reliant for at least two years, in at least 11 separate matters, concerning at least seven drug products. Haug Decl. at ¶ 8. In 2003 alone, FLH billed over $ 300,000 to Reliant for over 1100 hours of work. At least five current FLH partners, Jeffrey Hovden, Thomas Karlowsi, Charles Raubichek, Arthur Hoag and Edgar Haug, were sufficiently involved in Reliant matters that their work necessitated their submission of

---

[1]    "Haug Decl.," as used to herein, refers to the Declaration of Edgar H. Haug In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief.

3.

declarations to this Court, and at least two FLH partners, Dan Brown and Arthur Hoag, have purportedly been screened from this litigation.  Par Opp. at 12.  Although Mr. Berdon was Reliant's primary contact at FLH, Reliant retained FLH, based in part, on Mr. Haug's reputation and abilities as a trial lawyer.  Lerner Decl. at 5.  In addition, Reliant relied on the advice and expertise of many other FLH partners and associates.  Lerner Decl. at 7.[2]

Perhaps most telling, however, is the letter attached as Exhibit 1 to Mr. Haug's declaration.  In that letter, written to Mr. Lerner after Reliant transferred its pending matters, Mr. Haug wrote:

> [W]e would appreciate receiving a written waiver as to any future conflict with respect to any of the products that we have worked on for you in the past.  As you know, we have been approached by numerous other pharmaceutical companies to work on a number of the products that we were working on for you and turn that work away because the company perceived to constitute a potential conflict.  Given that we will no longer be representing you and that Andy Berdon has left the firm, we would like your written assurance and agreement that we are now free to work in any and all of these products, even if that may result in an adverse position to Reliant Pharmaceuticals.

Thus, FLH recognized that Reliant was an institutional client whose representation might conflict the firm out of work for other pharmaceutical companies on matters adverse to Reliant's interests.  Reliant never waived conflicts as requested in the letter, nor did it waive FLH's conflict in this matter against Par.  Suppl. Lerner Decl. at ¶ 16.[3]  Thus, FLH was not free to take on its current representation of Par.

---

[2]     "Lerner Decl.," as used herein, refers to the March 9, 2007 Declaration of Michael Lerner In Support Of Reliant's Motion For Disqualification Of Frommer Lawrence & Haug, submitted with Reliant's Opening Brief.

[3]     "Suppl. Lerner Decl.," as used herein, refers to the May 24, 2007 Supplemental Declaration of Michael Lerner In Support Of Reliant's Motion For Disqualification Of Frommer Lawrence & Haug, submitted with Reliant's Reply Brief.  The exhibits to the Supplemental Lerner declaration have been redacted to protect Reliant's attorney-client

4.

**B.    FLH's Own Sworn Declarations Demonstrate That It Represented**
**Reliant With Respect To Rythmol® And The '588 Patent**

Beyond attempting to deny that Reliant was an institutional client of the firm,
FLH claims that it did not represent Reliant with respect to the '588 patent and Rythmol®. Haug
Decl. at ¶ 3. The self-serving nature of this claim is evident from the face of Par's Opposition
brief and the supporting declarations submitted by eight current FLH partners. Indeed, although
Par claims to have "affirmative proof" that FLH did no work in relation to Reliant's Rythmol®
purchase (Par Opp. at 4), such alleged proof consists of nothing more than FLH's own sloppy
timekeeping records and the convenient lack of memory of its own attorneys and scientific
advisors.[4]  Moreover, FLH has not, and cannot, offer one shred of evidence that contradicts
Reliant's assertions, supported by the sworn declaration of its in-house attorney and
contemporaneous e-mails, that FLH counseled Reliant regarding the validity, enforceability,
infringement and potential design around of the patent and the product at issue in this action. In
contrast, the spurious nature of FLH's hindsight justifications of the work it performed for
Reliant are apparent. [5]

---

privilege. Reliant will, however, submit an unredacted version to the Court, if requested,
for *in camera* inspection. Reliant will also provide unredacted exhibits to FLH, if
requested, on a non-waiver, "FLH attorneys' eyes only" basis.

[4]    For example, Par and FLH suggest, based on FLH's billing records, that FLH did not do
any work for Reliant on the Rythmol® matter until September 29, 2003 (Par Opp. at 6-7),
even though the contemporaneous e-mails show that FLH was working on the matter in
June, July, and early September. Suppl. Lerner Decl. at ¶¶ 3-6.

[5]    For example, FLH suggests that Latham & Watkins advised Reliant concerning the
validity, enforceability and potential infringement of the Rythmol® patents based on
nothing more than speculation and conjecture. Latham & Watkins, however, did not
provide Reliant with legal advice concerning the validity, enforceability, or potential
infringement or design around of the Rythmol® patents. Suppl. Lerner Decl. at ¶ 14.

5.

For example, Par claims that "FLH did not provide an opinion as to whether the patents that Reliant had agreed to purchase were valid, enforceable, or easy to design around. FLH performed no evaluation of the patent acquired, and received none of the detailed information regarding the patent (such as their file histories) necessary to competently evaluate such patents or to form a conclusion as to the validity, enforceability or scope of such patents." Par Opp. at 26. This assertion is contradicted not only by Reliant's e-mails demonstrating otherwise, but also by the sworn declarations of FLH's own lawyers and advisors.[6]

In its Opening Brief, Reliant demonstrated that Dan Brown, a current FLH partner, was involved in the patent analysis conducted on its behalf by FLH concerning the '588 patent. Reliant Br. at 14-15; Lerner Decl. at ¶ 13. Mr. Brown submitted a sworn statement in support of Par's Opposition, stating his belief that he has "never met or spoken to Mr. Lerner or communicated with him or anyone else at Reliant orally or by e-mail." Brown Decl. at ¶ 5.[7] That statement, however, is contradicted by Par's own lead counsel, Edgar Haug. In his declaration, Mr. Haug references a conversation he had with Mr. Berdon to determine whether FLH provided Reliant with an opinion about the '588 patent. Haug Decl. at ¶ 23. Mr. Haug's sworn declaration recounts a telephone conversation between Mr. Berdon, Mr. Brown and Reliant's in-house counsel, Michael Lerner, during which the three discussed "potential infringement/design around of a patent being acquired by Reliant." Haug Decl. at ¶ 23. Mr. Haug's statement flatly contradicts Par's assertion that FLH never advised Reliant concerning

---

[6]    Notably, Par's assertion, and FLH's admission, that FLH's work with respect to Reliant's purchase of the '588 patent was not competent goes to whether FLH committed malpractice with respect to its former representation of Reliant, not to whether representation is substantially related to FLH's representation of Par in this action.

[7]    "Brown Decl.," as used to herein, refers to the Declaration of Daniel Brown In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief.

6.

the potential infringement or design-around of the '588 patent, as well as Mr. Brown's statement that he was never involved in such work for Reliant. Moreover, the accuracy of Mr. Brown's statement is further contradicted by the e-mail communication between Mr. Berdon, Mr. Lerner and Mr. Brown that reflects Mr. Brown's work on the file history of the '588 patent, as well as the contemporaneous reference to the telephone call in an e-mail from Mr. Berdon to Mr. Lerner.[8] Suppl. Lerner Decl. at ¶ 5. Thus, Mr. Brown's statement that he never did any work for Reliant is simply wrong.[9] Similarly, Par's assertions that FLH did not advise Reliant concerning the potential infringement or design-around of the '588 patent, and did not receive the '588 patent file history, are contradicted by FLH's own current and contemporaneous statements.

The declaration of FLH scientific advisor Ali Berkin further contradicts Par's and FLH's assertions that FLH did not advise Reliant concerning the validity, enforceability or potential infringement of the '588 patent. For example, a November 11, 2003 invoice from FLH to Reliant demonstrates that Mr. Berkin performed a "patent investigation into propafenone," a prior art patent search, and an "analysis of patents and technology." Haug Decl. at Ex. 3. Mr. Berkin also "completed a memo regarding analysis of competitors [sic] patents," performed "legal research" and prepared a "due diligence memo." Haug Decl. at Ex. 3. Mr. Berkin's

---

[8]    A July 21, 2003 e-mail from Mr. Berdon to Mr. Lerner, copying Mr. Brown, states: "We already have the file history of the first ['588] patent, and Dan is working it up as we speak." Suppl. Lerner Decl. at Ex. C. Another e-mail from Mr. Berdon to Mr. Lerner, dated September 12, 2003, states: "On the coverage of the patent, I believe that Dan Brown and I gave you a verbal brief, but that we agreed at that time not to put into writing any view on the [redacted]." Suppl. Lerner Decl. at Ex. F.

[9]    Whether or not Mr. Brown billed Reliant for the work he performed regarding the file history of the '588 patent or for the conversation regarding the potential infringement and design-around of that patent is irrelevant to the determination that his work was substantially related to FLH's current representation of Par.    FLH should not be permitted to avoid its ethical duties to its former client based merely upon its own inadequate timekeeping and retention policies.

7.

declaration, although attempting to downplay the extent and nature of the work done, confirms that he conducted prior art searches and prepared memoranda concerning propafenone, the active ingredient of Rythmol®, at Mr. Berdon's direction.  Berkin Decl. at ¶ 4-8.[10]  Mr. Berkin further swears that he prepared a chart which "divided the patents into three tiers based on whether a patent might be relevant to Rythmol®," and that he determined that the '287 patent (which FLH and Par now claim renders the '588 patent invalid and unenforceable) was     REDACTED

REDACTED

REDACTED         The November invoice also demonstrates that Mr. Berdon reviewed the "Rythmol® patent research" done by Mr. Berkin.  Haug Decl. at Ex. 3.  Mr. Berdon then advised Reliant concerning the Rythmol® products with respect to the '287 patent and other prior art patents.  Suppl. Lerner Decl. at ¶ 9.  Thus, Par's and FLH's assertions that FLH did not advise Reliant concerning the validity or enforceability of the '588 patent are incorrect.  Moreover, in this action, Par and FLH have taken exactly the opposite position on this substantially related work, claiming that the '287 patent is relevant prior art that renders the '588 patent invalid and unenforceable.  *See* Reliant Br. at 5-6.

     In addition to his patent searches and related activities, Mr. Berkin also admits in his declaration that he performed a search of the FDA Orange Book regarding the listing of patents for Rythmol® at Mr. Berdon's direction.  Berkin Decl. at ¶ 6.  As evidenced by the November invoice, Mr. Berdon reviewed and/or discussed Mr. Berkin's work.  Haug Decl. at Ex. 3.  Mr. Berdon subsequently advised Reliant concerning patent exclusivity and other regulatory

---

[10]  "Berkin Decl.," as used to herein, refers to the Declaration of Ali Berkin, Ph.D. In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief.

8.

issues, including the impact of patent listing on potential litigation with a generic competitor. Suppl. Lerner Decl. ¶ 7.

FLH's declarations and supporting documents further indicate that FLH advised Reliant concerning the draft Asset Purchase Agreement[11] and draft patent assignment agreement between Abbott and Reliant by which Reliant acquired the rights to the '588 patent and Rythmol® SR product. Lerner Decl. at ¶ 10, Suppl. Lerner Decl. at ¶¶ 10-11. For example, Arthur Hoag, a current FLH partner, admits that he advised Reliant concerning a grant-back clause in the agreement prior to its execution by Reliant. Hoag Decl. at ¶ 5. Par's and FLH's position that this review and advice did not constitute confidential or attorney-client privileged information defies logic -- an attorney's review of and comment on a draft agreement at the request of a client seeking legal advice concerning the terms of that agreement is indisputably confidential and privileged. And Mr. Hoag's advice regarding the asset purchase agreement concerned more than merely the location of the grant-back clause, it also concerned the nature and scope of the patent assignment, specific definitions of contract terms, and modifications of Abbott's representations and warranties. Lerner Decl. at ¶ 10, Suppl. Lerner Decl. at ¶¶ 10-11. That advice was communicated to and relied on by Reliant. Suppl. Lerner Decl. at ¶¶ 10-11, 13. Thus, Par's and FLH's assertions that FLH did not receive and has no current knowledge regarding Reliant's confidential information is incorrect.

Moreover, FLH's representation that it does not currently have in its possession any confidential or attorney-client privileged information is contradicted by its own declarations. Indeed, although Par asserts that there is "affirmative proof that no Reliant confidential

---

[11]   Notably, although FLH claims not to have any relevant confidential Reliant information in its files, it has acknowledged that it located a copy of the confidential draft Asset Purchase Agreement.

9.

information remains at FLH" (Par Opp. at 4), the declaration of its lead trial counsel, Mr. Haug, directly contradicts this statement.    Beyond the attorney-client privileged and confidential information known by Mr. Brown and Mr. Hoag, FLH lists four specific documents that reflect confidential attorney-client communications between Reliant and FLH or FLH work product conducted on Reliant's behalf that intimately concern and are substantially related to the validity, enforceability and infringement issues in this litigation:   the confidential draft Asset Purchase Agreement between Abbott and Reliant for the transfer of patent rights to the '588 patent; results of a prior art search conducted for relevant prior art to the Rythmol® propafenone products; a result of a search regarding Orange Book listings of the patent and product in suit; and a memorandum analyzing the relevance of prior art patents (including the '287 patent) to the Rythmol® products.  Haug Decl. at ¶ 21; Par Opp. at 13-14.  Notably, although FLH purports to have erected an "information wall" between Par's litigation team and those previously involved in advising Reliant concerning Rythmol®, Mr. Haug has apparently had access to those confidential attorney-client communications and work product previously done on Reliant's behalf; they are cited in his declaration.  Haug Decl. at ¶ 21.

Thus, the danger that FLH will use (if it has not already used) Reliant's confidential attorney-client information to its detriment is not academic -- it is a real and tangible concern demonstrated by FLH's apparent disregard for Reliant's confidential, privileged information.[12]

---

[12]    Indeed, shortly after receiving Par's Opposition brief, Reliant asked FLH to provide Reliant with copies of all documents, notes, electronic files or e-mails still in FLH's possession.  FLH has not done so.

10.

II.    FLH IS ETHICALLY BARRED FROM REPRESENTING
       PAR IN THIS SUBSTANTIALLY RELATED MATTER

       ABA Model Rule 1.10 sets forth the rare circumstance in which a firm make take

a representation adverse to its former client:  the former and current matters are not the same or

substantially related, and no lawyer in the firm has confidential information that is material to the

current matter.[13]  This narrow circumstance does not apply here.  *See INA Underwriters Ins. Co.*

*v. Nalibotsky*, 594 F. Supp. 1199, 1210 n. 8 (E.D. Pa. 1984) ("When members of a single firm

represent opposing parties at different times, 'Chinese Walls' have, as a general matter, not been

sufficient to avoid disqualification.")

       A.    FLH's Former Representation Of Reliant Is Substantially
             Related To Its Current Representation Of Par

       Par argues that FLH's former representation of Reliant, in which FLH advised

Reliant concerning the validity, enforceability, potential infringement and design around of the

patent in suit, is somehow not "substantially related" to its current representation of Par on those

very same issues.  Par's argument fails.

       Par's entire argument rests on its incorrect assumption that FLH did not advise

Reliant concerning the validity, enforceability, or potential infringement and design around of

the '588 patent and Rythmol® product.  Par ignores the declaration of Michael Lerner, supported

---

13    The cases that Par relies on in alleged support of its ability to represent Par in this action
      are distinguishable from the circumstances here.  For example, in *St. Barnabas Hospital*
      *v. New York City Health and Hospitals Corp.*, 7 A.D.3d 83 (N.Y.A.D. 1 Dept. 2004), the
      court held the law firm was not disqualified because the former client had executed a
      waiver as to future conflicts.  *See* 7 A.D.3d 83 at *10.  Here, FLH requested -- but did not
      get -- a similar waiver from Reliant.  Par also cites *Goldberg v. Warner/Chappell Music,*
      *Inc.*, 125 Cal. App. 4th 752, 23 Cal.Rptr.3d (Cal.Ct. App. 2005).  But in *Goldberg*, the
      court found that the party seeking disqualification  was never a firm client; she had an
      attorney-client relationship with one attorney of a firm (who had since left the firm), who
      reviewed her employment contract "as a friend."  *Id.* at 758.  Here, FLH has admitted that
      Reliant had an  attorney-client relationship with FLH for two years, on at least 11
      different matters.  Haug Decl. at ¶ 8.

11.

by contemporaneous e-mail records, and instead relies on FLH's bare assertions that it did no such work. But FLH's statements are based on its own inadequate timekeeping records and mistaken assumptions concerning the nature and scope of the work done on Reliant's behalf.

Par submits *ten* declarations from FLH attorneys in an attempt to demonstrate that FLH's previous work for Reliant did not include any opinions regarding the validity, enforceability, or potential infringement or design-around of the '588 patent. Conspicuously absent from Par's Opposition is any declaration by Andrew Berdon regarding the nature and scope of the work done for Reliant. Mr. Berdon's contemporaneous e-mails, however, speak for themselves. For example, on July 11, 2003, in response to a request from Mr. Lerner for legal advice concerning the potential Rythmol® deal with Abbott, Mr. Berdon wrote: "We will look at the IP end of this." Suppl. Lerner Decl. at ¶ 3. Mr. Berdon and Mr. Brown also provided legal advice concerning the nature and scope of the '588 patent, as reflected in a September 12, 2003 e-mail to Mr. Lerner: "On the coverage of the patent, I believe that Dan Brown and I gave you a verbal brief, but we agreed at that time nor to put into writing any view . . ." Suppl. Lerner Decl. at ¶ 5. Mr. Berdon's assertion that he provided oral advice that was not put into writing confirms Mr. Lerner's declaration that FLH provided legal advice to Reliant orally and through e-mails.

FLH's suggestion that it could not have provided Reliant with any opinions because it did not bill any time to Reliant regarding Rythmol® until September is similarly unpersuasive. Whether or not FLH billed its time properly, the contemporaneous e-mails indicate that Mr. Berdon, Mr. Brown and Mr. Hoag did work on and advised Reliant concerning Rythmol® and the '588 patent at least as early as June 2003. Suppl. Lerner Decl. at ¶¶ 1-5, 10-11, 13.

12.

Rather than look to this contemporaneous documentation, FLH instead relies on its own timekeeping records and lack of memory, and boldly states that it never provided any opinion regarding the value, validity, enforceability, potential for design around or any other aspect of the '588 patent. Haug Decl. at ¶ 3. FLH also claims, however, that it returned work product documents to Reliant, and did not retain e-mail communications from the applicable time period. Par Opp. at 13, Haug Decl. at ¶ 20. Thus, FLH's bald assertion that it never provided such opinions to Reliant is incorrect -- all FLH can show is that its attorneys kept inadequate time records and that it cannot now find a written opinion.[14] In contrast, the contemporaneous e-mails attached to the Supplemental Lerner Declaration, even in their redacted state, show that Reliant and FLH had confidential attorney-client communications about Rythmol® since as early as June 2003.[15] The content of those e-mails reflects the legal advice

---

[14]    Notably, Reliant does not assert that a formal, written opinion was ever provided. Rather, Reliant made clear in its Opening Brief that FLH's opinions were provided orally and by e-mail. Given FLH's admitted destruction of e-mails from the applicable time period, it is not surprising that FLH cannot now find written verification of its opinions. Reliant, however, has contemporaneous e-mail documentation regarding those opinions, which it logically assumed FLH would also have in its possession. Moreover, Reliant has offered those e-mails to this Court for *in camera* inspection, and to FLH on a non-waiver, "attorneys eyes only" basis. Instead of requesting the documents from Reliant, FLH maintained its willful ignorance and accused Reliant of not providing proof of its assertions. Haug Decl. at ¶ 19.

[15]    In an attempt to dispute that the matters are substantially related, Par and FLH rely heavily on the purported low number of attorney hours spent on the Rythmol® project. However, as demonstrated by emails dating through June, July and September 2003, Mr. Berdon did not keep time records that were commensurate with the work he did on the Rythmol® project. Similarly, contemporaneous e-mails demonstrate Mr. Brown's involvement with the Reliant representation, despite his assertions that he never worked on or billed any time to Reliant. Given the unreliability of the time records kept by FLH attorneys, any argument by Par or FLH based on the number of hours billed should be disregarded. Moreover, the number of hours FLH billed to Reliant is irrelevant to whether FLH's current representation of Par is substantially related to its former representation of Reliant. *See, e.g., Buckley v. Airshield Corp.*, 908 F. Supp. 299, 305 (D. Md. 1995) ("Even assuming Mr. Stone billed only a short period of time it does not

and opinions provided to Reliant by FLH attorneys, including Mr. Brown and Mr. Hoag, concerning Rythmol® and the '588 patent. Suppl. Lerner Decl. at ¶¶ 4-5, 10-12. Thus, FLH's assertion that it never provided any opinions to R333eliant concerning Rythmol® or the '588 patent is simply wrong.

Par's incorrect assertion also taints the opinion of its purported expert on legal ethics, Dr. Bruce Green. Accordingly, Dr. Green's opinion has no bearing on or relevance to the question of whether FLH should be disqualified. Like Par, Dr. Green bases his entire legal theory on the incorrect assumption that FLH's former work for Reliant is not substantially related to FLH's current representation of Par. Dr. Green's declaration erroneously assumes that: none of FLH's work involved an analysis, study, opinion or other legal work regarding the scope, validity, infringement or enforcement of the '588 patent; none of the lawyers or non-lawyers currently at FLH received any confidences relating to these issues; and Mr. Berdon never received any confidences relating to these issues. Green Decl. at 7. Thus, Dr. Green's analysis assumes the very conclusion that he attempts to prove, i.e., that FLH's work is not substantially related to its current representation because no confidences were exchanged and no opinions concerning the '588 patent were given.

The record before this Court demonstrates otherwise. As set forth above, FLH's assertions that it did not previously do work for Reliant that is substantially related to its current work for Par in this litigation is simply incorrect. FLH's own records and declarations indicate that it conducted prior art searches, conducted regulatory searches, analyzed the relevance of prior art (including the '287 patent), communicated with Reliant concerning the potential infringement and design around of the '588 patent, prepared a due diligence memo regarding

---

preclude his work from being substantially related to the present litigation.") (internal citations omitted).

14.

competitors' patents, and reviewed and provided comments on the draft Asset Purchase Agreement between Reliant and Abbott. Reliant's contemporaneous e-mails demonstrate that this FLH work product was used to provide Reliant with legal advice concerning the validity, enforceability, potential infringement and design around of the '588 patent, as well as advice concerning the patent assignment, regulatory listing of the patent and product, and potential litigation with a generic competitor.

As set forth in the Declaration of Michael Lerner and the Supplemental Declaration, Reliant relied on FLH's legal advice and analysis in making its decision to purchase the Rythmol® product and '588 patent from Abbott. Lerner Decl. at ¶ 16, Suppl. Lerner Decl. at ¶¶ 13-15.

Thus, Reliant has demonstrated that (1) Reliant shared attorney-client privileged confidences and other confidential information with FLH concerning Rythmol® and the '588 patent; (2) FLH provided advice concerning the validity, enforceability, potential infringement and design around of the '588 patent, as well as advice concerning the patent assignment and regulatory status of the '588 patent; (3) current FLH partners Mr. Brown and Mr. Hoag, as well as scientific advisor Ali Berkin, were directly involved in the patent analysis, contract analysis, and/or regulatory advice that was provided to Reliant by FLH; and (4) Reliant relied on this advice in purchasing the Rythmol® portfolio and '588 patent. Accordingly, FLH's former representation of Reliant concerning the patent and product at issue in this lawsuit is substantially related to FLH's current representation of Par. *See, e.g., Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 612-13 (D. Md. 2002); *Buckley v. Airshield Corp.*, 908 F. Supp. 299 (D. Md. 1995); *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991); *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979).

B.    The Purported "Information Wall" Is Not Sufficient To
Protect Reliant's Confidential And Privileged Information

FLH is still in possession of, and has knowledge about, its confidential and privileged legal advice provided to Reliant concerning Rythmol® and the '588 patent. As set forth above, current FLH partners Mr. Brown and Mr. Hoag were directly involved in the advice given to Reliant concerning Rythmol® and the '588 patent. Suppl. Lerner Decl. ¶¶ 4-5, 10-11. In addition, current FLH scientific advisor Ali Berkin generated work product that reflects and was used to provide Reliant with this confidential legal advice.

The contemporaneous e-mails discussed in and attached the Supplemental Declaration of Michael Lerner further confirm that Reliant provided FLH with confidential information during the course of FLH's former representation of Reliant. At least some of this confidential information, as well as work product created in the course of the representation, is still in FLH's possession. Par Opp. at 13, Haug Decl. at ¶ 21. For example, FLH admits that it has located at least four Reliant privileged and/or work product documents still present in its firm files. Haug Decl. at ¶ 21.

Par attempts to rebut Reliant's showing that FLH has access to Reliant confidential information in two ways: by asserting that FLH has no institutional knowledge of the confidential information; and by claiming that FLH erected an "information wall" to screen any remaining confidential from Par's litigation team. Par Opp. at 2-3. Par's attempts are unavailing.

First, Par has not successfully rebutted Reliant's clear showing that FLH has Reliant's privileged information and confidences in its possession.[16] As described above, Mr.

---

[16]    Under Third Circuit law, however, the Court need not find that confidential information was actually exchanged in order to find that FLH's former representation of Reliant is substantially related to its current representation of Par. Once an attorney-client

16.

Brown's declaration that he never did any work for Reliant is contradicted by contemporaneous documents and the sworn statement of Mr. Haug. Mr. Hoag's statement that he has no knowledge of Reliant confidential information is contradicted by contemporaneous documents submitted in connection with the Supplemental Lerner Declaration. Suppl. Lerner Decl. at ¶¶ 10-12. Moreover, FLH has admitted that it has at least four confidential and/or privileged work product documents in its possession, including the confidential draft Asset Purchase Agreement reviewed and revised by Mr. Hoag. Par Opp. at 13, Haug Decl. at ¶ 21.

Second, Par cannot avoid its ethical duties to Reliant merely by purporting to erect an "information wall" between Reliant's former counsel and Par's current counsel at FLH. *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994). The case law that Par cites in alleged support of its ability to do so is inapposite. Par relies on cases in which a firm walled off a lawyer who had newly joined that firm and where the adversary was a former client of the lawyer's previous firm. Par Opp. at 33-35. In that case, the firm has no confidential or privileged information concerning the former client and can prevent its lawyers from learning such information by erecting a "wall" between the firm lawyers and new lawyer that formerly represented the client. Par Opp. at 33-35. The facts here are stark contrast to those cases.

Here, *FLH* is the firm that formerly represented Reliant, *FLH* attorneys have direct and imputed knowledge concerning Reliant's confidences, and *FLH* is attempting to wall its own attorneys from each other. Par cites no precedent for such an action. Indeed, such a "wall" is generally impermissible. *See Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992) (holding that even though an attorney who had represented the

---

relationship is established, the attorney's access to confidential information is presumed. *Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 730 (D. Del. 1985) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972)).

17.

former client was no longer with the firm, the firm was precluded from representing the plaintiff in a patent infringement action against the former client because of a conclusive presumption that the attorney had shared client confidences during his time at the firm)[17]; *Amgen* 160 F.R.D. at 141 ( "[A] screen may be used when a lawyer changes jobs and the new firm represents an adversary of a client of the former firm, but …the *same firm* cannot switch sides on a substantially related matter, no matter what screen it sets up.").

Moreover, any "information wall" that FLH has attempted to erect is insufficient to protect Reliant's attorney-client privileged and confidential information.

### REDACTED

More importantly, FLH has given Reliant and this Court reason to question the effectiveness of the purported "information wall." Par's lead trial counsel, Mr. Haug, stated in his sworn declaration that FLH currently has at least four confidential and/or work product documents in its possession. Haug Decl. at ¶ 21. Mr. Haug's knowledge concerning these documents belies the existence and effectiveness of any true "information wall."[18]

---

[17]    Par's attempt to distinguish the facts of *Elan* is unpersuasive. Par argues that *Elan* is not persuasive authority because the court assumed that the presumption of shared confidences among lawyers associated in a firm was irrebuttable. Even if this were so, it is irrelevant -- Par has not rebutted Reliant's showing that at least Mr. Hoag and Mr. Brown have confidential Reliant information. Moreover, Reliant has demonstrated that FLH's purported "information wall" is ineffective, and that one or more of Par's litigation counsel at FLH has or had access to FLH work product prepared on Reliant's behalf.

[18]    Similarly, on the very same day that FLH purportedly erected its "information wall," Mr. Brown received an e-mail concerning this litigation from Par's Delaware counsel. *See* Reliant Br. at 15.

18.

C.    There Is Considerable Risk That FLH Will Use -- Or Already
      Has Used -- Reliant's Attorney-Client Confidences To Its Detriment

Given the substantial relationship between FLH's former representation of Reliant

and its current representation of Par, there is considerable risk that FLH will use, if it has not

already used, Reliant's attorney-client and confidential information to its detriment.    In

particular, FLH formerly advised Reliant on the validity, enforceability, and potential

infringement and design-around of the '588 patent.  FLH is currently advising (or has already

advised) Par on how to allegedly design around, avoid infringement, invalidate and/or render

unenforceable that very same patent.[19]  FLH has possession of work product created on Reliant's

behalf, including prior art patent searches and analysis concerning the very same art that Par now

alleges renders the '588 patent invalid and unenforceable.

Moreover, given the positions that FLH and Par have taken with respect to this

motion, Reliant has no assurances of FLH's loyalty or the protection of Reliant's confidential

information.[20]  For example, Par states that it has "affirmative proof" that no confidences were

exchanged between Reliant and FLH, yet both FLH and Par cite to at least four confidential and

privileged draft or work product documents in FLH's possession that were apparently reviewed

by Par's litigation counsel.  Par Opp. at 13-14.  Similarly, at least two current FLH partners

---

[19]    Given the close relationship between FLH's advice to Reliant concerning these matters
and its contrary advice to FLH concerning the very same matters, should the Court grant
Reliant's motion, Reliant requests that FLH's work product on behalf of Par not be
transferred to Par's new counsel.  *See, e.g. EZ Paintr Corp. v. Padco, Inc.,*  746 F.2d
1459 (Fed. Cir. 1984) (upholding district court decision that limited turnover of work
product to new attorneys from date before confidences were shared).

[20]    Indeed, FLH has already shared with Par, and with the public, confidential work product
generated in the course of its attorney-client relationship with Reliant.  For example, Mr.
Berkin's declaration sets forth work that was conducted on Reliant's behalf, including
quotations from and conclusions of the analyses he conducted.

19.

claim to have no knowledge of Reliant's confidential information despite contemporaneous evidence to the contrary.

Given FLH's casual treatment of Reliant's privileged and confidential information, the only way to ensure that Reliant's information is not used to its detriment is disqualification of FLH as Par's counsel in this matter. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3d Cir. 1984). Disqualification would also serve to protect this Court from the appearance of impropriety and to maintain the integrity of the bench and bar. *See Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1567 (Fed. Cir. 1985), *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991).

<u>CONCLUSION</u>

For all of the foregoing reasons, Reliant requests that the Court disqualify FLH from representing Par in connection with this litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

May 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor

I further certify that I caused to be served copies of the foregoing document on

May 30, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                    *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                       *and HAND DELIVERY*
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street
17th Floor
Wilmington, DE  19801

Edgar H. Haug, Esquire                        *VIA ELECTRONIC MAIL*
Frommer Lawrence & Haug LLP                   *and FEDERAL EXPRESS*
745 Fifth Avenue
New York, NY  10151

John B. Harris, Esquire                       *VIA ELECTRONIC MAIL*
Stillman, Friedman & Shectman, P.C.           *and FEDERAL EXPRESS*
425 Park Avenue
New York, NY  10022

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (# 1014)