IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 06-774-JJF |
| PAR PHARMACEUTICAL, INC. | ) ) | |
| Defendant. | ) ) ) | |

**RELIANT PHARMACEUTICALS, INC.'S ANSWERING BRIEF IN OPPOSITION TO PAR PHARMACEUTICAL, INC.'S MOTION TO COMPEL DISCOVERY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

September 7, 2007

**<u>Table of Contents</u>**

NATURE AND STAGE OF THE PROCEEDING.........................................................................1

SUMMARY OF ARGUMENT ..........................................................................................................1

STATEMENT OF FACTS ..................................................................................................................3

ARGUMENT ..........................................................................................................................................5

CONCLUSION ......................................................................................................................................8

## __Table of Authorities__

No authorities are cited in this brief.

## NATURE AND STAGE OF THE PROCEEDING

On December 19, 2006, Reliant Pharmaceuticals, Inc. ("Reliant") filed this action for infringement of U.S. Patent No. 5,681,588 ("the '588 patent") against Par Pharmaceutical, Inc. ("Par"), based on Par's filing of ANDA 78-540, which seeks to market generic versions of Reliant's drug Rythmol® SR.  D.I. 1.  Par answered Reliant's Complaint on February 9, 2007. D.I. 11.

This action is currently in its first phase of discovery, directed to document production and contention interrogatories.  Pursuant to Court Orders, document production and contention interrogatory responses must be exchanged by the parties by September 24, 2007. D.I. 27, 66.

The parties have exchanged document requests and interrogatories, and have served their respective responses.  Document production is ongoing.  To date, Reliant has produced over 65,000 pages of documents.  Reliant continues to produce documents, and it intends to provide supplemental interrogatory responses to Par prior to the September 24, 2007 deadline.

Par filed its Rule 37 motion to compel supplemental interrogatory answers and responsive documents on August 23, 2007—one month prior to the cut-off date for this initial phase of discovery.  This is Reliant's opposition to that motion.

## SUMMARY OF ARGUMENT

Reliant has repeatedly made good faith representations to Par that Reliant would satisfy its discovery obligations — including producing responsive documents and supplementing, as necessary, its interrogatory responses — by September 24, 2007, the Court imposed cut-off date for the initial phase of discovery.  Par's motion to compel was brought, not

because Reliant is in default of its obligations, but because Par hoped to force Reliant to provide discovery prior to the Court-ordered deadline.

Par simply had no basis for this premature motion to compel. To date, Reliant has produced more than 65,000 pages of responsive documents, and continues its document review and production. Reliant has also responded to Par's interrogatories and indicated that supplemental interrogatory responses are forthcoming. Reliant has repeatedly assured Par that it will meet its discovery obligations, and has demonstrated its good faith by responding to Par's requests. Given these repeated assurances, Par's motion will be moot before it is heard or decided.

In an effort to avoid burdening the Court with this premature and baseless motion, Reliant has, on at least three separate occasions requested that Par withdraw its motion, assuring Par that Reliant intended to satisfy its discovery obligations and offering to meet and confer with Par immediately after the end of this phase of discovery to seek to resolve any perceived deficiencies with Reliant's document production or interrogatory responses. Par has refused this invitation, instead indicating that if Reliant would produce documents two weeks *prior* to the cut-off date, Par would "consider" withdrawing the motion.

Par cannot unilaterally dictate when and how Reliant must respond to Par's discovery requests. Nor may Par improperly use this motion to compel to make an end-run around the Court's scheduling orders. Moreover, given that the Court-ordered September 24 deadline for this phase of discovery has not yet occurred, Par's motion is not ripe.

Accordingly, the Court should deny Par's premature and baseless Motion to Compel.

## STATEMENT OF FACTS

Reliant markets the life-saving drug Rythmol® SR.  Rythmol® SR is covered by the '588 patent, and is listed in the FDA's "Approved Drug Products with Therapeutic Equivalence Evaluations" (referred to as the "Orange Book").  On November 7, 2006 and January 10, 2007, Par sent Reliant Paragraph IV notice letters challenging the validity and enforceability of the '588 patent, and stating that its generic tablets do not infringe. Exs. 1, 2. Reliant brought suit against Par on December 19, 2006, and amended its Complaint after receipt of Par's second Paragraph IV notice letter.  *See* D.I. 1, 8.

On March 14, 2007, Reliant moved the Court to disqualify Frommer Lawrence & Haug LLP ("FLH") from representing Par in this litigation due to FLH's prior representation of Reliant regarding Reliant's acquisition of the same drug and the same patent at issue here.  D.I. 18.

On March 23, 2007, Par served Reliant with its first set of document requests and first set of interrogatories.  D.I. 24.  Reliant provided its written responses to Par's requests on June 11, 2007, and included the following general objection:

> Reliant objects to [Par's document requests and interrogatories] to the extent that they purport to require Reliant to produce information to Frommer Lawrence & Haug LLP, Reliant's former counsel and counsel to Par in this substantially related matter, prior to the Court's decision on Reliant's Motion for Disqualification.

(Ex. 3 at 4; Ex. 4 at 3-4).  That objection made clear that Reliant did not intend to produce documents or provide other discovery to Par's counsel FLH until the Court decided Reliant's pending motion.[1]

---

[1]    Notably, Reliant did not object to producing documents to Par, but only to FLH.  Reliant later suggested that it produce documents to John Harris, Par's other counsel named in this action, but Par did not accept this offer.

On April 25, after several requests by Reliant, and more than five months after notifying Reliant of its Paragraph IV certification regarding the '588 patent, Par finally produced ANDA 78-540.

By Order dated July 25, 2007, the Court denied Reliant's motion to disqualify FLH with leave to renew, allowed limited discovery on the disqualification issue, and expressly permitted either party, without leave of Court, to extend by 30 days the August 24, 2007 deadline in paragraph 3(a) of the Court's Rule 16 Scheduling Order. D.I. 66. On August 1, 2007, in response to the Court's Order, the parties met and conferred. During that call, Reliant informed Par that it was extending the discovery deadline until September 24, 2007 pursuant to the Court's Order, and stated that it would promptly begin producing documents to FLH and would supplement its interrogatory responses as necessary. *See, e.g.* Ex. 7. In response, Par demanded that Reliant complete its document production and provide supplemental interrogatory responses by an arbitrarily imposed deadline of the middle of August. *See, e.g.,* Ex. 8.

On August 8, 2007, Par sent a letter demanding that Reliant immediately inform Par of the exact date that documents would be produced and the interrogatories would be supplemented. Ex. 6. Reliant responded on August 10, 2007, again assuring Par that documents would be forthcoming and that it would supplement interrogatory responses as required by the Court's ordered date for the end of this phase of discovery. Ex. 7. Reliant also said that, because the Protective Order had recently been entered and it could now begin to share Par's ANDA with its experts, Reliant would supplement its interrogatories to provide more detailed responses. *Id.*

On August 20, 2007, despite Reliant's assurances, Par attempted to set August 22, 2007 as the deadline for Reliant's completion of this phase of discovery. Ex. 8. Par stated that Reliant's failure to meet Par's arbitrary deadline would result in Par moving the Court for an

order to compel discovery. *See id.* Reliant responded the next day and again assured Par that it intended to meet its discovery obligations by the Court-ordered September 24, 2007 deadline. Ex. 9. On August 23, 2007, Reliant informed Par that it would begin producing documents the next day. Ex. 10. Par disregarded Reliant's repeated assurances and good faith efforts to meet its discovery obligations, and filed its Motion to Compel.

Since Par filed this motion, Reliant has produced over 65,000 pages of documents. Ex. 11. Based in part on those productions, Reliant, on at least three separate occasions, requested that Par withdraw its premature and baseless Motion to Compel, noting that: (a) the issue was not ripe; (b) the motion, even if successful, would only waste judicial resources; (c) Reliant intended to satisfy its discovery obligations by September 24, as demonstrated by its productions to date; (d) Reliant would continue to produce responsive documents on a rolling basis; (e) that the time and focus of the parties would be better served by completing this phase of discovery rather than engaging in needless motion practice; and (f) it was the Court's schedule -- not Par's – by which Reliant would abide. Exs. 11, 12, 13. Reliant also offered Par the opportunity to meet and confer after September 24 to amicably resolve any of Par's perceived insufficiencies. Ex. 12.

Initially, Par responded that it would "consider" withdrawing its motion if Reliant completed its discovery obligations by September 14, 2007. Ex. 14. Par later reneged on even that self-serving offer and refused to withdraw its motion. Ex. 15.

## ARGUMENT

Par seeks an Order requiring Reliant to immediately produce documents and supplement its responses to Par's Interrogatory Numbers 3-5 and 7. Par's motion is illogical and without basis because it prematurely moves for discovery prior to the time Reliant is required to provide it.

Reliant began producing documents to Par on August 24, 2007 and, to date, has produced over 65,000 pages of documents. Ex. 11. Reliant's document review and production is ongoing, and Reliant expects that it will be complete by September 24, 2007. Notably, Par fails to point out any specific categories of documents that Reliant has failed to produce. Par cannot do so, and has no basis to do so, until the September 24 initial discovery deadline.

Par's half-hearted complaint about its need to go through the Hague Convention to obtain extra-jurisdictional discovery from foreign non-parties provides no support for its motion to compel. Reliant acquired the drug Rythmol® SR and the '588 patent from Abbott *after* the patent had issued and *after* the NDA was approved. D.I. 27 at pp. 3-5. Reliant has represented to Par that, subject to Reliant's objections to Par's request for documents, Reliant will produce documents in its possession, custody and control that relate to Abbott, its predecessors-in-interest Knoll AG and/or BASF AG, and the inventors. *See* Ex. 7. Reliant has produced, and will continue to produce, such documents to Par. That Reliant may not have the information Par seeks is not a valid basis for Par's motion to compel. Reliant is not withholding responsive, non-privileged documents in its possession that relate to the acquisition of the drug or patent, or that relate to Abbott, Knoll, BASF or the inventors. And Par cannot obtain what it seeks—documents from non-party foreign persons and companies—through a motion to compel Reliant to produce documents it does not have.

Par's own actions indicate that its motion has no basis and is premature. Yesterday, Par -- for the first time -- proposed that the parties exchange search terms for their respective review and production of electronic documents. Ex. 16. Par's proposal belies its assertions in its motion that Reliant should have already produced these documents. Moreover,

Par indicated that it had not yet begun review and production of its own electronic documents. *Id.*

Par's request that the Court compel Reliant to supplement its interrogatory responses is equally unavailing. Reliant provided its initial responses to Par's interrogatories on June 11, 2007. Ex. 4. Reliant's initial responses were appropriate for that early stage of discovery, when no documents other than Par's ANDA had been produced. Notably, at that time Reliant was unable to consult with its experts regarding Par's ANDA because Par produced the ANDA pursuant to its Offer of Confidential Access, not this litigation. *See* Ex. 7. Accordingly, Reliant will be in a better to position to provide fuller answers to its interrogatories now that the Protective Order has been entered and it can rely on its experts to help sort through the lengthy and complex ANDA.[2] Reliant intends to supplement its interrogatory responses, including its responses to Interrogatories Nos. 3-5 and 7, prior to the September 24, 2007 deadline for responses to contention interrogatories. Reliant has repeatedly represented as much to Par. Exs. 7, 9.

Despite Reliant's repeated assurances that it would comply with its discovery obligations, and multiple requests that Par withdraw its premature motion to compel, Par has steadfastly refused to withdraw its baseless motion. Par is wasting the parties' and the Court's time and resources. If, after the September 24, 2007 deadline, Par still believes that Reliant's good faith efforts to provide Par the discovery it seeks fall short, the parties should meet and confer in an attempt to resolve the issue. Only after that would Par's motion to compel additional discovery be ripe.

---

[2]    Par's suggestion that Reliant has not met its obligations under Rule 11 are entirely unsupported and without any basis in fact.

## CONCLUSION

Accordingly, Reliant requests that the Court deny Par's motion to compel discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld (#1014)
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

September 7, 2007

1229553

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2007 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

September 7, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                                    *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                                      *and HAND DELIVERY*
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Edgar H. Haug, Esquire                                        *VIA ELECTRONIC MAIL*
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151

*/s/ Jack B. Blumenfeld (#1014*
Jack B. Blumenfeld (#1014)

# Exhibit 1



Par Pharmaceutical Companies, Inc.
300 Tice Boulevard
Woodcliff Lake, NJ 07677
tel  201 802 4000
fax  201 802 4600
www.parpharm.com

November 7, 2006                                         **CONFIDENTIAL**

**VIA REGISTERED EXPRESS MAIL**
**RETURN RECEIPT REQUESTED**

Dr. Ernest Mario
Chief Executive Officer & Chairman
Reliant Pharmaceuticals
110 Allen Road
Liberty Corner, NJ 07938

Re:    Rythmol® SR; route of administration: oral; strength: 325mg
       United States Patent No. 5,681,588
       Notice of Paragraph IV Certification

Dear Sir:

This is a notice of certification letter on behalf of Par Pharmaceutical, Inc., ("Par") pursuant to
505(j)(2)(B)(ii) of the Federal Food, and Drug Cosmetic Act ("the Act") and 21 U.S.C.
§ 355(j)(2)(B)(ii) and § 314.95 of Title 21 of the Code of Federal Regulations:

1.  An Abbreviated New Drug Application ("ANDA") that contains data from
    bioavailability or bioequivalence studies has been submitted under § 505(j) of the
    Act for the drug with respect to which the certification is made to obtain approval
    to engage in the commercial manufacture, use, or sale of Propafenone HCl
    capsules before the expiration of U.S. Patent No. 5,681,588. The Food and Drug
    Administration ("FDA") has received this application.

2.  The established name of Par's proposed drug product is Propafenone HCl SR
    Capsules. Reliant Pharmaceuticals, Inc. markets Propafenone HCl under the
    brand name Rythmol® SR.

3.  The active ingredient, strength, and dosage forms of the proposed drug product
    are: Propafenone HCl; 325 mg; and capsule for oral administration.

Normal.dot



4. The ANDA indicates that Par intends to market the product before the expiration of: U.S. Patent No. 5,681,588 ("the '588 patent"), which expires on October 28, 2014. The '588 Patent is listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for Rythmol® SR (Propafenone HCl, 225 mg, 325 mg and 425 mg), extended release capsules for oral administration.

5. An Offer of Confidential Access to Par's ANDA, pursuant to 21 U.S.C. §355(j)(5)(C)(i)(III), accompanies this notice as a separate enclosure.

Attached is a detailed statement of the factual and legal bases of Par's patent certification. This information is supplied for the sole purpose of complying with the above-referenced statutes and regulations. Neither Par nor its attorneys waive any attorney-client privilege or work-product immunity concerning the subject matter of this communication.

Sincerely,

Steven I. Engel, M.S., Pharm.D.
Vice President, Regulatory Affairs
PAR Pharmaceutical, Inc.
300 Tice Boulevard, 3rd Floor
Woodcliff Lake, NJ 07677
U.S.A.

Encl.: Detailed Statement of the Factual and Legal Basis of Par's Paragraph IV Patent Certification and Offer of Confidential Access

Duplicate with enclosure via FEDEX

Normal.dot

## DETAILED STATEMENT OF FACTUAL AND LEGAL BASIS FOR PAR'S OPINION THAT THE '588 PATENT IS INVALID, UNENFORCEABLE AND WILL NOT BE INFRINGED

## I.    INTRODUCTION AND SUMMARY

Reliant Pharmaceuticals ("Reliant") is the listed holder of NDA No. 21-416 for Propafenone HCl extended release capsules (325 mg) sold under the brand name Rythmol® SR. Rythmol® SR is indicated to prolong the time to recurrence of symptomatic atrial fibrillation in patients, without structural heart disease. Par proposes to manufacture, as set forth in its ANDA, 325 mg extended release capsules of propafenone HCl. Par's proposed generic propafenone HCl sustained release capsules will not infringe U.S. Patent No. 5,681,588, the only Orange Book patent listed with respect to Rythmol® SR. Also, this patent is invalid and unenforceable.

Par's proposed product does not infringe the '588 patent (either literally or under the doctrine of equivalents) because Par's proposed formulation: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's proposed formulation uses a release delaying substance.

Furthermore, the claims of the '588 patent are invalid under 35 U.S.C. §102(b) and 35 U.S.C. §103 over U.S. Patent No. 4,797,287 ("Pich"). Broadly, Pich discloses cylindrical microtablets containing propafenone and exemplifies propafenone content up to 80%. The '588 patent is also invalid under 35 U.S.C. §103(a) over Pich in view of U.S. Patent No. 4,954,347 ("Kristen"). Finally, the '588 patent is unenforceable because the assignee (and its employees) knew about Pich, a highly material reference, but did not disclose it to the PTO during the prosecution of the '588 patent.

## II.    LEGAL STANDARDS FOR INFRINGEMENT

### A.    Infringement Generally

Under 35 U.S.C. § 271(e)(2), "[i]t shall be an act of infringement to submit—(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent." 35 U.S.C. § 271(e)(2)(A) simply provides an 'artificial' act of infringement that creates case–or–controversy jurisdiction to enable the resolution of an infringement dispute before the ANDA applicant has actually made or marketed the product. Once jurisdiction is established, however, the substantive determination whether actual infringement or inducement

1

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 2

will take place is determined by traditional patent infringement analysis." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).

The patentee has the burden of proving infringement by a preponderance of the evidence. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005). Infringement may be literal or under the doctrine of equivalents. In each case the infringement analysis is a two-step process. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005). First, the scope of the claims must be determined. The Supreme Court has held that this first step, sometimes referred to as claim interpretation, is an issue of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("*Markman II*"); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1453 (Fed. Cir. 1998) (en banc). Thus, claim construction necessarily precedes a determination of whether the claims read on an accused product for infringement purposes. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *SmithKline Diagnostics, Inc. v. Helena Labs Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

The second step involves comparing the properly construed claims to the accused product to determine whether those claims "read on" the accused subject matter, *i.e.*, whether all of the claim limitations are present in the accused device, either literally or by a substantial equivalent. *Johnson Worldwide Assocs. Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1247 (Fed. Cir. 1998); *Cybor*, 138 F.3d at 1453. This second step is a factual determination and is thus submitted to a jury if the case is not tried to the court. *Markman II*, 517 U.S. at 384 (citing *Winans v. Denmead*, 56 U.S. 330, 338 (1854)).

## 1.    Claim Interpretation

Generally, claims are given their ordinary and customary meaning to a person skilled in the art, at the time of invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claim interpretation involves consideration of the language of the patent claim itself, the specification, other claims, the prosecution history, extrinsic evidence concerning scientific principles, and the meaning of technical terms. *Id.* at 1314; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd en banc*, 517 U.S. 370 (1996) ("*Markman I*"). Courts may admit extrinsic evidence, if necessary, as long as the extrinsic evidence is consistent with the intrinsic record. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006). Extrinsic evidence is any evidence that is external to the patent and prosecution history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Vitronics*, 90 F.3d at 1584.

The specification should be referred to when construing the limitations of patent claims. Indeed, usually, it is dispositive of the meaning of a term, and has been called "the single best

2

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 3

guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Thus, the specification may act as a sort of dictionary, which explains the claimed subject matter and may define terms used in the claims. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997); *Markman I*, 52 F.3d at 979. Where the specification contains nothing to indicate that phrases are to be given anything other than their ordinary meanings, then those are the meanings the court must give them. *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (citing *Vitronics*, 90 F.3d at 1582); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). That is, a technical term used in a patent document is given the same meaning that it would be given by persons experienced in the field of the patent, unless it is apparent from the patent and prosecution history that the patentee used the term with a different meaning. *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)). Thus, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Vitronics*, 90 F.3d at 1582).

## 2.    Literal Infringement

After claim interpretation, a determination is made whether the claims cover the accused products or methods. *Johnson Worldwide Assocs.*, 175 F.3d at 988. To infringe a claim, the accused product or method must include every limitation of the claim, either literally or by a substantial equivalent. *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

To demonstrate literal infringement, a plaintiff must prove that the allegedly infringing product or method embodies every element of the asserted claim(s). *Dolly, Inc.*, 16 F.3d at 397; *Townsend Eng 'g Co. v. Hitec Co.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987). This follows from the principle that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) (stating it is "well settled that each element of a claim is material and essential"). Thus, "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

## 3.    The Doctrine of Equivalents

Even if a product or process does not literally infringe, there can still be infringement if there is "equivalence" between the elements of the accused product or process and the elements of the patent's claims. *Warner-Jenkinson*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1571 n.3 (Fed. Cir. 1991). Infringement by equivalents requires that "the

3

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 4

accused product or process contain elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson*, 520 U.S. at 40.

To be equivalent, the patentee must prove that the accused product "differs from what is literally claimed only insubstantially, and it performs substantially the same function in substantially the same way to achieve substantially the same result." *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997); *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *see Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997) (affirming the viability of the "insubstantial differences" test). The nature of the differences is assessed according to whether a person with ordinary skill in the relevant art would find the differences to be substantial. *Hilton Davis*, 62 F.3d at 1519.

### 4. Limits on the Doctrine of Equivalents

There are limitations on the application of the doctrine of equivalents. Among other limitations, both the prior art and prosecution history estoppel limit the range of equivalents. *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993), *clarified on other grounds*, 15 F.3d 1076 (Fed. Cir. 1994); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 n.1 (Fed. Cir. 1987) (en banc). "The doctrine of equivalents cannot be used to erase "meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994).

#### a. Prosecution History Estoppel

Prosecution history estoppel applies when the applicant surrenders subject matter by either argument or amendment. Arguments, even without amendment, made during prosecution to obtain allowance of the claims at issue give rise to estoppel when such assertions clearly and unmistakably surrender subject matter, even when such arguments were not necessary to distinguish prior art. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828, n.3 (Fed. Cir. 1999) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 952 (Fed. Cir. 1993) and *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174-75 (Fed. Cir. 1993)); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998) (citing the same).

During the prosecution of a patent, "a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). For example, prosecution history estoppel is not limited to amendments made to avoid the prior art, but rather includes amendments made to comply with 35 U.S.C. § 112:

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 5

> A patentee who narrows a claim as a condition for obtaining a
> patent disavows his claim to the broader subject matter, whether
> the amendment was made to avoid the prior art or to comply with
> § 112. We must regard the patentee as having conceded an
> inability to claim the broader subject matter or at least as having
> abandoned his right to appeal a rejection. In either case estoppel
> may apply.

*Id.* at 737. Thus, when prosecution history estoppel applies, the patentee may only allege literal infringement.

**b.    Prior Art as a Limitation**

Even if the accused product performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990). The patentee bears the burden of proving that the hypothetical claim does not "ensnare the prior art." *Id.* at 685. In this inquiry, the prior art can be found to anticipate or render obvious the claimed invention.

In *Wilson*, the patentee alleged the accused product infringed its patent, which covered the pattern of dimples on a golf ball, under the doctrine of equivalents. The Federal Court of Appeals disagreed, holding "there can be infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Id.* at 683. The Court explained that "the doctrine of equivalents does not involve expansion of the *claims.*" *Id.* at 684 (emphasis in original). To hold otherwise, the court reasoned, "would allow the patentee to preempt a product that was in the public domain prior to invention." Thus, "[a] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Id.* at 684.

To guide courts in this determination, the court proposed that courts consider the likely result of a "hypothetical claim" broad enough in scope to *literally* cover the accused product. If this hypothetical claim would not have been allowed by the PTO over the prior art, "it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Id.* at 684. Even so, the hypothetical claim analysis is not mandatory. *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (noting that the crux of the analysis is preventing the patentee from obtaining scope later that he or she could not have obtained during prosecution); *see also International Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993).

5

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 6

The Federal Circuit has re-affirmed this reasoning in a series of subsequent cases. *Streamfeeder, LLC v. Sure-Feed Systems Inc.* 175 F.3d 974 (Fed. Cir. 1999); *Marquip Inc. v. Fosber America, Inc.*, 198 F.3d 1363 (Fed. Cir. 1999). In *Streamfeeder*, the court noted that in hypothetical claim analysis "one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art." 175 F.3d at 983. Thus, the patentee is prohibited from both broadening the scope of the claims under the doctrine of equivalents while simultaneously narrowing the scope of the claims to avoid encompassing the prior art.

### c.    The Dedication Disclosure Rule

The doctrine of equivalents cannot reach an element disclosed in an alternative embodiment of the invention in the specification but deliberately not claimed. *See Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002).

> [W]hen a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would "conflict with the primacy of the claims in defining the scope of the patentee's exclusive right."

*Id.* at 1054. The court in *Johnson* also grounded their holding partly in the policy that, "a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Id.*

### d.    The "All Elements" Rule

One further limitation of the doctrine of equivalents is the "all elements rule" which requires that "each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). It follows from this rule that, "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate that element in its entirety." *Freedman Seating Co., v. America Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005). According to the Federal Circuit, there is no "set formulation" for this determination, however, courts must consider "the totality of the circumstances." *Id.* at 1359. Several factors are appropriate for consideration, including "the simplicity of the structure, the specificity and narrowness of the claim, and the forseeability of variations at the time of filing the claim with the PTO." *Id.* at 1360. For example, in *Moore U.S.A., Inc. v. Standard Register, Co.*, 229 F.3d 1091 (Fed. Cir. 2000), the Federal Circuit stated

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 7

that, "to allow what is undisputedly a minority (*i.e.*, 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive' . . . extend the majority of the lengths of said longitudinal marginal portions'." *Id.* at 1106; *see generally Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) (claims reciting a clear geometric shape of generally conical were vitiated by attempting to cover a hemispherical cup by the doctrine of equivalents).

### e.　　Specific Exclusion

Further, "by defining the claim in a way that clearly excluded certain subject matter" a patent implicitly disclaims the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). In particular, structural limitations like shapes have been accorded a narrow scope of equivalents:

> A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents. *See Tanabe Seiyaku Co. v. United States ITC*, 109 F.3d 726, 732 (Fed. Cir. 1997) ("The sharply restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents."). That principle has special application in a case such as this one, where the claim recites a particular shape for the basal portion of the abutment that clearly excludes distinctly different and even opposite shapes.

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, reciting a specific shape in the claims specifically excluded other shapes. *Id.* In particular, the patentee's characterization of its abutment having a "convex, frusto-spherical shape" excluded abutments which were concave and frustro-conical because these shapes were contrary to, or inconsistent with, the claim language. *Id.* at 955-956.

### f.　　Other Limits

In addition, arguments emphasizing the criticality of a claim element may give rise to a surrender of all competitive products that do not contain the critical element. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1378-79 (Fed. Cir. 1999) (finding all compositions that do not contain a component described as critical during prosecution and interpreted as indispensable were surrendered during prosecution).

Moreover, there can be no infringement under the doctrine of equivalents if a claim limitation is totally missing from the accused device. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990)). "The doctrine of equivalents is not a license to ignore claim

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 8

limitations." *Dolly*, 16 F.3d at 398. That is, a "court cannot convert a multilimitation claim to one with fewer limitations to support a finding of equivalency." *Id.* at 399.

## III.    LEGAL STANDARDS FOR INVALIDITY

### A.    Anticipation Under 35 U.S.C. 102(b) - Prior Art

Section 102(b) provides a complete bar to the patentability of any invention that has been "patented or described in a printed publication in this or a foreign country… more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2000). A single reference must teach each and every limitation of the claimed invention, either expressly or inherently, in order to anticipate under 35 U.S.C. § 102(b). *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

### B.    The Law of Obviousness Under 35 U.S.C. § 103

For a patent to be valid, the claimed invention must be nonobvious over the prior art to a person having ordinary skill in the art of the invention. Section 103(a) provides in part:

A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

An important consideration is "the need to adhere to the statute, i.e., to hold that an invention would or would not have been obvious, as a whole, when it was made, to a person of 'ordinary skill in the art' – not to the judge, or to a layman, or to those skilled in remote arts, or to geniuses in the art." *Envtl. Designs Ltd., v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *Custom Accessories Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed. Cir. 1986).

Several factors guide a court's assessment of obviousness including:

(1)    the scope and content of the prior art;

(2)    the differences between the prior art and the claims at issue;

(3)    the level of the ordinary skill in the art; and

(4)    whatever objective evidence may be present.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 9

*Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

When evaluating the scope and content of the prior art, the question under § 103 is not merely what the references expressly teach but what they would have suggested to one of ordinary skill in the art at the time the invention was made. *Merck & Co. Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989). To invalidate a patent under § 103 using a combination of prior art, there must be some reason, suggestion or motivation found in the prior art whereby a person of ordinary skill would make the combination. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1351 (Fed. Cir. 1998). The motivation to combine can come from the knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000); *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996) (holding that such suggestion may "come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem"). It is not necessary for the motivation to be found explicitly in the prior art: "[t]here is flexibility in our obviousness jurisprudence because a motivation may be found *implicitly* in the prior art. We do not have a rigid test that requires an actual teaching to combine before concluding that one or ordinary skill in the art would know to combine references." (emphasis in original). *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, at *10 (Fed. Cir. 2006). The ultimate determination of obviousness when evaluating the prior art does not require absolute predictability of success. All that is required is a reasonable expectation of success. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000).

Other considerations may be helpful in determining whether an invention is obvious. *See Stratoflex, Inc.*, 713 F.2d at 1538. These secondary considerations include evidence of commercial success, long felt but unsolved needs, failure of others, initial skepticism of experts, praise from experts, copying by an infringer, near simultaneous invention by others, and licenses under the examined patent. *See In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998). However, these factors are not considered unless there is a showing of a nexus between the invention and the secondary consideration to ensure that the secondary consideration is not ascribable to other irrelevant factors. *Ryko Mfg. Co. v. Nu-Star Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991).

Each claim in an issued patent carries an independent presumption of validity. The ultimate question of obviousness is a question of law, which must be supported by clear and convincing evidence. The challenger to the validity of a patent must establish by clear and convincing evidence the facts supporting invalidity. *Ultra-Tex Surfaces v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc.*, 713 F.2d at 1534.

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 10

### C.    Inequitable Conduct

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp. v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *Purdue Pharma LP v. Endo Pharma. Inc.*, 438 F.3d 1123, 1128-29 (Fed. Cir. 2006).

A duty of candor and good faith is required to the Patent and Trademark Office by the inventor, the attorney or agent preparing and prosecuting the application, and every other individual substantively involved in the prosecution of the application. 37 C.F.R. § 1.56(c). This duty also applies to those substantively involved individuals who are associated with the asisngee. *Id.* Moreover, a corporate assignee does not cleanse itself of all culpability for misrepresentations or omissions during the prosecution of the patent application filed on its behalf by purposefully keeping its officers in the dark concerning the application's contents and placing the entire burden for proper disclosure on an inventor not versed in patent law or the relevant facts. *See Digital Equipment Corp. v. Diamond*, 653 F.2d 701 (Fed. Cir. 1981).

### IV.    THE '588 PATENT IS NOT INFRINGED AND IS INVALID

### A.    The '588 Patent

The '588 Patent matured from application serial number 08/525,749 ("the '749 application"), filed on October 10, 1995, which claims priority from PCT/EP94/00949, filed March 24, 1994. PCT/EP94/00949, in turn, claims priority from German application P4310963.2 which was filed on April 3, 1993. The German application was originally filed by BASF Aktiengesellschaft. The '588 patent issued to Kolter et al. on October 28, 1997 and is assigned to Knoll Aktiengesellschaft of Ludwigshafen, Germany. The '588 Patent expires on October 28, 2014.

In the "Background of the Invention" section, the patentee admits that multiple unit delayed release dosage forms were preferable to single unit dosage forms because "the units are distributed uniformly along the gastrointestinal tract and can also pass through the closed pylorus." Col. 1, lines 46-48. The patentee also admits that multiple unit delayed dosage forms contained amounts of active ingredient that were up to 60-80%. The patentee alleges that "small matrix" pellets were produced, but "only with very low doses of medicinal substances." For

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 11

example, the patentee cites EP 22 17 32 (Oren et al.), WO 92/04013 (Bongiovanni et al.), and GB 2 176 999 (Davis et al.) as having low doses of active ingredient. The patentee admits that Oren et al. discloses, "delayed release tablets" having "60-80% active ingredient." Col. 1, line 59. Another example in Bongiovanni discloses 76.7% ibuprofen content. In the Detailed Description of the Preferred Embodiments, the patentee asserts "A bolus tablet with commercial dosages of 150-300 mg and an active ingredient above 80% cannot be produced under production conditions." Col. 2, lines 31-33.

The specification alleges that employing microtablets according to the invention overcomes the drawbacks of the prior art. The specification describes that microtablet production has four steps, used with conventional pharmaceutical equipment: "granulation, drying, mixing, tabletting." Col. 3, line 51. According to the patentee, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches. The resulting microtablets have a cylindrical shape with flat or convex surface [sic]." (emphasis added) Col. 4, lines 19-22. In Example 1, the patentee discloses, "[t]he microtablets were produced in a rotary tabletting machine equipped with multiple microtablet punches." Col. 5, lines 25-26. Further, each example (other than the comparative example) refers back to Example 1 for the method of microtablet production.

WO 92/04013 was cited as an example that "disclose[s] small matrix delayed release tablets which likewise contain relatively large amounts of release-delaying ancillary substances." The patentee then notes that "Patent Application EP 22 17 32 claims delayed release tablets of active ingredients with low solubility, which contain 60-80% active ingredient in addition to at least 4 auxiliaries" and that such formulations are highly dependent on "granulation process and equipment" used. With respect to compressibility, the patentee notes that "propafenone HCl is extremely difficult to compress. A bolus tablet with commercial doses of 150-300 mg and an active ingredient content above 80% cannot be produced under production conditions. . . such high contents of active ingredients of this type in tablets have not previously been reached." Patentee admits that it considers propafenone delayed release tablet formulations of 80% or less active ingredient content to be part of the prior art. Col. 2, lines 30-41.

The patentee further noted that its microtablets achieve the object of the invention "because it has been found, surprisingly, that it is possible in the present case to produce delayed release tablets without release-delaying ancillary substances." Patentee also pointed out a number of problems that hydrophilic release-delaying polymers can cause: sticking or adhesion to the GI tract (patentee referenced WO 92/04013 as a formulation that might exhibit this problem), requirement of use of organic solvents to prevent swelling (patentee pointed out that this problem which can be "entirely" dispensed within the invention), and sensitivity to changes in humidity during storage.

The '588 patent has six claims, only the first claim is independent:

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 12

1. A cylindrical delayed release microtablet with a convex or flat upper side and lower side of β-phenylpropiophenone derivatives of the formula I as active ingredient



I

where R is n-propyl or 1,1-dimethylpropyl, and their pharmacologically acceptable salts, wherein

a) the height and diameter are, independently of one another, 1-3 mm,

b) the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet,

c) the active ingredient density is greater than 1,

d) the release of active ingredient in the USP paddle method at 50 rpm is 80% as a maximum after 3 hours and as a minimum after 24 hours,

e) the release rate is virtually independent of the pressure when compressing the tablets, and

f) the tablet contains no release-delaying ancillary substance but 0.1-5% by weight of a lubricant and 0-18.9% by weight of other conventional ancillary substances.

2. A tablet as claimed in claim 1, which in vivo results in a pronounced plasma level plateau with a PTF<75% and whose bioavailability does not depend on the intake of food.

3. A tablet as claimed in claim 1, wherein the active ingredient is propafenone hydrocholoride.

12

00409689.DOC



Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 13

4. A tablet as claimed in claim 1, wherein the height and diameter are approximately the same.

5. A gelatin capsule which contains 3-200 tablets as claimed in claim 1 with identical or different release rates.

6. A process for producing cylindrical delayed release microtablets as claimed in claim 1, which comprises a homogeneous mixture of 81-99.9% by weight of the granulated active ingredient with a particle size below 1 mm, 0.1-5% by weight of a lubricant and 0-18.9% by weight of other conventional ancillary substances which do not delay release being compressed in a cylindrical mold with a height and diameter each of 1-3 mm and being removed from the mold.

**B.    The Prosecution History of the '588 Patent**

During prosecution, the applicant submitted a preliminary amendment that made changes to the specification and removed multiple dependent claims. In the first Office Action, the Examiner rejected claims 1-6 under 35 U.S.C. §103 and 35 U.S.C. §112. With regard to the rejection under §103, the Examiner determined that the claims were unpatentable over Davidson (U.S. Patent No. 3,951,821) in view of Franke (U.S. Patent No. 4,945,114). The Examiner noted that the claims read on "a cylindrical delayed release tablet with an active agent" and that Davidson teaches "a delayed release microtibule...and active agent." Office Action, mailed October 17, 1996 at 3 (citation omitted). The Examiner noted Franke discloses the use of propafenone. The Examiner concluded that the motivation to combine the references "is provided by the fact that both cited references read on a tablet comprising an active agent. The intended purpose is to provide a delayed release specific active agent tablet." *Id.*

The Examiner also determined that the claims were unpatentable under 35 U.S.C. §112. Office Action, mailed October 17, 1996 at 2. As originally filed, claim 1 recited "from 81 to 99.9% of the weight of the microtablet, but not taking into account the weight of any coating which is present." The Examiner found that this was indefinite. The Examiner indicated that if the amount of coating was important, then the claims should be rewritten to reflect the percentage of coating present. In response, the applicant deleted the coating part of the limitation.

The applicant responded that their microtablet had surprisingly improved delayed release characteristics and that such results are "especially surprising" because their formulation contained "no other release delaying additives." Response, dated January 9, 1997 at 3. The applicant also alleged that 90% of other medicaments with similar water solubilites were

13

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 14

released within one hour if they were formulated according to the invention (data not included).
Other "surprising" results included that release rate was virtually independent of pressure. *Id.*
With respect to the prior art references, applicant pointed out that Davidson actually "is
specifically looking toward instant release and speeding up the disintegration of tablets." *Id.* at
4. The applicant conjectured: "if one were to modify Davidson by the teachings of Franke et al,
one would obtain a propafenone hydrochloride tablet" resulting in "relatively instant release,
certainly within five minutes or less, as taught by Davidson." *Id.* at 5. The applicant concluded
that there is "no suggestion within either reference" that propafenone "would have surprising
delayed release characteristics when compressed into the tablet form" disclosed in the
application, and there would be "no expectation by one of ordinary skill in the art" of obtaining
the "delayed relatively uniform release…in a microtablet having the required size, shape and
other characteristics as required by the present claims." *Id.* at 6.

The notice of allowance was mailed on April 1, 1997, and the applicant filed a
supplemental amendment substituting a new abstract for the abstract that was filed with the
application. A supplemental notice of allowability was mailed on June 25, 1997. The patent
issued on October 28, 1997.

**C.    Par's Proposed Propafenone HCl Capsule (325 mg) Does Not Infringe the
'588 Patent**

Par's proposed propafenone HCl product does not infringe claim 1 of the '588 patent,
either literally or under the doctrine of equivalents, because it does not embody every element of
claim 1 of the '588 patent. Par's proposed formulation does not infringe claim 1 for at least four
reasons: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed
formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation
uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's
proposed formulation uses a release delaying substance. Claims 2-6 depend from claim 1 and
therefore also do not infringe, either literally or under the doctrine of equivalents.

**1.    Par's Proposed Product Does Not Infringe the Microtablet
Limitation.**

Par will not infringe claim 1 because it will not produce a formulation containing a
"microtablet", literally, or by equivalents.[1] The term "microtablet" is a compound word which
can be broken into two parts: "micro" and "tablet." The prefix "micro" is derived from the
Greek, "mikros" which means small. According to *Remington's Pharmaceutical Sciences*,
"[t]ablets may be defined as solid pharmaceutical dosage forms containing drug substances with

---

[1] It is well settled that the preamble is limiting if it recites structure. *See* MPEP §2111.02(I) ("Any terminology in
the preamble that limits the structure of the claimed invention must be treated as a claim limitation.")

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 15

or without suitable diluents and prepared either by compression or molding methods." *Id.* at 1553 (16th Ed. 1980). "Although tablets are more frequently discoid in shape, they also may be round, oval, oblong, cylindrical, or triangular." *Id.* Thus, according to *Remington's*, tablets must be dosage forms which are compressed into a regular shape. The specification of the '588 patent supports this position. For example, the patentee states, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches. The resulting microtablets have **a cylindrical shape with flat or convex surface [sic].**" (emphasis added) Col. 4, lines 19-22. In this way, the patentee clearly and unmistakably disavowed all other multiple unit dosage forms. Par's formulation will not use microtablets, because Par will not produce a formulation containing a small dosage form compressed into a regular shape. Par instead intends to produce non-cylindrical irregularly shaped beadlets through randomly milling a slug. Thus, Par's formulation will contain a broad distribution of particles with no one regular shape rather than a regularly-shaped microtablet. As a result, Par does not meet the microtablet limitation and thus will not literally infringe the claim.

Par's proposed formulation will also not infringe the microtablet limitation under the doctrine of equivalents. According to the Federal Circuit, "by defining the claim in a way that clearly excluded certain subject matter" a patent can implicitly disclaim the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). Here, the doctrine of equivalents is not available because such subject matter has been specifically excluded by the patentee. Further, the irregularly-shaped beadlets that Par proposes to manufacture are not equivalent to a microtablet because there are substantial differences between them. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997). A microtablet, as described in the specification, is a product of specially-outfitted pharmaceutical machinery designed to produce materials to exacting specifications. It is substantially different than the irregularly-shaped granule generated by a random milling process.

## 2.    Par's Proposed Product Does Not Infringe the Shape Limitation.

Par's proposed formulation does not infringe the requirement that the microtablet have a cylindrical shape with a convex or flat upper side and lower side, either literally or under the doctrine of equivalents. Par will not produce microtablets with any uniform shape. Thus, Par will not literally infringe the claim because it will not produce microtablets having this very specific shape.

Par will also not infringe under the doctrine of equivalents because the narrow claiming excluded other equivalents. According to the Federal Circuit, "A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, a claim that recited a particular shape clearly excluded distinctly different or even opposite shapes.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 16

Here, because the claim specifically recites a microtablet that has a cylindrical shape with a convex or flat upper side and lower side, all other shapes have been specifically excluded from the doctrine of equivalents. Since Par's product does not even propose to use a specific uniform shape, Par's product cannot infringe under the doctrine of equivalents.

It should also be noted that the doctrine of claim vitiation may also come into play. In *Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) the court held that expanding the claims reciting a "generally conical outer surface" to reach defendant's hemispherical cup would violate the "all-elements rule" because it would write the "conical" limitation out of the claims. *Id.* at 1160. The court reasoned that if evidence showed that any structure would be equivalent then it would read the "generally conical" limitation out of the claims. *Id.*

Par's proposed dosage form will also not infringe under the doctrine of equivalents because it is substantially different from the claimed microtablets. Microtabletting is a specialized technology that uses rotary compression machines specially equipped for the task of controlling the geometric parameters to produce a very specific, uniform shape. Par's proposed process will not use such machinery, and Par's dosage form will not contain components of any particular shape.

3. **Par's Proposed Product Does Not Infringe the Active Ingredient Limitation**

Par's proposed product will not infringe claim 1, either literally or under the doctrine of equivalents, because it will contain less active ingredient than what is required by the claims. Claim 1 requires that, "the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet." Par's proposed formulation will only contain 79.00% active ingredient. Therefore, Par's proposed product will not literally infringe the claim.

What is more, the patentee disclaims subject matter concerning microtablets with an active ingredient content below 81% by weight. The `588 patent specification, in a section describing the "preferred embodiments," acknowledges that the prior art's upper limit for tablets with a high concentration of active ingredient is 80%. By contrast, the "preferred embodiment" for the claimed invention is between 85 and 99.5% active ingredient content by weight. Col. , lines . Indeed, according to the specification, "[s]uch high contents of active ingredients of this type in tablets have not previously been reached." Col. 2, lines 39-41. By identifying and distinguishing the claimed invention from the prior art in this way, the patentee implicitly disclaims formulations that include an active ingredient content below 81%.

Third, there can be no infringement under the doctrine of equivalents because the doctrine of equivalents is limited by the prior art. Under *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990), a patentee cannot use the doctrine of

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 17

equivalents to extend claim scope passed what would have been allowed in prosecution over the prior art. Therefore, if a hypothetical claim broad enough in scope to literally read on the accused device, the doctrine of equivalents cannot be used. *Id.* As will be discussed in greater detail below, U.S. Patent No. 4,797,287 ("the '287 patent" or "Pich") discloses subject matter rendering the hypothetical range obvious. Pich describes a cylindrical microtablet containing propafenone with an active ingredient content of 80% of the weight of the microtablet. (Example 5, Col. 7). As a consequence, the hypothetical claim encompassing Par's propafenone drug (intended to contain 79.00%) would also "ensnare" the prior art (disclosing microtablets containing 80% propafenone), and thus would preclude infringement under the doctrine of equivalents.

4.     **Par's Proposed Product Does Not Infringe the Ancillary Substance Limitation.**

Par's proposed product will not infringe claim 1 because it will contain a release-delaying ancillary substance. Claim 1 requires that, "the tablet contains **no** release-delaying ancillary substance." (emphasis added). The claim is unequivocal. The microtablet as protected by the claims can contain **no** release-delaying ancillary substance. In this instance the patentee clearly and unmistakably disavowed all subject matter where the microtablet contains any release-delaying ancillary substances. Par's proposed dosage form will contain ethylcellulose, a well known release-delaying ancillary.[2] Therefore, Par will not literally infringe claim 1.

Par will also not infringe the claims under the doctrine of equivalents. The patentee specifically identified and distinguished pieces of prior art containing release delaying ancillary substances. Col. 1, lines 54-63. In this way, the patentee specifically excluded any release delaying ancillary substance from the scope of equivalents. Further, the Federal Circuit has repeatedly held that it is impermissible to extend the doctrine of equivalents to encompass subject matter that is inconsistent with the claims, as defined by the patentee. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998). Here, it would defy logic to conclude that Par's proposed use of ethylcellulose, a well known release-delaying auxiliary, was equivalent to the claims which require **no** release delaying auxiliaries. The patentee chose to limit the claims with strong language and the patentee is not allowed to expand the claims impermissibly post-issuance.

---

[2] *E.g.* "Modified release tablet formulations may also be produced using ethylcellulose as a matrix former." Handbook of Pharmaceutical Excipients, 186, (2d Ed. 1994).

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 18

### D.    The '588 Patent is Invalid

##### 1.    The '588 Patent is Invalid for in Anticipation over U.S. Patent No. 4,797,287 ("Pich")

The '588 patent is anticipated and invalid over art which was not provided to the Examiner during prosecution.  U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients.  Among the actives exemplified is propafenone.[3]  Pich was issued on June 10, 1989, more than one year before the effective filing date of the '588 patent (March 24, 1994).  Pich, despite its relevance, was not provided to the examiner during prosecution.

Pich discloses, "[w]e have found that this object is achieved by a process for the production of cylindrical microtablets which have a convex upper face and a convex lower face and whose cylinder diameter and height, independently of one another, are each from 1.0 to 2.5 mm, preferably from 2.0 to 2.3 mm." *Id.*  In particular, Pich exemplifies propafenone.  Example 5, col. 7.  With regard to the active ingredient content, Pich states, "[f]or example, it is possible to produce microtablets having a high content of substances which are difficult to press."  Col. 4, line 29-31.  Several paragraphs later, Pich specifically refers to such a "high content": "[p]ancreatin can be pressed to give tablets having a content of 99.5%."  Col. 4, 52-53.  The microtablets described in Example 5 also contain no release-delaying ancillary substances.  *See* Example 5, col. 7.  The lack of explanation in the specification makes it difficult to interpret the "active ingredient density" limitation, but it appears that the examples of Pich would have densities well over 1.  Finally, the release rate of the active from the microtablets and the compression characteristics recited in the claims would necessarily be disclosed in Pich because Pich otherwise describes the exact composition of the microtablets disclosed in the Orange Book patent.  Therefore, since every limitation is disclosed, either explicitly or inherently by one reference (Pich), each claim of the '588 patent is invalid because it is anticipated under 35 U.S.C. §102(b).

##### 2.    The '588 Patent is Invalid for Obviousness in View of U.S. Patent No. 4,797,287 ("Pich")

The '588 patent is obvious and invalid over art which was not provided to the Examiner during prosecution.  U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients.  Among the actives exemplified is propafenone.

---

[3] Knoll AG, the assignee of the '588 patent, was a wholly-owned subsidiary of BASF at the time the '588 patent was filed.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 19

The Pich reference is directed to "[c]ylindrical microtablets which have a convex upper face…and whose cylinder diameter and height independently of one another are each from 1.0 to 2.5 mm." '287 Patent, abstract. Pich explains that these "novel microtablets can be used for a very large variety of purposes…[of which] the most important and very particularly preferred field of use is the pharmaceutical sector." Col. 4, lines 6-15. The specification discloses specifically how to make such a microtablet with propafenone as an active ingredient. *See* Example 5. In this example, the propafenone content is 80%.[4] *Id.* at lines 29-31. The microtablet of Example 5 does not contain any release-delaying substances.

Moreover, it is well-settled that obviousness arises when the claimed range and the prior art range do not fully overlap, but the differences between the ranges are minor. *See Haynes Int'l Inc. v. Jessup Steel Co.*, 8 F.3d 1573, 1577, n.3 (Fed. Cir. 1993) (holding when the difference between the claimed invention and the prior art is the range or value of a particular variable, then a *prima facie* rejection is properly established when the difference in range or value is minor). In *Titanium*, a case with facts closely related to the facts at issue, the court held that an alloy containing 0.8% nickel, 0.3% molybdenum, and up to 0.1% maximum iron was *prima facie* obvious in view of a reference disclosing alloys containing 0.75% nickel, 0.25% molybdenum, balance titanium and 0.94% nickel, 0.31% molybdenum. *Id.* at 783. One of ordinary skill in the art would clearly recognize that 80% is tantamount to 81%.[5]

The patentee will also be unable to present convincing evidence of nonobviousness. One important secondary consideration, evidence of commercial success, "is not significantly probative" in this case because "others were legally barred from commercially testing the [the product covered by the Orange Book patent]" because market entry by others is precluded. *Merck v. Teva*, 395 F.3d 1365, 1377 (Fed. Cir. 2005).

In view of the prior art, when all of the factors are considered, there is clear and convincing evidence that the claim 1 of the '588 patent would have been obvious to one of ordinary skill in the art. What is more, the additional limitations of dependent claims 2-6 are rendered obvious in light of Pich because they are explicitly or inherently disclosed.

**E.     The '588 Patent is Unenforceable for Inequitable Conduct**

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must

---

[4] Example 5 suggests utilizing propafenone as an active ingredient, providing, as an example, the composition of the microtablet as containing: 1600 g propafenone, 250 g microcrystalline cellulose, 100 g lactose, 40 g talc, and 10 g magnesium stearate. These materials were then converted into microtablet form. The total percentage of propafenone in this example is 80% (1600 / 2000 = .80). '588 Patent, Col.7, lines 48-54
[5] Pich exemplifies the microtablet as having 80% active ingredient content in Example 5, however, as shown above, the specification does not so limit the active ingredient content in the microtablets to only 80%. Pich references "high content" throughout the specification and one example contains active ingredient of 99.5%.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 20

show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984); *see also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006) (finding summary judgment for inequitable conduct appropriate if there has been a failure to supply highly material information and the applicant knew of the information, the applicant knew or should have known of the material of the information, and the applicant has provided no credible explanation for withholding the information.)

Here, highly material prior art was never disclosed with the intent to deceive the Patent Office. As discussed in the foregoing, Pich is highly material prior art that reads on the claims of the '588 patent. Pich describes cylindrical microtablets containing, in one example, 80% propafenone. Pich was not, however, disclosed to the PTO examiner. BASF Aktiengesellschaft, the assignee of record during the prosecution of the '287 patent, was also the corporate parent of Knoll Aktiengesellshaft, the assignee of record during the prosecution of the '588 patent. There is clear evidence that Knoll knew about Pich at the time that the '588 patent was filed. Even though BASF is the assignee of record, court documents indicate that **Knoll** and McNeil entered into a license agreement in 1988 with Pich as its very subject matter. *McNeilab, Inc. v. Scandipharm, Inc.*, 862 F. Supp. 1351, 1353 (E.D. Pa. 1994). The license stated, "KAG hereby grants to McNeil a right and license to use the Know-How relating to the Product and the Patent Rights to make, use and sell the Product within the Territory. Such right and license shall be exclusive." *Id.* at 1353-1354. Thus, it is clear that Knoll was aware of Pich because Knoll granted McNeil a license to use that patent. Since Pich is very relevant (it discloses propafenone microtablets with the same characteristics of the claimed invention), the burden to show intent is commensurately reduced. Therefore, the '588 patent is unenforceable because Knoll failed to disclose material prior art during the prosecution of the '588 patent.

## V.      CONCLUSION

The marketing of Par's proposed Propafenone HCl extended release tablet, in the United States will not infringe any claims of the '588 patent. Moreover, all of the claims of the '588 patent are invalid and unenforceable.

Par expressly reserves the right to develop and make other arguments or affirmative claims, and to assert any defenses relating to non-infringement, invalidity and/or unenforceability of the claims of the '588 patent should grounds become apparent in the future.

00409689.DOC

# Exhibit 2



Par Pharmaceutical Companies, Inc.
300 Tice Boulevard
Woodcliff Lake, NJ 07677
tel  201 802 4000
fax  201 802 4600
www.parpharm.com

January 10, 2007

**CONFIDENTIAL**

**VIA REGISTERED EXPRESS MAIL**
**RETURN RECEIPT REQUESTED**

Dr. Ernest Mario
Chief Executive Officer & Chairman
Reliant Pharmaceuticals
110 Allen Road
Liberty Corner, NJ 07938

Re:  Rythmol® SR; route of administration: oral; strength: 225 mg, 325 mg, 425 mg
United States Patent No. 5,681,588
Notice of Paragraph IV Certification

Dear Sir:

This is a notice of certification letter on behalf of Par Pharmaceutical, Inc., ("Par") pursuant to 505(j)(2)(B)(ii) of the Federal Food, and Drug Cosmetic Act ("the Act") and 21 U.S.C. § 355(j)(2)(B)(ii) and § 314.95 of Title 21 of the Code of Federal Regulations:

1. An Abbreviated New Drug Application ("ANDA") that contains data from bioavailability or bioequivalence studies has been submitted under § 505(j) of the Act for the drug with respect to which the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of Propafenone HCl SR capsules before the expiration of U.S. Patent No. 5,681,588. The Food and Drug Administration ("FDA") has received this application.

2. The ANDA #78-540.

3. The established name of Par's proposed drug product is Propafenone HCl SR Capsules. Reliant Pharmaceuticals, Inc. markets Propafenone HCl under the brand name Rythmol® SR.



Dr. Ernest Mario
Reliant Pharmaceuticals, LLC
January 10, 2007
Page 2

4. The active ingredient, strengths, and dosage forms of the proposed drug product are: Propafenone HCl; 225 mg, 325 mg & 425 mg; and capsule for oral administration.

5. The ANDA indicates that Par intends to market the product before the expiration of: U.S. Patent No. 5,681,588 ("the '588 patent"), which expires on October 28, 2014. The '588 Patent is listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for Rythmol® SR (Propafenone HCl, 225 mg, 325 mg & 425 mg), extended release capsules for oral administration.

6. An Offer of Confidential Access to Par's ANDA, pursuant to 21 U.S.C. §355(j)(5)(C)(i)(III), accompanies this notice as a separate enclosure.

Attached is a detailed statement of the factual and legal bases of Par's patent certification. This information is supplied for the sole purpose of complying with the above-referenced statutes and regulations. Neither Par nor its attorneys waive any attorney-client privilege or work-product immunity concerning the subject matter of this communication.

Sincerely,

Steven I. Engel, M.S., Pharm.D.
Vice President, Regulatory Affairs
Business Development and Licensing
PAR Pharmaceutical, Inc.
300 Tice Boulevard
Woodcliff Lake, NJ 07677
U.S.A.

Encl.: Detailed Statement of the Factual and Legal Basis of Par's Paragraph IV Patent Certification and Offer of Confidential Access

Duplicate with enclosure via FEDEX

2



### DETAILED STATEMENT OF FACTUAL AND LEGAL BASIS FOR PAR'S OPINION THAT THE '588 PATENT IS INVALID, UNENFORCEABLE AND WILL NOT BE INFRINGED

## I.    INTRODUCTION AND SUMMARY

Reliant Pharmaceuticals ("Reliant") is the listed holder of NDA No. 21-416 for Propafenone HCl extended release capsules (225 mg, 325 mg & 425 mg) sold under the brand name Rythmol® SR. Rythmol® SR is indicated to prolong the time to recurrence of symptomatic atrial fibrillation in patients, without structural heart disease. Par proposes to manufacture, as set forth in its ANDA, 225 mg, 325 mg & 425 mg extended release capsules of propafenone HCl. Par's proposed generic propafenone HCl sustained release capsules will not infringe U.S. Patent No. 5,681,588, the only Orange Book patent listed with respect to Rythmol® SR. Also, this patent is invalid and unenforceable.

Par's proposed product does not infringe the '588 patent (either literally or under the doctrine of equivalents) because Par's proposed formulation: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's proposed formulation uses a release delaying substance.

Furthermore, the claims of the '588 patent are invalid under 35 U.S.C. §102(b) and 35 U.S.C. §103 over U.S. Patent No. 4,797,287 ("Pich"). Broadly, Pich discloses cylindrical microtablets containing propafenone and exemplifies propafenone content up to 80%. The '588 patent is also invalid under 35 U.S.C. §103(a) over Pich in view of U.S. Patent No. 4,954,347 ("Kristen"). Finally, the '588 patent is unenforceable because the assignee (and its employees) knew about Pich, a highly material reference, but did not disclose it to the PTO during the prosecution of the '588 patent.

## II.    LEGAL STANDARDS FOR INFRINGEMENT

### A.    Infringement Generally

Under 35 U.S.C. § 271(e)(2), "[i]t shall be an act of infringement to submit—(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent." "35 U.S.C. § 271(e)(2)(A) simply provides an 'artificial' act of infringement that creates case–or–controversy jurisdiction to enable the resolution of an infringement dispute before the ANDA applicant has actually made or marketed the product. Once jurisdiction is



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 2

established, however, the substantive determination whether actual infringement or inducement will take place is determined by traditional patent infringement analysis." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).

The patentee has the burden of proving infringement by a preponderance of the evidence. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005). Infringement may be literal or under the doctrine of equivalents. In each case the infringement analysis is a two-step process. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005). First, the scope of the claims must be determined. The Supreme Court has held that this first step, sometimes referred to as claim interpretation, is an issue of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("*Markman II*"); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1453 (Fed. Cir. 1998) (en banc). Thus, claim construction necessarily precedes a determination of whether the claims read on an accused product for infringement purposes. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *SmithKline Diagnostics, Inc. v. Helena Labs Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

The second step involves comparing the properly construed claims to the accused product to determine whether those claims "read on" the accused subject matter, *i.e.*, whether all of the claim limitations are present in the accused device, either literally or by a substantial equivalent. *Johnson Worldwide Assocs. Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1247 (Fed. Cir. 1998); *Cybor*, 138 F.3d at 1453. This second step is a factual determination and is thus submitted to a jury if the case is not tried to the court. *Markman II*, 517 U.S. at 384 (citing *Winans v. Denmead*, 56 U.S. 330, 338 (1854)).

### 1.    Claim Interpretation

Generally, claims are given their ordinary and customary meaning to a person skilled in the art, at the time of invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claim interpretation involves consideration of the language of the patent claim itself, the specification, other claims, the prosecution history, extrinsic evidence concerning scientific principles, and the meaning of technical terms. *Id.* at 1314; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd en banc*, 517 U.S. 370 (1996) ("*Markman I*"). Courts may admit extrinsic evidence, if necessary, as long as the extrinsic evidence is consistent with the intrinsic record. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 3

2006). Extrinsic evidence is any evidence that is external to the patent and prosecution history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Vitronics*, 90 F.3d at 1584.

The specification should be referred to when construing the limitations of patent claims. Indeed, usually, it is dispositive of the meaning of a term, and has been called "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Thus, the specification may act as a sort of dictionary, which explains the claimed subject matter and may define terms used in the claims. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997); *Markman I*, 52 F.3d at 979. Where the specification contains nothing to indicate that phrases are to be given anything other than their ordinary meanings, then those are the meanings the court must give them. *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (citing *Vitronics*, 90 F.3d at 1582); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). That is, a technical term used in a patent document is given the same meaning that it would be given by persons experienced in the field of the patent, unless it is apparent from the patent and prosecution history that the patentee used the term with a different meaning. *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)). Thus, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Vitronics*, 90 F.3d at 1582).

## 2. Literal Infringement

After claim interpretation, a determination is made whether the claims cover the accused products or methods. *Johnson Worldwide Assocs.*, 175 F.3d at 988. To infringe a claim, the accused product or method must include every limitation of the claim, either literally or by a substantial equivalent. *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

To demonstrate literal infringement, a plaintiff must prove that the allegedly infringing product or method embodies every element of the asserted claim(s). *Dolly, Inc.*, 16 F.3d at 397; *Townsend Eng 'g Co. v. Hitec Co.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987). This follows from the principle that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) (stating it is "well settled that each element of a claim is material and essential"). Thus, "[i]f even one

**)PAR**
PHARMACEUTICAL

Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 4

limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

### 3.    The Doctrine of Equivalents

Even if a product or process does not literally infringe, there can still be infringement if there is "equivalence" between the elements of the accused product or process and the elements of the patent's claims. *Warner-Jenkinson*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1571 n.3 (Fed. Cir. 1991). Infringement by equivalents requires that "the accused product or process contain elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson*, 520 U.S. at 40.

To be equivalent, the patentee must prove that the accused product "differs from what is literally claimed only insubstantially, and it performs substantially the same function in substantially the same way to achieve substantially the same result." *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997); *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *see Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997) (affirming the viability of the "insubstantial differences" test). The nature of the differences is assessed according to whether a person with ordinary skill in the relevant art would find the differences to be substantial. *Hilton Davis*, 62 F.3d at 1519.

### 4.    Limits on the Doctrine of Equivalents

There are limitations on the application of the doctrine of equivalents. Among other limitations, both the prior art and prosecution history estoppel limit the range of equivalents. *Haynes Int'l, Inc. v. Jessop Steel Co.* , 8 F.3d 1573, 1579 (Fed. Cir. 1993), *clarified on other grounds*, 15 F.3d 1076 (Fed. Cir. 1994); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 n.1 (Fed. Cir. 1987) (en banc). "The doctrine of equivalents cannot be used to erase "meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994).

4



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 5

### a.    Prosecution History Estoppel

Prosecution history estoppel applies when the applicant surrenders subject matter by either argument or amendment. Arguments, even without amendment, made during prosecution to obtain allowance of the claims at issue give rise to estoppel when such assertions clearly and unmistakably surrender subject matter, even when such arguments were not necessary to distinguish prior art. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828, n.3 (Fed. Cir. 1999) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 952 (Fed. Cir. 1993) and *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174-75 (Fed. Cir. 1993)); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998) (citing the same).

During the prosecution of a patent, "a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). For example, prosecution history estoppel is not limited to amendments made to avoid the prior art, but rather includes amendments made to comply with 35 U.S.C. § 112:

> A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112. We must regard the patentee as having conceded an inability to claim the broader subject matter or at least as having abandoned his right to appeal a rejection. In either case estoppel may apply.

*Id.* at 737. Thus, when prosecution history estoppel applies, the patentee may only allege literal infringement.

### b.    Prior Art as a Limitation

Even if the accused product performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990). The patentee bears the burden of proving that the



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 6

hypothetical claim does not "ensnare the prior art." *Id.* at 685. In this inquiry, the prior art can be found to anticipate or render obvious the claimed invention.

In *Wilson*, the patentee alleged the accused product infringed its patent, which covered the pattern of dimples on a golf ball, under the doctrine of equivalents. The Federal Court of Appeals disagreed, holding "there can be infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Id.* at 683. The Court explained that "the doctrine of equivalents does not involve expansion of the *claims.*" *Id.* at 684 (emphasis in original). To hold otherwise, the court reasoned, "would allow the patentee to preempt a product that was in the public domain prior to invention." Thus, "[a] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Id.* at 684.

To guide courts in this determination, the court proposed that courts consider the likely result of a "hypothetical claim" broad enough in scope to *literally* cover the accused product. If this hypothetical claim would not have been allowed by the PTO over the prior art, "it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Id.* at 684. Even so, the hypothetical claim analysis is not mandatory. *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (noting that the crux of the analysis is preventing the patentee from obtaining scope later that he or she could not have obtained during prosecution); *see also International Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993).

The Federal Circuit has re-affirmed this reasoning in a series of subsequent cases. *Streamfeeder, LLC v. Sure-Feed Systems Inc.* 175 F.3d 974 (Fed. Cir. 1999); *Marquip Inc. v. Fosber America, Inc.*, 198 F.3d 1363 (Fed. Cir. 1999). In *Streamfeeder*, the court noted that in hypothetical claim analysis "one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art." 175 F.3d at 983. Thus, the patentee is prohibited from both broadening the scope of the claims under the doctrine of equivalents while simultaneously narrowing the scope of the claims to avoid encompassing the prior art.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 7

### c.    The Dedication Disclosure Rule

The doctrine of equivalents cannot reach an element disclosed in an alternative embodiment of the invention in the specification but deliberately not claimed. *See Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002).

> [W]hen a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would "conflict with the primacy of the claims in defining the scope of the patentee's exclusive right."

*Id.* at 1054.  The court in *Johnson* also grounded their holding partly in the policy that, "a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Id.*

### d.    The "All Elements" Rule

One further limitation of the doctrine of equivalents is the "all elements rule" which requires that "each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  It follows from this rule that, "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate that element in its entirety." *Freedman Seating Co., v. America Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005).  According to the Federal Circuit, there is no "set formulation" for this determination, however, courts must consider "the totality of the circumstances." *Id.* at 1359.  Several factors are appropriate for consideration, including "the simplicity of the structure, the specificity and narrowness of the claim, and the forseeability of variations at the time of filing the claim with the PTO." *Id.* at 1360.  For example, in *Moore U.S.A., Inc. v. Standard Register, Co.*, 229 F.3d 1091 (Fed. Cir. 2000), the Federal Circuit stated that, "to allow what is undisputedly a minority (*i.e.*, 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive . . . extend the majority of the lengths of said longitudinal marginal portions'." *Id.* at 1106; *see generally Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) (claims reciting a clear geometric shape of



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 8

generally conical were vitiated by attempting to cover a hemispherical cup by the doctrine of equivalents).

### e.    Specific Exclusion

Further, "by defining the claim in a way that clearly excluded certain subject matter" a patent implicitly disclaims the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). In particular, structural limitations like shapes have been accorded a narrow scope of equivalents:

> A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents. *See Tanabe Seiyaku Co. v. United States ITC*, 109 F.3d 726, 732 (Fed. Cir. 1997) ("The sharply restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents."). That principle has special application in a case such as this one, where the claim recites a particular shape for the basal portion of the abutment that clearly excludes distinctly different and even opposite shapes.

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, reciting a specific shape in the claims specifically excluded other shapes. *Id.* In particular, the patentee's characterization of its abutment having a "convex, frusto-spherical shape" excluded abutments which were concave and frustro-conical because these shapes were contrary to, or inconsistent with, the claim language. *Id.* at 955-956.

### f.    Other Limits

In addition, arguments emphasizing the criticality of a claim element may give rise to a surrender of all competitive products that do not contain the critical element. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1378-79 (Fed. Cir. 1999) (finding all compositions that do not contain a component described as critical during prosecution and interpreted as indispensable were surrendered during prosecution).

Moreover, there can be no infringement under the doctrine of equivalents if a claim limitation is totally missing from the accused device. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d

8



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 9

792, 798 (Fed. Cir. 1990)). "The doctrine of equivalents is not a license to ignore claim limitations." *Dolly*, 16 F.3d at 398. That is, a "court cannot convert a multilimitation claim to one with fewer limitations to support a finding of equivalency." *Id.* at 399.

## III.    LEGAL STANDARDS FOR INVALIDITY

### A.    Anticipation Under 35 U.S.C. 102(b) - Prior Art

Section 102(b) provides a complete bar to the patentability of any invention that has been "patented or described in a printed publication in this or a foreign country... more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2000). A single reference must teach each and every limitation of the claimed invention, either expressly or inherently, in order to anticipate under 35 U.S.C. § 102(b). *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

### B.    The Law of Obviousness Under 35 U.S.C. § 103

For a patent to be valid, the claimed invention must be nonobvious over the prior art to a person having ordinary skill in the art of the invention. Section 103(a) provides in part:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

An important consideration is "the need to adhere to the statute, i.e., to hold that an invention would or would not have been obvious, as a whole, when it was made, to a person of 'ordinary skill in the art' – not to the judge, or to a layman, or to those skilled in remote arts, or to geniuses in the art." *Envtl. Designs Ltd., v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *Custom Accessories Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed. Cir. 1986).

Several factors guide a court's assessment of obviousness including:

(1)    the scope and content of the prior art;



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 10

    (2)    the differences between the prior art and the claims at issue;

    (3)    the level of the ordinary skill in the art; and

    (4)    whatever objective evidence may be present.

*Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

    When evaluating the scope and content of the prior art, the question under § 103 is not merely what the references expressly teach but what they would have suggested to one of ordinary skill in the art at the time the invention was made. *Merck & Co. Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989). To invalidate a patent under § 103 using a combination of prior art, there must be some reason, suggestion or motivation found in the prior art whereby a person of ordinary skill would make the combination. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1351 (Fed. Cir. 1998). The motivation to combine can come from the knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000); *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996) (holding that such suggestion may "come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem"). It is not necessary for the motivation to be found explicitly in the prior art: "[t]here is flexibility in our obviousness jurisprudence because a motivation may be found <u>implicitly</u> in the prior art. We do not have a rigid test that requires an actual teaching to combine before concluding that one or ordinary skill in the art would know to combine references." (emphasis in original). *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, at *10 (Fed. Cir. 2006). The ultimate determination of obviousness when evaluating the prior art does not require absolute predictability of success. All that is required is a reasonable expectation of success. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000).

    Other considerations may be helpful in determining whether an invention is obvious. *See Stratoflex, Inc.*, 713 F.2d at 1538. These secondary considerations include evidence of commercial success, long felt but unsolved needs, failure of others, initial skepticism of experts, praise from experts, copying by an infringer, near simultaneous invention by others, and licenses under the examined patent. *See In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998). However, these factors are not considered unless there is a showing of a nexus between the invention and the secondary consideration to ensure that the secondary consideration is not ascribable to other irrelevant factors. *Ryko Mfg. Co. v. Nu-Star Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991).



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 11


Each claim in an issued patent carries an independent presumption of validity. The ultimate question of obviousness is a question of law, which must be supported by clear and convincing evidence. The challenger to the validity of a patent must establish by clear and convincing evidence the facts supporting invalidity. *Ultra-Tex Surfaces v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc.*, 713 F.2d at 1534.


### C.    Inequitable Conduct

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp. v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *Purdue Pharma LP v. Endo Pharma. Inc.*, 438 F.3d 1123, 1128-29 (Fed. Cir. 2006).

A duty of candor and good faith is required to the Patent and Trademark Office by the inventor, the attorney or agent preparing and prosecuting the application, and every other individual substantively involved in the prosecution of the application. 37 C.F.R. § 1.56(c). This duty also applies to those substantively involved individuals who are associated with the asisngee. *Id.* Moreover, a corporate assignee does not cleanse itself of all culpability for misrepresentations or omissions during the prosecution of the patent application filed on its behalf by purposefully keeping its officers in the dark concerning the application's contents and placing the entire burden for proper disclosure on an inventor not versed in patent law or the relevant facts. *See Digital Equipment Corp. v. Diamond,* 653 F.2d 701 (Fed. Cir. 1981).


11



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 12

## IV.  THE '588 PATENT IS NOT INFRINGED AND IS INVALID

### A.    The '588 Patent

The '588 Patent matured from application serial number 08/525,749 ("the '749 application"), filed on October 10, 1995, which claims priority from PCT/EP94/00949, filed March 24, 1994.  PCT/EP94/00949, in turn, claims priority from German application P4310963.2 which was filed on April 3, 1993.  The German application was originally filed by BASF Aktiengesellschaft.  The '588 patent issued to Kolter et al. on October 28, 1997 and is assigned to Knoll Aktiengesellschaft of Ludwigshafen, Germany.  The '588 Patent expires on October 28, 2014.

In the "Background of the Invention" section, the patentee admits that multiple unit delayed release dosage forms were preferable to single unit dosage forms because "the units are distributed uniformly along the gastrointestinal tract and can also pass through the closed pylorus."  Col. 1, lines 46-48.  The patentee also admits that multiple unit delayed dosage forms contained amounts of active ingredient that were up to 60-80%.  The patentee alleges that "small matrix" pellets were produced, but "only with very low doses of medicinal substances."  For example, the patentee cites EP 22 17 32 (Oren et al.), WO 92/04013 (Bongiovanni et al.), and GB 2 176 999 (Davis et al.) as having low doses of active ingredient.  The patentee admits that Oren et al. discloses, "delayed release tablets" having "60-80% active ingredient."  Col. 1, line 59.  Another example in Bongiovanni discloses 76.7% ibuprofen content.  In the Detailed Description of the Preferred Embodiments, the patentee asserts "A bolus tablet with commercial dosages of 150-300 mg and an active ingredient above 80% cannot be produced under production conditions."  Col. 2, lines 31-33.

The specification alleges that employing microtablets according to the invention overcomes the drawbacks of the prior art.  The specification describes that microtablet production has four steps, used with conventional pharmaceutical equipment: "granulation, drying, mixing, tabletting."  Col. 3, line 51.  According to the patentee, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches.  The resulting microtablets have a cylindrical shape with flat or convex surface [sic]."  (emphasis added) Col. 4, lines 19-22.  In Example 1, the patentee discloses, "[t]he microtablets were produced in a rotary tabletting machine equipped with multiple microtablet punches."  Col. 5, lines 25-26.  Further, each example (other than the comparative example) refers back to Example 1 for the method of microtablet production.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 13

WO 92/04013 was cited as an example that "disclose[s] small matrix delayed release tablets which likewise contain relatively large amounts of release-delaying ancillary substances." The patentee then notes that "Patent Application EP 22 17 32 claims delayed release tablets of active ingredients with low solubility, which contain 60-80% active ingredient in addition to at least 4 auxiliaries" and that such formulations are highly dependent on "granulation process and equipment" used. With respect to compressibility, the patentee notes that "propafenone HCl is extremely difficult to compress. A bolus tablet with commercial doses of 150-300 mg and an active ingredient content above 80% cannot be produced under production conditions. . . such high contents of active ingredients of this type in tablets have not previously been reached." Patentee admits that it considers propafenone delayed release tablet formulations of 80% or less active ingredient content to be part of the prior art. Col. 2, lines 30-41.

The patentee further noted that its microtablets achieve the object of the invention "because it has been found, surprisingly, that it is possible in the present case to produce delayed release tablets without release-delaying ancillary substances." Patentee also pointed out a number of problems that hydrophilic release-delaying polymers can cause: sticking or adhesion to the GI tract (patentee referenced WO 92/04013 as a formulation that might exhibit this problem), requirement of use of organic solvents to prevent swelling (patentee pointed out that this problem which can be "entirely" dispensed within the invention), and sensitivity to changes in humidity during storage.

The '588 patent has six claims, only the first claim is independent:

1. A cylindrical delayed release microtablet with a convex or flat upper side and lower side of β-phenylpropiophenone derivatives of the formula I as active ingredient

I

where R is n-propyl or 1,1-dimethylpropyl, and their pharmacologically acceptable salts, wherein

13



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 14

    a) the height and diameter are, independently of one another, 1-3 mm,

    b) the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet,

    c) the active ingredient density is greater than 1,

    d) the release of active ingredient in the USP paddle method at 50 rpm is 80% as a maximum after 3 hours and as a minimum after 24 hours,

    e) the release rate is virtually independent of the pressure when compressing the tablets, and

    f) the tablet contains no release-delaying ancillary substance but 0.1-5% by weight of a lubricant and 0-18.9% by weight of other conventional ancillary substances.

    2. A tablet as claimed in claim 1, which in vivo results in a pronounced plasma level plateau with a PTF<75% and whose bioavailability does not depend on the intake of food.

    3. A tablet as claimed in claim 1, wherein the active ingredient is propafenone hydrocholoride.

    4. A tablet as claimed in claim 1, wherein the height and diameter are approximately the same.

    5. A gelatin capsule which contains 3-200 tablets as claimed in claim 1 with identical or different release rates.

    6. A process for producing cylindrical delayed release microtablets as claimed in claim 1, which comprises a homogeneous mixture of 81-99.9% by weight of the granulated active ingredient with a



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 15

> particle size below 1 mm, 0.1-5% by weight of a lubricant and 0-
> 18.9% by weight of other conventional ancillary substances which
> do not delay release being compressed in a cylindrical mold with a
> height and diameter each of 1-3 mm and being removed from the
> mold.

**B.      The Prosecution History of the '588 Patent**

During prosecution, the applicant submitted a preliminary amendment that made changes to the specification and removed multiple dependent claims. In the first Office Action, the Examiner rejected claims 1-6 under 35 U.S.C. §103 and 35 U.S.C. §112. With regard to the rejection under §103, the Examiner determined that the claims were unpatentable over Davidson (U.S. Patent No. 3,951,821) in view of Franke (U.S. Patent No. 4,945,114). The Examiner noted that the claims read on "a cylindrical delayed release tablet with an active agent" and that Davidson teaches "a delayed release microtubule…and active agent." Office Action, mailed October 17, 1996 at 3 (citation omitted). The Examiner noted Franke discloses the use of propafenone. The Examiner concluded that the motivation to combine the references "is provided by the fact that both cited references read on a tablet comprising an active agent. The intended purpose is to provide a delayed release specific active agent tablet." *Id.*

The Examiner also determined that the claims were unpatentable under 35 U.S.C. §112. Office Action, mailed October 17, 1996 at 2. As originally filed, claim 1 recited "from 81 to 99.9% of the weight of the microtablet, but not taking into account the weight of any coating which is present." The Examiner found that this was indefinite. The Examiner indicated that if the amount of coating was important, then the claims should be rewritten to reflect the percentage of coating present. In response, the applicant deleted the coating part of the limitation.

The applicant responded that their microtablet had surprisingly improved delayed release characteristics and that such results are "especially surprising" because their formulation contained "no other release delaying additives." Response, dated January 9, 1997 at 3. The applicant also alleged that 90% of other medicaments with similar water solubilites were released within one hour if they were formulated according to the invention (data not included). Other "surprising" results included that release rate was virtually independent of pressure. *Id.* With respect to the prior art references, applicant pointed out that Davidson actually "is specifically looking toward instant release and speeding up the disintegration of tablets." *Id.* at



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 16

4. The applicant conjectured: "if one were to modify Davidson by the teachings of Franke et al, one would obtain a propafenone hydrochloride tablet" resulting in "relatively instant release, certainly within five minutes or less, as taught by Davidson." *Id.* at 5. The applicant concluded that there is "no suggestion within either reference" that propafenone "would have surprising delayed release characteristics when compressed into the tablet form" disclosed in the application, and there would be "no expectation by one of ordinary skill in the art" of obtaining the "delayed relatively uniform release...in a microtablet having the required size, shape and other characteristics as required by the present claims." *Id.* at 6.

The notice of allowance was mailed on April 1, 1997, and the applicant filed a supplemental amendment substituting a new abstract for the abstract that was filed with the application. A supplemental notice of allowability was mailed on June 25, 1997. The patent issued on October 28, 1997.

### C.    Par's Proposed Propafenone HCl Capsule (225 mg, 325 mg & 425 mg) Does Not Infringe the '588 Patent

Par's proposed propafenone HCl product does not infringe claim 1 of the '588 patent, either literally or under the doctrine of equivalents, because it does not embody every element of claim 1 of the '588 patent. Par's proposed formulation does not infringe claim 1 for at least four reasons: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's proposed formulation uses a release delaying substance. Claims 2-6 depend from claim 1 and therefore also do not infringe, either literally or under the doctrine of equivalents.

### 1.    Par's Proposed Product Does Not Infringe the Microtablet Limitation.

Par will not infringe claim 1 because it will not produce a formulation containing a "microtablet", literally, or by equivalents.[1] The term "microtablet" is a compound word which can be broken into two parts: "micro" and "tablet." The prefix "micro" is derived from the Greek, "mikros" which means small. According to *Remington's Pharmaceutical Sciences*,

---

[1] It is well settled that the preamble is limiting if it recites structure. *See* MPEP §2111.02(I) ("Any terminology in the preamble that limits the structure of the claimed invention must be treated as a claim limitation.")



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 17

"[t]ablets may be defined as solid pharmaceutical dosage forms containing drug substances with or without suitable diluents and prepared either by compression or molding methods." *Id.* at 1553 (16th Ed. 1980). "Although tablets are more frequently discoid in shape, they also may be round, oval, oblong, cylindrical, or triangular." *Id.* Thus, according to *Remington's*, tablets must be dosage forms which are compressed into a regular shape. The specification of the '588 patent supports this position. For example, the patentee states, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches. The resulting microtablets have **a cylindrical shape with flat or convex surface** [sic]." (emphasis added) Col. 4, lines 19-22. In this way, the patentee clearly and unmistakably disavowed all other multiple unit dosage forms. Par's formulation will not use microtablets, because Par will not produce a formulation containing a small dosage form compressed into a regular shape. Par instead intends to produce non-cylindrical irregularly shaped beadlets through randomly milling a slug. Thus, Par's formulation will contain a broad distribution of particles with no one regular shape rather than a regularly-shaped microtablet. As a result, Par does not meet the microtablet limitation and thus will not literally infringe the claim.

Par's proposed formulation will also not infringe the microtablet limitation under the doctrine of equivalents. According to the Federal Circuit, "by defining the claim in a way that clearly excluded certain subject matter" a patent can implicitly disclaim the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). Here, the doctrine of equivalents is not available because such subject matter has been specifically excluded by the patentee. Further, the irregularly-shaped beadlets that Par proposes to manufacture are not equivalent to a microtablet because there are substantial differences between them. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997). A microtablet, as described in the specification, is a product of specially-outfitted pharmaceutical machinery designed to produce materials to exacting specifications. It is substantially different than the irregularly-shaped granule generated by a random milling process.

### 2.    Par's Proposed Product Does Not Infringe the Shape Limitation.

Par's proposed formulation does not infringe the requirement that the microtablet have a cylindrical shape with a convex or flat upper side and lower side, either literally or under the doctrine of equivalents. Par will not produce microtablets with **any** uniform shape. Thus, Par will not literally infringe the claim because it will not produce microtablets having this very specific shape.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 18

Par will also not infringe under the doctrine of equivalents because the narrow claiming excluded other equivalents. According to the Federal Circuit, "A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, a claim that recited a particular shape clearly excluded distinctly different or even opposite shapes. Here, because the claim specifically recites a microtablet that has a cylindrical shape with a convex or flat upper side and lower side, all other shapes have been specifically excluded from the doctrine of equivalents. Since Par's product does not even propose to use a specific uniform shape, Par's product cannot infringe under the doctrine of equivalents.

It should also be noted that the doctrine of claim vitiation may also come into play. In *Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) the court held that expanding the claims reciting a "generally conical outer surface" to reach defendant's hemispherical cup would violate the "all-elements rule" because it would write the "conical" limitation out of the claims. *Id.* at 1160. The court reasoned that if evidence showed that any structure would be equivalent then it would read the "generally conical" limitation out of the claims. *Id.*

Par's proposed dosage form will also not infringe under the doctrine of equivalents because it is substantially different from the claimed microtablets. Microtabletting is a specialized technology that uses rotary compression machines specially equipped for the task of controlling the geometric parameters to produce a very specific, uniform shape. Par's proposed process will not use such machinery, and Par's dosage form will not contain components of any particular shape.

### 3. Par's Proposed Product Does Not Infringe the Active Ingredient Limitation

Par's proposed product will not infringe claim 1, either literally or under the doctrine of equivalents, because it will contain less active ingredient than what is required by the claims. Claim 1 requires that, "the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet." Par's proposed formulation will only contain 79.00% active ingredient. Therefore, Par's proposed product will not literally infringe the claim.

What is more, the patentee disclaims subject matter concerning microtablets with an active ingredient content below 81% by weight. The '588 patent specification, in a section



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 19

describing the "preferred embodiments," acknowledges that the prior art's upper limit for tablets with a high concentration of active ingredient is 80%. By contrast, the "preferred embodiment" for the claimed invention is between 85 and 99.5% active ingredient content by weight. Col. , lines. Indeed, according to the specification, "[s]uch high contents of active ingredients of this type in tablets have not previously been reached." Col. 2, lines 39-41. By identifying and distinguishing the claimed invention from the prior art in this way, the patentee implicitly disclaims formulations that include an active ingredient content below 81%.

Third, there can be no infringement under the doctrine of equivalents because the doctrine of equivalents is limited by the prior art. Under *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990), a patentee cannot use the doctrine of equivalents to extend claim scope passed what would have been allowed in prosecution over the prior art. Therefore, if a hypothetical claim broad enough in scope to literally read on the accused device, the doctrine of equivalents cannot be used. *Id.* As will be discussed in greater detail below, U.S. Patent No. 4,797,287 ("the '287 patent" or "Pich") discloses subject matter rendering the hypothetical range obvious. Pich describes a cylindrical microtablet containing propafenone with an active ingredient content of 80% of the weight of the microtablet. (Example 5, Col. 7). As a consequence, the hypothetical claim encompassing Par's propafenone drug (intended to contain 79.00%) would also "ensnare" the prior art (disclosing microtablets containing 80% propafenone), and thus would preclude infringement under the doctrine of equivalents.

### 4. Par's Proposed Product Does Not Infringe the Ancillary Substance Limitation.

Par's proposed product will not infringe claim 1 because it will contain a release-delaying ancillary substance. Claim 1 requires that, "the tablet contains **no** release-delaying ancillary substance." (emphasis added). The claim is unequivocal. The microtablet as protected by the claims can contain **no** release-delaying ancillary substance. In this instance the patentee clearly and unmistakably disavowed all subject matter where the microtablet contains any release-delaying ancillary substances. Par's proposed dosage form will contain ethylcellulose, a well known release-delaying ancillary.[2] Therefore, Par will not literally infringe claim 1.

---

[2] *E.g.* "Modified release tablet formulations may also be produced using ethylcellulose as a matrix former." Handbook of Pharmaceutical Excipients, 186, (2d Ed. 1994).



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 20

Par will also not infringe the claims under the doctrine of equivalents. The patentee specifically identified and distinguished pieces of prior art containing release delaying ancillary substances. Col. 1, lines 54-63. In this way, the patentee specifically excluded any release delaying ancillary substance from the scope of equivalents. Further, the Federal Circuit has repeatedly held that it is impermissible to extend the doctrine of equivalents to encompass subject matter that is inconsistent with the claims, as defined by the patentee. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998). Here, it would defy logic to conclude that Par's proposed use of ethylcellulose, a well known release-delaying auxiliary, was equivalent to the claims which require **no** release delaying auxiliaries. The patentee chose to limit the claims with strong language and the patentee is not allowed to expand the claims impermissibly post-issuance.

**D.    The '588 Patent is Invalid**

**1.    The '588 Patent is Invalid for in Anticipation over U.S. Patent No. 4,797,287 ("Pich")**

The '588 patent is anticipated and invalid over art which was not provided to the Examiner during prosecution. U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients. Among the actives exemplified is propafenone.[3] Pich was issued on June 10, 1989, more than one year before the effective filing date of the '588 patent (March 24, 1994). Pich, despite its relevance, was not provided to the examiner during prosecution.

Pich discloses, "[w]e have found that this object is achieved by a process for the production of cylindrical microtablets which have a convex upper face and a convex lower face and whose cylinder diameter and height, independently of one another, are each from 1.0 to 2.5 mm, preferably from 2.0 to 2.3 mm." *Id.* In particular, Pich exemplifies propafenone. Example 5, col. 7. With regard to the active ingredient content, Pich states, "[f]or example, it is possible to produce microtablets having a high content of substances which are difficult to press." Col. 4, line 29-31. Several paragraphs later, Pich specifically refers to such a "high content": "[p]ancreatin can be pressed to give tablets having a content of 99.5%." Col. 4, 52-53. The microtablets described in Example 5 also contain no release-delaying ancillary substances. *See* Example 5, col. 7. The lack of explanation in the specification makes it difficult to interpret the

---

[3] Knoll AG, the assignee of the '588 patent, was a wholly-owned subsidiary of BASF at the time the '588 patent was filed.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 21

"active ingredient density" limitation, but it appears that the examples of Pich would have densities well over 1. Finally, the release rate of the active from the microtablets and the compression characteristics recited in the claims would necessarily be disclosed in Pich because Pich otherwise describes the exact composition of the microtablets disclosed in the Orange Book patent. Therefore, since every limitation is disclosed, either explicitly or inherently by one reference (Pich), each claim of the '588 patent is invalid because it is anticipated under 35 U.S.C. §102(b).

### 2.    The '588 Patent is Invalid for Obviousness in View of U.S. Patent No. 4,797,287 ("Pich")

The '588 patent is obvious and invalid over art which was not provided to the Examiner during prosecution. U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients. Among the actives exemplified is propafenone.

The Pich reference is directed to "[c]ylindrical microtablets which have a convex upper face…and whose cylinder diameter and height independently of one another are each from 1.0 to 2.5 mm." '287 Patent, abstract. Pich explains that these "novel microtablets can be used for a very large variety of purposes…[of which] the most important and very particularly preferred field of use is the pharmaceutical sector." Col. 4, lines 6-15. The specification discloses specifically how to make such a microtablet with propafenone as an active ingredient. *See* Example 5. In this example, the propafenone content is 80%.[4] *Id.* at lines 29-31. The microtablet of Example 5 does not contain any release-delaying substances.

Moreover, it is well-settled that obviousness arises when the claimed range and the prior art range do not fully overlap, but the differences between the ranges are minor. *See Haynes Int'l Inc. v. Jessup Steel Co.*, 8 F.3d 1573, 1577, n.3 (Fed. Cir. 1993) (holding when the difference between the claimed invention and the prior art is the range or value of a particular variable, then a *prima facie* rejection is properly established when the difference in range or value is minor). In *Titanium*, a case with facts closely related to the facts at issue, the court held

---

[4] Example 5 suggests utilizing propafenone as an active ingredient, providing, as an example, the composition of the microtablet as containing: 1600 g propafenone, 250 g microcrystalline cellulose, 100 g lactose, 40 g talc, and 10 g magnesium stearate. These materials were then converted into microtablet form. The total percentage of propafenone in this example is 80% (1600 / 2000 = .80). '588 Patent, Col.7, lines 48-54



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 22

that an alloy containing 0.8% nickel, 0.3% molybdenum, and up to 0.1% maximum iron was *prima facie* obvious in view of a reference disclosing alloys containing 0.75% nickel, 0.25% molybdenum, balance titanium and 0.94% nickel, 0.31% molybdenum. *Id* at 783. One of ordinary skill in the art would clearly recognize that 80% is tantamount to 81%.[5]

The patentee will also be unable to present convincing evidence of nonobviousness. One important secondary consideration, evidence of commercial success, "is not significantly probative" in this case because "others were legally barred from commercially testing the [the product covered by the Orange Book patent]" because market entry by others is precluded. *Merck v. Teva*, 395 F.3d 1365, 1377 (Fed. Cir. 2005).

In view of the prior art, when all of the factors are considered, there is clear and convincing evidence that the claim 1 of the '588 patent would have been obvious to one of ordinary skill in the art. What is more, the additional limitations of dependent claims 2-6 are rendered obvious in light of Pich because they are explicitly or inherently disclosed.

### E.    The '588 Patent is Unenforceable for Inequitable Conduct

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984); *see also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006) (finding summary judgment for inequitable conduct appropriate if there has been a failure to supply highly material information and the applicant knew of the information, the applicant knew or should have known of the material of the information, and the applicant has provided no credible explanation for withholding the information.)

---

[5] Pich exemplifies the microtablet as having 80% active ingredient content in Example 5, however, as shown above, the specification does not so limit the active ingredient content in the microtablets to only 80%. Pich references "high content" throughout the specification and one example contains active ingredient of 99.5%.



Dr. Ernest Mario
Reliant Pharmaceuticals
January 10, 2007
Page 23

Here, highly material prior art was never disclosed with the intent to deceive the Patent Office. As discussed in the foregoing, Pich is highly material prior art that reads on the claims of the '588 patent. Pich describes cylindrical microtablets containing, in one example, 80% propafenone. Pich was not, however, disclosed to the PTO examiner. BASF Aktiengesellschaft, the assignee of record during the prosecution of the '287 patent, was also the corporate parent of Knoll Aktiengesellshaft, the assignee of record during the prosecution of the '588 patent. There is clear evidence that Knoll knew about Pich at the time that the '588 patent was filed. Even though BASF is the assignee of record, court documents indicate that **Knoll** and McNeil entered into a license agreement in 1988 with Pich as its very subject matter. *McNeilab, Inc. v. Scandipharm, Inc.*, 862 F. Supp. 1351, 1353 (E.D. Pa. 1994). The license stated, "KAG hereby grants to McNeil a right and license to use the Know-How relating to the Product and the Patent Rights to make, use and sell the Product within the Territory. Such right and license shall be exclusive." *Id.* at 1353-1354. Thus, it is clear that Knoll was aware of Pich because Knoll granted McNeil a license to use that patent. Since Pich is very relevant (it discloses propafenone microtablets with the same characteristics of the claimed invention), the burden to show intent is commensurately reduced. Therefore, the '588 patent is unenforceable because Knoll failed to disclose material prior art during the prosecution of the '588 patent.

## V.      CONCLUSION

The marketing of Par's proposed Propafenone HCl extended release tablet, in the United States will not infringe any claims of the '588 patent. Moreover, all of the claims of the '588 patent are invalid and unenforceable.

Par expressly reserves the right to develop and make other arguments or affirmative claims, and to assert any defenses relating to non-infringement, invalidity and/or unenforceability of the claims of the '588 patent should grounds become apparent in the future.

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC., )
)
Plaintiff, )
)
v. )        C.A. No. 06-774 (JJF)
)
PAR PHARMACEUTICAL, INC., )
)
Defendant. )
)

**PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OBJECTIONS AND
RESPONSES TO PAR PHARMACEUTICAL, INC.'S FIRST SET OF
REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rules 26.1 and 26.2,

Plaintiff Reliant Pharmaceuticals, Inc. ("Reliant" or "Plaintiff") makes the following objections

and responses to Defendant Par Pharmaceutical, Inc.'s ("Par's") First Set Of Requests For The

Production Of Documents And Things To Plaintiff.

Pursuant to Federal Rule of Civil Procedure 26(e), Reliant reserves the right to

supplement its responses if it learns of additional information.

**PLAINTIFF'S GENERAL OBJECTIONS TO PAR'S FIRST SET OF
REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

Reliant makes the following general objections to Defendant's First Set Of

Requests For The Production Of Documents And Things ("General Objections"), which General

Objections are hereby incorporated by reference and made part of its response to each such

request:

1.      Reliant objects to each request to the extent that it seeks to impose

requirements or obligations on Reliant in addition to or different from those imposed by the

Federal Rules Of Civil Procedure or the Local Civil Rules For The District Of Delaware.

2.      Reliant objects to Par's "Definitions and Instructions" to the extent that they purport to impose obligations or requirements in addition to or different from those imposed by the Federal Rules Of Civil Procedure or the Local Rules For The District Of Delaware.

3.      Reliant objects to Par's "Definitions and Instructions" to the extent that they purport to alter the plain meaning or scope of any request, on the ground that such alteration renders the request vague, ambiguous and uncertain.

4.      Reliant objects to Par's definition of "Reliant" and "Plaintiff" as overly broad to the extent that it purports to include individuals, corporations or entities over which Reliant has no control.

5.      Reliant objects to Par's definition of "document" to the extent that it purports to impose obligations or requirements in addition to or different from those imposed by the Federal Rules Of Civil Procedure or the Local Rules For The District Of Delaware.

6.      Reliant objects to Par's definition of "thing" to the extent that it purports to impose obligations or requirements in addition to or different from those imposed by the Federal Rules Of Civil Procedure or the Local Rules For The District Of Delaware.

7.      Reliant objects to Par's definition of "possession," "custody" and "control" as overly broad to the extent that it purports to include individuals, corporations or entities over which Reliant has no control.

8.      Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they seek information, documents or things that are protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity.  Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege or immunity.

9. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they seek information, documents or things that are not in Reliant's possession, custody or control.

10. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they seek information, documents and things that contain confidential information of third parties.

11. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things as vague, ambiguous and uncertain to the extent that they seek information, documents or things that are not described with reasonable particularity.

12. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they seek information, documents or things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.

13. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they seek "each," "every," "all," or "any" document or thing requested, and thus purport to impose obligations in addition to, or different from, those imposed by the Federal Rules of Civil Procedure or the Local Rules.

14. Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they purport to seek documents, things or information generated after November 7, 2006. Except for information related to secondary indicia of non-obviousness, Reliant will not provide any information generated after November 7, 2006 unless and until Par demonstrates the purported relevance of such information and/or how it is reasonably calculated to lead to the discovery of admissible evidence.

15.    Reliant objects to Par's First Set Of Requests For The Production Of Documents And Things to the extent that they purport to require Reliant to produce information to Frommer Lawrence & Haug LLP, Reliant's former counsel and counsel to Par in this substantially related matter, prior to the Court's decision on Reliant's Motion for Disqualification.

16.    Reliant incorporates herein by reference the objections made in response to Par's First Set of Interrogatories.

## PLAINTIFF'S SPECIFIC OBJECTIONS AND RESPONSES TO PAR'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

### Production Request No. 1

Each document or thing identified in any of Reliant's responses to interrogatories served by Par in this action; each document relied on by Reliant in responding to interrogatories served by Par in this action; and each document or thing the identification of which is requested in interrogatories served by Par in this action.

### Response to Production Request No. 1

Reliant objects to this request to the extent that it calls for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine.  Subject to this objection and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

### Production Request No. 2

Each document or thing concerning a conception of any alleged invention claimed in U.S. Patent No. 5,681,588 ("the '588 patent").

### Response to Production Request No. 2

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant further

objects to this request to the extent that it seeks documents and things outside Reliant's

possession, custody or control.  Subject to these objections and its General Objections, Reliant

will produce any responsive, non-privileged documents within its possession, custody or control

that are located after a reasonable search.


**Production Request No. 3**

      Each document or thing concerning an initial disclosure of any alleged invention
claimed in the '588 patent.

**Response to Production Request No. 3**

      Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant further

objects to this request to the extent that it seeks documents and things outside Reliant's

possession, custody or control.  Subject to these objections and its General Objections, Reliant

will produce any responsive, non-privileged documents within its possession, custody or control

that are located after a reasonable search.


**Production Request No. 4**

      Each document or thing concerning a reduction to practice of any alleged
invention claimed in the '588 patent.

**Response to Production Request No. 4**

      Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant

further objects to this request to the extent that it seeks documents and things outside Reliant's

5

possession, custody or control.  Subject to these objections and its General Objections, Reliant

will produce any responsive, non-privileged documents within its possession, custody or control

that are located after a reasonable search.


**Production Request No. 5**

   Each document or thing concerning the research, development, formulation, or
testing of an invention claimed in the '588 patent, including but not limited to research
notebooks, laboratory notebooks, correspondence, invention disclosures, analyses, studies,
experiments, reports, sketches, interview reports or summaries, clinical data, descriptions of tests
or studies, and results or conclusions reached from such tests or studies.

**Response to Production Request No. 5**

   Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant further

objects to this request to the extent that it seeks documents and things outside Reliant's

possession, custody or control.  Subject to these objections and its General Objections, Reliant

will produce any responsive, non-privileged documents within its possession, custody or control

that are located after a reasonable search.


**Production Request No. 6**

   Each document or thing concerning any data, test results, tables, formulations,
compositions, or pharmaceutical preparations disclosed in the '588 patent.

**Response to Production Request No. 6**

   Reliant objects to this request to the extent that it seeks documents and things

outside Reliant's possession, custody or control.  Subject to this objection and its General

Objections, Reliant will produce any responsive, non-privileged documents within its possession,

custody or control that are located after a reasonable search.

**Production Request No. 7**

        Each document or thing concerning the first use, sale, or offer for sale of any alleged invention claimed in the '588 patent.

**Response to Production Request No. 7**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as calling for the production of documents and things that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 8**

        Each document or thing concerning a novelty, patentability, validity, infringement, or state-of-the-art search or study that pertains to the '588 patent or U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 9**

        Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 9**

   Each document or thing including, but not limited to, patents and publications, found or discovered as a result of a novelty, patentability, validity, infringement, or state-of-the-art search or study pertaining to the '588 patent or U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 9**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 10**

   Each document or thing concerning a transfer, grant, conveyance, assignment, or license of any interest in or right under the '588 patent, including but not limited to any contracts, agreements, understandings, notes, memoranda, letters, e-mails, messages, facsimiles, telecopies, and other correspondence as well as any enclosures or attachments.

**Response to Production Request No. 10**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.

Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 11**

Each document or thing concerning a transfer, grant, conveyance, assignment, or license of any interest or right under U.S. Patent No. 4,797,287 ("the '287 patent"), including but not limited to any contracts, agreements, understandings, notes, memoranda, letters, e-mails, messages, facsimiles, telecopies, and other correspondence as well as any enclosures or attachments.

**Response to Production Request No. 11**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.

**Production Request No. 12**

Each document or thing concerning the '287 patent, including, but not limited to any contracts, agreements, understandings, notes, memoranda, analyses, studies, letters, e-mails, messages, facsimiles, telecopies, and other correspondence as well as any enclosures or attachments currently, or at one time in the possession of (i) the inventors of the '588 patent; (ii) all attorneys and individuals associated with or representing Knoll Aktiengesellshaft during the prosecution of the '588 patent; (iii) all attorneys and individuals associated with or representing BASF Aktiengesellschaft during the prosecution of the '287 patent; (iv) individuals now employed, or at one time employed by Reliant; (v) and any other persons associated with the filing and the prosecution of U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 12**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this

litigation nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.

**Production Request No. 13**

Each document or thing concerning a license, release, covenant not to sue, or immunity from suit under the '588 patent, including but not limited to any contracts, agreements, understandings, notes, memoranda, letters, e-mails, messages, facsimiles, telecopies, and other correspondence as well as any enclosures or attachments.

**Response to Production Request No. 13**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.

**Production Request No. 14**

Each document or thing concerning an attempt by Reliant to license the '588 patent.

**Response to Production Request No. 14**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 15**

   Each document or thing concerning a threat to sue or a charge of infringement under the '588 patent including, but not limited to, letters threatening suit or charging infringement and notes or memos concerning telephone conversations in which infringement was alleged.

**Response to Production Request No. 15**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 16**

   Each document or thing concerning the decision to sue Par or any other person or organization for infringement of the '588 patent, including any notes, memoranda, results of investigations or analyses, letters, e-mails, messages, facsimiles, telecopies, or other communications as well as any enclosures or attachments to any communications.

**Response to Production Request No. 16**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this objection and its General Objections, Reliant will produce any

responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 17**

Each document or thing concerning the decision to not sue a person or organization for infringement of the '588 patent, including any notes, memoranda, results of investigations or analyses, letters, e-mails, messages, facsimiles, telecopies, or other communications as well as any enclosures or attachments to any communications.

**Response to Production Request No. 17**

Reliant objects to this request as overly broad and irrelevant to the extent that it seeks documents or things concerning parties or products not involved to this action.  Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine.  Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 18**

Each document or thing concerning a meeting, conference, or telephone conversation during which the decision to sue Par was discussed or mentioned, including but not limited to meetings of Reliant's officers or directors.

**Response to Production Request No. 18**

Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine.  Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 19**

        Each document or thing concerning a Par product, brochure, manual, magazine, description, investigation, analysis, meeting, conference, correspondence, or telephone conversation regarding the decision to sue Par.

**Response to Production Request No. 19**

        Reliant objects to this request as overly broad to the extent that it requests documents or things concerning parties or products not relevant to this action. Reliant further objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 20**

        Each document or thing concerning any press release concerning this action.

**Response to Production Request No. 20**

        Reliant objects to this request as calling for the production of documents and things that are publicly available and/or already in the custody of Defendant and therefore are of no greater burden for Defendant to obtain than for Plaintiffs to obtain and produce. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Subject to this objection and its General

Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 21**

> Each document or thing concerning any press release concerning the '588 patent.

**Response to Production Request No. 21**

> Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.  Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested.  Reliant further objects to this request as calling for the production of documents and things that are publicly available and/or already in the custody of Defendant and therefore are of no greater burden for Defendant to obtain than for Plaintiffs to obtain and produce.  Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 22**

> Each document or thing concerning any press release concerning any action in which infringement of the '588 patent was alleged.

**Response to Production Request No. 21**

> Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested.  Reliant further objects to this request as calling for the production of documents and things that are

publicly available and/or already in the custody of Defendant and therefore are of no greater

burden for Defendant to obtain than for Plaintiffs to obtain and produce.  Subject to these

objections and its General Objections, Reliant will produce any responsive, non-privileged

documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 23**

        Each document or thing concerning the preparation or prosecution of any foreign
counterpart of the '588 patent.

**Response to Production Request No. 23**

        Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence.

**Production Request No. 24**

        Any patent, publication, or other document identified by any third party who has
ever questioned or disputed the validity or the enforceability of the '588 patent or any foreign
counterpart.

**Response to Production Request No. 24**

        Reliant objects to this request, to the extent it seeks documents concerning foreign

counterparts, as overly broad and calling for the production of documents and things that are

neither relevant to any claim or defense in this action nor reasonably calculated to lead to the

discovery of admissible evidence.  Reliant further objects to this request as vague, ambiguous

and uncertain as the terms "questioned" and "disputed" are undefined.  Subject to these

objections and its General Objections, Reliant will produce any responsive, non-privileged

documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 25**

   Each document or thing concerning U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 25**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 26**

   Each document or thing concerning the preparation or prosecution of U.S. Patent Application Serial No. 08/525,749, and including but not limited to official actions, responses, and references cited during prosecution.

**Response to Production Request No. 26**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

16

**Production Request No. 27**

All drafts of any declarations or other documents submitted to the PTO during the prosecution of U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 27**

Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 28**

Any patent, publication, or other prior art that was cited, referred to, or relied upon during the prosecution of U.S. Patent Application Serial No. 08/525,749.

**Response to Production Request No. 28**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

17

## Production Request No. 29

Each United States Patent Application relating to propafenone HCl extended-release capsules or methods of using propafenone HCl extended-release capsules, other than U.S. Patent Application Serial No. 08/525,749, including but not limited to:

- complete copies of each file history;

- any initial or preliminary draft of any such patent application;

- drafts of any declarations or other documents submitted to the U.S. Patent Office;

- any patent, publication, or other prior art that was cited, referred to, or relied upon during the prosecution of such patent applications; and

- the preparation or prosecution of any foreign counterpart of any such patent application.

## Response to Production Request No. 29

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control. Reliant further objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiffs to obtain and produce.

## Production Request No. 30

Each document or thing concerning an analysis, investigation, inspection, examination, measurement, or test of any product, or use of any product, alleged to infringe the '588 patent, including but not limited to any product according to ANDA 78-540.

**Response to Production Request No. 30**

        Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks disclosure of third-party, confidential information. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 31**

        Each document or thing concerning any product alleged to infringe the '588 patent, including but not limited to any product according to ANDA 78-540.

**Response to Production Request No. 31**

        Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks disclosure of third-party, confidential information. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Subject to these objections and its General Objections, Reliant will produce responsive, non-

privileged documents within its possession, custody or control that are located after a reasonable search.

## Production Request No. 32

Each document or thing concerning any communication, understanding, or agreement between Reliant and any third party regarding the validity, infringement, or enforceability of the '588 patent or any foreign counterpart.

## Response to Production Request No. 32

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and irrelevant to the extent that it seeks documents concerning foreign counterparts. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## Production Request No. 33

Each document or thing concerning the research, formulation, development, testing, manufacture, production, marketing, sale, distribution, or regulatory approval of Rythmol® SR.

## Response to Production Request No. 33

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requests documents and things concerning the testing, manufacture, production, distribution or regulatory approval of Rythmol® SR. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections, objections to duplicative requests seeking the same documents, and its General Objections, Reliant will produce relevant, responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to demonstrate any relevant aspects of the marketing, sale and regulatory approval of Rythmol® SR.

**Production Request No. 34**

A complete copy of NDA 21-416, including but not limited to all amendments, supplements, additions, and annual reports.

**Response to Production Request No. 34**

Subject to its General Objections, Reliant will produce relevant excerpts of NDA 21-416 and documents relating to NDA 21-416 that were submitted to the FDA to the extent that such documents or excepts do not include individual patient data.

**Production Request No. 35**

A copy of the Chemistry, Manufacturing and Controls section of NDA 21-416.

**Response to Production Request No. 35**

        Subject to its General Objections, Reliant will produce relevant excerpts of NDA 21-416 and documents relating to NDA 21-416 that were submitted to the FDA to the extent that such documents or excepts do not include individual patient data.

**Production Request No. 36**

        Each document or thing concerning the preparation or filing of NDA 21-416.

**Response to Production Request No. 36**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce relevant excerpts of NDA 21-416 and documents relating to NDA 21-416 that were submitted to the FDA to the extent that such documents or excepts do not include individual patient data.

**Production Request No. 37**

        Each document or thing concerning a communication or contact with FDA concerning NDA 21-416.

**Response to Production Request No. 37**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as overly broad and unduly burdensome to the extent that it seeks "each"

document or thing concerning the categories requested.  Reliant further objects to this request as

calling for the production of documents and things that are protected from discovery by the

attorney-client privilege and/or work-product doctrine.  Subject to these objections and its

General Objections, Reliant will produce relevant excerpts of NDA 21-416 and documents

relating to NDA 21-416 that were submitted to the FDA to the extent that such documents or

excepts do not include individual patient data.


**Production Request No. 38**

> Each document or thing concerning the research, formulation, development,
> testing, manufacture, production, marketing, sale, distribution, or regulatory approval of any
> product according to NDA 21-416.

**Response to Production Request No. 38**

Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant objects

to this request as overly broad and unduly burdensome to the extent that it seeks "each"

document or thing concerning the categories requested.  Reliant further objects to this request as

overly broad and irrelevant to the extent that it requests documents and things concerning the

testing, manufacture, production, distribution or regulatory approval of Rythmol® SR.  Reliant

further objects to this request as calling for the production of documents and things that are

protected from discovery by the attorney-client privilege and/or work-product doctrine.  Reliant

further objects to this request to the extent that it seeks documents and things outside Reliant's

possession, custody or control.  Subject to these objections and its General Objections, Reliant

will produce relevant excerpts of NDA 21-416 and documents relating to NDA 21-416 that were

submitted to the FDA to the extent that such documents or excerpts do not reflect or reveal individual patient data.

**Production Request No. 39**

       Each document or thing concerning a notice under 21 U.S.C. § 355(j)(2)(B) or 21 C.F.R. § 314.95 that mentions the '588 patent.

**Response to Production Request No. 39**

       Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request to the extent that it seeks disclosure of third-party, confidential information. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 40**

       Each document or thing concerning any testing procedure, protocol, or method for testing any product claimed in the '588 patent, including but not limited to any product according to NDA 21-416.

**Response to Production Request No. 40**

       Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects

to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

### Production Request No. 41

Each document or thing concerning any investigation, report, opinion, study, or analysis, whether formal or informal, that relates or refers to the infringement or noninfringement of any claim in the '588 patent.

### Response to Production Request No. 41

Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant also objects to this request as vague and ambiguous as to the phrase "formal or informal." Subject to these objections and its General Objections, Reliant will

produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 42**

Each document or thing concerning any investigation, report, opinion, study, or analysis, whether formal or informal, that relates or refers to the validity or invalidity of any claim in the '588 patent.

**Response to Production Request No. 42**

Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant also objects to this request as vague and ambiguous as to the phrase "formal or informal." Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that and are located after a reasonable search.

**Production Request No. 43**

Each document or thing concerning any investigation, report, opinion, study, or analysis, whether formal or informal, that relates or refers to the enforceability or unenforceability of any claim in the '588 patent.

**Response to Production Request No. 43**

Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product

doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant also objects to this request as vague and ambiguous as to the phrase "formal or informal." Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 44**

Each document or thing concerning the scope of any claim in the '588 patent.

**Response to Production Request No. 44**

Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 45**

Each document or thing concerning the meaning of any term, phrase, limitation, or element in any claim in the '588 patent.

**Response to Production Request No. 45**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 46**

   Each document or thing concerning the level of ordinary skill in the art to which the '588 patent pertains, including but not limited to patents and publications.

**Response to Production Request No. 46**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 47**

   Each document or thing concerning the relevant art for the '588 patent, including but not limited to patents and publications.

**Response to Production Request No. 47**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent

that it seeks "each" document or thing concerning the categories requested. Subject to this

objection and its General Objections, Reliant will produce any responsive, non-privileged

documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 48**

       Each document or thing concerning the relevant technical field for the '588
patent, including but not limited to patents and publications.

**Response to Production Request No. 48**

       Reliant objects to this request as overly broad, unduly burdensome and calling for

the production of documents and things that are neither relevant to any claim or defense in this

action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further

objects to this request as vague, ambiguous and uncertain as the phrase "relevant technical field"

is undefined. Reliant objects to this request as overly broad and unduly burdensome to the extent

that it seeks "each" document or thing concerning the categories requested. Reliant objects to

this request as calling for the production of documents and things that are protected from

discovery by the attorney-client privilege and/or work-product doctrine. Subject to this objection

and its General Objections, Reliant will produce responsive, non-privileged documents within its

possession, custody or control that are located after a reasonable search.

**Production Request No. 49**

       Each document or thing concerning any motivation, or lack thereof, to combine
any prior-art teachings to yield an invention claimed in the '588 patent.

**Response to Production Request No. 49**

       Reliant objects to this request as calling for the production of documents and

things that are protected from discovery by the attorney-client privilege and/or work-product

doctrine. Reliant objects to this request as overly broad and unduly burdensome to the extent

that it seeks "each" document or things concerning the categories requested. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 50**

Each document or thing that Reliant may rely on to establish that any of the following secondary indicia of non obviousness apply to the '588 patent:

- commercial success;
- commercial acquiescence;
- copying;
- long-felt need;
- failure of others;
- professional approval.

**Response to Production Request No. 50**

Subject to its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 51**

Each document or thing concerning whether the claims of the '588 patent cover Rythmol® SR.

**Response to Production Request No. 51**

Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General

Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 52**

Each document or thing concerning any data or other information showing sales of or prescriptions for Rythmol® SR or propafenone HCl extended-release capsules related medications, including but not limited to:

(a)    National Drug and Therapeutic Index (NDTI) data;

(b)    Xponent data and/or Xponent PlanTrak data;

(c)    Formulary Focus data;

(d)    IMS data;

(e)    Scott-Levin data;

(f)    Calls, Samples, and Details data;

(g)    Integrated Promotional Services (IPS) data;

(h)    Early View data.

**Response to Production Request No. 52**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.  Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested.  Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control.  Reliant further objects to this request as calling for the production of documents and things that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce.  Reliant further objects to this request to the extent that it seeks documents and things located outside of the U.S.  Subject to these objections and its General

Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to establish Rythmol® SR sales and prescriptions in the U.S. over time.

**Production Request No. 53**

Each document or thing concerning any of the following:

(a)    the total amount of revenue from sales of Rythmol® SR;

(b)    the amount of revenue each month from sales of Rythmol® SR;

(c)    the total gross profit and/or net profit from sales of Rythmol® SR;

(d)    the gross profit and/or net profit each month from sales of Rythmol® SR;

(e)    the total amount spent on marketing or advertising or sales promotion for Rythmol® SR;

(f)    the amount spent each month on marketing or advertising or sales promotion for Rythmol® SR.

**Response to Production Request No. 53**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or things concerning the categories requested. Reliant objects to requests (c), (d), (e), and (f) as irrelevant and overbroad. Reliant further objects to this request as calling for the production of documents and things that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Reliant further objects to this request to the extent that it seeks documents and things located outside of the U.S. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged

32

documents within its possession, custody or control, located after a reasonable search, sufficient to establish total and periodic Rythmol® SR revenue, sales and prescriptions in the U.S. over time.

**Production Request No. 54**

Any report, summary, compilation, or abstract concerning Rythmol® SR prescriptions, sales, revenues, or profits.

**Response to Production Request No. 54**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control. Reliant further objects to this request as calling for the production of documents that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to establish Rythmol® SR sales and prescriptions in the U.S. over time.

**Production Request No. 55**

Each document or thing concerning the marketing, advertising, or sales promotion of Rythmol® SR.

**Response to Production Request No. 55**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects

to this request as overly broad and unduly burdensome to the extent that it seeks "each" document or thing concerning the categories requested. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Reliant further objects to this request as calling for the production of documents and things that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, sufficient to establish Rythmol® SR sales and prescriptions in the U.S. over time.

**Production Request No. 56**

All notes, memoranda, and other written records of communications (including "call notes") between Reliant or its agents and any managed-care organization, pharmacy-benefit manager, physician, nurse, pharmacist, or other medical or medical-office personnel concerning Rythmol® SR.

**Response to Production Request No. 56**

Reliant further objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control.

**Production Request No. 57**

All marketing, sales, or promotional materials concerning Rythmol® SR, including but not limited to:

(a)     all display booth panels;

(b)    all detail pieces or aids used by and/or provided to sales representatives or detail personnel, including but not limited to ad slicks, flash cards, and shelf-talkers;

(c)    all telemarketing scripts, tele-detailing scripts, selling scripts, detailing scripts and/or verbatims used by and/or provided to sales representatives or detail personnel;

(d)    all materials provided to physicians, managed-care organizations, pharmacy-benefit managers, pharmacists, and/or consumers;

(e)    all advertisements appearing in journals, magazines, and/or newspapers;

(f)    all physician-education materials;

(g)    all patient-education materials;

(h)    copies of any articles published by third-parties (sometimes referred to as reprints) used by and/or provided to sales representatives or detail personnel;

(i)    all press releases, new product releases, catalogs, catalog sheets, price lists, and brochures.

## Response to Production Request No. 57

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "all" document or things concerning the categories requested. Reliant objects to this request as vague, ambiguous and uncertain to the extent that the terms "ad slicks," "flash cards," "shelf-talkers," "tele-detailing scripts," "selling scripts," "detailing scripts" and "verbatims" are undefined. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Reliant further objects to this request as calling for the production of documents and things that are publicly available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Subject to these

objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

## Production Request No. 58

Each document or thing concerning the marketing of Rythmol® SR, including but not limited to:

(a)     all tactical plans, strategic plans, marketing plans, distribution plans, and launch plans;

(b)     all manuals, presentations, product monographs, brochures, and other sales-training materials provided to or used to train sales representatives or detail personnel;

(c)     all market-research materials (including but not limited to surveys conducted by or on behalf of Reliant, scripts used, and results obtained);

(d)     all communications between or among any persons at corporate headquarters, persons in district or regional offices, and sales representatives or detail personnel;

(e)     all notes, handouts, slides, and other presentation materials used at any plan-of-action (POA), launch, and/or other meeting, including but not limited to any launch binders;

(f)     all product forecasts and sales forecasts;

(g)     all launch budgets and marketing budgets;

(h)     all field bulletins from Reliant to its sale representatives or detail personnel.

## Response to Production Request No. 58

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as overly broad and unduly burdensome to the extent that it seeks "all" document or things concerning the categories requested. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to

these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control, located after a reasonable search, that are sufficient to demonstrate relevant aspects of the marketing and sale of Rythmol® SR.

**Production Request No. 59**

Each document comparing or contrasting any claim in the '588 patent with any prior art, including, but not limited to the '287 patent.

**Response to Production Request No. 59**

Reliant objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 60**

Each document comparing or contrasting any claim in the '588 patent with any product according to ANDA 78-540.

**Response to Production Request No. 60**

Reliant objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 61**

    Each document comparing or contrasting any claim in the '588 patent with any product according to NDA 21-416.

**Response to Production Request No. 61**

    Reliant objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 62**

    Each document or thing concerning the best mode known to the inventors for practicing the inventions claimed in the '588 patent, as of the filing date for each patent.

**Response to Production Request No. 62**

    Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 63**

    Each opinion of counsel concerning the '588 patent.

**Response to Production Request No. 63**

   Reliant objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540.

**Production Request No. 64**

   Each document or thing that Reliant may rely on at a hearing or trial of this action.

**Response to Production Request No. 64**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as premature. Subject to these objections and its General Objections, and if appropriate and at the time provided under the Court's Orders, Reliant will produce documents it intends to rely on at hearing or trial.

**Production Request No. 65**

   Each document or thing provided to an expert, consultant, or third-party by Reliant or its agent(s) in connection with this action.

**Response to Production Request No. 65**

   Reliant objects to this request as premature. Reliant further objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the

discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search in accordance with the Scheduling Order set by the court.

**Production Request No. 66**

Each communication to or from an expert, consultant, or third-party concerning the '588 patent, the '287 patent, the relevant prior art, Par, Rythmol® SR, or this action.

**Response to Production Request No. 66**

Reliant objects to this request as premature. Reliant further objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search in accordance with the Scheduling Order set by the court.

**Production Request No. 67**

Each document or thing concerning the infringement or non-infringement of the '588 patent.

**Response to Production Request No. 67**

    Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request as irrelevant and overbroad to the extent that it seeks documents and things concerning products other than those described by ANDA 78-540. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 68**

    Each document or thing evidencing, supporting, contradicting, tending to prove or disprove, or bearing upon any of the allegations in the Amended Complaint.

**Response to Production Request No. 68**

    Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 69**

   Each document or thing concerning the use of Par's product alleged to infringe a claim of the '588 patent.

**Response to Production Request No. 69**

   Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to this objection and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 70**

   Each document or thing concerning the validity or invalidity of the '588 patent, including but not limited to patents and publications.

**Response to Production Request No. 70**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 71**

        Each document or thing concerning the enforceability or unenforceability of the '588 patent, including but not limited to patents and publications.

**Response to Production Request No. 71**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this request as calling for the production of documents and things that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents and things outside Reliant's possession, custody or control. Subject to these objections and its General Objections, Reliant will produce any responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 72**

        Each document concerning delaying generic competition in the market for propafenone HCl extended-release capsules.

**Response to Production Request No. 72**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request as vague, ambiguous and uncertain to the extent that the phrase "delaying generic competition" is undefined. Reliant further objects to this request to the extent that it calls for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine.

43

**Production Request No. 73**

   Each document or thing concerning any aspect of the United States market or segment thereof for any product, service, method, or combination thereof that Reliant contends embodies the subject matter claimed in the '588 patent, including but not limited to the identification of competitors and their offerings, market potential, market size, market shares, market segments, and current or anticipated trends affecting demand.

**Response to Production Request No. 73**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

**Production Request No. 74**

   Each document concerning any valuation of the '588 patent.

**Response to Production Request No. 74**

   Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it calls for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control.

**Production Request No. 75**

   Each document concerning the organizational relationship of Reliant, including all parent divisions, subsidiaries or affiliates.

**Response to Production Request No. 75**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and its General Objections, Reliant will produce representative organizational charts.

**Production Request No. 76**

Documents sufficient to establish the organizational responsibilities of each person at Reliant who has or had at any time any involvement in the research, formulation, development, testing, manufacture, production, marketing, sale, distribution, or regulatory approval of any product according to NDA 21-416.

**Response to Production Request No. 76**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and its General Objections, Reliant will produce representative organizational charts.

**Production Request No. 77**

Documents sufficient to establish Reliant's organizational structure for research, formulation, development, testing, manufacture, production, marketing, sale, distribution, and regulatory approval of pharmaceutical products.

**Response to Production Request No. 77**

Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and its General Objections, Reliant will produce representative organizational charts.

45

**Production Request No. 78**

        Each document concerning Reliant's practice, policy, or procedure for the retention of documents and/or classes or categories of documents, including but not limited to e-mail Communications, spreadsheets, presentation materials, and word-processing materials; and if applicable, each document or thing concerning these subjects for each division/unit/subgroup within Reliant for which there is a different practice, policy, or procedure.

**Response to Production Request No. 78**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it calls for the production of documents that are protected from discovery by the attorney-client privilege and/or work-product doctrine. Subject to these objections and its General Objections, and to the extent that any such documents exist, Reliant will produce responsive, non-privileged documents within its possession, custody or control sufficient to demonstrate its document retention policies.

**Production Request No. 79**

        A copy of each page that is or has been posted on any of the following websites:

- www.Reliant.com
- www.reliantrx.com/health/rythmol.html

**Response to Production Request No. 79**

        Reliant objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Reliant further objects to this request to the extent that it seeks documents outside Reliant's possession, custody or control. Reliant further objects to this request as calling for the production of documents that are publicly

available and therefore are of no greater burden for Defendant to obtain than for Plaintiff to obtain and produce. Subject to these objections and its General Objections, Reliant will produce responsive, non-privileged documents within its possession, custody or control that are located after a reasonable search.

**Production Request No. 80**

Any English translation of any foreign-language document requested in Par's production requests.

**Response to Production Request No. 80**

Subject to its General Objections and the specific objections to each of Par's document requests, Reliant will produce responsive, non-privileged translations of foreign language documents within its possession, custody or control to the extent that those documents exist and are located after a reasonable search.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (# 1014)
Maryellen Noreika (# 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

June 11, 2007

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served on June 11, 2007 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL**
**and HAND DELIVERY**

Josy W. Ingersoll, Esquire
Karen L. Pascale, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street
17th Floor
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
**and FEDERAL EXPRESS**

Edgar H. Haug, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

John B. Harris, Esquire
Stillman, Friedman & Shectman, P.C.
425 Park Avenue
New York, NY 10022

Maryellen Noreika (# 3208)
mnoreika@mnat.com

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 06-774 (JJF) |
| PAR PHARMACEUTICAL, INC., | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S RESPONSE TO PAR PHARMACEUTICAL, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 26.1, Plaintiff Reliant Pharmaceuticals, Inc. ("Reliant") makes the following objections and responses to Defendant Par Pharmaceutical, Inc.'s ("Par") First Set Of Interrogatories.

Pursuant to Federal Rule of Civil Procedure 26(e), Reliant reserves the right to supplement its responses if it learns additional information.

### OBJECTIONS

Reliant makes the following general objections to Par's First Set Of Interrogatories ("General Objections"), which General Objections are hereby incorporated by reference and made part of its response to each and every interrogatory:

1.    Reliant objects to Par's "Definitions and Instructions" to the extent that they purport to impose obligations or requirements in addition to or different from those imposed by the Federal Rules of Civil Procedure or Local Rules.

2.    Reliant objects to Par's "Definitions and Instructions" to the extent that they purport to alter the plain meaning or scope of any interrogatory, on the ground that such alteration renders the interrogatory vague, ambiguous, and uncertain.

3.      Reliant objects to Par's definition of "Reliant" and "Plaintiff" as overly broad to the extent that it purports to include individuals, corporations or entities over which Reliant has no control.

4.      Reliant objects to Par's definition of "document" to the extent that it purports to impose obligations or requirements in addition to or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules.

5.      Reliant objects to Par's definition of "thing" to the extent that it purports to impose obligations or requirements in addition to or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules.

6.      Reliant objects to Par's definition of "possession," "custody" and "control" as overly broad to the extent that it purports to include individuals, corporations or entities over which Reliant has no control.

7.      Reliant objects to Par's First Set of Interrogatories to the extent that they seek information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any such applicable privilege or immunity.

8.      Reliant objects to Par's First Set of Interrogatories to the extent that they seek information, documents or things that are not in Reliant's possession, custody or control.

9.      Reliant objects to Par's First Set of Interrogatories to the extent that they seek information, documents or things that contain trade secret or other confidential, research, development or commercial information prior to the issuance of a Protective Order in this action.

10.    Reliant objects to Par's First Set of Interrogatories to the extent that they seek information, documents and things that are confidential information of third parties.

11.    Reliant objects to Par's First Set of Interrogatories as vague, ambiguous and uncertain to the extent that they seek information, documents or things that are not described with reasonable particularity.

12.    Reliant objects to Par's First Set of Interrogatories to the extent that they seek information, documents or things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.

13.    Reliant objects to Par's First Set of Interrogatories to the extent that they seek "each," "every," "all," or "any" document or thing requested, and thus purport to impose obligations in addition to, or different from, those imposed by the Federal Rules of Civil Procedure or the Local Rules.

14.    Reliant objects to Par's First Set of Interrogatories to the extent that they purport to seek information generated after November 7, 2006. Except for information related to secondary indicia of non-obviousness, Reliant will not provide any information generated after November 7, 2006 unless and until Par demonstrates the purported relevance of such information and/or how it is reasonably calculated to lead to the discovery of admissible evidence.

15.    Reliant objects to Par's First Set of Interrogatories to the extent that they contain discrete subparts which should be counted as separate interrogatories pursuant to Federal Rule of Civil Procedure 33. Plaintiffs reserve the right to object to further interrogatories from Par as in excess of the number allowed by the Court's Rule 16 Scheduling Order.

16.    Reliant objects to Par's First Set of Interrogatories to the extent that they purport to require Reliant to produce information to Frommer Lawrence & Haug LLP, Reliant's

3

former counsel and counsel to Par in this substantially related matter, prior to the Court's decision on Reliant's Motion for Disqualification.

      17.    Reliant incorporates herein by reference the objections made in response to Par's First Set Of Requests For The Production Of Documents And Things.

## RESPONSE TO INTERROGATORIES

### Interrogatory No. 1

Identify each person who has knowledge or information concerning the conception, testing, analysis, investigation, examination, research, formulation, development, measurement, analysis, inspection, manufacture, production, marketing, sale, distribution, or regulatory history of any invention in the '588 patent or any product according to NDA 21-416, including but not limited to each person who has knowledge or information about any amendments, supplements, additions, or annual reports for NDA 21-416.

### Response to Interrogatory No. 1

Reliant objects to this interrogatory as overly broad and unduly burdensome in that it seeks information, documents or things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this interrogatory to the extent that it seeks information, documents and things that are not in Reliant's possession, custody or control. Reliant objects to this interrogatory as vague and ambiguous as to the terms "measurement" and "inspection." Reliant also objects to this interrogatory to the extent that it purports to impose burdens on Reliant that are greater than, or different from, those set forth in the Federal Rules of Civil Procedure or the Local Rules. Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

Reliant acquired the '588 patent from Abbott Laboratories in or about December 2003. On information and belief, persons with knowledge of the conception, formulation, development and testing of the inventions of the '588 patent include Karl Kolter, Helmut Frike,

Volker Bueller and/or Herbert Mueller-Peltzer. Drs. Kolter, Frike, Bueller and Mueller-Peltzer should be contacted solely through counsel for Reliant.

Reliant acquired NDA 21-416 from Abbott Laboratories in or about December 2003. Persons with knowledge concerning the regulatory aspects of NDA 21-416 include Reliant's Senior Vice President of Medical Affairs, Steven Ketchum. Persons with knowledge concerning the marketing and sale of Rythmol® SR, the trade name of the products described in NDA 21-416, include Reliant's Senior Vice President of Sales & Marketing, Vince Angotti. Persons with knowledge concerning the manufacturing and production of Rythmol® SR include Reliant's Senior Director of QA/QC, Godfrey Baker.

## Interrogatory No. 2

Identify each person who has knowledge or information concerning any testing, analysis, investigation, inspection, examination, or measurement of (i) any product according to ANDA 78-540, (ii) any method of using a product according to ANDA 78-540, or (iii) any other product, or method of using any other product, accused of infringing the '588 patent.

## Response to Interrogatory No. 2

Reliant objects to this interrogatory as overly broad, vague and ambiguous to the extent that it purports to seek information that is not within Reliant's possession, custody or control. Reliant objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Reliant further objects to this interrogatory as premature in that it seeks expert opinions prior to the time set by the Scheduling Order for expert discovery. Reliant will submit its expert reports at the appropriate time pursuant to the Rule 16 Scheduling Order or other orders of the Court.

**Interrogatory No. 3**

Describe (by way of a claim chart) the bases for Reliant's infringement assertions at the time it filed the Complaint and, if different, at the present time, as follows: Identify each claim of the '588 patent that Reliant contends any product according to ANDA 78-540 has infringed or is infringing either directly or indirectly, state whether such alleged infringement is literal or under the doctrine of equivalents, and describe the complete factual basis and evidentiary support for the presence of each element of each asserted claim either literally or by way of a substantial equivalent and identify the three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 3**

Reliant objects to this interrogatory to the extent that it purports to seek a response in a form not required by the Federal Rules of Civil Procedure or the Local Rules. Reliant objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Reliant also objects to this interrogatory as premature in that it seeks Reliant's proposed claim constructions prior to the time set by the Scheduling Order for claim construction. Reliant further objects to this interrogatory as premature in that it seeks expert opinions prior to the time set by the Scheduling Order for expert discovery. Reliant will submit its claim construction statements and expert reports at the appropriate time pursuant to the Rule 16 Scheduling Order or other orders of the Court.

Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows. Reliant preliminarily asserts that Par's proposed products according to ANDA 78-540 infringe claims 1-5 of the '588 patent. Reliant reserves the right to amend its answer to this interrogatory as fact and expert discovery proceed in this action.

**Interrogatory No. 4**

Describe (by way of a claim chart) Reliant's construction of the claims of the '588 patent, as follows: For each claim of the '588 patent that Reliant contends any product according to ANDA 78-540 has infringed or is infringing either literally or under the doctrine of

6

equivalents, state Reliant's interpretation of each claim limitation, identify all evidence intrinsic to the '588 patent that supports Reliant's interpretation, and identify all evidence extrinsic to the '588 patent that either supports or refutes Reliant's interpretation. For each claim term, phrase, and element that Reliant asserts should be assigned its ordinary meaning, state that meaning, specify all bases for Reliant's assertion, identify all supporting evidence, and identify the three individuals most knowledgeable about the information requested in this interrogatory.

## Response to Interrogatory No. 4

Reliant objects to this interrogatory to the extent that it purports to seek a response in a form not required by the Federal Rules of Civil Procedure or the Local Rules. Reliant objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Reliant also objects to this interrogatory as premature in that it seeks Reliant's proposed claim constructions prior to the time set by the Scheduling Order for claim construction. Reliant further objects to this interrogatory as premature in that it seeks expert opinions prior to the time set by the Scheduling Order for expert discovery. Reliant will submit its claim construction statements and expert reports at the appropriate time pursuant to the Rule 16 Scheduling Order or other orders of the Court.

Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows. Reliant preliminarily asserts that Par's proposed products according to ANDA 78-540 infringe claims 1-5 of the '588 patent. Reliant reserves the right to amend its answer to this interrogatory as fact and expert discovery proceed in this action.

## Interrogatory No. 5

For each claim in the '588 patent, specify the dates on which the claimed subject matter was (i) conceived, (ii) reduced to practice, (iii) first described in a document, and (iv) first disclosed to a person other than the inventors; (v) first sold; (vi) first offered for sale; (vii) first described in a printed publication anywhere in the world; and (viii) first publicly used in the United States. Identify all supporting documents, samples, investigations, tests, measurements, analyses, opinions, and testimony supporting each date, and identify the three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 5**

Reliant objects to this interrogatory as overly broad and unduly burdensome in that it seeks information, documents or things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Reliant objects to this interrogatory to the extent that it seeks information, documents and things that are not in Reliant's possession, custody or control. Reliant also objects to this interrogatory to the extent that it purports to impose burdens on Reliant that are greater than, or different from, those set forth in the Federal Rules.

Reliant objects to this interrogatory as improperly requesting Reliant to disprove invalidity when Par bears the burden of proving invalidity by clear and convincing evidence. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996) (explaining that patentee bears burden to prove dates of conception and reduction to practice only after opponent offers evidence alleging prior art under 35 U.S.C. § 102(a)). Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

The inventions of the '588 patent were conceived and reduced to practice at least as of April 3, 1993. On information and belief, persons with knowledge of the conception, reduction to practice and first disclosures of the inventions of the '588 patent include Karl Kolter, Helmut Frike, Volker Bueller and/or Herbert Mueller-Peltzer.

Rythmol® SR, the commercial embodiment of the inventions of the '588 patent, was first offered for sale and sold in the United States in or about February 2004. Persons with knowledge of the first sale and offer for sale of Rythmol® SR in the U.S. include Reliant's Senior Vice President of Sales & Marketing, Vince Angotti.

**Interrogatory No. 6**

Describe the technical area(s) to which the '588 patent pertains including, but not limited to, a description of the level of schooling, experience, expertise, and relevant technical skill that a person having ordinary skill in the art would have had at the time the claimed invention was made. Identify the three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 6**

Reliant objects to this interrogatory as improperly requesting Reliant to disprove invalidity when Par bears the burden of proving invalidity by clear and convincing evidence. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004); *see also TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1266 (6th Cir. 1983) ("As with all the elements of the *John Deere* test, [defendant] has the burden of proof on the issue of ordinary skill."); *Water Techs. Corp. v. Calco, Ltd.*, 658 F. Supp. 961, 972 (N.D. Ill. 1986) ("The defendants have the burden of proving what is a person of ordinary skill in the art...it has been recognized to be the burden of the alleged infringer who asserts the affirmative defense to demonstrate to the court this level of skill."), *aff'd in pertinent part*, 850 F.2d 660 (Fed. Cir. 1988). Reliant also objects to this interrogatory as premature to the extent that it seeks expert testimony prior to the beginning of expert discovery in this action. Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

The '588 patent is presumed by statute to be valid and Par cannot meet its burden of proof on invalidity. Reliant will submit its expert reports at the appropriate time pursuant to the Rule 16 Scheduling Order or other orders of the Court.

**Interrogatory No. 7**

Describe fully and with particularity all objective evidence of non obviousness (secondary indicia of non obviousness) concerning the claimed inventions of the '588 patent; specify all facts and all evidence supporting Reliant's contention that a nexus exists between the objective evidence of nonobviousness and the claimed subject matter; identify all supporting

documents, samples, investigations, tests, measurements, analyses, opinions, and testimony; and identify the three people most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 7**

Reliant objects to this interrogatory as improperly requesting Reliant to disprove invalidity when Par bear the burden of proving invalidity by clear and convincing evidence. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004). Reliant further objects to this interrogatory as premature. Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

The '588 patent is presumed by statute to be valid and Par cannot meet its burden of proof on invalidity. The claims of the '588 patent cover Reliant's commercially successful Rythmol® SR products. Reliant preliminarily identifies secondary indicia of non-obviousness concerning the claimed inventions of the '588 patent as commercial success, failure of others, long-felt need, acquiescence and copying.

**Interrogatory No. 8**

Identify all validity, infringement, or prior art searches or investigations that have ever been conducted by or on behalf of Reliant relating to the '588 patent including, but not limited to, who conducted the search or investigation, when it occurred, an identification of what was discovered in such search(es) or investigation(s), who received that information, when the search(es) were done, and any documents memorializing the search or investigation, conclusion, findings or documents relating thereto. Identify the three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 8**

Reliant objects to this interrogatory to the extent that it seeks information, documents or things that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

10

Reliant's counsel at the time, Frommer, Lawrence & Haug, conducted prior art searches on Reliant's behalf in or about June through October 2003. The results of those searches are protected by the attorney-client privilege.

**Interrogatory No. 9**

Identify each person who had knowledge or information concerning the '287 patent prior to October 28, 1997, including, but not limited to, (i) the named inventors of the '588 patent; (ii) the attorneys and individuals associated with or representing Knoll Aktiengesellshaft during the prosecution of the '588 patent; (iii) the attorneys and individuals associated with or representing BASF Aktiengesellschaft during the prosecution of the '287 patent; (iv) individuals now employed, or at one time employed, by Reliant; (v) and any other persons associated with the filing and the prosecution of U.S. Patent Application Serial No. 08/525,749.

**Response to Interrogatory No. 9**

Reliant objects to this interrogatory as overly broad to the extent that it seeks information, documents and things of third parties over which Reliant has no possession, custody or control. Reliant further objects to this interrogatory to the extent that it purports to seek information or knowledge of every person ever employed by Reliant. Subject to the foregoing objections and the General Objections set forth above, Reliant responds as follows.

Reliant acquired the '588 patent in or about December 2003, after the patent was issued, and was not involved in the filing or prosecution of U.S. Patent Application Serial No. 08/525,749.

Reliant did not exist prior to October 28, 1997, and therefore, had no knowledge of the '287 patent prior to that date.

11

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (# 1014)
Maryellen Noreika (# 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

June 11, 2007

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served on June 11, 2007 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL
and HAND DELIVERY**

Josy W. Ingersoll, Esquire
Karen L. Pascale, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street
17th Floor
Wilmington, DE 19801

**BY ELECTRONIC MAIL
and FEDERAL EXPRESS**

Edgar H. Haug, Esquire
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

John B. Harris, Esquire
Stillman, Friedman & Shectman, P.C.
425 Park Avenue
New York, NY 10022

_____
Maryellen Noreika (# 3208)
mnoreika@mnat.com

# Exhibit 5

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

April 25, 2007

**John G. Taylor**
JTaylor@flhlaw.com

<u>**VIA E-MAIL (w/o encls.) AND FEDERAL EXPRESS**</u>

Christine Willgoos, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       <u>Civil Action No 06-774-JJF</u>

Dear Christine:

        In response to your November 22, 2006 letter to Par's Steven Engel, and as part of Par's initial disclosures pursuant to Fed. R. Civ. P 26(a)(1) and D. Del. LR 16.2, we enclose a copy of Par's ANDA No. 78-540 for Propafenone Hydrochloride SR Capsules, 225 mg, 325 mg, and 425 mg (Bates Nos. PAR000001 - PAR002016), and the following samples:

        1.     60 Propafenone HCl SR capsules for each dosage strength of Par's proposed
               capsules: 225 mg (Lot#: 18235306; Bates No. PAR002017), 325 mg (Lot#:
               18287201; Bates No. PAR002018), and 425 mg (Lot#: 18209706; Bates No.
               PAR002019);

        2.     10 g from each of three lots of the Active Pharmaceutical Ingredient (API) to be
               used in Par's proposed capsules (Lots# 502949, 505340, and 504159; Bates Nos.
               PAR002020, PAR002021, and PAR002022, respectively); and

        3.     80 g Propafenone HCl SR granules (Batch # RB062 S 087; Bates No
               PAR002023).

Christine Willgoos, Esq.
April 25, 2007
Page 2

      The enclosed ANDA and samples are being produced subject to the terms of Par's Offer of Confidential Access and Confidentiality Agreement ("OCA") until a protective order governing the handling of discovery materials is entered in this case. The OCA, among other things, restricts access to the enclosed materials to: (i) outside counsel engaged by Reliant; (ii) no more than two in-house counsel or members of the Intellectual Property Department who have no patent prosecution responsibilities and who are identified to Par; and (iii) independent consultants and experts assisting in the evaluation of the ANDA and samples on behalf of Reliant. If you intend to provide Reliant in-house counsel with access to the enclosed materials, please notify us of their names and respective positions within Reliant before doing so.

Very truly yours,

John G. Taylor

Encls.

cc:    Gerald J. Flattmann, Jr., Esq. (via e-mail w/o encls.)
       Jack B. Blumenfeld, Esq. (via e-mail w/o encls.)
       Josy W. Ingersoll, Esq. (via e-mail w/o encls.)
       Karen L. Pascale, Esq. (via e-mail w/o encls.)

# Exhibit 6

**FLH** **FROMMER LAWRENCE & HAUG** LLP

**New York**          www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800          Tokyo
Fax: (212) 588-0500

August 8, 2007

**John G. Taylor**
JTaylor@flhlaw.com

<u>**BY E-MAIL AND HAND DELIVERY**</u>

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       <u>Civil Action No. 06-774-JJF (D. Del)</u>

Dear Gerald:

    Further to our August 1, 2007 telephone conference, enclosed are document subpoenas for the following individuals and companies:

1.  Karl Kolter;

2.  Helmut Fricke;

3.  Volker Bueller;

4.  Herbert Mueller-Peltzer;

5.  Thomas Moest;

6.  Claus Pich;

7.  Abbott Laboratories, Inc.;

8.  Knoll Aktiengesellschaft; and

9.  BASF Aktiengesellschaft.

    With respect to each of these parties, please advise us immediately whether Kirkland & Ellis represents them, whether Kirkland & Ellis accepts service of the subpoenas on their behalf, and whether they will voluntarily produce documents sought in the subpoenas and appear for depositions at mutually convenient times and places.  In this regard, we repeat the request in our July 23, 2007 letter that Reliant immediately produce all agreements and related documents concerning Reliant's acquisition of Rythmol® and the '588 patent from Abbott, including specifically any agreement that concerns any right of Reliant to seek the assistance of the inventors, Abbott, BASF or Knoll (or any related person or entity) on patent, regulatory or litigation matters concerning Rythmol® or the '588 patent, and/or the obligation of the inventors,

00469960.DOC

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis LLP
August 8, 2007
Page 2

Abbott, BASF or Knoll (or any related person or entity) to cooperate or provide assistance to Reliant on such matters.

Finally, please advise us immediately when Reliant is going to begin producing documents and when it is going to provide amended responses to Par's first set of interrogatories. At the beginning of our August 1 telephone conference, you said that Reliant was "ready to start streaming documents" to us. When we asked you later during the telephone conference when Reliant would produce documents and amend its interrogatory responses, you stated that you would get back to us promptly. Although Reliant took the unfounded position that it would not produce documents until the motion to disqualify was decided, it nevertheless should have collected and prepared documents in response to Par's requests so that they could be produced consistent with the Court's scheduling orders. With respect to interrogatory responses, Reliant has not provided substantive responses to any of Par's contention interrogatories. The statement in Christine Willgoos' July 26, 2007 letter that Reliant's "responses are appropriate for this early stage of discovery" is unsatisfactory. Although Reliant may supplement its responses as discovery progresses, Par is entitled to substantive responses now. As we pointed out in our July 23 letter, Reliant has had Par's notice letters for over six months and has had Par's ANDA and samples for more than 3 months. There is no excuse for Reliant not providing substantive information in response to Par's interrogatories seeking infringement contentions.

Sincerely,

John G. Taylor

Encls.

Cc:     Jack B. Blumenfeld, Esq. (via e-mail only)
        Christine Willgoos, Esq. (via e-mail only)
        Josy E. Ingersoll, Esq. (via e-mail only)
        Karen L. Pascale, Esq. (via e-mail only)

# Exhibit 7

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

**Citigroup Center**
**153 East 53rd Street**
**New York, New York 10022-4611**

Christine Willgoos
To Call Writer Directly:
212 446-4964
cwillgoos@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

August 10, 2007

<u>**VIA EMAIL**</u>

John Taylor, Esq.
Frommer, Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceuticals*

Dear John:

I write in response to your August 8, 2007 letter to Gerald Flattmann.

Thank you for providing courtesy copies of the subpoenas you intend to serve. Kirkland & Ellis represents Drs. Kolter, Frike, Bueller, Mueller-Peltzer, Moest and Pich. We are not, however, authorized to accept subpoenas on their behalf.

None of Drs. Kolter, Frike, Bueller, Mueller-Peltzer, Moest and Pich are currently, or ever have been, employees of Reliant. Reliant has no control over them. However, in an effort to facilitate discovery, Kirkland & Ellis will ask them if they would be willing to voluntarily produce documents or appear for deposition in this action in the United States.

Kirkland & Ellis does not represent Abbott Laboratories, Inc., Knoll AG, or BASF AG in this action.

Pursuant to the Court's July 25, 2007 Order, either party may extend, without leave of Court, the time to comply with paragraph 3 of the March 28, 2007 Scheduling Order by 30 days. Reliant advised you during our August 1, 2007 teleconference that it was extending that date, and thus has until September 24, 2007 to comply with paragraph 3 of the Scheduling Order. Reliant will begin its document production shortly and supplement its interrogatory responses in order to timely meet its discovery obligations. Reliant's document production will include the agreements you request, subject to the objections made in its June 11, 2007 Objections and Responses.

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

## KIRKLAND & ELLIS LLP

John Taylor, Esq.
August 10, 2007
Page 2

       Moreover, although Par produced its ANDA and samples, it did so pursuant to the Offer of Confidential Access, which does not permit disclosure to experts for purposes of litigation preparation. Reliant will be in a better position to provide more complete substantive answers to Par's interrogatories once it is able to consult with its experts.  Now that the Protective Order has been filed, we should be able to do that shortly.

       Sincerely,

Christine Willgoos

CW/lesr

# Exhibit 8



**FLH** FROMMER LAWRENCE & HAUG LLP

**New York**          www.flhlaw.com
745 Fifth Avenue
New York, NY 10151    Washington, DC
Telephone: (212) 588-0800    Tokyo
Fax: (212) 588-0500

August 20, 2007

**John G. Taylor**
JTaylor@flhlaw.com

**BY E-MAIL AND FIRST CLASS MAIL**

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       Civil Action No. 06-774-JJF (D. Del)

Dear Gerald:

    We write concerning Reliant's failure to produce any documents or to provide substantive answers to any interrogatories despite Par's repeated requests and Reliant's repeated assurances—both written and oral—that documents and interrogatory answers were forthcoming. *See* Frommer Lawrence & Haug letters dated July 11, July 23, August 8, and August 13, 2007 and Kirkland & Ellis letters dated July 16, July 26, and August 10, 2007.

    During our August 1 telephone conference, we specifically advised you that we needed to receive Reliant's responsive documents and substantive interrogatory answers by the middle of August so that Par could, if necessary, make a motion to compel in time to be heard before the September 23 deadline for completion of document production and contention interrogatories. Judge Farnan's last motion hearing date before the September 23 deadline is September 21. Under Judge Farnan's individual rules, the last day a motion can be filed to be heard on the September 21 hearing date is Thursday, August 23. Accordingly, if we do not receive substantial and meaningful production of documents responsive to Par's first set of document requests and substantive answers to Par's first set of interrogatories by Wednesday, August 22, we will have no choice but to file a motion to compel on August 23.

Sincerely,

John G. Taylor

cc:    Jack B. Blumenfeld, Esq. (via e-mail only)    Josy E. Ingersoll, Esq. (via e-mail only)
       Christine Willgoos, Esq. (via e-mail only)    Karen L. Pascale, Esq. (via e-mail only)

# Exhibit 9

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Christine Willgoos
To Call Writer Directly:
212 446-4964
cwillgoos@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

August 21, 2007

**VIA EMAIL**

John Taylor, Esq.
Frommer, Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

    Re: *Reliant Pharmaceuticals, Inc. v. Par Pharmaceuticals*

Dear John:

   I write in response to your August 13, 2007 letter to me and your August 20, 2007 letter to Gerald Flattmann.

   Pursuant to the Court's July 25, 2007 Order, Reliant has an additional 30 days - until September 24, 2007 -- to comply with its discovery obligations set forth in paragraph 3 of the Rule 16 Scheduling Order. Reliant has repeatedly informed you that it intends to meet its discovery obligations prior to that date. *See, e.g.*, August 10, 2007 letter from Christine WIllgoos to John Taylor.

   Accordingly, any motion to compel filed by Par prior to the September 24, 2007 deadline is premature. In particular, should Par file any motions to compel on August 23, 2007, as indicated in your letter to Gerald Flattmann, such motions would be frivolous, and Reliant will move for its costs incurred in defending them.

   Regarding the inquiries made in your August 13, 2007 letter, Drs. Kolter, Frike, Bueller, Mueller-Peltzer, Moest and Pich have indicated that they will not appear voluntarily in this action.

   Sincerely,

*Christine Willgoos*

Christine Willgoos

CW/lesr

Chicago  Hong Kong  London  Los Angeles  Munich  San Francisco  Washington, D.C.

# Exhibit 10

**Christine Willgoos/New York/Kirkland-Ellis**

08/23/2007 11:46 AM

To  "Taylor, John" <JTaylor@flhlaw.com>

cc  gflattmann@kirkland.com, jblumenfeld@mnat.com,
"Ingersoll, Josy" <jingersoll@ycst.com>, "Stronski, James"
<JStronski@flhlaw.com>, "Pascale, Karen"
<kpascale@ycst.com>, "Jabri, Omar" <OJabri@flhlaw.com>

Subject  Re: Reliant v. Par

John --

The current addresses for Drs. Frike, Kolter, Mueller-Peltzer, Bueller, Pich and Moest are set forth in Reliant's initial disclosures.

Regarding your intent to seek the Court's assistance to proceed under the Hague convention, we would like to review your proposed request prior to determining whether or not to oppose it.  We will not oppose your motion if the request is reasonable.

Further, Reliant expects to begin producing documents tomorrow.

Regards,
Christine

"Taylor, John" <JTaylor@flhlaw.com>



**"Taylor, John"
<JTaylor@flhlaw.com>**

08/22/2007 09:04 PM

To  <gflattmann@kirkland.com>, "Christine Willgoos"
<CWillgoos@kirkland.com>

cc  <jblumenfeld@mnat.com>, "Ingersoll, Josy"
<jingersoll@ycst.com>, "Pascale, Karen"
<kpascale@ycst.com>, "Stronski, James"
<JStronski@flhlaw.com>, "Jabri, Omar"
<OJabri@flhlaw.com>

Subject  Reliant v. Par

Dear Gerald and Christine,

In light of Reliant's position that it has no control over BASF and Knoll and the inventors' refusal to appear voluntarily for depositions and, we presume, to produce documents, Par intends to move the Court for judicial assistance.  In particular, Par will ask the Court to issue a Request for International Judicial

Assistance to the German authorities pursuant to the Hague Convention seeking documents and depositions of the inventors, BASF and Knoll.  Please advise us whether Reliant will consent to such a motion.  Please also provide us with the addresses of the inventors represented by Kirkland & Ellis, as requested in our August 13 letter.

Sincerely,

John G. Taylor

Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Tel:  212-588-0800
Fax:  212-588-0500

E-Mail:  JTaylor@FLHlaw.com

# Exhibit 11

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

William T. Vuk
To Call Writer Directly:
(212) 446-4757
wvuk@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900
Dir. Fax: (212) 446-4900

September 4, 2007

**BY HAND DELIVERY (w/ enclosures) and**
**EMAIL (w/o enclosures)**
John G. Taylor, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
JTaylor@flhlaw.com
212-588-0500

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
       Civil Action No. 06-774-JJF

Dear John:

Accompanying this letter, please find 18 boxes of documents bearing Bates numbers REL013196-REL065400.

I note that Reliant has produced over 65,000 pages of documents since it first informed Par that it was going to start producing documents. Reliant intends to continue to produce responsive documents to Par on a rolling basis as the documents become available. Clearly Reliant's productions, coupled with its repeated assurances, have demonstrated that Reliant is intent upon satisfying its discovery obligations by the Court imposed deadline of September 24, 2007. Thus, I renew my request that Par withdraw its pending Motion to Compel. The time and focus of both parties would be better served on completing this phase of discovery rather than engaging in needless motion practice.

Sincerely,

William T. Vuk

cc:    Jack B. Blumenfeld, Esq.
       (via email w/o enclosures)

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

# Exhibit 12

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

William T. Vuk
To Call Writer Directly:                    (212) 446-4800                    Facsimile:
(212) 446-4757                                                              (212) 446-4900
wvuk@kirkland.com                          www.kirkland.com               Dir. Fax: (212) 446-4900

August 27, 2007

**BY FACSIMILE AND EMAIL**
John G. Taylor, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
JTaylor@flhlaw.com
212-588-0500

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
       Civil Action No. 06-774-JJF

Dear John:

Par's premature Motion to Compel defies logic. By way of its motion, Par seeks to ask the Court to compel Reliant to provide discovery that a Court Order already mandates be completed by September 24, 2007, three days after the day Par wants the Court to hear its motion. Par's motion thus makes little sense.

First, Par's Motion to Compel is not currently, and when heard still will not be, ripe for review. As you note in your motion, the discovery deadline is September 24, 2007. Therefore the Court has authorized Reliant to produce documents and responses to written discovery up to and including that date. In fact, under the Court's Order, Reliant is not required to complete its discovery until three days after the date on which Par noticed its motion. It is therefore conceivable that on September 21st, Par will be arguing its motion without having fully analyzed the discovery provided by Reliant.

Second, there are no grounds for Par to even suspect that Reliant will not satisfy all of its discovery obligations. Indeed, Reliant's counsel has repeatedly assured Par's counsel that it intended to satisfy all discovery obligations under the Federal and Local Rules of Civil Procedure by the September 24th Court imposed deadline. Thus, even if granted, any order resulting from Par's motion will be meaningless and will accomplish nothing other than wasting valuable judicial time and resources.

That Par wants to dictate when and how Reliant must respond to its discovery requests and would prefer an earlier date for the completion of discovery is immaterial and not the proper basis for bringing a motion to compel. In this regard I note that contrary to the position stated in its motion, it is Par that has continually used its tactics — such as refusing to provide its ANDA

# KIRKLAND & ELLIS LLP

John G. Taylor, Esq.
August 27, 2007
Page 2


for nearly 6 months and serving multiple interrogatories/requests for admission directed to future phases of the litigation (i.e. claim construction and expert opinion/testimony) — in an attempt to control the timing of this litigation and such tactics are responsible for any delay in this litigation. Notwithstanding Par's attempts to set its own schedule, the Court's Scheduling Order controls the timing of this litigation and Reliant will continue to abide by it.

Furthermore, your mischaracterization of conversations with Reliant's counsel and your fabrication of facts is unfortunate.

First, you have twisted Ms. Willgoos' statement about Reliant abiding by the restrictions Par placed on the use of its documents/materials pending the entry of a protective order into a supposed admission that Reliant did not conduct a pre-suit infringement analysis with respect to Par's propafenone hydrochloride ANDA drug product. Nothing could be further from the truth, as is evidenced from the fact that you have zero support for your assertion. Also, your statement that Reliant's counsel employs "technically-trained non-lawyers", i.e. scientific advisors, is incorrect. Kirkland & Ellis LLP does not employ any such individuals.

Second, you equate Reliant's refusal to produce documents to Frommer Lawrence & Haug LLP during the pendency of the motion to disqualify with an admission that Reliant did not begin its document collection duties until after July 25, 2007. Again, your comment is off-base, not supported by any Reliant statement and simply untrue.

Based on the above, Reliant requests that Par immediately withdraw its motion to compel. If, after September 24th, Par still maintains that there are insufficiencies with Reliant's production and/or discovery responses, Par and Reliant should meet and confer in an effort to reach an amicable resolution. Please note that failure to promptly withdraw Par's motion will result in Reliant moving for all costs and expenses associated with opposing said motion.

Sincerely,

William T. Vuk

cc:    Jack B. Blumenfeld, Esq.
       (via email)

```
                    *********************
            ***      TX REPORT      ***
                    *********************


    TRANSMISSION OK

    TX/RX NO              0112
    RECIPIENT ADDRESS     912125880500
    DESTINATION ID
    ST. TIME              08/27 15:00
    TIME USE              00'45
    PAGES SENT            3
    RESULT                OK
```

# KIRKLAND & ELLIS LLP

### *Fax Transmittal*

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Phone: (212) 446-4800
Fax: (212) 446-4900

---

**Please notify us immediately if any pages are not received.**

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL.

**IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,
PLEASE NOTIFY US IMMEDIATELY AT:
(212) 446-4800.**

| *To:* | *Company:* | | *Fax #:* | *Direct #:* |
|---|---|---|---|---|
| John G. Taylor | Frommer Lawrence & Haug LLP | | 212 588-0500 | |
| *From:* | *Date:* | *Pages w/cover:* | *Fax #:* | *Direct #:* |
| William T. Vuk | August 27, 2007 | | (212) 446-4900 | (212) 446-4757 |

*Message*:

# Exhibit 13

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

William T. Vuk
To Call Writer Directly:
(212) 446-4757
wvuk@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900
Dir. Fax: (212) 446-4900

August 31, 2007

**BY EMAIL**

John G. Taylor, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
JTaylor@flhlaw.com
212-588-0500

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
       Civil Action No. 06-774-JJF

Dear John:

I write in response to your August 30, 2007 letter addressing my request that Par withdraw its Motion to Compel. Reliant does not accept your offer which seeks to disregard the Court's Scheduling Order and impose an earlier due date for Reliant's discovery.

Par's repeated attempts to set an earlier due date for Reliant's discovery is improper. As we have continually assured Par, Reliant intends to continue to provide discovery and will satisfy its discovery obligations by the Court imposed deadline of September 24, 2007. Thus, there is no need at this time for a Motion to Compel. In this regard, I note that Reliant has begun and will continue to produce documents. Reliant also has voluntarily agreed to supplement its interrogatory responses as appropriate.

Based on Reliant's assurances that it intends to complete discovery by September 24th, I again request that Par withdraw its Motion to Compel. To force Reliant to oppose a premature Motion to Compel which is obviated by Reliant's assurances is inappropriate. Again, if Par does not withdraw its motion, Reliant will be forced to move for all costs and expenses associated with opposing that motion.

Chicago      Hong Kong      London      Los Angeles      Munich      San Francisco      Washington, D.C.

# KIRKLAND & ELLIS LLP

John G. Taylor, Esq.
August 31, 2007
Page 2

Sincerely,

William T. Vuk

cc:     Jack B. Blumenfeld, Esq.
        (via email)

# Exhibit 14



**FLH** FROMMER LAWRENCE & HAUG LLP

New York                        www.flhlaw.com
745 Fifth Avenue
New York, NY 10151        Washington, DC
Telephone: (212) 588-0800    Tokyo
Fax: (212) 588-0500

August 30, 2007                        **John G. Taylor**
                                       JTaylor@flhlaw.com

**BY AND E-MAIL AND FIRST CLASS MAIL**

William T. Vuk, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       Civil Action No. 06-774-JJF (D. Del)

Dear Bill:

         We refer to your August 27, 2007 letter asking Par to withdraw its motion to compel interrogatory answers and production of documents.

         Par's motion to compel was made following written and oral notice to Reliant that the motion would be made if Reliant did not comply with its discovery obligations by supplementing its interrogatories answers and beginning and making a substantial document production.  The timing of Par's motion to compel was appropriate and, in fact, dictated by Judge Farnan's individual rules concerning motion practice and the terms of the March 28, 2007 Rule 16 Scheduling Order (as amended by the Court's July 25, 2007 Order).  Par waited until the last day the motion could be made to be heard before the Court-ordered deadline to complete all written discovery.  Par stands by the representations made in the motion papers.

         Par has, and will continue to be, reasonable and would, of course, rather obtain the discovery to which it is entitled than engage in motion practice with Reliant.  Accordingly, Par will seriously consider withdrawing all or part of its motion to compel if Reliant substantially complies with its discovery obligations sufficiently in advance of the September 21, 2007 hearing date, as discussed below.

         Regarding document production, Reliant did not begin producing documents until August 24—a day after Par moved to compel.  From a preliminary review of the documents produced to date, it appears that Reliant has produced no documents, or made an incomplete production of documents, in response to a number of categories of document requests, including but not limited to: the relevant New Drug Application, the Investigational New Drug Application and related correspondence with FDA; the patent prosecution files and related correspondence; and documents relating to the research, conception, development and formulation of the inventions claimed in the '588 patent.  If Reliant substantially completes its production of documents on or

00478353.DOC

William T. Vuk, Esq.
Kirkland & Ellis LLP
August 30, 2007
Page 2

before September 14 (allowing Par at least a short period of time to review the documents and
follow up, if necessary, with Reliant before the September 21 hearing date), then Par will
consider withdrawing, without prejudice, that portion of the motion directed to document
production.  In particular, Reliant's production must include all agreements or other documents
that concern any right of Reliant to seek the assistance of the inventors, Abbott, BASF, or Knoll
on patent, regulatory or litigation matters concerning Rythmol® or the '588 patent, and/or the
obligations of the inventors, Abbott, BASF, or Knoll to cooperate or provide assistance on such
matters.  Par also requests that Reliant confirm to Par when all such documents have been
produced.  Par needs this information in connection with its efforts to take discovery abroad.

    Similarly, if Reliant provides meaningful and complete answers to Par's contention
interrogatories on or before September 14, we will review them promptly and, if appropriate,
withdraw that portion of the motion directed to the interrogatories.

    We look forward to your favorable response.

Sincerely,

John G. Taylor

cc:    Gerald J. Flattmann, Jr., Esq. (by e-mail only)
       Christine Willgoos, Esq. (by e-mail only)
       Jack B. Blumenfeld, Esq. (by e-mail only)
       Josy E. Ingersoll, Esq. (by e-mail only)
       Karen L. Pascale, Esq. (by e-mail only)

00478353.DOC

# Exhibit 15

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

September 4, 2007

**James K. Stronski**
JStronski@flhlaw.com

## BY AND E-MAIL AND FIRST CLASS MAIL

William T. Vuk, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       Civil Action No. 06-774-JJF (D. Del)

Dear Bill:

     I write in response to your August 31, 2007 and September 4, 2007 letters concerning Par's motion to compel.

     Your letters do not address the deficiencies in Reliant's interrogatory answers that are the subject of that motion.  For this reason alone, we cannot agree to withdraw the motion.  Moreover, we cannot review and meaningfully analyze the 18 boxes of documents that we received from you this afternoon in the next few days.  For this reason, as well, we cannot at this time agree to withdraw the motion.  Preliminarily, I note that Reliant has flatly refused our August 30 proposal to resolve the document aspect of the motion and failed to clarify the status of its production of agreement-type documents pertaining to any right that Reliant may have to request—or obligation that the third parties at issue may have to provide—cooperation in discovery in this case.

     Because Reliant has chosen not to amend its interrogatories to date (vaguely suggesting only that it may do so, at some unstated time, "where appropriate"), it has taken a course of action that will necessitate that it respond to Par's motion.  In that response, we have no doubt that Reliant will advise the Court that it produced 18 boxes of documents on Par's counsel this afternoon and how, in its opinion, that may moot some or all of the relief that Par seeks concerning documents.  Now that we have those documents, we will review them, and to the extent that we agree that they moot any part of the relief sought, we will advise Reliant and the Court.

Very truly yours,

James K. Stronski

William T. Vuk, Esq.
Kirkland & Ellis LLP
September 4, 2007
Page 2


cc:    Gerald J. Flattmann, Jr., Esq. (by e-mail only)
       Christine Willgoos, Esq. (by e-mail only)
       Jack B. Blumenfeld, Esq. (by e-mail only)
       Josy E. Ingersoll, Esq. (by e-mail only)
       Karen L. Pascale, Esq. (by e-mail only)

# Exhibit 16

**FL+H  FROMMER LAWRENCE & HAUG LLP**

New York
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

www.flhlaw.com

Washington, DC

Tokyo

September 6, 2007

**John G. Taylor**
JTaylor@flhlaw.com

**BY E-MAIL**

Gerald J. Flattmann, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       Civil Action No. 06-774-JJF (D. Del.)

Dear Gerald:

We write regarding production of electronic documents.

The District of Delaware has default rules concerning electronic discovery that apply where, as here, the parties have not conferred and reached agreement on how to conduct e-discovery. *See* District of Delaware's Default Standard for Discovery of Electronic Documents (the "Default Rules"). Par has been proceeding in accordance with these Default Rules, including preserving e-mails of relevant individuals and other electronic documents. Among other things, the Default Rules require the parties to mutually exchange the following information on an agreed upon date:

1.    A list of the most likely custodians of relevant electronic materials (including each person's title and a brief description of his or her responsibilities);

2.    A list of relevant electronic systems in place at all relevant times, including a general description of each system and any limits on the accessibility of these systems;

3.    The name of the individual responsible for retention of electronically stored information ("the retention coordinator"), as well as a general description of the retention policies for the systems identified;

4.    The name of the individual who shall serve as the party's "e-discovery liaison"; and

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis LLP
September 6, 2007
Page 2

     5.     Notice of any problems reasonably anticipated to arise in connection with e-discovery.

     Par is prepared to provide this information to Reliant and we propose that the parties agree to mutually exchange the required information on Tuesday, September 11, 2007. We can then schedule a meet and confer for later in the week, if necessary, to discuss any issues raised in this letter or the parties' September 11 exchange of information. Please let us know as soon as possible if this is acceptable to Reliant.

     To get the process moving, we enclose as Attachment A a list of the twenty (20) current or former employees at Par most likely to have relevant electronic materials. As part of the exchange of information required by the Default Rules, we ask that Reliant similarly identify the twenty (20) people at Reliant most likely to have relevant electronic materials.

     The Default Rules also address search methodology and specifically require the parties to agree to search terms if they intend to employ an electronic search to locate relevant electronic documents. The Default Rules also suggest that the parties consider limiting the scope of the electronic search by, among other things, agreeing on time frames. Par intends to employ an electronic search and we propose that the parties apply the search terms listed on the enclosed Attachment B. We also propose that the parties limit the electronic search to relevant time periods. We suggest that Par search all electronic documents created between the time it first considered pursuing its generic propafenone capsule product and the filing of the complaint in December 2006. We suggest that Reliant search all electronic documents created between the time Reliant and Abbott first communicated regarding Rythmol® and the '588 patent and the filing of the complaint in December 2006. Please let us know if these search terms and time limits are acceptable to Reliant.

     Our experience has shown that it is often necessary to modify search terms after conducting the initial document search because the terms capture an unreasonably large volume of irrelevant documents. If this should occur, we propose that the parties agree that they will confer in good faith to try to narrow the scope of the search terms.

     Finally, the Default Rules address the format for document production. We propose that the parties agree to produce electronic documents in TIFF format, with the underlying metadata. The only exception to this general rule would be Microsoft Excel files which are not easily reviewable in TIFF format. For these files, we propose production of native files. Regarding the "tokens" or metadata to be exchanged, we propose that the parties include the following for e-mails and other electronic documents: (1) To (recipient) or @TO; (2) From (author) or @FROM; (3) CC or @CC; (4) BCC or @BCC; (5) Subject (subject line of an e-mail) or @SUBJECT; (6) Text (the body of an e-mail or document) or @TEXT; (7) Date Sent or @DATESENT; (8) File Format/Document Type (e.g., Word, PowerPoint, Excel, etc.) or

Gerald J. Flattmann, Jr., Esq.
Kirkland & Ellis LLP
September 6, 2007
Page 3

@APPLICATION; (9) information allowing one to associate an e-mail with its corresponding attachments or @ATTACHCOUNT; (10) Bates number or @DOCID; and (11) Folder name or @FOLDERNAME.  For redacted documents, if any of the information listed above is redacted from the image file, the corresponding "token" or metadata may be redacted as well.  Please let us know if this is acceptable to Reliant.

       We look forward to your prompt reply so that we can proceed with the collection and timely production of electronic materials.

Sincerely,

John G. Taylor

Enclosures

cc:    Christine Willgoos, Esq.
       William T. Vuk, Esq.
       Jack B. Blumenfeld, Esq.
       Josy E. Ingersoll, Esq.
       Karen L. Pascale, Esq.

00479523.DOC

# ATTACHMENT A

## PAR CUSTODIANS OF ELECTRONICALLY STORED INFORMATION (ESI)

| Name | Title | Responsibilities |
|---|---|---|
| Michelle Bonomi | Executive Director, Generic Regulatory Affairs | ANDA preparation, filing and approval process |
| Paul Campanelli | President, Generic Division | Business development |
| Robert Campanelli | Director, Project Management | Project management |
| Angus Chen | Patent Counsel | Legal |
| Karen Close | Director, Process Development, Technical Services | Commercial manufacturing |
| Alfred Elvin | Director, Biopharm & Pharmacokinetics | Biostudies |
| Robert Femia | Executive VP, Scientific & Regulatory Affairs | Product development |
| Tatiana Forman | Project Manager | Project management |
| Serge Gaspard | Senior Director, AR&D | Analytical |
| Shankar Hariharan | Chief Scientific Officer | Product development |
| Ping He | Principal Scientist, Formulations (former employee) | Research, development and formulation |
| Eric Mittleberg | Executive VP, Pharmaceutical R&D | Research, development and formulation |
| Satish Patel | Senior Scientist | Research, development and formulation |
| Nicole Pace | Associate Manager, Product Portfolio | Business development |
| Janis Picurro | Director, Regulatory Affairs | ANDA preparation, filing and approval process |
| Robert Polke | Director, Technical Operations | Commercial manufacturing |
| Mark Roach | Senior. Director, AR&D | Analytical; stability testing |
| Karen Rocco | Associate Director CMC, Regulatory Affairs | ANDA preparation |
| Suketu Sanghvi | Associate Director, Formulations | Product development |
| Julie Szozda | Submissions Manager | ANDA preparation |

00479480.DOC

**ATTACHMENT B**

**SEARCH TERMS FOR FILTERING**
**ELECTRONICALLY STORED INFORMATION (ESI)**

propafenone **OR** "propafenone hydrochloride" **OR** "propafenone HCl" **OR** phenylpropiophenone

Rythmol **OR** "Rythmol SR"

5,681,588 **OR** 5681588 **OR** '588 **OR** '588 **OR** 588

08/525,749 **OR** 525,749 **OR** 525749

4,797,287 **OR** 4797287 **OR** '287 **OR** '287 **OR** 287

07/045,194 **OR** 45,194 **OR** 45194

"NDA 21-416" **OR** 21-416

"ANDA 78-540" **OR** 78-540

microtablet*

cylindrical **w/10** (flat **OR** convex)

"release-delaying" **OR** (release **w/5** delay*)

Kolter **OR** Fricke **OR** Buehler **OR** Mueller-Peltzer

Pich **OR** Moest

Abbott

Knoll

BASF

McNeilab

Oblon **OR** McClelland

Par (for Reliant's ESI)

Reliant (for Par's ESI)


* - denotes wildcard