## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC., )
                           )
          Plaintiff, )
                           )          Civil Action No. 06-774-JJF
                           )
        v. )
                           )        **REDACTED – PUBLIC VERSION**
                           )
PAR PHARMACEUTICAL, INC. )
                           )
          Defendant. )
                           )

## PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR DISQUALIFICATION OF FROMMER LAWRENCE & HAUG LLP

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

Originally Filed:  September 10, 2007
Redacted Version Filed:  September 17, 2007

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

SUMMARY OF THE ARGUMENT ............................................................................2

STATEMENT OF FACTS ........................................................................................4

    A.    FLH's Attorney-Client Relationship With Reliant...............................................4

    B.    FLH Represented Reliant In Connection With Reliant's Acquisition of Rythmol®
        And The '588 Patent.....................................................................................5

    C.    FLH's Pre-Litigation Representation Of Par Concerning Par's Paragraph IV
        Certification Against Rythmol SR And The '588 Patent .......................................11

    D.    Reliant Brings This Action And Learns That FLH, Including Messrs. Brown And
        Hoag, Represents Par.................................................................................14

    E.    Par's Litigation Team Has Had Access To Confidential Attorney-Client
        Privileged Documents Generated or Obtained During FLH's Representation Of
        Reliant....................................................................................................15

ARGUMENT.......................................................................................................17

I.    LEGAL STANDARDS ...............................................................................17

II.    FLH'S CURRENT REPRESENTATION OF PAR IS ADVERSE TO THE
      INTERESTS OF ITS FORMER CLIENT RELIANT .......................................19

III.    FLH's CURRENT REPRESENTATION OF PAR IS SUBSTANTIALLY
      RELATED TO ITS FORMER REPRESENTATION OF RELIANT ..........................19

    A.    The Nature And Scope Of FLH's Subsequent Representations Of Par And
        Reliant Are The Same................................................................................20

    B.    The Same FLH Attorneys Who Represented Reliant Also Represented Par
        Regarding The Same Legal Issues.................................................................22

    C.    FLH Has Access To Reliant's Confidential And Privileged Information
        Concerning The Same Subject Matter As FLH's Representation Of Par .............23

    D.    FLH's Own Sworn Declarations Confirm The Substantial Relationship
        Between Its Work For Reliant And Par...........................................................25

IV.    FLH CANNOT CLEANSE ITSELF OF ITS ETHICAL CONFLICT BY
      ERECTING A BELATED AND INEFFECTIVE "INFORMATION WALL" ...............30

V.    FLH SHOULD BE DISQUALIFIED AS PAR'S COUNSEL................................33

CONCLUSION ...................................................................................................36

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Amgen, Inc. v. Elanex Pharms., Inc.,*
    160 F.R.D. 134 (W.D. Wash. 1994)............................................................18, 32

*Buckley v. Airsheild Corp.,*
    908 F. Supp. 299 (D. Md. 1995)..............................................................18-19

*Donohoe v. Consol. Operating & Prod. Corp.,*
    691 F. Supp. 109 (N.D. Ill. 1988)................................................................35

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,*
    809 F. Supp. 1383 (N.D. Cal. 1992)............................................................32

*EZ Paintr Corp. v. Padco, Inc.,*
    746 F.2d 1459 (Fed. Cir. 1984) ..................................................................34

*Gen. Elec. Co. v. Valeron Corp.,*
    608 F.2d 265 (6th Cir. 1979) ......................................................................18

*In re Corn Derivatives Antitrust Litig.,*
    748 F.2d 157 (3d Cir. 1984) ....................................................17, 33, 35

*INA Underwriters Ins. Co. v. Nalibotsky,*
    594 F. Supp. 1199 (E.D. Pa. 1984) ............................................................32

*Jack Eckerd Corp. v. Dart Group Corp.,*
    621 F. Supp. 725 (D. Del. 1985) ..........................................................17, 24

*Monon Corp. v. Wabash Nat'l Corp.,*
    764 F. Supp. 1320 (N.D. Ind. 1991) ..........................................................18

*Queen's Quest Condominium Council v. Sea Coast Builders, Inc.,*
    No. 89C-OC7, 1992 Del. Super. LEXIS 101 (Mar. 30, 1992) ....................31

*Stratagene v. Invitrogen Corp.,*
    225 F. Supp. 2d 608 (D. Md. 2002)............................................................18

*U.S. v. Gordon,*
    334 F. Supp. 2d 581 (D. Del. 2004) ............................................................18

STATUTES

35 U.S.C. § 271(e) ........................................................................................19

**OTHER AUTHORITIES**

ABA Model Rules of Professional Conduct Rule 1.9 ................................................................. 17

ABA Model Rules of Professional Conduct Rule 1.10 ....................................................... 17, 30

## NATURE AND STAGE OF THE PROCEEDINGS

On December 19, 2006, Reliant Pharmaceuticals, Inc. ("Reliant") brought this action against Par Pharmaceutical, Inc. ("Par") for infringement of U.S. Patent No. 5,681,588 ("the '588 patent"). D.I. 1, D.I. 8. In its Answer and Counterclaims, Par asserted affirmative defenses and counterclaims including non-infringement, invalidity, and unenforceability of the '588 patent. D.I. 11.

This action is in the early stages of discovery. The parties have exchanged discovery requests and responses. Document production and contention interrogatories are set to be completed by September 24, 2007. D.I. 27, 66. No other discovery has yet taken place.

On March 14, 2007, Reliant moved to disqualify the law firm of Frommer Lawrence & Haug LLP ("FLH") from representing Par in this action, and re-filed that motion on May 2, 2007. D.I. 18, 29. The parties briefed the motion. D.I. 29-31, 35-46, 56-57.

On July 25, 2007, the Court issued an Order finding that the record on the motion for disqualification did not allow it to make findings of fact necessary to decide the motion. The Court granted the parties the opportunity for discovery on the disqualification issue and denied Reliant's motion with leave to re-file a motion to be noticed for the Court's October 2007 Motion Day. D.I. 66.

Pursuant to the Court's July 25 Order, Reliant conducted discovery relating to FLH's representation of both Reliant and Par regarding the drug and the patent at issue here.[1] In order to facilitate discovery on this issue without waiver of Reliant's confidential and attorney-client privileged communications with FLH shared during the course of the former representation, the parties entered into a Stipulation Of Non-Waiver And Confidentiality

---

[1]    Par and FLH chose not to take any discovery regarding the disqualification issue.

Agreement (attached as Ex. 1)[2]. Pursuant to that agreement,

REDACTED

Based on the discovery allowed by the Court's July 25 Order, Reliant renews its motion for disqualification of FLH as Par's counsel. This is Reliant's opening brief in support of that motion.

**SUMMARY OF THE ARGUMENT**

FLH, Par's litigation counsel in this action, represented Reliant between June 2003 and October 2003 in connection with Reliant's acquisition of the product, Rythmol® SR, and the '588 patent, involved in this lawsuit. In the course of that representation, FLH provided Reliant with legal advice concerning the validity, enforceability and potential infringement of the '588 patent, the potential for a generic competitor (such as Par) to design a product bioequivalent to Rythmol® SR around the '588 patent, the regulatory listing of the patent and its impact on potential litigation, and the terms of the patent assignment and asset purchase agreement under which Reliant acquired the Rythmol® portfolio. FLH's confidential legal advice included an analysis of the relevance of certain prior art patents, including U.S. Patent No. 4,797,287 ("the Pich '287 patent"). FLH now asserts, on behalf of Par in this litigation against Reliant, that Par's generic product will not infringe the '588 patent and that the '588 patent is invalid and

---

2    "Ex. ___," as used herein, refers to the exhibits attached to the Declaration Of Shane Cortesi In Support Of Reliant Pharmaceuticals, Inc.'s Renewed Motion For Disqualification Of Frommer Lawrence & Haug LLP, filed herewith.

2

unenforceable. FLH makes those arguments based largely on the Pich '287 patent. Accordingly, FLH's current representation of Par is materially adverse and substantially related to its previous representation of Reliant.

FLH still has institutional knowledge concerning the confidential legal advice provided to Reliant concerning the Rythmol® SR product and the '588 patent. Current FLH partners Daniel Brown and Arthur Hoag, as well as scientific advisor Ali Berkin, were directly involved in or privy to Reliant's confidential attorney-client communications concerning Rythmol® and the '588 patent. Moreover, since at least November, 2004, and through 2005 and 2006, these same FLH partners and agents have advised Par regarding its attempt to market generic Rythmol® SR and render the '588 patent invalid and unenforceable.

FLH, in a misguided attempt to purge itself of the ethical conflict it created by taking on subsequent representations of two clients with adverse interests concerning the same drug and the same patent, has purported to erect an "information wall" screening Messrs. Brown, Hoag and Berkin from FLH's current representation of Par. That "wall," however -- to the extent it exists -- was erected more than two years *after* FLH started advising Par concerning its generic version of Rythmol® SR. Moreover, FLH refuses to acknowledge that any information given to or generated on behalf of Reliant in the course of its former representation is privileged or confidential, and has distributed Reliant's information to Par's FLH litigation team. Thus, FLH's purported "wall" has not prevented Par's litigation counsel from reviewing FLH's work product that was created on Reliant's behalf in the course of its former attorney-client relationship. And, Reliant's repeated requests that FLH respect Reliant's confidential and privileged communications have been met with a flat out refusal to do so.

3

Thus, there is a real and substantial danger that FLH will use -- if it has not already used -- Reliant's confidential and attorney-client privileged information, gained in the course of its former representation, to Reliant's detriment. Accordingly, Reliant requests that the Court disqualify FLH from representing Par in this litigation.

## STATEMENT OF FACTS

### A.    FLH's Attorney-Client Relationship With Reliant

In February 2002, Reliant retained FLH, including partners Edgar Haug and Andrew Berdon, to represent it and to serve as outside counsel on intellectual property matters. Lerner Decl. at ¶ 3-5.[3]

Over the course of this representation, FLH acted as Reliant's primary outside patent counsel, and Reliant referred the vast majority of its patent-related matters to FLH. Lerner Decl. at ¶ 6. Reliant entrusted FLH with sensitive legal and business issues, and relied on FLH's legal advice, confidences and expertise. FLH represented Reliant in connection with regulatory, counseling and potential litigation matters regarding other drugs, as well as with respect to intellectual property diligence matters. Lerner Decl. at ¶ 6. FLH has acknowledged that it represented Reliant for at least two years, in at least 11 separate matters, concerning at least seven drug products. Haug Decl. at ¶ 8 (D.I. 36).[4] In 2003 alone, FLH billed over $300,000 to Reliant for over 1100 hours of work. These matters were important for Reliant's patent portfolio and continued growth as a company. Lerner Decl. at ¶ 6.

---

[3] "Lerner Decl.," as used herein, refers to the March 9, 2007 Declaration Of Michael Lerner In Support Of Reliant's Motion For Disqualification of Frommer Lawrence & Haug LLP (D.I. 20), filed again herewith.

[4] "Haug Decl.," as used herein, refers to the Declaration of Edgar H. Haug In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief. D.I. 36.

4

Although Mr. Berdon was Reliant's primary contact, many FLH partners, associates, technical advisors and support staff worked on Reliant matters. For example, current FLH partners Daniel Brown, Thomas Kowalski, Arthur Hoag, Jeffrey Hovden and Charles Raubicheck provided legal advice and assistance on Reliant matters. Lerner Decl. at ¶ 7.

In 2004, Reliant transferred its pending matters from FLH to another law firm. At that time, Mr. Haug requested that Reliant grant FLH a prospective conflicts waiver:

> [W]e would appreciate receiving a written waiver as to any future conflict with respect to any of the products that we have worked on for you in the past. As you know, we have been approached by numerous other pharmaceutical companies to work on a number of the products that we were working on for you and turn that work away because the company perceived to constitute a potential conflict. Given that we will no longer be representing you and that Andy Berdon has left the firm, we would like your written assurance and agreement that we are now free to work in any and all of these products, even if that may result in an adverse position to Reliant Pharmaceuticals.

Reliant never waived conflicts as requested in the letter, nor did it waive FLH's conflict in this matter against Par. Suppl. Lerner Decl. at ¶ 16.[5]

**B.     FLH Represented Reliant In Connection With Reliant's Acquisition of Rythmol®
And The '588 Patent**

Beginning in June 2003, FLH represented Reliant in connection with Reliant's purchase from Abbott of the anti-arrhythmic drugs Rythmol® and Rythmol® SR (collectively referred to herein as "Rythmol®") and the related patent portfolio, including the '588 patent-in-suit. *See* Lerner Decl. at ¶¶ 9-16; Suppl. Lerner Decl. at ¶¶ 2-15.

By June 27, 2003, Reliant sought FLH's advice in connection with Reliant's contemplated purchase from Abbott of Rythmol® and the '588 patent. *See* Ex. 2. Reliant's

---

[5]     "Suppl. Lerner Decl.," as used herein, refers to the May 24, 2007 Supplemental Declaration of Michael Lerner In Support Of Reliant's Motion For Disqualification Of Frommer Lawrence & Haug, submitted with Reliant's Reply Brief (D.I. 57), submitted again herewith.

General Counsel at the time, Michael Lerner, requested FLH's legal advice primarily through Andrew Berdon, who at that time was an FLH partner. On June 27, 2003, Reliant sent to FLH a Confidential Abbott Memorandum ("Confidential Memo") that was subject to a Confidential Disclosure Agreement ("CDA") between Abbott and Reliant and was prepared by Abbott to assist buyers in evaluating the Rythmol® portfolio. Ex. 2 at RAC004; Lerner Decl. at ¶ 11; Suppl. Lerner Decl. at ¶ 4. The Confidential Memo discloses the patent protection for Rythmol®, scientific and clinical properties of the drug, expected FDA exclusivities, potential for a generic competitor to formulate bioequivalent drugs, the projected market for Rythmol®, and the structure of a contemplated Asset Purchase Agreement. Ex. 2; Lerner Decl. at ¶ 11.

As of June 2003, Reliant considered FLH as its due diligence counsel in the Abbott deal. Reliant understood that Mr. Berdon and Arthur Hoag (a current FLH partner) would assist Reliant in evaluating the Rythmol® intellectual property. *See* Ex. 3 (identifying Mr. Hoag as Reliant's "IP counsel" on an agenda for a meeting with Abbott set to take place in Chicago on June 30-July 1, 2003).

By July 2003, Mr. Lerner had provided FLH with information concerning the patents that were the subject of the Abbott deal, including the '588 patent. Ex. 4; Ex. 5; Ex. 6. At that time, Mr. Lerner requested that FLH provide Reliant with legal advice concerning '

REDACTED                                                                    . Ex. 4.

In response, FLH advised Reliant that

*Id.* Mr. Berdon assured

Reliant that he would follow up regarding

, and that FLH would "look at the IP end of this." *Id.*

6

On July 18, 2003, Mr. Bobotas sent FLH additional confidential information concerning Rythmol®. Ex. 7. This information included a confidential power point presentation entitled "Rythmol® (propafenone) — U.S. Due Diligence, CMC/Formulation/Manufacturing" ("Diligence Presentation"), that described in detail the development, composition and manufacturing of the drug. For example, the Diligence Presentation contained detailed formulation and manufacturing information, including the composition of Rythmol® SR and its step-by-step manufacturing process. *Id.* at RAC00149, RAC00153-54. The Diligence Presentation also contained a detailed "Development History" of Rythmol® SR, including the "original idea" used to develop the drug and a timeline of its formulation and testing. *Id.* at RAC00151-52.

On July 21, 2003, Reliant requested additional legal advice from FLH concerning potential generic competition regarding Rythmol® SR, specifically, whether a

REDACTED

Ex. 8. In response, Mr. Berdon provided details explaining

*Id.*; Ex. 9, Ex. 10.

Reliant also sought advice concerning the

Reliant indicated that the "key focus" for which it sought FLH's legal advice was:

Ex. 11. Specifically, Reliant sought advice concerning whether

REDACTED

FLH responded with detailed advice concerning the

7

REDACTED

*Id.; see also* Ex. 9, Ex. 10.

On July 21, 2003, Reliant also requested that FLH

REDACTED

Mr. Berdon responded that FLH

Mr. Berdon copied his response to Dan Brown (a current FLH partner) and told Reliant: "We already have the file history on the first ['588 patent, and Dan is working it up as we speak." Ex. 8.

FLH also provided legal advice to Reliant concerning the scope, validity and potential for design-around of the '588 patent. Lerner Decl at ¶ 12; Suppl. Lerner Decl. at ¶ 13. On September 12, 2003, Mr. Berdon wrote to Reliant, forwarding FLH's previous analysis of the

REDACTED

Abbott Rythmol® SR drug and '588 patent. Mr. Berdon also stated that he and Mr. Brown had given Reliant oral legal advice about the '588 patent: ***On the coverage of the patent, I believe that Dan Brown and I gave you a verbal brief,*** but that we agreed at that time not to put into writing any view REDACTED " Ex. 11 (emphasis added).

On September 29, 2003, FLH forwarded its legal advice concerning Reliant's expected market exclusivity to Reliant's business development group working on the Abbott deal. Mr. Berdon stated that he had discussed the with Reliant scientist Mr. Bobotas. Based, in part, on that discussion, Mr. Berdon advised that:

REDACTED

8

REDACTED

Ex. 12.

In October 2003, as the acquisition of Abbott's Rythmol® drug and '588 patent

neared finalization, Reliant continued to seek FLH's legal advice concerning

. For example, on October 21, 2003, Mr. Berdon advised Reliant that the

'588 patent, which he described as

REDACTED

. Ex. 13. This advice was based on investigation conducted by FLH

scientific advisor Ali Berkin at Mr. Berdon's direction. Ex. 24 at Tr. 46:8-21.

On that same day, FLH provided Reliant with advice regarding the relevance of

prior art patents to the Rythmol® formulation. Those patents included the Pich '287 patent and

U.S. Patent No. 4,954,347 ("the Kristen '347 patent") that FLH, on Par's behalf, now contends

render the '588 patent invalid or unenforceable. Ex. 23 at 1, 18-20. Working under Mr.

Berdon's direction, Dr. Berkin performed

REDACTED                    Ex. 29 at PAR-FLH062, PAR-

FLH069; Ex. 24 at Tr. 7:3-13, 10:7-9. Dr. Berkin prepared a "Confidential" memorandum and

chart (entitled "Patent Analysis") analyzing the results of his search. Dr. Berkin's chart

REDACTED

*See* Ex. 30. Dr. Berkin concluded that

the Pich '287 and Kristen '347 patents were                    . *Id.* at PAR-FLH085,

PAR-FLH086. Mr. Berdon advised Reliant that the Pich '287 and Kristen '347 patents were

Ex. 14.

9

On October 21, 2003, Reliant also sought advice concerning the draft patent assignment agreement and the draft Asset Purchase Agreement that Reliant intended to enter into with Abbott for the purchase of Rythmol® SR and the '588 patent. FLH, including current partner Arthur Hoag, advised Reliant concerning the provisions of those agreements. For example, with respect to the patent assignment agreement under which Reliant acquired rights to the '588 patent, Mr. Hoag advised Reliant            REDACTED

.[6] Ex. 15. Mr. Hoag also advised that the agreement should include

*Id.*   Further, Mr. Hoag gave Reliant advice concerning

Ex. 16. Based on Mr. Hoag's advice concerning the grant back clause, Mr. Berdon            REDACTED

Ex. 17.

Mr. Hoag also advised Reliant concerning the draft Asset Purchase Agreement ("APA") with Abbott by which Reliant obtained rights to Rythmol® SR and the '588 patent. Mr. Hoag advised Reliant of specific revisions and additional language that should be added to the APA. Ex. 16. Mr. Hoag also advised of

.  *Id.* For example, Mr. Hoag advised Reliant that it should

REDACTED

*Id.*

---

[6]   Although Mr. Berdon was the direct contact and provided Mr. Hoag's legal advice to Reliant, Mr. Hoag understood that his work was for the purpose of providing Reliant with legal advice. Ex. 25 at Tr. 34:25-35, 35:6.

10

Mr. Hoag further advised Reliant that it should

*Id.*

On October 22, 2003, FLH provided Reliant

. For example,

Mr. Berdon advised that Reliant should                REDACTED

Ex.

18.  Because Mr. Berdon had discovered that the '588 patent

:. Ex. 19.  Based on this call, Mr. Berdon advised Reliant

that;                REDACTED

: *Id.*  Mr. Berdon also advised Reliant that

Ex. 20; Ex. 21.

On October 28, 2003, Dr. Berkin performed

and                REDACTED

Ex. 31 at PAR-FLH006.  That same day, Mr. Berdon advised Reliant

Ex. 22.

Also on October 28, 2003, Reliant and Abbott entered into the agreements by

which Reliant acquired the Rythmol® portfolio, including Rythmol® SR and the '588 patent.

Lerner Decl. at ¶ 9.

**C.    FLH's Pre-Litigation Representation Of Par Concerning Par's Paragraph IV
       Certification Against Rythmol® SR And The '588 Patent**

By November 3, 2004 — only a year after FLH represented Reliant in connection

with Reliant's acquisition of Rythmol® SR and the '588 patent — FLH began its representation of

11

Par with respect to Par's ANDA for a generic version of Rythmol® SR and Par's related Paragraph IV Certification regarding the '588 patent.

Current FLH partners Arthur Hoag and Dan Brown -- the same Arthur Hoag and Dan Brown who had advised Reliant -- were in charge of this pre-litigation work relating to Par's ANDA 78-540.

FLH prepared the "Detailed Statement of Factual and Legal Basis For Par's Opinion That the '588 Patent Is Invalid, Unenforceable, and Will Not Be Infringed" ("Detailed Statement") that accompanied Par's November 7, 2006 Paragraph IV Notification letter to Reliant. Ex. 25 at Tr. 49:18-50:16. That Detailed Statement asserted that: (1) the generic products described by Par's ANDA do not infringe the '588 patent; (2) the '588 patent is invalid in view of the Pich '287 and Kristen '347 patents; and (3) the '588 patent is unenforceable for failure to disclose the Pich '287 patent during prosecution. Ex. 23 at 1, 14-20.

In rendering legal advice to Par and preparing the Detailed Statement regarding the alleged non-infringement, invalidity, and unenforceability of the '588 patent, FLH partners Messrs. Hoag and Brown and scientific advisor Dr. Berkin performed substantive analyses of the Rythmol® SR formulation and the '588 patent. This works mirrors the work that was done for Reliant by the same individuals.

For example, Dr. Berkin, on behalf of Par,

REDACTED

*See* Ex. 28 at entries 5, 6, 29, 31, 41-48, 51, 67-68, 76-78.

Mr. Brown

REDACTED

patent. *See* Ex.

28 at entries 2-3, 34-37, 50, 55-56, 58-65, 83-89, 131-132, 150-153.

Mr. Hoag                           REDACTED

Ex. 27 at

1-2 (emphasis added). Mr. Hoag was the partner who billed the most time on Par's pre-litigation

challenge to Rythmol® and the '588 patent. *See id. See also* Ex. 28 at entries 2-3, 34-37, 50, 55-

56, 58-65, 85, 87-89, 125-132, 134-155.

FLH knew that its representation of Par with respect to ANDA 78-540 was

adverse to Reliant's interests. Ex. 25 at Tr. 10:2-8. FLH also knew that Reliant had not waived

conflicts with respect to adverse representations. Haug Decl. at ¶ 7, Ex. 1 (D.I. 36). Moreover,

FLH, at that time, had in its possession confidential documents and work product obtained or

generated during its representation of Reliant with respect to Reliant's acquisition of Rythmol®

SR and the '588 patent. Such documents included, at least: a draft version of the APA, Dr.

Berkin's search results and memorandum, Dr. Berkin's assignment search, and e-mails

containing legal advice Mr. Hoag had given Reliant. *See* Haug Decl. at ¶ 21 (D.I. 36), Exs. 29-

33; Ex. 34. Mr. Hoag, Mr. Brown and/or Dr. Berkin had access to each of those documents

during their pre-litigation representation of Par.

---

[7]    Propafenone is the active ingredient in Rythmol® SR.

**D.      Reliant Brings This Action And Learns That FLH, Including Messrs. Brown And Hoag, Represents Par**

Reliant received Par's notification of Paragraph IV certification and Detailed Statement on November 7, 2006. Ex. 23. As set forth above, that notification included positions by Par that the generic products described in ANDA 78-540 would not infringe Reliant's '588 patent and that the patent was invalid or unenforceable. *Id.* On December 19, 2006, Reliant filed this action. D.I. 1. Par subsequently sent a second Paragraph IV notification letter adding additional dosage strengths to its certification, and Reliant amended its complaint accordingly. D.I. 8.

Shortly after Reliant filed its Complaint, it learned that Mr. Haug of FLH intended to represent Par in this action. On December 29, 2006, Reliant, through its counsel, requested that FLH withdraw as Par's trial counsel due to FLH's substantially related representation of Reliant with respect to the purchase of the drug and the patent in suit. Ex. 35. Reliant repeated its request for withdrawal on January 25, 2007 and again on February 12, 2007. *Id.* FLH continues its representation of Par despite its ethical obligations to its former client Reliant.

On March 14, 2007, Reliant moved to disqualify FLH from representing Par in this action.[8] D.I. 18. The parties briefed the issue. D.I. 29-31, 35-46, 56-57.

On July 25, 2007, the Court issued an Order finding that the briefing on Reliant's disqualification motion, including the parties' conflicting versions regarding FLH's prior representation of Reliant, did not allow it to make findings of fact necessary to decide the motion. The Court granted Reliant the opportunity for discovery on the disqualification issue

---

[8]   At Par's request, Reliant agreed to extend the time for Par to submit its opposition to that motion, and on March 27, 2007, the parties filed a stipulation regarding a briefing schedule and hearing date. D.I. 25. On March 28, 2007, the Court struck Reliant's Motion for Disqualification with leave to re-file. Reliant re-filed its motion on May 2, 2007.

and denied Reliant's motion with leave to re-file a motion to be noticed for the Court's October

2007 Motion Day.  D.I. 66.

Reliant conducted limited discovery regarding the disqualification issue,

including interrogatories and document requests.  Reliant also conducted depositions of Messrs.

Brown, Hoag and Berkin.  Par refused Reliant's request to take the deposition of Edgar Haug.

Ex. 36.

**E.     Par's Litigation Team Has Had Access To Confidential Attorney-Client Privileged**
**Documents Generated or Obtained During FLH's Representation Of Reliant**

FLH purports to have erected "Information Wall" between the current litigation

team that represents Par in this action and Messrs. Brown, Hoag and Berkin.  *See* D.I. 35 at 6, 33.

FLH's purported Information Wall, however, was initiated on February 9, 2007 -- more than two

years *after* FLH began its representation of Par relating to its ANDA 78-540 and accompanying

Paragraph IV certification regarding Rythmol® SR and the '588 patent.  *See* Haug Decl. at ¶ 17

(D.I. 36).

FLH's purported Information Wall did not stop Messrs. Brown, Hoag, and Berkin

from providing Par with information that is directly adverse to Reliant's interests in this

litigation.  Between November 4, 2004 and February 9, 2007, Messrs. Brown and Hoag were the

only FLH partners who advised Par regarding its generic version of Rythmol® SR.  Ex. 27 at 1-2.

As set forth above, both of them, as well as Dr. Berkin, did work for Par that mirrors the nature

and scope of FLH's work for Reliant on the same drug and the same patent.  *See supra* at Section

I.C.

Moreover, Par's current FLH litigation team, consisting of at least Ed Haug,

James Stronski, John Taylor, and Omar Jabri, have had access to confidential, attorney-client

privileged information that was obtained from or generated for Reliant during the course of

15

FLH's former representation of Reliant. For example, in response to Reliant's interrogatories and document requests regarding the disqualification issue, FLH produced documents that included confidential attorney work product, such as Dr. Berkin's October 21, 2003 memorandum and patent searches. Exs. 29-33. Par's litigation team has admittedly already seen these documents. Ex. 37. Moreover, FLH has marked these documents as "Confidential" pursuant the Protective Order entered in this action, so Par would be able to see them as well.[9]

FLH has not respected Reliant's attorney-client or work product privileges with regard to work it did on Reliant's behalf. In addition to marking Reliant's confidential information or work product as merely "Confidential," and disclosing it to Par's litigation team, FLH has also claimed that the work done on Reliant's behalf by FLH scientific advisor Dr. Berkin is not privileged. Ex. 37; Ex. 25 at Tr. 35:19-36:16. In contrast, FLH claims privilege for the very same work -- patent searches, memorandums of search results, and preparation of patent charts -- that Dr. Berkin conducted on Par's behalf. *See generally* Ex. 28.

Moreover, despite the many requests from Reliant's counsel, FLH has repeatedly refused to treat the information FLH generated or obtained through its 2003 representation of Reliant as privileged and confidential. Ex. 37; Tr. 35:19-36:16.

---

[9] Pursuant to paragraphs 3 and 5 of the Protective Order, Par in-house employees Thomas Haughey, Barry Gilman, and Lawrence Brown have access to information marked by the parties as "Confidential." *See* D.I. 80.

**ARGUMENT**

## I.     LEGAL STANDARDS

Third Circuit law is clear -- a lawyer may not take a representation against a former client where the two matters are substantially related and the former client's interests are materially adverse in the current representation. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3d Cir. 1984). The Court follows the ABA Model Rules of Professional Conduct ("Model Rules"). *See id.* at 160-61; L.R. 83.6(d)(2). Model Rule 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ex. 38 (Model Rule 1.9(a)). This rule applies not only to a single attorney, but is imputed to all members of the law firm with which that attorney is associated. Ex. 39 (Model Rule 1.10).

"Matters are 'substantially related' for purposes of the Rule if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ex. 38 (Model Rule 1.9 cmt). Indeed, "knowledge of specific facts gained in a prior representation that are relevant to the matter in question will ordinarily preclude such a representation." Ex. 38 (Model Rule 1.9 cmt). Thus, this Court considers two matters to be substantially related if "it can reasonably be said that in the course of the former representation, [the] attorney might have acquired information related to the subject matter of [his] subsequent representation." *Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 730 (D. Del. 1985) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972)). Moreover, once an attorney-client relationship is

17

established, the attorney's access to confidential information is presumed. *U.S. v. Gordon*, 334
F. Supp. 2d 581, 593 (D. Del. 2004).

In the context of patent infringement cases, assisting a patentee in analyzing or
acquiring a patent is a substantially related matter to an action concerning infringement of that
patent. For example, an attorney involved in prosecuting a patent may not represent a party
adverse to a former client in a suit involving that same patent, a related patent, or even patents
relating to the same subject matter. *See, e.g., Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d
608, 612-13 (D. Md. 2002) (disqualifying firm from representing alleged infringer because an
associate was involved in prosecution of a continuation application of the patent-in-suit during
her previous employment at another firm); *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp.
1320, 1323 (N.D. Ind. 1991) (disqualifying attorney from representing alleged infringer where
attorney was involved in the prosecution of the patent-in-suit, even though the representation
ended before the prosecution was complete); *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267
(6th Cir. 1979) (disqualifying attorney from representing alleged infringer because attorney
prosecuted patents in related subject areas for plaintiffs). Similarly, a lawyer or firm may not
represent a defendant in an action where the firm or attorney formerly represented the patentee in
a related proceeding. *See, e.g., Buckley v. Airsheild Corp.*, 908 F. Supp. 299 (D. Md. 1995)
(disqualifying attorney from representing defendant in breach of contract and patent
infringement suit where attorney represented patentee in patent infringement and licensing
matters); *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994) (holding that
a law firm could not represent an alleged infringer because the firm formerly represented
patentee in appeal of patent dispute against another party).

18

II.    **FLH'S CURRENT REPRESENTATION OF PAR IS ADVERSE TO THE
       INTERESTS OF ITS FORMER CLIENT RELIANT**

There can be no question that Reliant's interests are materially adverse to Par's

interests in this patent infringement suit.  Par seeks to make a generic copy of Reliant's

proprietary and patented Rythmol® SR drug.  Pursuant to 35 U.S.C. § 271(e), Reliant has

accused Par of infringing the '588 patent.  Par, in turn, has filed defenses and counterclaims

alleging that Par does not infringe the patent, and that the patent is invalid and unenforceable due

to inequitable conduct.  *See Buckley*, 908 F. Supp. at 304 (assuming that, in a patent infringement

action, the patentee's and defendant's interests are materially adverse).

This adverse relationship between Reliant and Par regarding Rythmol® SR and

the '588 patent was known to FLH when it took on its pre-litigation representation of Par.  Mr.

Hoag admitted at his deposition that when he began work for Par regarding Par's generic version

of Rythmol®, he understood that such work was adverse to Reliant's interests.  Ex. 25 at Tr.

10:2-8.

Moreover, Reliant did not waive conflicts with respect to FLH's representation of

Par in this matter -- or any other matter adverse to Reliant's interests.  Indeed, when Reliant

transferred its pending matters from FLH in the Spring of 2004, Mr. Haug acknowledged that

FLH had been approached about representing other companies in matters adverse to Reliant and

requested a prospective waiver from Reliant to allow FLH to take on such representations.  *See*

Haug Decl. at Ex 1 (D.I. 36).  Reliant never waived any conflicts.  Supp. Lerner Decl. at ¶ 16.

III.   **FLH's CURRENT REPRESENTATION OF PAR IS SUBSTANTIALLY
       RELATED TO ITS FORMER REPRESENTATION OF RELIANT**

FLH's representation of Reliant in connection with Reliant's acquisition of

Rythmol® SR and the '588 patent is substantially related to FLH's representation of Par by

19

which Par seeks to market a generic version of Rythmol® SR and invalidate and render unenforceable the '588 patent.

### A.    The Nature And Scope Of FLH's Subsequent Representations Of Par And Reliant Are The Same

During its 2003 representation of Reliant, FLH advised Reliant concerning key aspects of Reliant's acquisition of Rythmol® and the '588 patent.  FLH advised Reliant concerning the validity, scope, potential infringement, and potential design-around of the '588 patent.  FLH also advised Reliant regarding the patent assignment agreement and asset purchase agreement by which Reliant obtained the rights to the patent and drug at issue in this litigation. *See supra* at pp. 5-11.  FLH advised Reliant of the provisions of the Hatch-Waxman Act under which a generic might challenge the '588 patent, the potential market exclusivity Rythmol® was likely to enjoy, and the ability of Reliant to obtain a 30-month stay of a generic applicant's ANDA. Ex. 8; Ex. 10; Ex. 11; Ex. 12; Lerner Decl. at ¶ 15.  FLH further advised Reliant of the

REDACTED

in event of litigation such as this one. Ex. 13; Ex. 18; Exs. 18-21.  FLH, since at least November 2004, has been advising -- and continues to advise -- Par regarding these very same issues.

FLH advised Reliant concerning the Hatch-Waxman Act under which this lawsuit arises.  In particular, FLH advised Reliant as to l

REDACTED

Ex. 12; Ex. 13; Exs. 18-21.  FLH subsequently advised Par on how to challenge Reliant's Orange Book-listed '588 patent, and drafted the notice informing Reliant of that challenge. Ex. 27 at 1-5.

20

FLH advised Reliant concerning the nature and scope of the '588 patent, including the potential of a generic competitor to design-around the patent. FLH advised Reliant that              REDACTED

Ex. 12. FLH is now taking the position for Par, adverse to Reliant, that Par designed-around and does not infringe the '588 patent. *See, e.g.*, D.I. 11 at 12-15.

FLH advised Reliant concerning the validity of the '588 patent. Lerner Decl. at ¶ 12, Suppl. Lerner Decl at ¶ 2. FLH is now taking the position for Par, adverse to Reliant, that the '588 patent is invalid. *See, e.g.*, D.I. 11 at 18.

FLH conducted patent searches on Reliant's behalf in connection with Reliant's acquisition of the drug and patent in suit. Those patent searches turned up several prior art references that FLH advised Reliant              REDACTED              FLH is now taking the position for Par, adverse to Reliant, that two of those patents -- the Pich '287 patent and the Kristen '347 patent -- render the '588 patent invalid. *See* Ex. 23 at 1, 18-19.

FLH advised Reliant to              REDACTED

Ex. 16. FLH is now taking the position for Par, adverse to Reliant, that the duty of disclosure was not met, and that the '588 patent is therefore unenforceable. D.I. 11 at 14-18, 21-25. Indeed, FLH is now taking the position for Par, adverse to Reliant, that the Pich '287 patent -- which FLH identified in a patent search for Reliant and advised              REDACTED              is material art that was not disclosed to the Patent Office. *See* Ex. 23 at 19-20; D.I. 11 at 14-18, 22-25, Ex. 30 at PAR-FLH085; Ex. 14.

21

Accordingly, FLH's subsequent representations of Reliant and Par are substantially related. Indeed, they are mirror images of one another. FLH provided Reliant with advice concerning the nature, scope, potential infringement and design-around, validity, and enforceability of the '588 patent. FLH is now taking the position for Par, adverse to Reliant, that Par designed-around and does not infringe the '588 patent and that the patent is invalid and unenforceable.

**B.    The Same FLH Attorneys Who Represented Reliant Also Represented Par Regarding The Same Legal Issues**

Not only has FLH violated its ethical obligations to Reliant, but the FLH attorneys and agents who advised Reliant concerning the acquisition of Rythmol® SR and the validity, potential design-around and potential litigation of the '588 patent are the same attorneys and agents who advised Par on these very same issues.

For example, Mr. Hoag advised Reliant concerning the patent assignment and asset purchase agreement by which Reliant obtained the rights to the '588 patent. That advice included, for example, that Reliant                                REDACTED

Ex. 16. Mr. Hoag also advised that Reliant

                                                                    *Id.* Mr. Hoag

                                REDACTED
further advised that .

*Id.* Mr. Hoag's legal work for Par touches on these very same issues. For example, Mr. Hoag was the FLH partner who supervised FLH's pre-litigation preparation of the Detailed Statement in which Par first informed Reliant of the alleged invalidity and unenforceability of the '588 patent. Ex. 27 at 1-2; Ex. 25 at Tr. 50:6-16. Mr. Hoag also advised Par concerning this litigation until at least January 26, 2007. Ex. 28 at entry 99.

22

Mr. Brown also performed the same work for both Par and Reliant -- including reviewing the '588 patent and file history -- and advised both parties concerning REDACTED                    Ex. 27 at 1-2; Ex. 8, Ex.11.  Like Mr. Hoag, Mr. Brown also acted as Par's litigation counsel until February 6, 2007.  Ex. 28 at entry 110.

Dr. Berkin performed exactly the same type of work for both Reliant and Par. During FLH's representation of Reliant in 2003, Dr. Berkin performed patent searches, prepared a memorandum of search results, and prepared a patent chart.  *See, e.g.*, Ex. 29; Ex. 30.  Dr. Berkin, through his patent searches, identified the Pich '287 and Kristen '347 patents and advised Mr. Berdon and Reliant that          REDACTED          · Ex. 30 at PAR-FLH085, PAR-FLH086.  Dr. Berkin, during his subsequent pre-litigation representation of Par,

REDACTED

Ex. 27 at 2.  Par, through FLH, now alleges that the Pich '287 and Kristen '347 patents render the '588 patent invalid and unenforceable.  Ex. 23; D.I. 11 at 14-18, 22-25.

**C.     FLH Has Access To Reliant's Confidential And Privileged Information Concerning The Same Subject Matter As FLH's Representation Of Par**

During the course of FLH's former representation of Reliant, Reliant exchanged confidences and attorney-client privileged communications with FLH that have direct bearing on the issues in this lawsuit.

Reliant provided FLH with confidential documents in connection with Reliant's request for legal advice concerning its acquisition of Rythmol® and the '588 patent.  The Confidential Memo, obtained by Reliant pursuant to the CDA with Abbott, contained information regarding the patent protection of Rythmol® SR, the potential of a competitor to design around the drug and the patent, the projected market for the drug, expected market

23

exclusivities and the structure of the acquisition deal Abbott was offering. Lerner Decl. at ¶ 11; Ex. 2; Ex. 5. This information, particularly the potential design-around, projected market, and expected market exclusivities, was and still is proprietary information that a potential generic competitor (1) would not have access to in the ordinary course of business, and (2) could use as key decision-making information in deciding whether to challenge Reliant's Rythmol® SR drug and the '588 patent.

Similarly, the confidential Diligence Presentation that Reliant V.P. of Scientific Affairs Mr. Bobotas provided to FLH contained key information that a potential generic competitor could use to copy or design around Rythmol® and challenge the patent. That memo contains, for example, proprietary and confidential information concerning the composition of the drug and the step-by-step manufacturing process Abbott used to make Rythmol® SR. [10] The Diligence Presentation also contains a detailed "Development History," including a timeline, and sets forth the "original idea" for Rythmol® SR. Ex. 7 at RAC00151-53. This document has information relevant to the development and patentability of the inventions claimed in the '588 patent.

Reliant also provided FLH with many other confidences regarding Rythmol® and the '588 patent. FLH was privy to, and in fact revised, the patent assignment and asset purchase agreements by which Reliant purchased the drug and the patent. Ex. 16, Ex.17. FLH also had privileged information concerning                    REDACTED

---

[10]  Thus, the Diligence Presentation could be used as a "blueprint" for a generic manufacturer to copy, or design around, the Rythmol® SR formulation and '588 patent. *See Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 730 (D. Del. 1985).

24

REDACTED                              *See, e.g.* Ex. 5; Ex. 17; Ex.

19. FLH was also, of course, a party to the privileged legal advice it gave to Reliant concerning

the validity, scope, potential infringement and design-around of the '588 patent.

FLH had knowledge of Reliant's confidential documents and information during

its pre-litigation representation of Par. Reliant's confidential information is directly related to

and could have informed FLH's preparation of Par's Detailed Statement setting forth Par's

positions concerning its alleged non-infringement, invalidity and unenforceability of the '588

patent.

**D.    FLH's Own Sworn Declarations Confirm The Substantial Relationship Between Its Work For Reliant And Par**

Despite the overwhelming contemporaneous documentary evidence to the

contrary, FLH claims that it did not represent Reliant with respect to the '588 patent and

Rythmol®. Haug Decl. at ¶ 3 (D.I. 36). The self-serving nature of this position is evident from

the face of declarations submitted by eight current FLH partners. *See* D.I. 36-46. Although Par

claims to have "affirmative proof" that FLH did no work in relation to Reliant's Rythmol®

purchase (*see* D.I. 35 at 4), such alleged proof consists of nothing more than FLH's own sloppy

timekeeping records and the convenient lack of memory of its own attorneys and scientific

advisors.[12] FLH's "proof" fails in the face of the documentary record showing what they did.

Moreover, FLH has not, and cannot, offer one shred of evidence that contradicts Reliant's

assertions, supported by the declarations of its in-house attorney and contemporaneous e-mails,

_____

REDACTED                                                REDACTED

[11]  For example,                                    which FLH advised Reliant
       Ex. 14. Notably, FLH now, on Par's behalf, alleges that this patent renders the '588 patent invalid.
       Ex. 23 at 18-20.

[12]  For example, Par and FLH suggest, based on FLH's billing records, that FLH did not do any work for Reliant
       on the Rythmol® matter until September 29, 2003 (D.I. 35 at 6-7), even though the contemporaneous e-mails
       show that FLH was working on the matter in June, July, and early September. Suppl. Lerner Decl. at ¶¶ 3-6.

that FLH counseled Reliant regarding the validity, enforceability, infringement and potential design around of the '588 patent and the product at issue in this action.

For example, Par claims that "FLH did not provide an opinion as to whether the patents that Reliant had agreed to purchase were valid, enforceable, or easy to design around. FLH performed no evaluation of the patent acquired, and received none of the detailed information regarding the patent (such as their file histories) necessary to competently evaluate such patents or to form a conclusion as to the validity, enforceability or scope of such patents." D. I. 35 at 26. This assertion is contradicted not only by Reliant's e-mails demonstrating otherwise, but also by the sworn declarations of FLH's own lawyers and advisors. [13]

For example, Mr. Brown submitted a sworn statement of his belief that he has "never met or spoken to Mr. Lerner or communicated with him or anyone else at Reliant orally or by e-mail." Brown Decl. at ¶ 5 (D.I. 41).[14] That statement, however, is contradicted by Par's own lead counsel, Edgar Haug. In his declaration, Mr. Haug references a conversation he had with Mr. Berdon to determine whether FLH provided Reliant with an opinion about the '588 patent. Haug Decl. at ¶ 23 (D.I. 36). Mr. Haug's sworn declaration recounts a telephone conversation between Mr. Berdon, Mr. Brown and Reliant's in-house counsel, Michael Lerner, during which the three discussed "potential infringement/design around of a patent being acquired by Reliant." Haug Decl at ¶ 23 (D.I. 36). Mr. Haug's statement flatly contradicts Par's assertion that FLH never advised Reliant concerning the potential infringement or design-around

---

[13] Notably, Par's assertion, and FLH's admission, that FLH's work with respect to Reliant's purchase of the '588 patent was not competent goes to whether FLH committed malpractice with respect to its former representation of Reliant, not to whether that representation is substantially related to FLH's representation of Par in this action.

[14] "Brown Decl.," as used herein, refers to the Declaration of Daniel Brown In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief. D.I. 41.

of the '588 patent, as well as Mr. Brown's statement that he was never involved in such work for Reliant. Moreover, the accuracy of Mr. Brown's statement is flatly contradicted by an e-mail communication between Mr. Berdon, Mr. Lerner and Mr. Brown that reflects Mr. Brown's work on the file history of the '588 patent, as well as the contemporaneous reference to the telephone call in an e-mail from Mr. Berdon to Mr. Lerner. Suppl. Lerner Decl. at ¶ 5; Ex. 8; Ex. 11. In short, Mr. Brown's statement that he never did any work for Reliant is simply wrong. [15]

Similarly, Par's assertions that FLH did not advise Reliant concerning the potential infringement or design-around of the '588 patent, and did not review the '588 patent file history, are contradicted by FLH's own current and contemporaneous statements.

The declaration of FLH scientific advisor Ali Berkin further contradicts Par's and FLH's assertions that FLH did not advise Reliant concerning the validity, enforceability or potential infringement of the '588 patent. For example, a November 11, 2003 invoice from FLH to Reliant demonstrates that Dr. Berkin performed a "patent investigation into propafenone," a prior art patent search, and an "analysis of patents and technology." Haug Decl. at Ex. 3 (D.I. 36). Dr. Berkin also "completed a memo regarding analysis of competitors [sic] patents," performed "legal research" and prepared a "due diligence memo." Haug Decl. at Ex. 3 (D.I. 36). Dr. Berkin's declaration, although attempting to downplay the extent and nature of the work done, confirms that he conducted patent searches and prepared memos concerning propafenone,

---

[15]  Whether or not Mr. Brown billed Reliant for the work he performed regarding the file history of the '588 patent or for the conversation regarding the potential infringement and design-around of that patent is irrelevant to the determination that his work was substantially related to FLH's current representation of Par. Indeed, Mr. Brown admitted that he sometimes waits a day, or even a week, before recording his billable time. Ex. 26 at Tr. 9:20-12:13. FLH should not be permitted to avoid its ethical duties to its former client based merely upon its own inadequate timekeeping and retention policies.

the active ingredient of Rythmol®, at Mr. Berdon's direction.  Berkin Decl. at ¶ 4-8 (D.I. 40).[16]

Dr. Berkin further swears that he prepared a chart:


REDACTED


Berkin Decl. at ¶ 9 (emphasis in original) (D.I. 40).  The November invoice also

demonstrates that Mr. Berdon reviewed the "Rythmol® patent research" done by Dr. Berkin.

Haug Decl. at Ex. 3 (D.I. 36).  Mr. Berdon then advised Reliant concerning the Rythmol®

products with respect to the '287 patent and other prior art patents.  Suppl. Lerner Decl. at ¶ 9.

Thus, Par's and FLH's assertions that FLH did not advise Reliant concerning the validity or

enforceability of the '588 patent are incorrect.  And now, in this action, Par and FLH have taken

exactly the opposite position on this substantially related work, claiming that the Pich '287

patent is relevant prior art that renders the '588 patent invalid and unenforceable.  *See* D.I. 30 at

5-6.

In addition to his patent searches and related activities, Dr. Berkin also admits in

his declaration that he performed a search.                        REDACTED

Mr. Berdon's direction.  Berkin Decl. at ¶ 6 (D.I. 40).  As evidenced by

the November 2003 invoice, Mr. Berdon reviewed and/or discussed Mr. Berkin's work.  Haug

Decl at Ex. 3 (D.I. 36).  Mr. Berdon subsequently advised Reliant concerning patent exclusivity

and other regulatory issues, including the                      REDACTED

Suppl. Lerner Decl. ¶ 7.

---

[16] "Berkin Decl.," as used herein, refers to the Declaration of Ali Berkin, Ph.D. In Support Of Par Pharmaceutical, Inc.'s Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify Frommer Lawrence & Haug LLP, submitted with Par's Opposition brief.  D.I. 40.

28

FLH's declarations and supporting documents further indicate that FLH advised Reliant concerning the draft Asset Purchase Agreement[17] and draft patent assignment agreement between Abbott and Reliant by which Reliant acquired the rights to the '588 patent and Rythmol® SR product. Lerner Decl. at ¶ 10, Suppl. Lerner Decl. at ¶¶ 10-11. For example, Arthur Hoag, a current FLH partner, admits that he advised Reliant concerning a grant-back clause in the agreement prior to its execution by Reliant. Hoag Decl. at ¶ 5. Par's and FLH's position that this review and advice did not constitute confidential or attorney-client privileged information defies logic -- an attorney's review of and comment on a draft agreement at the request of a client seeking legal advice concerning the terms of that agreement is indisputably confidential and privileged. Indeed, at his deposition, Mr. Hoag admitted that at the time he reviewed Reliant's documents he presumed they were confidential and treated them as such. Ex. 25 at Tr. 24:10-16. Thus, Par's and FLH's assertions that FLH did not receive and has no current knowledge regarding Reliant's confidential information is incorrect.

Moreover, FLH's representation that it does not currently have in its possession any confidential or attorney-client privileged information is contradicted by its own declarations. Indeed, although Par asserts that there is "affirmative proof that no Reliant confidential information remains at FLH" (Par Opp. at 4), the declaration of its lead trial counsel, Mr. Haug, directly contradicts this statement. Beyond the attorney-client privileged and confidential information known by Mr. Brown and Mr. Hoag, FLH is in possession of several of Reliant's confidential, privileged and work product documents, including at least: the confidential draft APA between Abbott and Reliant for the transfer of patent rights to the '588 patent; results of a prior art search conducted for relevant prior art to the Rythmol® propafenone products; a result

---

[17] Notably, although FLH claims not to have any relevant confidential Reliant information in its files, it has acknowledged that it located a copy of the confidential draft Asset Purchase Agreement.

of a search regarding Orange Book listings of the patent and product in suit; Dr. Berkin's memo

analyzing the relevance of prior art patents (including the Pich '287 and Kristen '347 patents) to

the Rythmol® products, and e-mails reflecting legal advice given to Reliant. *See* Haug Decl. at ¶

21 (D.I. 36); D.I. 35 at 13-14; AH01-05. Notably, although FLH purports to have erected an

"Information Wall" between Par's litigation team and those previously involved in advising

Reliant concerning Rythmol®, Par's litigation team has access to those documents. *See* Haug

Decl. at ¶ 21; Ex. 37.

## IV.    FLH CANNOT CLEANSE ITSELF OF ITS ETHICAL CONFLICT BY ERECTING A BELATED AND INEFFECTIVE "INFORMATION WALL"

FLH has represented to Reliant, and to this Court, that it has erected an

"Information Wall" to screen Messrs. Hoag, Brown and Berkin from Par's current litigation

team. Such an Information Wall has no ability to purge FLH's conflict of interest here. More

importantly, FLH's conduct to date demonstrates that no such wall exists. For, although FLH

has apparently screened Messrs. Hoag, Brown and Berkin from communicating with Par's

litigation team (albeit two years too late), FLH has not taken any precautions regarding the

confidential or privileged information given to or generated by FLH during its former attorney-

client relationship with Reliant. Accordingly, Par's litigation team has had ready access to the

work FLH did on Reliant's behalf.

In Par's and FLH's previous opposition to Reliant's motion for disqualification,

Par and FLH argued that FLH's representation of Par was permitted by ABA Model Rule 1.10.

That rule sets forth the rare circumstance in which a firm may take a representation adverse to its

former client:

> When a lawyer has terminated an association with a firm, the firm
> is not prohibited from thereafter representing a person with
> interests materially adverse to those of a client represented by the

30

> formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

This narrow circumstance does not apply here.

FLH's previous representation of Reliant is substantially related to its current representation of Par -- FLH advised both Reliant and Par concerning the issues of infringement, validity and enforceability of the '588 patent, as well as other related substantive issues. And, Reliant provided confidential and privileged information to FLH during the course of the previous representation. Those confidences were imputed to every lawyer at FLH at that time, and those lawyers are still imputed with that knowledge today. Moreover, current FLH partners and agents Messrs. Hoag, Brown and Berkin have direct knowledge of Reliant's confidential and privileged communications.

FLH's purported Information Wall is simply a blatant attempt to cleanse itself of the ethical conflict that FLH created when it took on its representation of Par. FLH argues that no current lawyer at FLH has knowledge of Reliant's information because any lawyer that may have had such knowledge was screened from the litigation team. D.I. 35 at 32-33. But a screen may only be erected to prevent a new lawyer entering a firm from imputing his or her knowledge to a firm without any previous knowledge. It may not be used to screen lawyers in a firm that already has knowledge from each other. *Queen's Quest Condominium Council v. Sea Coast Builders, Inc.*, No. 89C-OC7, 1992 Del. Super. LEXIS 101, at *7 (Mar. 30, 1992)(A screening mechanism "is a prospective procedure to be implemented when the disqualifying attorney first

31

arrives at his or her new firm. It is not to be implemented later after any potential damages or appearances of impropriety have had time to develop.").

Here, *FLH* is the firm that formerly represented Reliant, *FLH* attorneys have direct and imputed knowledge concerning Reliant's confidences, and *FLH* is attempting to wall its own attorneys from each other. Such a "wall" is impermissible. *See INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1211 n.8 (E.D. Pa. 1984)("When members of a single firm represent opposing parties at different times, 'Chinese Walls' have, as a general matter, not been sufficient to avoid disqualification."); *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383 (N.D. Cal. 1992) (holding that even though an attorney who had represented the former client was no longer with the firm, the firm was precluded from representing the plaintiff in a patent infringement action against the former client because of a conclusive presumption that the attorney had shared client confidences during his time at the firm); *Amgen, Inc.*, 160 F.R.D. at 141 ("[A] screen may be used when a lawyer changes jobs and the new firm represents an adversary of a client of the former firm, but...the *same firm* cannot switch sides on a substantially related matter, no matter what screens it sets up."). Thus, FLH may not cure its impropriety by attempting to erect a screen between the lawyers in its own firm.

Even if FLH could legally purge its conflict in this way, it has not done so here. FLH erected its purported Information Wall *more than two years after* FLH began its pre-litigation representation of Par. During that time, Arthur Hoag and Dan Brown -- the very same lawyers who advised Reliant -- were the only partners who worked on Par's matter relating to Rythmol® SR and the '588 patent. FLH scientific advisor Ali Berkin also worked for both Reliant and Par regarding the substantially related matters. During those two years, Messrs. Hoag, Brown and Berkin had access to Reliant's confidential information given to or generated

32

by FLH in the course of the former representation. Moreover, prior to the purported Information Wall, Messrs. Hoag and Brown were the partners in charge of Par's challenge to Reliant's '588 patent.

FLH's argument that no current lawyer at FLH has knowledge of Reliant's confidential or attorney-client information is based on the fallacy that *none* of the work done by FLH on Reliant's behalf or given to FLH by Reliant is confidential or privileged. Thus, Reliant's confidential and privileged information -- such as the draft asset purchase agreement and patent assignment given to FLH for the purposes of rendering legal advice and the "Patent Analysis" Memo and chart generated by Dr. Berkin in the course of rendering legal advice to Reliant -- has been shared by FLH with Par's litigation team.[18] Indeed, Par's counsel has rejected Reliant's repeated attempts to respect Reliant's attorney-client privilege by not disclosing such information to Par's litigation team. *See* Ex. 37.

## V.    FLH SHOULD BE DISQUALIFIED AS PAR'S COUNSEL

The Third Circuit has set forth three primary purposes of the rule against representation of interests adverse to a former client: (1) "to prevent even the potential that a former client's confidences and secrets may be used against him," (2) to maintain public confidence in the integrity of the bar, and (3) "to protect a client's right to the loyalty of its attorney in the matter for which the attorney is retained." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d at 162. Disqualification of FLH is necessary to safeguard each of these policies.

Given the substantial relationship between FLH's former representation of Reliant and its current representation of Par, there is considerable risk that FLH will use, if it has not already used, Reliant's attorney-client and confidential information to its detriment. In

_____

[18]   Notably, FLH and Par claim privilege for the very same type of work Dr. Berkin did on Par's behalf, including conducting patent searches and reviewing the proposed Par formulation, among other things.

33

particular, FLH formerly advised Reliant on the validity, enforceability, and potential infringement and design-around of the '588 patent. FLH has already advised, is currently advising, and (if not disqualified) will continue to advise Par on how to allegedly design around, avoid infringement, invalidate and/or render unenforceable that very same patent.[19] FLH has possession of work product created on Reliant's behalf, including patent searches and analysis concerning the very same art that Par now alleges renders the '588 patent invalid and unenforceable.

Moreover, FLH should be disqualified because it has violated its duty of loyalty to Reliant. Par stated, in its previous briefing, that it has "affirmative proof" that no confidences were exchanged between Reliant and FLH. D.I. 35 at 13-14. Par is simply wrong. Contemporaneous e-mails demonstrate that Reliant shared confidential and privileged information with FLH. The purported lack of memory of FLH attorneys is not "affirmative proof." Indeed, FLH admits that it has located at least four Reliant privileged and/or work product documents still present in its firm files. Haug Decl. at ¶ 21. In addition, FLH produced additional documents given to or generated by Reliant in response to Reliant's requests. FLH has already shared this confidential and privileged information with Par's litigation team. Ex. 37. Reliant's repeated requests that FLH treat the information in FLH's possession from its representation of Reliant as privileged has been met with a flat out refusal to do so. Ex. 37.

Additionally, the court should invoke disqualification as a prophylactic measure because "if attorneys know they will be disqualified even after lengthy representation, they will

---

[19] Given the close relationship between FLH's advice to Reliant concerning these matters and its contrary advice to FLH concerning the very same matters, should the Court grant Reliant's motion, Reliant requests that FLH's work product on behalf of Par not be transferred to Par's new counsel. *See, e.g. EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459 (Fed. Cir. 1984) (upholding district court decision that limited turnover of work product to new attorneys from date before confidences were shared).

34

be more likely to check carefully to avoid conflicts before accepting representation." *Donohoe v. Consol. Operating & Prod. Corp.*, 691 F. Supp. 109, 119 (N.D. Ill. 1988)(citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)). Here, FLH represented Reliant for two years, in at least 11 matters concerning at least 7 different drugs. FLH took on its representation of Par knowing that Par's ANDA a generic for Rythmol® and Paragraph IV certification were adverse to Reliant's interests. FLH also knew, or should have known, that Reliant did not waive conflicts as to Par. Moreover, although Mr. Hoag purports to have conducted a conflicts search, he also admitted that at the time that search was conducted, his personal e-mail archive files contained several to or from Reliant with the subject line "Rythmol." Ex. 25 at Tr. 10:9-15:6; Ex. 34.

Given FLH's casual treatment of Reliant's privileged and confidential information, the only way to ensure that Reliant's information is not used to its detriment is disqualification of FLH as Par's counsel in this matter. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d at 161-62.

Moreover, even when weighed against Par's right to counsel of its choice, the facts favor disqualification of FLH. Reliant informed FLH of its intent to seek disqualification ten days after it filed suit and learned of the adverse representation. Accordingly, any potential prejudice to Par is minimal and is of Par's own making in choosing to maintain FLH as its trial counsel. *See id.* at 162 (holding that, although disqualification would increase costs for the current client, it would be unfair for counsel to use information against the former client regarding the strengths and weaknesses of the case gained from the prior representation).

In contrast, FLH's disqualification would protect Reliant's confidential information from being used to its detriment, ensure that FLH remains loyal to its former representation, and safeguard the integrity of the proceedings before this Court.

## CONCLUSION

For all of the foregoing reasons, Reliant requests that the Court disqualify FLH from representing Par in connection with this litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

September 10, 2007

36

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor

I further certify that I caused to be served copies of the foregoing document on

September 10, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                          *VIA ELECTRONIC MAIL*
YOUNG, CONAWAY, STARGATT & TAYLOR                   *AND HAND DELIVERY*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Edgar H. Haug, Esquire                              *VIA ELECTRONIC MAIL*
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151

John B. Harris, Esquire                             *VIA ELECTRONIC MAIL*
STILLMAN, FRIEDMAN & SHECTMAN, P.C.
425 Park Avenue
New York, NY 10022

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2007 I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

September 17, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                                 *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                                   *and HAND DELIVERY*
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Edgar H. Haug, Esquire                                     *VIA ELECTRONIC MAIL*
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)