## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC., )
                            )
        Plaintiff,           )
                            )      Civil Action No. 06-774-JJF
      v.                  )
                            )      **REDACTED – PUBLIC VERSION**
PAR PHARMACEUTICAL, INC.    )
                            )
        Defendant.       )
                            )

## DECLARATION OF SHANE CORTESI
## IN SUPPORT OF RELIANT PHARMACEUTICALS, INC.'S MOTION FOR
## DISQUALIFICATION OF FROMMER LAWRENCE & HAUG LLP

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

Originally Filed: September 10, 2007
Redacted Version Filed: September 17, 2007

PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-774-JJF |
| | ) | Confidential: Filed Under Seal |
| PAR PHARMACEUTICAL, INC. | ) | |
| Defendant. | ) | |

**DECLARATION OF SHANE CORTESI
IN SUPPORT OF RELIANT PHARMACEUTICALS, INC.'S MOTION FOR
DISQUALIFICATION OF FROMMER LAWRENCE & HAUG LLP**

I am an associate at Kirkland & Ellis LLP, counsel for Reliant Pharmaceuticals,
Inc. ("Reliant"). I submit this declaration in support of Reliant Pharmaceuticals, Inc.'s Opening
Brief In Support Of Its Renewed Motion For Disqualification Of Frommer Lawrence & Haug
LLP.

1.    Attached as Exhibit 1 is a true and correct copy of Stipulation Of Non-
Waiver And Confidentiality Agreement, dated August 28, 2007.

2.    Attached as Exhibit 2 is a true and correct copy of a June 27, 2003 email
string between M. Lerner and A. Berdon with attachment, Bates numbered RAC 0001-0013.

3.    Attached as Exhibit 3 is a true and correct copy of a document titled
"Abbott Laboratories Rythmol Due Diligence", Bates numbered REL004681, marked as
Plaintiff's Deposition Exhibit 24.

4.    Attached as Exhibit 4 is a true and correct copy of a July 11, 2003 email
string between A. Berdon and M. Lerner, Bates numbered RAC 0014-0016.

5.    Attached as Exhibit 5 is a true and correct copy of a July 11, 2003 email string between A. Berdon and M. Lerner with attachment, Bates numbered RAC 0046-0112, marked as Plaintiff's Deposition Exhibit 16.

6.    Attached as Exhibit 6 is a true and correct copy of a July 17, 2003 email string between M. Lerner and A. Berdon, Bates numbered RAC 0113-0144.

7.    Attached as Exhibit 7 is a true and correct copy of a July 18, 2003 email from G. Bobotas to A. Berdon with attachment, Bates numbered RAC 0145-0163.

8.    Attached as Exhibit 8 is a true and correct copy of a July 21, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0017-0018, marked as Plaintiff's Deposition Exhibit 10.

9.    Attached as Exhibit 9 is a true and correct copy of a July 21, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0019-0020.

10.    Attached as Exhibit 10 is a true and correct copy of a July 21, 2003 email from A. Berdon to M. Lerner, Bates numbered RAC 0021.

11.    Attached as Exhibit 11 is a true and correct copy of September 12, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0022-0024, marked as Plaintiff's Deposition Exhibit 9.

12.    Attached as Exhibit 12 is a true and correct copy of a September 29, 2003 email string between A. Berdon, J. Misner, S. Aigner, and M. Lerner, Bates numbered RAC 0025-0027.

13.    Attached as Exhibit 13 is a true and correct copy of a correct copy of a October 21, 2003 email from A. Berdon to M. Lerner, Bates numbered RAC 0028.

2

14.    Attached as Exhibit 14 is a true and correct copy of an October 21, 2003 email from A. Berdon to M. Lerner, Bates numbered RAC 0034-0035, marked as Plaintiff's Deposition Exhibit 17.

15.    Attached as Exhibit 15 is a true and correct copy of an October 21, 2003 email string between A. Berdon, M. Lerner, and A. Hoag, Bates numbered RAC 0036-0037, marked as Plaintiff's Deposition Exhibit 25.

16.    Attached as Exhibit 16 is a true and correct copy of an October 21, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0041-0042, marked as Plaintiff's Deposition Exhibit 27.

17.    Attached as Exhibit 17 is a true and correct copy of an October 21, 2003 email string between A. Berdon and M. Lerner with attachment, Bates numbered RAC 0038-0040.

18.    Attached as Exhibit 18 is a true and correct copy of an October 22, 2003 email from A. Berdon to M. Lerner, Bates numbered RAC 0043.

19.    Attached as Exhibit 19 is a true and correct copy of an October 22, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0164-165.

20.    Attached as Exhibit 20 is a true and correct copy of an October 22, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0166-168.

21.    Attached as Exhibit 21 is a true and correct copy of an October 22, 2003 email string between A. Berdon and M. Lerner, Bates numbered RAC 0169-171.

22.    Attached as Exhibit 22 is a true and correct copy of an October 28, 2003 email string between A. Berdon and A. Berkin with attachment, Bates numbered RAC 0029-0033, marked as Plaintiff's Deposition Exhibit 20.

3

23.     Attached as Exhibit 23 is a true and correct copy of a November 7, 2006 letter from Steven I. Engel of Par Pharmaceutical, Inc. ("Par") to Dr. Ernest Mario of Reliant.

24.     Attached as Exhibit 24 is a true and correct copy of excerpts from the transcript of the August 29, 2007 deposition of A. Berkin.

25.     Attached as Exhibit 25 is a true and correct copy of excerpts from the transcript of the September 7, 2007 deposition of A. Hoag.

26.     Attached as Exhibit 26 is a true and correct copy of excerpts from the transcript of the August 29, 2007 deposition of D. Brown.

27.     Attached as Exhibit 27 is a true and correct copy of Defendant's Objections And Responses To Plaintiff's Interrogatories Concerning Frommer Lawrence & Haug LLP's Representation Of Par In This Action, dated August 21, 2007, marked as Plaintiff's Deposition Exhibit 1.

28.     Attached as Exhibit 28 is a true and correct copy of Par's Privileged Document Log.

29.     Attached as Exhibit 29 is a true and correct copy of selected pages of a document titled "STN Columbus", Bates numbered PAR-FLH016, PAR-FLH062-063, and PAR-FLH069, marked as Plaintiff's Deposition Exhibit 13.

30.     Attached as Exhibit 30 is a true and correct copy of a October 21, 2003 memorandum from A. Berkin to A. Berdon, Bates numbered PAR-FLH076-089, marked as Plaintiff's Deposition Exhibit 15.

31.     Attached as Exhibit 31 is a true and correct copy of a document titled "Invoice No. 41290", dated November 11, 2003, Bates numbered PAR-FLH006-009, marked as Plaintiff's Deposition Exhibit 5.

4

32.    Attached as Exhibit 32 is a true and correct copy of a document titled "Exhibit D. Assignment of Patents", Bates numbered PAR-FLH010-011, marked as Plaintiff's Deposition Exhibit 26.

33.    Attached as Exhibit 33 is a true and correct copy of a document titled "Welcome to DialogueClassic Web(tm)", Bates numbered PAR-FLH012-015, marked as Plaintiff's Deposition Exhibit 19.

34.    Attached as Exhibit 34 is a true and correct copy of an October 21, 2003 email with subject line "Rythmol"; an October 21, 2003 email with subject line "Fwd: Rythmol" from A. Berdon to A. Hoag; an October 21, 2003 email with subject line "Re: Rythmol Patent assignment" from A. Berdon to A. Hoag; and an October 21, 2003 email with subject line REDACTED from A. Berdon to A. Hoag, Bates numbered AH-01-05, marked as Plaintiff's Deposition Exhibit 22.

35.    Attached as Exhibit 35 are a true and correct copy of a December 29, 2006 letter from G. Flattmann to E. Haug; a January 25, 2007 letter from G. Flattmann to E. Haug; and a February 12, 2007 letter from G. Flattmann to E. Haug.

36.    Attached as Exhibit 36 is a true and correct copy of an August 28, 2007 letter from J. Taylor to W. Vuk.

37.    Attached as Exhibit 37 are a true and correct copy of an August 30, 2007 email from J. Harris to W. Vuk; an August 30, 2007 email string between J. Harris and W. Vuk; an August 30, 2007 letter from W. Vuk to J. Harris; and an August 31, 2007 email from J. Harris to W. Vuk.

38.    Attached as Exhibit 38 is a true and correct copy of ABA Model Rule Of Professional Conduct 1.9, Duties to Former Clients, and ABA Comments to that Rule.

5

39.    Attached as Exhibit 39 is a true and correct copy of ABA Model Rule Of

Professional Conduct 1.10, Duties to Former Clients, and ABA Comments to that Rule.

I declare under penalty of perjury that the foregoing is true and correct.

Shane Cortesi

September 10, 2007
New York, New York.

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Josy W. Ingersoll, Esquire
> Young, Conaway, Stargatt & Taylor

I further certify that I caused to be served copies of the foregoing document on

September 10, 2007 upon the following in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>YOUNG, CONAWAY, STARGATT & TAYLOR<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | *VIA ELECTRONIC MAIL*<br>*AND HAND DELIVERY* |
| Edgar H. Haug, Esquire<br>FROMMER LAWRENCE & HAUG LLP<br>745 Fifth Avenue<br>New York, NY 10151 | *VIA ELECTRONIC MAIL* |
| John B. Harris, Esquire<br>STILLMAN, FRIEDMAN & SHECTMAN, P.C.<br>425 Park Avenue<br>New York, NY 10022 | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2007 I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Josy W. Ingersoll, Esquire
> YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

September 17, 2007 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                          *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                              *and HAND DELIVERY*
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Edgar H. Haug, Esquire                               *VIA ELECTRONIC MAIL*
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151


/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)

# EXHIBIT 1

REDACTED

REDACTED

REDACTED

REDACTED

2

REDACTED

# EXHIBIT 2

# REDACTED

| | |
|---|---|
| From: | Lerner, Michael |
| Sent: | Friday, June 27, 2003 4:23 PM |
| To: | 'Andrew M. Berdon (E-mail)' |
| Subject: | FW: Abbott: Rythmol |
| Importance: | High |



PDF_Docu.pdf (10 MB)

REDACTED

-----Original Message-----
From: Martin, Kip
Sent: Friday, June 27, 2003 12:27 PM
To: Rotenberg, Keith; DePadova, Anthony; Bobotas, George; Kosmoski, Paulette; Misner, Jim; Lerner, Michael; Zajac, Joe
Subject: FW: Abbott: Rythmol
Importance: High

-----Original Message-----
From: Utasi, Christine
Sent: Friday, June 27, 2003 12:20 PM
To: Martin, Kip
Subject: Abbott: Rythmol
Importance: High

As requested...

-----Original Message-----
From: Administrator
Sent: Friday, June 27, 2003 12:05 PM
To: Utasi, Christine
Subject: PDF Document from HP Digital Sender

Please open the attached document.
This document was sent to you using an HP Digital Sender.

| | |
|---|---|
| Sent by: | <administrator@reliantrx.com> |
| Number of pages: | 73 |
| Document type: | Color-B/W Photo |
| Attachment File Format: | Adobe PDF |

1

RAC 0001

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate,
or a free copy of the Acrobat reader please visit:

http://www.digitalsender.hp.com/reader-en

2

RAC 0002

**CONFIDENTIAL**

ABBOTT LABORATORIES

# Rythmol
(Propafenone hydrochloride)

*Descriptive Memorandum*

RAC 0003

REDACTED

RAC 0004

REDACTED

RAC 0005

REDACTED

RAC 0006

REDACTED

RAC 0007

**REDACTED**

RAC 0008

**REDACTED**

**REDACTED**

RAC 0009

**REDACTED**

**REDACTED**

RAC 0010

**REDACTED**

RAC 0011

• **REDACTED**

RAC 0012

• **REDACTED**

# EXHIBIT 3

Dist. of Del. Case No. 06-774 JJF

# Abbott Laboratories
# Rythmol Due Diligence

| Date | June 30-July 1 | Location | Abbott Park, IL |
|------|----------------|----------|-----------------|

**Attendees**
### Reliant
| | |
|---|---|
| Joseph Krivulka | President |
| Stefan Aigner | EVP Business Development |
| Kip Martin | Director Business Development |
| George Bobotas | VP, Scientific Affairs |
| Keith Rotenberg | SVP, R&D |
| Tony DePadova | VP, Clinical Development |
| Michael Lerner | General Counsel |
| Jim Misner | Executive Director, Marketing |
| Arthur Hoag | IP Counsel (3rd Party) |

### Abbott
| | |
|---|---|
| Jeff Drajesk | Global Operations Director, Out Patient Cardiovascular |
| John Fitz Gerald | Senior Manager, Licensing & New Business Development, Americas |
| Fran Jagla | Senior Counsel, Trademark |
| Quintin Noble | Manager, Financial Planning and Analysis |
| Larry Pope | Senior Counsel, IP |
| Deniz Razon | Senior Product Manager, Cardiovascular |
| Marcel Reid | Operations Project Manager |
| Marilou Reed | Associate Director Regulatory Affairs |
| Allen Rosenston | Manager, Contract Manufacturing Services |
| Sue Semla, PhD | Senior Project Manager. Pharmaceutical Analytical Research & Development |
| James Steck | Senior Manager, Scientific and Technical Assessment |
| Bob Stewart | Director of Operations |
| Jerald Wenker | Divisional Vice President, Licensing & New Business Development, Americas |

REDACTED



Confidential-Outside Counsel Only

REL004681

# EXHIBIT 4

**REDACTED**

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Friday, July 11, 2003 2:32 PM |
| To: | Lerner, Michael |
| Subject: | Re: FW: Abbott: Rythmol |

Mike:

The real issue on Rythmol sounds like **REDACTED**

We will look at the IP end of this, and I will also **REDACTED**

Always love the banter on work product.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/11/03 02:24PM >>>
I provided you with the patent info. **REDACTED**
**REDACTED**

-----Original Message-----
From: Andrew Berdon <Aberdon@FLHLAW.COM>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Fri Jul 11 14:13:54 2003
Subject: Re: FW: Abbott: Rythmol

I will get on this right away and get back to you early next week.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073

1

RAC 0014

Fax: 212.588.0500
E-Mail: aberdon@flblaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 06/27/03 04:22PM >>>
Attached is background on Rythmol>

-----Original Message-----
From: Martin, Kip
Sent: Friday, June 27, 2003 12:27 PM
To: Rotenberg, Keith; DePadova, Anthony; Bobotas, George; Kosmoski, Paulette; Misner, Jim; Lerner, Michael;
Zajac, Joe
Subject: FW: Abbott: Rythmol
Importance: High

-----Original Message-----
From: Utasi, Christine
Sent: Friday, June 27, 2003 12:20 PM
To: Martin, Kip
Subject: Abbott: Rythmol
Importance: High

As requested...

-----Original Message-----
From: Administrator
Sent: Friday, June 27, 2003 12:05 PM
To: Utasi, Christine
Subject: PDF Document from HP Digital Sender

---------------------------------------------------------------

Please open the attached document.
This document was sent to you using an HP Digital Sender.

    Sent by:            <administrator@reliantrx.com>
    Number of pages:        73
    Document type:       Color-B/W Photo
    Attachment File Format:    Adobe PDF

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate,
or a free copy of the Acrobat reader please visit:

    http://www.digitalsender.hp.com/reader-en

2

RAC 0015

=======================

This message originates from the law firm of Frommer Lawrence & Haug
LLP. It contains information that may be confidential or privileged and
is intended only for the individual or entity named above. No one else
may disclose, copy, distribute, or use the contents of this message.
Unauthorized use, dissemination, and duplication is strictly prohibited,
and may be unlawful. All personal messages express views solely of the
sender, which are not to be attributed to Frommer Lawrence & Haug LLP,
and may not be copied or distributed without this disclaimer. If you
received this message in error, please notify us immediately at
firm@flhlaw.com or call (212) 588-0800.

=======================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may
be confidential or privileged and is intended only for the individual or entity named above. No one else may
disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is
strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to
be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If
you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0016

# EXHIBIT 5

**From:** Andrew Berdon [Aberdon@FLHLAW.COM]
**Sent:** Friday, July 11, 2003 2:14 PM
**To:** Lerner, Michael
**Subject:** Re: FW: Abbott: Rythmol

REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 06/27/03 04:22PM >>>
Attached is backgound on Rythmol>

-----Original Message-----
From: Martin, Kip
Sent: Friday, June 27, 2003 12:27 PM
To: Rotenberg, Keith; DePadova, Anthony; Bobotas, George; Kosmoski, Paulette; Misner, Jim; Lerner, Michael;
Zajac, Joe
Subject: FW: Abbott: Rythmol
Importance: High

-----Original Message-----
From: Utasi, Christine
Sent: Friday, June 27, 2003 12:20 PM
To: Martin, Kip
Subject: Abbott: Rythmol
Importance: High

As requested...

-----Original Message-----
From: Administrator
Sent: Friday, June 27, 2003 12:05 PM
To: Utasi, Christine
Subject: PDF Document from HP Digital Sender



EXHIBIT
16
Georgette K. Betts, CSR
8/29/07

Confidential & Privileged:
For *In Camera* inspection
only

RAC 0046

From:           Lerner, Michael
Sent:           Friday, June 27, 2003 4:23 PM
To:             'Andrew M. Berdon (E-mail)'
Subject:        FW: Abbott: Rythmol

Importance:     High


PDF_Doc.pdf (10
MB)              REDACTED

-----Original Message-----
From: Martin, Kip
Sent: Friday, June 27, 2003 12:27 PM
To: Rotenberg, Keith; DePadova, Anthony; Bobotas, George; Kosmoski, Paulette; Misner, Jim; Lerner, Michael;
Zajac, Joe
Subject: FW: Abbott: Rythmol
Importance: High

-----Original Message-----
From: Utasi, Christine
Sent: Friday, June 27, 2003 12:20 PM
To: Martin, Kip
Subject: Abbott: Rythmol
Importance: High

As requested...

-----Original Message-----
From: Administrator
Sent: Friday, June 27, 2003 12:05 PM
To: Utasi, Christine
Subject: PDF Document from HP Digital Sender

Please open the attached document.
This document was sent to you using an HP Digital Sender.

Sent by:                <administrator@reliantrx.com>
Number of pages:        73
Document type:          Color-B/W Photo
Attachment File Format: Adobe PDF

1

Confidential & Privileged:
For *In Camera* inspection
only
**RAC 0047**

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate,
or a free copy of the Acrobat reader please visit:

http://www.digitalsender.hp.com/reader-en

2

Confidential & Privileged:
For *In Camera* inspection
only

RAC 0048



Confidential & Privileged:
For *In Camera* inspection
only
**RAC 0049**

**CONFIDENTIAL**

ABBOTT LABORATORIES

# Rythmol
(Propafenone hydrochloride)

*Descriptive Memorandum*

Confidential & Privileged:
For *In Camera* inspection
only

**RAC 0050**

# RAC 0051 - RAC 0112

# REDACTED

# EXHIBIT 6

| | |
|---|---|
| **From:** | Lerner, Michael |
| **Sent:** | Thursday, July 17, 2003 9:52 AM |
| **To:** | 'Andrew M. Berdon (aberdon@flhlaw.com)' |
| **Subject:** | FW: Rythmol Asset Purchase Agreement |



ABT APA draft
07-15-03.doc (33      Please                    REDACTED




REDACTED




REDACTED




1

Confidential & Privileged:
For *In Camera* inspection
only

**RAC 0113**

**RAC 0114 - RAC 0144**

**REDACTED**

# EXHIBIT 7

**RAC 0145 - RAC 0163**

**REDACTED**

# EXHIBIT 8

**REDACTED**

---

| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
|---|---|
| Sent: | Monday, July 21, 2003 4:09 PM |
| To: | Lerner, Michael |
| Subject: | Re: Rythmol |

We will do our best.

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 04:05PM >>>
Look to see if there are any        **REDACTED**

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


——Original Message——
From: Andrew Berdon <Aberdon@FLHLAW.COM>
To: Lerner, Michael <mlerner@reliantrx.com>
CC: DBROWN@FLHLAW.COM <DBROWN@FLHLAW.COM>
Sent: Mon Jul 21 15:56:35 2003
Subject: Re: Rythmol

Mike:

The analysis of whether there are any patents out there to

**REDACTED**

We will jump on this other patent right away. We already have the file history on the first patent, and Dan is working it up as we speak.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

1

**RAC 0017**

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:36PM >>>
Andy: I also need you to review   REDACTEDto see whether we should have this patent included in the deal. Also
need to see whether any patents out there to           **REDACTED**

# REDACTED

NEED ANSWERS AS WELL AS YOUR REPORT

ASAP.

------------------------

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains information that may
be confidential or privileged and is intended only for the individual or entity named above.  No one else may
disclose, copy, distribute, or use the contents of this message.  Unauthorized use, dissemination, and duplication is
strictly prohibited, and may be unlawful.  All personal messages express views solely of the sender, which are not to
be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer.  If
you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains information that may
be confidential or privileged and is intended only for the individual or entity named above.  No one else may
disclose, copy, distribute, or use the contents of this message.  Unauthorized use, dissemination, and duplication is
strictly prohibited, and may be unlawful.  All personal messages express views solely of the sender, which are not to
be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer.  If
you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0018

# EXHIBIT 9

**REDACTED**

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Monday, July 21, 2003 3:45 PM |
| To: | Lerner, Michael |
| Subject: | Re: Question |

**REDACTED**

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:41PM >>>
We are looking at    **REDACTED**

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <Aberdon@FLHLAW.COM>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Mon Jul 21 15:38:40 2003
Subject: Re: Question

Mike:

It depends on    **REDACTED**

**REDACTED**

**REDACTED**


AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:12PM >>>
Does Hatch Waxman    **REDACTED**

1

RAC 0019

**REDACTED**

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0020

# EXHIBIT 10

# REDACTED

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Monday, July 21, 2003 3:44 PM |
| To: | Lerner, Michael |
| Subject: | Re: Rythmol |

## REDACTED

## REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:36PM >>>
Andy: I also need you to review REDACTED to see whether we should have this patent
included in the deal.

## REDACTED          REDACTED

NEED ANSWERS AS WELL AS YOUR REPORT

ASAP.
--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


==========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains
information that may be confidential or privileged and is intended only for the individual
or entity named above. No one else may disclose, copy, distribute, or use the contents of
this message. Unauthorized use, dissemination, and duplication is strictly prohibited,
and may be unlawful. All personal messages express views solely of the sender, which are
not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed
without this disclaimer. If you received this message in error, please notify us
immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0021

# EXHIBIT 11

# REDACTED

| | |
|---|---|
| **From:** | Andrew Berdon [Aberdon@FLHLAW.COM] |
| **Sent:** | Friday, September 12, 2003 1:34 PM |
| **To:** | Lerner, Michael |
| **Subject:** | Fwd: Re: Question |



Re: Question

Mike:

This is the timeline I prepared.

On the coverage of the patent, I believe that Dan Brown and I gave you a verbal brief, but that we agreed at that time not to put into writing any view on the potential ability of the patent to **REDACTED**

# REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

1

RAC 0022

**REDACTED**

---

| | |
|---|---|
| **From:** | Andrew Berdon [Aberdon@FLHLAW.COM] |
| **Sent:** | Monday, July 21, 2003 3:53 PM |
| **To:** | Lerner, Michael |
| **Subject:** | Re: Question |

If you launch the product          **REDACTED**

So, assume that the product has a    **REDACTED**

So, you are looking at     **REDACTED**

    **REDACTED**
If
certification.  Your decision whether or not to sue will of course depend upon  then you will be faced with a Paragraph IV
**REDACTED**

Assuming that you sue, it is fair to say that    **REDACTED**

So, assuming that you sue, you should have    **REDACTED**

The risk is that the ANDA    **REDACTED**

AB


Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:45PM >>>
Key focus for discussion is    **REDACTED**

--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Andrew Berdon <Aberdon@FLHLAW.COM>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Mon Jul 21 15:38:40 2003
Subject: Re: Question

Mike:

It depends on the    **REDACTED**

1

**RAC 0023**

**REDACTED**

**REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:12PM >>>
Does Hatch Waxman    REDACTE
                Please let me know asap.
--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


==========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains
information that may be confidential or privileged and is intended only for the individual
or entity named above.  No one else may disclose, copy, distribute, or use the contents of
this message.  Unauthorized use, dissemination, and duplication is strictly prohibited,
and may be unlawful.  All personal messages express views solely of the sender, which are
not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed
without this disclaimer.  If you received this message in error, please notify us
immediately at firm@flhlaw.com or call (212) 588-0800.

2

RAC 0024

# EXHIBIT 12

# REDACTED

---

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Monday, September 29, 2003 10:33 AM |
| To: | Misner, Jim; Aigner, Stefan |
| Cc: | Lerner, Michael |
| Subject: | Privileged & Confidential - Rythmol |



Re: Question

　　　　　　I forward a rough outline of the likely market **REDACTED**
　　　　　　for Rythmol.

# REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

==========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains information that may be confidential or privileged and is intended only for the individual or entity named above.  No one else may disclose, copy, distribute, or use the contents of this message.  Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful.  All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer.  If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

1

REDACTED

| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
|---|---|
| Sent: | Monday, July 21, 2003 3:53 PM |
| To: | Lerner, Michael |
| Subject: | Re: Question |

If you launch the product, it will take at least    **REDACTED**

So, assume that the product has a    **REDACTED**

So, you are looking at    **REDACTED**

If **REDACTED**                    then you will be faced with a Paragraph IV
certification.  Your decision whether or not to sue will of course depend upon
**REDACTED**

Assuming that you sue, it is fair to say that    **REDACTED**

So, assuming that you sue, you should have    **REDACTED**

The risk is that the ANDA    **REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax:  212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:45PM >>>
Key focus for discussion is    **REDACTED**

----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Andrew Berdon <Aberdon@FLHLAW.COM>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Mon Jul 21 15:38:40 2003
Subject: Re: Question

Mike:

It depends on the    **REDACTED**

1

**REDACTED**

**REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> "Lerner, Michael" <mlerner@reliantrx.com> 07/21/03 03:12PM >>>
Does Hatch Waxman
**REDACTED** Please let me know asap. **REDACTED**

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

===========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0027

# EXHIBIT 13

# REDACTED

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Tuesday, October 21, 2003 6:42 PM |
| To: | Lerner, Michael |
| Subject: | Orange Book |

Just to let you know, the '588 is >    **REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

==========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains information that may be confidential or privileged and is intended only for the individual or entity named above.  No one else may disclose, copy, distribute, or use the contents of this message.  Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful.  All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer.  If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

1

RAC 0028

# EXHIBIT 14

# REDACTED

| | |
|---|---|
| **From:** | Andrew Berdon [Aberdon@FLHLAW.COM] |
| **Sent:** | Tuesday, October 21, 2003 7:05 PM |
| **To:** | Lerner, Michael |
| **Subject:** | more on the patents |

Mike:

According to the our on-line resources, the '347 patent        **REDACTED**


The '114 patent claims        **REDACTED**


However, Reliant could in the future        **REDACTED**


Patents that are        **REDACTED**  to currently approved product.  Each of these patents
appears to have        **REDACTED**

```
1.
2.
3.
4.
5.
6.
7. REDACTED
8.
9.
10
11
12.  4,797,287
13.
14 REDACTED
15
```

In an abundance of caution, we will search online for any other patents

**REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com


========================

This message originates from the law firm of Frommer Lawrence & Haug LLP.  It contains
information that may be confidential or privileged and is intended only for the individual
or entity named above.  No one else may disclose, copy, distribute, or use the contents of
this message.  Unauthorized use, dissemination, and duplication is strictly prohibited,
and may be unlawful.  All personal messages express views solely of the sender, which are
not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed

1

without this disclaimer.  If you received this message in error, please notify us
immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0035

# EXHIBIT 15

# REDACTED

| | |
|---|---|
| **From:** | Andrew Berdon [ABerdon@flhlaw.com] |
| **Sent:** | Tuesday, October 21, 2003 5:57 PM |
| **To:** | Lerner, Michael |
| **Cc:** | Arthur Hoag |
| **Subject:** | Re: Rythmol Patent assignment |

Mike:

We reviewed the patent assignment and have the following comments.

1. My colleague Arthur Hoag tells me that it would be useful **REDACTED**

    a.  **REDACTED**

    b.  **REDACTED**

2. The grant back right **REDACTED**

3. The Assignment should include     **REDACTED**

4. The warranty     **REDACTED**

More to come on the APA.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> Lerner, Michael 10/21 5:43 PM >>>
Thanks
_____
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

1

RAC 0036

-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Tue Oct 21 17:44:00 2003
Subject: Re: Rythmol

will do.

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> Lerner, Michael 10/21 4:31 PM >>>
Andy: Review REDACTED the APA- REDACTED
------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

2

RAC 0037

# EXHIBIT 16

# REDACTED

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Tuesday, October 21, 2003 7:15 PM |
| To: | Lerner, Michael |
| Subject: | Fwd: IP reps and warranties |



IP reps and
warranties

Mike:

Here are Arthur Hoag's comments on the reps and warranties.

# REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

=========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0041

REDACTED

| | |
|---|---|
| From: | Arthur Hoag [AHoag@FLHLAW.COM] |
| Sent: | Tuesday, October 21, 2003 6:45 PM |
| To: | Aberdon@FLHLAW.COM |
| Subject: | IP reps and warranties |

I have the following comments on the IP reps and warranties:

1.  The definition of **REDACTED**

    a. **REDACTED**
    b. **REDACTED**
    c. **REDACTED**
    d. **REDACTED**

2.  In 5(a)  **REDACTED**

3.  5(a)(i)(B) '**REDACTED**

4.  Subsection (d)?  **REDACTED**

5.  in subsection (d)  **REDACTED**

6.  It may be helpful to add the following:  **REDACTED**

    **REDACTED**

1

RAC 0042

# EXHIBIT 17

# REDACTED

| | |
|---|---|
| From: | Andrew Berdon [ABerdon@flhlaw.com] |
| Sent: | Tuesday, October 21, 2003 6:38 PM |
| To: | Lerner, Michael |
| Subject: | Re: Rythmol |



00153833.doc (29
KB)

Mike:

# REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/21 5:43 PM >>>
Thanks
------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Tue Oct 21 17:44:00 2003
Subject: Re: Rythmol

will do.

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/21 4:31 PM >>>
Andy: Review section 5.5 of the APA-patent reps
------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

1

RAC 0038

<u>**Exhibit D**</u>

<u>**Assignment of Patents**</u>

**A S S I G N M E N T**

# REDACTED

WITNESS my hand this _____ day of _____, 2003.

ABBOTT GMBH & CO. KG

By: _____

Its: _____

On this _____ day of _____, 2003, before me, a Notary Public in and for the [County and Country], appeared _____, to me personally known to be the same person whose name is subscribed to the foregoing instrument, and acknowledged that he executed said instrument as his free and voluntary act and for the uses and purposes therein expressed.


WITNESS my hand and seal the same day and year last above given.


_____


My Commission Expires: _____

**RAC 0040**

# EXHIBIT 18

# REDACTED

---

**From:** Andrew Berdon [Aberdon@FLHLAW.COM]
**Sent:** Wednesday, October 22, 2003 11:00 AM
**To:** Lerner, Michael
**Subject:** Fwd: IP reps and warranties



Fwd: IP reps and
warranties

Mike:

Here is a potential rep regarding the Orange Book listing:

# REDACTED

Mike:

I also attach again my email from last night regarding the IP reps.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

========================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

RAC 0043

# EXHIBIT 19

| From: | Andrew Berdon | October 22, 2003 4:59:00 PM (-04) |
|-------|---------------|-----------------------------------|
| To: | Lerner, Michael | |
| Cc: | | |
| Bcc: | | |
| Subject: | Re: Feno | |
| Attachments: | | |

Mike:

REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 12:00 PM >>>
What is the timing of the patent filing? Has the time expired?
--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 11:34:00 2003
Subject: Re: Feno

I just did.  The New Dosage Form.

. Abbott

REDACTED

**RAC 0164**
**Confidential & Privileged:**
**For *In Camera* inspection**
**only**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 11:26 AM >>>
Can you                        _            for Rythmol
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 10:21:00 2003
Subject: Re: Feno



I am available all day for Rythmol.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 8:54 AM >>>
        REDACTED            Also let mw know your availability to discuss
rythmol patent issues.
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


**RAC 0165**
Confidential & Privileged:
For *In Camera* inspection
only

# EXHIBIT 20

| From: | Andrew Berdon | October 22, 2003 5:00:00 PM (-04) |
|---|---|---|
| To: | Lerner, Michael | |
| Cc: | | |
| Bcc: | | |
| Subject: | Re: Feno | |
| Attachments: | | |

Good:

      REDACTED       I am sure of that.

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com


>>> Lerner, Michael 10/22 4:05 PM >>>
      REDACTED

------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 16:04:00 2003
Subject: Re: Feno


      REDACTED


AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP

**RAC 0166**
Confidential & Privileged:
For *In Camera* inspection
only

745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> Lerner, Michael 10/22 12:00 PM >>>
What is the ɩ                    .    REDACTED
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 11:34:00 2003


                        REDACTED


                                        Abbott


                        REDACTED


AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> Lerner, Michael 10/22 11:26 AM >>>
Can you                .    REDACTED        : for Rythmol
------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>

**RAC 0167**
Confidential & Privileged:
For *In Camera* inspection
only

Sent: Wed Oct 22 10:21:00 2003
Subject: Re: Feno

REDACTED

I am available all day for Rythmol.

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com


>>> Lerner, Michael 10/22 8:54 AM >>>
                              Also let mw know your availability to discuss
REDACTED
rythmol patent issues.
------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

**RAC 0168**
**Confidential & Privileged:**
**For *In Camera* inspection**
**only**

# EXHIBIT 21

| | | |
|---|---|---|
| **From:** | Andrew Berdon | October 22, 2003 5:09:00 PM (-04) |
| **To:** | Lerner, Michael | |
| **Cc:** | | |
| **Bcc:** | | |
| **Subject:** | **Re: Feno** | |
| **Attachments:** | | |

Yes

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 5:02 PM >>>
Would we be able                          REDACTED
------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 16:59:00 2003
Subject: Re: Feno

Mike:


                              REDACTED


AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

**RAC 0169**

Confidential & Privileged:
For *In Camera* inspection
only

>>> Lerner, Michael 10/22 12:00 PM >>>

What i

------------------                            REDACTED

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 11:34:00 2003
Subject: Re: Feno



REDACTED




AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 11:26 AM >>>

Can you                              for Rythmol

------------------------

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Wed Oct 22 10:21:00 2003
Subject: Re: Feno

          REDACTED

I am available all day for Rythmol.

**RAC 0170**
Confidential & Privileged:
For *In Camera* inspection
only

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/22 8:54 AM >>>
          ¦  REDACTED    Also let mw know your availability to discuss
rythmol patent issues.
----------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

**RAC 0171**
Confidential & Privileged:
For *In Camera* inspection
only

# EXHIBIT 22

# REDACTED

| | |
|---|---|
| From: | Andrew Berdon [Aberdon@FLHLAW.COM] |
| Sent: | Tuesday, October 28, 2003 2:45 PM |
| To: | Lerner, Michael |
| Subject: | Fwd: Expiration of the '114 patent |



Expiration of the
'114 patent

As discussed. If you look at the second page of the document, there is a "legal status" section. It is consistent with the patent being **REDACTED**

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

=======================

This message originates from the law firm of Frommer Lawrence & Haug LLP. It contains information that may be confidential or privileged and is intended only for the individual or entity named above. No one else may disclose, copy, distribute, or use the contents of this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and may be unlawful. All personal messages express views solely of the sender, which are not to be attributed to Frommer Lawrence & Haug LLP, and may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at firm@flhlaw.com or call (212) 588-0800.

1

RAC 0029

**REDACTED**

| | |
|---|---|
| From: | Ali Berkin [Aberkin@FLHLAW.COM] |
| Sent: | Tuesday, October 28, 2003 2:40 PM |
| To: | Aberdon@FLHLAW.COM |
| Subject: | Expiration of the '114 patent |

RAC 0030

# United States Patent [19]

Franke, deceased et al.

[11] Patent Number: 4,945,114

[45] Date of Patent: Jul. 31, 1990

[54] THERAPEUTIC AGENTS CONTAINING ENANTIOMERS OF PROPAFENONE

[75] Inventors: Albrecht Franke, deceased, late of Wachenheim, by Renate E. Franke, Catharina Franke, legal representatives; Rainer Schlecker, Bisersheim; Josef Gries, Wachenheim; Gerda Von Philipsborn, Weinheim; Liliane Unger, Ludwigshafen, all of Fed. Rep. of Germany

[73] Assignee: BASF Aktiengesellschaft, Ludwigshafen, Fed. Rep. of Germany

[21] Appl. No.: 225,756

[22] Filed: Jul. 25, 1988

[30] Foreign Application Priority Data

Jul. 30, 1987 [DE]  Fed. Rep. of Germany ...... 3725273

[51] Int. Cl.⁵ ............................. A61K 31/135

[52] U.S. Cl. ..................... 514/652; 514/821

[58] Field of Search ..................... 514/652, 821

[56] References Cited

## U.S. PATENT DOCUMENTS

4,460,605  7/1984  Petrik et al. ............... 514/652
4,571,409  2/1986  Frank et al. ............... 514/652

## OTHER PUBLICATIONS

Liebigs Ann. Chem., 1987, pp. 561–563, Blaschke, et al., Racemattrennung von Propafenon und Diprafenon, Konfiguration . . .

Primary Examiner—Frederick E. Waddell
Attorney, Agent, or Firm—Oblon, Spivak, McClelland, Maier & Neustadt

[57] ABSTRACT

Therapeutic agents containing enantiomers of propafenone, the preparation of the said agents and their use for certain groups of patients.

7 Claims, No Drawings

RAC 0031

Therapeutic agents containing enantiomers of propafenone (US4945114)                    Page 1 of 2

THOMSON
*
DELPHION

RESEARCH          PRODUCTS          INSIDE DELPHI

## The Delphion Integrated View

| Get Now: ☒ PDF | More choices... | | Tools: Citation Link | Add to Work File: Create new Wor |

| View: Expand Details | INPADOC | Jump to: Top | ☒ Go to: Derwent | ☒ Ema |

| ♥Title: | **US4945114: Therapeutic agents containing enantiomers of propafen** |
|---|---|
| ♥Derwent Title: | Propafenone R- and S-isomers use - as antiarrhythmic agents with different beta-sympatholytic activity [Derwent Record] |
| ♥Country: | US United States of America |
| ♥Inventor: | **Franke, deceased, Albrecht**; late of Wachenheim, Germany **Schiecker, Rainer**; Bissersheim, Germany **Gries, Josef**; Wachenheim, Germany **Von Philipsborn, Gerda**; Weinheim, Germany **Unger, Liliane**; Ludwigshafen, Germany |
| ♥Assignee: | **BASF Aktiengesellschaft**, Ludwigshafen, Germany other patents from BASF AKTIENGESELLSCHAFT (54310) (approx. 10,232) News, Profiles, Stocks and More about this company |
| ♥Published / Filed: | **1990-07-31 / 1988-07-29** |
| ♥Application Number: | US1988000225756 |
| ♥IPC Code: | A61K 31/135; |
| ♥U.S. Class: | **Current: 514/652; 514/821; Original: 514/652; 514/821;** |
| ♥Field of Search: | 514/652,821 |
| ♥Priority Number: | 1987-07- DE1987003725273 |
| ♥Abstract: | Therapeutic agents containing enantiomers of propafenone, the preparation of the said agents and their use for certain groups of patients. |
| ♥Attorney, Agent or Firm: | Oblon, Spivak, McClelland, Maier & Neustadt ; |
| ♥Primary / Assistant Examiners: | Waddell, Frederick E.; |

♥INPADOC Legal Status:

| Gazette date | Code | Description (remarks) List all possible codes for US |
|---|---|---|
| 1990-05-22 | AS02 | Assignment of assignor's interest (New owner: BASF AKTIENGESELLSCHAFT 6700 LUDWIGSHAFEN RHEINLAN 1988-07-27 ) |
| 1990-05-22 | AS02 | Assignment of assignor's interest (New owner: FRANKE, RENATE ELISABETH 1988-07-27 ) |
| 1990-05-22 | AS02 | Assignment of assignor's interest (New owner: |

RAC 0032

Therapeutic agents containing enantiomers of propafenone (US4945114)    Page 2 of 2

| | | FRANKE, CATHARINA 1988-07-27 ) |
|---|---|---|
| 1990-05-22 | AS02 | Assignment of assignor's interest (New owner: SCHLECKER, RAINER 1988-07-26 ) |
| 1990-05-22 | AS02 | Assignment of assignor's interest (New owner: GRIES, JOSEF 1988-07-26 ) |

Get Now: Family Legal Status Report

**🕮 Designated Country:** AT BE CH DE ES FR GB GR IT LI NL SE

**🕮 Family:** Show 14 known family members

**🕮 First Claim:** Show all 7 claims

We claim:
   1. A method for the treatment of arrhythmias in an older patient or a patient suffering from hypotension and cardiac insufficiency, for whom ß-blockers are contraindicated, by administering to said patient an effective amount of (R)-propafenone alone.

**🕮 Background / Summary:** Show background / summary

**🕮 Drawing Descriptions:** Show drawing descriptions

**🕮 Description:** Show description

**🕮 Forward References:** Show 3 U.S. patent(s) that reference this one

**🕮 U.S. References:** Go to Result Set: All U.S. references  |  Forward references (3)  |  Backward reference Citation Link

| PDF | Patent | Pub.Date | Inventor | Assignee | Title |
|---|---|---|---|---|---|
| 🖼 | US4460605 | 1984-07 | Petrik et al. | Helopharm W. Petrik & Co. | 2-[2'-Hydroxy-3'-(1,1-dimethylpropylamino)-propo phenylpropiophenone, its physiologically acceptable a salts, and pharmaceutical co |
| 🖼 | US4571409 | 1986-02 | Frank et al. | BASF Aktiengesellschaft | Aminopropanol derivatives o hydroxy-ß-phenyl-propiophe their preparation and therap agents containing these com |

**🕮 Foreign References:** None

**🕮 Other Abstract Info:** CHEMABS 112(07)048796X DERABS C89-033359

**🕮 Other References:** 
• Liebigs Ann. Chem., 1987, pp. 581-563, Blaschke, et al., Racemattrennung von Prop Diprafenon, Konfiguration . . . (3 pages)








© 1997-2003 Thomson Delphion    Research Subscriptions | Privacy Policy | Terms & Conditions | Site Map | Contact Us

RAC 0033

# EXHIBIT 23



Par Pharmaceutical Companies, Inc.
300 Tice Boulevard
Woodcliff Lake, NJ 07677
tel   201 802 4000
fax  201 802 4600
www.parpharm.com

November 7, 2006                                                                    **CONFIDENTIAL**

**VIA REGISTERED EXPRESS MAIL**
**RETURN RECEIPT REQUESTED**

Dr. Ernest Mario
Chief Executive Officer & Chairman
Reliant Pharmaceuticals
110 Allen Road
Liberty Corner, NJ 07938

Re:     Rythmol® SR; route of administration: oral; strength: 325mg
        United States Patent No. 5,681,588
        Notice of Paragraph IV Certification

Dear Sir:

This is a notice of certification letter on behalf of Par Pharmaceutical, Inc., ("Par") pursuant to 505(j)(2)(B)(ii) of the Federal Food, and Drug Cosmetic Act ("the Act") and 21 U.S.C. § 355(j)(2)(B)(ii) and § 314.95 of Title 21 of the Code of Federal Regulations:

1.  An Abbreviated New Drug Application ("ANDA") that contains data from bioavailability or bioequivalence studies has been submitted under § 505(j) of the Act for the drug with respect to which the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of Propafenone HCl SR capsules before the expiration of U.S. Patent No. 5,681,588. The Food and Drug Administration ("FDA") has received this application.

2.  The established name of Par's proposed drug product is Propafenone HCl SR Capsules. Reliant Pharmaceuticals, Inc. markets Propafenone HCl under the brand name Rythmol® SR.

3.  The active ingredient, strength, and dosage forms of the proposed drug product are: Propafenone HCl; 325 mg; and capsule for oral administration.

Normal.dot



4. The ANDA indicates that Par intends to market the product before the expiration of: U.S. Patent No. 5,681,588 ("the '588 patent"), which expires on October 28, 2014. The '588 Patent is listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for Rythmol® SR (Propafenone HCl, 225 mg, 325 mg and 425 mg), extended release capsules for oral administration.

5. An Offer of Confidential Access to Par's ANDA, pursuant to 21 U.S.C. §355(j)(5)(C)(i)(III), accompanies this notice as a separate enclosure.

Attached is a detailed statement of the factual and legal bases of Par's patent certification. This information is supplied for the sole purpose of complying with the above-referenced statutes and regulations. Neither Par nor its attorneys waive any attorney-client privilege or work-product immunity concerning the subject matter of this communication.

Sincerely,

Steven I. Engel, M.S., Pharm.D.
Vice President, Regulatory Affairs
PAR Pharmaceutical, Inc.
300 Tice Boulevard, 3rd Floor
Woodcliff Lake, NJ 07677
U.S.A.

Encl.: Detailed Statement of the Factual and Legal Basis of Par's Paragraph IV Patent Certification and Offer of Confidential Access

Duplicate with enclosure via FEDEX

## DETAILED STATEMENT OF FACTUAL AND LEGAL BASIS FOR PAR'S OPINION THAT THE '588 PATENT IS INVALID, UNENFORCEABLE AND WILL NOT BE INFRINGED

### I.    INTRODUCTION AND SUMMARY

Reliant Pharmaceuticals ("Reliant") is the listed holder of NDA No. 21-416 for Propafenone HCl extended release capsules (325 mg) sold under the brand name Rythmol® SR. Rythmol® SR is indicated to prolong the time to recurrence of symptomatic atrial fibrillation in patients, without structural heart disease. Par proposes to manufacture, as set forth in its ANDA, 325 mg extended release capsules of propafenone HCl. Par's proposed generic propafenone HCl sustained release capsules will not infringe U.S. Patent No. 5,681,588, the only Orange Book patent listed with respect to Rythmol® SR. Also, this patent is invalid and unenforceable.

Par's proposed product does not infringe the '588 patent (either literally or under the doctrine of equivalents) because Par's proposed formulation: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's proposed formulation uses a release delaying substance.

Furthermore, the claims of the '588 patent are invalid under 35 U.S.C. §102(b) and 35 U.S.C. §103 over U.S. Patent No. 4,797,287 ("Pich"). Broadly, Pich discloses cylindrical microtablets containing propafenone and exemplifies propafenone content up to 80%. The '588 patent is also invalid under 35 U.S.C. §103(a) over Pich in view of U.S. Patent No. 4,954,347 ("Kristen"). Finally, the '588 patent is unenforceable because the assignee (and its employees) knew about Pich, a highly material reference, but did not disclose it to the PTO during the prosecution of the '588 patent.

### II.    LEGAL STANDARDS FOR INFRINGEMENT

#### A.    Infringement Generally

Under 35 U.S.C. § 271(e)(2), "[i]t shall be an act of infringement to submit—(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent." "35 U.S.C. § 271(e)(2)(A) simply provides an 'artificial' act of infringement that creates case-or-controversy jurisdiction to enable the resolution of an infringement dispute before the ANDA applicant has actually made or marketed the product. Once jurisdiction is established, however, the substantive determination whether actual infringement or inducement

1

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 2

will take place is determined by traditional patent infringement analysis." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).

The patentee has the burden of proving infringement by a preponderance of the evidence. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005). Infringement may be literal or under the doctrine of equivalents. In each case the infringement analysis is a two-step process. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005). First, the scope of the claims must be determined. The Supreme Court has held that this first step, sometimes referred to as claim interpretation, is an issue of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("*Markman II*"); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1453 (Fed. Cir. 1998) (en banc). Thus, claim construction necessarily precedes a determination of whether the claims read on an accused product for infringement purposes. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *SmithKline Diagnostics, Inc. v. Helena Labs Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

The second step involves comparing the properly construed claims to the accused product to determine whether those claims "read on" the accused subject matter, *i.e.*, whether all of the claim limitations are present in the accused device, either literally or by a substantial equivalent. *Johnson Worldwide Assocs. Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1247 (Fed. Cir. 1998); *Cybor*, 138 F.3d at 1453. This second step is a factual determination and is thus submitted to a jury if the case is not tried to the court. *Markman II*, 517 U.S. at 384 (citing *Winans v. Denmead*, 56 U.S. 330, 338 (1854)).

## 1.    Claim Interpretation

Generally, claims are given their ordinary and customary meaning to a person skilled in the art, at the time of invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claim interpretation involves consideration of the language of the patent claim itself, the specification, other claims, the prosecution history, extrinsic evidence concerning scientific principles, and the meaning of technical terms. *Id.* at 1314; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd en banc*, 517 U.S. 370 (1996) ("*Markman I*"). Courts may admit extrinsic evidence, if necessary, as long as the extrinsic evidence is consistent with the intrinsic record. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006). Extrinsic evidence is any evidence that is external to the patent and prosecution history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Vitronics*, 90 F.3d at 1584.

The specification should be referred to when construing the limitations of patent claims. Indeed, usually, it is dispositive of the meaning of a term, and has been called "the single best

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 3

guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Thus, the specification may act as a sort of dictionary, which explains the claimed subject matter and may define terms used in the claims. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997); *Markman I*, 52 F.3d at 979. Where the specification contains nothing to indicate that phrases are to be given anything other than their ordinary meanings, then those are the meanings the court must give them. *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (citing *Vitronics*, 90 F.3d at 1582); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). That is, a technical term used in a patent document is given the same meaning that it would be given by persons experienced in the field of the patent, unless it is apparent from the patent and prosecution history that the patentee used the term with a different meaning. *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)). Thus, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *CVI/Beta Ventures*, 112 F.3d at 1153 (quoting *Vitronics*, 90 F.3d at 1582).

### 2. Literal Infringement

After claim interpretation, a determination is made whether the claims cover the accused products or methods. *Johnson Worldwide Assocs.*, 175 F.3d at 988. To infringe a claim, the accused product or method must include every limitation of the claim, either literally or by a substantial equivalent. *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

To demonstrate literal infringement, a plaintiff must prove that the allegedly infringing product or method embodies every element of the asserted claim(s). *Dolly, Inc.*, 16 F.3d at 397; *Townsend Eng 'g Co. v. Hitec Co.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987). This follows from the principle that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) (stating it is "well settled that each element of a claim is material and essential"). Thus, "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

### 3. The Doctrine of Equivalents

Even if a product or process does not literally infringe, there can still be infringement if there is "equivalence" between the elements of the accused product or process and the elements of the patent's claims. *Warner-Jenkinson*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1571 n.3 (Fed. Cir. 1991). Infringement by equivalents requires that "the

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 4

accused product or process contain elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson*, 520 U.S. at 40.

To be equivalent, the patentee must prove that the accused product "differs from what is literally claimed only insubstantially, and it performs substantially the same function in substantially the same way to achieve substantially the same result." *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997); *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *see Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997) (affirming the viability of the "insubstantial differences" test). The nature of the differences is assessed according to whether a person with ordinary skill in the relevant art would find the differences to be substantial. *Hilton Davis*, 62 F.3d at 1519.

### 4. Limits on the Doctrine of Equivalents

There are limitations on the application of the doctrine of equivalents. Among other limitations, both the prior art and prosecution history estoppel limit the range of equivalents. *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993), *clarified on other grounds*, 15 F.3d 1076 (Fed. Cir. 1994); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 n.1 (Fed. Cir. 1987) (en banc). "The doctrine of equivalents cannot be used to erase "meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994).

### a. Prosecution History Estoppel

Prosecution history estoppel applies when the applicant surrenders subject matter by either argument or amendment. Arguments, even without amendment, made during prosecution to obtain allowance of the claims at issue give rise to estoppel when such assertions clearly and unmistakably surrender subject matter, even when such arguments were not necessary to distinguish prior art. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828, n.3 (Fed. Cir. 1999) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 952 (Fed. Cir. 1993) and *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174-75 (Fed. Cir. 1993)); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998) (citing the same).

During the prosecution of a patent, "a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). For example, prosecution history estoppel is not limited to amendments made to avoid the prior art, but rather includes amendments made to comply with 35 U.S.C. § 112:

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 5

> A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112. We must regard the patentee as having conceded an inability to claim the broader subject matter or at least as having abandoned his right to appeal a rejection. In either case estoppel may apply.

*Id.* at 737. Thus, when prosecution history estoppel applies, the patentee may only allege literal infringement.

### b.    Prior Art as a Limitation

Even if the accused product performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990). The patentee bears the burden of proving that the hypothetical claim does not "ensnare the prior art." *Id.* at 685. In this inquiry, the prior art can be found to anticipate or render obvious the claimed invention.

In *Wilson*, the patentee alleged the accused product infringed its patent, which covered the pattern of dimples on a golf ball, under the doctrine of equivalents. The Federal Court of Appeals disagreed, holding "there can be infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Id.* at 683. The Court explained that "the doctrine of equivalents does not involve expansion of the *claims*." *Id.* at 684 (emphasis in original). To hold otherwise, the court reasoned, "would allow the patentee to preempt a product that was in the public domain prior to invention." Thus, "[a] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Id.* at 684.

To guide courts in this determination, the court proposed that courts consider the likely result of a "hypothetical claim" broad enough in scope to *literally* cover the accused product. If this hypothetical claim would not have been allowed by the PTO over the prior art, "it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Id.* at 684. Even so, the hypothetical claim analysis is not mandatory. *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (noting that the crux of the analysis is preventing the patentee from obtaining scope later that he or she could not have obtained during prosecution); *see also International Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993).

5

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 6

The Federal Circuit has re-affirmed this reasoning in a series of subsequent cases. *Streamfeeder, LLC v. Sure-Feed Systems Inc.* 175 F.3d 974 (Fed. Cir. 1999); *Marquip Inc. v. Fosber America, Inc.*, 198 F.3d 1363 (Fed. Cir. 1999). In *Streamfeeder*, the court noted that in hypothetical claim analysis "one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art." 175 F.3d at 983. Thus, the patentee is prohibited from both broadening the scope of the claims under the doctrine of equivalents while simultaneously narrowing the scope of the claims to avoid encompassing the prior art.

### c.    The Dedication Disclosure Rule

The doctrine of equivalents cannot reach an element disclosed in an alternative embodiment of the invention in the specification but deliberately not claimed. *See Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002).

> [W]hen a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public. Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would "conflict with the primacy of the claims in defining the scope of the patentee's exclusive right."

*Id.* at 1054. The court in *Johnson* also grounded their holding partly in the policy that, "a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Id.*

### d.    The "All Elements" Rule

One further limitation of the doctrine of equivalents is the "all elements rule" which requires that "each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). It follows from this rule that, "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate that element in its entirety." *Freedman Seating Co., v. America Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005). According to the Federal Circuit, there is no "set formulation" for this determination, however, courts must consider "the totality of the circumstances." *Id.* at 1359. Several factors are appropriate for consideration, including "the simplicity of the structure, the specificity and narrowness of the claim, and the forseeability of variations at the time of filing the claim with the PTO." *Id.* at 1360. For example, in *Moore U.S.A., Inc. v. Standard Register, Co.*, 229 F.3d 1091 (Fed. Cir. 2000), the Federal Circuit stated

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 7

that, "to allow what is undisputely a minority (*i.e.*, 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive . . . extend the majority of the lengths of said longitudinal marginal portions'." *Id.* at 1106; *see generally Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) (claims reciting a clear geometric shape of generally conical were vitiated by attempting to cover a hemispherical cup by the doctrine of equivalents).

### e.    Specific Exclusion

Further, "by defining the claim in a way that clearly excluded certain subject matter" a patent implicitly disclaims the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). In particular, structural limitations like shapes have been accorded a narrow scope of equivalents:

> A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents. *See Tanabe Seiyaku Co. v. United States ITC*, 109 F.3d 726, 732 (Fed. Cir. 1997) ("The sharply restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents."). That principle has special application in a case such as this one, where the claim recites a particular shape for the basal portion of the abutment that clearly excludes distinctly different and even opposite shapes.

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, reciting a specific shape in the claims specifically excluded other shapes. *Id.* In particular, the patentee's characterization of its abutment having a "convex, frusto-spherical shape" excluded abutments which were concave and frustro-conical because these shapes were contrary to, or inconsistent with, the claim language. *Id.* at 955-956.

### f.    Other Limits

In addition, arguments emphasizing the criticality of a claim element may give rise to a surrender of all competitive products that do not contain the critical element. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1378-79 (Fed. Cir. 1999) (finding all compositions that do not contain a component described as critical during prosecution and interpreted as indispensable were surrendered during prosecution).

Moreover, there can be no infringement under the doctrine of equivalents if a claim limitation is totally missing from the accused device. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990)). "The doctrine of equivalents is not a license to ignore claim

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 8

limitations." *Dolly*, 16 F.3d at 398. That is, a "court cannot convert a multilimitation claim to one with fewer limitations to support a finding of equivalency." *Id.* at 399.

## III.    LEGAL STANDARDS FOR INVALIDITY

### A.    Anticipation Under 35 U.S.C. 102(b) - Prior Art

Section 102(b) provides a complete bar to the patentability of any invention that has been "patented or described in a printed publication in this or a foreign country… more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2000). A single reference must teach each and every limitation of the claimed invention, either expressly or inherently, in order to anticipate under 35 U.S.C. § 102(b). *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1350 (Fed. Cir. 2001). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

### B.    The Law of Obviousness Under 35 U.S.C. § 103

For a patent to be valid, the claimed invention must be nonobvious over the prior art to a person having ordinary skill in the art of the invention. Section 103(a) provides in part:

A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

An important consideration is "the need to adhere to the statute, i.e., to hold that an invention would or would not have been obvious, as a whole, when it was made, to a person of 'ordinary skill in the art' – not to the judge, or to a layman, or to those skilled in remote arts, or to geniuses in the art." *Envtl. Designs Ltd., v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *Custom Accessories Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed. Cir. 1986).

Several factors guide a court's assessment of obviousness including:

(1)    the scope and content of the prior art;

(2)    the differences between the prior art and the claims at issue;

(3)    the level of the ordinary skill in the art; and

(4)    whatever objective evidence may be present.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 9

*Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

When evaluating the scope and content of the prior art, the question under § 103 is not merely what the references expressly teach but what they would have suggested to one of ordinary skill in the art at the time the invention was made. *Merck & Co. Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989). To invalidate a patent under § 103 using a combination of prior art, there must be some reason, suggestion or motivation found in the prior art whereby a person of ordinary skill would make the combination. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1351 (Fed. Cir. 1998). The motivation to combine can come from the knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000); *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996) (holding that such suggestion may "come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem"). It is not necessary for the motivation to be found explicitly in the prior art: "[t]here is flexibility in our obviousness jurisprudence because a motivation may be found implicitly in the prior art. We do not have a rigid test that requires an actual teaching to combine before concluding that one or ordinary skill in the art would know to combine references." (emphasis in original). *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, at *10 (Fed. Cir. 2006). The ultimate determination of obviousness when evaluating the prior art does not require absolute predictability of success. All that is required is a reasonable expectation of success. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000).

Other considerations may be helpful in determining whether an invention is obvious. *See Stratoflex, Inc.*, 713 F.2d at 1538. These secondary considerations include evidence of commercial success, long felt but unsolved needs, failure of others, initial skepticism of experts, praise from experts, copying by an infringer, near simultaneous invention by others, and licenses under the examined patent. *See In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998). However, these factors are not considered unless there is a showing of a nexus between the invention and the secondary consideration to ensure that the secondary consideration is not ascribable to other irrelevant factors. *Ryko Mfg. Co. v. Nu-Star Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991).

Each claim in an issued patent carries an independent presumption of validity. The ultimate question of obviousness is a question of law, which must be supported by clear and convincing evidence. The challenger to the validity of a patent must establish by clear and convincing evidence the facts supporting invalidity. *Ultra-Tex Surfaces v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Proof of invalidity is facilitated when prior art not considered during prosecution is material to the issue of validity. *See Stratoflex, Inc.*, 713 F.2d at 1534.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 10

### C.    Inequitable Conduct

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp. v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *Purdue Pharma LP v. Endo Pharma. Inc.*, 438 F.3d 1123, 1128-29 (Fed. Cir. 2006).

A duty of candor and good faith is required to the Patent and Trademark Office by the inventor, the attorney or agent preparing and prosecuting the application, and every other individual substantively involved in the prosecution of the application. 37 C.F.R. § 1.56(c). This duty also applies to those substantively involved individuals who are associated with the asisngee. *Id.* Moreover, a corporate assignee does not cleanse itself of all culpability for misrepresentations or omissions during the prosecution of the patent application filed on its behalf by purposefully keeping its officers in the dark concerning the application's contents and placing the entire burden for proper disclosure on an inventor not versed in patent law or the relevant facts. *See Digital Equipment Corp. v. Diamond*, 653 F.2d 701 (Fed. Cir. 1981).

## IV.    THE '588 PATENT IS NOT INFRINGED AND IS INVALID

### A.    The '588 Patent

The '588 Patent matured from application serial number 08/525,749 ("the '749 application"), filed on October 10, 1995, which claims priority from PCT/EP94/00949, filed March 24, 1994. PCT/EP94/00949, in turn, claims priority from German application P4310963.2 which was filed on April 3, 1993. The German application was originally filed by BASF Aktiengesellschaft. The '588 patent issued to Kolter et al. on October 28, 1997 and is assigned to Knoll Aktiengesellschaft of Ludwigshafen, Germany. The '588 Patent expires on October 28, 2014.

In the "Background of the Invention" section, the patentee admits that multiple unit delayed release dosage forms were preferable to single unit dosage forms because "the units are distributed uniformly along the gastrointestinal tract and can also pass through the closed pylorus." Col. 1, lines 46-48. The patentee also admits that multiple unit delayed dosage forms contained amounts of active ingredient that were up to 60-80%. The patentee alleges that "small matrix" pellets were produced, but "only with very low doses of medicinal substances." For

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 11

example, the patentee cites EP 22 17 32 (Oren et al.), WO 92/04013 (Bongiovanni et al.), and GB 2 176 999 (Davis et al.) as having low doses of active ingredient. The patentee admits that Oren et al. discloses, "delayed release tablets" having "60-80% active ingredient." Col. 1, line 59. Another example in Bongiovanni discloses 76.7% ibuprofen content. In the Detailed Description of the Preferred Embodiments, the patentee asserts "A bolus tablet with commercial dosages of 150-300 mg and an active ingredient above 80% cannot be produced under production conditions." Col. 2, lines 31-33.

The specification alleges that employing microtablets according to the invention overcomes the drawbacks of the prior art. The specification describes that microtablet production has four steps, used with conventional pharmaceutical equipment: "granulation, drying, mixing, tabletting." Col. 3, line 51. According to the patentee, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches. The resulting microtablets have a cylindrical shape with flat or convex surface [sic]." (emphasis added) Col. 4, lines 19-22. In Example 1, the patentee discloses, "[t]he microtablets were produced in a rotary tabletting machine equipped with multiple microtablet punches." Col. 5, lines 25-26. Further, each example (other than the comparative example) refers back to Example 1 for the method of microtablet production.

WO 92/04013 was cited as an example that "disclose[s] small matrix delayed release tablets which likewise contain relatively large amounts of release-delaying ancillary substances." The patentee then notes that "Patent Application EP 22 17 32 claims delayed release tablets of active ingredients with low solubility, which contain 60-80% active ingredient in addition to at least 4 auxiliaries" and that such formulations are highly dependent on "granulation process and equipment" used. With respect to compressibility, the patentee notes that "propafenone HCl is extremely difficult to compress. A bolus tablet with commercial doses of 150-300 mg and an active ingredient content above 80% cannot be produced under production conditions. . . such high contents of active ingredients of this type in tablets have not previously been reached." Patentee admits that it considers propafenone delayed release tablet formulations of 80% or less active ingredient content to be part of the prior art. Col. 2, lines 30-41.

The patentee further noted that its microtablets achieve the object of the invention "because it has been found, surprisingly, that it is possible in the present case to produce delayed release tablets without release-delaying ancillary substances." Patentee also pointed out a number of problems that hydrophilic release-delaying polymers can cause: sticking or adhesion to the GI tract (patentee referenced WO 92/04013 as a formulation that might exhibit this problem), requirement of use of organic solvents to prevent swelling (patentee pointed out that this problem which can be "entirely" dispensed within the invention), and sensitivity to changes in humidity during storage.

The '588 patent has six claims, only the first claim is independent:

11

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 12

1. A cylindrical delayed release microtablet with a convex or flat upper side and lower side of β-phenylpropiophenone derivatives of the formula I as active ingredient

I



where R is n-propyl or 1,1-dimethylpropyl, and their pharmacologically acceptable salts, wherein

a) the height and diameter are, independently of one another, 1-3 mm,

b) the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet,

c) the active ingredient density is greater than 1,

d) the release of active ingredient in the USP paddle method at 50 rpm is 80% as a maximum after 3 hours and as a minimum after 24 hours,

e) the release rate is virtually independent of the pressure when compressing the tablets, and

f) the tablet contains no release-delaying ancillary substance but 0.1-5% by weight of a lubricant and 0-18.9% by weight of other conventional ancillary substances.

2. A tablet as claimed in claim 1, which in vivo results in a pronounced plasma level plateau with a PTF<75% and whose bioavailability does not depend on the intake of food.

3. A tablet as claimed in claim 1, wherein the active ingredient is propafenone hydrocholoride.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 13

    4. A tablet as claimed in claim 1, wherein the height and diameter are approximately the same.

    5. A gelatin capsule which contains 3-200 tablets as claimed in claim 1 with identical or different release rates.

    6. A process for producing cylindrical delayed release microtablets as claimed in claim 1, which comprises a homogeneous mixture of 81-99.9% by weight of the granulated active ingredient with a particle size below 1 mm, 0.1-5% by weight of a lubricant and 0-18.9% by weight of other conventional ancillary substances which do not delay release being compressed in a cylindrical mold with a height and diameter each of 1-3 mm and being removed from the mold.

**B.**    **The Prosecution History of the '588 Patent**

    During prosecution, the applicant submitted a preliminary amendment that made changes to the specification and removed multiple dependent claims. In the first Office Action, the Examiner rejected claims 1-6 under 35 U.S.C. §103 and 35 U.S.C. §112. With regard to the rejection under §103, the Examiner determined that the claims were unpatentable over Davidson (U.S. Patent No. 3,951,821) in view of Franke (U.S. Patent No. 4,945,114). The Examiner noted that the claims read on "a cylindrical delayed release tablet with an active agent" and that Davidson teaches "a delayed release microtubule…and active agent." Office Action, mailed October 17, 1996 at 3 (citation omitted). The Examiner noted Franke discloses the use of propafenone. The Examiner concluded that the motivation to combine the references "is provided by the fact that both cited references read on a tablet comprising an active agent. The intended purpose is to provide a delayed release specific active agent tablet." *Id.*

    The Examiner also determined that the claims were unpatentable under 35 U.S.C. §112. Office Action, mailed October 17, 1996 at 2. As originally filed, claim 1 recited "from 81 to 99.9% of the weight of the microtablet, but not taking into account the weight of any coating which is present." The Examiner found that this was indefinite. The Examiner indicated that if the amount of coating was important, then the claims should be rewritten to reflect the percentage of coating present. In response, the applicant deleted the coating part of the limitation.

    The applicant responded that their microtablet had surprisingly improved delayed release characteristics and that such results are "especially surprising" because their formulation contained "no other release delaying additives." Response, dated January 9, 1997 at 3. The applicant also alleged that 90% of other medicaments with similar water solubilites were

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 14

released within one hour if they were formulated according to the invention (data not included). Other "surprising" results included that release rate was virtually independent of pressure. *Id.* With respect to the prior art references, applicant pointed out that Davidson actually "is specifically looking toward instant release and speeding up the disintegration of tablets." *Id.* at 4. The applicant conjectured: "if one were to modify Davidson by the teachings of Franke et al, one would obtain a propafenone hydrochloride tablet" resulting in "relatively instant release, certainly within five minutes or less, as taught by Davidson." *Id.* at 5. The applicant concluded that there is "no suggestion within either reference" that propafenone "would have surprising delayed release characteristics when compressed into the tablet form" disclosed in the application, and there would be "no expectation by one of ordinary skill in the art" of obtaining the "delayed relatively uniform release…in a microtablet having the required size, shape and other characteristics as required by the present claims." *Id.* at 6.

The notice of allowance was mailed on April 1, 1997, and the applicant filed a supplemental amendment substituting a new abstract for the abstract that was filed with the application. A supplemental notice of allowability was mailed on June 25, 1997. The patent issued on October 28, 1997.

**C.    Par's Proposed Propafenone HCl Capsule (325 mg) Does Not Infringe the '588 Patent**

Par's proposed propafenone HCl product does not infringe claim 1 of the '588 patent, either literally or under the doctrine of equivalents, because it does not embody every element of claim 1 of the '588 patent. Par's proposed formulation does not infringe claim 1 for at least four reasons: (1) Par's proposed formulation does not use microtablets; (2) Par's proposed formulation does not employ cylindrically-shaped components; (3) Par's proposed formulation uses an amount of propafenone which falls below the range claimed in the patent; and (4) Par's proposed formulation uses a release delaying substance. Claims 2-6 depend from claim 1 and therefore also do not infringe, either literally or under the doctrine of equivalents.

**1.    Par's Proposed Product Does Not Infringe the Microtablet Limitation.**

Par will not infringe claim 1 because it will not produce a formulation containing a "microtablet", literally, or by equivalents.[1] The term "microtablet" is a compound word which can be broken into two parts: "micro" and "tablet." The prefix "micro" is derived from the Greek, "mikros" which means small. According to *Remington's Pharmaceutical Sciences,* "[t]ablets may be defined as solid pharmaceutical dosage forms containing drug substances with

---

[1] It is well settled that the preamble is limiting if it recites structure. *See* MPEP §2111.02(I) ("Any terminology in the preamble that limits the structure of the claimed invention must be treated as a claim limitation.")

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 15

or without suitable diluents and prepared either by compression or molding methods." *Id.* at 1553 (16th Ed. 1980). "Although tablets are more frequently discoid in shape, they also may be round, oval, oblong, cylindrical, or triangular." *Id.* Thus, according to *Remington's*, tablets must be dosage forms which are compressed into a regular shape. The specification of the '588 patent supports this position. For example, the patentee states, "[t]he tabletting takes place in a suitable tabletting machine equipped with multiple microtablet punches. The resulting microtablets have **a cylindrical shape with flat or convex surface [sic].**" (emphasis added) Col. 4, lines 19-22. In this way, the patentee clearly and unmistakably disavowed all other multiple unit dosage forms. Par's formulation will not use microtablets, because Par will not produce a formulation containing a small dosage form compressed into a regular shape. Par instead intends to produce non-cylindrical irregularly shaped beadlets through randomly milling a slug. Thus, Par's formulation will contain a broad distribution of particles with no one regular shape rather than a regularly-shaped microtablet. As a result, Par does not meet the microtablet limitation and thus will not literally infringe the claim.

Par's proposed formulation will also not infringe the microtablet limitation under the doctrine of equivalents. According to the Federal Circuit, "by defining the claim in a way that clearly excluded certain subject matter" a patent can implicitly disclaim the excluded subject matter and will bar the doctrine of equivalents. *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001). Here, the doctrine of equivalents is not available because such subject matter has been specifically excluded by the patentee. Further, the irregularly-shaped beadlets that Par proposes to manufacture are not equivalent to a microtablet because there are substantial differences between them. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997). A microtablet, as described in the specification, is a product of specially-outfitted pharmaceutical machinery designed to produce materials to exacting specifications. It is substantially different than the irregularly-shaped granule generated by a random milling process.

### 2.    Par's Proposed Product Does Not Infringe the Shape Limitation.

Par's proposed formulation does not infringe the requirement that the microtablet have a cylindrical shape with a convex or flat upper side and lower side, either literally or under the doctrine of equivalents. Par will not produce microtablets with **any** uniform shape. Thus, Par will not literally infringe the claim because it will not produce microtablets having this very specific shape.

Par will also not infringe under the doctrine of equivalents because the narrow claiming excluded other equivalents. According to the Federal Circuit, "A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006). In *Bicon*, a claim that recited a particular shape clearly excluded distinctly different or even opposite shapes.

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 16

Here, because the claim specifically recites a microtablet that has a cylindrical shape with a convex or flat upper side and lower side, all other shapes have been specifically excluded from the doctrine of equivalents. Since Par's product does not even propose to use a specific uniform shape, Par's product cannot infringe under the doctrine of equivalents.

It should also be noted that the doctrine of claim vitiation may also come into play. In *Tronzo v. Biomet*, 156 F.3d 1154 (Fed. Cir. 1998) the court held that expanding the claims reciting a "generally conical outer surface" to reach defendant's hemispherical cup would violate the "all-elements rule" because it would write the "conical" limitation out of the claims. *Id.* at 1160. The court reasoned that if evidence showed that any structure would be equivalent then it would read the "generally conical" limitation out of the claims. *Id.*

Par's proposed dosage form will also not infringe under the doctrine of equivalents because it is substantially different from the claimed microtablets. Microtabletting is a specialized technology that uses rotary compression machines specially equipped for the task of controlling the geometric parameters to produce a very specific, uniform shape. Par's proposed process will not use such machinery, and Par's dosage form will not contain components of any particular shape.

3.    **Par's Proposed Product Does Not Infringe the Active Ingredient Limitation**

Par's proposed product will not infringe claim 1, either literally or under the doctrine of equivalents, because it will contain less active ingredient than what is required by the claims. Claim 1 requires that, "the active ingredient content is in the range from 81 to 99.9% of the weight of the microtablet." Par's proposed formulation will only contain 79.00% active ingredient. Therefore, Par's proposed product will not literally infringe the claim.

What is more, the patentee disclaims subject matter concerning microtablets with an active ingredient content below 81% by weight. The '588 patent specification, in a section describing the "preferred embodiments," acknowledges that the prior art's upper limit for tablets with a high concentration of active ingredient is 80%. By contrast, the "preferred embodiment" for the claimed invention is between 85 and 99.5% active ingredient content by weight. Col. , lines . Indeed, according to the specification, "[s]uch high contents of active ingredients of this type in tablets have not previously been reached." Col. 2, lines 39-41. By identifying and distinguishing the claimed invention from the prior art in this way, the patentee implicitly disclaims formulations that include an active ingredient content below 81%.

Third, there can be no infringement under the doctrine of equivalents because the doctrine of equivalents is limited by the prior art. Under *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990), a patentee cannot use the doctrine of

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 17

equivalents to extend claim scope passed what would have been allowed in prosecution over the prior art. Therefore, if a hypothetical claim broad enough in scope to literally read on the accused device, the doctrine of equivalents cannot be used. *Id.* As will be discussed in greater detail below, U.S. Patent No. 4,797,287 ("the '287 patent" or "Pich") discloses subject matter rendering the hypothetical range obvious. Pich describes a cylindrical microtablet containing propafenone with an active ingredient content of 80% of the weight of the microtablet. (Example 5, Col. 7). As a consequence, the hypothetical claim encompassing Par's propafenone drug (intended to contain 79.00%) would also "ensnare" the prior art (disclosing microtablets containing 80% propafenone), and thus would preclude infringement under the doctrine of equivalents.

### 4. Par's Proposed Product Does Not Infringe the Ancillary Substance Limitation.

Par's proposed product will not infringe claim 1 because it will contain a release-delaying ancillary substance. Claim 1 requires that, "the tablet contains **no** release-delaying ancillary substance," (emphasis added). The claim is unequivocal. The microtablet as protected by the claims can contain **no** release-delaying ancillary substance. In this instance the patentee clearly and unmistakably disavowed all subject matter where the microtablet contains any release-delaying ancillary substances. Par's proposed dosage form will contain ethylcellulose, a well known release-delaying ancillary.[2] Therefore, Par will not literally infringe claim 1.

Par will also not infringe the claims under the doctrine of equivalents. The patentee specifically identified and distinguished pieces of prior art containing release delaying ancillary substances. Col. 1, lines 54-63. In this way, the patentee specifically excluded any release delaying ancillary substance from the scope of equivalents. Further, the Federal Circuit has repeatedly held that it is impermissible to extend the doctrine of equivalents to encompass subject matter that is inconsistent with the claims, as defined by the patentee. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1317 (Fed. Cir. 1998). Here, it would defy logic to conclude that Par's proposed use of ethylcellulose, a well known release-delaying auxiliary, was equivalent to the claims which require **no** release delaying auxiliaries. The patentee chose to limit the claims with strong language and the patentee is not allowed to expand the claims impermissibly post-issuance.

---

[2] *E.g.* "Modified release tablet formulations may also be produced using ethylcellulose as a matrix former." Handbook of Pharmaceutical Excipients, 186, (2d Ed. 1994).

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 18

### D.    The '588 Patent is Invalid

#### 1.    The '588 Patent is Invalid for in Anticipation over U.S. Patent No. 4,797,287 ("Pich")

The '588 patent is anticipated and invalid over art which was not provided to the Examiner during prosecution. U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients. Among the actives exemplified is propafenone.[3] Pich was issued on June 10, 1989, more than one year before the effective filing date of the '588 patent (March 24, 1994). Pich, despite its relevance, was not provided to the examiner during prosecution.

Pich discloses, "[w]e have found that this object is achieved by a process for the production of cylindrical microtablets which have a convex upper face and a convex lower face and whose cylinder diameter and height, independently of one another, are each from 1.0 to 2.5 mm, preferably from 2.0 to 2.3 mm." *Id.* In particular, Pich exemplifies propafenone. Example 5, col. 7. With regard to the active ingredient content, Pich states, "[f]or example, it is possible to produce microtablets having a high content of substances which are difficult to press." Col. 4, line 29-31. Several paragraphs later, Pich specifically refers to such a "high content": "[p]ancreatin can be pressed to give tablets having a content of 99.5%." Col. 4, 52-53. The microtablets described in Example 5 also contain no release-delaying ancillary substances. *See* Example 5, col. 7. The lack of explanation in the specification makes it difficult to interpret the "active ingredient density" limitation, but it appears that the examples of Pich would have densities well over 1. Finally, the release rate of the active from the microtablets and the compression characteristics recited in the claims would necessarily be disclosed in Pich because Pich otherwise describes the exact composition of the microtablets disclosed in the Orange Book patent. Therefore, since every limitation is disclosed, either explicitly or inherently by one reference (Pich), each claim of the '588 patent is invalid because it is anticipated under 35 U.S.C. §102(b).

#### 2.    The '588 Patent is Invalid for Obviousness in View of U.S. Patent No. 4,797,287 ("Pich")

The '588 patent is obvious and invalid over art which was not provided to the Examiner during prosecution. U.S. Patent No. 4,797,287 ("Pich"), assigned to BASF, is directed to cylindrical microtablets, containing a very large weight percentage of various active ingredients. Among the actives exemplified is propafenone.

---

[3] Knoll AG, the assignee of the '588 patent, was a wholly-owned subsidiary of BASF at the time the '588 patent was filed.

00409689.DOC

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 19

The Pich reference is directed to "[c]ylindrical microtablets which have a convex upper face...and whose cylinder diameter and height independently of one another are each from 1.0 to 2.5 mm." '287 Patent, abstract. Pich explains that these "novel microtablets can be used for a very large variety of purposes…[of which] the most important and very particularly preferred field of use is the pharmaceutical sector." Col. 4, lines 6-15. The specification discloses specifically how to make such a microtablet with propafenone as an active ingredient. *See* Example 5. In this example, the propafenone content is 80%.[4] *Id.* at lines 29-31. The microtablet of Example 5 does not contain any release-delaying substances.

Moreover, it is well-settled that obviousness arises when the claimed range and the prior art range do not fully overlap, but the differences between the ranges are minor. *See Haynes Int'l Inc. v. Jessup Steel Co.*, 8 F.3d 1573, 1577, n.3 (Fed. Cir. 1993) (holding when the difference between the claimed invention and the prior art is the range or value of a particular variable, then a *prima facie* rejection is properly established when the difference in range or value is minor). In *Titanium*, a case with facts closely related to the facts at issue, the court held that an alloy containing 0.8% nickel, 0.3% molybdenum, and up to 0.1% maximum iron was *prima facie* obvious in view of a reference disclosing alloys containing 0.75% nickel, 0.25% molybdenum, balance titanium and 0.94% nickel, 0.31% molybdenum. *Id.* at 783. One of ordinary skill in the art would clearly recognize that 80% is tantamount to 81%.[5]

The patentee will also be unable to present convincing evidence of nonobviousness. One important secondary consideration, evidence of commercial success, "is not significantly probative" in this case because "others were legally barred from commercially testing the [the product covered by the Orange Book patent]" because market entry by others is precluded. *Merck v. Teva*, 395 F.3d 1365, 1377 (Fed. Cir. 2005).

In view of the prior art, when all of the factors are considered, there is clear and convincing evidence that the claim 1 of the '588 patent would have been obvious to one of ordinary skill in the art. What is more, the additional limitations of dependent claims 2-6 are rendered obvious in light of Pich because they are explicitly or inherently disclosed.

**E.    The '588 Patent is Unenforceable for Inequitable Conduct**

A breach of an applicant's duty of candor to the Patent Office during the procurement of a patent is considered "inequitable conduct." A successful defense on inequitable conduct must

---

[4] Example 5 suggests utilizing propafenone as an active ingredient, providing, as an example, the composition of the microtablet as containing: 1600 g propafenone, 250 g microcrystalline cellulose, 100 g lactose, 40 g talc, and 10 g magnesium stearate. These materials were then converted into microtablet form. The total percentage of propafenone in this example is 80% (1600 / 2000 = .80). '588 Patent, Col.7, lines 48-54

[5] Pich exemplifies the microtablet as having 80% active ingredient content in Example 5, however, as shown above, the specification does not so limit the active ingredient content in the microtablets to only 80%. Pich references "high content" throughout the specification and one example contains active ingredient of 99.5%.

19

Dr. Ernest Mario
Reliant Pharmaceuticals
November 7, 2006
Page 20

show by clear and convincing evidence, "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp v. Mylan Labs., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). Thus, the first inquiry is whether the patentee's act is material. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003). Next, it is necessary to determine if the requisite intent to mislead was present. *Id.* There is a balance between materiality and intent: the more material the reference is, the smaller the burden necessary to show an intent to deceive (and *vice versa*). *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984); *see also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006) (finding summary judgment for inequitable conduct appropriate if there has been a failure to supply highly material information and the applicant knew of the information, the applicant knew or should have known of the material of the information, and the applicant has provided no credible explanation for withholding the information.)

Here, highly material prior art was never disclosed with the intent to deceive the Patent Office. As discussed in the foregoing, Pich is highly material prior art that reads on the claims of the '588 patent. Pich describes cylindrical microtablets containing, in one example, 80% propafenone. Pich was not, however, disclosed to the PTO examiner. BASF Aktiengesellschaft, the assignee of record during the prosecution of the '287 patent, was also the corporate parent of Knoll Aktiengesellshaft, the assignee of record during the prosecution of the '588 patent. There is clear evidence that Knoll knew about Pich at the time that the '588 patent was filed. Even though BASF is the assignee of record, court documents indicate that **Knoll** and McNeil entered into a license agreement in 1988 with Pich as its very subject matter. *McNeilab, Inc. v. Scandipharm, Inc.*, 862 F. Supp. 1351, 1353 (E.D. Pa. 1994). The license stated, "KAG hereby grants to McNeil a right and license to use the Know-How relating to the Product and the Patent Rights to make, use and sell the Product within the Territory. Such right and license shall be exclusive." *Id.* at 1353-1354. Thus, it is clear that Knoll was aware of Pich because Knoll granted McNeil a license to use that patent. Since Pich is very relevant (it discloses propafenone microtablets with the same characteristics of the claimed invention), the burden to show intent is commensurately reduced. Therefore, the '588 patent is unenforceable because Knoll failed to disclose material prior art during the prosecution of the '588 patent.

## V.    CONCLUSION

The marketing of Par's proposed Propafenone HCl extended release tablet, in the United States will not infringe any claims of the '588 patent. Moreover, all of the claims of the '588 patent are invalid and unenforceable.

Par expressly reserves the right to develop and make other arguments or affirmative claims, and to assert any defenses relating to non-infringement, invalidity and/or unenforceability of the claims of the '588 patent should grounds become apparent in the future.

00409689.DOC

## OFFER OF CONFIDENTIAL ACCESS AND CONFIDENTIALITY AGREEMENT

## PURSUANT TO 21 U.S.C. § 355(J)(5)(C)(I)(III)

THIS OFFER OF CONFIDENTIAL ACCESS AND CONFIDENTIALITY AGREEMENT

("Agreement") by and between Par Pharmaceutical, Inc., a Delaware corporation having a

place of business at 300 Tice Boulevard, 3rd Floor, Woodcliff Lake, NJ 07677 ("Par"), and

Reliant Pharmaceuticals, Inc. a Delaware corporation having a place of business at 110 Allen

Road, Liberty Corner, NJ 07938 ("Reliant"), is made effective upon a request by Reliant for

access to Par's Abbreviated New Drug Application for Propafenone HCl ("Par's ANDA").

W I T N E S S E T H :

WHEREAS, in accordance with § 505(j)(5)(C)(i)(III) of the Federal Food, Drug and
Cosmetic Act as amended by Title XI of the Medicare Prescription Drug, Improvement and
Modernization Act of 2003, Par offers to make certain "Information" (as defined below)
concerning its ANDA available to Reliant subject to the terms and conditions of this
Agreement;

NOW, THEREFORE, in consideration of the foregoing premises and the furnishing of
Information by Par, the receipt and sufficiency of which is hereby acknowledged, and
intending to be legally bound hereby, the parties agree as follows:

1.     **DEFINITIONS**

(a)     "Information" means any and all information that the Providing Party (as hereafter

defined) or its Representatives provides or furnishes to the Receiving Party (as hereafter defined)

or its Representatives, regardless of whether: (i) such Information is specifically marked or

designated as "confidential" or "proprietary," (ii) such Information is patentable, copyrightable

or otherwise protected by law, or (iii) such Information is furnished verbally, in writing or in

electronic form. "Information" includes, but is not limited to, any and all notes, memoranda,

analyses, compilations, studies or other documents (whether in hard copy or electronic media)

CONFIDENTIAL

prepared by either party which contain or otherwise reflect such Information, and any and all copies, extracts or other reproductions of any of the same.

(b)     Notwithstanding the foregoing, the term "Information" does not include information that: (i) is or becomes available to the public through no wrongful act of the Receiving Party or its Representatives; (ii) is known to the Receiving Party on the date of this Agreement, as evidenced by written records of the Receiving Party existing on said date; (iii) is received from a third party who has the right to disclose the same to the Receiving Party; (iv) is in the rightful possession of the Receiving Party free of any obligation of confidentiality; or (v) is independently developed by the Receiving Party without reference to, or misuse of, Information furnished by the Providing Party.

(c)     "Providing Party" means the party furnishing Information, and includes its subsidiary and affiliated entities.

(d)     "Receiving Party" means the party receiving Information, and includes its subsidiary and affiliated entities.

(e)     "Representatives" means any party's employees, agents or other representatives, including advisors, attorneys, accountants, financial advisors and potential financing sources.

## 2.    CONFIDENTIALITY

(a)     The information is being provided for the sole and limited purpose of allowing Reliant to evaluate whether to file a patent infringement suit under the Hatch-Waxman Act relating to U.S. Patent No. 5,681,588 (the "Listed Patent"), which is the subject of Par's ANDA certification pursuant to § 505(j)(2)(A)(vii)(IV).

2

CONFIDENTIAL

(b)        Persons to whom Reliant is entitled to provide access to the Information under this Agreement are restricted to (i) outside counsel engaged or employed by the Receiving Party to represent them and the staff of such outside counsel, including paralegal, secretarial and clerical personnel who are engaged in assisting such counsel, provided that such outside counsel has been identified to the Providing Party in writing, (ii) no more than 2 in-house counsel or members of the Intellectual Property Department—who have no patent prosecution responsibilities and who are identified to Par; and (iii) independent consultants and experts assisting in the evaluation of the Information for the Receiving Party and any employees and assistants under the control of such consultant or expert.

(c)        Persons provided access to the Information shall: (i) agree to keep Information furnished to them by the Providing Party or Reliant strictly confidential and not disclose it to unauthorized employees or agents of Reliant to any third party; (ii) take all reasonable precautions to safeguard such Information against unauthorized disclosure; (iii) agree to be bound by the provisions of this Agreement and the Providing Party's enforcement of this Agreement against it; and (iv) not take any action inconsistent with the Providing Party's ownership of such Information.

(d)        Except to the extent required by law, regulations,  or judicial process and in accordance with paragraph 4 below, the Receiving Party shall not disclose to any third person or entity other than those provided for in paragraph 2(b): (i) the Providing Party's Information, (ii) the fact that such Information was disclosed to the Receiving Party, or (iii) the fact that an evaluation is taking place with respect to the Information, including the status thereof, unless exempted from one or more of these prohibitions by the express prior written consent or authorization of the Providing Party.

3

**CONFIDENTIAL**

(e)     The Receiving Party shall not copy, reproduce, or reduce to writing any part of the Information furnished to it by the Providing Party except as is reasonably necessary to accomplish the purpose of the Agreement.

(f)     The Receiving Party shall be responsible for any breach of this Agreement by its officers, directors, employees or other Representatives, and shall take all reasonable measures to restrain such persons from the unauthorized use or disclosure of the Information.

## 3.     USE OF INFORMATION

The Receiving Party shall use the Information solely for the limited purpose of evaluating whether to file a suit alleging infringement of the Listed Patents and for no other purpose.

## 4.     GOVERNMENTAL REQUESTS FOR DISCLOSURE

In the event that the Receiving Party or any of its Representatives receives a request or is required by applicable law to disclose to a court or government agency of competent jurisdiction all or any part of the Providing Party's Information, the Receiving Party or its Representatives shall promptly notify the Providing Party of the request, and shall to the extent requested, consult with and assist the Providing Party in seeking a protective order or other appropriate protective remedy. If such order or other remedy is not obtained or the Providing Party waives compliance with the terms hereof, the Receiving Party or its Representatives, as the case may be, shall disclose only that portion of the Information which, in the reasonable and good faith opinion of its counsel, is legally required to be disclosed, and shall exercise their respective best efforts to assure that confidential treatment will be accorded such Information by the persons or entities receiving it. The Providing Party shall be given a reasonable opportunity to review the Information prior to its disclosure.

4

CONFIDENTIAL

**5.    NO REPRESENTATION, COMMITMENT, LICENSE OR WAIVER**

(a)    The Providing Party makes no representation or warranty of any kind, whether express or implied, about the accuracy or completeness of the Information. Neither the Providing Party, nor any of its officers, directors, shareholders, employees or Representatives shall have any liability to the Receiving Party or to any other person or entity resulting from use of the Information.

(b)    No failure or delay by the Providing Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

**6.    RETURN OF INFORMATION**

(a)    If the Receiving Party does not file suit against Par alleging infringement of the Listed Patent within forty-five (45) days of receipt of the Notice and Detailed Statements (the "45-day period") to which this offer pertains, the Receiving Party shall cause persons entitled to access to the Information thirty (30) days after the expiration of the 45-day period, to destroy or return to Par the portions of the ANDA provided and all notes, analyses, studies or other documents to the extent that they contain information in the ANDA, and the Receiving Party shall notify Par that this has been done.

(b)    If the Receiving Party files suit against Par alleging infringement of the Listed Patent within the 45-day period:

(1)    While the litigation is pending, the portions of the ANDA provided and all notes, analyses, studies or other documents to the extent that they contain information in the ANDA, shall be treated as Information under the highest level of confidentiality under any protective order entered in the action brought against Par. Until such a protective order is entered, and

CONFIDENTIAL

becomes applicable to such applicable Information, the terms of this Offer of Confidential

Access continue to apply;

(2)    Unless otherwise provided in a protective order in an infringement action as

identified in paragraph 6(b)(1), the Receiving Party shall cause persons entitled to access to the

Information to destroy or return to Par the portions of the ANDA provided and all notes,

analyses, studies or other documents prepared to the extent that they contain information in the

ANDA, within thirty (30) days after the final determination of the action brought against Par.

## 7.    INJUNCTIVE RELIEF

The parties agree that money damages will not be a sufficient remedy for any breach of

this Agreement by the Receiving Party or its Representatives, and that the Providing Party is

entitled to injunctive relief and specific performance as remedies for any such breach.  Such

remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement but

shall be in addition to all other remedies available at law or in equity.

## 8.    TERM; TERMINATION

This Agreement shall be effective upon execution of this Agreement by Par and Reliant

for providing access to Par's ANDA, and shall remain in effect until such time as the

Information is returned or destroyed pursuant to Paragraph 6 above.  The Agreement may be

renewed upon such terms as may be agreed upon by the parties.  Upon termination of this

Agreement, the Receiving Party shall fulfill its obligations to return the Providing Party's

Information pursuant to above paragraph 6 of this Agreement.  The Receiving Party's obligations

of confidentiality pursuant to above paragraph 2 shall survive the termination of this Agreement.

CONFIDENTIAL

9.    **SEVERABILITY**

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision, all of which shall remain in full force and effect.

10.    **ASSIGNMENT**

This Agreement shall not be assigned without the prior written consent of the Providing Party.

11.    **GOVERNING LAW**

This Agreement shall be construed in accordance with the laws of the State of New York, without regard to conflict of laws principles.

12.    **HEADINGS**

The section headings in this Agreement are for convenience only, and shall not alter or affect the meaning or interpretation of any provision of this Agreement.

13.    **COUNTERPARTS**

This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same Agreement.

CONFIDENTIAL

## 14.    COMMUNICATIONS

Delivery of any counterpart signature page of this Agreement, written communication or notice hereunder by facsimile shall be equally as effective as delivery of a manually executed original of such counterpart signature page, communication or notice.  Any party delivering a counterpart signature page, written communication or notice hereunder by facsimile shall also deliver a confirmatory hand-signed original.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed upon a request by Reliant for access to Par's ANDA.

By: _Michelle Bonomi-Huvala_

Name: _Michelle Bonomi-Huvala_

Title: _Sr. Director, Regulatory Affairs_

Date: _11/07/2006_

PAR PHARMACEUTICAL, INC.

By: _____

Name: _____

Title: _____

Date: _____

RELIANT PHARMACEUTICALS, INC.

8

# EXHIBIT 24

REDACTED

# EXHIBIT 25

C O N F I D E N T I A L

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

ORIGINAL

-------------------------------------x

RELIANT PHARMACEUTICALS, INC.,

                Plaintiff,

     -against-       Civil Action

                    No. 06-774-JJF

PAR PHARMACEUTICALS, INC.,

                Defendant.

-------------------------------------x

             September 7, 2007

             12:20 p.m.


    Deposition of ARTHUR HOAG, taken by

Plaintiff, pursuant to Notice, at the offices of

Kirkland & Ellis LLP, 153 East 53rd Street, New

York, New York, before ERIC J. FINZ, a Shorthand

Reporter and Notary Public within and for the

State of New York.

ARTHUR HOAG

1

2      Q.      Whenever you started doing work for

3  Par on the '588 patent, you understood that that

4  work was adverse to the interests of Reliant;

5  didn't you?

6              MR. HARRIS:  Objection to the form.

7              You can answer.

8      A.      Yes.

9      Q.      When you started doing work for Par

10 relating to the '588 patent, what steps did you

11 take to go back to determine whether you had

12 done any work for Reliant relating to the '588

13 patent?

14              MR. HARRIS:  Objection to the form.

15              You can answer.

16     A.      Can you repeat the question?

17              MR. BLUMENFELD:  Sure.  Maybe the

18 reporter can read it back.

19              (Record read as requested.)

20     A.      Well, I never did anything specific

21 to look and see if I did any work related to the

22 '588 patent, because I didn't recall that I had

23 ever done anything related to the '588 patent.

24 But I did our normal conflict check to see if we

25 had any matters relating to Rythmol or relating

```
 1                    ARTHUR HOAG
 2   to the '588 patent, and I didn't see any on our
 3   system.
 4        Q.     And when you say on our system,
 5   what do you mean?
 6        A.     The computer system in the office.
 7               MR. BLUMENFELD:  Let's mark as
 8   Plaintiff's Exhibit 22, documents that I think
 9   were produced to us yesterday by Mr. Harris that
10   are numbered AH 01 to AH 05.
11               (Plaintiff's Exhibit 22 for
12   identification, E-mail dated October 21, 2003,
13   production numbers AH 01 through AH 05.)
14        Q.     Are these documents that you
15   reviewed this week?
16        A.     Yes.
17        Q.     When did you review them?
18        A.     This morning.
19        Q.     Do you know when these documents
20   were pulled off of your computer?
21               MR. HARRIS:  Objection to the form.
22        A.     No.
23        Q.     Do you know whether they were
24   pulled off of your computer?
25        A.     No, I don't.
```

1          ARTHUR HOAG

2      Q.     Do you have any understanding of

3  where these came from?

4      A.     I believe that I had a file on my

5  computer that contained these.

6      Q.     And if you look just at the first

7  page, for example AH 01, of Plaintiff's Exhibit

8  22, the subject there is Rythmol; right?

9      A.     Yes.

10      Q.     And on the second page, AH 02,

11  that's an E-mail from Mr. Berdon to you;

12  correct?

13      A.     Yes.

14      Q.     And the subject there is Rythmol;

15  right?

16      A.     Yes.

17      Q.     Then the third page, AH 03, that's

18  an E-mail from Mr. Berdon to you; is that right?

19      A.     The third one?

20      Q.     Third page, AH 03.

21      A.     Well, I guess I'm cc'd on it.

22      Q.     Right, it's carbon copied to you,

23  and the subject there is Rythmol patent

24  assignment; right?

25      A.     Yes.

1              ARTHUR HOAG

2        Q.        So when you undertook to do the

3    work for Par on the '588 patent, what steps did

4    you take to determine whether you had done any

5    work relating to Rythmol?

6                  MR. HARRIS:  Asked and answered.

7                  You can answer it again.

8        A.        I went through our normal conflict

9    procedure of checking whether there were matters

10   that we had open related to Rythmol or -- open

11   related to Rythmol.

12       Q.        Did you check on your computer to

13   see whether you had documents relating to

14   Rythmol?

15       A.        No.

16       Q.        If you had, would you have found

17   these documents that are marked as Plaintiff's

18   Exhibit 22?

19                 MR. HARRIS:  Objection to the form.

20       A.        Possibly.

21       Q.        You don't know whether they were on

22   your computer at that time or not?

23       A.        No, I mean I don't know if I would

24   have looked in the right spots or anything like

25   that.  It was in an old archive file, not

ARTHUR HOAG

1

2  something that was, you know, readily visible.

3        Q.      But you're not suggesting that you

4  didn't have Rythmol documents from your work for

5  Reliant on your computer at the time you started

6  working for Par in connection with the '588

7  patent?

8              MR. HARRIS:  Note my objection to

9  the form and to the use of the term Rythmol

10 documents.

11             But you can otherwise answer.

12       A.      I believe these documents were

13 probably on my computer.

14       Q.      At the time you started doing work

15 for Par on the '588 patent?

16       A.      Yes.

17       Q.      You talked about the normal

18 conflict check or conflict clearance at FLH.

19 What did that involve?

20             MR. HARRIS:  I'm sorry.  Are you

21 asking him what that formally involves?

22             MR. BLUMENFELD:  No, I was asking

23 what it involved here.

24             MR. HARRIS:  Well, the question

25 wasn't clear.

1              ARTHUR HOAG

2              You can answer with that.

3        A.      I don't recall specifically what I

4   did on this matter at all.  I can only speak to

5   what we normally do and what I would normally do

6   to check conflicts.

7        Q.      When the '588 patent matter came in

8   to FLH, were you the partner who was going to be

9   primarily in charge of that matter?

10       A.      I don't know what you mean by the

11  '588 patent matter coming in to FLH.

12       Q.      Well, at some point Par hired FLH

13  to do -- to provide legal services relating to

14  the '588 patent; is that right?

15       A.      I don't think that's an accurate

16  characterization of the way we work with that

17  client, no.

18       Q.      Well, why don't you tell me how

19  you, how you, being FLH, got involved with the

20  '588 patent for Par.

21              THE WITNESS:  I have a privilege

22  question.

23              MR. HARRIS:  If you can answer that

24  question without implicating a privilege, I

25  would instruct you to answer it.

Page 24

```
 1                    ARTHUR HOAG
 2    received.  So when you refer to the information,
 3    I don't know what information it is and whether
 4    it was public or not.
 5         Q.      The provisions of the draft asset
 6    purchase agreement you were looking at --
 7         A.      I would have operated under the
 8    presumption, but I don't know that they were
 9    given to anybody else publicly.
10         Q.      You operated under the presumption
11    that they were confidential Reliant information;
12    right?
13                 MR. HARRIS:  Objection to the form.
14         Q.      And that's the way you treat
15    information that you get from clients; right?
16         A.      Absolutely.
17         Q.      And you know that that's the way
18    clients expect you to treat information they
19    give you?
20                 MR. HARRIS:  Objection to the form.
21                 You can answer if you can.
22         A.      I'm sorry, the question?
23         Q.      You understand that clients expect
24    you to treat information that they give you as
25    confidential?
```

```
 1        ARTHUR HOAG - CONFIDENTIAL

 2        A.      Yes.

 3        Q.      Can you tell by looking at

 4   Plaintiff's Exhibit 25 what parts of the

 5   comments that Mr. Berdon passed along to

 6   Mr. Lerner came from you?

 7        A.      No.

 8        Q.      Do you have any memory which part

 9   of the comments came from you?

10        A.      It's hard because I remember having

11   a discussion with Andy about these topics

12   generally.  So, you know, whether they were, you

13   know, my thoughts or his thoughts or collective

14   thoughts is hard for me to say.  But, you know,

15   looking at this I certainly do remember talking

16   about these topics.

17        Q.      There is no question in your mind

18   that you were providing legal advice to Reliant

19   on the patent assignment that included the '588

20   patent; right?

21             MR. HARRIS:  Let's just be clear.

22   Are you asking whether he was providing it

23   directly to Reliant or whether he understood

24   that Mr. Berdon might be reporting to Reliant?

25        Q.      You understood that the advice you
```

1          ARTHUR HOAG - CONFIDENTIAL

2    were giving was advice to be given to Reliant;

3    correct?

4               MR. HARRIS:  Objection to the form.

5               You may answer.

6        A.     I believe that's correct.

7        Q.     Did you ever talk to Mr. Lerner?

8        A.     I don't recall whether I've ever

9    talked to Mr. Lerner.

10               MR. BLUMENFELD:  Let's mark as

11   Plaintiff's Exhibit 26, something called Exhibit

12   D, assignment of patents.  And this actually is

13   marked PAR-FLH 010, which I take it means that

14   it came from Frommer Lawrence & Hoag's files; is

15   that right, Mr. Harris?

16               MR. HARRIS:  I don't know the

17   specific document, but sounds like it must be

18   correct.

19               (Plaintiff's Exhibit 26 for

20   identification, document headed "Exhibit D,

21   assignment of patents," production numbers

22   PAR-FLH 010 through PAR-FLH 011.)

23               MR. HARRIS:  This document can't be

24   kept under the same terms as the nonwaiver

25   agreement because it's not covered by the

```
 1        ARTHUR HOAG - CONFIDENTIAL
 2   nonwaiver agreement.  If you want to make it
 3   confidential under the confidentiality
 4   agreement, I have no objection.
 5            MR. BLUMENFELD:  You know, I want
 6   to keep it confidential under the nonwaiver
 7   agreement, but I think we are better off
 8   continuing this discussion at some other time.
 9            MR. HARRIS:  All I'm saying, Jack,
10   is it wasn't produced under the nonwaiver
11   agreement so it can't be confidential under the
12   nonwaiver agreement.  But you can do whatever
13   you want.
14            There is an objection to it being
15   on the confidential record and we will deal with
16   it later.
17        Q.     Mr. Hoag, you see that Exhibit,
18   Plaintiff's Exhibit 26 is Exhibit D, assignment
19   of patents; right?
20        A.     Yes.
21        Q.     Is this a document that you
22   reviewed for Reliant back in October of 2003?
23        A.     I think so.
24        Q.     And did you provide legal advice
25   directly or indirectly to Reliant about what the
```

```
 1                   ARTHUR HOAG
 2        Q.      Would that have included the '588
 3   patent?
 4              MR. HARRIS:  I'm going to allow him
 5   to answer that question provided it is
 6   understood that it is a waiver of no privilege.
 7   If it's going to be claimed that this, the
 8   answer to that question waives a privilege, then
 9   I'm going to direct him not to respond.
10              MR. BLUMENFELD:  I won't claim that
11   that waives the privilege, and I think that much
12   information is probably on your privilege logs.
13   Or not yours, but your client's.
14        A.      I'm sorry, the question again?
15        Q.      Whether the patents you reviewed
16   included the '588 patent.
17        A.      I'm sure it did.
18        Q.      It also says you worked on notice
19   letter.
20              Do you see that?
21        A.      Yes.
22        Q.      And by notice letter, does that
23   mean the notice of Paragraph IV certification
24   that Par provided to Reliant concerning the '588
25   patent?
```

1                         ARTHUR HOAG

2          A.    Yes.

3          Q.    The notice letter, you're familiar

4     with that notice letter; aren't you?

5          A.    Yes.

6          Q.    That notice letter has attached to

7     it a detailed statement of reasons.  Do you

8     remember that?

9          A.    Yes.

10         Q.    And that detailed statement of

11    reasons was prepared by FLH; wasn't it?

12         A.    Yes.

13         Q.    What was your role in preparing the

14    detailed statement of reasons?

15         A.    I reviewed the drafts prepared by

16    the associates in our firm.

17         Q.    And did you have any input into

18    what the detailed statement said?

19         A.    I don't recall my input on that,

20    actually.  I had some input on it, but not a

21    great deal.

22              MR. HARRIS:  Jack, one second.  We

23    are still on the confidential record because we

24    didn't go off it.

25              MR. BLUMENFELD:  We can certainly

1

2                    C E R T I F I C A T E

3    STATE OF NEW YORK       )

                                    : ss.

4    COUNTY OF NEW YORK      )

5

6        I, ERIC J. FINZ, a Shorthand Reporter and

7    Notary Public within and for the State of New

8    York, do hereby certify:

9        That ARTHUR HOAG, the witness whose

10   deposition is hereinbefore set forth, was duly

11   sworn by me and that such deposition is a true

12   record of the testimony given by the witness.

13       I further certify that I am not related to

14   any of the parties to this action by blood or

15   marriage, and that I am in no way interested in

16   the outcome of this matter.

17       IN WITNESS WHEREOF, I have hereunto set my

18   hand this _8th_ day of _September_, 2007.

19

20

21

22                    ERIC J. FINZ

23

24

25

# EXHIBIT 26

NON-CONFIDENTIAL
DANIEL G. BROWN

ORIGINAL

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

-----------------------------------------x

RELIANT PHARMACEUTICALS, INC.,

                         Plaintiff,

                                   Civil Action No.

      -against-          06-774-JJF

PAR PHARMACEUTICALS, INC.,

                      Defendant.

-----------------------------------------x

                     August 29, 2007
                     10:05 a.m.

      Deposition of DANIEL G. BROWN, taken
by Plaintiff, pursuant to Notice, at the
offices of Kirkland & Ellis, Citigroup Center,
153 East 53rd Street, New York, New York,
before Georgette K. Betts, a Certified
Shorthand Reporter, Registered Professional
Reporter and Notary Public within and for the
States of New York and New Jersey.

NON—CONFIDENTIAL
DANIEL G. BROWN

Page 9

1                          Brown

2     BY MR. VUK:

3          Q.    Mr. Brown, at law firms attorneys

4     bill their time via billable hours; is that

5     correct?

6                    MR. HARRIS:   Objection.

7                    You can answer.

8          A.     At many law firms that is correct.

9          Q.     Does FLH use that system?

10         A.     For the most part, yes.

11         Q.     Is it fair to say that

12    approximately once a month FLH compiles all the

13    billable hours of its attorneys and other

14    employees onto an invoice and then sends it to

15    the firm's client?

16                   MR. HARRIS:   Objection to the

17            form.

18                   You can answer.

19         A.     For the most part, yes.

20         Q.     How do you personally record your

21    billable hours?

22         A.     I handwrite them into a diary that

23    my secretary then enters into our system.

24         Q.     How frequently do you write in

25    your entries into your diary?

NON-CONFIDENTIAL
DANIEL G. BROWN

```
1                          Brown
2         A.     Generally, contemporaneously with
3    the work that I'm doing.  Typically, within a
4    day or a couple of days thereafter.  Sometimes
5    every day, depending on what it is.
6         Q.     So it's fair to say that it varies
7    over different time periods; is that correct?
8              MR. HARRIS:  Objection to the
9         form.  His answer speaks for itself.
10              But you can answer again.
11         A.    I would say that what I just said
12   is an accurate characterization of how I do it,
13   meaning that I enter it in contemporaneously
14   with what I'm doing.  It's usually within a day
15   or two, sometimes every day depending on the
16   matter and the circumstances.
17         Q.     By "contemporaneously" you're not
18   stating that as you complete a task, you write
19   it into your diary, are you?
20              MR. HARRIS:  Objection to form.
21         A.     That is not what I meant by what I
22   just said.
23         Q.     So there's a time lag between when
24   you do the work and when you write it into your
25   diary?
```

NON-CONFIDENTIAL
DANIEL G. BROWN

Page 11

```
 1                      Brown
 2          A.     Depending on the circumstances,
 3    there can be.
 4          Q.     And that time lag can be a day; is
 5    that correct?
 6               MR. HARRIS:  Now you're arguing
 7          with the witness.  He's answered the
 8          question twice.
 9               I'll let you answer it again,
10          but I do think you're being
11          argumentative with the witness.
12          A.     In some circumstances the time lag
13    can be a day.
14          Q.     And in some circumstances you
15    testified it could be over a day, correct?
16          A.     Correct.
17          Q.     Would it ever be over a week?
18          A.     In some circumstances, yes.
19          Q.     Would it ever be over two weeks?
20          A.     Very, very rarely.
21          Q.     What sort of circumstances would
22    result in it taking over a week?
23          A.     I'm out of town on depositions for
24    over a week would be an example.  I'm at trial
25    would be an example.
```

NON—CONFIDENTIAL
DANIEL G. BROWN

Page 12

Brown

2    Q.    What if you were just extremely

3  busy?

4    A.    That's possible.  Typically, then,

5  though, I would make notes along the way.  Even

6  if I didn't complete my time entries, I would

7  make notes as to what I was working on it and it

8  would then be converted into a formal time

9  entry.

10    Q.    And you said your secretary would

11  then enter it into FLH's system; is that

12  correct?

13    A.    Correct.

14    Q.    And from the system it would work

15  its way onto an invoice; is that correct?

16    A.    That's generally correct, yes.

17    Q.    Do you know how FLH -- strike

18  that.

19      Do you know FLH's policy with

20  respect to carryover evening hours?  And what I

21  mean by that is if you worked from noon until

22  2:00 a.m., how would those two hours from

23  midnight to 2:00 a.m. be billed?

24      MR. HARRIS:  Objection to the

25    form.

NON-CONFIDENTIAL
DANIEL G. BROWN

Page 111

```
 1
 2                    C E R T I F I C A T E
 3      STATE OF NEW YORK        )
                                 )      ss.:
 4      COUNTY OF NEW YORK       )
 5
 6                I, GEORGETTE K. BETTS, a Certified
 7      Shorthand Reporter and Notary Public for
 8      the States of New York and New Jersey,
 9      do hereby certify:
10                That DANIEL G. BROWN, the witness
11      whose deposition is hereinbefore set
12      forth, was duly sworn by me and that
13      such deposition is a true record of the
14      testimony given by the witness.
15                I further certify that I am not
16      related to any of the parties to this
17      action by blood or marriage, and that I
18      am in no way interested in the outcome
19      of this matter.
20                IN WITNESS WHEREOF, I have
21      hereunto set my hand this 30th day of
22      August, 2007.
23
                        Georgette K. Betts
24              GEORGETTE K. BETTS, CSR, RPR
                   License No. 1923    N.J.
25                 License No. 000990  N.Y.
```

# EXHIBIT 27

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC.,

    Plaintiff,

    v.

PAR PHARMACEUTICAL, INC.,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 06-774-JJF

*HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES
ONLY PER D.DEL. LOCAL
RULE 26.2*

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES CONCERNING FROMMER LAWRENCE & HAUG LLP'S REPRESENTATION OF PAR IN THIS ACTION

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Par Pharmaceutical, Inc. ("Par") responds as follows to the interrogatories in plaintiff Reliant Pharmacueticals, Inc.'s ("Reliant") Interrogatories Concerning Frommer Lawrence & Haug LLP's ("FLH") Representation of Par in this Action (Nos. 1-3).

Par hereby incorporates, as if fully set forth herein, the Comments and General Objections set forth in Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify all current and former FLH attorneys, paralegals, scientific advisers and employees who represented, did work on behalf of, or billed time to Par prior to February 9, 2007 concerning this action, propafenone, sustained release propafenone formulations, the Generic Products, ANDA 78-540, DMF 11426, the '588 patent, the Pich '287 patent, Rythmol SR®, or Par's Paragraph IV certification notices to Reliant, and for each individual, identify the



EXHIBIT
1

Georgette K. Betts, CSR
8|29|07

00475060.DOC

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY*
*PER D.DEL. LOCAL RULE 26.2*

amount of time spent or actually or proposed to be billed, and describe the subject matter of the project, matter or work.

## RESPONSE TO INTERROGATORY NO. 1:

See the general objections. Par objects to this interrogatory as requesting information that is protected from discovery by the attorney-client privilege, work-product immunity, or both.

Subject to and without waiving any objections, Par responds that the following FLH personnel did work on behalf of, or billed time to Par prior to the December 28, 2006 filing of the Complaint concerning this action, propafenone, sustained release propafenone formulations, the Generic Products, ANDA 78-540, DMF 11426, the '588 patent, the Pich '287 patent, Rythmol SR®, or Par's Paragraph IV certification notices to Reliant:

REDACTED

00475060.DOC

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY*
*PER D.DEL. LOCAL RULE 26.2*

REDACTED

00475060.DOC

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY*
*PER D.DEL. LOCAL RULE 26.2*

REDACTED

00475060.DOC

*HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY*
*PER D.DEL. LOCAL RULE 26.2*

REDACTED

**INTERROGATORY NO. 2:**

Please identify all current and former FLH attorneys, paralegals, scientific advisers and employees who represented, did work on behalf of, or billed time to Par concerning "the regulatory phase [or] the preparation and submission of Par's ANDA with FDA," and for each individual, identify the amount of time spent or actually or proposed to be billed, and describe the subject matter of the project, matter or work. *See* Par Pharmaceutical, Inc.'s Answering Brief In Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify The Law Firm of Frommer Lawrence & Haug LLP at 15.

**RESPONSE TO INTERROGATORY NO. 2:**

See the general objections. Par objects to this interrogatory as requesting

information that is protected from discovery by the attorney-client privilege, work-product

immunity, or both. Par also objects to this interrogatory as unduly burdensome and duplicative

of information sought through Interrogatory 1 and disclosed in Par's response to Interrogatory 1.

See Response to Interrogatory 1.

**INTERROGATORY NO. 3:**

Please identify all current and former FLH attorneys, paralegals, scientific advisers and employees who represented, did work on behalf of, or billed time to Par concerning "developed [alleged] defenses of non-infringement for Par's formulation, invalidity and unenforceability of the '588 patent," and for each individual, identify the amount of time spent or actually or proposed to be billed, and describe the subject matter of the project, matter or work. *See* Par Pharmaceutical, Inc.'s Answering Brief In Opposition To Reliant Pharmaceuticals, Inc.'s Motion To Disqualify The Law Firm of Frommer Lawrence & Haug LLP at 15.

**RESPONSE TO INTERROGATORY NO. 3:**

00475060.DOC

*HIGHLY CONFIDENTIAL -- OUTSIDE COUNSEL'S EYES ONLY*
*PER D.DEL. LOCAL RULE 26.2*

See the general objections.  Par objects to this interrogatory as requesting information that is protected from discovery by the attorney-client privilege, work-product immunity, or both.  Par also objects to this interrogatory as unduly burdensome and duplicative of information sought through Interrogatory 1 and disclosed in Par's response to Interrogatory 1.

<u>See</u> Response to Interrogatory 1.

August 21, 2007

_____
*An Attorney for Defendant,*
*Par Pharmaceutical, Inc.*

**FROMMER LAWRENCE & HAUG LLP**
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Telephone:  (212) 588-0800
Facsimile: (212) 588-0500

**STILLMAN, FRIEDMAN & SHECHTMAN, P.C.**
John B. Harris
Mary Margulis-Ohnuma
425 Park Avenue
New York, NY 10022
Telephone:  (212) 223-0200

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (# 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  302-571-6600

*Attorneys for Defendant, Par Pharmaceutical, Inc.*

00475060.DOC

## CERTIFICATE OF SERVICE

I, John G. Taylor, Esquire, hereby certify that on August 21, 2007, I caused true and correct copies of the foregoing, *Defendant's Objections and Responses to Plaintiff's Interrogatories Concerning Frommer Lawrence & Haug LLP's Representation of Par in This Action*, to be served upon the following counsel of record in the manner indicated:

### By E-Mail and Hand Delivery

John Desmarais [jdesmarais@kirkland.com]
Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
Christine Willgoos [cwillgoos@kirkland.com]
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

### By E-Mail

Jack B. Blumenfeld [jblumenfeld@mnat.com]
Maryellen Noreika [mnoreika@mnat.com]
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

FROMMER LAWRENCE & HAUG LLP

Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0500

00475060.DOC

# EXHIBIT 28

PAR'S AMENDED PRIVILEGED DOCUMENT LOG

Reliant Pharmaceuticals, Inc. v. Par Pharmaceuticals, Inc.
Case No. 06-774 (JJF) (D. Del.)

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 1. | Memo | 9/26/06 | Andrew Wasson | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588 prepared in anticipation of litigation or trial. | AC / WP |
| 2. | Memo | 4/5/05 | Thomas Neyarapally | Ed Haug, Dan Brown, Arthur Hoag, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588. | AC |
| 3. | Memo | 1/10/05 | Thomas Neyarapally | Ed Haug, Dan Brown, Arthur Hoag, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement and invalidity of U.S. Patent No. 5,681,588. | AC |
| 4. | Patent | 1/27/05 | Thomas Neyarapally | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and reflecting attorney's mental impressions and or legal theories, and prepared in anticipation of litigation or trial. | AC/ WP |
| 5. | Memo | 3/18/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding patent search results, prepared at the request of an attorney or party. | AC |
| 6. | Memo | 3/18/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding patent search results, prepared at the request of an attorney or party. | AC |
| 7. | Memo | 2/13/07 | Omar Jabri | To File | N/A | Confidential communication containing or referring to legal advice regarding attorney disqualification motions prepared in anticipation of litigation or trial. | AC / WP |

1

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 8. | Memo | 2/16/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication containing or referring to legal advice regarding relevant provisions of the Federal Rules of Civil Procedure, prepared in anticipation of litigation and trial. | AC / WP |
| 9. | Memo | 3/7/07 | Jim Stronski | To File | N/A | Confidential communication containing legal advice regarding noninfringement and invalidity theories, prepared in anticipation of litigation or trial. | AC / WP |
| 10. | Memo | 3/8/07 | Meredith Stricker | To File | N/A | Confidential communication regarding scheduling in the Reliant v. Par litigation, prepared at the request of an attorney or party in anticipation of litigation or trial. | AC / WP |
| 11. | Memo | 3/15/07 | Meredith Stricker | To File | N/A | Confidential communication regarding scheduling in the Reliant v. Par litigation, prepared at the request of an attorney or party in anticipation of litigation or trial. | AC / WP |
| 12. | Memo | 3/16/07 | Meredith Stricker | To File | N/A | Confidential communication regarding scheduling in the Reliant v. Par litigation, prepared at the request of an attorney or party in anticipation of litigation or trial. | AC / WP |
| 13. | Memo | 3/20/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication containing or referring to legal advice regarding attorney disqualification, prepared in anticipation of litigation or trial. | AC / WP |
| 14. | Memo | 3/21/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication containing or referring to legal advice regarding attorney disqualification prepared in anticipation of litigation or trial. | AC / WP |

2

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 15. | Memo | 3/29/07 | Meredith Stricker | To File | N/A | Confidential communication regarding attorney disqualification in the Reliant v. Par litigation, prepared at the request of an attorney or party in anticipation of litigation or trial. | AC / WP |
| 16. | Memo | 4/5/07 | John Taylor | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 17. | Memo | 3/29/07 | John Taylor | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 18. | Memo | 5/4/07 | Jim Stronski | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 19. | Memo | 6/22/07 | John Taylor | To File | N/A | Confidential communication containing or referring to legal advice regarding Reliant's document requests, prepared in anticipation of litigation or trial. | AC / WP |
| 20. | Memo | 7/11/07 | Omar Jabri | To File | N/A | Confidential communication containing or referring to legal advice regarding unenforceability of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 21. | Memo | 7/11/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication containing or referring to legal advice regarding unenforceability of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 22. | Memo | 7/17/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice pertaining to litigation strategy, prepared in anticipation of litigation or trial. | AC / WP |

3

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 23. | Memo | 7/20/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement, prepared in anticipation of litigation or trial. | AC / WP |
| 24. | Memo | 7/11/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam Ed Haug, Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication containing or referring to legal advice regarding unenforceability of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 25. | Memo | 7/31/07 | Jim Stronski, John Taylor | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding discovery, prepared in anticipation of litigation or trial. | AC / WP |
| 26. | Memo | 7/31/07 | Jim Stronski, John Taylor | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding discovery, prepared in anticipation of litigation or trial. | AC / WP |
| 27. | Memo | 7/23/07 | Omar Jabri | Ed Haug, Jim Stronski, John Taylor, Sam | N/A | Confidential communication containing or referring to legal advice regarding noninfringement of Par's propafenone, prepared in anticipation of litigation or trial. | AC / WP |

4

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | | | |
| 28. | Calendar | 1/12/07 | Kyle Haug | To File | N/A | Information collected in preparation for rendering legal advice regarding scheduling, prepared at the request of an attorney or party and prepared in anticipation of litigation or trial. | AC/WP |
| 29. | Memo | 7/25/06 | Ali Berkin | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding patent searches for propafenone, prepared at the request of an attorney or party, and prepared in anticipation of litigation or trial. | AC / WP |
| 30. | Memo | 6/17/05 | Andrew Kopelman | Thomas Neyarapally | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 31. | Memo | 7/25/06 | Ali Berkin | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding patent searches for propafenone, prepared at the request of an attorney or party and prepared in anticipation of litigation or trial. | AC/WP |
| 32. | Memo | 6/17/05 | Andrew Kopelman | Thomas Neyarapally | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 33. | Memo | 6/20/05 | Thomas Neyarapally | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|-----|---------------|------|-----------|--------------|-------------------|------------------------|-----------------|
| 34. | Memo | 5/11/05 | Thomas Neyarapally | Ed Haug, Dan Brown, Arthur Hoag, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588. | AC |
| 35. | Memo | 11/3/04 | Brian Malkin | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity and noninfringement of U.S. Patent No. 5,681,588. | AC |
| 36. | Memo | 2/2/05 | Thomas Neyarapally | Ed Haug, Dan Brown, Arthur Hoag, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement and invalidity of U.S. Patent No. 5,681,588. | AC |
| 37. | Memo | 5/12/06 | Andrew Wasson | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity and noninfringement of U.S. Patent No. 5,681,588, and prepared in anticipation of litigation or trial. | AC / WP |
| 38. | Memo | 3/21/05 | Thomas Neyarapally | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and patent search results. | AC |
| 39. | Memo | 6/3/05 | Thomas Neyarapally | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and patent search results, prepared in anticipation of litigation or trial. | AC / WP |
| 40. | Memo | 9/26/06 | Andrew Wasson | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and patent search results prepared in anticipation of litigation or trial. | AC / WP |
| 41. | Memo | 8/23/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |

6

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 42. | Memo | 8/23/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 43. | Memo | 7/26/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC |
| 44. | Memo | 3/18/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party. | AC |
| 45. | Memo | 8/23/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 46. | Memo | 7/20/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 47. | Memo | 3/22/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party. | AC. |
| 48. | Memo | 6/23/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 49. | Assignment | 10/5/06 | Meredith Stricker | To File | N/A | Information collected at the request of an attorney or party in preparation for rendering legal advice regarding invalidity, prepared in anticipation of litigation or trial. | AC/ WP |
| 50. | Memo | 9/26/06 | Andrew Wasson | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation | AC / WP |

7

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | Brian Malkin, Ali Berkin | | or trial. | |
| 51. | Letter | 10/26/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 52. | Letter | 11/16/06 | Angus Chen | Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding extended release propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 53. | Memo | 11/20/06 | Bryan Braunel | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's propafenone and ANDA requirements, prepared in anticipation of litigation or trial. | AC / WP |
| 54. | Memo | 9/26/06 | Omar Jabri | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 55. | Memo | 9/26/06 | Andrew Wasson | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 56. | Memo | 10/5/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 57. | Patent | 10/26/06 | Ali Berkin | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity, prepared at the request of an | AC / WP |

8

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | attorney or party and in anticipation of litigation or trial. | |
| 58. | Memo | 10/6/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding unenforceability and invalidity, prepared in anticipation of litigation or trial. | AC / WP |
| 59. | Memo | 11/6/06 | Andrew Wasson | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding ANDA amendments, prepared in anticipation of litigation or trial. | AC / WP |
| 60. | Memo | 10/6/06 | Andrew Wasson, Seth Snyder | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 61. | Memo | 10/4/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 62. | Memo | 10/4/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 63. | Memo | 10/3/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity and | AC / WP |

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | | unenforceability of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | |
| 64. | Memo | 8/14/06 | Omar Jabri | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Brian Malkin, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding invalidity and unenforceability of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 65. | Memo | 11/3/04 | Brian Malkin | Ed Haug, Dan Brown, Arthur Hoag, Thomas Neyarapally, Andrew Wasson, Ali Berkin | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement and invalidity of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC |
| 66. | Chart | 8/23/05 | Thomas Neyarapally | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared in anticipation of litigation or trial. | AC / WP |
| 67. | Memo | 10/24/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 68. | Memo | 10/26/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity and patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 69. | Chart | 9/27/06 | Andrew Wasson | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, prepared in anticipation of litigation or trial. | AC / WP |
| 70. | Memo | 9/25/06 | Andrew Wasson | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and | AC / WP |

10

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | providing legal advice regarding noninfringement of Par's propafenone, prepared in anticipation of litigation or trial. | |
| 71. | Memo | 9/26/06 | Stephen Kunen | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding Par's propafenone, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 72. | Memo | 6/23/06 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding invalidity of U.S. Patent No. 5,681,588, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 73. | Email | 7/20/07 | Lawrence Brown | Jim Stronski | Ed Haug, John Taylor, Omar Jabri, Stacy Redman | Confidential communication containing or referring to legal advice regarding Par's noninfringement strategy, prepared in anticipation of litigation or trial. | AC / WP |
| 74. | Email | 7/20/07 | Jim Stronski | Lawrence Brown, John Taylor | Ed Haug, Omar Jabri, Stacy Redman | Confidential communication containing or referring to legal advice regarding litigation strategy, prepared in anticipation of litigation or trial. | AC / WP |
| 75. | Notes | 3/17/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding patent search results, prepared at the request of an attorney or party. | AC |
| 76. | Notes | 8/23/05 | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 77. | Memo | N/A | Ali Berkin | To File | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding the manufacture of propafenone, prepared at the request of an attorney or party. | AC |
| 78. | Email | 8/23/05 | Ali Berkin | Virginia Warren | N/A | Confidential communication requesting information for the purpose of rendering legal advice regarding patent search results, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 79. | Email | 10/11/06 | Andrew Wasson | Ali Berkin | N/A | Confidential communication containing or referring to legal advice regarding the manufacture of propafenone, prepared | AC / WP |

11

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | in anticipation of litigation or trial. | |
| 80. | Email | 10/11/06 | Andrew Wasson | Ali Berkin, Thomas Neyarapally | Seth Snyder | Confidential communication containing or referring to legal advice regarding propafenone Notice Letter, prepared in anticipation of litigation or trial. | AC / WP |
| 81. | Email | 10/11/06 | Andrew Wasson | Thomas Neyarapally | Ali Berkin | Confidential communication containing or referring to legal advice regarding propafenone active pharmaceutical ingredient searches, prepared in anticipation of litigation or trial. | AC / WP |
| 82. | Email | 9/29/06 | Andrew Wasson | Ali Berkin, Seth Snyder | Sam Desai | Confidential communication containing or referring to legal advice regarding propafenone invalidity searches, prepared in anticipation of litigation or trial. | AC / WP |
| 83. | Email | 4/11/05 | Dan Brown | Thomas Neyarapally | N/A | Confidential communication containing or referring to legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 84. | Email | 4/11/05 | Dan Brown | Thomas Neyarapally | N/A | Confidential communication containing or referring to legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 85. | Email | 11/15/06 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication containing or referring to legal advice regarding the propafenone Notice Letter, prepared in anticipation of litigation or trial. | AC / WP |
| 86. | Email | 11/17/06 | Bryan Braunel | Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding Par's propafenone ANDA, prepared in anticipation of litigation or trial. | AC / WP |
| 87. | Email | 11/16/06 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication containing or referring to legal advice regarding the propafenone Notice Letter, prepared in anticipation of litigation or trial. | AC / WP |
| 88. | Email | 12/15/06 | Andrew Wasson | Dan Brown, Arthur Hoag | Bryan Braunel | Confidential communication containing or referring to legal advice regarding Par's propafenone ANDA prepared in anticipation of litigation or trial. | AC / WP |
| 89. | Email | 12/15/06 | Angus Chen | Andrew Wasson, Arthur Hoag, Dan Brown | Paul Campanelli, Steven Engle | Confidential communication requesting legal advice regarding Par's propafenone ANDA, prepared in anticipation of litigation or trial, and attaching an Offer of Confidential Access. | AC / WP |

12

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 90. | Email | 12/20/06 | Andrew Wasson | Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding the Reliant v. Par Complaint, prepared in anticipation of litigation or trial. | AC / WP |
| 91. | Email | 12/31/06 | Ed Haug | Arthur Hoag, Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching a 12/29/07 letter from Gerald Flattmann to Ed Haug. | AC / WP |
| 92. | Email | 1/8/07 | Rita Selby | Dan Brown | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding investigation of disqualification allegations, prepared at the request of an attorney or party in anticipation of litigation or trial, and attaching a November 2003 invoice from FLH to Reliant. | AC / WP |
| 93. | Email | 1/8/07 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication containing or referring to legal advice regarding the Reliant v. Par Complaint, prepared in anticipation of litigation or trial, and attaching the Summons and Complaint. | AC / WP |
| 94. | Email | 1/8/07 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication containing or referring to legal advice regarding the Reliant v. Par Complaint, prepared in anticipation of litigation or trial. | AC / WP |
| 95. | Email | 1/9/07 | Angus Chen | Andrew Wasson, Dan Brown, Arthur Hoag | N/A | Confidential communication requesting legal advice regarding Par's propafenone ANDA, prepared in anticipation of litigation or trial. | AC / WP |
| 96. | Email | 1/9/07 | Andrew Wasson | Arthur Hoag, Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding the propafenone Notice Letter, prepared in anticipation of litigation or trial, and attaching the propafenone Notice Letter. | AC / WP |
| 97. | Email | 1/10/07 | Angus Chen | Andrew Wasson, Dan Brown, Arthur Hoag | N/A | Confidential communication requesting legal advice regarding Par's propafenone ANDA, prepared in anticipation of litigation or trial. | AC / WP |
| 98. | Email | 1/19/07 | Angus Chen | Arthur Hoag, Dan Brown, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's propafenone ANDA, prepared in anticipation of litigation or trial. | AC / WP |
| 99. | Email | 1/26/07 | Arthur Hoag | Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding docket entries in the Reliant v. Par | AC / WP |

13

0047908.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 100. | Email | 1/26/07 | Dan Brown | Thomas Haughey, Paul Campanelli, Angus Chen, | Ed Haug, Arthur Hoag | Confidential communication containing or referring to legal advice regarding investigation of disqualification allegations, prepared in anticipation of litigation or trial, and attaching January 25, 2007 letter from Gerald Flattmann to Ed Haug. | AC / WP |
| 101. | Email | 1/29/07 | Angus Chen | Dan Brown | N/A | Confidential communication requesting legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching the Amended Complaint. | AC / WP |
| 102. | Email | 1/29/07 | Omar Jabri | Dan Brown | N/A | Confidential communication containing or referring to legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 103. | Email | 1/29/07 | Angus Chen | Dan Brown | N/A | Confidential communication requesting legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching Notice of Service of Process for the Amended Complaint. | AC / WP |
| 104. | Email | 1/31/07 | Dan Brown | Ed Haug | N/A | Confidential communication containing or referring to legal advice regarding disqualification allegations in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 105. | Email | 1/31/07 | Josy Ingersoll | Dan Brown | Karen Pascale, John Shaw | Confidential communication containing or referring to legal advice regarding disqualification allegations in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 106. | Email | 1/31/07 | Dan Brown | Ed Haug | Jim Stronski | Confidential communication containing or referring to legal advice regarding the disqualification allegations in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 107. | Email | 2/2/07 | Omar Jabri | Josey Ingersoll | Jim Stronski, Dan Brown | Confidential communication containing or referring to legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching a draft Amended Answer and Counterclaim along with Reliant's original and Amended Complaints. | AC / WP |
| 108. | Email | 2/5/07 | Karen Pascale | Omar Jabri | Dan Brown, Jim Stronski, Josy | Confidential communication containing or referring to legal advice regarding the Amended Complaint in the Reliant v. | AC / WP |

14

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 109. | Email | 2/5/07 | Karen Pascale | Jim Stronski, Omar Jabri | Dan Brown, Josy Ingersoll | Confidential communication containing or referring to legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 110. | Email | 2/6/07 | Karen Pascale | Jim Stronski, Omar Jabri, | Dan Brown, Josey Ingersoll | Confidential communication containing or referring to legal advice regarding the Amended Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 111. | Email | 2/8/07 | Dan Brown | Jim Stronski | N/A | Confidential communication containing or referring to legal advice regarding the investigation of disqualification allegations, prepared in anticipation of litigation or trial. | AC / WP |
| 112. | Email | 3/21/07 | Angus Chen | Dan Brown, Arthur Hoag | N/A | Confidential communication containing or referring to legal advice regarding the disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 113. | Email | 2/20/07 | Jim Stronski | John Meyer, Dan Brown, Ed Haug, Josy Ingersoll, Omar Jabri, Karen Pascale | Jim Stronski | Confidential communication containing or referring to legal advice regarding the existence of an information wall, prepared in anticipation of litigation or trial. | AC / WP |
| 114. | Email | 5/3/07 | John Taylor | Dan Brown, Arthur Hoag, Jeff Hovden, Charles Raubicheck, Ali Berkin | Jim Stronski, Omar Jabri | Confidential communication containing or referring to legal advice regarding status of declarations for the Reliant v. Par disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 115. | Email | 8/6/07 | Dan Brown | John Harris | N/A | Confidential communication containing legal advice regarding scheduling for depositions, prepared in anticipation of litigation or trial. | AC / WP |
| 116. | Email | 7/18/07 | Alexis Rae Axsom | Ed Haug, Josy Ingersoll, Omar Jabri, Karen Pascale, Jim Stronski | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the schedule in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching the July 17, 2007 Order. | AC / WP |
| 117. | Email | 7/23/07 | Jim Stronski | Lawrence Brown | Ed Haug, John Taylor, Omar Jabri, Stacy | Confidential communication containing or referring to legal advice regarding the Reliant v. Par litigation schedule, prepared in anticipation of litigation or trial. | AC / WP |

15

0047983.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 118. | Email | 7/27/07 | Alexis Rae Axsom | Ed Haug, Josy Ingersoll, Omar Jabri, Karen Pascale, Jim Stronski | Redman N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the disqualification motions in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching the July 25, 2007 Order. | AC / WP |
| 119. | Email | 7/28/07 | Ed Haug | Jim Stronksi, Lawrence Brown, Thomas Haughey | John Taylor | Confidential communication containing or referring to legal advice regarding discovery and the disqualification motion in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 120. | Email | 7/30/07 | Ed Haug | Jim Stronski | John Taylor | Confidential communication containing or referring to legal advice regarding discovery and the disqualification motion, prepared in anticipation of litigation or trial. | AC / WP |
| 121. | Email | 8/1/07 | John Taylor | John Harris | Ed Haug, Jim Stronksi, Omar Jabri | Confidential communication containing or referring to legal advice regarding discovery and the disqualification motion in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 122. | Email | 8/6/07 | Carolyn Glover | Ed Haug, Josy Ingersoll, Omar Jabri, Karen Pascale, Jim Stronski | N/A | Confidential communication containing or referring to legal advice regarding discovery and the disqualification motion and attaching Document Requests and Requests for Production of Documents, prepared in anticipation of litigation or trial. | AC / WP |
| 123. | Email | 7/27/07 | Alexis Rae Axsom | Ed Haug, Josy Ingersoll, Omar Jabri, Karen Pascale, Jim Stronski | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the disqualification motion in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 124. | Email | 8/10/07 | John Taylor | Ed Haug, Jim Stronski, John Taylor, Sam Desai, Omar Jabri, Stacy Redman, Alyse Mauro, Meredith Stricker | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching an August 10, 2007 letter from Christine Wilgoos to John Taylor. | AC / WP |

16

0047083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|-----|---------------|------|-----------|--------------|-------------------|------------------------|-----------------|
| 125. | Email | 12/22/04 | Thomas Neyarapally | Arthur Hoag, Angus Chen | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement and invalidity of U.S. Patent No. 5,681,588, and attaching patent(s) referred to in the communication (see document no. 4 of this log). | AC |
| 126. | Email | 1/10/05 | Thomas Neyarapally | Arthur Hoag, Angus Chen | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the validity of U.S. Patent No. 5,681,588, and attaching the author's memorandum regarding non-infringement and invalidity (see document no. 3 of this log). | AC |
| 127. | Email | 2/2/05 | Thomas Neyarapally | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, and attaching patents referenced in the communication (see document nos. 175 and 176 of this log), and attaching the author's memorandum regarding non-infringement and invalidity (see document no 36 of this log). | AC |
| 128. | Email | 4/1/05 | Thomas Neyarapally | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 129. | Email | 4/5/05 | Thomas Neyarapally | Angus Chen, Shu Zhu | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 130. | Email | 4/5/05 | Thomas Neyarapally | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, and attaching the author's memorandum regarding non-infringement (see document no. 2 of this log). | AC |
| 131. | Email | 4/11/05 | Thomas Neyarapally | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. | AC |

17

0047983.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | Patent No. 5,681,588, and author's memorandum regarding non-infringement and invalidity (see document no. 36 of this log). | |
| 132. | Email | 4/13/05 | Thomas Neyarapally | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, and attaching the author's noninfringement memorandum (see document no. 133 of this log). | AC |
| 133. | Memo | 4/13/05 | Thomas Neyarapally | To File | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding noninfringement of U.S. Patent No. 5,681,588. | AC |
| 134. | Email | 4/20/05 | Thomas Neyarapally | Arthur Hoag | N/A | Confidential communication requesting legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 135. | Email | 4/20/05 | Thomas Neyarapally | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement. | AC |
| 136. | Email | 4/20/05 | Thomas Neyarapally | Angus Chen | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588. | AC |
| 137. | Email | 5/9/05 | Thomas Neyarapally | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement of U.S. Patent No. 5,681,588, and attaching the author's memorandum regarding non-infringement and invalidity (see document no. 36 of this log), and noninfringement memorandum (see document no. 133 of this log). | AC |
| 138. | Email | 6/14/05 | Thomas Neyarapally | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement, and attaching the author's memorandum regarding non-infringement (see document no. 34 of this log), prepared in anticipation of litigation or trial. | AC / WP |

18

0047983.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 139. | Email | 6/26/06 | Thomas Neyarapally | Arthur Hoag, Sam Desai | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 140. | Email | 9/25/06 | Angus Chen | Thomas Neyarapally, Andrew Wasson | Arthur Hoag, B. Hackman | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's Notice Letter for propafenone product, and attaching information for the purpose of obtaining legal advice relating to Par's propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 141. | Email | 9/27/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 142. | Email | 9/27/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 143. | Email | 9/29/06 | Sam Desai | Arthur Hoag | Thomas Neyarapally, Andrew Wasson | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 144. | Email | 10/1/06 | Andrew Wasson | Arthur Hoag | Thomas Neyarapally, Sam Desai | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding non-infringement, prepared in anticipation of litigation or trial, and attaching author's memorandum regarding non-infringement (see document no. 1 of this log), prepared in anticipation of litigation or trial. | AC / WP |
| 145. | Email | 10/2/06 | Sam Desai | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 146. | Email | 10/13/06 | Angus Chen | Suketu Sanghvi, Ping He, Arthur Hoag, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |

19

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 147. | Email | 11/6/06 | Angus Chen | Andrew Wasson | Brian Malkin, Arthur Hoag | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 148. | Email | 11/8/06 | Angus Chen | Arthur Hoag, M. Bonomi | Andrew Wasson | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial, and attaching a Notice Letter, an Offer of Confidential Access and mailing receipts. | AC / WP |
| 149. | Email | 11/15/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 150. | Email | 11/15/06 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 151. | Email | 11/16/06 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 152. | Email | 12/15/06 | Bryan Braunel | Arthur Hoag, Dan Brown | Stephen Kunen, Andrew Wasson, Bryan Braunel | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's ANDA for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 153. | Email | 12/15/06 | Andrew Wasson | Bryan Braunel, Arthur Hoag, Dan Brown | Stephen Kunen | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's ANDA for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 154. | Email | 12/20/06 | Angus Chen | Arthur Hoag | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 155. | Email | 12/20/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Reliant v. Par litigation, | AC / WP |

20

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | prepared in anticipation of litigation or trial. | |
| 156. | Email | 12/20/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 157. | Email | 12/20/06 | Angus Chen | Ed Haug, Arthur Hoag, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's ANDA for propafenone and the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 158. | Email | 12/20/06 | Andrew Wasson | Ed Haug | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 159. | Email | 12/20/06 | Andrew Wasson | Ed Haug | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 160. | Email | 12/20/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 161. | Email | 12/21/06 | Andrew Wasson | Ed Haug | Arthur Hoag, Jonathan Wise | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's local counsel in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 162. | Email | 12/21/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's ANDA for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 163. | Email | 12/22/06 | Andrew Wasson | Arthur Hoag | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for | AC / WP |

21

00479083.DOC

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| | | | | | | propafenone, prepared in anticipation of litigation or trial. | |
| 164. | Email | 12/27/06 | Alyse Mauro | Arthur Hoag | N/A | Confidential communication providing information for the purpose of rendering legal advice regarding the Complaint in the Reliant v. Par litigation, prepared at the request of an attorney or party and in anticipation of litigation or trial. | AC / WP |
| 165. | Email | 12/28/06 | Angus Chen | Arthur Hoag, Ed Haug | Andrew Wasson | Confidential communication providing information for the purpose of obtaining legal advice regarding the Complaint in the Reliant v. Par litigation, and attaching the Summons and Complaint, prepared in anticipation of litigation or trial. | AC / WP |
| 166. | Email | 12/28/06 | Angus Chen | Arthur Hoag | Andrew Wasson | Confidential communication providing information for the purpose of obtaining legal advice regarding the propafenone ANDA, prepared in anticipation of litigation or trial. | AC / WP |
| 167. | Email | 1/8/07 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Complaint in the Reliant v. Par litigation, and attaching the Summons and Complaint, prepared in anticipation of litigation or trial. | AC / WP |
| 168. | Email | 1/8/07 | Andrew Wasson | Dan Brown | Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding the Complaint in the Reliant v. Par litigation, prepared in anticipation of litigation or trial. | AC / WP |
| 169. | Email | 1/9/07 | Angus Chen | Andrew Wasson, Arthur Hoag, Dan Brown | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the Par's ANDA for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 170. | Email | 1/9/07 | Andrew Wasson | Arthur Hoag, Dan Brown | N/A | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding Par's Notice Letter for propafenone, and attaching the Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 171. | Email | 1/10/07 | Angus Chen | Andrew Wasson, Arthur Hoag, Dan Brown | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding the Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |

22

| NO. | DOCUMENT TYPE | DATE | AUTHOR(S) | ADDRESSEE(S) | COPY RECIPIENT(S) | GENERAL SUBJECT MATTER | PRIVILEGE CLAIM |
|---|---|---|---|---|---|---|---|
| 172. | Email | 1/19/07 | Angus Chen | Arthur Hoag, Dan Brown, Andrew Wasson | N/A | Confidential communication providing information for the purpose of obtaining legal advice regarding Par's Notice Letter for propafenone, prepared in anticipation of litigation or trial. | AC / WP |
| 173. | Email | 1/26/07 | Dan Brown | Thomas Haughey, Paul Campanelli, Angus Chen | Ed Haug, Arthur Hoag | Confidential communication reflecting attorney's mental impressions, conclusions, opinions, or legal theories, and providing legal advice regarding disqualification allegations in the Reliant v. Par litigation, prepared in anticipation of litigation or trial, and attaching a January 25, 2007 letter from Gerald Flattmann to Ed Haug, a December 29, 2006 letter from Gerald Flattmann to Ed Haug, and a January 17, 2007 letter from Ed Haug to Gerald Flattmann. | AC / WP |
| 174. | Email | 2/12/07 | Stephen Kunen | Ed Haug | Arthur Hoag, Dean Arfanis, Jim Stronski, Christopher Faron | Confidential communication containing or referring to legal advice regarding the Reliant v. Par information wall, prepared at the request of an attorney or party in anticipation of litigation or trial. | AC / WP |
| 175. | Patent | 2/2/05 | Thomas Neyarapally | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and reflecting attorney's mental impressions and or legal theories, and prepared in anticipation of litigation or trial. | AC / WP |
| 176. | Patent | 2/2/05 | Thomas Neyarapally | To File | N/A | Information collected in preparation for rendering legal advice regarding invalidity and reflecting attorney's mental impressions and or legal theories, and prepared in anticipation of litigation or trial. | AC / WP |

23

00479083.DOC

# Frommer Lawrence & Haug

| Name | Title |
|---|---|
| Dean Arfanis | Director of Administration |
| Ali Berkin | Scientific Advisor |
| Dan Brown | Partner |
| Bryan Braunel | Associate |
| Sam Desai | Associate |
| Christopher Faron | Paralegal |
| Ed Haug | Partner |
| Arthur Hoag | Partner |
| Jeff Hovden | Partner |
| Omar Jarbri | Associate |
| Andrew Kopelman | Associate |
| Stephen Kunen | Paralegal |
| Alyse Mauro | Paralegal |
| Brian Malkin | Associate |
| Thomas Neyarapally | Former Associate |
| Stacy Redman | Paralegal |
| Rita Selby | Administrative Assistant |
| Seth Snyder | Scientific Advisor |
| Meredith Stricker | Former Paralegal |
| Jim Stronski | Partner |
| Charles Raubicheck | Partner |
| Andrew Wasson | Associate |
| Jonathan Wise | Associate |

# Par Pharmaceuticals, Inc.

| Name | Title |
|---|---|
| Michelle Bonomi | Executive Vice President, Pharmaceutical R&D |
| Lawrence Brown | In-house Counsel |
| Paul Campanelli | President, Generics Division |
| Angus Chen | In-house Counsel |
| Blaine Hackman | Former Science Advisor, Legal Department |
| Thomas Haughey | In-house Counsel |
| Ping He | Former Par Scientist |
| Suketu Sanghvi | Former Par Scientist |
| Shu Zhu | Former Science Advisor, Legal Department |

# Other

| Name | Title |
|---|---|
| **Alexis Rae Axsom** | Young Conaway Stargatt & Taylor - Paralegal |
| **Carolyn Glover** | Young Conaway Stargatt & Taylor – Administrative Assistant |
| **John Harris** | Stillman, Friedman & Shechtman - Member |
| **Josy Ingersoll** | Young Conaway Stargatt & Taylor – Partner |
| **John Mayer** | Young Conaway Stargatt & Taylor – Legal Assistant |
| **Karen Pascale** | Young Conaway Stargatt & Taylor – Associate |
| **John Shaw** | Young Conaway Stargatt & Taylor – Partner |
| **Virginia Warren** | Patent Imaging Corproation |

# EXHIBIT 29

REDACTED

# EXHIBIT 30

REDACTED

# EXHIBIT 31

REDACTED

# EXHIBIT 32

REDACTED

# EXHIBIT 33

REDACTED

# EXHIBIT 34

AH-01

**Sent:**     Tuesday, October 21, 2003 5:31 PM
**Subject:** Rythmol

REDACTED

Andy:

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

DEPOSITION EXHIBIT
PlfFs 22
9/7/07
ERIC J. FINZ

AH-02

---

**From:**    Andrew Berdon [IMCEAGWISE-FLHLAW+2EFLHPO1+2EBerdoa@flhlaw.com]
**Sent:**    Tuesday, October 21, 2003 6:45 PM
**To:**    Arthur Hoag
**Subject:** Fwd: Rythmol

Can you look at                    REDACTED                    Thanks

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com


<<Rythmol>>

AH-03

From:    Andrew Berdon [IMCEAGWISE-FLHLAW+2EFLHPO1+2EBerdoa@flhlaw.com]
Sent:    Tuesday, October 21, 2003 6:57 PM
Cc:      Arthur Hoag
Subject: Re: Rythmol Patent assignment

Mike:

We reviewed the patent assignment and have the following comments.

REDACTED

AB

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Direct Tel: 212.863.2073
Fax: 212.588.0500
E-Mail: aberdon@flhlaw.com

>>> Lerner, Michael 10/21 5:43 PM >>>
Thanks

-----------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

AH-04

-----Original Message-----
From: Andrew Berdon <ABerdon@flhlaw.com>
To: Lerner, Michael <mlerner@reliantrx.com>
Sent: Tue Oct 21 17:44:00 2003
Subject: Re: Rythmol

will do.

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Lerner, Michael 10/21 4:31 PM >>>
Andy:                 REDACTED
_____

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

AH-05

| | |
|---|---|
| **From:** | Andrew Berdon [IMCEAGWISE-FLHLAW+2EFLHPO1+2EBerdoa@flhlaw.com] |
| **Sent:** | Tuesday, October 21, 2003 8:12 PM |
| **To:** | Arthur Hoag |
| **Subject:** | Re:                          REDACTED |

thanks

Andrew M. Berdon
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
Direct Tel:  212.863.2073
Fax:  212.588.0500
E-Mail:  aberdon@flhlaw.com

>>> Arthur Hoag 10/21 6:51 PM >>>

REDACTED

# EXHIBIT 35

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

212 446-4800

www.kirkland.com

Gerald J. Flattmann, Jr.
To Call Writer Directly:
212 446-4720
gflattmann@kirkland.com

Facsimile:
212 446-4900

Dir. Fax: 212 446-4900

December 29, 2006

**VIA FACSIMILE AND EMAIL**
**(212) 588-0500**

Edgar Haug, Esq.
Frommer Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
Civil Action No. 06-774 (D. Del.)

Dear Ed:

Based on your December 18, 2006 letter to Christine Willgoos, it appears that your firm has been acting on behalf of Par Pharmaceutical, Inc. in the above-referenced action.

As you are no doubt aware, Reliant had a long-standing attorney-client relationship with Frommer, Lawrence and Haug. For example, your firm represented Reliant in connection with intellectual property related matters in Reliant's 2003 acquisition of Rythmol® and U.S. Patent No. 5,681,588, the patent-in-suit here. Accordingly, it appears to us that your firm is conflicted from representing Par in this substantially related action. Please confirm that your firm will withdraw as Par's counsel or explain why you believe your firm is not ethically required to do so.

Sincerely,

Gerald J. Flattmann, Jr.

GJF/cmh

Chicago        London        Los Angeles        Munich        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

January 25, 2007

**VIA FACSIMILE AND EMAIL**
    **(212) 588-0500**

Edgar Haug, Esq.
Frommer Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
         Civil Action No. 06-774-JJF (D. Del.)

Dear Ed:

      I write in response to your January 17, 2007 letter. Reliant maintains its objection
to your firm's representation of Par and again requests your prompt withdrawal as counsel.

      Respectfully, we believe that your letter understates the extent of your firm's
involvement in Reliant's acquisition of the patent and product at issue here. Your firm did much
more than gather publicly available information and "engage in a *de minimis* review" of contract
language. For example, Frommer conducted an analysis of the patents Reliant was seeking to
acquire, conducted patent searches, reviewed and revised the draft license and assignment
agreement between Abbott and Reliant, had communications with the FDA on Reliant's behalf,
and provided advice regarding its due diligence on the acquisition. These activities were
conducted for the purpose of providing legal advice to Reliant regarding the acquisition of
Rythmol® SR, and its related patent portfolio, including the '588 patent. Thus, your firm's
proposed representation of Par is substantially related to work done for Reliant on the very same
product and patent at issue here.

      Your statement that you "do not believe that [your] Firm ever received any
confidential information from Reliant" is mistaken. Reliant forwarded confidential information
to Frommer regarding the potential agreement from Abbott, including, for example, the draft
Asset Purchase Agreement and confidential background information on Rythmol® SR, including
patent protection.

      Moreover, your statement that "all firm knowledge regarding communications
with [Reliant] departed when Mr. Berdon left the firm" is both incorrect and irrelevant. Mr.

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

KIRKLAND & ELLIS LLP

Edgar Haug, Esq.
January 25, 2007
Page 2

Berdon's departure from your firm does not discharge the firm's ethical obligation to its clients and former clients. Even more significantly, it was not only Mr. Berdon who provided Reliant with legal advice regarding Reliant's acquisition of Rythmol® SR and the patent in suit. At least two current firm partners, Arthur Hoag and Dan Brown were involved in the analysis and legal advice given to Reliant.

Accordingly, please confirm that your firm will withdraw as Par's counsel.

Sincerely,

Gerald J. Flattmann, Jr.

GJF/cmh

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Gerald J. Flattmann, Jr.
To Call Writer Directly:
212 446-4720
gflattmann@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: 212 446-4900

February 12, 2007

**VIA FACSIMILE AND EMAIL**
**(212) 588-0500**

Edgar Haug, Esq.
Frommer Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

Re:    *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
Civil Action No. 06-774 (D. Del.)

Dear Ed:

Based on your appearance on behalf of Par in its February 9, 2007 Answer and Counterclaims and your related motions for admission *pro hac vice*, it appears that your firm intends to represent Par despite the serious concerns raised in our letters of December 29, 2006 and January 25, 2007. In view of the facts concerning your firm's prior representation of Reliant regarding its acquisition of Rythmol® SR and the patent-in-suit, we do not see how your firm can do so consistent with the Rules of Professional Responsibility. Accordingly, we intend to file a motion to disqualify your firm from representing Par in this action. Please let us know promptly whether you will voluntarily withdraw from representing Par so as to obviate the need for such a motion.

Sincerely,

Gerald J. Flattmann, Jr.

cc:    Jack B. Blumenfeld, Esq.  (via email)
       Josy W. Ingersoll, Esq.  (via email)

Chicago    Hong Kong    London    Los Angeles    Munich    San Francisco    Washington, D.C.

# EXHIBIT 36

**FL⊦H**  FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

August 28, 2007

John G. Taylor
JTaylor@flhlaw.com

**BY HAND AND E-MAIL (without enclosures)**

William T. Vuk, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

Re:     Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
        Civil Action No. 06-774-JJF (D. Del)

Dear Bill:

        We write in response to your August 23, 2007 letters concerning Par's August 21 expedited production of documents and privilege and redaction logs relating to the disqualification issue.

        As the saying goes, "No good deed goes unpunished."

        The Court's July 25 Order denying Reliant's motion to disqualify Frommer Lawrence & Haug ("FLH") provides for "*agreed* upon *limited* discovery" confined to the disqualification issue (emphasis added).  Reliant does not have carte blanche to invade the FLH-Par privilege or to embark upon a fishing expedition through FLH's privileged and work product protected files relating to this litigation and propafenone.  FLH and Par have been exceedingly reasonable in responding to Reliant's discovery requests concerning the disqualification issue.  We agreed to respond in half the time allowed by the Federal Rules as an accommodation to Reliant.  FLH diligently searched its files and, given time constraints, even erred on the side of over-inclusiveness in its production and identification of documents on the privilege and redaction logs so as not to miss any arguably relevant and responsive documents.

        It is particularly galling here that Reliant—a party that until August 24 had not produced even a single document in this case, let alone a privilege log—raises such trivial criticisms concerning privilege log entries for documents that plainly were prepared as part of or in anticipation of this litigation.  These documents concern core opinion and litigation work product and privileged communications.  It is clear from Reliant's many complaints about Par's document production and logs that this whole exercise is nothing but an attempt to create disputes in order to further delay these proceedings.  Reliant's whole pursuit of the disqualification of FLH appears to be similarly motivated.

00476863.DOC

William T. Vuk, Esq.
Kirkland & Ellis LLP
August 28, 2007
Page 2

For example, Reliant complains that Par's designation of many documents as protected by the attorney work product doctrine is improper because not enough detail was provided to allow Reliant to determine whether the documents were prepared in anticipation of or as part of a litigation. First, the descriptions and context provided for these documents make it amply clear that the work product designation is appropriate even if they do not include a magic phrase such as "prepared in anticipation of litigation or trial." Document Numbers 7-9, 13, 14, 16, 17, 19-21, 23-24, 27, and others, are described as (1) memoranda; (2) prepared by an attorney (Jim Stronski, Omar Jabri, or me); (3) after this litigation was commenced; and (4) concerning subjects such as litigation strategy, attorney disqualification, discovery responses, legal advice regarding the '588 patent and Par's propafenone product, and patent invalidity. Reliant's statement that it is unable to determine if these documents were prepared with respect to the present litigation is spurious. Second, almost all of the documents Reliant complains about are also protected by attorney-client privilege, as evidenced by the privilege log. Such documents are privileged and were properly withheld from production. Reliant's complaint that Par's use of the word "or" in phrases such as "communications reflecting attorney's mental impressions, conclusions, opinions and or legal theories" prevents Reliant from analyzing Par's privilege assertions is similarly baseless. Regardless of whether a document is characterized by one, some, or all of these descriptions, it is still privileged.

That said, we will review the privilege and redacted document logs and, if appropriate, we will serve supplemental logs on or before September 4, 2007—the date they are actually due under the Federal Rules.

With respect to your August 23 letter concerning Par's document production, enclosed are documents bearing production numbers PAR-FLH753-918. These documents include drafts of the February 9, 2007 memoranda concerning information walls with respect to Messrs. Brown, Hoag and Berkin and executed Acknowledgement forms relating to the information wall memoranda. These documents are responsive to numbered paragraphs 1, 2, and 6 of your letter. Any documents responsive to numbered paragraphs 3, 4, and 7 of your letter have been produced already or identified on Par's privilege log. Par will not be producing the information requested in paragraph number 5 of your letter. The format of and information you seek regarding the information wall memoranda are not relevant to the disqualification issue and burdensome. Par has produced copies of accessible drafts and the final information wall memoranda that were actually provided to all FLH personnel and under which FLH has been operating. This satisfies Par's obligation to produce "agreed upon limited discovery" concerning the disqualification issue.

In response to your letter of earlier today, we confirm that all invoices that include billable time for Par relating to this litigation or propafenone have been produced with appropriate redactions.

00476863.DOC

William T. Vuk, Esq.
Kirkland & Ellis LLP
August 28, 2007
Page 3

Finally, Reliant's insistence on Edgar Haug's deposition is harassment. His deposition is not necessary or appropriate. Mr. Haug is Par's lead litigation counsel in this case and it is clear from his sworn declaration and supporting exhibits that he did no work for Reliant relating to propafenone and, in fact, was unaware that any such work was done. Indeed, in Reliant's original motion papers you did not allege that Mr. Haug did any such work. Under the circumstances, any information that Mr. Haug could provide would be cumulative and overly burdensome given the availability of other, less intrusive sources for such information (e.g., the documents that Par has produced, sworn declarations, the interrogatories that Par has answered, the three FLH individuals whose depositions have been agreed to and scheduled, and other individuals, such as Andrew Berdon, who Reliant could have contacted over the last seven months). Accordingly, we do not agree to Mr. Haug's deposition and, since Mr. Haug is not a party to this action, Reliant's August 22, 2007 notice of deposition to Mr. Haug is ineffective.

Sincerely,

John G. Taylor

Enclosures

cc:     Gerald J. Flattmann, Jr., Esq. (by e-mail only w/o encls.)
        Christine Willgoos, Esq. (by e-mail only w/o encls.)
        Jack B. Blumenfeld, Esq. (by e-mail only w/o encls.)
        John B. Harris, Esq. (by e-mail only w/o encls.)
        Josy E. Ingersoll, Esq. (by e-mail only w/o encls.)
        Karen L. Pascale, Esq. (by e-mail only w/o encls.)

00476863.DOC

# EXHIBIT 37



"John Harris"
<jharris@stillmanfriedman.co
m>

08/30/2007 11:24 AM

To  "William T Vuk" <wvuk@kirkland.com>

cc

Subject  Berkin Deposition Designations

Bill:  I was surprised and troubled to see your attempt to expand the August 28 "non-waiver agreement"
designations for the Berkin transcript beyond the sole subject matter of that agreement, i.e., the
documents your client produced pursuant to that agreement two days ago.  Your apparent argument that
this agreement also covers testimony about documents previously produced by FLH is unsupported by the
agreement, belated and contrary to everything that was discussed at yesterday's depositions. Not only are
your designations obviously beyond the scope of the non-waiver agreement, but there can be no
conceivable justification for the heightened confidentiality as applied to the FLH-produced documents,
which include everything from long ago-produced time records to transcripts of searches of public
databases.

As I mentioned to you yesterday, there is considerable doubt that all of the documents produced by RAC
should be entitled to the heightened confidentiality of the non-waiver agreement, but I will respect it for the
time being.

The only appropriate designations under the non-waiver agreement are the following (as was discussed
during the deposition and is clear from the transcript):

14:13-23:25

32:19-40:12

46:7-53:2

You will note that I have expanded your designation by including 49:7-50:13, which referred in part to one
of the RAC-produced documents.

If you would like to discuss this issue further, please call me.

Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

—— Original Message ——
From: "John Harris" [jharris@stillmanfriedman.com]
Sent: 08/30/2007 07:55 PM AST
To: William Vuk
Subject: RE: Berkin Deposition Designations

I will respond shortly to your letters.

I really don't understand your position on the designations at all.  In case you aren't aware, most of the designations you now make relate to information that has already been referenced in the prior motion practice, by both parties.  That distinguishes it from the documents K&E produced on August 28.

The August 28 stipulation related only to the August 28 production.  Your unilateral attempt to expand it to cover unrelated matters is unmerited.  There is an August 14 Stipulated Protective Order in place in the case.  It does not address the kind of heightened confidentiality you belatedly seek to impose on the FLH-produced documents and the Berkin transcript.

Notwithstanding the lack of merit in your position, given the holiday weekend, I will agree to respect your designations in the Berkin deposition until we have the chance to speak again early next week.

From: William T Vuk [mailto:wvuk@kirkland.com]
Sent: Thursday, August 30, 2007 6:56 PM
To: John Harris
Cc: JBlumenfeld@MNAT.com
Subject: Re: Berkin Deposition Designations

John - As requested, below is the list of pages/lines from Dr. Berkin's transcript for which the parties currently disagree upon the proper confidentiality designations.  Additionally attached below is a letter related to our conversation of earlier today.

6:17 to 7:13
7:22 to 10:25
11:15 to 11:23
13:19 to 14:3
24:1 to 30:23

31:6 to 32:13
40:13 to 41:12
42:19 to 45:13
45:21 to 46:3
54:12 to 54:21
54:25 to 55:24
56:16 to 57:2
70:23 to 73:18

Regards,

Bill

William T. Vuk
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4757
Facsimile: (212) 446-6460

"John Harris" <jharris@stillmanfriedman.com>

08/30/2007 11:24 AM

To  "William T Vuk" <wvuk@kirkland.com>
cc
Subject Berkin Deposition Designations

Bill:  I was surprised and troubled to see your attempt to expand the August 28 "non-waiver agreement" designations for the Berkin transcript beyond the sole subject matter of that agreement, i.e., the documents your client produced pursuant to that agreement two days ago.  Your apparent argument that this agreement also covers testimony about documents previously produced by FLH is unsupported by the agreement, belated and contrary to everything that was discussed at yesterday's depositions. Not only are your designations obviously beyond the scope of the non-waiver agreement, but there can be no conceivable justification for the heightened confidentiality as applied to the FLH-produced documents, which include everything from long ago-produced time records to transcripts of searches of public databases.

As I mentioned to you yesterday, there is considerable doubt that all of the documents produced by RAC should be entitled to the heightened confidentiality of the non-waiver agreement, but I will respect it for the time being.

The only appropriate designations under the non-waiver agreement are the following (as was discussed

during the deposition and is clear from the transcript):

14:13-23:25

32:19-40:12

46:7-53:2

You will note that I have expanded your designation by including 49:7-50:13, which referred in part to one of the RAC-produced documents.

If you would like to discuss this issue further, please call me.

Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************

Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

William T. Vuk
To Call Writer Directly:
(212) 446-4757
wvuk@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900
Dir. Fax: (212) 446-4900

August 30, 2007

**BY EMAIL**

John Harris, Esq.
Stillman, Friedman & Shectman, P.C.
425 Park Avenue
New York, NY 10022
(212) 223-1942
jharris@stillmanfriedman.com

Re:  *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*
     Civil Action No. 06-774-JJF

Dear John:

I was surprised by your statement during today's telephone conversation that FLH's trial team "obviously has seen the documents" generated by FLH with respect to its prior representation of Reliant due, in part, to the fact that the documents were in FLH's files. FLH's review of Reliant privileged information, communications and work product related to Rythmol® and propafenone in connection with its representation of Par is the central issue of Reliant's disqualification motion. That I was "stunned" by your disclosure should not have been surprising given FLH's apparent disregard of its ethical obligations to Reliant.

Please identify each member of FLH's trial team that has had access to, reviewed, read, or seen any of FLH's documents related to its representation of Reliant in connection with Rythmol® and propafenone. Additionally, please identify anyone else who reviewed the documents bearing the PAR-FLH prefix produced to Reliant.

Furthermore, I disagree with your assessment that FLH invoices to Reliant and results from searches performed on Reliant's behalf by Dr. Berkin at the direction of an attorney are not privileged. In this regard, I note that your position is inconsistent with Par's inclusion of FLH invoices and work performed by Dr. Berkin on its Privilege and Redaction Logs. Par's Privilege Log contains numerous documents authored by Dr. Berkin described as relating to or regarding "search results" while Par's Redaction Log is entirely comprised of entries related to Par invoices for which it has asserted claims of attorney-client privilege and work product immunity. Thus, we do not agree that these documents and related testimony from the depositions of Mr. Brown and Dr. Berkin may be divulged to FLH trial counsel or Par.

Chicago      Hong Kong      London      Los Angeles      Munich      San Francisco      Washington, D.C.

## KIRKLAND & ELLIS LLP

John Harris, Esq.
August 30, 2007
Page 2

Sincerely,

William T. Vuk

cc:    Jack B. Blumenfeld, Esq.
       (via email)

**BY E-MAIL**

August 31, 2007

William T. Vuk, Esq.
Kirkland & Ellis LLP
153 E. 53rd St.
New York, NY 10022

Re:  <u>Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.</u>

Dear Mr. Vuk:

      I have your two lengthy letters of August 30.  The first purports to respond to my e-mail of earlier in the day, which suggested that you call me to discuss a resolution of the apparent issues.  When I received your first letter, I called you and suggested again that we stop the pointless letter-writing.  Regrettably, you chose to send yet another more posturing letter in response to my attempt to deal directly with you on a cooperative basis.

      On August 28, 2007, your firm, Kirkland & Ellis ("K&E"), Frommer Lawrence & Haug LLP ("FLH") and I signed a document drafted by K&E called a "Stipulation of Non-Waiver and Confidentiality Agreement."  The sole stated purpose for this stipulation was to enable K&E to provide me with purportedly privileged documents between Reliant Pharmaceutical and FLH that are not in FLH's possession.  The Agreement provided that I would not share the documents or their contents with members of the FLH trial team or with Par.  On its face and as intended, the Agreement addresses nothing other than Reliant's document production to me.

      During yesterday's depositions, when questioning turned to the documents produced by K&E pursuant to the stipulation, I suggested that those sections be separately bound to insure that the documents or their contents were not inadvertently disclosed to the trial team or others in derogation of the stipulation's intent.  You agreed.  Because these sections referred to heightened confidentiality and needed to be separately bound, I distinguished them from the sections that were not subject to the stipulation.  It was specifically stated and understood what

the "confidentiality" designation meant when both sides used it, and it is especially troubling to read your apparent assertions. Indeed, when we left yesterday's deposition of Ali Berkin, the only question was precisely which sections of the transcript implicated the newly produced documents and should therefore be separately bound.

Rather than perform this straightforward task, you provided me with a list of sections to be separately bound that included not only testimony regarding the documents produced under the stipulation, but testimony relating to other subjects, including documents produced by **FLH** that were in the law firm's files. These documents were not in any way the subject of the stipulation, either directly or by implication. Indeed these documents were referenced or attached to Par's opposing papers served months ago.

Let me be clear since your letter jumbles the issues. First, we certainly agree, as I have advised you, that neither these depositions nor the production of documents by either side effects a waiver of any applicable privilege. Second, I have no issue in your choosing at this stage to designate all or any part of the transcript as "confidential" vis-a-vis third parties pursuant to the terms of the August 14 Confidentiality Agreement between the parties. What is objectionable is your attempt to bypass the Confidentiality Agreement and to use this stipulation, entered into for a very limited purpose and applicable to a specific subject matter, to provide for a heightened level of confidentiality where none was intended, agreed upon or is necessary.

You are free to rely upon the stipulation at Arthur Hoag's deposition on September 5, 2007 to provide heightened confidentiality to the extent the questioning relates to the production of the documents by K&E to me. Your announced intention unilaterally to apply it to other matters is beyond the scope of the stipulation and would be ineffective.

With respect to your second letter, your claim to have been "stunned" by my statement regarding the documents produced by FLH reflects either your unfamiliarity with the litigation or your desire to engage in bare rhetoric. FLH had in its files the documents that have been produced to you. That is why they were produced. That is why they were referenced and annexed to our responsive papers submitted in this litigation. Your side has already had two opportunities to explain why these documents justify disqualification and you will no doubt attempt to do it again in the next round of motion practice.

Although this is not the time to begin the debate, what is far more interesting is the dichotomy between the claims made by Reliant's in-house counsel regarding the supposedly broad scope of the work performed by FLH and the reality as demonstrated by the billing records produced by FLH and the documents Reliant has seen fit to provide under the stipulation.

Yours sincerely,

/s/

John B. Harris

JHarris@stillmanfriedman.com

JBH:

# EXHIBIT 38

Member Login

ABA Home
Join
Web Store
About the ABA

CPR Home
Membership
Calendar
Publications &
Videos
Reports &
Initiatives
Lawyer Ethics &
Professionalism
Lawyer
Regulation
Judicial Ethics &
Regulation
Client Protection
Consumer
Resources
Contact
Information
Site Map

# American Bar Association
## Defending Liberty, Pursuing Justice

Search: [          ] Web Site [Go] | Advanced Search | Topics A-Z      Print This  |  E-mail This

## Center *for* Professional Responsibility

### Model Rules of Professional Conduct

#### Client-Lawyer Relationship
#### Rule 1.9 Duties To Former Clients

(a) A lawyer who has formerly represented a client in a matter shall not thereafte represent another person in the same or a substantially related matter in which tha person's interests are materially adverse to the interests of the former client unless t former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially re matter in which a firm with which the lawyer formerly was associated had prev represented a client

   (1) whose interests are materially adverse to that person; and

   (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

   (1) use information relating to the representation to the disadvantage of th former client except as these Rules would permit or require with respect to client, or when the information has become generally known; or

   (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Comment | Table of Contents | Next Rule

Back to Top

TOPICS A-Z        WEB STORE        ABA CALENDAR        CONTACT
                ABA



American Bar Association | 321 N. Clark St. | Chicago, IL 60610 | 800.285.2221
ABA Copyright Statement   ABA Privacy Statement   Web Site Feedback

Print View of http://www.abanet.org/cpr/mrpc/rule_1_9_comm.html at 0...    http://www.abanet.org/abanet/common/print/newprintview.cfm?ref=http...



**Defending Liberty
Pursuing Justice**

**Print This Page** | Close Window

 Center *for* Professional Responsibility

# Model Rules of Professional Conduct

## *Client-Lawyer Relationship*
## Rule 1.9 Duties To Former Clients - Comment

[1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client except in conformity with this Rule. Under this Rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction. Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent. See Comment [9]. Current and former government lawyers must comply with this Rule to the extent required by Rule 1.11.

[2] The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer wl recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdictions. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

[3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse i seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppos rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may

Print View of http://www.abanet.org/cpr/mrpc/rule_1_9_comm.html at 0...     http://www.abanet.org/abanet/common/print/newprintview.cfm?ref=http...

be relevant in determining whether two representations are substantially related. In the case of a organizational client, general knowledge of the client?s policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

## Lawyers Moving Between Firms

[4] When lawyers have been associated within a firm but then end their association, the question of whether a lawyer should undertake representation is more complicated. There are several comp considerations. First, the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

[5] Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(c). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. See Rule 1.10(b) for the restrictions on a firm once a lawyer has terminated association with the firm.

[6] Application of paragraph (b) depends on a situation's particular facts, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

[7] Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rules 1.6 and 1.9(c).

[8] Paragraph (c) provides that information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally know information about that client when later representing another client.

[9] The provisions of this Rule are for the protection of former clients and can be waived if the client gives informed consent, which consent must be confirmed in writing under paragraphs (a) and (b). See Rule 1.0(e). With regard to the effectiveness of an advance waiver, see Comment [22] to Rule 1.7. With

regard to disqualification of a firm with which a lawyer is or was formerly associated, see Rule 1.10.

Back to Rule | Table of Contents | Next Comment

**This page was printed from:** http://www.abanet.org/cpr/mrpc/rule_1_9_comm.html

Close Window

© 2007. American Bar Association. All Rights Reserved. ABA Privacy Statement

# EXHIBIT 39



**Print This Page** | Close Window

 Center *for* Professional Responsibility

# Model Rules of Professional Conduct

## *Client-Lawyer Relationship*
## Rule 1.10 Imputation Of Conflicts Of Interest: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of material limiting the representation of the client by the remaining lawyers in the firm.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from there representing a person with interests materially adverse to those of a client represented by the former associated lawyer and not currently represented by the firm, unless:

    (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

    (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that material to the matter.

(c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

(d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

Comment | Table of Contents | Next Rule

**This page was printed from:** http://www.abanet.org/cpr/mrpc/rule_1_10.html

Close Window

© 2007. American Bar Association. All Rights Reserved. ABA Privacy Statement