UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
RELIANT PHARMACEUTICALS, INC., :
:
Plaintiff, :
: Civil Action No. 06-774-JJF
v. :
:
PAR PHARMACEUTICAL, INC., :
:
Defendant. :
:
------------------------------------------------------------x

**DECLARATION OF ALI BERKIN, PH.D., IN SUPPORT OF PAR
PHARMACEUTICAL, INC.'S OPPOSITION TO
RELIANT PHARMACEUTICALS, INC.'S
<u>MOTION TO DISQUALIFY FROMMER LAWRENCE & HAUG LLP</u>**

I, Ali Berkin, Ph.D., hereby declare:

1. I am a non-lawyer scientific advisor at the law firm of Frommer Lawrence and Haug LLP ("FLH" or "the Firm") and have been so since 2002. I submit this declaration in opposition to the motion by Reliant Pharmaceuticals, Inc.'s ("Reliant") to disqualify FLH as counsel for Par in this matter. I have personal knowledge of the facts set forth in this Declaration.

2. I am advised that Reliant believes that FLH provided it with an opinion regarding validity, enforceability, and potential for "design around" of a patent that Reliant acquired as part of its acquisition of the drug product Rythmol®. To my knowledge, this could not be true. Between October 21 and 28, 2003, I spent 7.4 hours conducting a preliminary search of publicly available information and compiling a table listing patents that reference the active

pharmaceutical ingredient in Rythmol®. I was not asked to prepare -- nor did I prepare -- any type of opinion or substantive analysis of the information I compiled.

3.  In order to provide any sort of opinion regarding the value, validity, enforceability, and potential for "design around" of a patent, I and others at FLH would have had to spend significant amounts of time reviewing and analyzing, at minimum, the patent's file history and prior art references. I did no such work concerning any patents related to Rythmol® and, to my knowledge, no such work was performed by anyone else at FLH.

4.  I believe that, on or about October 21, 2003, an FLH partner, Andrew Berdon asked me to do a search for publicly available information about patents that reference propafenone, the active pharmaceutical ingredient in Rythmol®. I do not recall whether he advised me that this research was for an acquisition that Reliant was considering. He did not provide me with any documents from Reliant to perform the search. Rather, he instructed me to perform a preliminary search directed toward U.S. patents referencing propafenone in combination with the pharmaceutical companies Abbott, Knoll and BASF. I was not provided then -- or at any time later -- with any information regarding a specific formulation or process.

5.  This type of research into the universe of patents in a particular area was, and remains, a common part of my job as a researcher at the Firm.

6.  I began my research by looking in the U.S. Food and Drug Administration's ("FDA") so called "Orange Book" of approved drug products for any patents listed for Rythmol®. This book is publicly available. No patents were listed for Rythmol®.

7.  I then searched a publicly available scientific database called STN for patents and patent applications referencing propafenone and assigned to Abbott, Knoll and BASF. Unlike most patent-related searches I am asked to do, this search was very limited in scope. A full

search on STN typically includes 10 separate patent databases. This search involved only one database, which includes the same information one would find on the U.S. Patent and Trademark Office's ("PTO") website. As typically occurs, my search generated a printout of patents, the details of which I put into a chart containing the patent number, patent holder, type of claims (e.g., composition, process, etc.), and claimed subject matter. This information came directly from the public databases and contains no analysis.

8. On October 21, I wrote Mr. Berdon a three paragraph memorandum summarizing what I had learned from the public record about Rythmol® and Rythmol SR®. The memorandum did not discuss any patents, other than to note that the Orange Book listed no patents for Rythmol®. Attached to the memorandum was the chart that I had generated from my STN search results. In the chart, I roughly divided the patents into three tiers based on whether a patent might be relevant to Rythmol®, (i.e., whether the patent includes claims that cover a propafenone sustained-release product). I was later asked to add the expiration dates of the listed patents to my chart, which I did on October 28, 2003.

9. I understand that Reliant has specifically alleged that "FLH provided advice concerning ... U.S. Patent No. 4,797,287 (the "Pich '287 patent") and whether that patent had any impact on, or relation to, ... the '588 patent" (Pl. Mem. at 5) and that "FLH advised Reliant concerning the prior art Pich '287 patent, and whether or not the Pich '287 patent was important with respect to the Rythmol® ... patents." Id. at 12. If these allegations refer to my October 21, 2003 memorandum, they are incorrect. As the introduction to my patent table states, the relevance of the listed patents is with respect to the Rythmol® drug product -- not the '588 patent. My table lists the Pich '287 patent and, relying on the database search, stated: "NOT RELEVANT claims a composition of an enzyme (pancreatin) and no other actives." By this

statement, I meant that the Pich '287 patent does not specifically claim a propafenone sustained-release product, such as Rythmol®. I was not asked to conduct and did not conduct an analysis of the Pich '287 patent vis-à-vis the '588 patent, nor do I have any knowledge of what such an analysis would have shown.

10. Also on October 28, 2003, I did a search on the publicly available Dialog database to determine who was the current assignee of U.S. Patent No. 4,945,114. This information was included in my patent chart.

11. I was told to bill the time I spent on my investigation to Reliant's "general" billing number (940006-1000). This sort of preliminary, public investigation is often billed at the outset to the "1000" number. Once an actual opinion or analysis is requested, the FLH partner clears any conflicts that might arise from a formal study or patent opinion and creates a specific client matter in the "7000" series. To my knowledge, no such matter was created and I was never asked to work on any opinion based upon the data I had compiled.

12. I did not conduct any study or provide any opinion regarding the validity, enforceability or the potential to "design around" any patent related to Rythmol®. The chart I provided to Mr. Berdon was neither intended to -- nor did it provide -- such information. Indeed, my STN search was not even based on a patent (i.e., it was not a prior art search). It was based on Rhythmol's® active ingredient -- propafenone -- and the assignees Abbott, Knoll and BASF. The patents listed in the chart I provided to Mr. Berdon would have required substantial scientific interpretation and analysis to provide any meaningful information to a potential acquirer of Rhythmol®. At most, what Reliant gained from my chart was a compendium of many patents and applications assigned to either Abbott, Knoll or BASF that reference the drug propafenone. The **identification** of those patents was in no sense based on any confidential or

proprietary information, merely the product of a search of public information concerning a single drug compound.

13.     Inasmuch as the memorandum I prepared does nothing more than list public information regarding propafenone patents, it could not be considered as either legal advice or business advice regarding any particular patent's viability. Put differently, my research could have been duplicated by any public user of the Orange Book and the STN database in a matter of a few hours.

14.     I did not speak about the public records investigation that I performed with anyone inside or outside the firm other than Mr. Berdon. I do not believe I ever had any direct communications with anyone from Reliant.

15.     Although I do not believe I was ever privy to anything but now-dated public information regarding propafenone, the Firm has erected an Information Wall between me and the rest of the Firm concerning this case.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on: May 8 2007

_____
Ali Berkin

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on September 21, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld [jbbefiling@mnat.com]
>Maryellen Noreika [menefiling@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200

I further certify that on September 21, 2007, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

### *By E-Mail and Hand Delivery*

>Jack B. Blumenfeld [jblumenfeld@mnat.com]
>Maryellen Noreika [mnoreika@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200

### *By E-Mail*

>John Desmarais [jdesmarais@kirkland.com]
>Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
>Christine Willgoos [cwillgoos@kirkland.com]
>KIRKLAND & ELLIS LLP
>Citigroup Center
>153 E. 53rd Street
>New York, NY  10022
>(212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

        **YOUNG CONAWAY STARGATT & TAYLOR LLP**

/s/ Karen L. Pascale

_____
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,
Par Pharmaceutical, Inc.*

2