IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
RELIANT PHARMACEUTICALS, INC., :
:
    Plaintiff, :
:
    v. : Civil Action No. 06-774-JJF
:
PAR PHARMACEUTICAL, INC., : **REDACTED – PUBLIC VERSION**
:
    Defendant. :
:
---------------------------------------------------------x

**DECLARATION OF JOHN B. HARRIS IN SUPPORT OF PAR PHARMACEUTICAL,
INC.'S OPPOSITION TO RELIANT PHARMACEUTICALS, INC.'S
RENEWED MOTION TO DISQUALIFY FROMMER LAWRENCE & HAUG LLP**

I, John B. Harris, hereby declare:

1. I am a member of the law firm of Stillman, Friedman & Shechtman, P.C., counsel to Par Pharmaceutical, Inc. ("Par") and Frommer Lawrence & Haug LLP ("FLH" or the "Firm") in connection with the renewed motion by plaintiff Reliant Pharmaceuticals, Inc. to disqualify FLH as counsel to Par in this patent infringement action.

2. I submit this declaration to address allegations by Reliant that FLH should be disqualified in part because the Firm has allegedly failed to respect Reliant's privileged information generated during FLH's prior representation. As set forth below, this allegation is untrue and misleading. In addition, I annex various documents referenced in Par's answering papers on this motion.

3. In its July 25, 2007 decision on Reliant's initial motion to disqualify FLH, this Court noted the existence of factual issues in the papers submitted by the parties and dismissed it

subject to renewal, if plaintiff chose to do so, following mutually agreed upon discovery. The Court also allowed the case to continue to proceed on the merits, noting that it was persuaded that "the precautions put in place by Defendant are sufficient, at this juncture, to protect Plaintiff."

4. Thereafter, Reliant served document requests and propounded interrogatories to Par, and took the depositions of the three current FLH employees, Daniel Brown, Ali Berkin and Arthur Hoag, whom Reliant claims were substantively involved in the Reliant representation giving rise to the alleged conflict. Par took no discovery from Reliant.

5. On August 27, 2007, the parties entered into a "Stipulation of Non-Waiver and Confidentiality Agreement" (Cortesi Dec. Ex. 1) under which Reliant produced to me, as outside counsel for Par and FLH, certain documents reflecting communications with FLH not contained in FLH's files. Reliant had previously withheld these documents from FLH, though many of them had been used in redacted form in Reliant's reply papers on the original motion to disqualify.

6. Reliant had withheld the documents based on its fear that disclosure to me (rather than FLH itself) might effect a waiver of a privilege. By the same token, Reliant suggested that if FLH accepted the documents, information FLH did not then possess could be imputed to the Firm. See my e-mail to Gerald Flattman dated May 30, 2007, annexed as Exhibit A. The Stipulation resolved this impasse by providing that disclosure to me would not effect a waiver of the privilege, that the documents would receive a heightened degree of confidentiality and not be shown to the FLH trial team, and that the acceptance of the documents would not be a ground to disqualify FLH. Reliant produced these documents to FLH's outside counsel the same day and FLH has followed the Stipulation to the letter.

7. On August 29, 2007, Reliant deposed Daniel Brown and Ali Berkin of FLH. When inquiry began regarding the documents produced pursuant to the Non-Waiver Agreement, I suggested that the testimony about these documents, and the documents themselves, be separately bound to make sure they were not inadvertently disclosed to the FLH trial team. Reliant's counsel agreed.

8. Later that night, after the testimony was over and Reliant's counsel reviewed the transcript to determine which portions involved the newly produced documents, it belatedly designated not only what we had agreed to, but sought to separately bind (and impose the heightened confidentiality requirement) on testimony regarding the four documents that had been produced long before August 27 **by FLH to Reliant**.

9. Reliant demanded that these documents and testimony about them be withheld from the FLH trial team under the August 27 Stipulation, even though FLH has conceded that it produced these four documents from its files, these documents became known to the trial team during the investigation of the conflict and the documents were specifically referenced in FLH's response to the prior papers. (See Haug Dec. at ¶ 21 listing the four documents FLH had located.)

10. In response to these belated designations -- made under a Stipulation that on its face applied only to the documents Reliant had withheld -- I merely objected to treating the FLH-produced documents under the same heightened confidentiality standard that applied to the documents to which FLH did **not** have access. Cortesi Dec. Ex. 37.[1] This objection is what

---

[1] I also noted, in passing, my view that not all of the Reliant documents produced under the Non-Waiver Agreement involved material that needed to be kept from the FLH trial team, but advised Reliant I would respect its designations. Obviously, overbroad designation of "outside counsel eyes only" interferes with a lawyer's ability to communicate with a client -- and is obviously unnecessary when applied to documents FLH provided to Reliant.

supposedly evinces FLH's abject refusal to treat "any information generated on behalf of Reliant ... as privileged and confidential." (Mem. at 3, 34)

11.  This allegation obviously misconstrues FLH's position (inasmuch as I have **never** said or implied that FLH did not respect Reliant's rights, but only questioned the need for the heightened confidentiality of the "outside counsel only" designation on certain documents produced by FLH) and misconstrues the law (inasmuch as disclosure, broad or narrow, within FLH can have no effect on the privilege).

12.  Moreover, Reliant misleadingly argues that FLH has disrespected its rights as a former client by claiming Mr. Berkin's memo and chart to be "not privileged" (Mem. at 16), citing as evidence an excerpt from a deposition in which I objected to the **heightened confidentiality** (outside counsel's eyes only) designation of these documents, which were produced by FLH and admittedly available to it. (Cortesi Dec. Ex. 25 at 35-36). As the transcript reflects, I specifically offered to have the document treated as "confidential" pursuant to the appropriate confidentiality agreement (id.), a statement obviously inconsistent with disrespect for its rights.

13.  Despite my concerns about the evident overbreadth of these designations, I have acceded to the Reliant designations and have disclosed none of the designated testimony to the FLH trial team. The FLH trial team has not been made privy to any document provided under the Non-Waiver Agreement, no confidential documents have been released to any third parties, and FLH has made no statements indicating its intention to treat its confidential communications with Reliant as anything but privileged.[2]

---

[2] Similarly erroneous is the argument that FLH has set a double standard because it has refused to produce Mr. Berkin's work product for Par because it is privileged, but does not claim "privilege" over his work product for Reliant. (Mem. at 16, 33). Obviously, the

4

14. Attached herewith as Exhibit B are relevant excerpts from the September 7, 2007 deposition of Arthur Hoag.

15. Attached herewith as Exhibit C are relevant excerpts from the August 29, 2007 deposition of Ali Berkin.

16. Attached hereto as Exhibit D here is the FDA Orange Book listing for propafenone, showing a three-year statutory exclusivity expiring September 4, 2006.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on: September 21, 2007

*John B. Harris*
John B. Harris

---

documents created by Mr. Berkin for Reliant do not lose their privilege in the hands of either Reliant or FLH.

**CERTIFICATE OF SERVICE**

I, Karen L. Pascale, Esquire, hereby certify that on September 28, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld [jbbefiling@mnat.com]
>Maryellen Noreika [menefiling@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200

I further certify that on September 28, 2007, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

>***By E-Mail***
>
>Jack B. Blumenfeld [jblumenfeld@mnat.com]
>Maryellen Noreika [mnoreika@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200
>
>***By E-Mail***
>
>John Desmarais [jdesmarais@kirkland.com]
>Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
>Christine Willgoos [cwillgoos@kirkland.com]
>KIRKLAND & ELLIS LLP
>Citigroup Center
>153 E. 53rd Street
>New York, NY 10022
>(212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

/s/ Karen L. Pascale

_____
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,
Par Pharmaceutical, Inc.*

2

# Exhibit A

# John Harris

**From:** John Harris
**Sent:** Wednesday, May 30, 2007 1:14 PM
**To:** 'gflattmann@kirkland.com'
**Subject:** Reliant/Par: Review of unredacted e-mails

    I write to reiterate my request of yesterday for prompt access to the unredacted e-mails attached to the Lerner Supplemental Declaration filed on May 25, 2007. As you know, I am counsel to the Frommer Lawrence & Haug ("FLH") law firm in connection with Reliant's pending motion to disqualify.

    When we spoke yesterday, you advised me of your concerns that my review of the e-mails might constitute a waiver of the attorney-client privilege inasmuch as I might be considered a third party to the Reliant-FLH relationship. (You offered to make the e-mails available to lawyers at FLH, but that offer was problematic inasmuch as you declined to agree that such a review could be done without imputing the knowledge of the reviewing lawyer to FLH lawyers who are unaware of them).

    We believe your concerns are unfounded. My review of the documents would be as the agent and representative of FLH. There is a clean chain of confidentiality and my obligation to FLH to maintain confidentiality of communications runs parallel to the FLH-Reliant obligation. The obvious analogies are to the ability of an insured's lawyer to share information with an insurer without breaking the privilege and the protections existing for communications between a lawyer and a non-lawyer expert under <u>Kovel v. United States</u>, 296 F.2d 918 (2d Cir. 1961). We have found no case where a disclosure permitted under Model Rule 1.6 between a law firm and its counsel for the purpose of assessing its obligations has been held to be a waiver. We are, of course, prepared to agree that disclosure of the unredacted copies to me does not effect a waiver and to take such steps as you may reasonably request to insure that disclosure of any information I receive in restricted.

1

# Exhibit B



UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

------------------------------------x

RELIANT PHARMACEUTICALS, INC.,

              Plaintiff,

    -against-       Civil Action

                        No. 06-774-JJF

PAR PHARMACEUTICALS, INC.,

              Defendant.

------------------------------------x

              September 7, 2007

              12:20 p.m.


      Deposition of ARTHUR HOAG, taken by
Plaintiff, pursuant to Notice, at the offices of
Kirkland & Ellis LLP, 153 East 53rd Street, New
York, New York, before ERIC J. FINZ, a Shorthand
Reporter and Notary Public within and for the
State of New York.

```
 1                   ARTHUR HOAG
 2      Q.      Do you know who wrote that?
 3      A.      Probably Mr. Harris.
 4      Q.      But you read it and you signed the
 5   declaration?
 6      A.      Yes.
 7      Q.      And was that an accurate statement?
 8      A.      Well, as I read it now, it does not
 9   seem to read maybe as I intended.
10      Q.      In what way doesn't it read as you
11   intended?
12      A.      Well, I don't think this, I have
13   knowledge of the '588 patent from my
14   representation of Par.  I had no knowledge of
15   Rythmol or '588, et cetera, from my
16   representation of Reliant, nor do I today from
17   my representation of Reliant.  But I certainly
18   have knowledge of the '588 patent from my
19   representation of Par.
20      Q.      And when you signed the declaration
21   in May of 2007, you had knowledge of the '588
22   patent; correct?
23              MR. HARRIS:  His point is but not
24   from his representation of Reliant.
25      A.      Yes, that is correct, I did have
```

```
1              ARTHUR HOAG
2              You were providing legal advice in
3    October of 2003 to Reliant in connection with
4    the transfer of ownership rights to the '588
5    patent; right?
6              MR. HARRIS:  Objection to the form.
7         A.   I would say in a general sense,
8    yes.  In a specific sense, not so much.
9         Q.   In a general sense yes, meaning
10   what?
11        A.   I provided comments about what one
12   would generally include or be concerned about in
13   a limited capacity for the transfer of interest
14   in any patent.  None of the advice was specific
15   to the '588 patent.  The '588 patent may well
16   have been the subject of that agreement, among
17   other things, but nothing was specific about my
18   advice to the '588 patent.  It could have
19   applied to any patent at all.
20        Q.   But in this case it did apply to
21   the '588 patent?
22        A.   I do believe it was part of the
23   transfer.
24             MR. BLUMENFELD:  Let's mark as
25   Plaintiff's Exhibit 24, Reliant 004681.  It's
```

```
1                  ARTHUR HOAG
2       A.    Yes.
3       Q.    And it says "IP counsel (third
4  party)."
5             My question for you is, do you have
6  any knowledge or information as to how you got
7  listed as being a Reliant attendee for a June?
8  30 - July 1st Rythmol due diligence meeting?
9             MR. HARRIS:  Objection to the form.
10      A.    No knowledge at all.  At best
11 speculation or something.  No.
12      Q.    Do you know who gave your name to
13 Reliant?
14      A.    I don't know, no.  I could guess,
15 but that's it.
16      Q.    Would your guess be Mr. Berdon?
17      A.    Probably.
18      Q.    Do you have any memory in the June,
19 July 2003 time frame of having any conversations
20 with either Mr. Berdon or Reliant about
21 attending an Abbott due diligence meeting?
22      A.    Not at all.  I don't believe I ever
23 did.
24      Q.    And you don't recall attending such
25 a meeting?
```

1           ARTHUR HOAG
2      A.    No.  I'm quite certain I didn't
3  attend such a meeting.
4           MR. BLUMENFELD:  Let's mark as
5  Plaintiff's Exhibit 25, RAC 0036 to 37.
6           I'm not sure how, I saw a lot of
7  correspondence, John, between you and Bill Buck
8  on confidentiality, and I don't know how you're
9  handling it, but I would like to designate this
10 and any other portions that involve RAC
11 documents under the appropriate confidentiality.
12 And I guess given our time, I'd rather deal with
13 that later than now.
14          MR. HARRIS:  I can deal with that
15 very quickly.
16          I have no objection to that.  It is
17 done pursuant to the stipulation of nonwaiver
18 and confidentiality agreement dated August 28,
19 2007.  And the testimony with respect to the
20 documents produced by Reliant to me is
21 appropriate to bind separately, and I have no
22 objection to that.
23          So we should go on a confidential
24 record until Mr. Blumenfeld is finished asking
25 about this document and any other similar

# EXHIBIT C

# REDACTED IN ITS ENTIRETY

# Exhibit D

**Search results from the "OB_Rx" table for query on "021416."**

| | |
|---|---|
| Active Ingredient: | PROPAFENONE HYDROCHLORIDE |
| Dosage Form;Route: | CAPSULE, EXTENDED RELEASE; ORAL |
| Proprietary Name: | RYTHMOL SR |
| Applicant: | RELIANT PHARMS |
| Strength: | 225MG |
| Application Number: | 021416 |
| Product Number: | 001 |
| Approval Date: | Sep 4, 2003 |
| Reference Listed Drug: | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: View

| | |
|---|---|
| Active Ingredient: | PROPAFENONE HYDROCHLORIDE |
| Dosage Form;Route: | CAPSULE, EXTENDED RELEASE; ORAL |
| Proprietary Name: | RYTHMOL SR |
| Applicant: | RELIANT PHARMS |
| Strength: | 325MG |
| Application Number: | 021416 |
| Product Number: | 002 |
| Approval Date: | Sep 4, 2003 |
| Reference Listed Drug: | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: View

| | |
|---|---|
| Active Ingredient: | PROPAFENONE HYDROCHLORIDE |
| Dosage Form;Route: | CAPSULE, EXTENDED RELEASE; ORAL |
| Proprietary Name: | RYTHMOL SR |
| Applicant: | RELIANT PHARMS |
| Strength: | 425MG |
| Application Number: | 021416 |
| Product Number: | 003 |
| Approval Date: | Sep 4, 2003 |
| Reference Listed Drug: | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: View

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs

Division of Labeling and Program Support
Update Frequency:
   Orange Book Data - **Monthly**
   Generic Drug Product Information & Patent Information - **Daily**
   Orange Book Data Updated Through August, 2007
   Patent and Generic Drug Product Data Last Updated: September 21, 2007