REDACTED VERSION – PUBLICLY FILED

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

```
-----------------------------------------------x
                                               :
RELIANT PHARMACEUTICALS, INC.,                 :
                                               :
        Plaintiff,                             :
                                               :      Civil Action No. 06-774-JJF
            v.                                 :
                                               :
PAR PHARMACEUTICAL, INC.,                      :      CONFIDENTIAL - FILED UNDER SEAL
                                               :
        Defendant.                             :
                                               :
-----------------------------------------------x
```

**DECLARATION OF EDGAR H. HAUG IN SUPPORT OF PAR PHARMACEUTICAL,
INC.'S OPPOSITION TO RELIANT PHARMACEUTICALS, INC.'S
MOTION TO DISQUALIFY FROMMER LAWRENCE & HAUG LLP**

I, Edgar H. Haug, declare:

1.      I am a partner in the law Firm of Frommer Lawrence and Haug LLP ("FLH" or

"the Firm") and lead counsel for defendant Par Pharmaceutical, Inc. ("Par") in the above-

captioned action.  I submit this declaration in support of Par's opposition to plaintiff Reliant

Pharmaceuticals, Inc.'s ("Reliant") motion to disqualify FLH.  I have personal knowledge of the

facts set forth in this Declaration, or I believe such facts to be true based upon my investigation

and information provided to me by other knowledgeable persons.

2.      The present litigation concerns the invalidity and unenforceability of Reliant's

U.S. Patent No. 5,681,588 ("the '588 patent"), and the noninfringement of the '588 patent by

Par's proposed generic propafenone product.  Reliant asserts that work done by FLH for Reliant

at the time Reliant acquired the drug product Rythmol® and three patents, including the '588

patent, requires our disqualification.  Reliant's principal allegations in support of its

disqualification motion are that:  (1) the Firm received from Reliant confidential information that

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

is relevant to the issues in the present litigation; and (2) the Firm provided Reliant with opinions regarding the validity and enforceability of the '588 patent and the potential for patent "design around" by generic competitors.  These allegations are erroneous.  The less than 20 hours of work billed by lawyers and non-lawyers with respect to Reliant's 2003 transaction with Abbott GmbH & Co. KG ("Abbott"), in which Reliant acquired Rythmol®, does not require the Firm's disqualification.

      3.     As outlined below, and in the other papers submitted in opposition to Reliant's disqualification motion, the facts underlying this motion can be succinctly stated:

      (A) Reliant first became a client of the Firm in early 2002, shortly after Andrew M. Berdon joined us as a non-equity partner.  Mr. Berdon was Reliant's principal contact at the Firm on all matters and when he left the Firm in early 2004, all of Reliant's matters and all of its files were transferred from FLH at Reliant's request;

      (B) Contrary to the impression in Reliant's papers, FLH was **not** retained -- and did not act -- as Reliant's transactional attorneys in the acquisition of the drug product Rythmol® and various patents (including the '588 patent at issue) from Abbott .  Nor did we ever provide any opinion regarding the value, validity, enforceability, potential for design around or any other aspect of the '588 patent;

      (C) The **total amount** billed by FLH personnel with respect to any aspect of the acquisition was less than 20 hours, of which 8.75 was billed by the now-departed Mr. Berdon and 7.4 hours by a non-lawyer.  Although Reliant claims that it first contacted the Firm about the acquisition in June 2003, the first any FLH lawyer (Mr. Berdon) recorded time on the matter was in late September 2003, and all but 30 minutes of the total time was billed in the week before the October 28, 2003 closing -- long after Reliant

2

CONTAINS CONFIDENTIAL INFORMATION

REDACTED VERSION – PUBLICLY FILED

presumably had made the decision to acquire Rythmol® and the '588 patent based on advice from counsel other than FLH. The invoices sent to Reliant reflect that the work FLH performed involved: (1) reviewing already-drafted contractual language between Reliant and Abbott, having no relationship to the validity, enforceability, or potential design around of the '588 patent; and (2) collecting publicly available information regarding patents that reference the active ingredient in Rythmol®, propafenone. As Reliant well knew, had it requested us to do a true validity, enforceability, design around and infringement study or analysis of the '588 patent, it would have involved much more extensive work and we would have provided a formal opinion upon which an acquirer could rely.

(D) Although Reliant claims that, as part of its due diligence, it received -- on a confidential basis -- a report about the patents from Abbott and passed the report on to someone at FLH, there is no indication that any FLH lawyer ever saw it or reviewed it. If Mr. Berdon reviewed it or discussed it, he did not bill even one-tenth of an hour to the task. If Mr. Berdon ever had the document, the Firm does not have it now. Moreover, even were it otherwise, the document is not itself subject to any conceivable privilege in Reliant's case against Par and is presumptively discoverable in this litigation.

(E) Finally, even assuming that a current FLH lawyer conceivably had some relevant confidential information, we have put in place a wall insuring that only lawyers without any knowledge of the 2003 transaction are involved in the present litigation.

<u>Background</u>

4.      FLH is a New York-based law Firm of more than 50 lawyers and 9 non-lawyer scientific advisors that handles patent and other intellectual property matters, including the

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

prosecution and defense of actions involving the validity, enforceability and infringement of

patents. The Firm has been in existence since November 1997. The Firm represents many drug

companies, including a number of generic drug companies such as Par, and has developed a

strong reputation in this area. Par has been a client of the Firm

5.      Reliant was not an institutional client of the Firm. It became a client in early

2002 after Andrew Berdon joined us as a non-equity partner on January 1, 2002. Although I

note that Reliant's declarant, Michael Lerner, states that he retained FLH "based in large part on

[my] litigation experience and expertise" and his belief that I "would be involved in the work

performed" (Lerner Dec. at ¶ 5), I billed a total of just under 7 hours to Reliant in the two years it

was a client -- all in February and April 2002 in connection with

which is completely unrelated to the subject matter of the present litigation. The Firm never

represented Reliant in connection with              and neither I nor any other attorney of the

Firm ever

6.      I did no work on the matter that forms the basis for Reliant's motion to disqualify

FLH -- Reliant's acquisition of Rythmol® and the '588 patent. Indeed, I was not even aware of

the acquisition until I learned about it in connection with the Firm's representation of Par in the

present matter. I have never received and have no personal knowledge of any information,

confidential or otherwise, that was provided to the Firm by Reliant that is substantially related to

issues raised in the present litigation.

7.      All representation of Reliant by the Firm ended when Mr. Berdon left the Firm in

February 2004. We were instructed to stop work on all matters and to transfer our Reliant files

to Mr. Berdon's new law firm, which we did. (Attached hereto as Exhibit 1 is a true and correct

**REDACTED**

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

copy of my letter to Reliant dated February 9, 2004 regarding the termination of Reliant's relationship with FLH). The Firm has not done any work for Reliant in the more than three years since.

8.    A review of the Firm's records shows that, during the time Mr. Berdon was at FLH, the Firm opened    separate matters for Reliant, although

**REDACTED**

Included among the Firm's Reliant matters

The

ʹ matters involved, among other things,    None of

these    involved the subject matter of this litigation, i.e., Rythmol®, the '588 patent, or the drug compound propafenone. The other three Reliant matters were general and miscellaneous matters, including the general matter under which the limited work relating to the 2003 Abbott transaction was billed. Mr. Berdon was lead counsel and Reliant's primary contact on each of these matters.

9.    Notwithstanding the claim by Reliant that the Firm provided substantial services to it in connection with the acquisition of Rythmol® from Abbott between June and October 2003, and that FLH was "retained" in the transaction in June 2003 (Lerner Dec. at ¶ 9), our records show that Mr. Berdon did not open a new matter for this transaction, in June or anytime later. Nor did he feel the need to run a conflict check, which would have been standard procedure if the Firm was playing a substantive role in such a transaction. One may readily infer that Mr. Berdon -- who was a member of the Firm's Conflicts Committee -- did not clear conflicts and open a new matter because he viewed whatever work was requested by Reliant to be insufficient to necessitate such procedures.

CONTAINS CONFIDENTIAL INFORMATION

REDACTED VERSION – PUBLICLY FILED

10.    Moreover, notwithstanding the claim by Reliant that FLH was specifically "retained" on this matter in June 2003 (Lerner Dec. at ¶ 9), the first time entry for any FLH employee is not until **three months later** when Mr. Berdon billed 30 minutes on September 29, 2003 to a "general" matter for his review of "Rythmol information" and communications with two non-FLH persons. (Attached hereto as Exhibit 2 is a true and correct copy of an invoice from FLH to Reliant dated October 13, 2003) Given that the transaction with Abbott is alleged to have had its genesis at least as early as June 2003, it is apparent that FLH played no significant role in the negotiations or the decision-making that led to Reliant's pursuit of the Rythmol® drug product and its related patents.

11.    It is quite telling that Reliant does not disclose to the Court the identity of the counsel who actually represented it in the Rythmol® acquisition and upon whose advice Reliant must have relied in pursuing the transaction. A search of a Securities and Exchange Commission website shows that, in securities filings, Reliant disclosed that the multinational law firm of Latham & Watkins represented Reliant in a roughly contemporaneous, related transaction with Abbott concerning Rythmol®, and presumably represented Reliant in the acquisition of Rythmol® from Abbott. Latham & Watkins has a sophisticated intellectual property practice. Moreover, Latham & Watkins has entered an appearance on behalf of Reliant in this case. See Motion and Order for Admission Pro Hac Vice for Steven C. Cherny of Latham & Watkins, dated January 30, 2007. (D.I. 9.)

12.    After the initial 30 minutes spent on September 29, 2003, our billing records show that it was three weeks before anyone at the Firm spent any time on the Rythmol® acquisition matter. From October 20-23, Mr. Berdon spent a total of 8.25 hours reviewing and revising sections of the Reliant-Abbott asset purchase agreement and a patent assignment, reviewing

6

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

Abbott and other undefined patents, and investigating an unspecified FDA patent listing issue. (Attached hereto as Exhibit 3 is a true and correct copy of an invoice from FLH to Reliant dated November 11, 2003) In this time period, an FLH associate, Arthur Hoag, spent 2.5 hours reviewing the asset purchase agreement and discussing it with Mr. Berdon. Id. That is the total attorney time on the matter.

13.     I note that Reliant received the very same invoices that reflect the actual work we performed (Exhibits 2 and 3) as well as the invoices between June and September that reflect no time spent on any Abbott matter. Reliant has chosen not to share those records with the Court, preferring instead to make blanket statements regarding the supposedly sweeping nature of our representation.

14.     With respect to the provisions of the Reliant-Abbott asset purchase agreement, pursuant to which the '588 patent was assigned to Reliant, there is no claim that it contains information relevant to the validity, enforceability, design around potential, or infringement of the '588 patent. The terms of the agreement between Abbott and Reliant are not at issue here and, in any event, the agreement is discoverable in this litigation brought by Reliant. Significantly, there is no evidence in our records that the Firm ever received **any** document from Reliant that contained confidential information concerning the validity, enforceability, design around potential, or infringement of the '588 patent.

15.     In addition, the Firm's billing records reflect that a non-lawyer scientific advisor, Ali Berkin, spent less than 8 hours searching a publicly available U.S. Food and Drug Administration ("FDA") publication and two publicly available databases to identify patents that reference propafenone, the active pharmaceutical ingredient in Rythmol®. Contrary to the implication of the Reliant papers, the collection of information Mr. Berkin assembled was not

CONTAINS CONFIDENTIAL INFORMATION

accompanied by any opinion or analysis of any sort regarding the value, validity, enforceability, design around potential, or infringement of any of the patents Reliant was acquiring.

16. Thus, as set forth in the accompanying declarations of Ali Berkin and Arthur Hoag, individuals other than Mr. Berdon spent less than 11 hours: (a) reviewing a contract between Abbott and Reliant whose terms are not conceivably at issue in this patent action; and (b) gathering information from public databases without using any confidential information or any legal insight or analysis. Neither of these individuals -- nor anyone else still at FLH -- received or was informed of any confidential information bearing on the '588 patent.

17. Nevertheless, in order to make sure that there is no conceivable taint from their brief involvement, we have erected an Information Wall screening Messrs. Hoag and Berkin from involvement in, or access to, this case. In addition, although the Firm's billing records show that my partner, Daniel Brown, never billed any time to any Reliant matter -- let alone the many hours required for him to undertake the opinion and analysis of the '588 patent that Reliant's declarant "understands" he did (Lerner Dec. at ¶ 13) -- we have also established an Information Wall between him and the lawyers handling this case. (Attached hereto as Exhibits 4 and 5 are true and correct copies of memoranda dated February 9, 2007 setting forth the Firm's establishment of an Information Wall with respect to Daniel G. Brown, Arthur L. Hoag, and Ali Berkin concerning the Firm's representation of Par in the present litigation.)

18. The Information Wall establishes a screening mechanism assuring, at least until this issue is resolved, that no one alleged by Reliant to have previously worked on a matter related to Rythmol® or the '588 patent may (1) have access to information concerning Rythmol® or the '588 patent; or (2) communicate with members of the litigation team representing Par about the present litigation. Id.

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

19.     Reliant alleges that the legal advice described in its disqualification motion was given by FLH "primarily in the form of oral communications and e-mail." (Lerner Dec. at ¶ 9) Reliant did not attach the alleged e-mails because they claim that they are privileged. Id. Reliant also did not provide descriptions of these communications of the type one would normally include in a privilege log (e.g., date, sender, recipients, subject line, etc.). Reliant's failure to provide any specifics regarding these alleged communications makes its arguments even more suspect. In addition, I question Reliant's tactics in not making the nature of its supposed "proof" available to us on its motion-in-chief.

20.     During the period June through October 2003, when these e-mails were allegedly exchanged between FLH and Reliant, the Firm did not archive its e-mails on backup disks as it does today. Moreover, when Mr. Berdon left FLH, his Firm e-mail account was discontinued and all of his e-mails were deleted from the e-mail system. Accordingly, the Firm does not have copies of the e-mails in which Reliant alleges we gave legal advice concerning the '588 patent. Nor does the Firm have any other e-mails alleged to have been exchanged between FLH and Reliant with respect to this matter in 2003.

21.     When Mr. Berdon left and Reliant withdrew all of its work from the Firm, we removed all documents from on our network that were created in any Reliant matter and copied them onto a CD-ROM. As part of our investigation into Reliant's disqualification allegations in this matter, we searched that CD-ROM and our active network files for any documents created, worked on, or opened relating to Rythmol® and the '588 patent during June through October 2003. We found only four such documents. They included: (1) an unexecuted copy of an Assignment of Patents between Abbott and Reliant; (2) the transcript of an STN public database search that was conducted on October 21, 2003 by Ali Berkin; (3) a memorandum and patent

CONTAINS CONFIDENTIAL INFORMATION

REDACTED VERSION – PUBLICLY FILED

chart dated October 21, 2003 prepared by Ali Berkin; and (4) a Dialog database search that was conducted on October 21, 2003 by Ali Berkin. These documents are discussed in the declarations of Arthur Hoag and Ali Berkin filed concurrently with this Declaration.

22.     The Firm does not have in its possession what Reliant describes as a "confidential Abbott Descriptive Memorandum" that Reliant obtained pursuant to a confidential "access agreement" with Abbott. (Lerner Dec. at ¶ 11). This document was said to have been sent to an unidentified person at FLH on June 27, 2003. Reliant does not attach this document, but instead states conclusorily that it contains confidential information concerning "scientific and clinical drug properties, patent protection, expected FDA exclusivities," etc. Id. A review of the Firm's time records does not indicate that anyone at the Firm received this document or reviewed it (particularly insofar as no time at all is billed until late September). In any event, the Firm does not have the document and its contents (whatever they may be) are unknown to us.

23.     In an effort to make sure that our representation in this matter comports with our professional obligations, we have undertaken an inquiry to determine whether our representation of Reliant in 2003 involved the issuance of an opinion regarding the '588 patent, as asserted by Mr. Lerner. As noted in the accompanying affidavits, we have found no evidence that any such opinion was ever issued. No current FLH employee has any knowledge or recollection of any discussion at all with Reliant as recited by Mr. Lerner. I note that Mr. Berdon called me in December to advise me that Reliant intended to seek our disqualification. In that call, Mr. Berdon told me that he and Mr. Brown had had a brief telephone conversation with Mr. Lerner at some point regarding potential infringement/design around of a patent being acquired by Reliant. I do not know what specifically was said. But I am confident from that call and our further investigation that, contrary to the statement in his declaration, Mr. Lerner never received a legal

REDACTED VERSION – PUBLICLY FILED

opinion from us regarding the patent, we never received confidential information that bears on any issue in this case and this conversation (whatever was said) can have no independent significance in this case.

24.    Finally, Par will be considerably prejudiced if the Firm is disqualified.  Par's retention of the Firm in this matter was unrelated to any aspect of the past Reliant representation, of which Par was unaware until after this litigation commenced.  The Firm has represented Par in connection with this matter since at least as early as              not only through the course of the present litigation, but also during the regulatory phase, including the preparation and submission of Par's Abbreviated New Drug Application for generic Rythmol® with FDA.  The Firm has also invested a substantial amount of time and effort on Par's behalf developing -- without any reference to the prior Reliant representation, of which I was unaware until late last year -- defenses of noninfringement, invalidity, and unenforceability of the '588 patent.  Moreover, a strong, long-standing working relationship has developed between Par and the Firm over the past decade.  The Firm has opened        new matters for Par since

    including

REDACTED

                                Disqualification of the Firm would substantially prejudice Par in the present litigation in terms of the time, effort, and expense that would be required to get another Firm up to speed on the facts and issues.

CONTAINS CONFIDENTIAL INFORMATION

REDACTED VERSION – PUBLICLY FILED

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on: May 9, 2007

Edgar H. Haug

12

**CONTAINS CONFIDENTIAL INFORMATION**

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on September 28, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld [jbbefiling@mnat.com]
> Maryellen Noreika [menefiling@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

I further certify that on September 28, 2007, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ***By E-Mail***

> Jack B. Blumenfeld [jblumenfeld@mnat.com]
> Maryellen Noreika [mnoreika@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

> ***By E-Mail***

> John Desmarais [jdesmarais@kirkland.com]
> Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
> Christine Willgoos [cwillgoos@kirkland.com]
> KIRKLAND & ELLIS LLP
> Citigroup Center
> 153 E. 53rd Street
> New York, NY 10022
> (212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ Karen L. Pascale

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,*
*Par Pharmaceutical, Inc.*

2

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 1

CONTAINS CONFIDENTIAL INFORMATION

February 9, 2004

**VIA FACSIMILE**

Michael Lerner, Esq.
Reliant Pharmaceuticals, LLC
110 Allon Road
Liberty Corner, NJ 07938

Re:    Transfer of Files
       FLH Ref. No.: 940006-1000

Dear Michael:

I have your letter dated February 6, to our Office Administrator, Dean Arfanis, and would like to respond. Both I and the firm are disappointed that you have decided to terminate your relationship with us. We certainly appreciate that Andy Berdon has been your principal contact with the firm and that he, together with others in the firm, have represented your interests very well. Reliant is free to select counsel of its choosing at any time, and we respect your decision. We will cooperate in transferring the files you request in an orderly and timely fashion. However, there are two matters that we would like to conclude with you before forwarding those files.

First, I am advised that you have an outstanding balance of $67,309.02. While we believe those are all the fees that are outstanding through February 9, 2004, should we find any unbilled fees or disbursements, we will send another invoice. We would appreciate payment of the outstanding balance within thirty (30) days. Should that present any problem for you, please give me a call.

Second, we also would appreciate receiving a written waiver as to any future conflict with respect to any of the products that we have worked on for you in the past. As you know, we have been approached by numerous other pharmaceutical companies to work on a number of the products that we were working on for you and turn that work away because the company perceived to constitute a potential conflict. Given that we will no longer be representing you and that Andy Berdon has left the firm, we would like your written assurance and agreement that we are now free to work on any and all of these products, even if that may result in an adverse position to Reliant Pharmaceuticals. Should you have any questions or concerns, please give me a call.

**CONTAINS CONFIDENTIAL INFORMATION**          00174548.DOC

REDACTED VERSION – PUBLICLY FILED

Michael Lerner, Esq.
February 9, 2004
Page 2

Once again, we wish Reliant continued success and best of luck in the future. We thank you for the confidence, the trust and the support that you have given the firm in the past.

Sincerely,

EHH/db

**CONTAINS CONFIDENTIAL INFORMATION**    00174548.DOC

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 2
# REDACTED IN THEIR ENTIRETY

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 3

# REDACTED IN THEIR ENTIRETY

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 4

CONTAINS CONFIDENTIAL INFORMATION

REDACTED VERSION – PUBLICLY FILED

---

# FROMMER LAWRENCE & HAUG LLP
## MEMORANDUM

---

To:    **ALL ATTORNEYS, ADVISORS, PARAGLEGALS & SECRETARIES**

From:  CONFLICT COMMITTEE (Steven M. Amundson)

Date:   February 9, 2007

Re:    Information Wall With Respect to Daniel G. Brown Concerning the Representation of Par Pharmaceutical, Inc. in *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.* (06-cv-774)

---

This Memorandum sets forth information control arrangements with respect to our representation of Par Pharmaceutical, Inc. ("Par") in a specific lawsuit pending in the U.S. District Court for the District of Delaware captioned *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.* (06-cv-774). We represent Par in the above-referenced patent infringement suit ("the Screened Matter") against Reliant Pharmaceuticals, Inc. ("Reliant"). Reliant's counsel has made an assertion that Daniel G. Brown had some involvement in a prior Frommer Lawrence & Haug ("FLH") representation of Reliant and has sought FLH's recusal. Based on our review, we do not believe there was a prior FLH representation of Reliant that is substantially related to the above-referenced case. We also believe that Mr. Brown has done no work for Reliant substantially related to the above referenced case, and has no Reliant confidential information.

Out of an abundance of caution, however, we are establishing at this time—and at least until this issue is resolved—internal procedures to ensure that Mr. Brown has no involvement with, knowledge of, or access to information regarding our representation of Par in the Screened Matter. We are also establishing internal procedures to assure that no information learned in the representation of Reliant will be used in any way in connection with the representation of Par in the Screened Matter.

No one within FLH will communicate with Mr. Brown regarding the Screened Matter. Mr. Brown will not have access to files (including computer files) regarding the Screened Matter. Mr. Brown should not be asked to do work on the Screened Matter. In addition, any individuals within FLH with knowledge relevant to the Screened Matter will have no communications (or exchange documents) of any kind about the Screened Matter with Mr. Brown. In addition, please refrain from discussing the Screened Matter in Mr. Brown's presence.

James K. Stronski will assure that the information controls are followed within FLH and will also take responsibility for assuring that, in the event additional personnel, including attorneys and staff members, are added to the team of attorneys already working on the Screened Matter, such personnel will be informed of these arrangements. Anyone who knowingly violates these procedures and instructions will be subject to disciplinary action, which may include termination.

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

The Firm's professional responsibilities require strict adherence to these procedures. It is very important that each individual identified on the attached distribution list understand and observe them. To ensure that you have read and understood, we ask that you sign and date the acknowledgement at the bottom of this Memorandum and **RETURN THE ACKNOWLEDGEMENT PAGE ONLY TO DEAN ARFANIS**, who will provide a copy to Steven M. Amundson, on behalf of the Conflict Committee. Please keep this Memorandum and a copy of your signed acknowledgement page in your files.

If you have any questions regarding these procedures or their application please contact James K. Stronski. If for any reason you cannot make the acknowledgement, please contact James K. Stronski immediately. Any person who becomes aware of a breach of these procedures, or of any development affecting these procedures, is to promptly report the same to James K. Stronski.

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

**RETURN THIS ACKNOWLEDGEMENT PAGE ONLY TO
DEAN ARFANIS**

### ACKNOWLEDGEMENT OF INFORMATION WALL PROCEDURES

**Re: Information Wall With Respect to Daniel G. Brown Concerning the Representation of
Par Pharmaceutical, Inc. in *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.***

I have read the Memorandum regarding the <u>Information Wall With Respect to Daniel G.
Brown Concerning the Representation of Par Pharmaceutical, Inc. in *Reliant Pharmaceuticals,
Inc. v. Par Pharmaceutical, Inc.*</u> I will follow the procedures described in the Memorandum.

_____
Name:
Date:

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 5

CONTAINS CONFIDENTIAL INFORMATION

---

# FROMMER LAWRENCE & HAUG LLP
## MEMORANDUM

---

To:    **ALL ATTORNEYS, ADVISORS, PARAGLEGALS & SECRETARIES**

From:  CONFLICT COMMITTEE (Steven M. Amundson)

Date:  February 9, 2007

Re:    Information Wall With Respect to Arthur L. Hoag and Ali Berkin Concerning the
       Representation of Par Pharmaceutical, Inc. in *Reliant Pharmaceuticals, Inc. v. Par
       Pharmaceutical, Inc.* (06-cv-774)

---

This Memorandum sets forth information control arrangements with respect to our representation of Par Pharmaceutical, Inc. ("Par") in a specific lawsuit pending in the U.S. District Court for the District of Delaware captioned *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.* (06-cv-774). We represent Par in the above-referenced patent infringement suit ("the Screened Matter") against Reliant Pharmaceuticals, Inc. ("Reliant"). Reliant's counsel has made an assertion that Arthur L. Hoag and other unstated individuals had some involvement in a prior Frommer Lawrence & Haug ("FLH") representation of Reliant and has sought FLH's recusal. Based on our review, we do not believe there was a prior FLH representation of Reliant that is substantially related to the above-referenced case. We also believe that Mr. Hoag and Ali Berkin have done no work for Reliant in connection with any matter substantially related to the above referenced case, and have no Reliant confidential information.

Out of an abundance of caution, however, we are establishing at this time—and at least until this issue is resolved—internal procedures to ensure that Mr. Hoag and Mr. Berkin have no involvement with, knowledge of, or access to information regarding our representation of Par in the Screened Matter. We are also establishing internal procedures to assure that no information learned in the representation of Reliant will be used in any way in connection with the representation of Par in the Screened Matter.

No one within FLH will communicate with either Mr. Hoag or Mr. Berkin regarding the Screened Matter. Mr. Hoag and Mr. Berkin will not have access to files (including computer files) regarding the Screened Matter. Mr. Hoag and Mr. Berkin should not be asked to do work on the Screened Matter. In addition, any individuals within FLH with knowledge relevant to the Screened Matter will have no communications (or exchange documents) of any kind about the Screened Matter with Mr. Hoag or Mr. Berkin. In addition, please refrain from discussing the Screened Matter in the presence of either Mr. Hoag or Mr. Berkin.

James K. Stronski will assure that the information controls are followed within FLH and will also take responsibility for assuring that, in the event additional personnel, including attorneys and staff members, are added to the team of attorneys already working on the Screened Matter, such personnel will be informed of these arrangements. Anyone who knowingly violates these procedures and instructions will be subject to disciplinary action, which may include termination.

**CONTAINS CONFIDENTIAL INFORMATION**

The Firm's professional responsibilities require strict adherence to these procedures. It is very important that each individual identified on the attached distribution list understand and observe them. To ensure that you have read and understood, we ask that you sign and date the acknowledgement at the bottom of this Memorandum and **RETURN THE ACKNOWLEDGEMENT PAGE ONLY TO DEAN ARFANIS**, who will provide a copy to Steven M. Amundson, on behalf of the Conflict Committee. Please keep this Memorandum and a copy of your signed acknowledgement page in your files.

If you have any questions regarding these procedures or their application please contact James K. Stronski. If for any reason you cannot make the acknowledgement, please contact James K. Stronski immediately. Any person who becomes aware of a breach of these procedures, or of any development affecting these procedures, is to promptly report the same to James K. Stronski.

**CONTAINS CONFIDENTIAL INFORMATION**

REDACTED VERSION – PUBLICLY FILED

**RETURN THIS ACKNOWLEDGEMENT PAGE ONLY TO
DEAN ARFANIS**

## ACKNOWLEDGEMENT OF INFORMATION WALL PROCEDURES

**Re: Information Wall With Respect to Arthur L. Hoag and Ali Berkin Concerning the
Representation of Par Pharmaceutical, Inc. in *Reliant Pharmaceuticals, Inc. v. Par
Pharmaceutical, Inc.***

I have read the Memorandum regarding the <u>Information Wall With Respect to Arthur L.
Hoag and Ali Berkin Concerning the Representation of Par Pharmaceutical, Inc. in *Reliant
Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*</u>  I will follow the procedures described in the
Memorandum.

_____
Name:
Date:

**CONTAINS CONFIDENTIAL INFORMATION**