IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-774 (JJF) |
| | ) | |
| PAR PHARMACEUTICAL, INC. | ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) | |

**PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR
DISQUALIFICATION OF FROMMER LAWRENCE & HAUG LLP**

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

Originally Filed:  September 28, 2007
Redacted Version Filed:  October 9, 2007

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

    I.     FLH Advised Reliant Concerning Rythmol® SR And The '588 Patent ............. 1

    II.    FLH's Subsequent Representations Of Reliant And Par Are
          Substantially Related ....................................................................................... 6

    III.   FLH Cannot Avoid Disqualification Based On A Flawed Legal Theory........... 8

    IV.   FLH's Trial Team Has Access To Confidential And Privileged Reliant
          Documents ...................................................................................................... 10

    V.    FLH Has Used Reliant's Confidential Information To Reliant's Detriment.... 13

    VI.   FLH Should Be Disqualified As Par's Trial Counsel
          To Safeguard Reliant, The Court, And The Public............................................ 14

CONCLUSION............................................................................................................ 16

## TABLE OF AUTHORITIES

CASES

*Amgen, Inc. v. Elanex Pharms., Inc.,*
  160 F.R.D. 134 (W.D. Wash. 1994) .................................................................10

*Buckley v. Airshield Corp.,*
  908 F. Supp. 299 (D. Md. 1995) .......................................................................4

*Donohoe v. Consol. Operating & Prod. Corp.,*
  691 F. Supp. 109 (N.D. Ill. 1988) ....................................................................15

*Gen. Elec. Co. v. Valeron Corp.,*
  608 F.2d 265 (6th Cir. 1979) ...........................................................................6

*In re Corn Derivatives Antitrust Litig.,*
  748 F.2d 157 (3d Cir. 1984)......................................................................1-2, 14

*Jack Eckerd Corp. v. Dart Group Corp.,*
  621 F. Supp. 725 (D. Del. 1985) .....................................................................11

*Lambert v. Chase Manhattan Bank, N.A.*
  Case No. 93-5268, 1996 WL 66130 (S.D.N.Y., Feb. 15, 1996).............................10

*Liljeberg v. Health Services Acquisition Corp.,*
  486 U.S. 847 (1988).......................................................................................15

*Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.,*
  632 F. Supp. 418 (D. Del. 1986).......................................................................9

*Richardson v. Hamilton Int'l Corp.,*
  469 F.2d 1382 (3d Cir. 1972)..........................................................................11

*Stratagene v. Invitrogen Corp.,*
  225 F. Supp. 2d 608 (D. Md. 2002)...................................................................6

*U.S. v. Gordon,*
  334 F. Supp. 2d 581 (D. Del. 2004)..................................................................11


OTHER AUTHORITIES

ABA Model Rule 1.10 .......................................................................................12

# INTRODUCTION

Par's argument against disqualification of FLH boils down to one basic fact -- Par is a client of FLH in several other matters and, therefore, FLH's current loyalty lies with Par, and not with its former client Reliant. But Par's and FLH's position is contrary to the ethics rules of both New York and Delaware. FLH has a duty of loyalty to its former client Reliant that includes not appearing adverse to Reliant in matters that are substantially related to its previous representation, not disclosing Reliant's confidential information to its adversaries, and avoiding the appearance of impropriety.

FLH has not honored these ethical obligations to Reliant. In contrast, FLH has advised Par, adverse to Reliant, regarding the very same issues on which it formerly advised Reliant, including the potential infringement, design-around, and validity and enforceability of the '588 patent at issue. FLH has shared Reliant's confidential information and attorney work product with Par's FLH and Delaware litigation teams, and has designated Reliant's confidential documents such that Par may have access to them.

FLH's representation of Par in this action is offensive not only to Reliant, but also to the Court, the bar, and the public. Accordingly, FLH should be disqualified as Par's trial counsel.

# ARGUMENT

## I.     FLH Advised Reliant Concerning Rythmol® SR And The '588 Patent

1.     FLH can and should be disqualified from representing Par in this litigation for two independent reasons. First, FLH has violated its ethical duty by representing Par, adverse to Reliant, in a matter that is substantially related to its former representation of Reliant. Disqualification of FLH would therefore protect Reliant, the Court and the public from impropriety. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984) (Two

primary purposes of disqualification are "to maintain public confidence in the integrity of the bar, and to protect a client's right to the loyalty of its attorney in the matter for which the attorney is retained."). Second, disqualification of FLH would avoid any further prejudice to Reliant by assuring that FLH no longer uses Reliant's confidential information to Reliant's detriment. *See id.* (Disqualification is appropriate "to prevent even the potential that a former client's confidences and secrets may be used against him.").

      2.     Reliant has demonstrated that:    (1) Reliant shared attorney-client privileged confidences and other confidential information with FLH concerning Rythmol® and the '588 patent; (2) FLH provided advice to Reliant concerning the validity, enforceability, potential infringement and design around of the '588 patent, as well as advice concerning the patent assignment and regulatory status of the '588 patent; (3) current FLH partners Dan Brown and Arthur Hoag, as well as scientific advisor Ali Berkin, were directly involved in the patent analysis, contract analysis, and/or regulatory advice that was provided to Reliant by FLH; and (4) Reliant relied on this advice in purchasing the Rythmol® portfolio and '588 patent.  Reliant Br. at 5-11; Lerner Decl. at ¶ 16 (D.I. 88).  Accordingly, FLH's former representation of Reliant concerning the patent and product at issue in this lawsuit is substantially related to FLH's current representation of Par.

      3.     FLH's and Par's arguments that FLH did not represent Reliant with respect to Reliant's purchase of Rythmol® and the '588 patent are illogical and unsupported by reason or fact.  FLH *admits* that Mr. Hoag advised Reliant concerning the asset purchase agreement under which Reliant acquired Rythmol® and the '588 patent (Par Opp. at 10-11; Cortesi Decl., Ex. 25 at 35-36 (D.I. 90)), *admits* that Dr. Berkin performed patent searches regarding the '588 patent and/or the Rythmol® formulation (Par Opp. at 12-13; Cortesi Decl., Ex.

24 (D.I. 90)), but inexplicably denies that this work was performed for the purposes of providing Reliant with legal advice regarding the Rythmol® drugs and patents that Reliant purchased from Abbott (*see* Haug Decl. at ¶ 3(D.I. 101)).  Yet, FLH provides no alternative explanation how, why, or for what purpose it was conducting patent searches, sending e-mails to Reliant regarding the '588 patent, reviewing the '588 patent or file history, investigating the Orange Book listing of Rythmol® SR, or advising Reliant concerning potential market exclusivity and generic competition.  There is, of course, only one possible explanation for why a lawyer performs work requested by a client -- because the client is seeking legal advice regarding the subject matter of the work performed.  And no matter how hard FLH and Par try to spin or mischaracterize the facts, that is exactly what FLH was doing for Reliant regarding Rythmol® SR and the '588 patent.

4.    FLH and Par simply ignore Reliant's contemporaneous documents demonstrating that FLH advised Reliant concerning the nature, scope, potential infringement, design around and validity of the '588 patent.  Instead, FLH and Par blindly insist that FLH's billing records and amnesic attorneys provide "affirmative proof" that FLH did not provide Reliant with any such legal advice.  But FLH's and Par's conclusory argument must fail in the face of the e-mails and other documents Reliant offered in support its request for disqualification of FLH.  Reliant Br. at 5-11; Cortesi Decl., Exs. 2-22.  For example, Par and FLH insist, based on FLH's faulty billing records, that FLH spent only 20 hours over two days advising Reliant regarding the Abbott acquisition.  Par Opp. at 27.  The contemporaneous documents offered by Reliant, however, uncontrovertibly show that FLH began advising Reliant concerning the Abbott deal at least as early as June 2003, and through October 2003.  Reliant Br. at 5-11; Cortesi Decl. at Exs. 2-22 (D.I. 90).

5.     Similarly, Par and FLH rely heavily on the purportedly low number of attorney hours FLH spent on the Rythmol® project.   However, FLH's billing records, which indicate time FLH's involvement began in late September (Par Opp. at 7), are belied by no less than 10 contemporaneous e-mails and documents dating through June, July and September 2003. *See* Cortesi Decl. at Exs. 2-12.   Moreover, the number of hours FLH billed to Reliant is irrelevant to whether FLH's current representation of Par is substantially related to its former representation of Reliant. *See, e.g., Buckley v. Airshield Corp.*, 908 F. Supp. 299, 305 (D. Md. 1995) ("Even assuming Mr. Stone billed only a short period of time it does not preclude his work from being substantially related to the present litigation.") (internal citations omitted).

6.     FLH and Par also boldly assert that FLH did not act as Reliant's attorneys with respect to Reliant's acquisition of Rythmol® and did not render any opinion regarding any aspect of the '588 patent.[1] Haug Decl. at ¶ 3 (D.I. 36, 101).   FLH and Par mistakenly rely on the absence of a written opinion as alleged support for the absence any opinion.   Reliant, however, demonstrated that it was given *oral* legal advice and opinions.   The existence of such oral opinions -- given by Messrs. Berdon and Brown -- is itself reflected in the contemporaneous documents and supported by lead trial counsel Edgar Haug's declaration.   Lerner Decl. at ¶ 9 (D.I. 88); Suppl. Lerner Decl. at ¶ 5, 14 (D.I. 91); Cortesi Decl., Ex. 11 (D.I. 96); Haug Decl. at ¶ 23 (D.I. 36, 101).

7.     Indeed, Par and FLH argue that FLH partner Dan Brown did not render any legal advice to Reliant regarding the '588 patent.   Par Opp. at 9-10.   But this assertion is

---

[1]     Par even argues, without one iota of proof, that FLH played no role in Reliant's decision to acquire the patents, and that Latham & Watkins acted as Reliant's patent counsel.   Par Opp. at 8.   The sworn declarations of Reliant's in-house counsel, however, shows that Reliant relied on FLH's legal advice in deciding to purchase Rythmol® and the '588 patent, and that Latham & Watkins never advised Reliant concerning any patent issues related to the Abbott deal.   Lerner Decl. at ¶ 16 (D.I. 88); Suppl. Lerner Decl. at ¶ 14 (D.I. 91).

contradicted by a June 2003 FLH e-mail stating that Mr. Brown was ███████████████ ████████ Cortesi Decl., Ex. 8 (D.I. 90). It is further contradicted by a second FLH e-mail stating that "Dan Brown and [Mr. Berdon] gave [Reliant] a verbal brief ... ████████████████████ ████████████████ Cortesi Decl., Ex. 8 (D.I. 90). Yet, despite Mr. Brown's "belief" that he did not give such advice to Reliant, neither he, FLH, nor Par offer any explanation of how it is that FLH made such representations to Reliant. Reliant Br. at 26. Nor does FLH offer any other independent proof in support of Mr. Brown's lack of recollection.

8.    Par's and FLH's assertion that Arthur Hoag was not involved FLH's representation of Reliant regarding Rythmol® and the '588 patent is similarly unavailing. *See* Par Opp. at 10-11. Mr. Hoag admitted that he received Reliant's confidential information regarding the contract with Abbott, that he understood that he was advising Reliant regarding that contract, and that he reviewed and revised the draft contract language. Reliant Br. at 10-11.

9.    Par and FLH also attempt to write off FLH scientific advisor Ali Berkin's work for Reliant as merely an investigation of public documents. Par Opp. at 12. But, it is undisputed that Dr. Berkin undertook that work under the direction of Mr. Berdon for the purpose of advising Reliant. It is also undisputed that Dr. Berkin created confidential work product regarding his patent searches and resulting analysis. Reliant Br. at 26-28; Berkin Decl. at ¶¶ 7-9 (D.I. 105).

10.    In short, despite FLH's denials that it represented Reliant with respect to Reliant's purchase of Rythmol® SR and the '588 patent, FLH cannot rebut Reliant's contemporaneous documentary evidence demonstrating that FLH provided Reliant with legal advice concerning the validity, enforceability, potential infringement and design around of the

'588 patent, as well as advice concerning the patent assignment and regulatory status of the '588 patent.

## II.    FLH's Subsequent Representations Of Reliant And Par Are Substantially Related

11.    Par erroneously argues that because FLH allegedly did not provide legal advice concerning the precise issues in this litigation, *i.e.*, the validity and enforceability of the '588 patent and the infringement by Par's proposed generic product, FLH should not be disqualified. Par's argument fails as a matter of both law and fact. First, for disqualification, the matters of the successive representations need only be "substantially similar," not exactly the same. FLH's rendering of legal advice concerning Reliant's purchase of the drug and patent at issue here is substantially related to FLH's defense of Par in Par's effort to market the same drug and invalidate the same patent. *See, e.g., Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 612-13 (D. Md. 2002) (disqualifying firm from representing alleged infringer because an associate was involved in prosecution of a continuation application of the patent-in-suit during her previous employment at another firm); *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979) (disqualifying attorney from representing alleged infringer because attorney prosecuted patents in related subject areas for plaintiffs). Second, the undisputed declarations of Reliant's in-house counsel, Michael Lerner, demonstrate that FLH did render legal advice concerning the precise matters at issue in this litigation, including the validity, enforceability, and potential design around of the '588 patent.[2] Mr. Lerner's declarations are supported by contemporaneous documentation. *See generally,* Suppl. Lerner Decl. (D.I. 91); Cortesi Decl. (D.I. 90). Par, on the other hand, offers nothing but attorney argument and convenient memory loss to support its argument against disqualification. Thus, FLH's current representation of Par,

---

[2]    Par and FLH did not seek to challenge Mr. Lerner's sworn declarations through deposition.

far from bearing the alleged "superficial similarity" to its former representation of Reliant, involves the same or substantially related issues as FLH's former representation of Reliant.

12.    Par also argues that the infringement of Par's proposed generic products is not relevant to the Rythmol® formulation FLH investigated on Reliant's behalf. Par Opp. at 28-29. This argument also fails. Because Par's formulation, by law, must be bioequivalent to Rythmol® SR, both Par's and Reliant's drug formulations are relevant to this lawsuit. That Reliant provided FLH confidential documents regarding the Rythmol® formulation is demonstrated by the e-mails and attachments sent to FLH by Reliant. *See* Cortesi Decl., Exs. 4, 7 (D.I. 90). Moreover, based on a discussion with Reliant scientist George Bobotas, FLH advised Reliant ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████ Cortesi Decl., Ex. 12 (D.I. 90). This advice is substantially related to FLH's current attempt to argue, adverse to Reliant, that Par has designed around and does not infringe the '588 patent.

13.    Similarly, Par's argument that only publicly available documents are relevant to the invalidity analysis misses its mark. Par Opp. at 29. Par ignores the fact that the Pich '287 and Kristen '347 patents that FLH now argues, adverse to Reliant, render the '588 patent invalid were discovered by Dr. Berkin during his patent searches for Reliant. Cortesi Decl., Exs. 29, 30 (D.I. 90). Indeed, Dr. Berkin determined, and Mr. Berdon advised Reliant based on that determination, that these two patents were ███████████ to Rythmol®. Cortesi Decl., Ex. 30 at PAR-FLH085-86 (D.I. 90). FLH and Par now base Par's unenforceability argument on the ███████ Pich '287 patent. D.I. 11. In addition, Abbott ████████████ ████████████████████████████████████████████████████████████ ███████ FLH's legal advice that ████████████████████████ Cortesi Decl., ex. 23

at 18-20 (D.I. 90).  That the Pich '287 and Kristen '347 patents are publicly available does not change the fact FLH has given Reliant and Par apparently contradictory advice regarding the applicability of those patents to Rythmol® SR and the '588 patent.  Thus, the representations are substantially related.

14.    Indeed, Par does not deny that FLH became aware of the Pich '287 and Kristen '347 patents during FLH's representation of Reliant.  Instead, Par argues that Dr. Berkin's work for Reliant is not substantially related his work for Par because the purpose of his respective searches was different.  Par Opp. at 13.  But the exact purpose of Mr. Berkin's searches for Reliant or Par is irrelevant.  Dr. Berkin was conducting confidential and privileged work for Reliant relating to Reliant's purchase of the '588 patent, and the results of that work bear directly on the invalidity and unenforceability arguments FLH now makes against Reliant's '588 patent on Par's behalf.

15.    Par also argues that the Reliant-Abbott contracts -- which Mr. Hoag reviewed and revised for Reliant -- are not at issue here.  Par Opp. at 27-28.  That is incorrect. Par's FLH litigation counsel has specifically and repeatedly requested that Reliant produce those very documents so that Par could determine the relationship between Abbott, Abbott's predecessor-in-interest Knoll AG, the '588 inventors, and Reliant with respect to this litigation. *See, e.g.,* attached Ex. A.

16.    In short, FLH's successive representations of Reliant and Par are substantially related because both representations concern the validity, enforceability, infringement and other issues concerning Rythmol® SR and the '588 patent.

III.    **FLH Cannot Avoid Disqualification Based On A Flawed Legal Theory**

17.    In an effort to bolster its defense, Par submits a declaration of a purported expert on legal ethics, Dr. Bruce Green.  Par Opp. at 23-24; D.I. 107.  But Par's incorrect

assertions made in its opposition brief also taint the opinion of its purported expert. Like Par, Dr. Green bases his entire legal theory on the faulty assumption that FLH's former work for Reliant is not substantially related to FLH's current representation of Par. Dr. Green's declaration erroneously assumes that: none of FLH's work involved an analysis, study, opinion or other legal work regarding the scope, validity, infringement or enforcement of the '588 patent; none of the lawyers or non-lawyers currently at FLH received any confidences relating to these issues; and Mr. Berdon never received any confidences relating to these issues. Green Decl at 7 (D.I. 107). Thus, Dr. Green's analysis assumes the very conclusion that he attempts to prove, *i.e.*, that FLH's work is not substantially related to its current representation because no confidences were exchanged and no opinions concerning the '588 patent were given. Reliant's contemporaneous documents -- which Dr. Green has not seen -- demonstrate otherwise. Reliant Br. at 5-11. Dr. Green's assumptions, therefore, are incorrect, and his opinion has no bearing on or relevance to the question of whether FLH should be disqualified.

18.    Par's flawed legal analysis also extends to FLH's alleged ability to use an "Information Wall" to purge itself from the ethical conflict it created when it chose to represent Par in a substantially related matter adverse to Reliant. Par Opp. at 37-38. Par does not cite a single case in support of this novel theory. Instead, Par attempts to rely on cases in which a firm walled off a lawyer who had newly joined a firm and where the adversary was a former client of the lawyer's previous firm. Par Opp. at 37-38. In that case, the firm has no confidential or privileged information concerning the former client and can prevent its lawyers from learning such information by erecting a "wall" between the firm lawyers and new lawyer that formerly represented the client. *See Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 424, 431 (D. Del. 1986) (disqualifying attorney with conflict of interest, but not the

9

firm he recently joined); *Lambert v. Chase Manhattan Bank, N.A.* Case No. 93-5268, 1996 WL 66130 at *1 (S.D.N.Y., Feb. 15, 1996) (holding that firm was permitted to screen an attorney with a conflict arising from his previous employment).   FLH cites no authority for its purported ability to screen its own attorneys from one another.  Indeed, such a wall is impermissible.  *See, e.g., Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994) ( "[A] screen may be used when a lawyer changes jobs and the new firm represents an adversary of a client of the former firm, but …the *same firm* cannot switch sides on a substantially related matter, no matter what screen it sets up.")

19.    Yet, even if it were legally permissible, FLH's purported "Information Wall" provides no assurances that FLH is upholding its duty of loyalty to Reliant.  In contrast, FLH put up its alleged wall more than *two years after* it began representing Par in the pre-litigation activities leading to this lawsuit.  Reliant Br. at 11-13.  Indeed, Reliant's attorneys Messrs. Brown and Hoag were the only FLH partners who worked on Par's prelitigation activities concerning Rythmol® and the '588 patent.  Cortesi Decl., Ex. 27 at 1-2 (D.I. 90).

20.    Moreover, the purported "Information Wall" is completely ineffective. Par's FLH litigation team has admittedly had access to the legal work, memos and search results that FLH created in the course of its representation of Reliant.  *See, e.g.,* Haug Decl. at ¶ 21 (D.I. 101); Harris Decl. at ¶ 9 (D.I. 100); Cortesi Decl., Exs. 29-33 (D.I. 90).

## IV.    FLH's Trial Team Has Access To Confidential And Privileged Reliant Documents

21.    Par and FLH purposefully confound the confidential nature of the work Par was conducting for Reliant with the confidentially of the actual documents and information that they were using to perform this work.  Par argues that the FLH trial team does not have access to confidential documents that *Reliant* provided to *FLH* in the course of the former representation.  This is, of course, incorrect, as FLH admittedly has a copy of, at least, the draft

10

asset purchase agreement, draft patent assignment, and Berkin memo in its files. *See, e.g.,* Haug Decl. at ¶ 21 (D.I. 101). Yet, even if it were true, it is a distinction without difference. Whether Reliant or FLH generated the documents, those documents reflect the legal work FLH did on Reliant's behalf regarding the '588 patent.

22.     Par and FLH allege that FLH "does not have copies of, or access to, any documents in which Mr. Berdon provided advice on the Abbott deal, let alone regarding the '588 patent." Par Opp. at 14. This is irrelevant as a matter of law and wrong as a matter of fact. First, there is no legal requirement that FLH have copies of the legal advice that was given to Reliant. The work that FLH, including Messrs. Berdon, Brown, Hoag and Berkin, did for Reliant -- advising Reliant regarding the nature, scope, potential design-around and validity of the '588 patent -- is substantially related to FLH's current representation of Par seeking to render the same patent invalid, unenforceable and not infringed. Second, the work that FLH performed in the course of its representation of Reliant, including for example, Dr. Berkin's patent search memo and Mr. Hoag's revisions and suggestions regarding the draft asset purchase agreement, was done for the purpose of providing Reliant with legal advice. Reliant Br. at 27-29. Dr. Berkin and Mr. Hoag clearly had or have access to the legal advice that they provided to Reliant. Thus, FLH's purported lack of confidential documents -- even if it were correct -- does not support Par's argument against disqualification.[3]

---

[3]     Moreover, under Third Circuit law the Court need not find that confidential information was actually exchanged in order to find that FLH's former representation of Reliant is substantially related to its current representation of Par. Indeed, once an attorney-client relationship is established, the attorney's access to confidential information is presumed. *U.S. v. Gordon*, 334 F. Supp. 2d 581, 593 (D. Del. 2004). It is sufficient for purposes of disqualification that "it can reasonably be said that in the course of the former representation, the attorney might have acquired information related to the subject matter of his subsequent representation." *Jack Eckerd Corp. v. Dart Group Corp.*, 621 F. Supp. 725, 730 (D. Del. 1985) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972)).

11

23. Par and FLH also attempt to divorce Mr. Berdon from his role as an FLH partner in an effort to avoid FLH's ethical obligations to Reliant. For example, Par and FLH claim that although Mr. Berdon received confidential documents from Reliant, those same documents were not provided to FLH. Par Opp. at 17. This position is devoid of any logic. Reliant sent its confidential information to FLH via FLH partner Mr. Berdon. *See, e.g.,* Cortesi Decl., Exs. 2, 5, 7 (D.I. 90). Whether those documents were actually reviewed by other FLH attorneys or agents is a completely separate question -- and one that is presumed by law because Mr. Berdon's knowledge of Reliant's confidential information is imputed to the firm.[4]

24. FLH and Par also contend that any legal advice Mr. Berdon may have given to Reliant was not shared or discussed with anyone else at FLH. Par Opp. at 17. FLH and Par simply have no basis for such an assertion, and not one shred of supporting evidence. Indeed, the contemporaneous documentary evidence and deposition testimony of FLH attorneys conclusively show otherwise. Mr. Berdon's advice to Reliant regarding potential market exclusivity and Orange Book listing issues were based on the work performed by Dr. Berkin, and thus Dr. Berkin was intricately involved in the advice given to Reliant. Reliant Br. at 27-28. Similarly, Mr. Hoag admitted at his deposition that he discussed Reliant's confidential information with Mr. Berdon and that they conferred regarding the legal advice Mr. Berdon gave to Reliant. Reliant Br. at 29; Cortesi Decl., Ex. 25 (D.I. 90). The contemporaneous documents also show that Mr. Brown considered the '588 patent and file history and advised Reliant regarding ████████████████████████████████ Cortesi Decl., Ex. 8 (D.I. 90).

---

Given FLH's admissions and Reliant's contemporaneous documents, it can reasonably be assumed that confidences were exchanged.

[4] ABA Model Rule 1.10, Cortesi Decl., Ex. 39.

**V.**    **FLH Has Used Reliant's Confidential Information To Reliant's Detriment**

        25.    FLH should be disqualified because it has used information gained in the course of its representation of Reliant concerning Rythmol® and the '588 patent to Reliant's detriment.    For example, FLH has permitted Par's trial team to have access to documents regarding the '588 patent that FLH generated on Reliant's behalf.  *See, e.g.,* Haug Decl. at ¶ 21(D.I. 101); Harris Decl. at ¶ 9 (D.I. 100); Cortesi Decl., Exs. 29-33 (D.I. 90).

        26.    Par, FLH, and their attorney argue that disclosure of FLH work product generated on Reliant's behalf to other FLH attorneys is not a waiver of privilege.  Par Opp. at 39-40; Harris Decl. at ¶12.  That is correct as to third parties.  FLH fails to recognize, however, that whether Reliant's privileged information and legal advice comes from Reliant's or FLH's files, the privilege belongs to Reliant, and Par's FLH trial counsel cannot have access to such information without Reliant's permission.    FLH and its counsel have failed to honor the privileged documents created by FLH on Reliant's behalf as belonging to Reliant.  Instead, they have shared these documents with Par's trial team, and insisted they be designated as "Confidential" pursuant to the protective order so that Par in-house employees may have access to them pursuant to the protective order entered in this action.  Harris Decl. at ¶ 9.

        27.    Moreover, any assertion that Par, FLH, and their attorney have respected Reliant's confidential and privileged information is incorrect.  Instead, FLH's and Par's counsel has violated the non-waiver agreement by providing Par's Delaware counsel, Young Conaway Starrgatt & Taylor ("YCST"), with an unredacted copy of Par's opposition brief that clearly indicates it contains information Reliant provided to pursuant to the non-waiver agreement.  Par

Opp. at 15-19. YCST is not a party to the non-waiver agreement, and Reliant never agreed to permit YCST access to its confidential and privileged information.[5]

## VI.    FLH Should Be Disqualified As Par's Trial Counsel To Safeguard Reliant, The Court, And The Public

28.    Disqualification serves not only to protect Reliant from the potential duplicity of its attorneys, but also to safeguard the Court, the bar, and the public. *In re Corn Derivatives Antitrust Litig.*, 748 F.2d at 162. Disqualification is justified here because FLH's and Par's own actions illustrate exactly why disqualification is a public policy matter.

29.    For example, Par and FLH contend that, because FLH did not open a billing number for its work relating to Rythmol®, FLH could not have been involved in the due diligence of Reliant's acquisition from Abbott of the drug and the '588 patent. Par Opp. at 6-7. Although FLH's own sloppy billing and timekeeping records may go to the competence of the work it performed for Reliant, it does not change the substantive legal advice Par gave to Reliant, as reflected in the contemporaneous documents.

30.    Similarly, Par and FLH attempt to use FLH's inadequate timekeeping and billing practices to argue that FLH was unable to identify any potential conflict of interest. Par Opp. at 39. This is simply incorrect. FLH admits that it formerly represented Reliant with respect to a number of different matters. Haug Decl. at ¶ 8 (D.I. 101). And, FLH knew that Reliant had not waived any future conflicts adverse to Reliant, despite FLH's clear request for Reliant to do so. Haug Decl. at Ex. 1 (D.I. 101). Most importantly, it is undisputed that Arthur Hoag, the FLH partner who purportedly checked conflicts for FLH's representation of Par in this matter, had several e-mails *on his own computer* containing the subject line "Rythmol." Cortesi

---

[5]    In contrast, Reliant served YCST with a redacted copy of its opening brief and supporting exhibits to prevent disclosure of Reliant's privileged information to YCST.

Decl., Ex. 25 (D.I. 90). Thus, FLH knew, or should have known, that its representation of Par was substantially related to its former representation of Reliant. FLH should not be able to use its own insufficient clearance procedures to avoid its ethical duties. *See Donohoe v. Consol. Operating & Prod. Corp.*, 691 F. Supp. 109, 119 (N.D. Ill. 1988) (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)) (stating that, "if attorneys know they will be disqualified even after lengthy representation, they will be more likely to check carefully to avoid conflicts before accepting representation.").

31. Par's and FLH's gamesmanship is also apparent in their refusal to acknowledge FLH's representation of Reliant despite the clear contemporaneous documentary evidence. Instead, Par and FLH cite to the lack of memory of Par's FLH attorneys as alleged "affirmative proof" that FLH never represented Reliant in matters related to the '588 patent. However, this convenient lack of memory cannot vitiate the contemporaneous documentary evidence demonstrating what FLH *actually did*. As reflected in those documents, FLH advised Reliant concerning the nature, scope, potential design around and infringement of the '588 patent at issue here. *See* Cortesi Decl., Exs. 2-23, 29-30 (D.I. 90).

32. Moreover, Par argues that it will be "considerably prejudiced" if FLH is disqualified. Par Opp. at 4. This argument is unavailing. Reliant notified Par and FLH of FLH's conflict of interest within a week after this action was served. Yet FLH and Par refused Reliant's multiple requests that FLH honor its ethical obligations. Cortesi Decl., Ex. 35 (D.I. 90). Moreover, discovery in this action has just begun in earnest, and *Markman* proceedings will not begin for over six months. Thus, there is little harm, if any, that will befall Par if it must switch counsel at this early stage of the litigation. More importantly, any minimal prejudice that Par may suffer is of its own making. Par should not be able to knowingly keep FLH as its

counsel in the face of Reliant's repeated requests for withdrawal, and then to argue that it suffers prejudice from its own obstinate refusal to hire counsel free from ethical conflicts.

33.    FLH should be disqualified to prevent lawyers from engaging in the type of conduct that FLH has demonstrated here.

## CONCLUSION

For the reasons set forth in its opening brief and herein, Reliant requests that the Court disqualify FLH from representing Par in connection with this litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

*Of Counsel:*

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

September 28, 2007

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2007 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

October 9, 2007 upon the following in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire | *VIA ELECTRONIC MAIL* |
| Karen L. Pascale, Esquire | *and HAND DELIVERY* |
| YOUNG, CONAWAY, STARGATT & TAYLOR | |
| The Brandywine Building | |
| 1000 West Street, 17th Floor | |
| Wilmington, DE  19801 | |
| | |
| Edgar H. Haug, Esquire | *VIA ELECTRONIC MAIL* |
| FROMMER LAWRENCE & HAUG LLP | |
| 745 Fifth Avenue | |
| New York, NY  10151 | |
| | |
| John B. Harris, Esquire | *VIA ELECTRONIC MAIL* |
| STILLMAN, FRIEDMAN & SHECTMAN, P.C. | |
| 425 Park Avenue | |
| New York, NY  10022 | |

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)

# EXHIBIT A

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

September 12, 2007

**James K. Stronski**
JStronski@flhlaw.com

**BY FACSIMILE AND E-MAIL**

William T. Vuk, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

Re:    Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.
       Civil Action No. 06-774-JJF

Dear Bill:

Now that we have begun our review, however preliminary, of the documents produced by Reliant on September 4, I write to follow up on my September 4, 2007 letter concerning your request that Par withdraw its motion to compel as moot.

Concerning documents, we preliminarily note that important paper documents appear to be missing from Reliant's production, including the following:

- Asset Purchase Agreement Documents: Final, executed copies of the agreements listed in the List of Exhibits to the Asset Purchase Agreement between Abbott Laboratories, Inc. ("Abbott") and Reliant, referenced in REL013091, and the schedules/documents listed in the Index of Schedules to the same Asset Purchase Agreement, referenced in REL013177;

- Third-Party Agreement Documents: Agreements and documents concerning Abbott's acquisition of rights in the product at issue (NDA 21-416) and the patent in suit from Knoll Aktiengesellschaft ("Knoll") and/or BASF Aktiengesellschaft ("BASF"), including specific agreements to which the third parties in question—the inventors of the '588 and '287 patents, Abbott, Knoll, and BASF—are a party (See, e.g., Par Doct. Req. Nos. 10, 83-85), and any such agreements pertaining to any right that Reliant may have to request—or any obligation that the third parties in question may have to provide—cooperation in the discovery or litigation of this case (See, e.g., Par Doct. Req. Nos. 10, 38, 83-85);

- Development Documents: Documents concerning the '588 patent, including conception (no. 2); initial disclosure (no. 3); reduction of practice (no. 4); the research, development, formulation, or testing of any invention claimed in the '588 patent (no. 5); data or test results (no. 6); first use, sale, or offer for sale (no. 7); and novelty or patentability studies (no. 8);

00481092.DOC

William T. Vuk, Esq.
September 12, 2007
Page 2

- <u>Patent Prosecution Documents</u>: Documents concerning the prosecution of the patent in suit (nos. 25-28);

- <u>Organization Charts</u>: Charts concerning the organizational responsibilities of individuals at Reliant involved in any propafenone product according to NDA 21-416 (no. 76); and

- <u>Production Bates Range Gap</u>: Reliant bates numbers REL000853-REL000885 are missing from the production. Do documents corresponding to this range exist?

We would be willing to withdraw the document portion of the pending motion—without prejudice and subject to further analysis of Reliant's recently-produced documents—if Reliant, for each category above, (i) commits to promptly produce the above paper documents that are in its possession, custody or control, or (ii) represents that it has no such additional documents in its possession, custody or control that are not entitled to privilege or work product protection. To the extent the document portion of the motion is withdrawn without prejudice based on this understanding, it would be on the further understanding that Reliant not oppose on timeliness grounds any renewed motion to compel by Par directed to the documents. We understand separately that e-discovery—on which we have other issues that will be the subject of tomorrow's 10 a.m. conference call—may also involve the later production of additional documents that may fall into the above categories.

Finally, Par cannot withdraw the motion in its entirety because Reliant has not corrected the deficiencies in its interrogatory answers that are the subject of this motion. It has been, and continues to be, within Reliant's power to moot that portion of the motion by appropriately supplementing its interrogatory answers.

Very truly yours,

James K. Stronski

cc:    Gerald J. Flattmann, Jr., Esq. (by e-mail only)
       Christine Willgoos, Esq. (by e-mail only)
       Jack B. Blumenfeld, Esq. (by e-mail only)
       Josy W. Ingersoll, Esq. (by e-mail only)
       Karen L. Pascale, Esq. (by e-mail only)

00481092.DOC