IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 06-774-JJF |
| PAR PHARMACEUTICAL, INC., | : | |
| Defendant. | : | |

---

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO COMPEL DISCOVERY OF FOREIGN INVENTORS

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: (302) 571-6600
Fax: (302) 571-1253

- and -

**FROMMER LAWRENCE & HAUG LLP**
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

*Attorneys for Defendant, Par Pharmaceutical, Inc.*

December 19, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................. 3

STATEMENT OF FACTS .................................................................................................. 4

ARGUMENT .................................................................................................................. 10

I.     THIS COURT SHOULD FOLLOW ITS HOLDING IN *AMGEN* AND
       ORDER RELIANT TO PRODUCE THE INVENTORS AND THEIR
       DOCUMENTS BECAUSE RELIANT HAS A CONTRACTUAL RIGHT
       TO DEMAND THE INVENTORS' COOPERATION IN THIS
       LITIGATION ..................................................................................................... 10

II.    EVIDENTIARY AND OTHER SANCTIONS SHOULD BE IMPOSED
       ON RELIANT IF IT FAILS TO PROVIDE THE REQUESTED
       INVENTOR DISCOVERY ....................................................................................... 14

       A.     If Reliant Does Not Produce the Inventors and Their Documents
              Before the March 7, 2008 End of Fact Discovery, the Court Should
              Shorten the 30-Month Statutory Stay of Approval of Par's
              Application to FDA. ................................................................................... 14

       B.     In the Event Reliant Fails to Produce the Inventors for Deposition
              by the Close of Discovery, Par Requests that this Court Impose
              Evidentiary Sanctions Against Reliant. ........................................................ 16

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amgen, Inc. v. ARIAD Pharms., Inc.*,
    No. 06-259-MPT, 2007 U.S. Dist. LEXIS 35076 (D. Del. May 14, 2007)................passim

*Davis v. Williams*,
    588 F.2d 69 (4th Cir. 1978) ............................................................................................17

*Donnelly v. Johns-Manville Sales Corp.*,
    677 F.3d 339 (3d. Cir.1982)...........................................................................................17

*In re Nifedipine Capsule Patent Litigation*,
    MDL No. 774, 1989 U.S. Dist. LEXIS 11061 (S.D.N.Y., Sep. 20, 1989)............13, 14, 15

*Minebea Co. Ltd. v. Papst*,
    370 F. Supp. 2d 302 (D.D.C. 2005).........................................................................13, 16

*Transportes Aereos de Angola v. Ronair, Inc.*,
    104 F.R.D. 482 (D. Del. 1985) ......................................................................................17

## <u>Statutes</u>

21 U.S.C. § 355(j)(5)(B)(iii)...............................................................................................4, 14, 15

## <u>Rules</u>

Fed. R. Civ. P. 37(b)(2) ....................................................................................................17

## NATURE AND STAGE OF PROCEEDINGS

This patent infringement action by Reliant Pharmaceuticals, Inc. ("Reliant") is based on Par Pharmaceutical, Inc.'s ("Par") application seeking FDA approval to market a generic version of Reliant's propafenone HCl extended-release product, an arrhythmia medication sold under the brand Rythmol® SR. At issue is a single formulation patent with one independent claim, the '588 patent,[1] which issued to Knoll Aktiengesellschaft ("Knoll") on assignment from four German inventors residing in Germany—Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer (the "inventors" or "German inventors"). Reliant is the current assignee of the '588 patent.

As Reliant concedes, the German inventors are among the most important witnesses in this case. They are the only witnesses to the development of the alleged invention claimed in the '588 patent. They are also the only witnesses who can testify concerning their knowledge of a prior art patent owned by the parent corporation of their employer Knoll, the non-disclosure of which gives rise to Par's unenforceability defense and inequitable conduct counterclaim. To date, Par has been unable to schedule the deposition of these witnesses or obtain relevant documents in their possession. Par has sought the voluntary appearance of the inventors and production of their documents through Reliant's counsel, who also represent all four inventors. Reliant's counsel has informed Par that they cannot accept any subpoenas on the inventors' behalf or voluntarily produce the witnesses or their documents. Par has simultaneously sought to obtain the assistance of the German courts, through the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), to obtain the testimony and relevant documents of these inventors and their employer. This Court approved and issued Requests for International Judicial Assistance for this purpose on September

---

[1]    U.S. Patent No. 5,681,588.

19 and 21, 2007. These Requests were submitted to the respective German state authorities, each of which recently advised that the Requests will not be processed in their current form. Par intends to amend and resubmit them for this Court's approval shortly. Under the current circumstances, however, the difficulties in obtaining such testimony and documents in Germany raises the real possibility that Par may be denied the opportunity to obtain discovery from these key witnesses.

During document discovery, Par repeatedly sought documents or agreements, including assignments, concerning any contractual right Reliant might have, as the '588 patent assignee, to secure the cooperation and attendance of the German inventors and to obtain their documents. Par moved to compel such documents, among other things, and noticed it for the September 2007 motion date. Par withdrew it upon Reliant's assurance that it would shortly substantially complete its production. But the inventor assignment document that gives Reliant the right to secure the participation of the German inventors in this litigation was produced to Par later in October 2007 by third-party Abbott Laboratories, Inc. ("Abbott"). Abbott had acquired the '588 patent from Knoll and assigned it to Reliant along with other rights to the Rythmol® products. The German inventors, by this assignment, agreed that they would "**testify in any legal proceeding** . . . and generally do everything possible to aid [Reliant] to obtain and enforce proper protection for [the invention] **in the United States**." (Stronski Decl. [2] Ex. 1) (emphasis added).

The parties are currently in the fact discovery period, which is scheduled to close on March 7, 2008. (D.I. 27.) A Markman Hearing has been scheduled for April 2, 2008 (D.I. 64) and all dispositive motions must be filed by June 27, 2008. (D.I. 27.) Par files this motion

---

[2]  "Stronski Decl." refers to the December 19, 2007 Declaration of James K. Stronski in support of this motion.

because there is a substantial likelihood that obtaining discovery of the inventors through the Hague Convention procedures, even assuming it is ultimately successful, will substantially and unnecessarily delay the completion of fact discovery. This motion seeks an order that Reliant exercise its rights under the assignment agreement to secure the attendance of the German inventors to give testimony by deposition, and to produce any relevant documents in their possession or control, at a mutually agreed time and place before the close of fact discovery. If Reliant fails to produce the four inventors and their documents as ordered, then this motion further seeks the imposition of evidentiary and other sanctions to compensate Par for the loss of this crucial evidence.

## SUMMARY OF ARGUMENT

Four key facts underpin Par's motion. First, Reliant has identified the four inventors as the individuals with the most knowledge relevant to the issues of patent infringement, validity, and enforceability. Second, Reliant has the power, pursuant to the patent assignment agreement signed by the inventors of the '588 patent, to compel these individuals to testify in a legal proceeding in the United States and produce responsive documents. Third, Reliant has thus far refused to enforce its contractual right to obligate these individuals to testify here and to produce documents. And fourth, despite Par's multiple requests, Reliant failed to provide Par with the inventors' assignment agreement that requires the inventors to travel to the United States to participate in any "legal proceeding" involving the '588 patent.

Despite the singular importance of the inventors' testimony and documents—and the plain language of the assignment obligating the inventors to cooperate with Reliant and appear in the United States—Reliant has repeatedly refused to secure their attendance or to collect and produce their responsive documents. This refusal has materially delayed critical discovery, and

in so doing, Reliant has failed to comply with its statutory obligation to reasonably cooperate in expediting this action. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

This Court resolved this same issue earlier this year, ordering a patent-assignee, ARIAD, to produce foreign-based inventors in the United States. *Amgen, Inc. v. ARIAD Pharms., Inc.*, No. 06-259-MPT, 2007 U.S. Dist. LEXIS 35076 (D. Del. May 14, 2007). As in *Amgen*, Reliant should be ordered to produce the German inventors and their documents for discovery in the United States before the March 7, 2007 close of fact discovery. Par also asks that the Court's order provide, in the event that Reliant does not comply, for sanctions in the form of: (a) the shortening of the 30-month stay of approval of Par's application to FDA, under 21 U.S.C. § 355(j)(5)(B)(iii), for Reliant's failure to cooperate in expediting this discovery; (b) the imposition against Reliant of an adverse inference against Reliant;[3] and (c) a bar against Reliant submitting any evidence in support of its claims in this case that was generated by any of the four inventors.

## STATEMENT OF FACTS

### The German Inventors Are Critical Witnesses

There is no dispute between the parties that the four inventors are among the most important witnesses in this case. Indeed, of the six individuals named by Reliant in its initial disclosures as likely having discoverable information concerning the claims and defenses in this case, four are the German inventors. (Stronski Decl. Ex. 2 at 1-2.) Reliant's initial disclosures also identify Reliant's counsel as representing the German inventors. *Id.* Par similarly listed the

---

[3] At trial the Court may infer, or instruct a jury should the issue be so tried, that the German inventors, had they appeared, would have testified that: (i) they were aware of the prior art U.S. Patent No. 4,797,287 ("the '287 patent" or "Pich patent") assigned to the parent corporation of their employer, Knoll, during the prosecution of the '588 patent, (ii) that they believed the '287 patent was material to the patentability of the '588 patent, and (iii) that they intentionally failed to disclose it to the U.S. Patent and Trademark Office or the individuals who prosecuted the '588 patent before the U.S. Patent and Trademark Office.

German inventors as likely to have discoverable information in its initial disclosures to Reliant. (Stronski Decl. Ex. 3 at 3.) In addition, Reliant identified only the German inventors as "persons with knowledge of the conception, formulation, development and testing of the inventions of the '588 patent" in its responses and supplemental responses to Par's first set of interrogatories. (Stronski Decl. Ex. 4 at 5, 10.) The four German inventors are therefore the *only* witnesses identified by either party as having knowledge concerning the development of the inventions claimed in the '588 patent, and only they can testify regarding their knowledge of the prior art '287 patent, which pertains to Par's inequitable conduct defense.

### Par's Efforts to Obtain Discovery of the Four Inventors Through Reliant and Its Counsel

Par repeatedly and unsuccessfully attempted to obtain the pertinent assignment agreement from Reliant in order to evaluate whether Reliant has the contractual right to compel the inventors to appear for a deposition and produce documents in the United States. On March 23, 2007, Par served Reliant with its first set of document requests. Par's Production Request No. 10 specifically requested Reliant to produce all documents concerning a "transfer, grant, conveyance, assignment, or license of any interest in or right under the '588 patent." (Stronski Decl. Ex. 5 at 8-9.) Reliant represented in its written responses that it would produce responsive documents that were in its possession, custody or control. *Id.*

But in a letter dated July 16, 2007, Reliant refused to produce any responsive documents—including any assignment-type documents concerning the '588 patent—until final resolution of Reliant's motion to disqualify Frommer Lawrence & Haug ("FLH") as Par's counsel. (Stronski Decl. at Ex. 6.) Without seeking a discovery stay, Reliant for the first time sought a de facto stay of any discovery due to its pending disqualification motion, even though it

had agreed to the schedule and the discovery cut off dates after first filing that motion. (Stronski Decl. at ¶ 2.)

Once more, Par requested on July 23, 2007 that Reliant "immediately produce all agreements relating to Reliant's acquisition of Rythmol® and the '588 patent from Abbott, including specifically any "agreement that concerns any . . . obligation of . . . any related person [*i.e.*, the inventors of the '588 patent] . . . to cooperate or provide assistance to Reliant on matters [concerning the '588 patent]." (Stronski Decl. Ex. 7.)  Reliant responded by reiterating its refusal to produce documents before the final resolution of the disqualification motion.  (Stronski Decl. Ex. 8.)  It also confirmed its representation of the German inventors, but stated that Reliant "has not represented that it has control over [the German inventors] . . . or the ability to compel their attendance at depositions in the U.S. or abroad." *Id.*

On July 25, 2007, the Court issued an Order denying Reliant's motion to disqualify FLH with leave to renew the motion after limited, agreed upon discovery on the disqualification issue. (D.I. 66.)  As Reliant's counsel later acknowledged, it was also clear from the Order that discovery on the merits of the case was to continue.

Also on July 25, 2007, Par served Reliant with a second set of document requests. Production Request No. 84 sought "document[s] or agreement[s] in which the inventors of the '588 patent agreed to provide assistance or cooperation to a party, including . . . Reliant . . . [in] any litigation or regulatory matter concerning such patent."  Reliant responded on August 24, 2007 by objecting to the request on a number of grounds and refused to produce the requested documents. (Stronski Decl. Ex. 9 at 4-5.)

On August 8, 2007, Par provided Reliant's counsel with document subpoenas for, among others, the German inventors, and asked Reliant's counsel whether it would accept service of the

subpoenas on their behalf, and whether the German inventors would "voluntarily produce documents sought in the subpoenas and appear for deposition at mutually convenient times and places." (Stronski Decl. Ex. 10)  Par's counsel also once again requested that Reliant immediately produce all assignment-type agreements concerning Reliant's acquisition of Rythmol® SR and the '588 patent, including any agreement obligating the inventors to cooperate or provide assistance to Reliant on litigation matters.  *Id.*

Reliant's counsel responded that they represented the German inventors, but were not "authorized to accept subpoenas on their behalf." (Stronski Decl. Ex. 11.)  Reliant's counsel also stated that none of the German inventors "are currently, or ever have been, employees of Reliant," and therefore "Reliant has no control over them."  *Id.*  Reliant's counsel did agree, however, to ask the inventors "if they would be willing to voluntarily produce documents or appear for deposition in this action in the United States."  *Id.*  On August 13, 2007, Par's counsel again inquired whether the German inventors would voluntarily produce documents responsive to the subpoenas delivered to Reliant's counsel on August 8, 2007 and whether the inventors would appear voluntarily for depositions in the United States or elsewhere.  (Stronski Decl. Ex. 12.)  Par's counsel also repeated its request that Reliant produce documents concerning Reliant's right to seek the assistance of the inventors on or before August 20, 2007.  *Id.*

On August 21, 2007 Reliant's counsel, which also represents the German inventors, advised that they "have indicated that they will not appear voluntarily in this action."  (Stronski Decl. Ex. 13.)

On August 23, 2007, Par filed a motion to compel, among other things, any agreements with the German inventors concerning the '588 patent.  (D.I. 76.)

On September 12, 2007, Par's counsel wrote to Reliant's counsel and stated that Par was prepared to withdraw the document portion of its motion (based on recent production by Reliant) if Reliant represented that it had no additional documents in its possession, custody or control that were not entitled to privilege or work product protection. (Stronski Decl. Ex. 14.) In response, Reliant's counsel represented that any "third-party agreement documents," including presumably the inventors' assignment agreement, "have been or will be produced accordingly." (Stronski Decl. Ex. 15.) Par withdrew its motion to compel "[b]ased on the representations of counsel for [Reliant], that Reliant will substantially complete document production on or before September 24, 2007, including specifically all . . . Third-Party Agreement Documents . . . and counsel's further representation that Reliant shall provide substantive responses to [Par's interrogatories]." (D.I. 93.)

### Par Obtains German Inventors' Assignment Agreement From Abbott Laboratories

On August 20, 2007, Par served a subpoena for documents on Abbott, which included document requests directed to all documents concerning a transfer, grant, conveyance, or assignment of any interest in or right under the '588 patent. (Stronski Decl. Ex. 16.) On October 5, 2007, Abbott produced documents concerning its acquisition of the '588 patent from Knoll. Among these documents was the patent assignment agreement signed by the inventors of the '588 patent—the exact type of document Par first requested from Reliant over six months earlier—by which the German inventors agreed to:

> *testify in any legal proceeding*, sign all lawful papers, execute all divisional, continuation, substitution, renewal and reissue applications, make all rightful oaths *and generally do everything possible to aid* said *Knoll Aktiengesellchaft, its successors and assigns to obtain and enforce proper protection for said invention in the <u>United States</u>*.

(Stronski Decl. Ex. 1) (emphasis added).

Because Par had not previously received Reliant's acknowledgment that it had these rights, Par was forced to attempt to obtain discovery from the German inventors through the cumbersome, lengthy, and uncertain procedures established by the Hague Convention. As discussed below Par's ability to gain this discovery through the Hague Convention has been significantly delayed by procedural issues raised by various German authorities who have declined to process the Requests in their current form.

**Par's Efforts to Obtain Discovery of the**
**<u>Four Inventors through the Hague Convention</u>**

On September 7, 2007, Par moved this Court for the issuance of five Letters of Request for International Judicial Assistance to the appropriate judicial authorities of Germany pursuant to the Hague Convention. (D.I. 83.) Among these were Letters of Request asking the appropriate German authorities to compel the German inventors to produce specifically identified documents and to appear at depositions in Germany. (Stronski Decl. Ex. 17.) The Court granted Par's motion on September 19 and 21, 2007. (D.I. 113.) On or about October 24, 2007 Par's German local counsel submitted the original Letters of Request and associated documents to the respective German authorities. (Stronski Decl. ¶ 3.)

Par, however, has been informed recently by its German local counsel that the German authorities found that the issued Letters of Request were not in compliance with the Hague Convention as applied under German law and practice and would, therefore, need to be revised. (Stronski Decl. at ¶ 4.)[4] Par now expects that any revised Letters of Request, even if accepted and processed by the German authorities, likely will not result in the giving of testimony and evidence, if at all, before May 2008. *Id.* While it is not clear when or if Par will be able to take discovery of the inventors through the Hague Convention in Germany, what is clear is that this

---

[4]    Par is in the process of preparing new Letters of Request in response to the German authorities' concerns, and intends to submit them to the Court shortly.

foreign discovery, if done through the Hague Convention process, will delay this case substantially.

**Par's Renewed Efforts to Obtain Discovery of
the Inventors through Reliant and Its Counsel**

In view of the difficulties Par has experienced in obtaining discovery in Germany, and the plain language of the inventors' assignment agreement, Par's counsel wrote to Reliant on December 14, 2007, renewing its request that Reliant, as the successor and assign to Knoll, secure the appearance of the German inventors for depositions in the United States and collect and produce their responsive documents.[5] (Stronski Decl. Ex. 18.)  In this letter, Par's counsel cited *Amgen*, noting that this Court held in that case that a patent assignment agreement signed by the inventors and containing almost exactly the same language at issue here obligated the patent holder to produce the foreign-based inventors in the United States for deposition.  *Id.*

On December 19, 2007, counsel for the parties discussed this motion.  Reliant advised Par that it was not yet in a position to respond substantively to the December 14, 2007 letter.  Par advised Reliant that it would file its motion and the parties agreed to discuss this motion further, if appropriate, if and when Reliant does substantively respond.  (Stronski Decl. ¶ 5.)

**ARGUMENT**

**I.     THIS COURT SHOULD FOLLOW THE RECENT HOLDING IN *AMGEN*
AND ORDER RELIANT TO PRODUCE THE INVENTORS AND THEIR
DOCUMENTS BECAUSE RELIANT HAS A CONTRACTUAL RIGHT TO
DEMAND THE INVENTORS' COOPERATION IN THIS LITIGATION**

The District of Delaware has recently addressed the question at issue here: whether Reliant, as assignee of the '588 patent, may be compelled to provide discovery of the inventors who executed a patent assignment agreement agreeing to assist in any legal proceeding.  In

---

[5]     Par's counsel also informed Reliant's counsel that it had been advised by the German authorities that the Hague Convention Letters of Request would need to be revised, and that Par's counsel intended to provide Reliant's counsel with a set of draft amended requests the following week.

*Amgen*, a case directly on point, Magistrate Judge Thynge held that the language of a patent assignment agreement signed by the inventors obligated the patent holder to produce the foreign-based inventors in the United States for a deposition. *Amgen*, 2007 U.S. Dist. LEXIS 35076, at *11.

Like Reliant here, the patent holder in *Amgen* argued that the foreign-based inventors were never its employees, and therefore it had no control over them. The patent holder in *Amgen* also argued that the moving party was a "stranger" to the assignment agreement, and that they had no right to enforce it. These arguments, however, were soundly rejected by the Court. *Id.* at *4-5.

The Court focused instead on the actual language of the assignment agreement. The Court reasoned that the language of the assignment agreement clearly evidenced the inventor's contractual obligation to participate in *any* proceeding or action involving the patent-in-suit. As the court observed: "[t]he assignment provision means that all inventors have agreed to testify in *any* legal proceeding involving the invention or patent directed thereto, and not just in those proceedings in which [the patent holder] would like them to testify." *Id.* at *11. Notably, the pertinent section of the assignment agreement at issue in *Amgen* mirrors the assignment agreement at issue here, with both agreements requiring the inventors to testify in any legal proceedings related to the patent:

| Language from *Amgen* Assignment Agreement[6] | Language from Assignment Agreement Signed by Inventors of the '588 Patent[7] |
|---|---|
| AND, we hereby further agree . . . to perform any other lawful acts which may be deemed necessary *to secure fully the aforesaid invention to said ASSIGNEE*, . . . including the execution of applications for patents in foreign countries, and the execution of substitution, reissue, divisional or continuation applications and preliminary or other statements and *the giving of testimony* in any interference *or other proceeding* in which *said invention* or any application or patent directed thereto *may be involved*. | FURTHER, we agree that we will communicate to said Knoll Aktiengesellchaft, or its representatives, any facts known to us respecting said invention, *and testify in any legal proceeding*, sign all lawful papers, execute all divisional, continuation, substitution, renewal and reissue applications, make all rightful oaths and *generally do everything possible to aid* said Knoll Aktiengesellschaft, its successors *and <u>assigns</u> to obtain and enforce proper protection for said invention in the United States*. (emphasis added). |

In fact, the assignment agreement at issue here more clearly applies to compel the

participation of foreign inventors in the U.S. because it explicitly requires the inventors to

"testify in *any* legal proceeding . . . and *generally do everything possible* to aid [Reliant] . . . in

the *United States*." (Stronski Decl. Ex. 1 (emphasis added)).  The fact that this agreement

specifically mentions each inventor's obligation to travel to the United States demonstrates that

the inventors agreed to participate in any action involving the '588 patent brought in the United

States.

It is of no consequence, moreover, that the assignment agreement at issue is not between

the inventors and Reliant because the agreement clearly states that the inventors must aid Knoll's

*assigns*, *i.e.*, Reliant.  As noted above, the inventors have agreed to testify in *any legal*

*proceeding* involving the invention or patent directed thereto—not just those in which the patent

holder, here Reliant, wishes them to testify. *Amgen*, 2007 U.S. Dist LEXIS 35076, at *11

(emphasis added).  Moreover, Reliant's counsel, Kirkland & Ellis LLP, also represents the

---

6    *Id.* at * 3 (emphasis in original).

7    Stronski Decl. Ex. 1.

German inventors in connection with this action. And Reliant's apparent selection and payment of U.S. counsel for the German inventors suggests Reliant's appreciation that the German inventors would be asked to provide discovery in this action. It is also fully consistent with Reliant's influence over, and control of, these inventors.

In *Amgen*, the Court cited with approval two other cases where courts recognized similar assignment agreements as obligating patent holders to secure foreign-based inventors' compliance with their contractual obligations to provide discovery. First, in *Minebea Co. Ltd. v. Papst*, 370 F. Supp. 2d 302 (D.D.C. 2005), the court ordered the defendant, who acquired the patent from the original assignee, to take immediate steps to enforce assignment agreements executed by the inventors to obtain their testimony at trial and also make them available in the United States for deposition testimony. *Minebea*, 370 F. Supp. 2d at 308 ("I/We hereby further covenant and agree that I/We will . . . testify in any legal proceeding."). The court further ordered that if defendant failed to comply, the court would instruct the jury regarding adverse inferences that could be drawn from defendant's failure to produce the witnesses that the patentee had the ability to compel. *Id.* at 310. The court in *Minebea* reached its conclusion even though the plaintiff had already obtained limited discovery of the inventors through the Hague Convention. *Id.*

Similarly, in *In re Nifedipine Capsule Patent Litigation*, MDL No. 774, 1989 U.S. Dist. LEXIS 11061 (S.D.N.Y., Sep. 19, 1989), the court rejected the "plaintiff['s] argu[ment] that it was 'powerless to compel the inventors to testify in an American-style deposition,' and suggested that the defendant pursue Letters Rogatory under German law and the Hague Convention." *Amgen*, 2007 U.S. Dist. LEXIS 35076, at *9 (quoting *In re Nifedipine* at *3). The

court in *Nifedipine* ordered the plaintiff to produce the inventors for deposition in the United

States, or be subject to sanctions. *Id.*

Because the German inventors have contracted to do ***everything*** necessary to enforce

patent protection in any legal proceedings in the United States, the Court should order Reliant to

produce the foreign-based inventors in the United States for depositions before the March 7,

2007 fact discovery cut off and order Reliant to collect and produce documents responsive to

Par's August 8, 2007 subpoenas for inventor documents at least one week before the first

inventor deposition. (Stronski Decl. Ex. 10.)

## II.    EVIDENTIARY AND OTHER SANCTIONS SHOULD BE IMPOSED ON RELIANT IF IT FAILS TO PROVIDE THE REQUESTED INVENTOR DISCOVERY

### A.    If Reliant Does Not Produce the Inventors and Their Documents Before the March 7, 2008 End of Fact Discovery, the Court Should Shorten the 30-Month Statutory Stay of Approval of Par's Application to FDA.

Reliant's refusal to produce the inventors' documents and make the inventors available

for deposition demonstrates Reliant's failure to reasonably cooperate in expediting this action.

As previously discussed, Reliant currently enjoys an statutory 30-month stay preventing Par

from obtaining FDA approval of its application to market generic Rythmol® SR products. Under

the statutory scheme governing such applications, the Hatch-Waxman Act, Reliant is obligated to

"reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii). In the context of

Hatch-Waxman litigation, courts have specifically recognized that improper and dilatory

litigation tactics in making inventors available for a deposition constitute a failure to "reasonably

cooperate" and subjects the offending party to sanctions. Courts have recognized that, under 21

U.S.C. § 355(j)(5)(B)(iii), it is within their authority to shorten the 30-month stay.

For example, in *In re Nifedipine*, plaintiffs brought an infringement action against

defendants and obtained the statutory 30-month stay against FDA approval of the accused drug

product. 1989 U.S. Dist. LEXIS 11061, at * 4. Defendants requested that plaintiff Bayer AG, a

German corporation, make available for deposition four inventors named on the patent. *Id.* at *1.

The court ordered Bayer AG to produce for deposition certain inventors who had expressly

agreed to testify in all proceedings relating to the patent-at-issue. *Id.* at *5. Because Bayer had

not produced the inventors and, therefore had not fulfilled its obligation to "reasonably cooperate

in expediting the action," the court cautioned Bayer that "further refusal to make the four

inventors available for deposition... will result in...shortening the period of injunctive relief

which Bayer is presently enjoying." *Id.* at *4-5 (citing 21 U.S.C. § 355(j)(5)(B)(iii)).

Similarly, in *Amgen,* this Court recognized that a party with a contractual right to produce

the inventors for deposition must do so or be subject to sanctions. In adopting the reasoning in

*In re Nifedipine*, this Court noted that, "[t]he [*In Re Nifedipine*] court required plaintiff to

produce the inventors for deposition in the United States, pursuant to the Federal Rules of Civil

Procedure, or be subject to sanctions," namely a shortening of the statutory 30-month stay

period. *Amgen*, at *9.

Par has requested on numerous occasions that Reliant produce documents related to the

inventors, including assignments and agreements, and make the inventors available for

deposition. Reliant's failure to produce documents requested from the inventors and make the

inventors available for deposition constitutes a failure to reasonably cooperate in expediting this

action. Despite the fact that the inventors are contractually obligated to "testify in ***any*** legal

proceeding . . . and ***generally do everything possible*** to aid [Reliant] . . . in the ***United States***"

(Stronski Decl. Ex. 1) (emphasis added), Reliant has maintained its position that it is not

"authorized to accept subpoenas on their behalf," (Stronski Decl. Ex. 11) that none of the

German inventors "are currently, or ever have been, employees of Reliant," and that "Reliant has

no control" over the inventors. *Id.* Should Reliant continue its dilatory and improper litigation tactics, this Court should sanction Reliant by shortening the statutory 30-month stay of approval of Par's ANDA.

**B.    In the Event Reliant Fails to Produce the Inventors for Deposition by the Close of Discovery, Par Requests that this Court Impose Evidentiary Sanctions Against Reliant.**

If Reliant fails to comply with any Order secured by this Motion to Compel, this Court should subject Reliant to evidentiary sanctions. In particular, failure to comply with an Order directing Reliant to make the inventors available for a deposition should result in this Court drawing adverse inferences that the German inventors, had they been deposed, would have testified that: (1) they were aware of U.S. Patent No. 4,797,287 ("the '287 patent")[8] assigned to the parent corporation of their employer, BASF Aktiengesellschaft, during the prosecution of the '588 patent; (2) that they intentionally failed to disclose the '287 patent to the U.S. Patent and Trademark Office or the individuals who prosecuted the '588 patent before the U.S. Patent and Trademark Office; and (3) that they believed the '287 was material to the patentability of the '588 patent. Additionally, should Reliant fail to produce the inventors for deposition, the Court should preclude Reliant from introducing any testimony, documents, or other evidence from the inventors for any purpose at the trial, or in connection with any motions, hearings, or other proceedings. *See Minebea*, 370 F. Supp. 2d at 310 (concluding that continued failure to produce inventors will result in adverse inference being drawn as well as potential preclusion of evidence).

---

[8]    As a defense in this action, Par contends that the '588 patent is unenforceable due to inequitable conduct during prosecution of the patent. Specifically, Par contends that the '287 patent is material to the patentability of the '588 patent, that the inventors were aware of the '287 patent, and that the inventors intentionally failed to disclose the '287 patent to the U.S.P.T.O. during prosecution of the '588 patent. (Stronski Decl. Ex. 19.)

Rule 37(b)(2) of the Federal Rules of Civil Procedure governs sanctions for

noncompliance with an order to compel and provides, in pertinent part:

> If a party or an officer, director, or managing agent of a party . . .
> fails to obey an order to provide or permit discovery, . . . the court
> in which the action is pending may make such orders in regard to
> the failure as are just, and among others the following:
>
> (A) An order that the matters regarding which the order was made
> or any other designated facts shall be taken to be established for
> the purposes of the action in accordance with the claim of the party
> obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or
> oppose designated claims or defenses, or prohibiting that party
> from introducing designated matters in evidence;

In considering a Rule 37 sanction, a court should examine all pertinent circumstances of

the case. *See Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 508 (D. Del. 1985)

(citing *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d. Cir. 1982)).

Additionally, a court must keep in mind the sound social policy of deciding cases on their merits

and against this policy, balance considerations of sound judicial administration and the need to

deter parties from abusing the discovery process. *Transportes*, 104 F.R.D. at 508 (citing *Davis v.*

*Williams*, 588 F.2d 69 (4th Cir. 1978)). Other factors which must be balanced are the degree of

the plaintiff's personal responsibility for the delay, the amount of prejudice the defendant suffers

as the result of the delay, the extent of any history of proceeding in a dilatory manner, and the

effectiveness of less severe sanctions. *Id.* (citing *Donnelly*, 677 F.2d at 342).

Reliant has control over the inventors as they are contractually obligated to "***testify in any***

***legal proceeding*** . . . and ***generally do everything possible*** to aid [Reliant] to . . . enforce [the

patent] . . . in the ***United States***." (Stronski Decl. Ex. 1.) Reliant has the power to enforce this

contractual obligation, and is responsible for producing the inventors for deposition and for

providing their documents. Reliant has continually refused to act, claiming that it does not have the power to compel the inventors to travel to the United States and to produce their documents. Reliant is responsible for the continuous delay. Reliant has control over the inventors and if Reliant fails to produce the inventors for deposition, Reliant will be solely responsible.

Additionally, Par will be greatly prejudiced if the inventors do not produce documents and appear for deposition. Both parties have agreed that the inventors are highly material witnesses to this action. Indeed, Reliant has identified them as being the only persons with knowledge of the conception, formulation, development, and testing of the '588 patent. (Stronski Decl. Ex. 4 at 5, 10.) Without these witnesses and their documents Par will be unable to obtain key evidence relevant to its defenses of noninfringement, invalidity and unenforceability. Accordingly and even though this Court has not yet ruled on Par's instant Motion to Compel, the tactics and gamesmanship that Reliant has employed here to delay critical discovery should subject it to evidentiary sanctions in the event the inventors and their documents are not made available by Reliant before the close of discovery.

## CONCLUSION

Par respectfully requests that its motion be granted for the reasons set forth herein. A proposed form of Order is submitted herewith

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

December 19, 2007

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: (302) 571-6600
Fax: (302) 571-1253

- and -

FROMMER LAWRENCE & HAUG LLP
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

*Attorneys for Defendant, Par Pharmaceutical, Inc.*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on December 19, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld [jbbefiling@mnat.com]
> Maryellen Noreika [menefiling@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200

I further certify that on December 19, 2007, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail and Hand Delivery*
>
> Jack B. Blumenfeld [jblumenfeld@mnat.com]
> Maryellen Noreika [mnoreika@mnat.com]
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
>
> ### *By E-Mail*
>
> John Desmarais [jdesmarais@kirkland.com]
> Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
> Christine Willgoos [cwillgoos@kirkland.com]
> KIRKLAND & ELLIS LLP
> Citigroup Center
> 153 E. 53rd Street
> New York, NY 10022
> (212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,
Par Pharmaceutical, Inc.*

DB02:5962508.1                                                    066039.1001