IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC.,　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)　　　C.A. No. 06-774 (JJF)
PAR PHARMACEUTICAL, INC.,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　　　)

**RELIANT PHARMACEUTICALS, INC.'S BRIEF
IN OPPOSITION TO PAR PHARMACEUTICAL, INC.'S
<u>MOTION TO COMPEL DISCOVERY OF FOREIGN INVENTORS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

January 8, 2008

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ................................................................................................................ 4

    I.      RELIANT HAS NO CONTROL OVER THE GERMAN INVENTORS BECAUSE THEY WERE NOT OBLIGATED TO APPEAR IN ANY U.S. LITIGATION UNDER THE 1994 ASSIGNMENT AGREEMENT ............................................................. 5

    II.     RELIANT HAS NO CONTROL OVER THE GERMAN INVENTORS BECAUSE ANY OBLIGATIONS UNDER THE 1994 ASSIGNMENT AGREEMENT WERE NOT TRANSFERRED TO RELIANT FROM ABBOTT ................................................ 7

    III.    RELIANT HAS NO CONTROL OVER THE GERMAN INVENTORS BECAUSE NO LEGAL RELATIONSHIP BETWEEN RELIANT AND THE GERMAN INVENTORS CAN BE IMPUTED ........................................................................................ 8

    IV.    THERE ARE NO GROUNDS FOR SANCTIONS AGAINST RELIANT ......................................................................................................... 9

CONCLUSION ........................................................................................................... 10

ii.

## TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen, Inc. v. Ariad Pharmaceuticals, Inc.*,
    2007 WL 1425854 (D.Del. 2007) ................................................................. 7

*In re Nifedipine Capsule Patent Litigation*,
    1989 WL 111112 (S.D.N.Y. 1989) ............................................................... 5

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
    2006 WL 2864586 (D. Del. 2006) ............................................................ 5, 8

*Litetronics International, Inc. v. Technical Consumer Products, Inc.*,
    2006 WL 2850513 (N.D.Ill. 2006) ........................................................... 4, 7

*Medpointe Healthcare, Inc. v. Apotex, Inc.*,
    2007 WL 211202 (D.Del. 2007) .............................................................. 6, 7

*Minebea Co., Ltd. v. Papst*,
    370 F.Supp.2d 302 (D.D.C. 2005) ............................................................ 10

*Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*,
    206 F.R.D. 392 (D.Del. 2002) (Farnan, J.) ................................................. 8

*Playboy Entm't Group, Inc. v. United States*,
    1997 WL 873550 (D.Del. 1997) ................................................................. 4

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
    233 F.R.D. 143 (D.Del. 2005) (Farnan, J.) ............................................... 5, 9

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
    254 F.Supp.2d 469 (D.Del. 2003) .............................................................. 9

Statutes

*Fed. R. Civ. P. 34(a)* ..................................................................................... 4

## NATURE AND STAGE OF THE PROCEEDINGS

On December 19, 2006, Reliant Pharmaceuticals, Inc. ("Reliant") filed this action for infringement of U.S. Patent No. 5,681,588 ("the '588 patent") against Par Pharmaceutical, Inc. ("Par"), based on Par's filing of ANDA 78-540, which seeks to market generic versions of Reliant's drug Rythmol® SR. D.I. 1. Par answered Reliant's Complaint on February 9, 2007. D.I. 11.

This action is currently in discovery. The parties have exchanged document requests and interrogatories, and have served their respective responses. To date, Reliant has produced over 92,000 pages of documents. Pursuant to the Court's Rule 16 Scheduling Order, fact discovery is to be completed by March 7, 2008. D.I. 27.

On September 7, 2007, Par moved this Court for issuance of the Letters or Request seeking discovery from the inventors and other non-parties. D.I. 83. Reliant did not oppose that request.

On December 19 2007, Par filed its Motion To Compel Discovery Of Foreign Inventors. D.I. 128. This is Reliant's opposition to that motion.

## SUMMARY OF ARGUMENT

The inventors of the '588 patent are German citizens who have declined to appear voluntarily, and cannot be compelled to appear in this action. Reliant should not be compelled to produce the German inventors because Reliant does not, and cannot, exercise control over them.

Reliant has no contractual relationship or other means of control over the German inventors. They are not and never have been employees of Reliant. In 1994, the German inventors executed an assignment agreement with Knoll in which they agreed to participate in the prosecution of a United States patent, but that agreement did not obligate the German

2.

Inventors to appear in litigation in the United States.  Reliant did not participate in any aspect of the prosecution of the patent, but acquired it from Abbott Laboratories after issuance.

Reliant does not have any rights in the assignment agreement between Knoll and the German inventors.  That assignment agreement was not transferred to Reliant when Reliant obtained the '588 patent from Knoll's successor-in-interest, Abbott.  Moreover, any legal rights that may have existed under that agreement cannot be imputed to Reliant, because Reliant's relationship to the German inventors is too remote and indirect.  Accordingly, Reliant has no right to enforce that agreement and no other means to compel the appearance of the inventors in this action.

Par improperly attempts to shift its discovery burden to Reliant.  But Par has not met, and cannot meet, its burden of proving that it is entitled to discovery from the German inventors.  In addition, Par has already initiated this discovery through the Hague Convention, the proper means through which discovery of foreign non-parties should be sought.  Thus, Par's motion should be denied.

<u>STATEMENT OF FACTS</u>

Reliant is the manufacturer of the life saving drug Rythmol®, one of the few FDA drugs approved to treat heart arrhythmia.  Rythmol®'s formulation is covered by U.S. Patent No. 5,681,588.  The '588 patent names as inventors four German citizens: Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer (collectively, "the German Inventors").

In 1994, the four German Inventors of the '588 patent executed an Assignment ("the 1994 Assignment Agreement"), assigning their rights to the invention to the pharmaceutical division of a German chemical company BASF, known separately as Knoll AG ("Knoll").  (Ex. 1).  In early 2001, Knoll was acquired and became a part of Abbott Laboratories, Inc. ("Abbott").  In 2003, Reliant acquired the '588 patent and Rythmol® SR drug from Abbott.

3.

(Ex. 2). That acquisition is memorialized in the Asset Purchase Agreement and accompanying Exhibits, under which Reliant's rights were specified. *Id.* The 1994 Assignment Agreement between the German Inventors and Knoll was not assigned to Reliant as part of its acquisition of Rythmol and the '588 patent. *Id.*

On March 23 and July 25, 2007, Par served its First and Second sets of requests for document production on Reliant. Par Br. at 5-6. In response, Reliant diligently searched its files, including the files relating to Reliant's acquisition of the '588 patent and the drug at issue, but did not locate the 1994 Assignment Agreement. Par's counsel, on the other hand, had apparently obtained the 1994 Assignment Agreement, and produced it to Reliant on August 21, 2007.[1] (Ex. 3).

On August 8, 2007, Par requested that Reliant voluntarily produce the German Inventors for deposition in the United States and collect documents responsive to Par's document requests. (Ex. 4). Reliant's counsel contacted the German Inventors, who did not agree to appear voluntarily in this action. (Exs. 5, 6). Reliant's counsel explained to Par that Reliant did not have control over the German Inventors and that the inventors would not appear voluntarily.[2] (Exs. 5, 6).

---

[1]     Par's counsel, FLH, formerly represented Reliant in connection with Reliant's acquisition of the drug and patent at issue here. See Reliant's Renewed Motion to Disqualify Frommer Lawrence & Haug LLP at D.I. 87, 89. FLH may have obtained the 1994 Assignment Agreement during the course of that representation. The agreement is also publicly available at the U.S. Patent and Trademark Office.

[2]     Reliant's counsel also explained that, in the event that Par was able to obtain discovery through the Hague Convention, Kirkland & Ellis would represent the German Inventors in connection with this litigation.

4.

On September 7, 2007, Par moved this Court for issuance of the Letters of Request seeking discovery from the German Inventors and other non-parties.[3] D.I. 83. Reliant did not oppose that request.

On December 14, 2007, Par informed Reliant that it has been "advised by the German authorities that the Hague Convention Letters of Request … will need to be revised." (Ex. 7). The parties met and conferred regarding the motion on December 19, 2007. At that point, Reliant explained that it had not had time to evaluate Par's request.

Reliant requests that the Court deny Par's motion to compel because, for the reasons stated below, Reliant has no control over the German Inventors and cannot force them to appear in the U.S.

<u>ARGUMENT</u>

The inquiry relevant to this motion is whether Reliant has control over the German Inventors. Rule 34(a) states in pertinent part that:

> A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce … [any designated documents] in the responding party's possession, custody, or *control*…

*Fed. R. Civ. P. 34(a)* (emphasis added); *see also Litetronics International, Inc. v. Technical Consumer Products, Inc.*, 2006 WL 2850513, *2 (N.D.Ill. 2006) (denying "motion for production of the inventor witnesses because there is no showing that either of the witnesses are under the actual control of [the party]"). The party seeking production bears the burden of establishing control. *Playboy Entm't Group, Inc. v. United States*, 1997 WL 873550 (D.Del. 1997).

---

[3]    Par's motion seeks discovery only of the German Inventors, and does not seek the other discovery initially set forth in Par's Hague Convention requests.

5.

The Third Circuit defines "control" in the context of Rule 34(a) as the "legal right to obtain documents required on demand." *Inline Connection Corp. v. AOL Time Warner, Inc.*, 2006 WL 2864586, *3 (D. Del. 2006). Reliant has no such legal right.[4]

Reliant has no legal right to obtain discovery from the German Inventors -- and therefore has no control over them -- for three reasons: (1) the 1994 Assignment Agreement, properly interpreted, did not concern matters of litigation; (2) the 1994 Assignment Agreement was not transferred to Reliant as part of its acquisition of the '588 patent and the drug Rythmol® SR; and (3) Reliant is too far removed from the 1994 Assignment Agreement to have legal rights imputed under that agreement.

I.    RELIANT HAS NO CONTROL OVER THE GERMAN INVENTORS BECAUSE THEY WERE NOT OBLIGATED TO APPEAR IN ANY U.S. LITIGATION UNDER THE 1994 ASSIGNMENT AGREEMENT

The 1994 Assignment Agreement between the German Inventors and Knoll concerned only matters of patent prosecution, and does not obligate the inventors to appear in litigation matters in the U.S. At the outset, the 1994 Assignment Agreement should be considered in its proper context—the assignment of inventorship rights pertaining to the '588 patent. As stated within the assignment agreement, it was signed "preparatory for obtaining

---

[4]    Par's attempt to use a broader definition of "control" is contrary to this Court's precedent. The case relied on by Par, *In re Nifedipine*, is inapposite because it differs from this case on both the facts and the law. In that case, the foreign inventors were former employees of the plaintiff, who entered into an assignment agreement directly with their then-employer. *In re Nifedipine Capsule Patent Litigation*, 1989 WL 111112, *1 (S.D.N.Y. 1989). Here, in contrast, the German Inventors are non-parties who have no affiliation to or agreement with Reliant. In addition, the legal standard used by the Second Circuit concerning Rule 34(a) disputes has been expressly distinguished from the standard employed by this Court. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 233 F.R.D. 143, 146 (D.Del. 2005) (Farnan, J.) ("[T]he Court is not persuaded that the Third Circuit has adopted as expansive a definition of 'control' as that used by courts in the Second Circuit").

6.

Letters Patent of the United States." (Ex. 1). The language within the agreement, therefore, should be construed according to its stated purpose.

> The entirety of the paragraph from which Par quoted in its motion is as follows:

> > FURTHER, we agree that we will communicate to said *Knoll Aktiengesellschaft*, or its representatives, any facts known to us respecting said invention, and testify in any legal proceeding, sign all lawful papers, execute all divisional, continuation, substitution, renewal and reissue applications, make all rightful oaths and generally do everything possible to aid said *Knoll Aktiengesellschaft*, its successors and assigns to obtain and enforce proper protection for said invention in the United States.

*Id*. The phrase "testify in any legal proceeding" is contained within a list of other actions, all of which plainly pertain only to patent prosecution, such as executing reissue applications. This Court has recently refused to interpret this phrase to allow for American-style discovery of German Inventors. *See Medpointe Healthcare, Inc. v. Apotex, Inc.*, 2007 WL 211202 (D.Del. 2007).

> In *Medpointe*, the defendant sought to depose a German inventor in the United States. *Id.* at *1. The assignment between the German inventor and the plaintiff in that case was nearly identical to the one in this case:

> > [the inventor agrees to] communicate to said *ASTA Pharma Atkiengesellschaft* or their representatives, any facts known to [him] representing said invention, and testify in any legal proceedings ..., make all rightful oaths and do everything necessary or desirable to aid said *ASTA Pharma Aktiengesellschaft*[,] their successors and assigns, to obtain and enforce proper protection for said invention in the United States, their territories and possessions, and all foreign countries.

*Id*. The *Medpointe* court declined to find "that this language inherently includes a specific assent to be subjected to an American-style deposition, governed by American discovery laws, over and above customary (and more restrictive) German discovery practices which would have been most familiar to [the inventor] at the time of signing." *Id.* at *2. Instead, this Court decided that

the Hague Convention was "the most appropriate manner in which to proceed under the circumstances at bar." *Id.*

The decision in *Medpointe* was based in part on the holding in *Litetronics*, where the court held the inventors' obligation "generally to do everything possible to aid [the party] … in obtaining and enforcing patents for said invention…" to be insufficient for establishing control over the foreign inventors for the purpose of deposing them in the United States. 2006 WL 2850513 at *1-2 ("[T]his assignment agreement simply provides that the inventors will help [the party] enforce its patent rights. … [T]he Court is not convinced that [the party] had any meaningful contractual control over the inventors."). Similarly, the 1994 Assignment Agreement, containing language parallel to that in both *Litetronics* and *Medpointe*, did not give Knoll the legal right to obligate the German Inventors to participate in the U.S. litigation proceedings.[5] Reliant, therefore, has no such right.

II.   RELIANT HAS NO CONTROL OVER THE GERMAN INVENTORS BECAUSE ANY OBLIGATIONS UNDER THE 1994 ASSIGNMENT AGREEMENT WERE NOT TRANSFERRED TO RELIANT FROM ABBOTT

When Reliant acquired the '588 patent from Abbott, it did not acquire the 1994 Assignment Agreement as part of that transaction. The relevant portion of the 2003 Asset Purchase Agreement between Reliant and Abbott states that Abbott transfers to Reliant "All rights, title and interest of [Abbott] to the Patents and the Ancillary Rights." (Ex. 2 at 2.1(a)). The term Ancillary Rights is defined to refer only to "the Intellectual Property, the Registrations,

---

[5]   Par's reliance on the *Amgen* case in support of its position is misplaced. *Amgen* is readily distinguished on the facts. In *Amgen* the inventors had already been produced in a different action by the same party, and that party was the original assignee. *Amgen, Inc. v. Ariad Pharmaceuticals, Inc.*, 2007 WL 1425854, *1 (D.Del. 2007). In contrast, Reliant has no legal relationship with the German Inventors, and they have not previously appeared on Reliant's behalf.

8.

the Promotional Materials and the Technical Information." *Id.* at 1.1.12.  The term Patents is

defined by the subject matter of the Assignment contained in the Exhibit B to the 2003 Asset

Purchase Agreement, and includes only Abbott's title and interest to the '588 patent, and one

other patent not at issue here.  (Ex. 2).  Nowhere in the 2003 Asset Purchase Agreement does

Abbott include, mention or even allude to the 1994 Assignment Agreement.  Therefore, even if

this Court decides that Knoll and Abbott had a legal right to obligate the German Inventors to

participate in the American litigation proceedings, any such right was not transferred to Reliant.

Par does not demonstrate otherwise.  As a result, Reliant lacks control over the German

Inventors.

> III.   RELIANT HAS NO CONTROL OVER THE GERMAN
>        INVENTORS  BECAUSE  NO  LEGAL  RELATIONSHIP
>        BETWEEN RELIANT AND THE GERMAN INVENTORS CAN
>        BE IMPUTED

Because of the attenuated relationship between Knoll, the original party to the

1994 Assignment Agreement, and Reliant, the Court should not impute or assume that Reliant

has any rights under that agreement.  As set forth above, in the fourteen years since the 1994

Assignment Agreement was made between the German Inventors and Knoll, Knoll has been

acquired by Abbott, and the rights to '588 patent have subsequently been acquired from Abbott

by Reliant.

This Court has denied discovery from foreign non-parties in similar

circumstances.  *See Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395

(D.Del. 2002) (Farnan, J.) (denying a motion to compel discovery from a German non-party that

had a licensing agreement with defendants because the only link between the parties was a

separate and unrelated contractual relationship); *see also Inline,* 2006 WL 2864586 at *4 ("a

contract provision which merely authorizes the party litigant's access to information that is in the

possession of a non-party, without more, is insufficient to establish legal control in Third Circuit.").

Here, Reliant is not in any contractual relationship with the German Inventors. Thus, the connection between Reliant and the German Inventors is simply too remote, and Reliant has no legal rights necessary to assert control over the witnesses.

IV.    **THERE ARE NO GROUNDS FOR SANCTIONS AGAINST RELIANT**

Par's request for sanctions is without merit.  As stated above, Reliant has fully cooperated in expediting the discovery in this case and intends to continue doing so. Indeed, Reliant's counsel has again attempted to contact the inventors to request their voluntary appearance for deposition in this action, but, to date, has been unable to reach them.  The only means for Reliant to attempt to compel the German Inventors to engage in U.S.-style discovery is to initiate a separate foreign law suit with questionable chances of success -- a lengthy and costly procedure that would not benefit anyone.

On the other hand, Par is already well under way with the Hague Convention proceedings, having submitted Letters of Request to the German authorities.  This Court ruled in *Power Integrations* that where there was an opportunity to subpoena "the party with actual possession and control over the [sought] documents" via the Hague Convention, that avenue was the one to be followed.  233 F.R.D. at 146; *see also Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F.Supp.2d 469, 474 (D.Del. 2003) (application of the Hague Convention was appropriate because the witnesses were non-parties, had not voluntarily subjected themselves to discovery, were citizens of the Netherlands, and were not otherwise subject to jurisdiction of the Court).  Par not only has such an avenue available, but it has already chosen to pursue it.  Any delay in obtaining discovery through the Hague Convention is not due to Reliant's actions, but to

10.

Par's own failure to prepare adequate discovery notices to satisfy German authorities.  Reliant

has no control over the German Inventors and should not be penalized for their unwillingness to

voluntarily testify in this action.[6]

      Reliant will continue to cooperate with Par in good faith in the Hague Convention

Proceedings.  Reliant's conduct in this matter is not sanctionable.

<u>CONCLUSION</u>

      For the reasons stated above, Par's Motion To Compel Discovery Of Foreign

Inventors should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

John Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS, LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

January 8, 2008
1377845

---

[6]    Par's reliance on *Minebea* for imposition of evidentiary sanctions is misplaced.  *Minebea* is distinguishable both because there the party subject to sanctions was an original assignee, and because the D.C. district court in *Minebea* suspected foul play on behalf of that party.  *Minebea Co., Ltd. v. Papst*, 370 F.Supp.2d 302 (D.D.C. 2005).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Josy W. Ingersoll, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

January 8, 2008 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                          *VIA ELECTRONIC MAIL*
Karen L. Pascale, Esquire                              *and HAND DELIVERY*
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

John Taylor, Esquire                                *VIA ELECTRONIC MAIL*
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY  10151

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)