IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RELIANT PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAR PHARMACEUTICAL, INC., <br><br> Defendant. | C.A. No. 06-774-JJF |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS**
<u>**MOTION TO COMPEL DISCOVERY OF FOREIGN INVENTORS**</u>

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel: (302) 571-6600

- and -

FROMMER LAWRENCE & HAUG LLP
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800

*Attorneys for Defendant Par Pharmaceutical, Inc.*

January 11, 2008

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.   RELIANT, AS AN ASSIGNEE OF THE '588 PATENT, HAS THE RIGHT TO ENFORCE THE OBLIGATIONS UNDERTAKEN BY THE INVENTORS IN THE ASSIGNMENT AGREEMENT .................................................2

II.  *AMGEN* SUPPORTS AN ORDER THAT RELIANT EXERCISE ITS CONTRACTUAL RIGHTS AND PRODUCE THE INVENTORS' DOCUMENTS AND TESTIMONY ......................................................................3

III. THIS COURT SHOULD IMPOSE SANCTIONS IF RELIANT FAILS TO PRODUCE THE GERMAN INVENTORS AND THEIR DOCUMENTS .......................................................................................................7

   A.   Reliant Has Not Reasonably Cooperated in Expediting Discovery of the German Inventors ...............................................................7

   B.   Par Almost Certainly Will Not Obtain Meaningful and Timely Discovery of the German Inventors Under the Hague Convention ........................9

   C.   Sanctions Are Appropriate to Alleviate the Severe Prejudice to Par Regardless of Reliant's Conduct .................................................12

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Amgen, Inc. v. Ariad Pharms., Inc.*,
　　No. 06-259, 2007 WL 1425854 (D. Del. May 14, 2007) .................. 3, 4, 5, 6

*Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*,
　　180 F.3d 518 (3d Cir. 1999) .................................................................. 6

*Contrans, Inc. v. Ryder Truck Rental, Inc.*,
　　836 F.2d 163 (3d Cir. 1987) ................................................................... 6

*Litetronics Int'l, Inc. v. Technical Consumer Prods., Inc.*,
　　No. 03-5733, 2006 WL 2850513 (N.D. Ill. Sept. 28, 2006) ........................ 5, 6

*Medpointe Healthcare, Inc. v. Apotex, Inc.*,
　　No. 06-164-SLR, 2007 WL 211202 (D. Del. Jan. 26, 2007) ....................... 5, 6

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
　　242 F.R.D. 470 (N.D. Ill. 2007) ............................................................ 12

*Societe Nationale Industrielle Aerospatiale v.*
　*U.S. Dist. Court for the S. Dist. of Iowa*,
　　482 U.S. 522 (1987) ............................................................................ 10

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
　　254 F. Supp. 2d 469 (D. Del. 2003) ...................................................... 10

*United States v. Floyd*,
　　428 F.3d 513 (3d Cir. 2005) ................................................................... 6

**Statutes**

21 U.S.C. § 355(j)(5)(B)(iii) ........................................................................ 4

**Other Authorities**

Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil
　　or Commercial Matters ...................................................................... 10

**Rules**

Fed. R. Civ. P. 37 ..................................................................................... 12

## INTRODUCTION

By this motion, plaintiff Par Pharmaceutical, Inc. ("Par") seeks an order compelling defendant Reliant Pharmaceuticals, Inc. ("Reliant") to exercise its rights under a patent assignment agreement executed by the German inventors of the patent-in-suit to obtain their depositions and documents. This motion further seeks the imposition of evidentiary and other sanctions if Reliant fails to produce the four inventors and their documents as ordered to compensate Par for the loss of this critical evidence.

Par's motion is based on a 1994 patent assignment agreement (the "Assignment Agreement") that was executed by the named inventors of the patent-in-suit, U.S. Patent No. 5,681,588 ("the '588 patent"). In the Assignment Agreement, the inventors transferred to their employer, Knoll Aktiengesellschaft ("Knoll"), the "entire right, title and interest in and to" the '588 patent. (Stronski Decl.[1] Ex. 1). In the Assignment Agreement, the German inventors also agreed to "testify in any legal proceeding ... and generally do everything possible to aid *Knoll Aktiengesellschaft*, its **successors and assigns** to obtain and **enforce** proper protection for [the '588 patent] in the United States." *Id.* (emphasis added).

Reliant does not dispute that it is an assign of Knoll with respect to the '588 patent. Accordingly, under the plain language of the Assignment Agreement, Reliant has the right to obligate the inventors to appear for depositions and to produce any relevant documents in their possession, custody or control. Without the inventors' testimony and their invention records, Par will be severely prejudiced in its ability to defend itself in this case. This evidence is highly relevant to several issues in this case and, the inventors are the best, and perhaps, the only source of evidence Par needs to support its unenforceability defense. For the reasons set forth below

---

[1] "Stronski Decl." refers to the December 19, 2007 Declaration of James K. Stronski filed in support of this motion.

and in Par's opening brief, this motion to compel discovery of the German inventors should be granted.

## ARGUMENT

I. **RELIANT, AS AN ASSIGNEE OF THE '588 PATENT, HAS THE RIGHT TO ENFORCE THE OBLIGATIONS UNDERTAKEN BY THE INVENTORS IN THE ASSIGNMENT AGREEMENT**

Reliant argues that it did not acquire the Assignment Agreement and the rights it confers when it acquired the '588 patent from Abbott Laboratories, Inc. ("Abbott") in 2003. Reliant Br. at 7-8.[2] Reliant bases its argument on the irrelevant fact that the Asset Purchase Agreement between Reliant and Abbott—which transferred "All rights, title and interest in and to" the '588 patent to Reliant—did not explicitly refer to the Assignment Agreement. *Id.*

Reliant's argument ignores the plain language of the Assignment Agreement, which obligates the German inventors, among other things, to "testify in any legal proceeding ... and generally do everything possible to aid *Knoll Aktiengesellschaft*, its **successors and assigns** to obtain and enforce proper protection for [the '588 patent] in the United States." (Stronski Decl. Ex. 1) (emphasis added). Thus, by its own terms, the Assignment Agreement confers upon all subsequent assignees of the '588 patent the right to enforce the obligations undertaken by the German inventors therein. Reliant does not, and can not, argue that it is not the assignee of the '588 patent.[3]

Moreover, Reliant cannot assert that Abbott somehow carved out the legal rights conferred in the Assignment Agreement by not referring to it specifically in the Asset Purchase

---

[2] "Reliant Br." refers to Reliant Pharmaceuticals, Inc.'s Brief in Opposition to Par Pharmaceutical, Inc.'s Motion to Compel Discovery of Foreign Inventors, dated January 8, 2008.

[3] For the same reasons, Reliant's argument that it has no control over the German inventors because it does not have a direct contractual relationship with them (Reliant Br. at 8-9) also fails.

2

Agreement. As Reliant concedes, the Asset Purchase Agreement transferred to Reliant "*[a]ll rights, title and interest of [Abbott] ... in and to*" the '588 patent. Reliant Br. at 7-8 (emphasis added). Abbott made no reservations. Abbott obtained its rights, title and interest in and to the '588 patent when it acquired Knoll. Reliant Br. at 2. Knoll, in turn, acquired its rights, title and interest in and to the '588 patent from the German inventors in the Assignment Agreement, which included the right to compel the inventors to cooperate in obtaining and enforcing the '588 patent. (Stronski Decl. Ex. 1.) Accordingly, when Reliant acquired all of Abbott's rights, title and interest in and to the '588 patent, it included the right to enforce the obligations of the German inventors to participate in this litigation.

## II.   *AMGEN* SUPPORTS AN ORDER THAT RELIANT EXERCISE ITS CONTRACTUAL RIGHTS AND PRODUCE THE INVENTORS' DOCUMENTS AND TESTIMONY

The *Amgen* case governs here, and Reliant's efforts to distinguish it fail. *See Amgen, Inc. v. Ariad Pharms., Inc.*, No. 06-259, 2007 WL 1425854 (D. Del. May 14, 2007). Reliant purports to distinguish *Amgen* on the grounds that the inventors had been produced in a prior case, and that the plaintiff there was the original patent assignee, and not a party that obtained its contract rights through a subsequent assignment. Reliant Br. at 7 n.5. But neither fact has any bearing on the inescapable congruence of these cases: both concern the enforcement of a clear and similar contractual right held by the plaintiff to obtain the inventors' cooperation in litigation. The contractual rights over—and thus control of—the inventors is present in both cases. This is true regardless of whether a prior litigation took place and whether prior inventor testimony was sought in it. And, as discussed above, the obligations undertaken by German inventors in the Assignment Agreement clearly run to subsequent assignees of the '588 patent, including Reliant. Thus, it is a distinction without difference that the plaintiff in *Amgen* was the original assignee.

3

Most importantly, Reliant does not, and cannot, distinguish *Amgen* based on the contract language present, because in both cases, they are materially the same.

This Court in *Amgen* considered and rejected many of the same arguments concerning control that Reliant makes here. In *Amgen*, the Court was not persuaded by the fact that the foreign inventors were not, and never had been, employees of the plaintiff and, indeed, had been third-party university researchers. *Amgen*, 2007 WL 1425854, at *1-3. The Court similarly rejected as not relevant the argument that none of the foreign inventors had any other relationship with plaintiff. *Id.* This Court in *Amgen* also rejected the argument that a rule or requirement exists to seek this discovery through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), notwithstanding the contractual right to obtain inventor cooperation. *Id.*

And the case for relief here is even stronger than in *Amgen*. Without this relief, Par will likely be denied effective discovery—testimony and documents—from all the inventors. Not only is the Hague Convention not a reasonable substitute for U.S.-style discovery, but as discussed further below, the process has thus far introduced substantial delays that will continue to unreasonably delay this case: a case that as a matter of statute should be expedited. 21 U.S.C. § 355(j)(5)(B)(iii). In *Amgen*, this Court rejected the argument that there was little prejudice to the defendant because most (ten of thirteen) of the inventors in that case had been deposed. *Amgen*, 2007 WL 1425854, at *3. In ordering the depositions of the remaining inventors, the Court found that each and every inventors' contribution was deemed relevant, and their discovery important to obtain. *Id.* The need here is much greater because none of the inventors will be subject to effective discovery absent the relief sought.

4

Relegating its failed effort to distinguish *Amgen* to a single footnote, Reliant's opposition relies heavily on the factually distinguishable *Medpointe* case. *See Medpointe Healthcare, Inc. v. Apotex, Inc.*, No. 06-164-SLR, 2007 WL 211202 (D. Del. Jan. 26, 2007). Several facts distinguish *Medpointe* and led to the denial of relief there, including the fact that the assignment language differed and that the request was largely mooted by the witnesses' agreement to appear voluntarily for depositions under the rules of the Hague Convention. Unlike in *Amgen* and this case, the patent assignee in *Medpointe* "indicated that the [foreign inventors] have agreed to **depositions** under the rules of the Hague Convention." *Medpointe*, 2007 WL 211202, at * 2 (emphasis added). The *Medpointe* court may have been influenced by the fact that the assignments (and contractual rights to cooperate with the patent assignee) apparently had been agreed to more than a quarter century earlier. Based pointedly on these factors, this Court in *Medpointe* concluded that denying the relief and allowing the deposition to proceed voluntarily abroad "is the most appropriate manner in which to proceed **under the circumstances at bar.**" *Id.* (emphasis added). The *Medpointe* court, however, implicitly recognized that assignment language to "testify in any legal proceeding," may, under other circumstances, require foreign-based inventors to appear for deposition in the United States. *Medpointe*, 2007 WL 211202, at *2. Because the contractual language in *Medpointe* is distinguishable from this case, *Medpointe* does not assist here. Accordingly, the plain language of the Assignment Agreement should be enforced.[4]

---

[4] *Litetronics* is similarly distinguishable. *Litetronics Int'l, Inc. v. Technical Consumer Prods., Inc.*, No. 03-5733, 2006 WL 2850513 (N.D. Ill. Sept. 28, 2006). In *Litetronics*, the inventors agreed to "generally to do everything possible to aid [the patent holder] . . . in obtaining and enforcing patents for said invention in all countries." *Id.* at *1. The Court in that case distinguished the case *In re Nifedipine* because the assignment agreement did not provide that "the inventors will testify in any legal proceeding," but instead "simply provides that the inventors will help [the patent holder] enforce its patent rights." *Id.* at *2. Because of the

5

At issue here is unambiguous contract language that obligates the inventors, not only to assist Reliant, but to testify and to assist in the enforcement of this patent in the United States. Notwithstanding this plain language, Reliant would have this Court read out of the assignment agreement any obligation on the inventors to aid the assignee in *enforcing* the '588 patent in the United States. It is black letter law that this Court should give meaning to all the terms of the assignment that concern the obligation to assist, and Reliant's proposed construction would violate this tenet by reading out material terms, including to "testify" and to "enforce." *See United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005) ("'a contract should be read so as to give meaning to all of its terms when read as an entirety'") (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987)); *see also Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999) ("'[a]n interpretation which gives [an] . . . effective meaning to all the terms is preferred to [one] which leaves a part . . . of no effect'") (quoting Restatement (Second) of Contracts § 203 (1981)).

This Court has evaluated similar language and held that it "is not limited to assistance which enables the assignee to prosecute patent applications and other similar procedures." *Amgen*, 2007 WL 1425854, at *2. Indeed, even in the *Medpointe* case relied upon by Reliant, the Court concluded that such language "reasonably evidences an understanding that [the inventor] could be required to give some testimony in connection with [the patent in suit]," *Medpointe*, 2007 WL 211202, at *2. As in *Amgen*, this Court should conclude that the contract language obligates the inventors to cooperate with the patent holder and appear in the United

---

absence of that language, the *Litetronics* court declined to order the patent holder to produce the inventors in the United States for a deposition. Here, by contrast, the inventors' assignment agreement contains the language whereby the inventors agreed to "testify in any legal proceeding."

States for a deposition because at issue here "*is an attack on the patent which the inventors agreed to defend.*" *Id.* at *2 (emphasis added).

Based on the plain language of the Assignment Agreement, the German inventors agreed to "testify in any legal proceeding" involving the '588 patent. (Stronski Decl. Ex. 1.) Because the German inventors have contracted to do everything necessary to enforce patent protection in any legal proceeding in the United States, the Court should order Reliant to produce the foreign-based inventors (and their documents, if any) for depositions before the March 7, 2007 fact discovery cut off and order Reliant to collect and produce documents responsive to Par's August 8, 2007 subpoenas for inventor documents at least one week before the first inventor deposition.[5]

### III. THIS COURT SHOULD IMPOSE SANCTIONS IF RELIANT FAILS TO PRODUCE THE GERMAN INVENTORS AND THEIR DOCUMENTS

Reliant argues that it cannot be sanctioned because it has cooperated in expediting discovery in this action. Reliant Br. at 9-10. Even if true, as discussed below, sanctions are still appropriate here to alleviate the severe prejudice Par will suffer by being denied crucial evidence it needs to defend itself against a lawsuit that Reliant chose to bring and that involves a patent that Reliant chose to acquire. But, in fact, Reliant has not acted reasonably to expedite discovery of the German inventors.

#### A. Reliant Has Not Reasonably Cooperated in Expediting Discovery of the German Inventors

It is apparent that Reliant has contacted the German inventors only once to ask them to appear voluntarily for depositions in the United States and did so without referring them to the

---

[5] While the inventors are obligated under the Assignment Agreement to give testimony in the United States, if they are unable to travel to the United States for physical or any other reason, Par would be willing to travel to Europe to take their depositions at times and places that are mutually convenient to the witnesses and parties. Provided, however, that the depositions take place under the Federal Rules of Civil Procedure and that the documents requested from the inventors be produced to Par in the United States at least one week prior to the first deposition.

7

Assignment Agreement. On August 8, 2007, Par provided Reliant with subpoenas for the German inventors and asked whether they would voluntarily produce documents and appear for depositions "at mutually convenient times and places." (Stronski Decl. Ex. 10.) On August 10, 2007, Reliant's counsel—who were already representing the German inventors—advised Par that Reliant had no control over the German inventors because they were not, and had never been, employees of Reliant. Reliant's counsel stated, however, that they would ask the German inventors to voluntarily produce documents and appear for depositions in the United States. (Stronski Decl. Ex. 11.) On August 21, 2007, Reliant's counsel advised Par that the German inventors had indicated that they would not appear voluntarily. (Stronski Decl. Ex. 13.)

As Reliant concedes, also on August 21, 2007, it received a copy of the Assignment Agreement from Par's counsel.[6] Reliant Br. at 3. It received another copy of the Assignment Agreement on October 5, 2007, when Abbott produced it to both parties in response to a subpoena served by Par. (Taylor Decl. ¶ 6 and Ex. 2.) Yet, Reliant has not contacted the inventors since early August 2007 to request their voluntary appearance and production of documents in view of their obligations under the Assignment Agreement (Reliant Br. at 3), and did not even attempt to do so until sometime after December 14, 2007 when Par advised them

---

[6] Reliant attempts to bolster its meritless motion to disqualify Par's counsel ("FLH") by suggesting that FLH obtained the Assignment Agreement during the course of limited work FLH performed for Reliant in 2003, implying, perhaps, that this was obtained in confidence from Reliant and supports disqualification. This suggestion is reckless and plainly wrong. The copy of the Assignment Agreement that Reliant includes in its opposition papers (January 8, 2007 Declaration of Alexander L. Greenberg in Support of Reliant's Brief in Opposition Ex. 3) ("Greenberg Decl.") is one page from a 72-page document. (January 11, 2008 Declaration of John G. Taylor filed in support of this motion, ¶ 5 and Ex. 1) ("Taylor Decl."). It is clear from the first three pages of that document that the copy of the Assignment Agreement produced to Reliant on August 21, 2007 was obtained from a search of a public data base in September 2006—more than three years after Reliant acquired the '588 patent from Abbott. (Taylor Decl. Ex. 1 at FLH-PAR189).

8

that they intended to bring this motion to compel based on the Assignment Agreement. (Taylor Decl. ¶ 2.)

Moreover, Reliant could have, and should have, obtained the Assignment Agreement from Abbott long before August 2007. Beginning with its first set of document requests on March 23, 2007, and on at least four other occasions through August 13, 2007, Par requested precisely this type of agreement from Reliant. Indeed, on July 23, 2007, Par specifically asked Reliant if it was collecting and producing documents from Abbott in response to Par's document requests and whether there were any agreements giving Reliant the right to seek Abbott's assistance. (Stronski Decl. Ex. 7.) Even if, as Reliant alleges, it did not have the Assignment Agreement in its possession, it had the contractual right under the Asset Purchase Agreement to obtain such documents from Abbott. *See* Greenberg Decl. Ex. 2 at 7.1 ("Buyer and Seller shall also make available to each other . . . records and documents, in connection with . . . litigation or potential litigation, each as it relates to [the patents]").

### B. Par Almost Certainly Will Not Obtain Meaningful and Timely Discovery of the German Inventors Under the Hague Convention

Reliant attempts to mitigate its failure to reasonably cooperate in producing the German inventors by noting, on three separate occasions, that it "did not oppose," and will "continue to cooperate" with Par in any Hague Convention proceedings. Reliant Br. at 1, 4, 10. Reliant also argues that sanctions are inappropriate because discovery of the German Inventors is theoretically possible under the Hague Convention. Reliant Br. at 9-10. Reliant's suggestion that it is cooperating in expediting discovery by simply refraining from opposing any Hague Convention proceedings is misleading and disingenuous. First, it is hard to imagine what grounds Reliant would have for opposing Par's attempt to obtain discovery under the Hague

9

Convention, particularly since Reliant itself has identified the inventors as among the most important witnesses in this case.

Second, courts recognize, and Reliant is certainly well aware, that proceedings under the Hague Convention frequently require many months to complete and, even if successful, often result in less discovery than United States courts would consider appropriate. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 542 (1987) ("[i]n many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules."); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 475 (D. Del. 2003) ("[I]t is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions."). Therefore, simply refraining from opposing Par's attempts to obtain discovery under the Hague Convention hardly demonstrates cooperation in expediting discovery.

In light of the well-recognized difficulties in obtaining meaningful and timely discovery under the Hague Convention, Reliant's gratuitous comment that "any delay in obtaining discovery through the Hague Convention" is due to "Par's own failure to prepare adequate discovery notices to satisfy German authorities" is inappropriate. Reliant Br. at 10. The German authorities have made two principal objections to the initial Letters of Request issued by this Court in September 2007. First, they have advised Par that German law does not allow for pre-trial discovery of documents as that practice is known in common law countries. (Taylor Decl. ¶ 3.) Thus, there was nothing Par could have done in drafting the Letters of Request to overcome this objection. Second, the German authorities are requiring Par to set forth in the Letters of Request the specific questions to be posed to the witnesses at their witness hearings. *Id.* The

inclusion of the specific questions to be posed to the witnesses is not mandatory under the Hague Convention,[7] and Par instead included detailed descriptions of the subject matter of the examinations. Par can hardly be faulted for the German authorities' insistence on specific questions.

Par has prepared revised Letters of Request to address these objections. It provided copies to Reliant's counsel on January 8, 2007, and asked if they would consent to their issuance before Par submits them to the Court. (Taylor Decl. ¶ 4.) Reliant's counsel has yet to respond. *Id.*

Par's German local counsel has been advised by the German authorities that any revised Letters of Request, even if accepted and processed by the German authorities, likely will not result in the giving of testimony and evidence before May 2008. (Stronski Decl. ¶ 4.) Further, in view of the German authorities' responses to the initial Letters of Request, it is unlikely that Par will be able to obtain evidence approaching the type of discovery it would be entitled to under the Federal Rules of Civil Procedure. And, while it is not clear when and if Par will be

---

[7] According to Article 3 of the Hague Convention, a Letter of Request shall specify:
  a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;
  b) the names and addresses of the parties to the proceedings and their representatives, if any;
  c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;
  d) the evidence to be obtained or other judicial act to be performed.
  Where appropriate, the Letter shall specify, inter alia:
  e) the names and addresses of the persons to be examined;
  f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;
  g) the documents or other property, real or personal, to be inspected;
  h) any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;
  i) any special method or procedure to be followed under Article 9.
Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, Chapter I, Article 3.

able to take discovery of the inventors through the Hague Convention in Germany, what is clear is that this foreign discovery, if done through the Hague Convention process, likely won't take place until well after Markman proceedings, expert discovery, and perhaps, the filing of dispositive motions. Under the circumstances, the Court should reject Reliant's contention that the relief sought by Par is inappropriate because proceedings under the Hague Convention are still available.

### C. Sanctions Are Appropriate to Alleviate the Severe Prejudice to Par Regardless of Reliant's Conduct

Regardless of whether Reliant is considered to have reasonably cooperated in connection with discovery of the German inventors, sanctions are still appropriate if Reliant is unable to produce the inventors and their documents. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 480 (N.D. Ill. 2007). In *Murata*, the court held that an assignment agreement, executed by the inventor, required the patentee to exercise its contractual power to compel the inventor to appear for a deposition. *Id.* Despite the patentee's assertions that it had been "extremely diligent in its attempts to compel [the inventor] to appear for a deposition voluntarily" the court ruled that if the patentee did not secure the inventor's appearance for deposition, the patentee would be subject to evidentiary and other sanctions under Rule 37. *Id.* at 471, 480. The Court in *Murata* did not directly consider whether plaintiff's litigation conduct met certain standards, nor did it analyze the amount of prejudice the defendant would suffer without the requested discovery.

Should Reliant fail to produce the inventors and their documents, Par will be without key evidence it needs to support its defenses, including, for example, its claim that the German inventors knew about material prior art owned by their company and did not disclose it to the Patent Office during prosecution of the patent-in-suit. This evidence can best be provided by the inventors themselves, and their invention records. Reliant chose to bring this lawsuit. And

evidentiary sanctions are proper in this case because any prejudice which results from Reliant's failure to produce the German inventors for deposition should be borne by Reliant, not by Par.

At a minimum, should Reliant fail to produce the inventors for deposition and produce their documents, the Court should preclude Reliant from introducing any testimony, documents, or other evidence from the inventors for any purpose at trial, or in connection with any motions, hearings, or other proceedings. To allow Reliant to do so when Par has been denied any opportunity to obtain discovery from the inventors would be fundamentally unfair.

Moreover, in addition to having highly relevant evidence regarding claim construction and the scope of the claims, the inventors and their invention records are likely the only sources of critical evidence Par needs for its unenforceability defense. Specifically, Par alleges that the '588 patent is unenforceable because the inventors of the '588 patent knew of and withheld intentionally a material piece of prior art, U.S. Patent No. 4,797,287 ("the '287 patent"), before and/or during prosecution of the '588 patent. Therefore, the inventors' knowledge concerning the '287 patent is vital to Par's defense. Without the inventors' testimony and their contemporaneous invention records, Par will be denied the best, and perhaps only, evidence of that knowledge.

Accordingly, if Reliant fails to produce the inventors and their documents, there should be a presumption that they knew of the '287 patent before and/or during prosecution of the '588 patent. Such a presumption is reasonable under the circumstances. The inventors of the '588 patent worked for the pharmaceutical division of BASF Aktiengesellschaft, the company that owned the '287 patent, when they developed the alleged inventions claimed in the '588 patent and prosecuted the patent. Similarly, there should also be a presumption that the German

inventors knew that the '287 patent was material to the patentability of the '588 patent and intentionally did not disclose it to the patent examiner during prosecution.

## CONCLUSION

Par respectfully requests that its motion be granted for the reasons set forth herein and in its opening brief in support of this motion.

                                              YOUNG CONAWAY STARGATT & TAYLOR LLP

Dated: January 11, 2008

*/s/ Karen E. Keller*
Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel: (302) 571-6600

- and –

FROMMER LAWRENCE & HAUG LLP
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800

*Attorneys for Defendant Par Pharmaceutical, Inc.*

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on January 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld [jbbefiling@mnat.com]
>Maryellen Noreika [menefiling@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200

I further certify that on January 11, 2008, I caused a copy of the foregoing document to be served on the above-listed counsel and on the following non-registered participants in the manner indicated:

>***By E-Mail and Hand Delivery***
>
>Jack B. Blumenfeld [jblumenfeld@mnat.com]
>Maryellen Noreika [mnoreika@mnat.com]
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899
>(302) 658-9200
>
>***By E-Mail***
>
>John Desmarais [jdesmarais@kirkland.com]
>Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
>Christine Willgoos [cwillgoos@kirkland.com]
>William T. Vuk [wvuk@kirkland.com]
>KIRKLAND & ELLIS LLP
>Citigroup Center
>153 E. 53rd Street
>New York, NY 10022
>(212) 446-4800

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen E. Keller*

---

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

*Attorneys for Defendant-Counterclaimant,
Par Pharmaceutical, Inc.*

2