## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____
|  |  |
|---|---|
| RELIANT PHARMACEUTICALS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 06-774-JJF |
| | : |
| PAR PHARMACEUTICAL, INC., | : |
| | : |
| Defendant. | : |

_____

### DEFENDANT'S UNOPPOSED APPLICATION FOR THE REISSUANCE OF
### LETTER OF REQUEST FOR INTERNATIONAL
### ASSISTANCE PURSUANT TO THE HAGUE CONVENTION
### (VOLKER BUEHLER)

Defendant, Par Pharmaceutical, Inc. ("Par") respectfully requests that the Court issue six

Second Letters of Request for International Judicial Assistance ("Letters of Request"), pursuant

to Article I of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in

Civil or Commercial Matters ("Hague Convention") and Rule 28(b) of the Federal Rules of Civil

Procedure.

On September 7, 2007, Par filed an Application for Issuance of Five Letters of Request

for International Judicial Assistance to the Appropriate Judicial Authority of Germany Pursuant

to the Hague Convention.  (D.I. 83.)  On the 19th and 21st of September 2007, the Court granted

Par's application by issuing Letters of Request to compel the following German nationals to

appear for depositions and to produce documents:

1.     Karl Kolter;

2.     Helmut Fricke;

3.     **Volker Buehler**;

4.     Herbert Mueller-Peltzer;

510728.DOC
066039.1001

5.    Claus Pich; and

6.    Thomas Moest.

(D.I. 113-17.)

These Letters of Request were submitted to the appropriate German judicial authorities, along with German translations.  The German authorities have recently advised Par through Par's German local counsel that the previously issued Letters of Request are not in compliance with the Hague Convention as applied under German law and practice.  Specifically, Par has been advised by the German authorities that the Letters of Request must set forth the specific questions to be posed to the witnesses at their witness hearings and that German law does not allow for pre-trial discovery of documents as that practice is known in Common Law countries. Accordingly, Par has prepared the attached Second Letters of Request to address the objections of the German authorities.

Karl Kolter, Helmut Fricke, **Volker Buehler**, and Herbert Mueller-Peltzer are the named inventors of the patent-in-suit, U.S. Patent No. 5,681,588 ("the '588 patent").  Knoll Aktiengesellschaft ("Knoll") was the assignee of record and employer of Messrs. Kolter, Fricke, **Buehler**, and Mueller-Peltzer during the prosecution of the '588 patent.  Claus Pich and Thomas Moest are the named inventors of U.S. Patent No. 4,797,287 ("the '287 patent").  Par believes that the '287 patent—which was not disclosed to the U.S. Patent and Trademark Office during prosecution of the '588 patent—is material prior art to the '588 patent.  Messrs. Pich and Moest developed the inventions claimed in the '287 patent while at Knoll's parent corporation, BASF Aktiengesellschaft.  Par believes that the '287 patent alone, or in combination with other prior art, invalidates and renders unenforceable the '588 patent.

Messrs. Kolter, Fricke, **Buehler**, Mueller-Peltzer, Moest, and Pich are likely to have relevant information concerning the '588 and '287 patents, including the conception,

development and testing of any alleged inventions claimed in the patents; the scope of the claims of the patents; the meanings of claim terms; the filing and prosecution of the patents and/or any foreign counterparts; and the '588 patent inventors' knowledge of the '287 patent before and during the prosecution of the '588 patent. This information is important to Par's defenses of non-infringement, patent invalidity, and patent unenforceability, and as evidence for submission at trial.

Reliant has advised Par that Messrs. Kolter, Fricke, **Buehler**, Mueller-Peltzer, Pich, and Moest are German nationals residing in Germany. Reliant has further advised Par that Reliant's counsel, Kirkland & Ellis LLP, will represent these German nationals for purposes of this litigation. Reliant's counsel has also advised Par that Reliant has no control over these individuals and that these individuals will not voluntarily produce documents or appear for deposition under the Federal Rules of Civil Procedure.[1]

Par and Reliant have met and conferred in compliance with D. Del. LR 7.1.1, and Reliant has advised Par that it consents to this application.

Accordingly, Par requests that this Court issue the accompanying Second Letter of Request, and that the executed Second Letter of Request be returned to counsel for Par for delivery to the proper German authorities. Upon receipt of the executed Second Letter of Request, counsel for Par will have them translated into German and will have the German versions of the Second Letter of Request delivered to the proper German authorities with the English versions as a courtesy.

---

[1] During discovery in this action, Par obtained an assignment agreement executed by the four inventors of the '588 patent—Messrs. Kolter, Fricke, **Buehler**, and Mueller-Peltzer. Par believes that under the terms of the assignment agreement, Reliant has the right and power to compel the inventors of the '588 patent to appear for depositions in the United States and to produce documents. On December 19, 2007, Par filed a motion to compel Reliant to produce the inventors and their documents. *See* D.I. 128. That motion was scheduled to be heard on January 18, 2008. On January 17, 2008, however, the Court issued an Oral Order, canceling the January 18 hearing and notifying the parties that the Court would decide the motion on the papers submitted. At this time, Par's Motion to Compel Discovery of Foreign Inventors is still pending.

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

January 24, 2008

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.:  (302) 571-6600
Fax:  (302) 571-1253

- and -

**FROMMER LAWRENCE & HAUG LLP**
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

*Attorneys for Defendant, Par Pharmaceutical, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------

|                                      |   |                        |
|--------------------------------------|:-:|------------------------|
| RELIANT PHARMACEUTICALS, INC.,       | : |                        |
|                                      | : |                        |
|     Plaintiff,   | : |                        |
|                                      | : |                        |
|       v. | : | C.A. No. 06-774-JJF  |
|                                      | : |                        |
| PAR PHARMACEUTICAL, INC.,            | : |                        |
|                                      | : |                        |
|     Defendant.   | : |                        |

---------------------------------------------------------------

**SECOND REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE,**
**PURSUANT TO THE HAGUE CONVENTION ON THE TAKING OF**
**EVIDENCE ABROAD IN CIVIL OR COMMERICAL MATTERS**
**(VOLKER BUEHLER)**

In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of

Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), the undersigned

applicant has the honor to submit this second request on behalf of the defendant in the above-

entitled action, Par Pharmaceutical, Inc. ("Par"), located at 300 Tice Boulevard, Woodcliff Lake,

New Jersey 07677, U.S.A.

The United States District Court for the District of Delaware presents its compliments to

the judicial authorities of Germany and requests international judicial assistance to obtain

evidence to be used in a civil proceeding before this Court in the above-captioned matter.

This Court requests the assistance described herein as necessary in the interests of justice.

The assistance requested is that the appropriate judicial authority of Germany compel the below-

named individual to appear at a witness hearing, and to bring certain specific documents to such

hearing, for the purpose of obtaining evidence for use in the trial of this action.

This Court previously issued a request for assistance dated September 21, 2007 that also requested that the appropriate judicial authority of Germany compel the appearance of the below-named individual to give evidence pertinent to the issues in this matter.  This Court has been informed that the German judicial authority identified in paragraphs 2 and 5 below has objected to the previous request for judicial assistance on the ground that it did not set forth with sufficient specificity the questions to be posed to the below-named witness during his witness hearing.  Accordingly, this Court issues this second request for assistance, which sets forth in paragraph 12 a list of specific questions to be posed to the witness at the requested witness hearing.

**1.      Sender:**

The United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, Delaware 19801.

**2.      Central Authority of the Receiving State:**

Justizministerium Baden-Wuerttemberg Schillerplatz, 4 70173 Stuttgart, Baden-Wuerttemberg, Federal Republic of Germany.

**3.      Person to Whom the Executed Request is to be Returned, and Deadline for Return:**

The executed request should be returned to the Sender as expeditiously as possible.

**4.      Requesting Judicial Authority of the Requesting State, The United States of America (Article 3(a)):**

The requesting judicial authority is the United States District Court for the District of Delaware, by the Honorable Joseph J. Farnan, Jr. of that Court.

5.      **Competent Authority of the Requested State, the Federal Republic of Germany (Article 3(a)):**

Justizministerium Baden-Wuerttemberg Schillerplatz, 4 70173 Stuttgart, Baden-

Wuerttemberg, Federal Republic of Germany.

6.      **Names and Addresses of the Parties and their Representatives (Article 3(b)):**

| Party | Representative |
|---|---|
| Par Pharmaceutical, Inc.<br>300 Tice Boulevard<br>Woodcliff Lake, New Jersey 07677 | Edgar H. Haug<br>James K. Stronski<br>John G. Taylor<br>FROMMER LAWRENCE & HAUG LLP<br>745 Fifth Avenue<br>New York, New York 10151<br><br>Josy W. Ingersoll<br>Karen L. Pascale<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>The Brandywine Building<br>1000 West St., 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391 |
| Reliant Pharmaceuticals, Inc.<br>110 Allen Road<br>Liberty Corner, New Jersey 07938 | Jack B. Blumenfeld<br>Maryellen Noreika<br>MORRIS, NICHOLS, ARSHT & TUNNELL<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19899<br><br>John Desmarais<br>Gerald J. Flattmann, Jr.<br>Christine Willgoos<br>William T. Vuk<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022-4611 |

7.    **Nature and Purpose of the Proceedings and Summary of the Facts (Article 3(c)):**

This is a patent infringement action brought by plaintiff Reliant Pharmaceuticals, Inc. ("Reliant") against defendant Par, both U.S. corporations.  The patent-in-suit, U.S. Patent No. 5,681,588 ("the '588 patent"), issued to Knoll Aktiengesellschaft ("Knoll") on assignment from Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer, the named inventors. Knoll subsequently assigned the patent-in-suit to Abbott Laboratories, Inc. ("Abbott"), which later assigned the patent-in-suit to Reliant.  Accordingly, although the inventions claimed in the patent-in-suit were developed in Germany and originally assigned to Knoll, no German company or individual from which testimony is sought currently has a commercial interest in the patent-in-suit or this litigation.

This action is based on Par's filing of Abbreviated New Drug Application ("ANDA") No. 78-540 with the U.S. Food and Drug Administration ("FDA").  Par's ANDA seeks FDA approval to market a generic version of Reliant's propafenone HCl extended-release products, which Reliant markets under the brand name Rythmol® SR for the treatment of arrhythmia. Reliant has brought this action contending that the commercial sale of Par's proposed product as described in Par's ANDA No. 78-540 would infringe one or more claims of the patent-in-suit.

Par contends that the commercial manufacture and/or sale of its proposed product will not infringe any valid claims of the patent-in-suit and that the claims of the patent are invalid and unenforceable under one or more of the provisions of the United States Code, 35 U.S.C. § 101 *et seq*.

8.    **Judicial Action to be Taken (Article 3(g)):**

To assist this Court in resolving this dispute in a prompt, fair and efficient manner, this Court respectfully requests that the Responding Authority issue an order compelling the

following individual to appear at a witness hearing in this case.  A list of specific questions that are to be posed to the witness are set forth in paragraph 12.  The party affiliation and counsel for the designated individual is also given:

| Witness | Affiliation | Represented by Counsel |
|---------|-------------|------------------------|
| Volker Buehler<br>Jagdrain 12a<br>76316 Malsch<br>Germany | Named inventor of the plaintiff's patent-in-suit | John Desmarais<br>Gerald J. Flattmann, Jr.<br>Christine Willgoos<br>William T. Vuk<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022-4611 |

The above-identified individual appears to have information relevant to this case.

This Court requests that the German Court set a date, time, and place for the witness hearing of the above-identified individual as soon as practicable.  This Court also requests that the scheduling of the above witness hearing be coordinated with the witness hearing of Herbert Mueller-Peltzer, which is being requested contemporaneously by this Court, so as to allow counsel traveling from the United States to attend all witness hearings in a single trip, if possible.

If the Responding Authority determines that the requested witness hearing is appropriate, this Court further requests that the Responding Authority order the above-identified individual to bring to the witness hearing the specific documents in his possession, custody, or control that are identified in paragraph 12.C. for the sole purpose of facilitating the examination of the witness at the witness hearing (e.g., to help the witness recall the facts and events about which he is questioned and to verify the accuracy of his responses).[1]  If the Responding Authority determines

---

[1] In particular, counsel for defendant Par has brought to the Court's attention ZPO § 142, supporting the view that the witness can be requested to bring and submit documents.

that this separate request for the witness to bring documents to the witness hearing is precluded by Germany's reservation under Article 23 of the Hague Convention, then the Responding Authority may respond as provided under the Hague Convention. However, this Court respectfully requests that the Responding Authority nevertheless issue an order compelling the above-named individual to appear as a witness in a witness hearing.

**9.    Subject Matter and Relevance of This Request:**

Par has learned, through its own investigation and discovery obtained from Reliant to date, that Dr. Buehler has information relevant to this litigation. Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer are the named inventors of the patent-in-suit.

As an inventor of the patent-in-suit, Dr. Buehler's actions with respect to the inventions claimed in the patent-in-suit, and the documents that evidence his work, are highly relevant to the issues in the case. Par has identified Dr. Buehler as among the most important witnesses in this case. Reliant has also identified Dr. Buehler in discovery responses as likely to have discoverable information concerning the parties' claims and defenses in this case. Specifically, Dr. Buehler is likely to have relevant information concerning the patent-in-suit, including the conception, development, and testing of any alleged invention claimed in the patent-in-suit, the scope of the claims of the patent-in-suit, the meaning of claim terms, and the filing and prosecution of the patent-in-suit. Par believes that this information is important to the issues in this case, including Par's defenses of non-infringement, patent invalidity, and patent unenforceability, and as evidence for submission at trial. More specifically, Dr. Buehler's testimony at the witness hearing, and the specifically identified documents he is asked to bring, may be material to the resolution of the following issues:

(1) **Non-infringement of the patent-in-suit**: this issue concerns whether Par's proposed generic Rythmol® SR formulation infringes any claim of the patent-in-suit;

(2) **Invalidity of the patent-in-suit**: this issue concerns whether any claim in the patent-in-suit is invalid and not entitled to patent protection because it is anticipated, *i.e.*, already disclosed in the prior art, or obvious in view of the prior art;

(3) **Unenforceability of the patent-in-suit**: this issue concerns whether the patent-in-suit is not enforceable due to inequitable conduct by the patent applicants regarding possible material misrepresentations or omissions concerning, among other things, knowledge of material prior art, that occurred during the prosecution of the patent-in-suit before the U.S. Patent and Trademark Office.

In view of the foregoing, this Court requests, in the interests of justice, that an order be issued, in accordance with the laws and procedures of the courts of Germany for the acquisition of evidence for trial, to compel Dr. Buehler to appear at a witness hearing to respond to the questions set forth in paragraph 12 and to bring with him the specific documents identified in paragraph 12.C.

**10.    Methods and Procedures to be Followed for Witness Hearing of Dr. Buehler:**

This Court requests, pursuant to Article 3 of the Hague Convention, that the testimony given pursuant to this letter of request be given under oath.

The conduct of the witness hearing will be under the supervision of the German judge, and should be conducted with due regard to German practice and procedure, and the authority of the German Court.  This Court understands that the procedures to be followed will be determined in the exercise of discretion of the German Court.  Within those limitations, however, this Court makes the following requests pursuant to Article 9 of the Hague convention for additional procedures to be followed:

a.    Counsel for defendant Par has informed this Court that Germany's Code of Civil Procedure ("ZPO") permits a German Judge to authorize that questioning of the witness at a

witness hearing taken under the Hague Convention may be conducted by the parties, counsel for whom may ask questions in the nature of direct, cross and redirect examination.  It is this Court's understanding that such procedures may be requested by the Requesting Authority in the Letter of Request.[2]

This Court believes that the most effective way to obtain the witness' testimony in a form that will be useful to the Court would be to follow that procedure.  Counsel for the defendant is familiar with the documents and the issues and it would be very advantageous to allow them to conduct the questioning rather than to have the questioning done by the German judge or other official of the German government.  This Court requests that such a procedure be followed.

b.      Defendant Par's attorneys, Frommer Lawrence & Haug LLP, request, under authorization of this Court, permission to attend and participate in the witness hearing of the above-identified individual.  Defendant Par's attorneys, Frommer Lawrence & Haug LLP, further request, under authorization of this Court, that the attorneys for the above-identified individual, Kirkland & Ellis LLP, be permitted to attend and participate in the witness hearing of the above-identified individual.  If permission to attend and participate is granted, it is requested that Frommer Lawrence & Haug LLP be provided with the date, time and place of the hearing as soon as convenient, which information they will promptly provide to Kirkland & Ellis LLP.

c.      Sometimes during hearings counsel raise objections to the admissibility in court of certain testimony or the manner in which questions are asked or answers are given.  The usual practice in depositions in this country is that such objections are "reserved," which means that they are noted for the record but not resolved at the hearing.  They are resolved by the trial court when the testimony is presented to the court.  This Court requests that this procedure be followed

---

[2] In particular, counsel for defendant Par has brought to the Court's attention ZPO § 397, supporting the view that cross examination by the parties' counsel is permitted.

in connection with this hearing to the extent objections are raised based on issues of United

States law.

       d.      This Court requests that a full stenographic record (verbatim transcript) be taken

of the proceedings.

       e.      It is fully acceptable to this Court that the hearing be conducted in German and

that all questions be asked in German, and that the witness hear and respond to all questions in

German.  It is requested that United States counsel be allowed to bring a translator to the hearing,

which shall be arranged and paid for by United States counsel, and that the translator be allowed

to make simultaneous translation of the proceedings so that United States counsel may follow the

hearing and be in a position to pose questions to the witness.

       f.      After the written transcript of the witness hearing is prepared, the witness shall

have the opportunity to review it and make any corrections required, stating the reasons therefore

in an errata sheet to be affixed to the original transcript of the hearing.  The witness should be

required to sign an acknowledgement of the accuracy of the transcript (as corrected) before the

German Court or any other competent German authority, and the transcript so executed should

then forwarded to the Sender.

       g.      Paragraph 12 includes a list of topics about which the above-identified witness is

to be questioned, including explanations of the relevance of the topics to the issues in this case

and specific questions to be posed to the witness relating to those topics.  Although Par has

provided these specific questions, as noted in paragraphs 10(a) and (b) above, Par's attorneys

request, under authority of this Court, that they be allowed to conduct the questioning of the

witness.  This case involves complex technical issues and issues unique to U.S. patent and

procedural law with which Par's attorney's are familiar.  In addition, it is impossible to know in

advance how the witness will answer the specific questions set forth in paragraph 12. Answers to particular questions may require unanticipated follow-up questions or suggest unanticipated lines of questioning. Accordingly, Par's attorney's request, under authority of this Court, that they be allowed to ask additional questions not set forth in paragraph 12 in response to the witness' answers relating to the subject-matter.

h.     If the Responding Authority denies the procedure requested in paragraphs (a)-(g) above, and instead orders that the questioning of the witness be done by the German judge or other official of the German government exclusively, without giving counsel to the parties the right to examine the witness, then this Court respectfully requests that the Responding Authority notify this Court and defendant Par, in care of Frommer Lawrence & Haug LLP at the address listed in paragraph 6 above, as soon as possible of the denial.

**11.     Request for Notification of Examination:**

This Court respectfully requests, pursuant to Article 7 of the Hague Convention, that it be informed in writing of the time when, and the place where, the proceeding will take place, and that such information should also be sent to the parties' representatives at the addresses listed in paragraph 6 above.

**12.     List of Questions to be Posed to Dr. Buehler at his Witness Hearing and Identification and Description of Documents Dr. Buehler is Requested to Bring to his Witness Hearing:**

**A.     Topic No. 1: Introductory Questions**

These questions are important to learn the witness' qualifications, experience, the circumstances under which he learned of the request for his testimony, and his preparation for his testimony. This information may important in determining the witness' competence and credibility (i.e., the weight the Court should give to the witness' testimony).

**List of specific questions**:

1.    Please state your full name.

2.    What is your home address?

3.    Do you have a medical condition or are you on any medication that would impair your ability to understand the questions you will be asked today and to answer them accurately?

4.    What company do you work for?

5.    What is your work address?

6.    What is your position with the company?

7.    What is your job title?

8.    Are you an officer of the company?

9.    Have you seen this Letter of Request/Order before?

10.    When? Where?  Who supplied it to you?

11.    Did you discuss the Letter of Request/Order with anyone?

12.    Who? When? Where? How long? What did you discuss?

13.    Are you being represented by counsel in connection with today's deposition?

14.    Who?

15.    Are you paying for their representation?

16.    Who is?

17.    Are you being compensated in any way for your testimony today?

18.    When did you first find out that your testimony had been requested in this lawsuit?

19.    How did you find out?

20.    What was you response when you found out?

21.    What did you do to prepare for today's witness hearing?

22.    Did you review any documents?

23.    **[If yes]** What documents? When? Who supplied them to you?

24. Did you meet with anyone?

25. Who? When? Where? What did you discuss?

26. **[Hand the witness a copy of Exhibit A – an "Assignment" executed on February 17, 1994]**  Do you recognize this document?

27. What is it?

28. Is this an assignment you signed in connection with the prosecution of the patent application that issued as U.S. Patent No. 5,581,588, or the '588 patent?

29. Is that your signature at the bottom of Exhibit A?

30. Did you read Exhibit A before you signed it?

31. Did you understand Exhibit A before you signed it?

32. When was the last time you saw Exhibit A before today?

33. Who gave it to you?

34. Why did they give it to you?

35. Do you see in the paragraph beginning with "FURTHER" where it states that you will "testify in any legal proceeding, sign all lawful papers . . . and generally do everything possible to aid  . . . Knoll, its successors and assigns to obtain and enforce proper protection for said invention in the United States?"

36. What does that mean to you?

37. Does that mean that you agreed to, among other things, testify in legal proceedings in the United States to aid Knoll, or any company to which the subject patent is assigned, to enforce proper protection of the patent?

38. Are you aware that the patent that is the subject of this Assignment has been assigned to the plaintiff in this case, Reliant?

39. **[if yes]**  How did you become aware of that?

40. **[if yes]**  When did you become aware of that?

41. Before you received the Letter of Request/Order, where you ever asked to appear or produce documents in connection with this litigation in the United States?

42. **[If yes]** Who asked you? When? How did you respond?

43. **[If refused]** Why did you refuse to voluntarily appear for deposition in the United States in connection with this litigation?

### B.    Topic No. 2: Education and Employment History

These questions are important to learn the witness' qualifications and experience. This information may important in determining the witness' competence and credibility (i.e., the weight the Court should give to the witness' testimony).

**List of specific questions**:

44.    Starting with college, please identify the schools you have attended and for each please provide:

    a.    Years attended each school?

    b.    Degrees you received from each school?

    c.    The focus of your studies at each school?

45.    Any other training relating to your work at Knoll?

46.    Please describe your employment history starting with your earliest employment to the present. For each position you've held, please provide:

    a.    The name of the company you worked for?

    b.    The nature of the company's business?

    c.    The period of time you worked for the company?

    d.    Your position(s) at the company?

    e.    Your duties and responsibilities at the company?

47.    Focusing on the years you worked for Knoll, please provide the following information:

    a.    Years worked for?

    b.    Job titles?

    c.    Duties and responsibilities?

    d.    Who did you report to?

    e.    Who reported to you?

48.    **[Hand the witness a copy of Exhibit B – U.S. Patent No. 5,581,588, or "the '588 patent"]** Do you recognize this document?

49. What is it?

50. Are you a named inventor on this patent?

51. Did you work on the inventions described in this patent during the time you were employed at Knoll?

52. During what time period did you work on the inventions described in the '588 patent?

53. During that time period, did you know Claus H. Pich? Thomas Moest?

54. **[If yes]** How did you know them?

55. During the period of time you were working on the inventions described in the '588 patent, were you familiar with the work being done by Claus H. Pich? Thomas Moest?

56. Were you familiar with the work Claus H. Pich had done over the previous 10 years? Thomas Moest?

57. **[If yes]** Can you describe the work Claus H. Pich had done over the previous 10 years? Thomas Moest?

58. During the period of time you were working on the inventions described in the '588 patent, were you aware of any patents on which Claus H. Pich was a named inventor? Thomas Moest?

59. **[If yes]** Can you please describe those patents?

60. Do you consider yourself to have a specialty?

61. [**If yes**] What is that specialty?

62. Do you consider yourself to be expert in any particular area?

63. [**If yes**] What is that expertise?

64. [**If yes**] On what do you base that opinion?

65. Would you say that others in that field consider you to be an expert?

66. Are you named as an inventor on any issued patents other than the '588 patent?

67. [**If yes**] Can you identify those patents?

C.     **Topic No. 3: The Development of the Inventions Claimed in the '588 Patent**

This topic is important because, in a patent litigation, the development of the invention

claimed in the patent assists the court in determining the scope or coverage of the invention and

the meaning of terms and phrases in the patent claims. This is important to the issue of patent infringement. The development of the invention is also important in determining, among other things, whether: (i) the invention claimed was the actual invention developed, (ii) the correct inventors were listed on the face of the patent, (iii) the claimed invention was "surprising" or "unexpected" in relation to the prior art, and (iv) the claimed invention was anticipated by or obvious in view of the prior art. These issues are important to the determination of patent validity.

As set forth in paragraph 8, this Court requests that the witness be ordered to bring with him to the witness hearing documents in his possession, custody, or control that relate to the development of the invention claimed in the '588 patent. Specifically, the witness should be ordered to bring to the witness hearing any Research and Development Reports prepared by Knoll employees, including the witness and other inventors of the '588 patent, between 1991 and 1995 concerning sustained release formulations of propafenone. The witness should also bring with him to the witness hearing laboratory notebook entries prepared by the witness or any Knoll employee between 1991 and 1995 concerning sustained release formulations of propafenone. As stated in paragraph 8, the purpose of bringing these documents to the witness hearing is to help the witness recall the events about which he is questioned and to verify the accuracy of his responses.

**List of specific questions**:

1.   Did individuals at Knoll develop delayed-release propafenone HCl microtablets?

2.   **[If yes]** When did individuals at Knoll develop delayed-release propafenone HCl microtablets?

3.   Were you involved in the development of delayed-release propafenone HCl microtablets at Knoll?

4.    Please describe the development of delayed-release propafenone HCl microtablets at Knoll.

5.    What other individuals were involved in the development of the delayed-release propafenone HCl microtablets?

6.    Was a U.S. patent issued relating to the development of delayed-release propafenone HCl microtablets at Knoll?

7.    Is Exhibit B, the '588 patent, that patent?

8.    Describe the research group involved in Knoll's development of delayed-release propafenone HCl microtablets.

9.    Who supervised your research concerning microtablet technology while at Knoll?

10.   To whom did your supervisor for your research concerning microtablet technology report to?

11.   Why did you select microtablets for your use in the inventions disclosed in the '588 patent?

12.   Where did you first learn of microtablets? What were the benefits of microtablets?

13.   How did each inventor of the '588 patent contribute to the research and development of the delayed-release propafenone HCl microtablets?

14.   What was the problem you were trying to solve?

15.   Why were you trying to solve that problem?

16.   How did the prior art not solve the problem?

17.   What, in general, are the components of delayed-release propafenone HCl microtablets?

18.   What are microtablets?

19.   Why did you test microtablets?

20.   What types of microtablets did you test?

21.   Do the delayed-release propafenone HCl microtablets contain "cylindrically-shaped" microtablets?

22.   Why was this shape important?

23.   Do the delayed-release propafenone HCl microtablets contain a convex or flat upper and lower side?

24.    Why was this shape important?

25.    What is the function of the microtablets?

26.    If the cylindrically shaped microtablets were removed from the propafenone formulation, or exchanged with another tablet form, would it affect the properties of the formulation?

27.    What other shaped microtablets did you test?

28.    Did Knoll consider each of these other microtablets?

29.    Did Knoll make formulations containing these other microtablets?

30.    Did Knoll conduct tests of formulations containing these other microtablets?

31.    Describe these tests.

32.    What were the results of these tests?

33.    Would using a differently-shaped tablet affect the properties of the formulation?

34.    Do the delayed-release propafenone HCl microtablets contain any delayed-release ancillary?

35.    How do you define a "delayed-release ancillary"?

36.    Is ethylcellulose a delayed-release ancillary?

37.    Have you ever worked with ethylcellulose in pharmaceutical formulation research?

38.    If so, how was ethylcellulose utilized in those formulations?

39.    How much ethylcellulose in terms of percentage by weight of the formulation was used?

40.    Did Knoll consider using any "delayed release ancillary" in the microtablet formulation?

41.    Why or why not?

42.    Did Knoll conduct tests of delayed-release propafenone HCl formulations containing a delayed release ancillary?

43.    Why or why not?

44.    Describe these tests.

45.    What were the results of these tests?

46.    Would using ethylcellulose in the delayed-release propafenone HCl microtablets affect the properties of the formulation?

47.   What does the phrase "active ingredient density" mean as it is used in subparagraph c. of claim 1 of Exhibit B?

48.   What is the basis for that definition?

49.   Is it important that the "release rate is virtually independent of the pressure when compressing the tablets?"

50.   Why or why not?

### D.    Topic No. 4: the Filing and Prosecution of the Application Maturing into the '588 Patent

Patent prosecution describes the interaction between an applicant, or their representative, and the U.S. Patent and Trademark Office ("PTO") with regard to an application for a patent. The prosecution of a patent application is important because the negotiations between the applicant, or his or her representative, can define the scope of the patent claims by, for example, limiting the coverage of the claims through the doctrine of subject matter disclaimer, which occurs when the applicant gives up part of the patent claim's coverage to obtain allowance of the patent claims.

**List of specific questions**:

1.   Who decided to file a patent concerning the work you performed at Knoll relating to the development of propafenone HCl?

2.   What was the basis for the decision to file a patent application?

3.   Who decided who the named inventors would be?

4.   For each named inventor, what was the basis for including them as an inventor?

5.   Who drafted the specification of the patent?

6.   Did you contribute to the drafting of the specification of the patent?

7.   **[If yes]** What did you contribute?

8.   **[Hand the witness a copy of Exhibit C – the inventor's disclosure statement]** Did you read the specification of the patent before signing the inventors disclosure statement?

9.   Who drafted the claims of the patent?

10.    Did you contribute to the drafting of the claims of the patent?

11.    **[If yes]** What did you contribute?

12.    Did you read the claims of the patent before signing the inventors disclosure statement?

13.    Please describe your involvement in the prosecution of the patent application?

14.    What involvement did the other inventors have in the prosecution of the patent application?

15.    **[Hand the witness a copy of Exhibit D – the Information Disclosure Statement]**
       What involvement did you have in preparing the Information Disclosure Statements?

16.    Did you review the Information Disclosure Statement before it was submitted?

17.    Did you and the other applicants represent to the PTO that "the present invention relates to a cylindrical delayed release microtablet having a convex flat upper side and lower side"?

18.    Why did you or the other applicants make this representation?

19.    Do you consider this aspect of the microtablet to be part of your invention?

20.    Why or why not?

21.    Did you and the other applicants represent to the PTO that "the cylindrical delayed release microtablet of the present invention . . . <u>must</u> contain the active ingredient in the range from 81-99.9% of the weight of the microtablet"

22.    Why did you or your representative make this representation?

23.    Do you consider this aspect of the microtablet to be part of your invention?

24.    Why or why not?

     **E.**      **Topic No. 5: The Inventions Claimed in U.S. Patent No. 5,681,588**

These questions are important to determining the meaning of the terms and phrases used in the patent claims, as well as the scope and coverage of the claims. This is important to the resolution of the issue of whether Par's proposed products infringe the '588 patent.

**List of specific questions**:

1.    Please describe any treatises, articles, patents or other publications you reviewed during the development of the inventions claimed in the '588 patent.

2.   Please describe any problems or disadvantages you perceived in the publications you reviewed.

3.   What was the object of the invention claimed in claim 1 of the '588 patent?

4.   What, if anything, was surprising about the invention claimed in claim 1 of the '588 patent?

5.   [**Hand the witness Exhibit B – a copy of the '588 patent**]  Please look at the '588 patent, column 2, lines 30-31. Why is propafenone HCl "extremely difficult to compress"?

6.   What basis did you and the other inventors have for making that statement?

7.   Why did you and the inventors choose the concentration 81% or above for the active ingredient in claim 1 of the '588 patent?

8.   Did the decision have anything to do with the publications you reviewed at the time you developed the claimed inventions?

9.   Do the microtablets claimed in claim 1 of the '588 patent include tablets with an active ingredient concentration below 81%?

10.  Please look at the '588 patent, column 2, lines 31-34.  Why did you believe that a tablet with an active ingredient content "above 80% could not be produced under production conditions"?

11.  Did the decision have anything to do with the publications you reviewed at the time you developed the claimed inventions?

12.  Why did you and the other inventors choose to have microtablets with a cylindrical shape with flat or convex surfaces?

13.  Did the decision have anything to do with the publications you reviewed at the time you developed the claimed invention?

14.  Is this because of the method by which they are compressed?

15.  Is this the method described in claim 6 of the '588 patent?

16.  What is a "release-delaying ancillary substance"?

17.  Why did you and the other inventors choose to have microtablets without a "release-delaying ancillary substance?"

18.  Did the decision have anything to do with the publications you reviewed at the time you developed the claimed invention?

19.  What are "conventional binders" or "adhesives"?

20. What are "lubricants"?

21. Can ethylcellulose be considered a release-delaying ancillary substance?

22. Does ethylcellulose always act as a release-delaying ancillary substance?

23. Under what circumstances does ethylcellulose act as a release-delaying substance?

24. What percentage by weight of the microtablet is necessary for ethylcellulose to function as a release-delaying ancillary substance?

   F.    **Topic No. 6: U.S. Patent No. 4,797,287 ("the '287 patent" or "the Pich patent")**

Par alleges that the '287 patent is a prior art patent that anticipates or renders obvious the '588 patent. Par also alleges that the applicants of the '588 patent knew of the Pich patent prior to and/or during prosecution of the '588 patent, knew that it was material to the patentability of the '588 patent, but did not disclose it to the examiner. These questions are intended to determine the inventor's knowledge of and understanding of the prior art '287 patent. This information is important to the defendant's defense that the '588 patent is unenforceable due to the applicants' inequitable conduct before the PTO.

**List of specific questions**:

1. **[Hand the witness a copy of Exhibit E – U.S. Patent No. 4,297,287 ("the Pich patent"]** Have you seen U.S. Patent No. 4,797,287, or "the Pich patent," before?

2. If so, what were the circumstances under which you first saw it?

3. If so, when was the first time that you saw it?

4. Was this before you filed the application that later issued as the '588 patent?

5. Did you learn of the Pich patent during the prosecution of the '588 patent?

6. Did you or do you know Claus M. Pich?

7. Did you know he was employed at BASF AG during the time you were working at Knoll?

8. If so, when did you first meet him?

9.    Were you aware of his research focus?

10.   What type of research was his main focus?

11.   Did you have any discussions with him at all prior to or during the prosecution of the '588 patent?

12.   If so, what was the substance of those conversations?

13.   Did you or do you know Thomas Moest?

14.   Did you know he was employed at BASF AG during the time you were working at Knoll?

15.   If so, when did you first meet him?

16.   Were you aware of his research focus?

17.   What type of research was his main focus?

18.   Did you have any discussions with him at all prior to or during the prosecution of the '588 patent?

19.   If so, what was the substance of those conversations?

20.   What was the relationship between the labs or other facilities at Knoll where you worked on microtablet technology and the labs or facilities at BASF where Claus Pich and Thomas Moest worked on microtablet technology?

21.   Did individuals at BASF working on microtablet technology disclosed in the '287 patent have any contact with you or other individuals at Knoll who worked on the microtablet technology disclosed in the '588 patent?

22.   **[If yes]** What kind of contact? Was it regular? Did you discuss research projects? Were some individuals working at both companies?

23.   Concerning the development of microtablet technology, such as that disclosed in the '287 patent and the '588 patent, did employees of BASF and Knoll share facilities, laboratories or buildings?

24.   **[If yes]** What kind of facilities?

25.   **[If yes]** Were the same labs used?

26.   **[If yes]** Where was the testing equipment used?

27.   **[If yes]** Was the same compressing equipment or technology used?

28.   **[If yes]**  Were the same technicians used?

29.    Did you have access to the patents and research conducted at BASF?

30.    Please look at the Pich patent.  Do you agree that Pich discloses "cylindrical microtablets which have a convex upper face and a convex lower face and whose cylinder diameter and height, independently of one another, are each from 1.0 to 2.5 mm, preferably from 2.0 to 2.3 mm"

31.    Are the shape of the Pich-disclosed microtablets the same or substantially the same as the microtablets claimed in the '588 patent?

32.    Why or why not?

33.    Do you agree that Pich discloses that these "novel microtablets can be used for a very large variety of purposes…[of which] the most important and very particularly preferred field of use is the pharmaceutical sector."

34.    Does this mean that Pich disclosed the usefulness of microtablets for use in pharmaceutical formulations?

35.    Please look at Example 5, column 7 of Exhibit E.  Is propafenone present in this Example?

36.    Does Example 5 disclose propafenone microtablets?

37.    Do the propafenone microtablets disclosed in Example 5 contain a release-delaying ancillary substance?

38.    Do the propafenone microtablets in Example 5 have an 80% concentration of propafenone by weight of the microtablet?

39.    Do the propafenone microtablets in Example 5 have an active ingredient density greater than 1 as the term "density" is used in claim 1 of the '588 patent?

40.    Are the height and diameter of the propafenone microtablets disclosed in Example 5 between 1-3 mm?

41.    With your knowledge of Pich as it stands now, do you believe that Pich is material to determining the patentability of  the '588 patent?

42.    **[If did not know of the Pich patent at time of prosecution]**  Had you known of Pich at the time you filed the application, or during the prosecution of the '588 patent application, would you have chosen to disclose it to the Examiner?

43.    **[If did know of the Pich patent at time of prosecution]**  Who made the decision not to identify the Pich patent to the U.S. patent examiner?

44.    What was the basis for the decision not to identify the Pich patent to the U.S. patent examiner?

This Court requests that the German Court order Dr. Buehler to produce all documents identified above on the date and at the place scheduled for his witness hearing.

**13.    Reciprocity:**

The courts of the United States are authorized by statute (see section 1782 of title 28 of the United States Code) to extend similar assistance to the courts of Germany and will gladly reciprocate the courtesies shown by the courts of Germany.

**14.    Responsibility for Reimbursable Fees and Costs:**

The United States Court for the District of Delaware is prepared to reimburse the Responding Authority for all costs incurred in executing this letter of request.  The United States Court for the District of Delaware extends to the judicial authorities of Germany the assurance of its highest consideration.


**WITNESS, the Honorable Joseph J. Farnan, Jr., Judge of the United States District Court for the District of Delaware, this _____ day of _____, 2008.**


_____

**Joseph J. Farnan, Jr.**
**United States District Judge**


[seal of court]