

COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC.,

    Plaintiff,

v.

PAR PHARMACEUTICAL, INC.,

    Defendant.

C.A. No. 06-774-JJF

**DEFENDANT'S UNOPPOSED APPLICATION FOR THE REISSUANCE OF
LETTER OF REQUEST FOR INTERNATIONAL
ASSISTANCE PURSUANT TO THE HAGUE CONVENTION
(THOMAS MOEST)**

Defendant, Par Pharmaceutical, Inc. ("Par") respectfully requests that the Court issue six Second Letters of Request for International Judicial Assistance ("Letters of Request"), pursuant to Article I of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention") and Rule 28(b) of the Federal Rules of Civil Procedure.

On September 7, 2007, Par filed an Application for Issuance of Five Letters of Request for International Judicial Assistance to the Appropriate Judicial Authority of Germany Pursuant to the Hague Convention. (D.I. 83.) On the 19th and 21st of September 2007, the Court granted Par's application by issuing Letters of Request to compel the following German nationals to appear for depositions and to produce documents:

    1.    Karl Kolter;

    2.    Helmut Fricke;

    3.    Volker Buehler;

    4.    Herbert Mueller-Peltzer;

DB02:6527961.1

510728.DOC
066039.1001

      5.      Claus Pich; and

      6.      **Thomas Moest.**

(D.I. 113-17.)

      These Letters of Request were submitted to the appropriate German judicial authorities, along with German translations. The German authorities have recently advised Par through Par's German local counsel that the previously issued Letters of Request are not in compliance with the Hague Convention as applied under German law and practice. Specifically, Par has been advised by the German authorities that the Letters of Request must set forth the specific questions to be posed to the witnesses at their witness hearings and that German law does not allow for pre-trial discovery of documents as that practice is known in Common Law countries. Accordingly, Par has prepared the attached Second Letters of Request to address the objections of the German authorities.

      Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer are the named inventors of the patent-in-suit, U.S. Patent No. 5,681,588 ("the '588 patent"). Knoll Aktiengesellschaft ("Knoll") was the assignee of record and employer of Messrs. Kolter, Fricke, Buehler, and Mueller-Peltzer during the prosecution of the '588 patent. Claus Pich and **Thomas Moest** are the named inventors of U.S. Patent No. 4,797,287 ("the '287 patent"). Par believes that the '287 patent—which was not disclosed to the U.S. Patent and Trademark Office during prosecution of the '588 patent—is material prior art to the '588 patent. Messrs. Pich and **Moest** developed the inventions claimed in the '287 patent while at Knoll's parent corporation, BASF Aktiengesellschaft. Par believes that the '287 patent alone, or in combination with other prior art, invalidates and renders unenforceable the '588 patent.

      Messrs. Kolter, Fricke, Buehler, Mueller-Peltzer, **Moest**, and Pich are likely to have relevant information concerning the '588 and '287 patents, including the conception,

development and testing of any alleged inventions claimed in the patents; the scope of the claims of the patents; the meanings of claim terms; the filing and prosecution of the patents and/or any foreign counterparts; and the '588 patent inventors' knowledge of the '287 patent before and during the prosecution of the '588 patent. This information is important to Par's defenses of non-infringement, patent invalidity, and patent unenforceability, and as evidence for submission at trial.

Reliant has advised Par that Messrs. Kolter, Fricke, Buehler, Mueller-Peltzer, Pich, and Moest are German nationals residing in Germany. Reliant has further advised Par that Reliant's counsel, Kirkland & Ellis LLP, will represent these German nationals for purposes of this litigation. Reliant's counsel has also advised Par that Reliant has no control over these individuals and that these individuals will not voluntarily produce documents or appear for deposition under the Federal Rules of Civil Procedure.[1]

Par and Reliant have met and conferred in compliance with D. Del. LR 7.1.1, and Reliant has advised Par that it consents to this application.

Accordingly, Par requests that this Court issue the accompanying Second Letter of Request, and that the executed Second Letter of Request be returned to counsel for Par for delivery to the proper German authorities. Upon receipt of the executed Second Letter of Request, counsel for Par will have them translated into German and will have the German versions of the Second Letter of Request delivered to the proper German authorities with the English versions as a courtesy.

---

[1] During discovery in this action, Par obtained an assignment agreement executed by the four inventors of the '588 patent—Messrs. Kolter, Fricke, Buehler, and Mueller-Peltzer. Par believes that under the terms of the assignment agreement, Reliant has the right and power to compel the inventors of the '588 patent to appear for depositions in the United States and to produce documents. On December 19, 2007, Par filed a motion to compel Reliant to produce the inventors and their documents. See D.I. 128. That motion was scheduled to be heard on January 18, 2008. On January 17, 2008, however, the Court issued an Oral Order, canceling the January 18 hearing and notifying the parties that the Court would decide the motion on the papers submitted. At this time, Par's Motion to Compel Discovery of Foreign Inventors is still pending.

January 24, 2008

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: (302) 571-6600
Fax: (302) 571-1253

- and -

FROMMER LAWRENCE & HAUG LLP
Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

*Attorneys for Defendant, Par Pharmaceutical, Inc.*



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RELIANT PHARMACEUTICALS, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 06-774-JJF |
| PAR PHARMACEUTICAL, INC., | : |
| Defendant. | : |

SECOND REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE,
PURSUANT TO THE HAGUE CONVENTION ON THE TAKING OF
EVIDENCE ABROAD IN CIVIL OR COMMERICAL MATTERS
(THOMAS MOEST)

In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), the undersigned applicant has the honor to submit this second request on behalf of the defendant in the above-entitled action, Par Pharmaceutical, Inc. ("Par"), located at 300 Tice Boulevard, Woodcliff Lake, New Jersey 07677, U.S.A.

The United States District Court for the District of Delaware presents its compliments to the judicial authorities of Germany and requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter.

This Court requests the assistance described herein as necessary in the interests of justice. The assistance requested is that the appropriate judicial authority of Germany compel the below-named individual to appear at a witness hearing for the purpose of obtaining evidence for use in the trial of this action.

This Court previously issued a request for assistance dated September 21, 2007 that also requested that the appropriate judicial authority of Germany compel the appearance of the below-named individual to give evidence pertinent to the issues in this matter. This Court has been informed that the German judicial authority identified in paragraphs 2 and 5 below has objected to the previous request for judicial assistance on the ground that it did not set forth with sufficient specificity the questions to be posed to the below-named witness during his witness hearing. Accordingly, this Court issues this second request for assistance, which sets forth in paragraph 12 a list of specific questions to be posed to the witness at the requested witness hearing.

1.  **Sender:**

    The United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, Delaware 19801.

2.  **Central Authority of the Receiving State:**

    Justizminister des Landes Schleswig-Holstein, Lorentzendamm 35, 24103 Kiel, Schleswig-Holstein, Federal Republic of Germany.

3.  **Person to Whom the Executed Request is to be Returned, and Deadline for Return:**

    The executed request should be returned to the Sender as expeditiously as possible.

4.  **Requesting Judicial Authority of the Requesting State, The United States of America (Article 3(a)):**

    The requesting judicial authority is the United States District Court for the District of Delaware, by the Honorable Joseph J. Farnan, Jr. of that Court.

5. **Competent Authority of the Requested State, the Federal Republic of Germany (Article 3(a)):**

Justizminister des Landes Schleswig-Holstein, Lorentzendamm 35, 24103 Kiel, Schleswig-Holstein, Federal Republic of Germany.

6. **Names and Addresses of the Parties and their Representatives (Article 3(b)):**

| Party | Representative |
|---|---|
| Par Pharmaceutical, Inc.<br>300 Tice Boulevard<br>Woodcliff Lake, New Jersey 07677 | Edgar H. Haug<br>James K. Stronski<br>John G. Taylor<br>FROMMER LAWRENCE & HAUG LLP<br>745 Fifth Avenue<br>New York, New York 10151<br><br>Josy W. Ingersoll<br>Karen L. Pascale<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>The Brandywine Building<br>1000 West St., 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391 |
| Reliant Pharmaceuticals, Inc.<br>110 Allen Road<br>Liberty Corner, New Jersey 07938 | Jack B. Blumenfeld<br>Maryellen Noreika<br>MORRIS, NICHOLS, ARSHT & TUNNELL<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19899<br><br>John Desmarais<br>Gerald J. Flattmann, Jr.<br>Christine Willgoos<br>William T. Vuk<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022-4611 |

7.  **Nature and Purpose of the Proceedings and Summary of the Facts (Article 3(c)):**

This is a patent infringement action brought by plaintiff Reliant Pharmaceuticals, Inc. ("Reliant") against defendant Par, both U.S. corporations. The patent-in-suit, U.S. Patent No. 5,681,588 ("the '588 patent"), issued to Knoll Aktiengesellschaft ("Knoll") on assignment from Karl Kolter, Helmut Fricke, Volker Buehler, and Herbert Mueller-Peltzer, the named inventors. Knoll subsequently assigned the patent-in-suit to Abbott Laboratories, Inc. ("Abbott"), which later assigned the patent-in-suit to Reliant. Accordingly, although the inventions claimed in the patent-in-suit were developed in Germany and originally assigned to Knoll, no German company or individual from which testimony is sought currently has a commercial interest in the patent-in-suit or this litigation.

This action is based on Par's filing of Abbreviated New Drug Application ("ANDA") No. 78-540 with the U.S. Food and Drug Administration ("FDA"). Par's ANDA seeks FDA approval to market a generic version of Reliant's propafenone HCl extended-release products, which Reliant markets under the brand name Rythmol® SR for the treatment of arrhythmia. Reliant has brought this action contending that the commercial sale of Par's proposed product as described in Par's ANDA No. 78-540 would infringe one or more claims of the patent-in-suit.

Par contends that the commercial manufacture and/or sale of its proposed product will not infringe any valid claims of the patent-in-suit and that the claims of the patent are invalid and unenforceable under one or more of the provisions of the United States Code, 35 U.S.C. § 101 *et seq.*

8.  **Judicial Action to be Taken (Article 3(g)):**

To assist this Court in resolving this dispute in a prompt, fair and efficient manner, this Court respectfully requests that the Responding Authority issue an order compelling the

following individual to appear at a witness hearing in this case. A list of specific questions that are to be posed to the witness are set forth in paragraph 12. The party affiliation and counsel for the designated individual is also given:

| Witness | Affiliation | Represented by Counsel |
|---|---|---|
| Thomas Moest<br>Nordmark Arzneimittel GmbH & Co. KG<br>Pinnauallee 4<br>25436 Uetersen<br>Germany | Named inventor of a material prior-art patent | John Desmarais<br>Gerald J. Flattmann, Jr.<br>Christine Willgoos<br>William T. Vuk<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022-4611 |

The above-identified individual appears to have information relevant to this case.

This Court requests that the German Court set a date, time, and place for the witness hearing of the above-identified individual as soon as practicable. This Court also requests that the scheduling of the above witness hearing be coordinated with the witness hearings of Claus Pich and Helmut Fricke, which are being requested contemporaneously by this Court, so as to allow counsel traveling from the United States to attend all witness hearings in a single trip, if possible.

9.     **Subject Matter and Relevance of This Request:**

Par has learned, through its own investigation and discovery obtained from Reliant to date, that Dr. Moest has information relevant to this litigation. Par has identified Dr. Moest as among the most important witnesses in this case. Reliant has also identified Dr. Moest in discovery responses as likely to have discoverable information concerning the parties' claims and defenses in this case. Dr. Moest is an inventor, along with Claus Pich, of U.S. Patent No. 4,797,287 ("the '287 patent"), which Par alleges is material prior art to the '588 patent at issue in

this litigation. Dr. Moest, along with co-inventor Claus Pich, developed the inventions claimed in the '287 patent while at Knoll's parent corporation, BASF Aktiengesellschaft ("BASF"). Knoll was the assignee of record and employer of the inventors of the '588 patent during prosecution of the '588 patent.

As one of its defenses in this litigation, Par alleges that the '287 patent invalidates the '588 patent because the '287 patent is prior art that anticipates or renders obvious the '588 patent. Par also alleges that the '588 patent is unenforceable under the Patent Laws of the United States because the inventors of the '588 patent knew of the '287 patent prior to and/or during prosecution of the '588 patent, knew that it was material to the patentability of the '588 patent, but did not disclose it to the patent examiner. As such, Dr. Moest may have knowledge material to Par's defenses of non-infringement, invalidity, and unenforceability of the patent-in-suit. Specifically, Dr. Moest may have relevant information concerning the scope of the claims of the '287 patent, the meaning of claim terms, and the '588 patent inventors' knowledge of the '287 patent.

In view of the foregoing, this Court requests, in the interests of justice, that an order be issued, in accordance with the laws and procedures of the courts of Germany for the acquisition of evidence for trial, to compel Dr. Moest to appear at a witness hearing to respond to the questions set forth in paragraph 12.

**10.   Methods and Procedures to be Followed for Witness Hearing of Dr. Moest:**

This Court requests, pursuant to Article 3 of the Hague Convention, that the testimony given pursuant to this letter of request be given under oath.

The conduct of the witness hearing will be under the supervision of the German judge, and should be conducted with due regard to German practice and procedure, and the authority of the German Court. This Court understands that the procedures to be followed will be determined

in the exercise of discretion of the German Court. Within those limitations, however, this Court makes the following requests pursuant to Article 9 of the Hague convention for additional procedures to be followed:

    a.    Counsel for defendant Par has informed this Court that Germany's Code of Civil Procedure ("ZPO") permits a German Judge to authorize that questioning of the witness at a witness hearing taken under the Hague Convention may be conducted by the parties, counsel for whom may ask questions in the nature of direct, cross and redirect examination. It is this Court's understanding that such procedures may be requested by the Requesting Authority in the Letter of Request.[1]

This Court believes that the most effective way to obtain the witness' testimony in a form that will be useful to the Court would be to follow that procedure. Counsel for the defendant is familiar with the documents and the issues and it would be very advantageous to allow them to conduct the questioning rather than to have the questioning done by the German judge or other official of the German government. This Court requests that such a procedure be followed.

    b.    Defendant Par's attorneys, Frommer Lawrence & Haug LLP, request, under authorization of this Court, permission to attend and participate in the witness hearing of the above-identified individual. Defendant Par's attorneys, Frommer Lawrence & Haug LLP, further request, under authorization of this Court, that the attorneys for the above-identified individual, Kirkland & Ellis LLP, be permitted to attend and participate in the witness hearing of the above-identified individual. If permission to attend and participate is granted, it is requested that Frommer Lawrence & Haug LLP be provided with the date, time and place of the hearing as soon as convenient, which information they will promptly provide to Kirkland & Ellis LLP.

---

[1] In particular, counsel for defendjant Par has brought to the Court's attention ZPO § 397, supporting the view that cross examination by the parties' counsel is permitted.

c.  Sometimes during hearings counsel raise objections to the admissibility in court of certain testimony or the manner in which questions are asked or answers are given. The usual practice in depositions in this country is that such objections are "reserved," which means that they are noted for the record but not resolved at the hearing. They are resolved by the trial court when the testimony is presented to the court. This Court requests that this procedure be followed in connection with this hearing to the extent objections are raised based on issues of United States law.

d.  This Court requests that a full stenographic record (verbatim transcript) be taken of the proceedings.

e.  It is fully acceptable to this Court that the hearing be conducted in German and that all questions be asked in German, and that the witness hear and respond to all questions in German. It is requested that United States counsel be allowed to bring a translator to the hearing, which shall be arranged and paid for by United States counsel, and that the translator be allowed to make simultaneous translation of the proceedings so that United States counsel may follow the hearing and be in a position to pose questions to the witness.

f.  After the written transcript of the witness hearing is prepared, the witness shall have the opportunity to review it and make any corrections required, stating the reasons therefore in an errata sheet to be affixed to the original transcript of the hearing. The witness should be required to sign an acknowledgement of the accuracy of the transcript (as corrected) before the German Court or any other competent German authority, and the transcript so executed should then forwarded to the Sender.

g.  Paragraph 12 includes a list of topics about which the above-identified witness is to be questioned, including explanations of the relevance of the topics to the issues in this case

and specific questions to be posed to the witness relating to those topics. Although Par has provided these specific questions, as noted in paragraphs 10(a) and (b) above, Par's attorneys request, under authority of this Court, that they be allowed to conduct the questioning of the witness. This case involves complex technical issues and issues unique to U.S. patent and procedural law with which Par's attorney's are familiar. In addition, it is impossible to know in advance how the witness will answer the specific questions set forth in paragraph 12. Answers to particular questions may require unanticipated follow-up questions or suggest unanticipated lines of questioning. Accordingly, Par's attorney's request, under authority of this Court, that they be allowed to ask additional questions not set forth in paragraph 12 in response to the witness' answers relating to the subject-matter.

      h.    If the Responding Authority denies the procedure requested in paragraphs (a)-(g) above, and instead orders that the questioning of the witness be done by the German judge or other official of the German government exclusively, without giving counsel to the parties the right to examine the witness, then this Court respectfully requests that the Responding Authority notify this Court and defendant Par, in care of Frommer Lawrence & Haug LLP at the address listed in paragraph 6 above, as soon as possible of the denial.

**11.**    **Request for Notification of Examination:**

    This Court respectfully requests, pursuant to Article 7 of the Hague Convention, that it be informed in writing of the time when, and the place where, the proceeding will take place, and that such information should also be sent to the parties' representatives at the addresses listed in paragraph 6 above.

12. **List of Questions to be Posed to Dr. Moest at his Witness Hearing:**

   A.  **Topic No. 1: Introductory Questions**

   These questions are important to learn the witness' qualifications, experience, the circumstances under which he learned of the request for his testimony, and his preparation for his testimony. This information may important in determining the witness' competence and credibility (i.e., the weight the Court should give to the witness' testimony).

   **List of specific questions:**

   1. Please state your full name.
   2. What is your home address?
   3. Do you have a medical condition or are you on any medication that would impair your ability to understand the questions you will be asked today and to answer them accurately?
   4. What company do you work for?
   5. What is your work address?
   6. What is your position with the company?
   7. What is your job title?
   8. Are you an officer of the company?
   9. Have you seen this Letter of Request/Order before?
   10. When? Where? Who supplied it to you?
   11. Did you discuss the Letter of Request/Order with anyone?
   12. Who? When? Where? How long? What did you discuss?
   13. Are you being represented by counsel in connection with today's deposition?
   14. Who?
   15. Are you paying for their representation?
   16. Who is?
   17. Are you being compensated in any way for your testimony today?

18. When did you first find out that your testimony had been requested in this lawsuit?

19. How did you find out?

20. What was you response when you found out?

21. What did you do to prepare for today's witness hearing?

22. Did you review any documents?

23. [If yes] What documents? When? Who supplied them to you?

24. Did you meet with anyone?

25. Who? When? Where? What did you discuss?

B. **Topic No. 2: Education and Employment History**

These questions are important to learn the witnesses' qualifications and experience. This information may important in determining the witnesses' competence and credibility (i.e., the weight the Court should give to the witness' testimony).

**List of specific questions:**

26. Starting with college, please identify the schools you have attended and for each please provide:

    a. Years attended each school?

    b. Degrees you received from each school?

    c. The focus of your studies at each school?

27. Any other training relating to your work at BASF?

28. Please describe your employment history starting with your earliest employment to the present. For each position you've held, please provide:

    a. The name of the company you worked for?

    b. The nature of the company's business?

    c. The period of time you worked for the company?

    d. Your position(s) at the company?

    e. Your duties and responsibilities at the company?

29. Focusing on the years you worked for BASF, please provide the following information:

   a. Years worked for?

   b. Job titles?

   c. Duties and responsibilities?

   d. Who did you report to?

   e. Who reported to you?

30. Do you consider yourself to have a specialty?

31. [If yes] What is that specialty?

32. Do you consider yourself to be expert in any particular area?

33. [If yes] What is that expertise?

34. [If yes] On what do you base that opinion?

35. Would you say that others in that field consider you to be an expert?

36. Are you named as an inventor on any issued patents other than the U.S. Patent No. 4,797,287?

37. [If yes] Can you identify those patents?

### C. Topic No. 3: U.S. Patent No. 4,797,287 ("the '287 patent" or "the Pich patent")

Par alleges that the '287 patent is a prior art patent that anticipates or renders obvious the '588 patent. Par also alleges that the applicants of the '588 patent knew of the Pich patent prior to and/or during prosecution of the '588 patent, knew that it was material to the patentability of the '588 patent, but did not disclose it to the examiner. These questions are intended to determine whether the inventors of the '588 patent had knowledge of the prior art '287 patent. This information is important to the defendant's defense that the '588 patent is unenforceable due to the applicants' inequitable conduct before the PTO.

**List of specific questions:**

1.  **[Hand the witness a copy of Exhibit A – U.S. Patent No. 5,581,588, or "the '588 patent"]** Do you recognize this document?

2.  **[If yes]** What is it? When did you first see it? Who showed you it? What do you know about it?

3.  **[Hand the witness a copy of Exhibit B – U.S. Patent No. 4,797,287]** Do you recognize this document?

4.  What is it?

5.  During the time you worked at BASF, did you know Karl Kolter? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer?

6.  **[If yes]** How did you know him? Did you know he was employed at Knoll during the time you were working at BASF? When did you first meet him?

7.  **[If yes]** During the period of time you were working at BASF did you have any discussions with Karl Kolter concerning the subject matter of the '588 patent? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer?

8.  **[If yes]** What was the substance of those discussions?

9.  **[If yes]** Did you have any discussions with Karl Kolter concerning the subject matter of the '588 patent at any time? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer? When did those conversations take place?

10. **[If yes]** What was the substance of those discussions?

11. **[If yes]** Did you have any discussions with Karl Kolter prior to or during the prosecution of the '588 patent, or from October 1995 to October 28, 1997? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer?

12. **[If yes]** What was the substance of those conversations?

13. **[If yes]** Did you discuss your past research with him? Did you discuss the '287 patent with him? Did you discuss microtablet technology with him? Did you discuss formulations of propafenone with him?

14. **[If yes]** When did you have those discussions?

15. **[If yes]** What was the substance of those discussions?

16. Were you familiar with the work Karl Kolter did while at Knoll? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer concerning microtablets?

17. **[If yes]** Can you describe the work Karl Kolter did while at Knoll? Helmut Fricke? Volker Buehler? Herbert Mueller-Peltzer?

18. What was the relationship between the labs or other facilities at BASF where you worked on microtablet technology and the labs or facilities at Knoll where Karl Kolter, Helmut Fricke, Volker Buehler and/or Herbert Mueller-Peltzer worked on microtablet technology?

19. Did individuals at Knoll working on microtablet technology disclosed in the '588 patent have any contact with you or other individuals at BASF who had worked on the microtablet technology disclosed in the '287 patent?

20. **[If yes]** What kind of contact? Was it regular? Did you discuss research projects? Were some individuals working at both companies?

21. Concerning the development of microtablet technology, such as that disclosed in the '287 patent and the '588 patent, did employees of BASF and Knoll share facilities, laboratories or buildings?

22. **[If yes]** What kind of facilities?

23. **[If yes]** Were the same labs used?

24. **[If yes]** Where was the testing equipment used?

25. **[If yes]** Was the same compressing equipment or technology used?

26. **[If yes]** Were the same technicians used?

27. Who supervised your research concerning microtablet technology while at BASF?

28. To whom did your supervisor for your research concerning microtablet technology report to?

29. Why did you select microtablets for your use in the inventions disclosed in the '287 patent?

30. Where did you first learn of microtablets?

31. Did you originally develop microtablets while at BASF?

32. **[If yes]** When? Where? Why? Based on what research? What were the benefits of microtablets?

33. **[If no]** How did you decide to select microtablets? Where did you learn about microtablets? What were the benefits of microtablets?

34. Please look at Example 5, column 7 of the '287 patent. Is propafenone present in this Example?

35. Does Example 5 disclose propafenone microtablets?

36. Do the propafenone microtablets disclosed in Example 5 contain a release-delaying ancillary substance?

37. Do the propafenone microtablets in Example 5 have an 80% concentration of propafenone by weight of the microtablet?

38. Do the propafenone microtablets in Example 5 have an active ingredient density greater than 1?

39. Are the height and diameter of the propafenone microtablets disclosed in Example 5 between 1-3 mm?

40. What contribution did you make to the microtablet invention disclosed in the '287 patent? Who assisted you?

41. Who else was involved in the development of the microtablets disclosed in the '287 patent?

42. What involvement, if any, did you have in the development of the propafenone microtablets disclosed in this example 5 of the '287 patent?

43. Who else assisted you in developing propafenone microtablets and what contribution did each person make?

44. Was propafenone selected because your research was part of an ongoing BASF or Knoll effort to develop a pharmaceutical formulation of propafenone?

45. **[If yes]** Describe this research effort. Who directed it? When did it begin? What was the goal? Was this an important project? Who else was involved?

46. Why did you test or develop a cylindrically-shaped microtablet?

47. Why did you test or develop a microtablet with a convex upper and lower face?

48. Is there a benefit to microtablets with a uniform size and shape?

49. Did you test or evaluate the benefits of uniform microtablets having a different size or shape characteristics those those claimed in the '287 patent?

50. Why did you chose the size and shape characteristics claimed in the '287 patent?

51. Did you test any other propafenone microtablet formulations other than that set forth in Example 5 of the '287 patent?

52. Did you ever test a propafenone microtablet with an active ingredient concentration greater than 80% by weight of the microtablet? What concentration? When? Why? Under whose direction? Why didn't you disclose it in the '287 patent?

53. Would the disclosure of the '287 patent have allow a person of ordinary skill in the art to make a propafenone microtablet with an active ingredient concentration of 81% or greater by weight of the microtablet simply by using more propafenone in the mixture?

54. Did you test a propafenone microtablet with an active ingredient density greater than 1?

55. Did you test a propafenone microtablet with release-delaying ancillary substances?

56. **[If yes]** When? Why? Under whose direction? Did these substances include ethylcellulose?

**13.   Reciprocity:**

The courts of the United States are authorized by statute (see section 1782 of title 28 of the United States Code) to extend similar assistance to the courts of Germany and will gladly reciprocate the courtesies shown by the courts of Germany.

**14.   Responsibility for Reimbursable Fees and Costs:**

The United States Court for the District of Delaware is prepared to reimburse the Responding Authority for all costs incurred in executing this letter of request. The United States Court for the District of Delaware extends to the judicial authorities of Germany the assurance of its highest consideration.

**WITNESS**, the Honorable Joseph J. Farnan, Jr., Judge of the United States District Court for the District of Delaware, this 25 day of January, 2008.

_____
Joseph J. Farnan, Jr.
United States District Judge

[seal of court]