IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC.,    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        C.A. No. 06-774 (JJF)
                                  )
PAR PHARMACEUTICAL, INC.,         )
                                  )
                Defendant.        )

**PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OPENING
BRIEF IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER REGARDING
PAR'S NOTICE OF DEPOSITION TO RELIANT PURSUANT TO RULE 30(b)(6)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

February 7, 2008

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................ 1

STATEMENT OF THE FACTS ................................................................................... 2

ARGUMENT .............................................................................................................. 2

CONCLUSION ........................................................................................................... 4

ii.

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Axiohm IPS, Inc. v. Epson Am., Inc.*,
 C.A. No. 00-420-SLR (D. Del. Mar. 28, 2001) .................................................... 3

*In re Indep. Service Org. Antitrust Litig.*,
 168 F.R.D. 651 (D. Kan. 1996)............................................................................ 4

*McKesson Info. Solutions LLC v. The TriZetto Group, Inc.*,
 C.A. No. 04-1258-SLR (D. Del. Aug. 2, 2005)............................................... 3, 4

*Tiegel Manu Co. v. Globe Union, Inc.*,
 C.A. No. 84-483 (D. Del. Oct. 5, 1984)........................................................... 3, 4

**Statutes**

Fed. R. Civ. P. 30(b)(6)..................................................................................... 1, 2

Fed. R. Civ. Proc. 26(c) .......................................................................................... 2

## NATURE AND STAGE OF THE PROCEEDINGS

On December 19, 2006 Reliant Pharmaceuticals, Inc. ("Reliant") filed this action for infringement of U.S. Patent No. 5,681,588 ("the '588 patent") against Par Pharmaceutical, Inc. ("Par"), based on Par's filing of ANDA 78-540, which seeks to market generic versions of Reliant's drug Rythmol® SR.  D.I. 1.  Par answered Reliant's Complaint on February 9, 2007. D.I. 11.

This action is currently in discovery.  The parties have exchanged document requests and interrogatories, and have served their respective responses.  To date, Reliant has produced over 92,000 pages of documents.  The parties have scheduled several fact depositions, but have not yet taken any depositions.  Pursuant to the Court's Rule 16 Scheduling Order, fact discovery is to be completed by March 7, 2008.[1]  D.I. 27.

On December 21, 2007 Par served Reliant with a Notice Of Deposition of Reliant Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) ("Par's 30(b)(6) Notice").  This is Reliant's Opening Brief in support of its motion seeking a protective order regarding certain topics contained in Par's 30(b)(6) Notice.

## SUMMARY OF THE ARGUMENT

Par has requested that Reliant identify and present a witness for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify concerning a number of Reliant's principal contentions in this suit.  Contention depositions, however, are not permitted in this district.  Moreover, Par has already sought -- and obtained -- this same discovery through contention interrogatories.

---

[1]     The parties have agreed that it is unlikely that fact discovery will be completed by March 7, 2008, and are currently working towards an agreement to extend the fact discovery period.

The contention discovery sought by Par is overbroad, inefficient and unreasonable. Accordingly, Reliant respectfully requests that this Court enter a Protective Order denying Par testimony pursuant to its Rule 30(b)(6) Notice regarding Topics 1, 4, 9, 10, 15 and 16 of Par's 30(b)(6) Notice.

## STATEMENT OF THE FACTS

On December 21, 2007 Par served a deposition notice pursuant to Rule 30(b)(6) on Reliant. Several of the topics listed in the notice sought testimony on Reliant's contentions in this litigation. For example, the notice sought Reliant's contentions concerning infringement (Topics 1, 9), exceptional case (Topic 4), and validity (Topics 9, 10, 15, 16). *See* Ex. 1.

Reliant served its Objections and Responses to Par Pharmaceutical, Inc.'s Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) on January 15, 2008. In these objections, Reliant noted the impropriety of Par's Topics 1, 4, 9, 10, 15 and 16, and stated that it would not produce a witness for these topics.[2] *See* Ex. 2.

Par continues to seek the improper discovery requested in its 30(b)(6) Notice.

## ARGUMENT

Under Rule 26(c) of the Federal Rules of Civil Procedure, the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. Proc. 26(c).

---

[2]    Reliant also stated that it would not produce a witness regarding Topic 8 which sought, *inter alia*, information concerning Reliant's due diligence in acquiring Rythmol® SR and the '588 patent -- the same subject matter on which Par's counsel, Frommer Lawrence & Haug, had previously advised Reliant. *See* D.I. 138, 163. Par has since withdrawn Topic 8 without prejudice to redraft it, and Reliant reserves all rights to object to the redrafted topic. Similarly, Reliant also initially stated that it would not produce a witness to testify regarding Topics 12 and 14, of which Reliant has no corporate knowledge. At Par's request, however, Reliant will produce a witness to testify regarding these Topics, so that Par may explore the extent (or lack thereof) of Reliant's knowledge of the information sought in those topics.

3.

In this Court, requests for contentions through a deposition is not allowed. Ex. 3, *Axiohm IPS, Inc. v. Epson Am., Inc.*, C.A. No. 00-420-SLR, at 4 (D. Del. Mar. 28, 2001) ("[W]e don't do contention depositions in this district"). Instead, the proper mechanism through which to investigate a party's contentions is through contention interrogatories. As Judge Stapleton noted:

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should not be required to formulate trial strategy and contentions in immediate response to questions on deposition. And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

Ex. 4, *Tiegel Manu Co. v. Globe Union, Inc.*, C.A. No. 84-483, at 14 (D. Del. Oct. 5, 1984). *Accord* Ex. 5, *McKesson Info. Solutions LLC v. The TriZetto Group, Inc.*, C.A. No. 04-1258-SLR, at 21 (D. Del. Aug. 2, 2005) ("[I]f you ask for depositions concerning the basis for a defense, that [should be] a contention interrogatory").

Par's Rule 30(b)(6) deposition notice contains six topics that go to the heart of Reliant's contentions in this suit: that its '588 patent is willfully infringed by Par's generic Rythmol® and that the '588 patent is valid and enforceable. *See* Ex. 1 at Topics 1, 4, 9, 10, 15 and 16. At least four of these topics specifically request "[t]he factual bases for Reliant's contention or belief."[3] *See id.* at Topics 1, 4, 9, and 10. The remaining two topics call for a Reliant witness to testify concerning "[t]he technical field of art" and "[t]he level of ordinary skill in the art" "to which the '588 patent pertains." *See id.* at Topics 15 and 16. This subject

---

[3] A Rule 30(b)(6) deposition notice that seeks all of the "facts" supporting a party's claim targets contentions. "[I]nserting of the word 'facts' doesn't make [a deposition topic] less of an effort to get at what is essentially the legal position of the party . . . ." *Pharmacia & Upjohn Co*, at 36.

4.

matter is directly targeted to Reliant's contention that the '588 patent is valid (*i.e.* not obvious or anticipated).[4]

Requiring Reliant to produce a witness to testify regarding its contentions is inefficient and unreasonable and would require Reliant's designated witness "to know every fact pertaining to every contention."  *See* Ex. 6, *Pharmacia & Upjohn Co. v. Sicor, Inc.*, C.A. No. 04-833, at 37 (D. Del. Oct. 21, 2005) (transcript of hearing before Judge Jordan).  *See also In re Indep. Service Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996).

Moreover, Par has already obtained Reliant's contentions regarding these matters through Reliant's responses to Par's interrogatories.  *See* Ex. 7 at Interrogatory Nos. 3, 6-7.  That is the only proper mechanism by which Par may investigate these contentions.  *Tiegel Manu Co.*, at 14.  *Accord McKesson Info. Solutions LLC*, at 21.

Accordingly, Par's Rule 30(b)(6) deposition topics are improper.

## CONCLUSION

For the foregoing reasons, Reliant requests the Court grant its motion for a protective order and preclude Par from seeking Reliant's testimony concerning Topics 1, 4, 9, 10, 15 and 16 of Par's 30(b)(6) Notice.

---

4    This is also a subject matter that is a more suitable for expert testimony than for a fact witness.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800

February 7, 2008
1488325

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Josy W. Ingersoll, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR

I further certify that I caused to be served copies of the foregoing document on

February 7, 2008 upon the following in the manner indicated:

Josy W. Ingersoll, Esquire                          *VIA ELECTRONIC MAIL*
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

John G. Taylor, Esquire                             *VIA ELECTRONIC MAIL*
James K. Stronski, Esquire
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY  10151


*/s/ Maryellen Noreika*
_____
Maryellen Noreika (#3208)

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 06-774-JJF |
| v. | : | |
| | : | |
| PAR PHARMACEUTICAL, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## NOTICE OF DEPOSITION OF RELIANT PHARMACEUTICALS, INC.
## PURSUANT TO FED. R. CIV. P. 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Par Pharmaceutical, Inc. ("Par") will take the oral deposition of Reliant Pharmaceuticals, Inc. ("Reliant") at the offices of Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, NY 10151 beginning at 9:00 a.m. on February 6, 2008, or at such other time and location as is mutually agreeable. The topics for the deposition are set forth in Exhibit A attached hereto.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Reliant is advised that is required to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in attached Exhibit A. No less than five business days before the scheduled deposition date, Reliant is requested to designate in writing to Par the names of the persons who will testify on its behalf, specifying the matters on which each person will testify.

00502884.DOC

The deposition will be taken in accordance with the Federal Rules of Civil Procedure before an official authorized to administer oaths under the laws of the United States, and shall continue from day to day until completed. This deposition may be recorded by any means permitted under the Federal Rules of Civil Procedure, including audio, audio-visual, and/or stenographic means.

Plaintiff's counsel is invited to attend and cross-examine.

December 2l , 2007

FROMMER LAWRENCE & HAUG LLP

Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

- and -

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (No. 1088)
Karen L. Pascale (No. 2903)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: (302) 571-6600
Fax: (302) 571-1253

*Attorneys for Defendant, Par Pharmaceutical, Inc.*

## EXHIBIT A

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, the deponent, Reliant Pharmaceuticals, Inc. ("Reliant"), has a duty to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth below. No less than five business days before the scheduled deposition date, Reliant is requested to designate in writing to Par Pharmaceutical, Inc. ("Par") the names of the person(s) who will testify on Reliant's behalf with respect to each of the following categories:

1. The factual bases for Reliant's contention or belief that the proposed propafenone HCl SR capsules that are the subject of Par's Abbreviated New Drug Application ("ANDA") No. 78-540 ("Par's accused products") infringe any claim of U.S. Patent No. 5,681,588 ("the '588 patent").

2. Any pre-suit investigation by or on behalf of Reliant to determine if Par's accused products infringe any claim of the '588 patent.

3. The decision to sue Par for infringement of the '588 patent.

4. The factual bases for Reliant's contention or belief that Par's conduct warrants that this be declared an exceptional case pursuant to 35 U.S.C. § 285.

5. Any investigations, threats to sue, or actual lawsuits by Reliant or any other party concerning infringement of the '588 patent by any product other than Par's accused products.

6. Reliant's plans or strategies for delaying generic competition for Rythmol® SR.

7. The planning, preparation, filing, and approval process for New Drug Application ("NDA") No. 21-416, including clinical trials, amendments, supplements, and annual reports.

8. Reliant's acquisition of Rythmol® SR and the '588 patent from Abbott Laboratories, Inc. ("Abbott"), including but not limited to the decision to seek to acquire Rythmol® SR and the '588 patent, the considerations that went into the decision to acquire Rythmol® SR and the '588 patent, communications with Abbott concerning the acquisition of Rythmol® SR and the '588 patent, the negotiations of the acquisition of Rythmol® SR and the '588 patent, and any due diligence conducted in connection with the acquisition of Rythmol® SR and the '588 patent.

9. The factual bases for Reliant's contention or belief that claims in the '588 patent cover or read on Rythmol® SR.

00502884.DOC

10.   The factual bases for Reliant's contention or belief that secondary indicia of non-obviousness (including commercial success, failure of others, long-felt need, acquiescence, and copying) "buttress the statutory presumption of validity of the '588 patent," including the nexus between these secondary indicia of non-obviousness and the claimed subject matter of the '588 patent.

11.   The research and development resulting in and testing of each invention claimed in the '588 patent.

12.   The conception and reduction to practice of each invention claimed in the '588 patent.

13.   The first sale, offer for sale, description in a printed publication, and/or disclosure to a person other than the inventors of each invention claimed in the '588 patent.

14.   The preparation and prosecution of the patent application that issued as the '588 patent.

15.   The technical field of art to which the '588 patent pertains.

16.   The level of ordinary skill in the art to which the '588 patent pertains at the time the inventions claimed in the '588 patent were made.

17.   The total amount of revenue from sales of Rythmol® SR as well as the revenue each year from sales of that product.

18.   The total gross profit and total net profit from sales of Rythmol® SR as well as the gross profit and net profit each year from sales of that product.

19.   The marketing, advertising, and sales promotion activities for Rythmol® SR.

20.   The total amount spent on marketing, advertising, and sales promotion for Rythmol® SR as well as the amount spent each year on marketing, advertising, and sales promotion for that product.

21.   The nature and substance of all searches made by or on behalf of Reliant to locate documents and things responsive to Par's first and second sets of document requests.

## CERTIFICATE OF SERVICE

I, John G. Taylor, Esq., hereby certify that on December 21, 2007, I caused a true and correct copy of the foregoing *Notice of Deposition of Reliant Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)* to be served upon the following counsel of record in the manner indicated:

### *By E-Mail and First Class Mail*

John Desmarais [jdesmarais@kirkland.com]
Gerald J. Flattmann, Jr. [gflattmann@kirkland.com]
Christine Willgoos [cwillgoos@kirkland.com]
William T. Vuk [wvuk@kirkland.com]
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY 10022
(212) 446-4800

### *By E-Mail*

Jack B. Blumenfeld  [jblumenfeld@mnat.com]
Maryellen Noreika [mnoreika@mnat.com]
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Steven C. Cherny [steven.cherny@lw.com]
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

FROMMER LAWRENCE & HAUG LLP

Edgar H. Haug
James K. Stronski
John G. Taylor
745 Fifth Avenue
New York, New York 10151
Telephone:  (212) 588-0800
*Attorneys for Defendant, Par Pharmeceutical, Inc.*

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RELIANT PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 06-774 (JJF) |
| | ) | |
| PAR PHARMACEUTICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OBJECTIONS AND
RESPONSES TO PAR PHARMACEUTICAL, INC.'S NOTICE OF DEPOSITION
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Pursuant to Federal Rules of Civil Procedure 26 and 30, plaintiff Reliant

Pharmaceuticals, Inc. ("Reliant") makes the following objections and responses to defendant Par

Pharmaceutical, Inc.'s ("Par's") Notice Of Deposition Of Reliant Pharmaceuticals, Inc. Pursuant

To Fed. R. Civ. P. 30(b)(6) ("Par's Rule 30(b)(6) Notice").

**PLAINTIFF'S GENERAL OBJECTIONS TO PAR'S RULE 30(b)(6) NOTICE**

Reliant makes the following general objections to Par's Rule 30(b)(6) Notice

("General Objections"), which General Objections are hereby incorporated by reference and

made part of its response to each topic set forth in Par's Rule 30(b)(6) Notice:

1.        Reliant objects to Par's Rule 30(b)(6) Notice to the extent it seeks

information protected by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege or immunity.  Any production made by Reliant in response to Par's

Rule 30(b)(6) Notice is made without waiver of, and with preservation of, the attorney-client

privilege, attorney work product doctrine, or any other applicable privilege or immunity.  The

production of any witness(es) is made without waiver of, and with preservation of, the right to

withhold any information subject to any such privilege or immunity and/or any information discovered to be subject to any such privilege or immunity during the course of the deposition.

      2.     Reliant objects to Par's Rule 30(b)(6) Notice to the extent Par's Rule 30(b)(6) Notice and noticed topics are inconsistent with the Federal Rules, the Court's Scheduling Order, the Court's Local Rules, or agreements of counsel.

      3.     Reliant objects to every deposition topic to the extent each topic seeks Reliant's contentions. In the District of Delaware, a Rule 30(b)(6) deposition requesting a party to present its contentions is improper. *Axiohm IPS, Inc. v. Epson Am., Inc.*, C.A. No. 00-420-SLR, at 4 (D. Del. Mar. 28, 2001). As Judge Stapleton noted:

> It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questions and that not even a lawyer should be required to formulate a trial strategy and contentions in immediate response to questions on deposition. And it has accordingly been the consistent practice to require that the contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

*Tiegel Manu Co. v. Globe Union, Inc.*, C.A. No. 84-483, at 14 (D. Del. Oct. 5, 1984). *Accord McKesson Info. Solutions LLC v. The TriZetto Group, Inc.*, C.A. No. 04-1258-SLR, at 21 (D. Del. Aug. 2, 2005); *Elf Atochem North America, Inc. v. Libbey-Owens Ford, Co. Inc.*, C.A. No. 94-670-RRM, at 34-35 (D. Del. Feb. 24, 1995).

      A Rule 30(b)(6) deposition notice that seeks all of the "facts" supporting a party's claim targets contentions. "[I]nserting of the word 'facts' doesn't make [a deposition topic] less of an effort to get at what is essentially the legal position of the party . . . ." *Pharmacia & Upjohn Co. v. Sicor, Inc.*, C.A. No. 04-833-KAJ, at 36 (D. Del. Oct. 11, 2005); *ArthoCare Corp. v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR, at 13-14 (D. Del. Oct. 15, 2002).

4.    Reliant objects to every deposition topic to the extent each topic seeks information, documents or things that are not in Reliant's possession, custody or control.

5.    Reliant objects to every deposition topic to the extent each topic seeks information, documents and things that are confidential information of third parties.

6.    Reliant objects to every deposition topic to the extent each topic seeks information, documents or things that are not described with reasonable particularity.

7.    Reliant objects to every deposition topic to the extent each topic seeks information, documents and things that are not relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Reliant objects to every deposition topic to the extent each topic seeks information, documents and things already produced by Reliant through other depositions, responses to interrogatories and documents produced in this matter.

9.    Reliant objects to every deposition topic to the extent each topic seeks information, documents and things that are otherwise cumulative or duplicative, already in the possession, control, or custody of Par, or obtainable by Par from a more convenient, less burdensome or less expensive source.

10.    Reliant objects to every deposition topic to the extent each topic is overboard and unduly burdensome and purports to impose requirements beyond those set forth in the Federal Rules or the Court's Local Rules.

11.    Reliant objects to every deposition topic to the extent each topic assumes facts or obligations contrary to evidence or otherwise unsupported by facts or application of law.

3

## PLAINTIFF'S SPECIFIC OBJECTIONS AND RESPONSES TO
## PAR'S RULE 30(B)(6) NOTICE

### REQUEST FOR DEPOSITION TOPIC NO. 1:

The factual bases for Reliant's contention or belief that the proposed propafenone HCl SR capsules that are the subject of Par's Abbreviated New Drug Application ("ANDA") No. 78-540 ("Par's accused products") infringe any claim of U.S. Patent No. 5,681,588 ("the '588 patent").

### RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 1:

Reliant objects to this topic because it seeks Reliant's contentions. *See* General

Objection No. 3.

For these reasons and those set forth in its General Objections, Reliant will not

produce a witness to answer questions regarding Topic 1.


### REQUEST FOR DEPOSITION TOPIC NO. 2:

Any pre-suit investigation by or on behalf of Reliant to determine if Par's accused products infringe any claim of the '588 patent.

### RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 2:

In addition to each of the foregoing General Objections, Reliant objects to this

topic to the extent it seeks information protected by the attorney-client privilege, attorney work

product doctrine, or any other applicable privilege or immunity.

Because each and every question asked pursuant to this topic will likely seek

information subject to the attorney-client privilege or attorney work product doctrine, Reliant

does not believe it is necessary to produce a witness to answer questions regarding Topic 2.


### REQUEST FOR DEPOSITION TOPIC NO. 3:

The decision to sue Par for infringement of the '588 patent.

4

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 3:**

In addition to each of the foregoing General Objections, Reliant objects to this topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.

Because each and every question asked pursuant to this topic will likely seek information subject to the attorney-client privilege or attorney work product doctrine, Reliant does not believe it is necessary to produce a witness to answer questions regarding Topic 3.

**REQUEST FOR DEPOSITION TOPIC NO. 4:**

The factual bases for Reliant's contention or belief that Par's conduct warrants that this be declared an exceptional case pursuant to 35 U.S.C. § 285.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 4:**

Reliant objects to this topic because it seeks Reliant's contentions. *See* General Objection No. 3.

For these reasons and those set forth in its General Objections, Reliant will not produce a witness to answer questions regarding Topic 4.

**REQUEST FOR DEPOSITION TOPIC NO. 5:**

Any investigations, threats to sue, or actual lawsuits by Reliant or any other party concerning infringement of the '588 patent by any product other than Par's accused products.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 5:**

Reliant incorporates its responses and objections set forth in its General Objections.

**REQUEST FOR DEPOSITION TOPIC NO. 6:**

      Reliant's plans or strategies for delaying generic competition for Rythmol® SR.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 6:**

      In addition to each of the foregoing General Objections, Reliant objects to this topic as vague, ambiguous and uncertain to the extent that the phrase "delaying generic competition" is undefined.

**REQUEST FOR DEPOSITION TOPIC NO. 7:**

      The planning, preparation, filing, and approval process for New Drug Application ("NDA") No. 21-416, including clinical trials, amendments, supplements, and annual reports.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 7:**

      In addition to each of the foregoing General Objections, Reliant objects to this topic to the extent that it seeks information not within Reliant's possession, custody and control.

**REQUEST FOR DEPOSITION TOPIC NO. 8:**

      Reliant's acquisition of Rythmol® SR and the '588 patent from Abbott Laboratories, Inc. ("Abbott"), including but not limited to the decision to seek to acquire Rythmol® SR and the '588 patent, the considerations that went into the decision to acquire Rythmol® SR and the '588 patent, communications with Abbott concerning the acquisition of Rythmol® SR and the '588 patent, the negotiations of the acquisition of Rythmol® SR and the '588 patent, and any due diligence conducted in connection with the acquisition of Rythmol® SR and the '588 patent.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 8:**

      In addition to each of the foregoing General Objections, Reliant objects to this topic on the grounds that it seeks privileged advice provided by Par's counsel in its representation of Reliant in a substantially related matter. *See, e.g.*, D.I. 95, 138.

For these reasons and those set forth its General Objections, Reliant will not produce a witness to answer questions regarding Topic 8.

**REQUEST FOR DEPOSITION TOPIC NO. 9:**

The factual bases for Reliant's contention or belief that claims in the '588 patent cover or read on Rythmol® SR.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 9:**

Reliant objects to this topic because it seeks Reliant's contentions. *See* General Objection No. 3. Reliant also objects to this topic on the grounds that it seeks privileged advice provided by Par's counsel in its representation of Reliant in a substantially related matter. *See* D.I. 95. Reliant further objects to this topic on the grounds that Par has represented to the Court that "[w]hether Rythmol is covered by the claims of the '588 patent (or any other patent) is not relevant to the issue of whether Par's proposed products infringe the '588 patent" and that "whether Rythmol is covered by the claims of the '588 patent, or any other prior art reference, is irrelevant to determining if the '588 patent is valid." *See* D.I. 118 at 28-29.

For these reasons and those set forth its General Objections, Reliant will not produce a witness to answer questions regarding Topic 9.

**REQUEST FOR DEPOSITION TOPIC NO. 10:**

The factual bases for Reliant's contention or belief that secondary indicia of non-obviousness (including commercial success, failure of others, long-felt need, acquiescence, and copying) "buttress the statutory presumption of validity of the '588 patent," including the nexus between these secondary indicia of non-obviousness and the claimed subject matter of the '588 patent.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 10:**

Reliant objects to this topic as improperly requesting Reliant to disprove

invalidity when Par bears the burden of proving invalidity by clear and convincing evidence. *See*

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004).

Reliant further objects to this topic because it seeks Reliant's contentions. *See* General

Objection No. 3.

For these reasons and those set forth its General Objections, Reliant will not

produce a witness to answer questions regarding Topic 10.


**REQUEST FOR DEPOSITION TOPIC NO. 11:**

The research and development resulting in and testing of each invention claimed
in the '588 patent.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 11:**

In addition to each of the foregoing General Objections, Reliant objects to this

topic to the extent that it seeks information not within its possession, custody and control.  As

Par is well aware, Reliant acquired the '588 patent, Rythmol® SR and NDA 21-416 from Abbott

Laboratories, Inc. after issuance of the patent and approval of the NDA.


**REQUEST FOR DEPOSITION TOPIC NO. 12:**

The conception and reduction to practice of each invention claimed in the '588
patent.


**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 12:**

Reliant objects to this topic as improperly requesting Reliant to disprove

invalidity when Par bears the burden of proving invalidity by clear and convincing evidence. *See*

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996) (explaining that patentee bears burden to prove dates of conception and reduction to practice only after opponent offers evidence alleging prior art under 35 U.S.C. § 102(a)). Reliant further objects to this topic on the grounds that it seeks information not within its possession, custody and control. As Par is well aware, Reliant acquired the '588 patent from Abbott Laboratories, Inc. after issuance of the patent.

For these reasons and those set forth in its General Objections, Reliant will not produce a witness to answer questions regarding Topic 12.

**REQUEST FOR DEPOSITION TOPIC NO. 13:**

The first sale, offer for sale, description in a printed publication, and/or disclosure to a person other than the inventors of each invention claimed in the '588 patent.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 13:**

In addition to each of the foregoing General Objections, Reliant objects to this topic as improperly requesting Reliant to disprove invalidity when Par bears the burden of proving invalidity by clear and convincing evidence. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004).

**REQUEST FOR DEPOSITION TOPIC NO. 14:**

The preparation and prosecution of the patent application that issued as the '588 patent.

9

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 14:**

Reliant objects to this topic on the grounds that it seeks information not within its possession, custody and control. As Par is well aware, Reliant acquired the '588 patent from Abbott Laboratories, Inc. after the issuance of the patent.

For these reasons and those set forth in its General Objections, Reliant will not produce a witness to answer questions regarding Topic 14.

**REQUEST FOR DEPOSITION TOPIC NO. 15:**

The technical field of art to which the '588 patent pertains.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 15:**

Reliant objects to this topic because it seeks Reliant's contentions. *See* General Objection No. 3. Reliant further objects to this topic because it prematurely seeks expert opinions prior to the time scheduled for expert discovery as set forth in the Court's March 28, 2007 Scheduling Order. *See* D.I. 27.

For these reasons and those set forth in its General Objections, Reliant will not produce a witness to answer questions regarding Topic 15.

**REQUEST FOR DEPOSITION TOPIC NO. 16:**

The level of ordinary skill in the art to which the '588 patent pertains at the time the inventions claimed in the '588 patent were made.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 16:**

Reliant objects to this topic because it seeks Reliant's contentions. *See* General Objection No. 3. Reliant further objects to this topic because it prematurely seeks expert

10

opinions prior to the time scheduled for expert discovery as set forth in the Court's March 28,

2007 Scheduling Order. *See* D.I. 27.

For these reasons and those set forth in its General Objections, Reliant will not

produce a witness to answer questions regarding Topic 16.


**REQUEST FOR DEPOSITION TOPIC NO. 17:**

The total amount of revenue from sales of Rythmol® SR as well as the revenue
each year from sales of that product.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 17:**

In addition to each of the foregoing General Objections, Reliant objects to this

topic as overly broad, unduly burdensome and calling for information that is neither relevant to

any claim or defense in this action nor reasonably calculated to lead to the discovery of

admissible evidence to the extent it seeks information related to sales outside of the United

States.


**REQUEST FOR DEPOSITION TOPIC NO. 18:**

The total gross profit and total net profit from sales of Rythmol® SR as well as
the gross profit and net profit each year from sales of that product.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 18:**

In addition to each of the foregoing General Objections, Reliant objects to this

topic as overly broad, unduly burdensome and calling for information that is neither relevant to

any claim or defense in this action nor reasonably calculated to lead to the discovery of

admissible evidence to the extent it seeks information related to sales outside of the United

States.

**REQUEST FOR DEPOSITION TOPIC NO. 19:**

The marketing, advertising, and sales promotion activities for Rythmol® SR.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 19:**

Reliant incorporates its responses and objections set forth in its General

Objections.

**REQUEST FOR DEPOSITION TOPIC NO. 20:**

The total amount spent on marketing, advertising, and sales promotion for
Rythmol® SR as well as the amount spent each year on marketing, advertising, and sales
promotion for that product.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 20:**

In addition to each of the foregoing General Objections, Reliant objects to this

topic as overly broad, unduly burdensome and calling for information that is neither relevant to

any claim or defense in this action nor reasonably calculated to lead to the discovery of

admissible evidence to the extent it seeks information related to sales outside of the United

States.

**REQUEST FOR DEPOSITION TOPIC NO. 21:**

The nature and substance of all searches made by or on behalf of Reliant to locate
documents and things responsive to Par's first and second sets of document requests.

**RESPONSE TO REQUEST FOR DEPOSITION TOPIC NO. 21:**

Reliant incorporates its responses and objections set forth in its General

Objections.

12

January 15, 2008

_____

Jack B. Blumenfeld (No. 1014)
Maryellen Noreika (No. 3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200


John M. Desmarais
Gerald J. Flattmann, Jr.
Christine Willgoos
Shane Cortesi
KIRKLAND & ELLIS LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January, 2008, a copy of PLAINTIFF RELIANT PHARMACEUTICALS, INC.'S OBJECTIONS AND RESPONSES TO PAR PHARMACEUTICAL, INC.'S NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) was served on counsel for Par Pharmaceutical, Inc. as follows:

### BY FEDEX and ELECTRONIC MAIL

John Taylor, Esq.
Frommer, Lawrence & Haug
745 Fifth Avenue
New York, New York 10151

### BY ELECTRONIC MAIL

Karen Keller, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

_____
Shane Cortesi
scortesi@kirkland.com

# Exhibit 3

**File: 3H28AXI1.VI**  CondenseIt™  **2:00 p.m. Telephone Conference**

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          IN AND FOR THE DISTRICT OF DELAWARE
 3                        - - -
 4   AXIOHM IPB, INC.,          :
                                :   CIVIL ACTION
 5       Plaintiff,             :
                                :
 6       v.                     :
                                :
 7   EPSON AMERICA, INC. and    :
     SEIKO EPSON CORPORATION,   :
 8                              :   NO. 00-420-SLR
         Defendants.            :
 9   ----------------------------
     SEIKO EPSON CORPORATION, and:
10   EPSON AMERICA, INC.,       :
                                :
11       Counterclaimants,      :
                                :
12       v.                     :
                                :
13   AXIOHM IPB, INC., and AXIOHM:
     TRANSACTION SOLUTIONS, INC.,:
14                              :
         Counterclaim Defendants.:
15                        - - -
16            Wilmington, Delaware
         Thursday, March 29 2001 at 2:00 p.m.
17              JUDGE'S DECISION
18                        - - -
19   BEFORE:    HONORABLE SUE L. ROBINSON, Chief Judge
20                        - - -
21   APPEARANCES:
22       MORRIS NICHOLS ARSHT & TUNNELL
         BY:  JULIA HEANEY, ESQ.
23
24                and
25                            Brian P. Gaffigan
                              Official Court Reporter
```

Page 2

```
 1   APPEARANCES:  (Continued)
 2
 3       McDERMOTT WILL & EMERY
         BY:  DONNA M. TANGUAY, ESQ. and
 4            MICHAEL D. SWITZER, ESQ.
              (Washington, District of Columbia)
 5
              Counsel for Axiohm IPB, Inc. and
 6            Axiohm Transaction Solutions, Inc.
 7
         CONNOLLY BOVE LODGE & HUTZ
 8       BY:  ARTHUR G. CONNOLLY, III, ESQ.
 9                and
10       HOGAN & HARTSON L.L.P.
         BY:  STUART LUBITZ, ESQ. and
11            JAI EHO, ESQ.
              (Los Angeles, California)
12
              Counsel for Seiko Epson Corporation
13            and Epson America, Inc.
14
15                   - oOo -
16
17            P R O C E E D I N G S
18       (Judge's opinion excerpted from proceedings.)
19       THE COURT:  Okay.  I'm ready to make my decision.
20       First of all, let me start out by saying that as
21   far as I'm concerned, what should have happened in this case
22   is you should have had documents production, should have
23   used your 30(b)(6) depositions at the beginning of discovery
24   to make sure that you have documents and that you have
25   individual witnesses identified.  It's hard for me to believe
```

Page 3

```
 1   that we're at the very end of discovery and you are still
 2   calling out 30(b)(6) depositions.  I mean it's rare and I
 3   think they're certainly less helpful than an individual
 4   deposition and I certainly would hate to think that is what
 5   you are counting on.
 6       Given that background, number one, it seems to me
 7   that at this point if Axiohm really wants to find out about
 8   the conception and reduction to practice, it's time you asked
 9   the inventors.  Forget the 30(b)(6).  So I'm denying that
10   request for relief.
11       Number two, about this third party.  It was my
12   understanding from what Mr. Switzer said that they have
13   produced all documents.  If there is an outstanding request
14   and the defendant has not, then the defendant needs to,
15   but with respect to the deposition testimony, forget the
16   30(b)(6).  We've got two individuals who are identified on
17   the documents that have been produced.  I'm going to order
18   that those depositions be scheduled and be taken.
19       Number three, and number four, the communications
20   between Foreign Patent Offices and our own Patent Office, I'm
21   only going to require that the prosecution files and publicly
22   available records be produced.  I am under the impression
23   that what Mr. Switzer wants is documents that are generally
24   not produced, at least not until patents issue, and I'm not
25   going to go behind the regular rule and allow basically those
```

Page 4

```
 1   kinds of documents to be produced prior to the time they
 2   would be publicly available anyway.
 3       With respect to the licenses, again it seems to
 4   me that if the license agreements themselves do not cover
 5   either the patents or the products, then they are not covered
 6   by a request for such license agreements.  Now, if in fact
 7   there are other business arrangements where people are
 8   practicing the invention and there is nothing specifically in
 9   place, I think that has to be covered by a different kind of
10   request.  So long as the specific question or request for
11   production has been appropriately responded to, and it
12   sounds as though it has, then I'm not going to order anything
13   further.
14       With respect to defendants' complaints, we don't
15   do contention depositions in this district, and the word
16   "entitled" is not generally one that I embrace, so that is
17   denied.
18       Number two, I think it makes sense for you all,
19   in order to get this done congenially and orderly, to extend
20   the discovery deadline until the end of April just for the
21   purpose of getting your depositions in.  Within one week of
22   today, you need to have agreed among yourselves how you're
23   going to do that.  And if you are having problems, then I
24   will entertain a further conference with you all, but it
25   seems to me as though at this point in time, with the end of
```

File: 3H28AXI1.V1                CondenseIt™                2:00 p.m. Telephone Conference

Page 5

1  discovery looming, it's time for you all to get in gear and
2  get this done.
3        With respect to these folks who are not in this
4  country, I just want you to know that it is my belief, and
5  I'm not sure what I heard, if these individuals are employed,
6  whether they're directors or officers or anything else,
7  they'd better make themselves available not necessarily in
8  this country but someplace. If they're not in any way
9  related, then that is a problem for the person who wants to
10 take their deposition.
11       With respect to the software, I don't know,
12 apparently the software has been produced. Axiohm intends
13 to supplement all of these things by the end of this month,
14 which after all is Friday. With respect to the prior art, I
15 want to make sure Axiohm understands, I don't care whether
16 it's literally reproduced, but if it's not identified by
17 April 18, it will not be used or usable in summary judgment
18 or at trial. So you had better make sure whatever prior art
19 you intend to rely on through the case that you identify it
20 before the end of discovery.
21       Likewise, willful infringement. If in fact,
22 Axiohm, you intend to rely on the opinions of counsel,
23 generally this is not an issue that we address at the end
24 of discovery, you have to let Epson know by March 30.
25 Otherwise, you will be precluded from using that, and that

Page 6

1  will give an opportunity for discovery before the end of
2  discovery comes about. So March 30, which is after all,
3  what is it, Friday, is your deadline. This is something that
4  should have been addressed prior to this.
5        With respect to the damages, the complaint about
6  damages, what can I say when a party says we've produced
7  related materials? All I can say is if there are outstanding
8  contentions, they have to be replied to.
9        I think that addresses everything. If you all
10 are having problems with the depositions, you let me know.
11 We'll schedule something next week.
12       Is there anything further we can address?
13       MS. TANGUAY: No. Thank you, your Honor.
14       THE COURT: All right. Thank you. Good-bye.
15       MR. RHO: Can we ask the court reporter for an
16 expedited transcript of this judge's decision?
17       THE COURT: Well, if you identify yourself, I
18 will order it.
19       MR. RHO: Yes. Jai Rho. And I would like that
20 sent.
21       THE COURT: All right. Thank you.
22       (Telephone conference ended at 3:05 p.m.)
23
24
25

Page 5 - Page 6

Axiohm v Epson, et al., Civil 00-420 (SLR)

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TIEGEL MANU CO.,                    )
                                    )
              Plaintiff,            )
                                    )
        v.                          )        Civil Action No. 84-483
                                    )
GLOBE-UNION, INC.,                  )
                                    )
              Defendant.            )
                                    )


                                    Wilmington, Delaware
                                    October 5, 1984
                                    2:25 o'clock p.m.


BEFORE:

         THE HON. WALTER K. STAPLETON, Chief Judge


                A P P E A R A N C E S

For Plaintiff:

         COLLINS J. SEITZ, JR., ESQUIRE
         Connolly, Bove, Lodge & Hutz
         FRANK J. BENASUTTI, ESQUIRE
         C. FREDERICK KOENIG, III, ESQUIRE

For Defendant:

         MARY B. GRAHAM, ESQUIRE
         Morris, Nichols, Arsht & Tunnell
         GARY CLARK, ESQUIRE [By conference telephone
         JAN WEIR, ESQUIRE [By conference telephone]

2

[The following occurred in Chambers:]

THE COURT:  We are going to have  one participant from California whose name is --

MS. GRAHAM:  Gary Clark.

MR. SEITZ:  Your Honor, if this is a good time for you, I'd like to move to admit Mr. Frank Benasutti and Mr. Fred Koenig from Benasutti & Murray in Philadelphia pro hac vice for this case.

THE COURT:  All right.  Happy to grant your motion.  Welcome back, gentlemen.

MR. BENASUTTI:  Thank you, your Honor.

MR. SEITZ:  Thank you, your Honor.

[The Court then turned on the telephone conference box.]

THE COURT:  Mr. Clark, are you on the line?

MR. CLARK:  Yes, your Honor.

THE COURT:  Can you hear us all right?

MR. CLARK:  Yes, I can.

THE COURT:  All right.  I believe it is your application.

MR. CLARK:  Yes, sir.  May I, with permission, your Honor, put you on the speaker phone so I can have my hands free?

THE COURT:  Certainly.

3

MR. CLARK: Thank you.

Your Honor, I have with me here in the office Jan Weir, an associate in our firm, who is of record in the case.

Your Honor, we brought this motion because we think that the nature of the discovery that they have sought is more properly conducted by interrogatories.

When we received the notice, I called personally Mr. Volpe, of Mr. Benasutti's firm, and explained the situation to him and suggested that we would be very willing to answer interrogatories directed to essentially the same subject. He said he'd get back to me the next day. When he did, he said discovery by interrogatory wasn't acceptable because they needed the discovery before the preliminary injunction hearing.

I then offered to turn interrogatory answers around in very short order, within a matter of days, so that he would have them before the preliminary injunction hearing, but I was told that that solution wasn't acceptable, which was rejected out of hand without an explanation.

We are now told that the discovery that they need is urgent for the preliminary injunction hearing. I don't think that this argument can be taken very seriously.

4

Your Honor may recall that they were originally prepared to have their preliminary injunction motion heard within one week's time and in such short order that they obviously did not leave any time for discovery before it could be heard, and when they were taking that position, they had our answer in hand and they knew what our denials were. So the position they are taking now that there are denials in the answer which raise new matters necessary to be explored on discovery before the preliminary injunction hearing I think simply is not well taken.

I would also note, in connection with their argument, that this is designed to elicit discovery for preliminary injunction, that the deposition notice very mechanically lists each and every denial of our answer to the complaint as an area of inquiry on deposition, without any apparent regard to the relevance of each and every point to their motion.

Category No. 3 is a prime example. They want to know the basis upon which we first sued Tiegel in Los Angeles asserting venue over them there, but that has no relevance to the preliminary injunction motion. And, more than that, it has already been the subject of briefs, affidavits, and a hearing in Los Angeles.

So they are certainly well aware of our

5

position in that regard and do not need the discovery
before the preliminary injunction hearing on an issue such
as that.

We think that there would also be substantial
prejudice to Globe-Union from having to give an oral
deposition on the subjects of the bases for our denials in
the answer, particularly in the time frame in which they
want to take the deposition.

We have made the point that the answer is
outside counsel's work product.  Outside counsel is
uniquely qualified to state the basis for each denial.
Those denials obviously require an application by counsel
of law as facts based upon the facts as counsel understand
them, which is a far different thing from getting discovery
of merely underlying facts after interrogatories have
identified the factual basis and the witnesses and documents
that can support them.

So we think that the deposition creates a
risk of undue waiver of privilege and work product and that
it would be more appropriate for them to take it by
interrogatory.

I would also like to make the point that the
deposition comes at a time that could not be more disruptive
for both parties.  During the week that they have noticed
the deposition to take place we have had to spend substantial

6

time preparing our reply brief on the transfer motion
that is before your Honor.  Today we are filing an
opposition to a stay motion that they had on file in
San Francisco in connection with that action.  On Monday,
we have due our opposition to the preliminary injunction
motion.  And on Tuesday or Wednesday we have an extensive
status report due in San Francisco for Judge Schwartzer.

They have an answer due to our amended
complaint in San Francisco on Monday or Tuesday.  They
have answers due to our interrogatories and document
production requests in San Francisco due on Tuesday or
Wednesday of next week.  They have to put together a
reply to our preliminary injunction motion, and they have
to assist us in putting together the joint status report
next week for Judge Schwartzer.

So it seems to me that there are so many
things going on that we can't possibly also squeeze a
deposition in.

In that regard, I'd like to conclude my
remarks by saying that it is unique in my experience that
counsel will file a motion such as this motion for prelimin
injunction, seek a hearing in very short order, and then ge
their memo and supporting affidavits on file, and then come
to the Court and take the position that the motion isn't
adequately supported without additional discovery, discover

7

1  which would only take place now after our opposition to their

2  motion is in.

3          It seems to me that the more appropriate

4  relief that they should be getting here is a postponement

5  of their preliminary injunction motion so that all parties

6  can have adequate time and we of course can have an

7  adequate opportunity to respond in writing to whatever

8  facts they think they might uncover in discovery and

9  utilize in supporting their preliminary injunction motion.

10          Thank you.

11          THE COURT:  All right.  Is it Tiegel -- is

12  that the way your client's name is pronounced?

13          MR. BENASUTTI:  Yes, your Honor.

14          THE COURT:  Who wants to speak on behalf of

15  Tiegel?

16          MR. BENASUTTI:  I will, your Honor.

17          I have a great deal of difficulty with

18  recounting of all of those facts.  I think the record will

19  show that at least the one that seemed to be most important

20  to them is that we filed the motion before their answer

21  came in in this case.  We filed the motion because our

22  client in my belief is being grievously injured, right at

23  this very moment --

24          MR. CLARK:  Your Honor, I'm afraid we can't

25  hear at this end.

THE COURT:  All right.  Do you want to spea
up, Mr. Benasutti?

MR. BENASUTTI:  I believe that we are being
grievously injured by --

MR. CLARK:  Hello --

THE COURT:  Do you want to speak up?

MR. BENASUTTI:  We're trying to speak up,
but if you make any noise on the other end, the problem is
that these boxes cut out the voice.

MR. CLARK:  I understand that.  We have not
been making any noise, but we haven't been able to hear
anything for about the last 30 or 45 seconds.

MR. BENASUTTI:  All right.  I am wondering
if I could pick up a telephone and talk into that and then
talk to the Court.  In that way I wouldn't have to shout
at the Court.  Is that possible?

[The Court then moved the telephone
conference box.]

MR. BENASUTTI:  Can you hear me now?

MR. CLARK:  Yes, I can.

MR. BENASUTTI:  All right.  They moved the
speaker a little closer.  I'll start from the beginning.

First of all, we didn't have their answer,
your Honor, when we filed our motion for a preliminary
injunction.  We brought this suit to stop them from suing us

9

1   and to stop them from suing our customers, which is

2   something they are doing right now, and therefore we want

3   action right now, and I think we are entitled to that

4   action as quick as possible.  So we brought the motion.

5        We then got their answer.  Now, in the

6   answer they have made denials.  The denials are to the

7   very same things that we brought the motion on.  We

8   brought the motion on the complaint, on the substance of

9   the complaint.  If they have made denials, the usual course

10  of discovery is to take depositions to find out what the

11  substance of those denials is, what are the facts.

12       Counsel just mentioned that he has a factual

13  basis from which lawyers raise legal conclusions.  We are

14  entitled to the facts of those things.  The fact of the

15  matter is, interrogatories are generally used to identify

16  people and to identify things or documents, which you then

17  go through when you get document discovery, and then down

18  the line you start taking depositions.  We want to avoid

19  all that.  We want to avoid all this lawsuit.  All we are

20  saying is, if you have facts that you are going to bring

21  to this Court's attention at next Monday's hearing, we have

22  a right now to find out what they are because we are out

23  front with what our position is and they have no business

24  covering up what their position is.

25       The purpose of this motion, as I see it, is

1

simply to keep us from getting those facts before the hearing. If that is true, then it is simply a motion interposed for delay because they have indicated in their motion that they are going to supply us with all the answers we need.

All we have to do is ask every conceivable question in the world and they are going to be able to answer it by the end of next week, from what I hear now. That is the first time, incidentally, that we have heard that, but let's assume that it is true.

They are going to answer every question, and every question has to be based on everything we know now. In other words, we find out a fact and I guess we'd have to write them another question, and then if we find another fact, then we'd have to write them another question. It is an impossible proceeding to get done.

The way to handle that is, you bring in a witness and you have him testify. Unfortunately, a lot of attorneys -- and it is all of our fault -- consider that the Federal Rules are an apple that you can take one bite out of before they get stopped.

I would submit to this Court that this client has already had their one bite this year. In the co-pending case that I mentioned in my papers, involving two of the same patents that are in suit, which is pending

11

1  now in the Southern District of Indiana, there was an

2  Order entered by Judge Sarah Evans Barker earlier this

3  year requiring them to comply with Rule 30[b][6] and to

4  provide a witness and to prepare that witness to fully and

5  completely answer questions posed at a deposition. And the

6  Judge went on to say, "Further, Johnson is now deemed on

7  notice as to the specific areas in which the defendants will

8  be making discovery inquiries when the deposition is

9  rescheduled." She said that the Court views their past

10  conduct in this matter to be such as to warrant a further

11  reminder of the sanctions available for the abuse of

12  discovery proceedings.

13        Here they are again with the same kind of

14  tactic. They are not going to produce a witness. The only

15  witness is -- if you look at all the different papers that

16  have been filed, the only place you will see a witness

17  appear is on paper -- it is as mysterious as it is

18  ubiquitous, because every time a paper is filed here,

19  well, the witness is over here. If you file a paper out

20  there, well, the witness is over there. The latest paper

21  they filed they don't even identify the witness and then

22  say to the Court, "Pay for him to come to the deposition."

23  We don't know if he is here in Wilmington. We don't know

24  who he is.

25        The purpose of 30[b][6] and the purpose of

laying out, as my colleague, Mr. Koenig did in a very detailed and narrow attachment to notice a deposition, is saying, this is the specific question or the specific issue that we want to talk to that witness about.

This is not a broad general 30(b)(6) covering every aspect of the litigation. We want to go down the little areas where they have made denials of specific things that we have raised, and I think we are entitled to do that, and I certainly hope that the Court would want to have answers to that sort of thing at the time that the Court is ready to rule on a motion for preliminary injunction.

A motion for a preliminary injunction is not like a TRO. We are not coming in here and taking a swat at it. We are saying that they should be put out of business on this lawsuit by laches and estoppel, and they are saying that their conduct up to now doesn't warrant that, and I think we are entitled to investigate into what the basis for that is.

Now, we laid out in our brief in support of our motion for preliminary injunction a very detailed statement of each and every paper that we are relying on to support our motion. We said, On such and such a date so-and-so wrote so-and-so, and that sort of thing. And I think we are entitled to see what their position is before we go to

1:

1  Court.

2         THE COURT: All right. Mr. Clark?

3         MR. CLARK: Yes, your Honor. We're not

4  trying to deny them access to the underlying facts of which

5  they are speaking. In fact, that is the reason we offered

6  to answer interrogatories. That offer was specifically

7  made by me to Mr. Volpe, who I understand is not there,

8  unfortunately, and it was rejected. To think that we are

9  now going to go ahead on a preliminary injunction motion

10 and try to conceal from the Court the basis for our denials

11 to their answer -- or denying the relief they have asked fo

12 in the preliminary injunction motion is really untenable.

13         Our opposition to that motion is due on

14 Monday. We have prepared affidavits, exhibits, and of

15 course our legal memorandum in opposition to that

16 motion. It will be filed on Monday, and counsel at that

17 point, as is proper under the local rules of the Court,

18 will be apprised of everything upon which we rely in

19 opposition to the preliminary injunction motion.

20         So it is not the fact that he is going to

21 go into the hearing on the preliminary injunction motion on

22 Monday naked, totally unadvised of the basis of our

23 denial.

24         THE COURT: Does anybody else want to say

25 anything?

14

1          [No response.]

2          THE COURT:  I view the noticed discovery

3    as being contention discovery.  It has been the consistent

4    position of this Court that a lay person shouldn't be

5    required to formulate a party's contention in response to

6    deposition questioning and that not even a lawyer should

7    be required to formulate trial strategy and contentions in

8    immediate response to questions on deposition.  And it has

9    accordingly been the consistent practice to require that

10   contention discovery, which is clearly permissible and

11   very constructive in narrowing the issues, but to confine

12   it to interrogatories to a party, period.

13          Now, we appear to have a time problem here,

14   although I am not sure whether we have a time problem or

15   not.  When did you say you are prepared -- what did you say

16   your turnaround time on interrogatories would be, Mr.

17   Clark?

18          MR. CLARK:  Your Honor, of course it would

19   depend on the number and the scope of them, but I think that

20   within a matter of -- if they were served on us, for

21   instance, on Monday, I think by Thursday or Friday we could

22   probably have answers for them, assuming that they are of a

23   scope limited to the issues raised on preliminary injunction

24          MR. BENASUTTI:  Your Honor, I might just add

25   one thing to this, and I think I covered it in my papers,

15

but as I understand what he is saying is -- and you
mentioned the word "lay person", and I would agree with you
as to the lay person -- I was asking a lay person only for
factual positions.  For example, their Mr. Burkhart and
other people who took affidavits had factual contentions,
and it is those things I think that I was entitled to.

But if their contention is that outside
counsel is in the possession -- and on page 9 of their
brief they say that he is in possession of all the
information with respect to what their positions are,
including what was in their mind when they did certain acts,
then it seems to me I am entitled to take the deposition
and in fact call as a witness whatever counsel that was,
because I think that when you set up the mind of counsel
as being your defense -- you know, it is just like an
advice of counsel defense; when you put up an advice of
counsel defense, you are entitled to get all of the
attorney-client privilege documents and take that counsel's
deposition.

So I think there are maybe two questions,
if we bifurcate this thing.  First of all, if they have
facts that they are relying on, then a fact witness should
be provided.  But if they are saying that it is contentions
of counsel just on legal issues, that is one thing, but if
it is legal advice that they are hiding behind, then I thin

16

that we are entitled to take his deposition, or even call

him as a witness at our preliminary injunction hearing.

THE COURT: Let me express what I assume was

implicit, and that is, I'm not ruling on anything other

than the discovery that has been proposed and which is the

subject of the protective order. It well may be that

Tiegel has the right to take the deposition of one or more

lawyers. There are cases and issues where it is appropriate

to take the deposition of lawyers as fact witnesses. I am

not taking any position with respect to anything other than

the protective order that is before me, and I am telling

you that as far as the subject matter as currently cast in

the notice of deposition, it is cast in my opinion as

contention discovery, and if you want to ask those kinds of

questions, I'm going to require that you do it by

interrogatory. And I think certainly, under the circum-

stances, an offer to provide responses in three or four

days seems to me to be a reasonable undertaking. If that

means you want to move back the current argument date on

your application for a preliminary injunction, I certainly

will be happy to consider that.

MR. BENASUTTI: We want to go ahead with

that.

THE COURT: Okay.

MR. BENASUTTI: My only position would have

17

been that we really -- the use of the word "basis" I guess
is what seems to be troubling the Court, and what we
wanted was the factual basis. We don't care about their
contentions. They are already set out in their answer.
We know what their contentions are. I don't really have
too much to ask him in that regard. His contention is he
didn't do it, but I want to know what the basis for that
is, and that means, what is the factual basis for it.
If you interpret the word "basis" to mean "contention", I
already know what it is. He says -- his contention is that
he denies the allegation. He contends that he didn't
do it. So I was using the word "basis" in this context,
and I would limit it in any deposition that I got to factual
basis, not legal contention. I am not interested in his
legal contentions. They are already a matter of record.

         So I would again say to the Court, if we
want to file interrogatories as to legal contentions, maybe
we can think of some, but that certainly wasn't our object
in preparing this notice of deposition to use the word
"basis" to mean "contention". Basis meant basis in
fact.

         In fact, I think the notice says that
somebody is going to testify as to facts. I think it says
that, testify as to facts.

              THE COURT: Well, if contention

18

interrogatories are filed on Monday, I will require a
response by service -- I am talking on the other side --
by 5:00 o'clock on Thursday.  If fact discovery is noticed,
I will look at it and we will see whether it is
appropriate or not appropriate.  And we will keep the
5:00 o'clock Monday, October 15 time for presentation of
both the motion for a preliminary injunction and the
transfer motion.  Is that right?

        [Counsel indicate in the affirmative.]

        THE COURT:  All right.  Thank you.

        MR. CLARK:  Your Honor --

        THE COURT:  Yes.  Is there anything else we
can profitably address?

        MR. CLARK:  Your Honor, in connection with
your Order allowing them to serve interrogatories, could it
require that their service of them be in such a manner that
it gets it in the hands of all counsel on Globe-Union's
side of the case on Monday, including the house counsel in
_____ ___ __ is listed -- I guess he is not listed on
_____, but I can provide that identity to counsel
for Tiegel.

        MR. BENASUTTI:  I wonder if we could have
the identity of this witness who is going to testify on
your behalf, the one that is mentioned in your brief.
Could we have the identity of that person?

19

1          THE COURT:  Could you hear that?

2          MR. CLARK:  I didn't, your Honor.

3          MR. BENASUTTI:  I wonder if we could have

4    the identity of the person listed --

5          MR. CLARK:  Joseph Gofman.  He's on the

6    pleadings of the San Francisco action.

7          MR. BENASUTTI:  Excuse me.  You didn't let

8    me finish the question.  I know he is your in-house counsel

9    in Milwaukee, along with John Ryan.  I wonder if we could

10   have the identity of the person who is otherwise unidentified

11   in your brief who is going to testify with respect to the

12   matters raised by our motion for a preliminary injunction.

13         THE COURT:  I am  not sure I understood the

14   question.

15         MR. BENASUTTI:  The question is, your

16   Honor, that they mention in their motion for a protective

17   order that they would have to bring a certain witness in to

18   testify in response to 30[b][6], and I want to know who

19   that person is because, as your Honor has indicated, we

20   could make application to take fact information from that

21   person, and I'd like to know who he is and where he is,

22   because we might want to take his deposition in the

23   meantime as to the facts.

24         THE COURT:  I don't think you can ask

25   somebody to designate a 30[b] witness when you don't know

1   what the subject matter is. So when you -- pardon me; if

2   you can't hear, please sing out, Mr. Clark.

3           MR. CLARK: All right, I will. We didn't

4   hear the last bit.

5           THE COURT: What I said was that it turns

6   out that Mr. Benasutti was asking you to designate your

7   30[b] witness as to a hypothetical deposition that he is

8   considering taking apparently in some fact areas, and I

9   told him that I didn't think I could in fairness require you

10   to designate a witness until such time as the fact area to

11   be explored in such a deposition was identified.

12           MR. BENASUTTI: I guess I made myself

13   unclear and I apologize to the Court. I was asking for the

14   identity of the witness which they mentioned in their

15   brief. They mentioned a witness. All I want is the

16   identity of the person they had in mind, not the identifying

17   of somebody who is hypothetical. This is a person that

18   they mentioned in their brief as being in existence. And

19   all I'd like to know is who he is or she or them.

20           THE COURT: There isn't going to be the

21   deposition that is the subject matter of these papers, and

22   I don't want to spend time discussing something that is not

23   going to come to pass.

24           Is there anything else we can profitably

25   discuss?

MR. CLARK: No, your Honor, I think not.

THE COURT: Okay. Thank you.

MR. CLARK: Thank you.

MR. BENASUTTI: Thank you, your Honor.

[Hearing concluded.]

- - -

# Exhibit 5

| Court Hearing | CondenseIt™ | Tuesday, August 2, 2005 |

**Page 1**

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          IN AND FOR THE DISTRICT OF DELAWARE
 3                    - - -
 4   MCKESSON INFORMATION SOLUTIONS  :  CIVIL ACTION
         LLC.,                       :
 5               Plaintiff           :
                                     :
 6           vs.                     :
                                     :
 7   THE TRIZETTO GROUP, INC.,       :
                                     :
 8               Defendant           :  NO. 04-01258 (SLR)
 9                    - - -
10                   Wilmington, Delaware
                     Tuesday, August 2, 2005
11                   4:50 o'clock, p.m.
12                    - - -
13   BEFORE: HONORABLE SUE L. ROBINSON, Chief Judge
14
15   APPEARANCES:
16
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM
17   BY: MICHAEL A. BARLOW, ESQ.
18                   -and-
19
20
21
22
23                   Valerie J. Gunning
                     Official Court Reporter
24
25
```

**Page 2**

```
 1   APPEARANCES (Continued):
 2
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM
 3   BY: JEFFREY G. RANDALL, ESQ.
         (Palo Alto, California)
 4
             Counsel for Plaintiff
 5
 6   MORRIS, NICHOLS, ARSHT & TUNNELL
     BY: RODGER D. SMITH, ESQ.
 7
 8           -and-
 9
     GIBSON, DUNN & CRUTCHER LLP
10   BY: MICHAEL SITZMAN, ESQ.
         (San Francisco, California)
11
12           Counsel for Defendant
                    - - -
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

1             PROCEEDINGS
2
3        (Proceedings commenced in the courtroom,
4   beginning at 4:50 p.m.)
5
6
7        THE COURT: Good afternoon, counsel. I take
8   it the fact that you are here means that there must be
9   some disputes?
10        MR. SITZMAN: Actually, your Honor, to sort
11   of jump ahead, we've been trying to find out for a week
12   and a half from plaintiff what disputes they think are
13   at issue. We wrote them about 12 days ago and said that
14   we ought to be able to obviate the need for a discovery
15   conference because there's nothing at issue between us
16   and, as of Friday, we still had no indication from them
17   what they planned on raising.
18        I got an e-mail Thursday night saying that
19   we will try in the next few days to get you an itemized
20   list and I have yet to see any kind of indication from
21   them as to what they intend on raising.
22        THE COURT: All right. Well, then you and I
23   are both in the same boat.
24        All right. Let's hear from plaintiff's
25   counsel, then, as to what it is believed to be problematic

**Page 4**

1   here.
2        MR. RANDALL: Your Honor, Jeff Randall,
3   representing Plaintiff, McKesson, with Skadden Arps.
4        I'm glad to hear that there are no issues
5   that TriZetto has with McKesson. We do have three
6   issues that we'd like to raise with the Court.
7        We did respond to the inquiries by TriZetto
8   and indicated that we had been engaged in a whole series
9   of letters with them regarding these three issues and
10   that we would raise these issues.
11        The first issue is TriZetto's continued
12   failure to comply with your Honor's May 19 order
13   requiring them to adequately identify the anticipatory
14   art that they are relying on and the art that they rely
15   on of their obviousness argument.
16        The second issue is their failure to provide
17   a 30(b)(6) witness or any witness for us in response to
18   two 30(b)(6) notices that we served in early July.
19        And the third issue is their failure to
20   provide adequate claim construction, as required by the
21   Court's scheduling order.
22        With respect to the first issue, your Honor,
23   let me give you some background. We served our
24   Interrogatories on TriZetto in December and this case
25   involves a patent which they have known about for years.

Court Hearing                    CondenseIt™                    Tuesday, August 2, 2005

**Page 21**

1     And so I guess I am hoping that we will hear
2 that document production is now finished.
3     And I think that's it.
4     THE COURT: All right. Before I hear from
5 Mr. Randall again, let me handle the easiest issues first.
6     That is with respect to the depositions.
7 Number one, I have never thought contention Interrogatories
8 are appropriately responded to via 30(b)(6) depositions. I
9 still maintain that position.
10     So if you ask for depositions concerning the
11 basis for a defense, that is a contention interrogatory.
12 You can ask who has knowledge and then you can take
13 individual depositions, but I don't believe that a
14 corporate deposition is appropriate for contention.
15     And may I ask of the six topics, there was an
16 indication from Mr. Randall that at least Topic No. 5,
17 there was agreement that that was not a contention
18 interrogatory; is that correct?
19     MR. SITZMAN: That is correct.
20     THE COURT: All right. With respect to the
21 outstanding contention interrogatory, the outstanding
22 30(b)(6) deposition notices and efforts to get sanction
23 depositions by a week from today, and that is by August 9,
24 2005, by 5:00 o'clock, I will give you 15 minutes less
25 than a week, you are to exchange the names of the folks

**Page 22**

1 who will respond to all of the outstanding, as of today,
2 30(b)(6) notice depositions. You will provide to opposing
3 counsel the dates within the next 30 or -- I guess 30 days.
4 I don't know whether it should be 30 or 60 days that these
5 folks could be available. You will provide to opposing
6 counsel where they might be made available, so that you
7 all can coordinate efficiently the taking of these
8 depositions.
9     So that's by a week from today. Whoever fails
10 to comply with that will be brought to my attention and
11 we'll deal with whatever sanction there needs to be dealt
12 with. But it seems to me that, after all this time, you
13 all and your clients should have been thinking ahead and
14 getting this information together.
15     With respect to the Interrogatory about the
16 prior-art references, I am satisfied at this point with
17 the explanation provided by TriZetto. And that is that,
18 at this point, they only intend to use the 19 that are
19 charted, that the remaining have been identified as
20 relevant, but not as prior-art references that will be
21 used affirmatively at trial.
22     And I expect that if any are added, there
23 will be reason why they weren't added now as opposed to
24 later and that they will be charted adequately when they
25 are added.

**Page 23**

1     That leaves me with claim construction. And
2 I'm not sure I can respond to that without really looking
3 at the claim terms and construction and I have not heard
4 Mr. Randall on that. I do want to hear Mr. Randall on that.
5     And with respect to -- well, I guess I will
6 just hear also from Mr. Randall about whether, in fact,
7 they had provided the earliest version of the software
8 that they have in their possession or not.
9     So I think those are two issues that are still
10 left to be addressed by me.
11     And, Mr. Randall, I would like to hear your
12 response to those two issues.
13     MR. RANDALL: Sure. One clarification. That
14 is that our discovery cutoff is the 16th of September, so
15 I think that it would make sense to have all the
16 depositions at least scheduled by 30 days following the --
17     THE COURT: All right.
18     MR. RANDALL: And one other issue with respect
19 to their interrogatory claim chart. I would ask that they
20 be ordered to provide, at least as to those 19 that they
21 are relying on, identify where within the references
22 there's a motivation to combine the references that they
23 have asserted. So, for instance, for any one given claim,
24 if they are relying on an obviousness combination of six
25 references to render invalid based on obviousness one

**Page 24**

1 claim, they ought to identify where in those references
2 there's a motivation to combine the references.
3     THE COURT: Accept that the motivation to
4 combine can come from any place, can't it? It can come
5 from all sorts of different things. It does not
6 necessarily have to come from the references and, quite
7 frankly, I thought that was generally the gist of an
8 expert's report.
9     MR. RANDALL: Well, if they are relying on
10 anything within the documents, at least they should
11 identify that.
12     THE COURT: Certainly. If it's within the
13 documents, it should be identified. If it's not, then --
14     MR. RANDALL: They can do that by the 9th, as
15 well?
16     THE COURT: Yes.
17     MR. RANDALL: Thank you.
18     With respect to the document production, your
19 Honor, I wasn't aware that we're not seeking the most
20 current version. I have not gone through the transcript
21 of the hearing. I wasn't here. But it was my
22 understanding that they were arguing for the current
23 version of the software. But I will look -- we'll find
24 out if they were arguing for it or not. We went through
25 great efforts to get them the current version.

McKesson vs. TriZetto, CA No. 04-01258 (SLR)            Page 21 - Page 24

# Exhibit 6

Tuesday, October 11, 2005

SHEET 1

**1**

```
                    IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE DISTRICT OF DELAWARE
                              - - -
  PHARMACIA & UPJOHN COMPANY,      :  CIVIL ACTION
                                   :
           Plaintiff and           :
           Counter-defendant,      :
                                   :
       v.                          :
                                   :
  SICOR INC., and SICOR            :
  PHARMACEUTICALS INC.,            :
                                   :
           Defendants and          :
           Counter-Claimants.      :  NO. 04-833 (KAJ)
                              - - -
                       Wilmington, Delaware
                Tuesday, October 11, 2005 at 3:00 p.m.
                       TELEPHONE CONFERENCE
                              - - -
  BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

  APPEARANCES:

          MORRIS NICHOLS ARSHT & TUNNELL
          BY:  MARYELLEN NOREIKA, ESQ.

              and

          McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
          BY:  DANIEL A. BOEHNEN, ESQ.,
               JOSHUA R. RICH, ESQ., and
               GRANTLAND G. DRUTCHAS, ESQ.
               (Chicago, Illinois)

          Counsel For Pharmacia & Upjohn
          Company

                                    Brian P. Gaffigan
                                    Registered Merit Reporter
```

**2**

```
  APPEARANCES:  (Continued)


          ASHBY & GEDDES
          BY:  JOHN G. DAY, ESQ.

              and

          SONNENSCHEIN NATH & ROSENTHAL, LLP
          BY:  REID L. ASHINOFF, ESQ. and
               DAVID R. BAUM, ESQ.
               (New York, New York)

              and

          SONNENSCHEIN NATH & ROSENTHAL, LLP
          BY:  JORDAN A. SIGALE, ESQ.
               (Chicago, Illinois)

          Counsel for Sicor Inc. and Sicor
          Pharmaceuticals Inc.



                           - oOo -

                    P R O C E E D I N G S

          (REPORTER'S NOTE:  The following telephone
   conference was held in chambers, beginning at 3:00 p.m.)
          THE COURT:  Hi, this is Judge Jordan.  Who do I
   have on the line?
          MS. NOREIKA:  Good afternoon, Your Honor.  It's
   Maryellen Noreika from Morris Nichols for plaintiff
   Pharmacia; and I have with me, Dan Boehnen and Joshua Rich
   of the McDonnell Boehnen firm in Chicago.
          MR. BOEHNEN:  Also with us in Chicago is Grant
   Drutchas.
```

**3**

1  MS. NOREIKA:  Oh.  I apologize, Grant.
2  THE COURT:  All right.  Who do I have on for
3 Sicor?
4  MR. DAY:  Good afternoon, Your Honor.  On behalf
5 of Sicor, you have John Day from Ashby & Geddes as local
6 counsel; and from the Sonnenschein firm in New York, Reid
7 Ashinoff and David Baum; and from Sonnenschein's office in
8 Chicago, Jordan Sigale.
9  THE COURT:  All right.
10  MR. ASHINOFF:  Good afternoon, Your Honor.
11  THE COURT:  Good afternoon.  Well, by my count,
12 this is the fifth time we're getting together in this case
13 because we have discovery issues.  So this is not a good
14 record, ladies and gentlemen, but we're going to plow
15 through what we've got here.
16  Before we start, however, I have a question
17 for the folks at Sicor, and that is, I got the in camera
18 submission that you sent over.  Did you send a version,
19 redacted, if you thought necessary, of your legal argument
20 to the opposing counsel?
21  MR. ASHINOFF:  Your Honor, what we served on
22 the opposing counsel is a motion that we filed and a
23 privilege log that listed the privilege material that the
24 Court got.  What we served in camera on the Court was the
25 short discussion of the substance of the privileged material

**4**

1 and the actual privileged material.  We did not serve copies
2 of the discussion and description of the privilege material
3 or the actual material on our adversary.
4  THE COURT:  All right.  I need to have you
5 identify yourself for the record.
6  MR. ASHINOFF:  It's Reid Ashinoff.  I'm sorry,
7 Your Honor.
8  THE COURT:  All right.  Mr. Ashinoff, that's not
9 going to cut it.  I'm going to quote to you what I said in
10 our last teleconference on the 19th of September.  Page 24
11 of the transcript:
12  "You can certainly submit your documents in
13 camera and your legal arguments ought to be submitted so
14 that the other side can respond to them."
15  Later on the same page:
16  "In short, you give me the documents but you
17 give your arguments to the attorney side, too, so they can
18 respond unless it's something genuinely extraordinary that
19 you think will get past me; all right?"
20  And what I was trying to communicate there and
21 what I will reemphasize is I'm not going to let you give me
22 legal argument without an opportunity for them to respond to
23 legal argument.
24  MR. ASHINOFF:  Your Honor, I don't think we cite
25 any law at all in the material we submitted in camera.  What

SHEET 9

**33**

1    representation from you folks that you have checked with the
2    folks just named, an affirmation that in fact you have
3    inquired of and heard from these people that there are no
4    lab notebooks belonging to this inventor. And that's all
5    I'm hearing he is asking for. Are you telling me you got an
6    issue with that?
7         MR. BOEHNEN: To me, Your Honor, no, sir. And I
8    understand, just to restate it, I believe he is referring to
9    the Oblon firm, Jake Wood, which is JA Kemp & Co. in the
10   U.K, and --
11        MR. SIGALE: And the Nerviano Consulting firm
12   (phonetic) where many of these inventors found gainful
13   employment.
14        MR. BOEHNEN: -- the people in the Nerviano
15   Medical Sciences Facility as well as Pfizer itself.
16        THE COURT: Right. Okay.
17        MR. BOEHNEN: No, not a problem. We'll be happy
18   to do that.
19        THE COURT: Done.
20        MR. SIGALE: If I might, I'd prefer to have the
21   notebooks.
22        THE COURT: Well, I'm sure everybody would
23   prefer the notebooks were there because then we wouldn't be
24   having this fight at all. So obviously if the notebooks are
25   there, they'll be produced, but if they're not, you will get

**34**

1    an affirmation of what was done to look for them with these
2    other folks, right?
3         MR. BOEHNEN: Yes, sir.
4         MR. ASHINOFF: Your Honor, just to go back half
5    a step. On the foreign patent material that Mr. Boehnen,
6    Ms. Noreika say is now being collected, given that we plan
7    to try to go abroad and take the inventors on November 7th,
8    can we get some date not too late in October when that
9    material will be produced to us so we have the time to
10   assimilate it before we take the inventors?
11        THE COURT: Mr. Boehnen.
12        MR. BOEHNEN: We have already begun making every
13   effort to get that to them as soon as possible. Let's see.
14   We can start a rolling production to them by the end of next
15   week and I think we hope to have it to them by the end of
16   October.
17        THE COURT: All right. End of October it is.
18   And a rolling production is a good idea.
19        MR. ASHINOFF: Thank you.
20        THE COURT: Okay. Then we had the dispute about
21   the 30(b)(6) categories.
22        MR. ASHINOFF: And I'm going to let Mr. Sigale
23   address that, Your Honor.
24        MR. SIGALE: Your Honor, we propounded a number
25   of categories in a 30(b)(6) notice that asks for the factual

**35**

1    contentions underlying legal contentions I need to
2    understand and I thought this was an efficient way to do it.
3    For instance, if we take category number six. We asked for
4    the facts concerning Pharmacia's allegation that licensing
5    and adoption of the ready-to-use formula is evidence that
6    the patent satisfied the obviousness requirement.
7         I need to know what facts those are. That is
8    not a contention request. It is what licensing are you
9    talking about? What adoption are you talking about? What
10   are the circumstances about that licensing? And I thought
11   this was an efficient way to get that. I can go through a
12   couple other categories but I can assure you I'm not looking
13   for legal contentions, that is a waste of time. A lay
14   witness is not going to be able to give that to me, but
15   facts they certainly can.
16        THE COURT: All right. Mr. Boehnen, is this
17   yours again?
18        MS. NOREIKA: Your Honor, this is Maryellen
19   Noreika. I'll respond to this issue.
20        THE COURT: Okay.
21        MS. NOREIKA: Sir, there doesn't seem to be
22   any disagreement that depositions are not the appropriate
23   means by which to obtain contentions. Instead, they're
24   saying, well, we're just seeking facts. But as the topic
25   that Mr. Sigale just read indicates, these are seeking

**36**

1    contentions: All facts regarding Pharmacia's allegations
2    regarding copying, commercial success, failure of others.
3    There is a topic asking for the data Pharmacia contends
4    shows secondary considerations and the conclusions a person
5    skilled in the art would draw from that data. There is a
6    topic asking for a witness to testify about Pharmacia's
7    response to a contention interrogatory on secondary
8    considerations.
9         THE COURT: Okay.
10        MS. NOREIKA: I mean the wording of these
11   topics.
12        THE COURT: I think I have your position. I
13   have other folks who need my attention at 4:00 o'clock so
14   let me tell you, having read this, what my impression is.
15        I think there is some good force to the argument
16   being made by Pharmacia that the inserting of the word
17   "facts" doesn't make this less of an effort to get at what
18   is essentially the legal position of the party, although you
19   may get the benefit as well of saying, well, these are the
20   pieces of specific evidence.
21        So in the first instance, and on an expedited
22   basis, not a 30-day turnaround, if you want the chance to
23   answer these as contention interrogatories, I'm going to
24   direct that you accept them as such and you answer them
25   forthwith. You know, the sort of thing that you get a

SHEET 10

**37**

1  couple of weeks to respond to.
2  And then if you folks on the Sicor side want to
3  do some follow-up deposition discovery, targeted at
4  inquiring about specific facts that are revealed in the
5  context of these interrogatory responses, you're free to
6  do that.
7  I take the point that Pharmacia is making here,
8  which is it's so broadly worded, I can't help but really be
9  a circumstance where somebody is asked to know every fact
10  pertaining to every contention and that's a little bit much
11  to put on a deponent.
12  So that is the resolution to that. You want to
13  treat them as contention interrogatory attorneys. Done.
14  Answer them in two weeks.
15  And then if you have some follow-up and more
16  targeted and specific 30(b)(6) effort you want to make,
17  Sicor, you follow up on it that way.
18  MR. ASHNOFF: Thank you, Your Honor.
19  THE COURT: Now, let me tell you one last thing.
20  And this is for you, Mr. Ashinoff, in the discussions that
21  you are going to be having with your client, to the extent
22  again that this is helpful.
23  And again, we're treading here carefully and
24  I'm very careful when we talk about the attorney-client
25  privilege. I want to assure you I have not made lightly

**38**

1  the decision I made about how to approach the bifurcation
2  request. To the extent it's helpful in your discussing
3  with your client my understanding of the Knorr opinion, I
4  view Knorr-Bremse as saying no adverse inference can be
5  drawn from either failing to get an opinion or declining to
6  produce it; that you are entitled to get your opinion and
7  to stay silent about it.
8  Viewing it that way, I have never yet heard
9  anybody make a reasoned argument to me why it could be
10  put before a jury after the Knorr-Bremse opinion that an
11  opinion was received but not tendered. And in the absence
12  of that, I'm inclined to think there probably isn't a
13  reasoned argument. That the only reason for putting it
14  in front of a jury would be so they draw an adverse
15  inference, which with what Knorr-Bremse says could not
16  happen.
17  So I give that to you as my best reading of
18  Knorr, in the absence of people having really been able to
19  put it forth, but I think it only fair, since people are
20  trying to grope around and make a decision, that they grope
21  a little less blindly. I hope that is helpful to you.
22  MR. ASHINOFF: It is, Your Honor. And it
23  actually comports with literally a 100-year old doctrine
24  in federal law in other appellate courts to the extent of
25  saying that to force somebody to assert the privilege in

**39**

1  front of a jury is reversible error and that comports with
2  what Your Honor is saying.
3  THE COURT: Okay. Well, I thank you for your
4  time today. I hope it has been helpful in getting some
5  things worked out. Let me tell you real quickly what I'm
6  looking for as a date in February because this is going to
7  appear in a revised scheduling order that we'll put out.
8  I'm going to see you folks for argument on February 3rd
9  instead of January 19th. That's a Friday. All right?
10  MR. BOEHNEN: Your Honor, one quick point for
11  Pharmacia.
12  THE COURT: Yes.
13  MR. BOEHNEN: Can we have a new date when our
14  briefs in opposition to bifurcation will be due? I would
15  suggest two weeks after they produced papers to us if they
16  chose to rely upon them.
17  THE COURT: Mr. Ashinoff, you're fine with that,
18  I assume.
19  MR. ASHINOFF: Yes, as long as Mr. Boehnen
20  doesn't in the interim try to put my witness in the chair
21  and force us to go through all kinds of contortions about
22  privilege.
23  THE COURT: Well, I'm sure everybody wants to be
24  efficient here, or at least I would like to think so.
25  Mr. Boehnen, you take that point, I'm sure.

**40**

1  MR. BOEHNEN: Yes, sir.
2  MR. ASHINOFF: Your Honor, one last comment on
3  what Your Honor last said, and I apologize for this.
4  This law firm has an annual weekend once a year
5  where it gathers its partners and their spouses and et
6  cetera and it happens to be February 1st through 4th of
7  2006.
8  THE COURT: Okay. That is enough said. I will
9  not trample on a firm tradition. If it's the 1st through
10  the 4th, then I'm shifting you guys to the next day I can
11  give you. And I think it's, yes, the next day I can give
12  you is the 9th and that's when I will set you down. We'll
13  do this at 10:00 a.m. on February 9th.
14  Can you do that, Mr. Boehnen?
15  MR. BOEHNEN: Yes, sir.
16  THE COURT: Okay.
17  MR. ASHINOFF: Thank you very much, Your Honor.
18  MR. SIGALE: Your Honor, I'm sorry. This is
19  Mr. Sigale. We left open the claim construction dates. You
20  were suggesting December 12th for the opening brief. The
21  opposition brief would be due?
22  THE COURT: It will follow the ordinary course:
23  Two weeks for answer, one week for reply.
24  MR. SIGALE: Right, which would be the 26th of
25  December; and inasmuch as I don't observe Christmas, I would

# Exhibit 7

CONFIDENTIAL EXHIBIT