```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

RELIANT PHARMACEUTICALS, INC.,   :
                                 :
          Plaintiff,             :
                                 :
     v.                          :  Civil Action No. 06-774-JJF
                                 :
PAR PHARMACEUTICAL, INC.,        :
                                 :
          Defendant.             :
```

John M. Desmarais, Esquire; Gerald J. Flattman, Jr., Esquire; and Christine Willgoos, Esquire of KIRKLAND & ELLIS LLP, New York, New York.
Jack B. Blumenfeld, Esquire and Maryellen Noreika, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

John B. Harris, Esquire and Mary Margulis-Ohnuma, Esquire of STILLMAN, FRIEDMAN & SHECHTMAN, P.C., New York, New York.
Josy W. Ingersoll, Esquire; Karen L. Pascale, Esquire and Karen E Keller, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP.

Attorneys for Defendant.

**O P I N I O N**

April 23, 2008
Wilmington, Delaware.

**Farnan, District Judge.**

Pending before the Court is the Renewed Motion For Disqualification Of Frommer Lawrence & Haug LLP (D.I. 86) filed by Plaintiff Reliant Pharmaceuticals, Inc. ("Reliant"). For the reasons discussed, the Court will deny the Motion.

## I.   PARTIES' CONTENTIONS

After the Court provided Reliant with an opportunity to conduct discovery, Reliant filed this Renewed Motion requesting the Court to disqualify the law firm of Frommer Lawrence & Haug LLP ("Frommer Lawrence") from representing Defendant, Par Pharmaceutical, Inc. ("Par") in this patent infringement action filed by Reliant against Par for infringement of U.S. Patent No. 5,681,588 ("the '588 patent"). Between June 2003 and October 2003, Frommer Lawrence, including its partners Edgar Haug and Andrew Berdon, represented Reliant in connection with its acquisition of Rythmol® and the '588 patent from Abbott. Reliant contends that Frommer Lawrence served as its "due diligence" counsel during this transaction and assisted Reliant in evaluating the intellectual property concerning Rythmol® and Rythmol® SR (collectively, Rythmol® SR"), including such topics as: (1) review of the draft patent assignment and the Asset Purchase Agreement ("APA"), specifically advice concerning deficiencies in the intellectual property representations and warranties in the APA, advice not to include a reservation of

1

manufacturing rights in the patent assignment agreement because of the potential concern over clouding the nature and scope of Reliant's ownership rights and advice regarding additional warranties that Reliant should obtain from Abbott; (2) whether Reliant could file additional patents concerning the technology; (3) "how difficult it will be for a generic to demonstrate bioequivalence in order to get its ANDA approved;" (4) the expected market exclusivity Reliant might have for Rythmol® including when a generic might launch and whether Reliant could sue a generic under the Hatch-Waxman Act; and (5) a search concerning the relevance of prior art patents to the Rythmol® formulation.  (D.I. 90, Cortesi Decl. at Ex. 4).  As a result of Frommer Lawrence's representation, Reliant also contends that Frommer Lawrence had access to confidential information, including information concerning the development, composition and manufacturing of Rythmol®.

In November 2004, Frommer Lawrence began its representation of Par with respect to Par's ANDA for a generic version of Rythmol® SR, and Par's related Paragraph IV Certification regarding the '588 patent.  By its Motion, Reliant contends that Frommer Lawrence's current representation of Par is materially adverse and substantially related to its prior representation of Reliant.  Reliant contends that Frommer Lawrence cannot cure this conflict of interest through the use of an "information wall,"

because the wall, if indeed erected, was erected too late and is ineffective.  As a result of this alleged conflict of interest, Reliant contends that Frommer Lawrence should be disqualified from serving as Par's counsel.

Par contends that Frommer Lawrence's representation of Reliant four years ago does not warrant disqualification because the representation was limited both in time and scope and was unrelated to the infringement, validity, and enforceability of the '588 patent.  Par contends that Frommer Lawrence's representation of Reliant in connection with the acquisition of Rythmol® was primarily through a single attorney, Andrew Berdon, who has since left the firm and took Reliant with him to his new firm.  Par points out that its prior representation of Reliant amounted to less than 20 billed hours by legal and non-legal personnel in the firm.  Par also contends that Frommer Lawrence never rendered any legal opinions to Reliant on issues related to the '588 patent, and Par contends that its current employees have no confidential, relevant information regarding Reliant.  However, Frommer Lawrence points out that even if anyone who worked on the Reliant matter had confidential information, that information would not be transmitted to the trial team in this case because Frommer Lawrence erected an Information Wall between the lawyers who worked for Reliant in 2003, and the trial team in this matter.  Par further contends that if Frommer Lawrence is

disqualified as its counsel, it will be seriously prejudiced because it has worked with Par on this matter for more than two years devoting a significant amount of time and resources on the matter, and has developed a strong working relationship with Par including the opening of 261 other matters.

## II.   DISCUSSION

This Court abides by the Model Rules of Professional Conduct.  D. Del. L.R. 83.6(d)(2).  In this case, the applicable rule is Rule 1.9, which provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Application of this Rule requires the Court to engage in a "painstaking analysis of the facts" in light of three inquiries: (1) the nature and scope of the prior representation at issue; (2) the nature of the present lawsuit filed by the former client and (3) whether during the course of the prior representation, the client might have disclosed to his attorney confidences which could be relevant to the present action and particularly, whether any such confidences could be detrimental to the former client in the current litigation." Satellite Fin. Planning, 652 F. Supp. 1281, 1282-83 (D. Del. 1987) (citing INA Underwriters v. Nalibotsky, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984)).

4

Because public policy favors allowing a litigant to choose his or her own counsel, motions to disqualify are generally disfavored. <u>Id.</u> (citations omitted). Motions to disqualify are also treated cautiously by courts because they "have increasingly been used as one weapon in the litigation arsenal." <u>Id.</u> As a result, the burden rests on the moving party to clearly show that a substantial relationship exists such that the continued representation is impermissible. <u>Id.</u>

Applying this standard to the facts and circumstances of this case, the Court concludes that Reliant has not demonstrated that disqualification of Frommer Lawrence is required. The present action concerns issues of infringement, validity and unenforceability of the '588 patent. It does not implicate the underlying transaction with Abbott through which Rythmol® was acquired nor does it involve any of the provisions, warranties or representations contained in the agreements governing the transaction.

The prior representation of Reliant by Frommer Lawrence concerned these unrelated transactional matters; however, that representation itself was quite limited. Apparently, Frommer Lawrence was not Reliant's primary transactional counsel, and Frommer Lawrence attorneys spent a minimal amount of time reviewing and advising Reliant regarding the agreements at issue. (D.I. 101, Haug Decl. at ¶¶ 10-12). With respect to Arthur

Hoag's activities in particular, the Court finds no basis to infer from Reliant's identification of Mr. Hoag as "IP counsel" on a single meeting agenda that Mr. Hoag engaged in any activities substantially related to the issues presented in this case.[1]  Mr. Hoag was unaware of this meeting, was not in direct communication with anyone at Reliant regarding the Abbott transaction, did not perform any work beyond a 2.5 hour review of the draft contract, and did not have any knowledge of Rythmol® or the '588 patent.  In light of the uncontroverted testimony of Mr. Hoag, the Court cannot conclude that any work he performed for Par prior to the implementation of the Information Wall was tainted by any relevant, substantially related confidential information gained during his limited work on the Reliant matter. (D.I. 108, Hoag Decl. at ¶¶ 2, 4-9; D.I. 100, Harris Decl., Ex. B at ¶¶ 19-29-30).

To the extent that Reliant contends that Frommer Lawrence's representation of Reliant concerning the Rythmol® acquisition extended to advice concerning the nature, scope, potential infringement, design around and validity of the '588 patent, the Court finds no concrete evidence to support Reliant's assertion

---

[1] In light of the similarities in their surnames, the Court notes, to avoid confusion, that Edgar Haug is a founding partner and current Managing Partner of Frommer Lawrence.  During the time frame relevant to this Motion, Arthur Hoag was an associate at Frommer Lawrence.  He then became a partner in July 2004.  (D.I. 108, Hoag Decl. at ¶ 3).

that Messrs. Berdon and Brown provided it with oral legal advice and opinions in these areas. In the Court's view, the evidence submitted by Reliant on this question is speculative at most, and contrary to Reliant's assertions, tends to show more clearly that Frommer Lawrence refrained from giving any specific advice to Reliant on these issues. For example, with regard to the design around and formulation issues raised by Reliant, Mr. Berdon merely conveyed in one e-mail the belief of another individual that it might be difficult for a generic applicant to succeed in a design around, but the views of others do not establish that either Mr. Berdon or others at Frommer Lawrence spent any time contemplating this issue. (D.I. 90, Cortesi Decl., Ex. 12 at RAC 0025). Indeed, the affirmative evidence in the record demonstrates that Mr. Berdon was extremely reluctant to offer any opinions on such complex issues as "the ultimate utility of this patent" (id., Ex. 11 at RAC 0022), or whether any patents would prevent once-a day formulation (id., Ex. 8 at RAC 0017 (recognizing the complexity of this question and stating that it could not be answered without extensive research and the best that Frommer Lawrence could do would be to conduct a "preliminary search that will be neither complete nor reliable for the purpose of making a business decision")). Although Reliant offers evidence that Mr. Berdon advised it regarding the exclusivity period, that advice appears to be limited to that which is stated

7

in 21 C.F.R. § 314.108(b)(4)(iv), and Mr. Berdon expressly reserved opinion on the more significant issue of Reliant's potential response to any future Paragraph IV certification stating that such a response "will of course depend upon your analysis of the factual and legal basis for the ANDA applicant's certification of non-infringement." (id., Ex. 11 at RAC 0023). Further, there is no evidence that any information provided by Mr. Berdon concerning the exclusivity period has any bearing on the infringement, validity and enforceability issues raised in this litigation.

    Reliant also contends that Frommer Lawrence partner Daniel Brown provided an oral opinion and advice regarding the '588 patent's value, validity, enforceability and potential for design around which allegedly induced Reliant to acquire the '588 patent from Abbott. However, Mr. Brown denies undertaking any such review and his lack of billing records or any work product regarding what would typically be an extensive and detailed analysis belies Reliant's argument that he engaged in such a review. (D.I. 106, Brown Decl. at ¶¶ 2-6). Reliant directs the Court to an e-mail from Mr. Berdon to Reliant and copied to Mr. Brown in which Mr. Berdon states that Mr. Brown is "working up the file history;" however, notably that e-mail does not specify the file history that Mr. Brown was working up. (D.I. 90, Cortesi Decl., Ex. 8). Similarly, Reliant directs the Court to

an e-mail from Mr. Berdon in which he expresses his "belief" that he and Mr. Brown previously provided a "verbal brief" regarding coverage issues; however, that e-mail also does not identify the specific patent implicated. (Id. at Ex. 11). In the Court's view, these e-mails are insufficient to contradict Mr. Brown's affidavit that he did not provide any such opinion or work up anything with regard to the '588 patent.

Reliant also directs the Court to work performed by Frommer Lawrence scientific advisor Ali Berkin. Reliant contends that Dr. Berkin undertook work at the direction of Mr. Berdon for the purpose of advising Reliant regarding the relevance of prior art patents to the Rythmol® formulation. Reliant contends that Dr. Berkin's work included the Pich '287 patent and the Kristen '347 patent, both of which Par now contends render the '588 patent invalid or unenforceable.

The Court has reviewed the circumstances pertaining to Dr. Berkin's work and finds no evidence that Dr. Berkin's work was ever communicated to Reliant for the purpose of providing an opinion on the validity, enforceability or the potential to "design around" the '588 patent. Although Dr. Berkin prepared charts organizing the results of his research into three tiers based on whether a patent might be relevant to Rythmol®, the memorandum reaches no conclusions on any of the critical issues presented in this case. In addition, Dr. Berkin's work was not

9

based on any particular patent, was focused, instead, on the drug propafenone, and was comprised of publicly available information. Thus, there is nothing in Dr. Berkin's work which raises the risk of disclosure of client confidences that would be detrimental to Reliant in the context of this litigation.[2] (D.I. 105, Berkin Decl. at ¶¶ 2-4, 7-10, 12-14).

In sum, the Court concludes that Frommer Lawrence's prior representation of Reliant was limited in scope, largely irrelevant to the issues raised in the present action, and in any event, unlikely to have resulted in the disclosure of relevant confidences that would be detrimental to Reliant in the litigation of this action. Accordingly, the Court concludes that Reliant has not clearly demonstrated that the disqualification of Frommer Lawrence as counsel to Par is warranted.

## V. CONCLUSION

For the reasons discussed, the Court will deny Reliant's Renewed Motion For Disqualification Of Frommer Lawrence & Haug LLP.

An appropriate Order will be entered.

---

[2] The Court further notes that in the course of his research, Dr. Berkin noted that no patents for Rythmol® were listed in the Orange Book; however, this litigation does not raise any issues concerning the timing or effect of the Orange Book listing.

10